XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
NELSON R. RICHARDS
Deputy Attorney General
State Bar No. 246996
 2550 Mariposa Mall, Room 5090
 Fresno, CA  93721
 Telephone:  (559) 705-2324
 Fax:  (559) 445-5106
 E-mail:  Nelson.Richards@doj.ca.gov
*Attorneys for Defendant Attorney General
Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>Defendants. | 3:18-cv-00802-BEN-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT XAVIER BECERRA'S MOTION TO DISMISS**<br><br>Judge:        Hon. Roger T. Benitez<br>Date:          June 25, 2018<br>Time:          9:00 a.m.<br>Courtroom:        5A<br>Action Filed:        April 26, 2018 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................. 1

Background ................................................................................................... 2

I.    Californians Adopt the Safety for All Act, Imposing New Requirements on Ammunition Sales and Transfers ............................ 2

II.    Plaintiffs Challenge the State's New Ammunition Laws .................... 4

Legal Standard ............................................................................................. 5

Argument ..................................................................................................... 6

I.    The Complaint Fails to State a Claim for Violation of the Dormant Commerce Clause .............................................................. 6

    A.    The Safety for All Act Does Not Regulate Extraterritorially. ................................................................... 7

    B.    The Act Does Not Discriminate Against Interstate Commerce. .................................................................................. 9

    C.    The Complaint Does Not Allege a Substantial Burden on Interstate Commerce and Thus Plaintiffs' Claim Under *Pike* Fails as a Matter of Law .................................... 13

        1.    The Complaint Does Not Allege Facts Showing a Substantial Burden on Interstate Commerce. ................. 13

        2.    The Act's Benefits Eclipse any Burden on Interstate Commerce. ...................................................... 17

II.    The Complaint Fails to State a Claim for Relief Under the Equal Protection Clause ...................................................................... 17

    A.    An Alleged Violation of the Second Amendment Cannot Form the Basis of an Equal Protection Claim. ...................... 18

    B.    Plaintiffs Cannot State a Viable Equal Protection Claim Based on Residency. ................................................................ 19

Conclusion ................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .................................................................................... 6, 7, 9

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ............................................................................. 7

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 6

*Brown & Williamson Tobacco Corp. v. Pataki*
    320 F.3d 200 (2d Cir. 2003) ............................................................................. 13

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015) .............................................................. 7, 8, 9, 13

*City of Cleburne v. Cleburne Living Ctr., Inc.*
    473 U.S. 432 (1985) .......................................................................................... 17

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ........................................................................................ 6, 9

*Exxon Corp. v. Governor of Maryland*
    437 U.S. 117 (1978) .................................................................................... 15, 16

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ............................................................................ 6

*FCC v. Beach Commc'ns, Inc.*
    508 U.S. 307 (1993) .................................................................................... 20, 21

*Gen. Motors Corp. v. Tracy*
    519 U.S. 278 (1997) .................................................................................... 11, 15

*Healy v. Beer Inst.*
    491 U.S. 324 (1989) ............................................................................................ 6

*Kwong v. Bloomberg*
    723 F.3d 160 (2d Cir. 2013) ............................................................................. 19

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lyng v. Castillo*
477 U.S. 635 (1986) ...................................................................... 19

*Maine v. Taylor*
477 U.S. 131 (1986) ........................................................................ 9

*McDonald v. City of Chicago*
561 U.S. 742 (2010) ...................................................................... 14

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
990 F. Supp. 2d 349 (W.D.N.Y. 2013) ...................................... 12, 13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) .................................................. *passim*

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
511 U.S. 93 (1994) .......................................................................... 6

*Pharm. Research & Mfrs. of Am. v. County of Alameda*
768 F.3d 1037 (9th Cir. 2014) ................................................. *passim*

*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970) ............................................................. 7, 13, 15

*Rocky Mountain Farmers Union v. Corey*
730 F.3d 1070 (9th Cir. 2013) .................................................... 10

*Romer v. Evans*
517 U.S. 620 (1996) ...................................................................... 18

*Sam Francis Found. v. Christies, Inc.*
784 F.3d 1320 (9th Cir. 2015) (en banc) ................................... 6, 7, 8

*Teixeira v. County of Alameda*
822 F.3d 1047 (9th Cir. 2016) .................................................... 18

*W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*
451 U.S. 648 (1981) ...................................................................... 19

*Williamson v. Lee Optical of Okla., Inc.*
348 U.S. 483 (1955) ................................................................ 20, 21

# TABLE OF AUTHORITIES
### (continued)

Page

STATUTES

California Penal Code
    § 26710 ..................................................................................................... 3
    § 30312 ............................................................................................... *passim*
    § 30312(a)(1) .................................................................................... 10, 15
    § 30312(a)-(b) ........................................................................................ 3
    § 30312(b) ............................................................................... 3, 10, 11
    § 30312(c) .............................................................................................. 3
    § 30312(c)(1) ....................................................................................... 15
    § 30314 ............................................................................................... *passim*
    § 30314(a) ............................................................................................ 19
    § 30342 .................................................................................................. 4
    § 30347 .................................................................................................. 4
    § 30348 .................................................................................................. 4
    § 30352 ........................................................................................... 3, 17
    § 30352(b)-(d) ....................................................................................... 3
    § 30363 .................................................................................................. 4
    § 30370 ................................................................................................ 11
    § 30370(a) .............................................................................................. 3
    § 30370(a)(3) ......................................................................................... 4
    § 30370(a)-(b) ....................................................................................... 3
    § 30370(b) ............................................................................................ 21
    § 30370(c) ....................................................................................... 4, 15
    § 30370(d) .............................................................................................. 4
    § 30370(e) ....................................................................................... 4, 14
    § 30385 ................................................................................................ 11
    § 30390 .................................................................................................. 4
    § 30395 .................................................................................................. 4

Senate Bill 1235 (2016 Cal. Stat., ch. 55) ................................................... 2

New York Secure Ammunition and Firearms Enforcement Act of 2013 ................ 12

CONSTITUTIONAL PROVISIONS

United States Constitution
    Article I, § 8 .......................................................................................... 6

1
2

# TABLE OF AUTHORITIES
## (continued)

3

Page

4
5

Second Amendment...................................................................*passim*
Fourteenth Amendment ............................................................*passim*

6

**COURT RULES**

7

9th Circuit Rule 35-3 ........................................................................ 18

8

Federal Rule of Civil Procedure 12(b)(6) ................................................ 5, 6

9

**REGULATIONS**

10
11

California Code of Regulations, Title 11
       § 4263(a) ....................................................................... 11, 15

12

       §§ 4036-4041 ........................................................................ 3

13

**INITIATIVE MEASURES**

14
15

Prop. 63
       §§ 1-3, 12-16....................................................................... 2
       §§ 2-3 .............................................................. 9, 14, 17, 20

16

       §§ 2.1-2.4............................................................................ 2

17

       §§ 2.5-2.8............................................................................ 2
       §§ 2.6-2.7............................................................................ 2

18

       § 3.1 .................................................................................... 2

19

       §§ 3.2-3.3............................................................................ 2

20
21
22
23
24
25
26
27
28

Mem. of P. & A. in Supp. of Cal. Att'y General's Mot. to Dismiss (3:18-cv-00802-BEN-JLB)

**INTRODUCTION**

Before 2016, people legally prohibited from possessing both firearms and ammunition in California, including people convicted of violent felonies, could flout the law and buy ammunition with ease. Although California's background check process would prevent such people from purchasing a firearm, there was no comparable process to prevent them from walking into a store or going online and buying bullets. To close this loophole and improve public safety, voters adopted Proposition (Prop.) 63, known as the "Safety for All Act of 2016." The law's most noteworthy reform is that sales or transfers of ammunition in California must occur in face-to-face transactions, subject to a background check, just like gun sales.

Plaintiffs challenge various aspects of Prop 63 on constitutional grounds. In addition to alleging various violations of the Second Amendment right to bear arms and federal preemption (claims that are not at issue in this motion), Plaintiffs first and seventh causes of action contend that Prop. 63 violates the dormant Commerce Clause and the Equal Protection Clause. These two causes of action fail to allege legally cognizable claims as a matter of law, and they should be dismissed.

Plaintiffs cannot state a dormant Commerce Clause claim because Prop. 63 regulates the sale and transfer of ammunition only within California to protect the public safety. The law does not discriminate against interstate commerce—it treats in-state and out-of-state vendors equally. Nor does it impose a substantial burden on interstate commerce; and, even if it did, the law's benefits would outweigh the burden. Plaintiffs do not, and cannot allege, otherwise.

Plaintiffs also cannot allege a viable equal protection claim under any theory. Numerous decisions have rejected attempts to merge Second Amendment claims into Fourteenth Amendment claims, as the complaint does here. And the attempt to allege an equal protection claim on the grounds that Prop. 63 treats residents of other states better than residents of California fails as a matter of law under rational basis review.

1

Because the first and seventh causes of action do not state claims upon which relief can be granted, the Court should dismiss them and resolve the case on the remaining grounds alleged.

## BACKGROUND

### I.   CALIFORNIANS ADOPT THE SAFETY FOR ALL ACT, IMPOSING NEW REQUIREMENTS ON AMMUNITION SALES AND TRANSFERS

Prop. 63 introduced "reasonable and common-sense reforms" to California's gun laws while "safeguarding the Second Amendment rights of all law-abiding, responsible Californians."  Def. Att'y General's Req. for Judicial Notice (Def. RJN), Ex. 1 at 164 (Prop. 63 § 3.1).  These reforms were necessary, the voters concluded, because gun violence kills or seriously injures thousands of Californians each year, "destroy[ing] lives, families and communities."  *Id.* at 163-64 (Prop. 63 §§ 2.1-2.4).  Loopholes in the State's gun safety laws were allowing violent felons and other persons prohibited from possessing firearms and ammunition to perpetuate gun violence.  *See id.* at 164 (Prop. 63 §§ 2.5-2.8).

One of the most significant loopholes was that people who could not pass the background check required for purchasing a firearm could still walk into a sporting goods store or gun shop and buy ammunition with no questions asked.  *See id.* (Prop. 63 §§ 2.6-2.7).  The voters decided that the law should "require background checks for ammunition sales just like gun sales," *id.* (Prop. 63 § 2.7), to keep ammunition out of the hands of dangerous people who are prohibited under the law from possessing guns or ammunition, *id.* (Prop. 63 §§ 3.2-3.3).

To help achieve that goal, Prop. 63 amended the California Penal Code to regulate the sale or transfer of ammunition in a manner similar to the sale or transfer of guns.[1]  Ammunition sales, deliveries, or transfers in California must now

---

[1] Before the November 2016 election, the California Legislature enacted Senate Bill 1235 (2016 Cal. Stat., ch. 55).  That law prospectively amended aspects of Prop. 63.  Unless otherwise noted, references to Prop. 63 are to the law as

(continued…)

2

be conducted by or processed through a licensed ammunition vendor in a face-to-face transaction. Cal. Penal Code § 30312(a)-(b).[2] Californians may still purchase ammunition online or from other lawful sources that do not have a physical location in California. *See id.* § 30312(b). But those purchases must be received and processed by a California-licensed ammunition vendor. *Id.* Similarly, residents who want to bring ammunition into California that they have obtained outside the State must first deliver it to a licensed ammunition vendor. *Id.* § 30314.

Starting in July 2019, licensed ammunition vendors will have to conduct background checks before selling or transferring ammunition to a buyer in California. *Id.* §§ 30352, 30370. For each transaction, they will have to record and electronically submit information—including the purchaser's driver's license number and home address, and the brand, type, and amount of ammunition—to the California Department of Justice. *Id.* §§ 30352(b)-(d), 30370(a). The Department, upon receipt of the information, will determine whether the purchaser is authorized to buy ammunition. *Id.* § 30370(a)-(b). Anyone who has a certificate of eligibility issued by the Department or whose information matches an entry in the Department's Automated Firearms System and who does not appear in the Department's prohibited persons file may purchase ammunition.[3] *Id.* Licensed ammunition vendors cannot provide ammunition to a purchaser without Department approval.[4] *Id.* §§ 30370(d), 30352(c).

---

(…continued)
amended.

[2] The law exempts certain groups, such as sworn peace officers, from various requirements, including the law's sale, delivery, and transaction requirements. *See, e.g.*, Cal. Penal Code § 30312(c).

[3] As the Bureau of Firearms explains on its website, a certificate of eligibility "certifies the Department . . . has checked its records and determined the recipient is not prohibited from acquiring or possessing firearms at the time the firearms eligibility criminal background check was performed." Def. RJN, Ex. 2. The process for obtaining and renewing a certificate is set forth in statute and regulation. Cal. Penal Code § 26710; Cal. Code Regs., tit. 11, §§ 4036-4041.

[4] The law also requires the Department to develop a procedure for people
(continued…)

3

1   Any person or business who sells more than 500 rounds in a 30-day period
2   must have a license. *Id.* § 30342. A license authorizes ammunition sales at a
3   specific physical location or at certain gun shows. *Id.* § 30348. Ammunition must
4   be stored or displayed so that it is inaccessible to customers without assistance from
5   employees, who themselves must have Department issued certificates of eligibility.
6   *Id.* §§ 30347, 30350. Licensed ammunition dealers have a duty to report theft of
7   ammunition in their care to appropriate law enforcement agencies. *Id.* § 30363.

8   The law authorizes the Department to issue licenses, promulgate application
9   and enforcement requirements, keep a registry of licensed vendors and make that
10  registry available to law enforcement, and charge fees to cover the reasonable cost
11  of the licensing program. *Id.* §§ 30370(e), 30385, 30390, 30395.

## II.   PLAINTIFFS CHALLENGE THE STATE'S NEW AMMUNITION LAWS

13  Several plaintiffs filed this lawsuit alleging that California's new rules on the
14  transfer, purchase, and sale of ammunition violate the federal constitution in various
15  ways and are preempted by federal law. *See generally* Compl. ¶¶ 1-6, 46-124, ECF
16  No. 1. Just two of the eight causes of action alleged are challenged here. These
17  claims allege violations of the Commerce Clause and the Equal Protection Clause
18  of the U.S. Constitution. *Id.* ¶¶ 46-58, 77-85, 114-121.

19  The plaintiffs fall into three categories. One group of plaintiffs includes six
20  California residents. *Id.* ¶¶ 10-16. In the past, they have purchased ammunition
21  online and had it shipped to their residence, or purchased ammunition outside of
22  California and brought it into the State themselves. *Id.* ¶¶ 10-16. For instance,
23  Plaintiff Kim Rhode is a competitive shooter who has won several Olympic medals,
24  among other accolades. *Id.* ¶ 10. She has received specialized ammunition in the

_____

26  (…continued)
    who are not prohibited from purchasing ammunition but who do not have a
    certificate of eligibility or an entry in the Automated Firearms System to make
27  receive approval for a "single ammunition transaction or purchase." Cal. Penal
    Code § 30370(a)(3), (c).

1   mail, as well as ammunition that her sponsors send to her home and shooting ranges

2   inside and outside of California.  *Id.*  Another Plaintiff, hunter Gary Brennan, has

3   bought ammunition online that is extremely difficult to find and has had it shipped

4   to his residence.  *Id.* ¶ 11.  He also has regularly brought ammunition into

5   California that he purchased outside of the State.  (*See id.*)  Rhode and Brennan

6   both would like to continue receiving and transporting ammunition as they did

7   before Prop. 63 became law.  *See id.* ¶¶ 10-11.  The other individual plaintiffs have

8   similar histories and concerns.  *Id.* ¶¶ 12-16.

9        In a second group of plaintiffs are three out-of-state businesses that have sold

10   ammunition to California residents and shipped it to their homes.  *Id.* ¶¶ 17-19.

11   They would like to resume direct shipments to their customers in California.  *Id.*

12   ¶¶ 17-19.  One of the businesses, Sam's Shooters' Emporium, sits near the

13   California-Arizona border, and has California customers who would like to buy

14   ammunition in Arizona and bring it into California without Department approval.

15   *Id.* ¶ 19.

16        Plaintiff California Rifle & Pistol Association, Inc., is a firearm advocacy

17   group that promotes shooting sports, organizes competitions, and provides firearms

18   training and education to the public.  *Id.* ¶ 21.  It has joined the suit on behalf of its

19   members.  *Id.*

20        In addition to the Commerce Clause and the Equal Protection Clause of the

21   U.S. Constitution, Plaintiffs allege that Prop. 63 violates the Second Amendment

22   and the Supremacy Clause.  *Id.* ¶¶ 59-76, 86-113, 122-124.

23                              **LEGAL STANDARD**

24        Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be

25   dismissed for failure to state a claim upon which relief can be granted.  The

26   complaint must allege facts establishing "a claim to relief that is plausible on its

27   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

28   plausibility when the plaintiff pleads factual content that allows the court to draw

1   the reasonable inference that the defendant is liable for the misconduct alleged."

2   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  On

3   review of a Rule 12(b)(6) motion, the court accepts the factual allegations in the

4   complaint as true and construes the complaint in the light most favorable to the

5   plaintiff.  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  But

6   the court does not accept the truth of legal assertions cast as factual allegations or

7   make unwarranted inferences in the plaintiff's favor.  *Id.*

8                                              **ARGUMENT**

9   **I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE
10          DORMANT COMMERCE CLAUSE**

11          The Commerce Clause authorizes Congress to "regulate Commerce with

12   foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It

13   includes an implied limitation on the states' authority often referred to as the

14   negative or dormant Commerce Clause.  *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1

15   (1989).  "The modern law of what has come to be called the dormant Commerce

16   Clause is driven by concern about economic protectionism—that is, regulatory

17   measures designed to benefit in-state economic interests by burdening out-of-state

18   competitors."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008)

19   (internal quotation marks omitted).  Economic protectionism or discrimination

20   under the dormant Commerce Clause "means differential treatment of in-state and

21   out-of-state economic interests that benefits the former and burdens the latter."  *Or.*

22   *Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994)

23   (internal quotation marks omitted).

24          A law that regulates extraterritorially—that is, a law that regulates conduct

25   that occurs wholly outside of a state's borders—is invalid per se under the dormant

26   Commerce Clause.  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323

27   (9th Cir. 2015) (en banc).  If there is no such per se violation, courts employ a two-

28   tiered approach to determine whether the law violates the dormant Commerce

1   Clause.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d

2   937, 948 (9th Cir. 2013).  Courts first ask whether the law "discriminates against

3   interstate commerce, or [whether] its effect is to favor in-state economic interests

4   . . . ." *Id.* at 948.  If it does, they apply a form of strict scrutiny.  *Id.* at 948 & n.7.

5   If the law regulates evenhandedly, courts "examine[] whether the State's interest is

6   legitimate and whether the burden on interstate commerce clearly exceeds the local

7   benefits." *Id.*; *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

8          Plaintiffs contend that Penal Code sections 30312, 30314, 30370, and 30385

9   violate the Commerce Clause because they operate extraterritorially, favor in-state

10   ammunition vendors at the expense of out of state vendors, and impose

11   impermissible burdens on interstate commerce.  Because the statutes apply to

12   conduct within California, regulate in-state and out-of-state ammunition vendors

13   with an even hand, and do not impose a substantial burden on interstate commerce,

14   Plaintiffs' claims fail as a matter of law.  *See Iqbal*, 556 U.S. at 678-79; *Chinatown*

15   *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015).

16          **A.   The Safety for All Act Does Not Regulate Extraterritorially.**

17          The complaint alleges that sections 30312, 30314, 30370, and 30385 regulate

18   extraterritorially in two ways.  Compl. ¶ 54.  It alleges that these statutes prevent

19   out-of-state manufacturers from selling directly to California consumers.  *Id.*  It also

20   alleges that these statutes "effectively prohibit" out-of-state companies from selling

21   ammunition to California residents who intend to return to California with the

22   ammunition.  *Id.*  These allegations are insufficient to make out a per se violation of

23   the dormant Commerce Clause.

24          For a law to violate the dormant Commerce Clause on extraterritoriality

25   grounds, it must directly regulate "commercial transactions that take place wholly

26   outside the State's borders." *Sam Francis Found.*, 784 F.3d at 1323 (quotation

27   marks omitted).  Thus, the allegation that Prop. 63 prevents out-of-state

28   manufacturers from selling directly to California consumers cannot satisfy this

1   standard because the transaction involves sales or transfers to Californians within

2   the State.  *See* Compl. ¶ 54.  That is permissible under the dormant Commerce

3   Clause.  *See, e.g.*, *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-47 ("[A] state

4   may regulate commercial relationships in which at least one party is located in

5   California. . . .  And even when state law has significant extraterritorial effects, it

6   passes Commerce Clause muster when . . . those effects result from the regulation

7   of in-state conduct." (quotation marks omitted)).

8        The laws challenged here stand in contrast to the law at issue in the Ninth

9   Circuit's en banc decision in *Sam Francis Foundation*, 784 F.3d at 1323-24.  In that

10   case, the law required California residents to pay royalty fees to artists on certain art

11   sales.  *Id.* at 1324.  The court held the requirement unconstitutional with respect to

12   wholly out-of-state sales, where, for example, a "California resident has a part-time

13   apartment in New York, buys a sculpture in New York from a North Dakota artist

14   to furnish her apartment, and later sells the sculpture to a friend in New York"—

15   that is, "even if the sculpture, the artist, and the buyer never traveled to, or had any

16   connection with California." *Id.*  By contrast, here, the laws cover only ammunition

17   sales to purchasers inside California or to California residents who bring the

18   ammunition into the State.  *See* Cal. Penal Code §§ 30312, 30314.

19        Plaintiffs' further allegation that Prop. 63 "effectively prohibit[s] out-of-state

20   companies from selling ammunition to California residents who intend to return to

21   California with the purchased ammunition," Compl. ¶ 54, is incorrect as a matter of

22   law.  Nothing in the statute purports to control transactions between out-of-state

23   businesses and California residents who buy ammunition in person outside the

24   State.  *See* Cal. Penal Code § 30314.  Instead, Prop. 63 regulates the conduct of

25   residents when they return to California with ammunition purchased out of state,

26   and regulation of that conduct does not offend the Commerce Clause because it is

27

28

1   directly tied to the State.[5]  *See Pharm. Research & Mfrs. of Am. v. County of*

2   *Alameda*, 768 F.3d 1037, 1044 (9th Cir. 2014); *Chinatown Neighborhood Ass'n*,

3   794 F.3d at 1145-47.

4        **B.    The Act Does Not Discriminate Against Interstate Commerce.**

5        Sections 30312, 30314, 30370, and 30385 also do not discriminate against

6   interstate commerce.  "A statute is discriminatory if it imposes commercial barriers

7   or discriminates against an article of commerce by reason of its origin or destination

8   out of State."  *Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1041 (quotation marks

9   and alterations omitted).  "Conversely, a statute that treats all private companies

10  exactly the same does not discriminate against interstate commerce.  This is so even

11  when only out-of-state businesses are burdened because there are no comparable in-

12  state businesses."  *Id.*  For purposes of dormant Commerce Clause analysis, a law

13  may discriminate against interstate commerce in its purpose, on its face, or in its

14  effect.  *Maine v. Taylor*, 477 U.S. 131, 138 (1986).  Plaintiffs do not allege a

15  purpose claim, and their facial discrimination and discriminatory effects claims fail

16  as a matter of law.

17       Prop. 63's purpose is to better protect public safety by providing a regulatory

18  process to make it difficult for persons forbidden by law from possessing

19  ammunition in California to obtain it.  (Prop. 63, §§ 2-3.)  Plaintiffs thus do not,

20  and cannot allege, that Prop. 63 was designed or intended to protect the California

21  ammunition industry or California ammunition vendors.  *See Dept. of Revenue of*

22  *Ky.*, 553 U.S. at 337-38 (explaining that dormant Commerce Clause protects

23  against economic protectionism and advancing in-state economic interests); *Nat'l*

24  _____

25        [5] The complaint also alleges that Prop. 63 "render[s] unlawful transactions that occur wholly out of state . . . ."  Compl. ¶ 57.  This allegation is unsubstantiated

26  by anything in the law itself.  No part of Prop. 63 regulates transactions that occur wholly outside of California.  This allegation is the sort of "[t]hreadbare recital[] of

27  the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has held "do not suffice" to state a claim.  *See Iqbal*, 556 U.S. at

28  678.

1   *Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012)

2   ("The central rationale for the rule against discrimination is to prohibit state or

3   municipal laws whose object is local economic protectionism, because these are the

4   laws that would excite those jealousies and retaliatory measures the Constitution

5   was designed to prevent." (quotation marks omitted)).

6          Nor do the allegations about Prop. 63's express language or effect state a

7   claim because the law demonstrably "treats all private companies exactly the

8   same."  *See Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1042 (quotation marks

9   omitted).  Section 30312 requires all ammunition sales in California to be

10  "conducted by or processed through a licensed ammunition vendor."  Cal. Penal

11  Code § 30312(a)(1).  Another part of the same statute provides that "ammunition

12  may be purchased or acquired over the internet or through other means of remote

13  ordering if a licensed vendor initially receives the ammunition and processes the

14  transaction in compliance" with the law.  *Id.* § 30312(b).  Section 30370 requires

15  Department approval before an ammunition sale or transfer within California can be

16  completed, while section 30385 authorizes the Department to issue licenses and

17  establish procedures for doing so.  Section 30314 requires California residents who

18  want to bring ammunition into the State that they purchased elsewhere to first

19  deliver it to a licensed vendor for delivery to the resident in California.  None of

20  these laws privileges California businesses as compared with out-of-state

21  businesses.  *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1090

22  (9th Cir. 2013) (holding that California's Low Carbon Fuel Standard did not

23  discriminate against interstate commerce because it "does not isolate California and

24  protect its producers from competition").  They apply to all ammunition sales to

25  consumers in California, regardless of where they originate.

26          Most of the allegations compare the Plaintiff out-of-state businesses, who sell

27  ammunition online, with in-state brick-and-mortar stores.  *See* Compl. ¶ 54-58, 80-

28  85.  That comparison is inapt.  Discrimination under the dormant Commerce Clause

1    "assumes a comparison of substantially similar entities." *Gen. Motors Corp. v.*

2    *Tracy*, 519 U.S. 278, 298 (1997).  The relevant comparison is between Plaintiff

3    businesses and online retailers in California.  A California company that sells

4    ammunition over the internet must have ammunition delivered to customers

5    through a licensed ammunition vendor, just like Plaintiff Sam's Shooters'

6    Emporium and the other Plaintiff out-of-state businesses.[6]  *See id.* § 30312(b).

7    Prop. 63 treats California and out-of-state online sellers the same.  And an out-of-

8    state ammunition retailer who has a physical store in California may obtain a

9    license and sell ammunition in California.  *See id.* § 30312.  So, for example, the

10   Dick's Sporting Goods in San Diego, which is owned by a Delaware Corporation

11   with its principal place of business in Pennsylvania, may apply for an ammunition

12   license, just like a brick-and-mortar store owned, incorporated, or headquartered in

13   California can.  *See id.*  Again, Prop. 63 treats in-state and out-of-state businesses

14   the same. Similarly, each of those vendors must receive approval from the

15   Department before completing an ammunition sale or transfer within California.

16   *See id.* § 30370.  And the Department's authorization to issue licenses does not

17   require or permit it to distinguish between in-state and against out-of-state

18   businesses.  *See id.* § 30385.

19        State residents who purchase ammunition outside California—either at a

20   physical store, over the internet, or by any other lawful means—must deliver it to a

21   licensed ammunition vendor before taking possession of it in the State.  *See id.*

22   § 30314.  That vendor may be an out-of-state business with a brick-and-mortar

23        [6] Plaintiffs also allege that brick-and-mortar ammunition vendors have
discretion to charge fees or refuse to process a transaction.  Compl. ¶ 55.  But those
24   brick-and-mortar stores, which may be California or out-of-state businesses, may
exercise that discretion over any request to process an online ammunition
25   transaction, regardless of where the online vendor is located.  In addition, while
Plaintiffs suggest that the potential fees have no limits, *see id.*, one of them, the
26   processing fee, is capped.  Section 30312(a)(1) provides that an "ammunition
vendor may charge the purchaser an administrative fee to process the transaction, in
27   an amount to be set by the Department . . . ."  The Department has set that fee at
five dollars.  Cal. Code Regs., tit. 11, § 4263(a).
28

Mem. of P. & A. in Supp. of Cal. Att'y General's Mot. to Dismiss (3:18-cv-00802-BEN-JLB)

1   location in California, like the San Diego Dick's Sporting Goods in the example

2   above, or a California company.  *See id.*  The law also makes no distinction

3   between the ownership of the business that sells the ammunition outside of

4   California.  *See id.*  It may be a California company, or it may be a business like

5   one of the Plaintiff out-of-state businesses.  California residents may buy

6   ammunition outside of the State and use it however they desire (subject to federal

7   and local law).  It is only when they bring that ammunition into California that

8   residents must comply with section 30314.  *See id.*  In short, that section regulates

9   residents who bring ammunition into the State, not the out-of-state commercial

10  transaction in which that ammunition was purchased.

11      Prop. 63 thus does not discriminate against interstate commerce in its purpose,

12  by its terms, or in its effect.  The Western District of New York reached the same

13  conclusion when dismissing a dormant Commerce Clause claim challenging a very

14  similar New York law.  *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F.

15  Supp. 2d 349 (W.D.N.Y. 2013), *aff'd in part and rev'd in part on other grounds*,

16  804 F.3d 242 (2d Cir. 2015).[7]  Like Prop. 63, the New York Secure Ammunition

17  and Firearms Enforcement Act of 2013, known as the SAFE Act, requires

18  ammunition dealers to be licensed and to conduct background checks.  *Id.* at  357.

19  But it goes further than Prop. 63 and "bans the sale of ammunition over the

20  Internet, imposing a requirement that any ammunition transaction be conducted

21  'face-to-face.'"  *Id.*; *see also id.* at 378 (noting that the New York SAFE Act

22  "effectively bans ammunition sales over the Internet and imposes a requirement that

23  an ammunition transfer must occur in person" (quotation marks omitted)).  The

24  court concluded that the face-to-face requirement applies "evenhandedly between

25  in-state and out-of-state arms and ammunition dealers."  *Id.* at 380 (analogizing to

26

27              [7] The dormant Commerce Clause claims were not at issue before the Second
28  Circuit on appeal.  *N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 251 n.20.

1   *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2d Cir. 2003), in

2   which the court rejected a dormant Commerce Clause challenge to a law requiring

3   that cigarettes be sold in face-to-face transactions).  Prop. 63 takes the same

4   evenhanded approach to out-of-state and in-state ammunition vendors.  *See* Cal.

5   Penal Code §§ 30312, 30314, 30370, 30385.

**C.   The Complaint Does Not Allege a Substantial Burden on Interstate Commerce and Thus Plaintiffs' Claim Under *Pike* Fails as a Matter of Law**

8       Where, as here, a law does not discriminate against interstate commerce,

9   courts evaluate it under the balancing test articulated by the Supreme Court in *Pike*

10  *v. Bruce Church, Inc*., 397 U.S. at 142.  *Pharm. Research & Mfrs. of Am.*, 768 F.3d

11  at 1044.  This test asks whether "the burden [the law] imposes on interstate

12  commerce is clearly excessive in relation to the putative local benefits."  *Id.*

13  (quotation marks omitted).  "[A] plaintiff must first show that the statute imposes a

14  substantial burden before the court will determine whether the benefits of the

15  challenged laws are illusory."  *Id.* (quotation marks omitted).  "Only a small

16  number of cases invalidating laws under the dormant Commerce Clause have

17  involved laws that were genuinely nondiscriminatory."  *Chinatown Neighborhood*

18  *Ass'n*, 794 F.3d at 1146 (ellipses and brackets omitted).

**1.   The Complaint Does Not Allege Facts Showing a Substantial Burden on Interstate Commerce.**

21      A "state regulation does not become vulnerable to invalidation under the

22  dormant Commerce Clause merely because it affects interstate commerce."  *Nat'l*

23  *Ass'n of Optometrists*, 682 F.3d at 1148.  Rather, "[a] critical requirement for

24  proving a violation of the dormant Commerce Clause is that there must be a

25  *substantial burden* on *interstate commerce*."  *Id.* (emphasis in original).  Such

26  "significant burden[s]" generally involve "inconsistent regulation of activities that

27  are inherently national or require a uniform system of regulation."  *Id.*  Burdens on

28  commerce that result from regulations pursuant to the State's police power to

protect the public health and safety are generally not regarded as significant even if they involve some loss of trade. *See id.* (citing *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)). Indeed, the Supreme Court "generally has supported the rights of states to 'impose even burdensome regulations in the interest of local health and safety.'" *Id.* (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).

Prop. 63 is a garden-variety exercise of police power to protect the public health and safety of Californians. By placing restrictions on ammunition sales to prohibited persons that mirror similar restrictions on firearm sales, the law protects the public from gun crime and violence. (*See* Prop. 63, §§ 2-3.) The complaint alleges no facts that could support the conclusion that ammunition falls into the special category of commerce where national uniformity is required. Indeed, the Second Amendment contemplates "state and local experimentation with reasonable firearms regulations." *See, e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 784 (2010) (plurality opinion) (brackets and quotation marks omitted).

The complaint's allegations of burden are not entirely clear. *See* Compl. ¶¶ 54-58, 80-85. But they appear to fall into three categories. First, the complaint suggests that Prop. 63 will burden interstate commerce by causing out-of-state businesses Plaintiffs to lose money. *See, e.g.*, Compl. ¶ 19 ("The Challenged Provisions [will] . . . caus[e] Sam's Shooters [sic] Emporium to lose revenue from their business."). As the Ninth Circuit has explained, however, "the mere loss of profit" does not burden on interstate commerce for purposes of the dormant Commerce Clause. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1152 n.11.

Second, the complaint suggests that the fees authorized by Prop. 63 burden interstate commerce. *See* Compl. ¶¶ 55, 80, 84. The law adds a fee of up to one dollar for any ammunition transaction, which applies to in-state and out-of-state vendors alike. Cal. Penal Code § 30370(e). It also allows the Department to charge a fee that will cover its reasonable costs, but that will not exceed fourteen dollars, to

14

1    those who wish to make a one-time purchase or transfer of ammunition.  *See id.*

2    § 30370(c).  As with the one-dollar transaction fee, this fee applies to all

3    transactions and to any purchasers who meet the law's requirements.  *See id.*

4    Prop. 63 also allows ammunition vendors to charge a five dollar "administrative"

5    fee to deliver ammunition purchased online or through the mail.  *Id.* § 30312(a)(1);

6    Cal. Code Regs., tit. 11, § 4263(a).  But like the other fees, these fees can be

7    charged to California businesses that sell ammunition online or through the mail.[8]

8         Finally, the complaint suggests that Prop. 63 will burden interstate commerce

9    by shifting ammunition purchases from online stores to brick-and-mortar stores,

10   which will disproportionately affect out-of-state vendors.[9]  *See* Compl. ¶¶ 82

11   (alleging that the challenged provisions in Prop. 63 "improperly burden interstate

12   commerce in practice by . . . restricting out-of-state ammunition vendors").  This

13   line of argument is foreclosed by precedent.

14        In *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-20 (1978), the

15   Supreme Court upheld a Maryland law that prohibited companies that produced and

16   refined petroleum from also operating gas stations in the state.  No company in

17   Maryland produced or refined petroleum.  *Id.* at 123.  Exxon and other companies

18   argued that the law violated the dormant Commerce Clause because it burdened

19   only out-of-state companies like themselves, protecting in-state dealers from

20   competition.  *Id.*  In rejecting that challenge, the Court noted that out-of-state

21   companies that did not produce or refine petroleum could still operate gas stations

22   in the state.  *Id.* at 125-26.  The Court set forth several principles applicable here.  It

23   rejected the "notion that the Commerce Clause protects the particular structure or

24        [8] The Supreme Court has noted that many cases that have "purported to apply
25   the undue burden test (including *Pike* itself) arguably turned in whole or in part on
     the discriminatory character of the challenged state regulations."  *General Motors
26   Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997).

27        [9] The complaint ignores that Prop. 63 exempts from its restrictions direct
     sales and shipment to a significant market segment in the State:  city, county, state,
28   and federal law enforcement agencies.  *See* Cal. Penal Code § 30312(c)(1).

methods of operation in a retail market." *Id.* at 127.  It explained that the

Commerce Clause "protects the interstate market, not particular interstate firms,

from prohibitive or burdensome regulations" and that while it "may be true that the

consuming public will be injured by the loss of the high-volume, low-priced

stations operated by the independent refiners, . . . that argument relates to the

wisdom of the statute, not to its burden on commerce." *Id.* at 127-28.

The Ninth Circuit followed this guidance in *National Association of*

*Optometrists*, and upheld California laws prohibiting opticians from offering

eyewear in the same location in which eye exams are provided.  682 F.3d at 1145-

46.  That law did not similarly regulate optometrists and ophthalmologists, allowing

them to sell frames and lenses where they conducted eye exams.  *Id.* at 1146.

LensCrafters and a trade organization argued the law violated the dormant

Commerce Clause because it precluded out-of-state companies from offering one-

stop shopping and those companies would "incur great financial loss as a result of

the" laws.  *Id.* at 1147.  Following *Exxon*, the court explained that "there is not a

significant burden on interstate commerce merely because a non-discriminatory

regulation precludes a preferred, more profitable method of operating in a retail

market." *Id.* at 1154.  "[A]n incidental shift in sales and profits to in-state entities

from retailers that operate in-state but are owned by companies incorporated out-of-

state," the Court held, does not violate the dormant Commerce Clause.  *Id.* at 1155.

Plaintiffs rely on this failed argument.  The core of their dormant Commerce

Clause claim is not that business will shift from out-of-state companies to

California companies, but rather that it will shift from online (or mail order) sales to

sales at brick-and-mortar stores.  *See* Compl. ¶¶ 17-19, 54-58, 80-85.  This is not

the kind of burden that the dormant Commerce Clause is concerned with.

### 2.     The Act's Benefits Eclipse any Burden on Interstate Commerce.

Because the complaint does not allege facts showing a significant or substantial burden on interstate commerce, there is no need to weigh Prop. 63's benefits. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 ("[W]here . . . there is no discrimination and there is no significant burden on interstate commerce, we need not examine the actual or putative benefits of the challenged statutes."). But even if the complaint alleged a significant burden on interstate commerce, Prop. 63's benefits would outweigh that burden. The law is designed to prevent prohibited persons from obtaining ammunition that can be used in murders, robberies, and other crimes. *See* Def. RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3). "[R]egulations that touch upon safety are those that the [Supreme] Court has been most reluctant to invalidate." *Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1045 (ellipsis omitted). These laws receive a "strong presumption of validity." *Id.* (quotation mark omitted). The slight burdens of potentially diverting ammunition sales from online retailers to brick-and-mortar retailers, or the imposition of modest fees on online transactions, as Plaintiffs allege, cannot outweigh the public safety benefits that the voters could reasonably expect Prop. 63 to promote.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE

Plaintiffs allege that Prop. 63 violates the Equal Protection Clause because it burdens their fundamental right to keep and bear arms and because it treats California residents differently from non-residents. Compl. ¶¶ 116-17. Neither of these allegations states a viable equal protection claim.

The Equal Protection Clause prohibits a state from denying "to any person within its jurisdiction the equal protection of its laws." U.S. Const. amend. XIV, § 1. The clause ensures that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

17

1   Legislative provisions that arbitrarily or irrationally create discrete classes cannot

2   withstand constitutional scrutiny under the Equal Protection Clause.  *Romer v.*

3   *Evans*, 517 U.S. 620, 623 (1996).  However, courts must balance this principle with

4   the "practical necessity that most legislation classifies for one purpose or another,

5   with resulting disadvantage to various groups or persons."  *Id*. at 631 (citations

6   omitted).  In an attempt to reconcile the promise of equal protection with the reality

7   of lawmaking, courts apply the most searching constitutional scrutiny to those laws

8   that burden a fundamental right or target a suspect class, such as those based on

9   race, national origin, or religion.  *Id.*  Laws that do not burden a protected class or

10  infringe on a constitutionally protected fundamental right are subject to rational

11  basis review.  *Id.* at 631.

### A.  An Alleged Violation of the Second Amendment Cannot Form the Basis of an Equal Protection Claim.

14      The Ninth Circuit has held that where an "equal protection challenge is no

15  more than a Second Amendment claim dressed in equal protection clothing, it is

16  subsumed by, and coextensive with the former, and therefore not cognizable under

17  the Equal Protection Clause."  *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052

18  (9th Cir.) (quotations marks, brackets, and internal citation omitted), *vacated by*,

19  854 F.3d 1046 (9th Cir. 2016), *and reh'g en banc*, 873 F.3d 670 (9th Cir. 2017),

20  *cert. denied*, No. 17-982 (U.S. May 14, 2018);[10] *see also Flanagan v. Harris*, No.

21  LACV1606164JAKASX, 2017 WL 729788, at *5 (C.D. Cal. Feb. 23, 2017) ("An

22  Equal Protection claim brought under the Fourteenth Amendment that is the same

---

[10] Under Circuit Rule 35-3, the reasoning of the three-judge panel decision is citable as precedent because it was adopted by the en banc court.  Circuit Rule 35-3 provides that after rehearing has been granted a "three-judge panel opinion shall not be cited as precedent by or to this Court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court."  9th Cir. R. 35-3.  The en banc court held that "Teixeira did not seek rehearing of the panel's rejection of his Equal Protection claims. We affirm the district court on that claim for the reasons given in the panel opinion."  *Teixeira*, 873 F.3d at 676 n.7.

18

as one brought simultaneously under a different constitutional provision cannot provide an independent basis for relief.").

Other courts have reached the same conclusion. *See, e.g.*, *Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir. 2013) ("Like every Circuit to have addressed this issue, we simply conclude that plaintiffs should not be allowed to use the Equal Protection Clause to obtain review under a more stringent standard than the standard applicable to their Second Amendment claim." (quotation marks omitted)).  The allegations that Prop. 63 violates Plaintiffs' equal protection rights because it restrains their fundamental rights under the Second Amendment, *see* Compl. ¶¶ 53, 120, therefore fails as a matter of law.

### B. Plaintiffs Cannot State a Viable Equal Protection Claim Based on Residency.

Section 30314 prohibits residents from bringing ammunition into California unless they first deliver it to a licensed ammunition vendor.  Cal. Penal Code § 30314(a).  The complaint alleges that the law violates the Equal Protection Clause because it treats California residents differently than non-residents.  Compl. ¶ 119.  It contends that "if two individuals (only one of whom is a California resident) were to purchase ammunition outside of California from the same business and then bring that ammunition into California, only the California resident would be in violation" of Prop. 63.  *Id.*  The complaint does not allege that residents of a state are a protected class.[11]  *See generally* Compl. ¶¶ 114-121.  The equal protection claim is thus subject to rational basis review.

---

[11] Even if the complaint had alleged that the individual Plaintiffs were a protected class based on their residency in California, the claim would fail.  Equal protection challenges based on residency are subject to rational basis review.  *See, e.g.*, *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 667 n.21 (1981) (explaining that the Supreme Court has "required no more than a rational basis for discrimination by State against out-of-state interests in the context of equal protection litigation").  Moreover, suspect classes are those that have been subjected to discrimination, who have obvious, immutable, or distinguishing characteristics that define them as a discrete group, and who are a minority or politically powerless.  *See, e.g.*, *Lyng v. Castillo*, 477 U.S. 635, 638 (1986).  A

(continued…)

1    Under rational basis review, a law "must be upheld against equal protection

2    challenge if there is any reasonably conceivable state of facts that could provide a

3    rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307,

4    314 (1993). "Those attacking the rationality of the legislative classification have

5    the burden to negative every conceivable basis which might support it." *Id.* at 315

6    (quotation marks omitted). Lawmakers are given "leeway to approach a perceived

7    problem incrementally." *Id.* at 315. "Evils in the same field may be of different

8    dimensions and proportions, requiring different remedies . . . ." *Williamson v. Lee

9    Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955). "[R]eform may take one step at a

10   time, addressing itself to the phase of the problem which seems most acute to the

11   legislative mind." *Id.* Legislative distinctions "may be based on rational

12   speculation unsupported by evidence or empirical data." *See Beach Commc'ns*, 508

13   U.S. at 315.

14   Section 30314 easily satisfies this standard.[12] The voters who adopted the law

15   wanted to keep ammunition out of the hands of prohibited people. *See* Def. RJN,

16   Ex. 1 at 163-64 (Prop. 63 §§ 2-3). One way Prop. 63 achieves that goal is to have

17   the Department run background checks on those transporting ammunition into the

18   State. *See* Cal. Penal Code §§ 30314, 30352, 30370. To complete a background

19   check, the Department reviews its records, including its Automated Firearms

20   System and database of certificates of eligibility. *Id.* § 30370(b). These are state

21   records and databases. The voters could have thus reasonably decided that

22   including non-residents in the background check process would be infeasible at this

23   time or overburden the process of updating the Department's systems to

24   _____

25   (…continued)
     resident of a state who asserts that a state law discriminates against her based solely

26   on her residency in that state satisfies none of those criteria.

27   [12] Section 30314 can withstand heightened scrutiny as well. But for purposes
     of this motion to dismiss, and in the context of the complaint's residency-based

28   equal protection claim, there is no need to discuss that standard.

Mem. of P. & A. in Supp. of Cal. Att'y General's Mot. to Dismiss (3:18-cv-00802-BEN-JLB)

accommodate background checks for ammunition.  They also could have decided, for example, that the vast majority of people bringing ammunition into the State are residents, and that ensuring that prohibited persons are not acquiring ammunition from that source should be regulated first.  This type of incremental regulation is permissible under rational basis review.  *See Williamson*, 348 U.S. at 489.  And the reasoning supporting it needs no support in the legislative record.  *See Beach Commc'n*, 508 U.S. at 315.  Nothing would stop the voters or the California Legislature from extending the section 30314's delivery requirements to non-residents when it is feasible or the time is right.

**CONCLUSION**

For the foregoing reasons, this Court should grant the Attorney General's motion to dismiss Plaintiffs' dormant Commerce Clause claim (first claim for relief, Compl. ¶¶ 77-85) and their equal protection claim (seventh claim for relief, Compl. ¶¶ 114-21).

Dated:  May 18, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/s/ Nelson Richards
NELSON R. RICHARDS
Deputy Attorney General
*Attorneys for Defendant Attorney
General Xavier Becerra*