1  XAVIER BECERRA
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  NELSON R. RICHARDS
   Deputy Attorney General
4  State Bar No. 246996
    2550 Mariposa Mall, Room 5090
5   Fresno, CA 93721
    Telephone: (559) 705-2324
6   Fax: (559) 445-5106
    E-mail: Nelson.Richards@doj.ca.gov
7  *Attorneys for Defendant Attorney General*
   *Xavier Becerra*

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13  **KIM RHODE et al.,**                    3:18-cv-00802-BEN-JLB

14                          Plaintiffs,

15        **v.**                              **MEMORANDUM OF POINTS AND
                                              AUTHORITIES IN SUPPORT OF
16                                            DEFENDANT XAVIER
                                              BECERRA'S MOTION TO
17  **XAVIER BECERRA, in his official         DISMISS THE FIRST AMENDED
    capacity as Attorney General of the      COMPLAINT**
    State of California, et al.,**
18                                            Judge:        Hon. Roger T. Benitez
                            Defendants.       Date:         Sept. 20, 2018
19                                            Time:         10:00 a.m.
                                              Courtroom:    5A
20                                            Action Filed: April 26, 2018

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................... 1

Background ..................................................................................................... 2

    I.     Californians Adopt the Safety for All Act, Imposing New
           Requirements on Ammunition Sales and Transfers ........................... 2

    II.    Plaintiffs Challenge the State's New Ammunition Laws .................... 4

Legal Standard ............................................................................................... 5

Argument ....................................................................................................... 6

    I.     The First Amended Complaint Fails to State a Claim for
           Violation of the Dormant Commerce Clause ....................................... 6

          A.    The Safety for All Act Does Not Regulate
                 Extraterritorially. ....................................................................... 7

          B.    The Act Does Not Discriminate Against Interstate
                 Commerce. .................................................................................. 9

          C.    The FAC Does Not Allege a Substantial Burden on
                 Interstate Commerce and Thus Plaintiffs' Claim Under
                 *Pike* Fails as a Matter of Law ................................................... 14

               1.     The FAC Does Not Allege Facts Showing a
                     Substantial Burden on Interstate Commerce. ................. 15

               2.     The Act's Benefits Eclipse any Burden on
                     Interstate Commerce. ....................................................... 17

    II.    The FAC Fails to State a Claim for Relief Under the Equal
           Protection Clause ................................................................................ 18

          A.    An Alleged Violation of the Second Amendment Cannot
                 Form the Basis of an Equal Protection Claim. ........................ 21

          B.    Plaintiffs Cannot State a Viable Equal Protection Claim
                 Based on Their Status as California Residents. ....................... 20

    III.   Federal Law Does Not Preempt Section 30314. ................................. 21

Conclusion ................................................................................................... 25

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ......................................................................... 5, 7, 8

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) ............................................................. 6, 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................... 5

*Brown & Williamson Tobacco Corp. v. Pataki*
320 F.3d 200 (2d Cir. 2003) ................................................................ 12

*Burgess v. United States*
553 U.S. 124 (2008) ............................................................................. 23

*Chinatown Neighborhood Ass'n v. Harris*
794 F.3d 1136 (9th Cir. 2015) .................................................. 7, 8, 9, 14

*City of Camden v. Beretta U.S.A. Corp.*
81 F. Supp. 2d 541 (D.N.J. 2000) ...................................................... 22

*City of Cleburne v. Cleburne Living Ctr., Inc.*
473 U.S. 432 (1985) ............................................................................. 18

*Coalition of N.J. Sportsmen v. Florio*
744 F. Supp. 602 (D.N.J. 1990) ............................................... 22, 24, 25

*Dep't of Revenue of Ky. v. Davis*
553 U.S. 328 (2008) ................................................................... 6, 9, 13

*Exxon Corp. v. Governor of Maryland*
437 U.S. 117 (1978) ................................................................ 14, 16, 17

*Fayer v. Vaughn*
649 F.3d 1061 (9th Cir. 2011) .............................................................. 6

*FCC v. Beach Commc'ns, Inc.*
508 U.S. 307 (1993) ...................................................................... 20, 21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Flanagan v. Harris*
No. LACV1606164JAKASX, 2017 WL 729788 (C.D. Cal. Feb. 23, 2017) ...................................................................................................... 19

*Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*
746 F. Supp. 1415 (E.D. Cal. 1990) .................................................. 24

*Gen. Motors Corp. v. Tracy*
519 U.S. 278 (1997) ........................................................................... 10

*Granholm v. Heald*
544 U.S. 460 (2005) ..................................................................... 13, 14

*Healy v. Beer Inst.*
491 U.S. 324 (1989) ............................................................................. 6

*Kwong v. Bloomberg*
723 F.3d 160 (2d Cir. 2013) .............................................................. 19

*Lamie v. U.S. Trustee*
540 U.S. 526 (2004) ........................................................................... 23

*Lyng v. Castillo*
477 U.S. 635 (1986) ........................................................................... 20

*Maine v. Taylor*
477 U.S. 131 (1986) ............................................................................. 9

*Meese v. Keene*
481 U.S. 465 (1987) ........................................................................... 23

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
990 F. Supp. 2d 349 (W.D.N.Y. 2013) .............................................. 12

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) .................................................... *passim*

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*
511 U.S. 93 (1994) .............................................................................. 6

# TABLE OF AUTHORITIES
### (continued)

Page

*Pharm. Research & Mfrs. of Am. v. County of Alameda*
   768 F.3d 1037 (9th Cir. 2014) ...................................................................*passim*

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) ................................................................................... 7, 14

*Puerto Rico v. Franklin Ca. Tax-Free Trust*
   136 S. Ct. 1938 (2016) .................................................................................. 22

*Rocky Mountain Farmers Union v. Corey*
   730 F.3d 1070 (9th Cir. 2013) ...................................................................... 10

*Romer v. Evans*
   517 U.S. 620 (1996) ..................................................................................... 18

*Sam Francis Found. v. Christies, Inc.*
   784 F.3d 1320 (9th Cir. 2015) (en banc) ................................................. 6, 7, 8

*Teixeira v. County of Alameda*
   822 F.3d 1047 (9th Cir.) ........................................................................... 18, 19

*W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*
   451 U.S. 648 (1981) ..................................................................................... 20

*Williamson v. Lee Optical of Okla., Inc.*
   348 U.S. 483 (1955) ................................................................................. 20, 21

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Article I, § 8 ................................................................................................... 6
   Equal Protection Clause ........................................................................*passim*
   Second Amendment ...............................................................................*passim*
   Fourteenth Amendment ............................................................................ 1, 19
   Fourteenth Amendment, § 1 ......................................................................... 18

iv

Mem. of P. & A. in Supp. of Cal. Att'y
General's Mot. to Dismiss the First Am. Compl. (3:18-cv-00802-BEN-JLB)

# TABLE OF AUTHORITIES
### (continued)

**Page**

**FEDERAL STATUTES**

18 U.S.C.
§ 921(a)(3) ................................................................................. 22
§ 923 ........................................................................................... 23
§ 926A ................................................................................. *passim*
§ 927 ........................................................................................... 22

Gun Control Act ................................................................. 22, 23

**STATE STATUTES**

California Penal Code
§ 26710 ......................................................................................... 4
§ 30312 ................................................................. 8, 10, 11, 22
§ 30312(a)(1) ..................................................................... 10, 16
§ 30312(a)-(b) ............................................................................ 3
§ 30312(b) ................................................................... 3, 10, 11
§ 30312(c) ...................................................................... 3, 13
§ 30312(c)(1) .......................................................................... 13
§ 30314 ................................................................................. *passim*
§ 30314(a) ................................................................... 19, 20
§ 30314(c) ................................................................................ 24
§ 30342 ......................................................................................... 4
§ 30347 ......................................................................................... 4
§ 30348 ......................................................................................... 4
§ 30350 ......................................................................................... 4
§ 30352 ................................................................................ 3, 21
§ 30352(b)-(d) ............................................................................ 3
§ 30352(c) ................................................................................... 4
§ 30363 ......................................................................................... 4
§ 30370 ................................................................................. *passim*
§ 30370(a) ................................................................................... 3
§ 30370(a)(3), (c) ...................................................................... 4
§ 30370(a)-(b) ....................................................................... 3, 4
§ 30370(b) ................................................................................. 21
§ 30370(c) ................................................................................. 16
§ 30370(d) ................................................................................... 4
§ 30370(e) ........................................................................... 4, 16

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

§ 30385 ........................................................................................ 4, 10, 11
§ 30390 .................................................................................................... 4
§ 30395 .................................................................................................... 4

Senate Bill 1235 (2016 Cal. Stat., ch. 55) ............................................ 3

New York Secure Ammunition and Firearms Enforcement Act of 2013 ............... 12

INITIATIVE MEASURES

Prop. 63
§§ 2.1-2.4 ............................................................................................ 2
§§ 2-3 ........................................................................................... *passim*
§§ 2.5-2.8 ............................................................................................ 2
§§ 2.6-2.7 ........................................................................................ 2, 3
§ 2.7 .................................................................................................. 3§
§ 3.1 .................................................................................................. 2
§§ 3.2-3.3 ........................................................................................... 3

REGULATIONS

California Code of Regulations
Title 11, §§ 4036-4041 ...................................................................... 4
Title 11, § 4263 ......................................................................... 11, 15
Title 11, § 4263(a) ........................................................................... 16
Title 11, § 4263(b) ........................................................................... 16

COURT RULES

9th Circuit Rule 35-3 ............................................................................ 19

Federal Rule of Civil Procedure 12(b)(6) .............................................. 5

OTHER AUTHORITIES

132 Cong. Rec. H4102–03 (Jun. 24, 1986) .................................... 24, 25

**INTRODUCTION**

Before 2016, violent felons and other people forbidden from possessing firearms or ammunition could flout the law and buy ammunition with ease. Although California's background check process would prevent these individuals from purchasing a firearm from a licensed vendor, there was no comparable statewide process to prevent them from walking into a store or going online and buying bullets.  To close this loophole and improve public safety, voters adopted Proposition (Prop.) 63, known as the "Safety for All Act of 2016."  The law's most noteworthy reform is that sales or transfers of ammunition in California must occur in face-to-face transactions, subject to a background check, just like gun sales.

Plaintiffs challenge various aspects of Prop. 63 on constitutional grounds.  In addition to alleging various violations of the Second Amendment right to bear arms (claims that this motion does not challenge), Plaintiffs contend that Prop. 63 violates the dormant Commerce Clause (claim one) and the Equal Protection Clause (claim eight), and is preempted by federal law (claim nine).  These three causes of action fail to allege legally cognizable claims.

Plaintiffs cannot state a dormant Commerce Clause claim because Prop. 63 regulates the sale and transfer of ammunition only within California to protect public safety.  The law treats similarly situated in-state and out-of-state vendors equally and thus does not discriminate against interstate commerce.  Nor does it impose a substantial burden on interstate commerce; and, even if it did, the law's public safety benefits would outweigh any burden.  Plaintiffs do not, and cannot, allege, otherwise.

Plaintiffs also cannot allege a viable equal protection claim under any theory. Numerous decisions have rejected attempts to merge Second Amendment claims into Fourteenth Amendment claims, as the first amended complaint (FAC) does here.  And the attempt to allege an equal protection claim on the grounds that

1

Prop. 63 treats residents of other states better than residents of California fails as a matter of law under rational basis review.

The FAC's preemption claim also fails as a matter of law. Section 926A in title 18 of the United States Code does not preempt Prop. 63's requirement that California residents who bring or transport ammunition into the State do so through a licensed ammunition vendor. Section 926A authorizes the transport of firearms from one state where they are legal, through a jurisdiction where they may not be legal, to a destination state where they are legal, so long as certain storage requirements are satisfied. It does not apply to the transportation of ammunition. Nor do the text or purpose of the law support using it, as Plaintiffs attempt to do here, to invalidate the firearms laws of a destination state.

Because the first, eighth, and ninth causes of action do not state claims upon which relief can be granted, the Court should dismiss them.

## BACKGROUND

I. **CALIFORNIANS ADOPT THE SAFETY FOR ALL ACT, IMPOSING NEW REQUIREMENTS ON AMMUNITION SALES AND TRANSFERS**

Prop. 63 introduced "reasonable and common-sense reforms" to California's gun laws while "safeguarding the Second Amendment rights of all law-abiding, responsible Californians." Def. Att'y General's Req. for Judicial Notice in Supp. of Mot. to Dismiss First Am. Compl. (Def. RJN), Ex. 1 at 164 (Prop. 63 § 3.1). These reforms were necessary, the voters concluded, because gun violence kills or seriously injures thousands of Californians each year, "destroy[ing] lives, families and communities." *Id.* at 163-64 (Prop. 63 §§ 2.1-2.4). Loopholes in the State's gun safety laws were allowing violent felons and other persons prohibited from possessing firearms and ammunition to perpetuate gun violence. *See id.* at 164 (Prop. 63 §§ 2.5-2.8).

One of the most significant loopholes allowed people who could not pass the background check required for purchasing a firearm to walk into a sporting goods

2

store or gun shop and buy ammunition with no questions asked. *See id.* (Prop. 63 §§ 2.6-2.7). The voters decided that the law should "require background checks for ammunition sales just like gun sales," *id.* (Prop. 63 § 2.7), to keep ammunition out of the hands of dangerous people who are prohibited under the law from possessing guns or ammunition, *id.* (Prop. 63 §§ 3.2-3.3).

To help achieve that goal, Prop. 63 amended the California Penal Code to regulate the sale or transfer of ammunition in a manner similar to the sale or transfer of guns.[1] Ammunition sales, deliveries, or transfers in California must now be conducted by or processed through a licensed ammunition vendor in a face-to-face transaction. Cal. Penal Code § 30312(a)-(b).[2] Californians may still purchase ammunition online or from other lawful sources that do not have a physical location in California. *See id.* § 30312(b). But those purchases must be received and processed by a California-licensed ammunition vendor. *Id.* Similarly, residents who want to bring ammunition into California that they have obtained outside the State must first deliver it to a licensed ammunition vendor. *Id.* § 30314.

These licensed ammunition vendors will have to conduct background checks before selling or transferring ammunition to a buyer in California, beginning in July 2019. *Id.* §§ 30352, 30370. For each transaction, they will have to record information—including the purchaser's driver's license number and home address, and the brand, type, and amount of ammunition—and submit that information to the California Department of Justice. *Id.* §§ 30352(b)-(d), 30370(a). The Department, upon receipt of the information, will determine whether the purchaser is authorized to buy ammunition. *Id.* § 30370(a)-(b). Anyone who has a certificate of eligibility

---

[1] Before the November 2016 election, the California Legislature enacted Senate Bill 1235 (2016 Cal. Stat., ch. 55). That law prospectively amended aspects of Prop. 63. References to Prop. 63 are to the law as amended.

[2] The law exempts certain groups, such as sworn peace officers, from various requirements, including the law's sale, delivery, and transaction requirements. *See, e.g.*, Cal. Penal Code § 30312(c).

issued by the Department or whose information matches an entry in the Department's Automated Firearms System and who does not appear in the Department's prohibited persons file may purchase ammunition.[3]  *Id.*  Licensed ammunition vendors cannot provide ammunition to a purchaser without Department approval.[4]  *Id.* §§ 30370(d), 30352(c).

Any person or business who sells more than 500 rounds in a 30-day period must have a license to sell ammunition.  *Id.* § 30342.  A license may authorize ammunition sales at a specific physical location or at certain gun shows.  *Id.* § 30348.  Ammunition must be stored or displayed so that it is inaccessible to customers without assistance from employees, who themselves must have Department issued certificates of eligibility.  *Id.* §§ 30347, 30350.  Licensed ammunition dealers also have a duty to report a theft of ammunition to appropriate law enforcement agencies.  *Id.* § 30363.

Prop. 63 authorizes the Department to issue licenses, promulgate application and enforcement requirements, keep a registry of licensed vendors that is available to law enforcement, and charge fees to cover the reasonable cost of the licensing program.  *Id.* §§ 30370(e), 30385, 30390, 30395.

## II.   PLAINTIFFS CHALLENGE THE STATE'S NEW AMMUNITION LAWS

The FAC alleges that California's new rules on the transfer, purchase, and sale of ammunition in California violate the federal constitution in various ways and are preempted by federal law.  *See generally* FAC ¶¶ 1-6, 47-133, ECF No. 9.  Three of

---

[3] As the Bureau of Firearms explains on its website, a certificate of eligibility "certifies the Department . . . has checked its records and determined the recipient is not prohibited from acquiring or possessing firearms at the time the firearms eligibility criminal background check was performed."  Def. RJN, Ex. 2.  The process for obtaining and renewing a certificate is set forth in statute and regulation. Cal. Penal Code § 26710; Cal. Code Regs., tit. 11, §§ 4036-4041.

[4] The law also requires the Department to develop a procedure for people who are not prohibited from purchasing ammunition but who do not have a certificate of eligibility or an entry in the Automated Firearms System to receive approval for a "single ammunition transaction or purchase."  Cal. Penal Code § 30370(a)(3), (c).

4

the eight causes of action alleged are challenged here.  These claims allege violations of the Commerce Clause and the Equal Protection Clause of the U.S. Constitution, and contend that section 30314 is preempted by federal law.[5]  *Id.* ¶¶ 47-59, 77-79, 82-91, 100-03, 123-33.

The plaintiffs fall into three categories:  individuals, out-of-state businesses, and a non-profit organization.  The individuals include six California residents.  *Id.* ¶¶ 11-22.  In the past, they have purchased ammunition online and had it shipped to their residence, or purchased ammunition outside of California and brought it into the State themselves.  *Id.* ¶¶ 11-17.  They would like to resume this practice.  *Id.* ¶¶ 11-17.

The three out-of-state business Plaintiffs have sold ammunition to California residents and shipped it to their homes.  *Id.* ¶¶ 18-20.  They would like to resume direct shipments to their customers in California.  *Id.* ¶¶ 18-20.  One of the businesses, Sam's Shooters' Emporium, sits near the California-Arizona border, and has California customers who would like to buy ammunition in Arizona and bring it into California without Department approval.  *Id.* ¶ 20.

Plaintiff California Rifle & Pistol Association, Inc., is a firearm advocacy group.  *Id.* ¶ 21.  It has joined the suit on behalf of its members.  *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  The complaint must allege facts establishing "a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  On

---

[5] The claims that are not at issue in this motion allege that Prop. 63, and one of its implementing regulations, violates the Second Amendment and the Supremacy Clause.  FAC ¶¶ 47-133.

5

1    review of a Rule 12(b)(6) motion, the court accepts the factual allegations in the

2    complaint as true and construes the complaint in the light most favorable to the

3    plaintiff.  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  But

4    the court does not accept the truth of legal assertions cast as factual allegations or

5    make unwarranted inferences in the plaintiff's favor.  *Id.*

6                                    **ARGUMENT**

7    **I.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR**
         **VIOLATION OF THE DORMANT COMMERCE CLAUSE**
8

9          The Commerce Clause authorizes Congress to "regulate Commerce with

10   foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It

11   includes an implied limitation on the states' authority often referred to as the

12   negative or dormant Commerce Clause.  *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1

13   (1989).  "The modern law of what has come to be called the dormant Commerce

14   Clause is driven by concern about economic protectionism—that is, regulatory

15   measures designed to benefit in-state economic interests by burdening out-of-state

16   competitors."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008)

17   (internal quotation marks omitted).  Economic protectionism or discrimination

18   under the dormant Commerce Clause "means differential treatment of in-state and

19   out-of-state economic interests that benefits the former and burdens the latter."  *Or.*

20   *Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994)

21   (internal quotation marks omitted).

22         A law that regulates extraterritorially—that is, a law that directly regulates

23   conduct that occurs wholly outside of a state's borders—is invalid per se under the

24   dormant Commerce Clause.  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320,

25   1323 (9th Cir. 2015) (en banc).  If there is no such per se violation, courts employ a

26   two-tiered approach to determine whether the law violates the dormant Commerce

27   Clause.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d

28   937, 948 (9th Cir. 2013).  Courts first ask whether the law "discriminates against

6

1   interstate commerce, or [whether] its effect is to favor in-state economic interests

2   . . . ." *Id.* at 948.  If it does, they apply a form of strict scrutiny.  *Id.* at 948 & n.7.

3   If the law regulates evenhandedly, courts "examine[] whether the State's interest is

4   legitimate and whether the burden on interstate commerce clearly exceeds the local

5   benefits."  *Id*.; *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

6        Plaintiffs contend that Penal Code sections 30312, 30314, 30370, and 30385

7   violate the Commerce Clause because they operate extraterritorially, favor in-state

8   ammunition vendors at the expense of out-of-state vendors, and impose

9   impermissible burdens on interstate commerce.  Because these statutes regulate

10  only conduct within California, apply equally to in-state and out-of-state

11  ammunition vendors, and do not impose a substantial burden on interstate

12  commerce, Plaintiffs' claims fail as a matter of law.  *See Iqbal*, 556 U.S. at 678-79;

13  *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145-47 (9th Cir. 2015).

14        **A.   The Safety for All Act Does Not Regulate Extraterritorially.**

15        The FAC alleges that sections 30312, 30314, 30370, and 30385 regulate

16  extraterritorially in two ways.  FAC ¶ 55.  It alleges that these statutes prevent out-

17  of-state manufacturers from selling directly to California consumers.  *Id.*  It also

18  alleges that these statutes "effectively prohibit" out-of-state companies from selling

19  ammunition to California residents who intend to return to California with the

20  ammunition.  *Id.*  These allegations do not state a per se violation of the dormant

21  Commerce Clause.

22        For a law to violate the dormant Commerce Clause on extraterritoriality

23  grounds, it must directly regulate "commercial transactions that take place wholly

24  outside the State's borders."  *Sam Francis Found.*, 784 F.3d at 1323 (quotation

25  marks omitted).  Thus, the allegation that Prop. 63 prevents out-of-state

26  manufacturers from selling directly to California consumers cannot satisfy this

27  standard because the transaction involves sales or transfers to Californians within

28  the State.  *See* FAC ¶ 55.  That is permissible under the dormant Commerce Clause.

7

1  *See, e.g.*, *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-47 ("[A] state may

2  regulate commercial relationships in which at least one party is located in

3  California. . . .  And even when state law has significant extraterritorial effects, it

4  passes Commerce Clause muster when . . . those effects result from the regulation

5  of in-state conduct." (quotation marks omitted)).

6      The laws challenged here stand in contrast to the law at issue in the Ninth

7  Circuit's en banc decision in *Sam Francis Foundation*, 784 F.3d at 1323-24.  In that

8  case, the law required California residents to pay royalty fees to artists on certain art

9  sales.  *Id.* at 1324.  The court held the requirement unconstitutional with respect to

10  wholly out-of-state sales, where, for example, a "California resident has a part-time

11  apartment in New York, buys a sculpture in New York from a North Dakota artist

12  to furnish her apartment, and later sells the sculpture to a friend in New York"—

13  that is, "even if the sculpture, the artist, and the buyer never traveled to, or had any

14  connection with California."  *Id.*  By contrast, here, the laws regulate only

15  ammunition sales to purchasers inside California or the conduct of California

16  residents who want to bring ammunition into the State.  *See* Cal. Penal Code

17  §§ 30312, 30314.

18      Plaintiffs' additional allegation that Prop. 63 "effectively prohibit[s] out-of-

19  state companies from selling ammunition to California residents who intend to

20  return to California with the purchased ammunition," FAC ¶ 55, is incorrect as a

21  matter of law.  Nothing in the statute purports to control transactions between out-

22  of-state businesses and California residents who buy ammunition in person outside

23  the State.  *See* Cal. Penal Code § 30314.  Instead, Prop. 63 regulates the conduct of

24  residents when they return to California with ammunition purchased out of state,

25  and regulation of that conduct does not offend the Commerce Clause because it

26  occurs within the State.[6]  *See Pharm. Research & Mfrs. of Am. v. County of*

27      [6] The FAC also alleges that Prop. 63 "render[s] unlawful transactions that

28  occur wholly out of state . . . ."  FAC ¶ 58.  This allegation is unsubstantiated by

8

1  *Alameda*, 768 F.3d 1037, 1044 (9th Cir. 2014); *Chinatown Neighborhood Ass'n*,
2  794 F.3d at 1145-47.

3      **B.   The Act Does Not Discriminate Against Interstate Commerce.**

4      Sections 30312, 30314, 30370, and 30385 also do not discriminate against
5  interstate commerce.  "A statute is discriminatory if it imposes commercial barriers
6  or discriminates against an article of commerce by reason of its origin or destination
7  out of State."  *Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1041 (quotation marks
8  and alterations omitted).  "Conversely, a statute that treats all private companies
9  exactly the same does not discriminate against interstate commerce.  This is so even
10  when only out-of-state businesses are burdened because there are no comparable in-
11  state businesses."  *Id.* (quotation marks omitted).  For purposes of dormant
12  Commerce Clause analysis, a law may discriminate against interstate commerce in
13  its purpose, on its face, or in its effect.  *Maine v. Taylor*, 477 U.S. 131, 138 (1986).
14  Plaintiffs do not allege a purpose claim, and their facial discrimination and
15  discriminatory effects claims fail as a matter of law.

16      Prop. 63's purpose is to improve public safety by imposing a regulatory
17  process that ensures people whom the law prohibits from possessing ammunition
18  cannot buy ammunition with ease.  Def. RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3).
19  Plaintiffs thus do not, and cannot allege, that Prop. 63 was designed or intended to
20  protect the California ammunition industry or California ammunition vendors.  *See*
21  *Dep't of Revenue of Ky.*, 553 U.S. at 337-38 (explaining that dormant Commerce
22  Clause protects against economic protectionism and advancing in-state economic
23  interests); *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148
24  (9th Cir. 2012) ("The central rationale for the rule against discrimination is to
25  prohibit state or municipal laws whose object is local economic protectionism,

26  anything in the law itself.  No part of Prop. 63 regulates transactions that occur
27  wholly outside of California.  The allegation is the sort of "[t]hreadbare recital[] of
    the elements of a cause of action, supported by mere conclusory statements" that
28  the Supreme Court has held "do not suffice" to state a claim.  *See Iqbal*, 556 U.S. at
    678.

9

1    because these are the laws that would excite those jealousies and retaliatory

2    measures the Constitution was designed to prevent." (quotation marks omitted)).

3         Nor do the allegations about Prop. 63's express language or effect state a

4    claim because the law "treats all private companies exactly the same." *See Pharm.*

5    *Research & Mfrs. of Am.*, 768 F.3d at 1042 (quotation marks omitted). Section

6    30312 requires all ammunition sales in California to be "conducted by or processed

7    through a licensed ammunition vendor." Cal. Penal Code § 30312(a)(1). Another

8    part of the same statute provides that "ammunition may be purchased or acquired

9    over the internet or through other means of remote ordering if a licensed vendor

10   initially receives the ammunition and processes the transaction in compliance" with

11   the law. *Id.* § 30312(b). Section 30370 requires Department approval before an

12   ammunition sale or transfer within California can be completed, while section

13   30385 authorizes the Department to issue licenses and establish procedures for

14   doing so. Section 30314 requires California residents who want to bring into the

15   State ammunition that they purchased elsewhere to first deliver it to a licensed

16   vendor for delivery to the resident in California. None of these laws privileges

17   California business interests over out-of-state business interests. *See Rocky*

18   *Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1090 (9th Cir. 2013) (holding

19   that California's Low Carbon Fuel Standard did not discriminate against interstate

20   commerce because it "does not isolate California and protect its producers from

21   competition"). They apply to all ammunition sales to consumers in California,

22   regardless of where they originate or whether the company selling the ammunition

23   is a California company or incorporated in another state.

24        Most of the allegations compare Plaintiff out-of-state businesses, which sell

25   ammunition online, with in-state brick-and-mortar stores. *See* FAC ¶¶ 55-59, 82-

26   90. That comparison is inapt. Discrimination under the dormant Commerce Clause

27   "assumes a comparison of substantially similar entities." *Gen. Motors Corp. v.*

28   *Tracy*, 519 U.S. 278, 298 (1997). The relevant comparison is between Plaintiff

10

1  businesses and online retailers in California.  A California company that sells

2  ammunition over the internet must have ammunition delivered to customers

3  through a licensed ammunition vendor, just like Plaintiff Sam's Shooters'

4  Emporium and the other Plaintiff out-of-state businesses.[7]  *See id.* § 30312(b).

5  Prop. 63 treats California and out-of-state online sellers the same.  And an out-of-

6  state ammunition vendor that has a physical store in California may obtain a license

7  and sell ammunition in California.  *See id.* § 30312.  So, for example, the Dick's

8  Sporting Goods in San Diego, which is owned by a Delaware Corporation with its

9  principal place of business in Pennsylvania, may apply for an ammunition license,

10  just like a brick-and-mortar store owned, incorporated, or headquartered in

11  California can.  *See id.*  Again, Prop. 63 treats in-state and out-of-state businesses

12  the same.  Similarly, each of those vendors must receive approval from the

13  Department before completing an ammunition sale or transfer within California.

14  *See id.* § 30370.  And the Department's authorization to issue licenses does not

15  require or permit it to distinguish between in-state and out-of-state businesses.  *See*

16  *id.* § 30385.

17      State residents who purchase ammunition outside California—either at a

18  physical store, over the internet, or by any other lawful means—must deliver it to a

19  licensed ammunition vendor before taking possession of it in the State.  *See id.*

20  § 30314.  That vendor may be an out-of-state business with a brick-and-mortar

21  location in California, like the San Diego Dick's Sporting Goods in the example

22  above, or a California company.  *See id.*  The law also makes no distinction

23  between the ownership of the business that sells the ammunition outside of

24  California.  *See id.*  It may be a California company, or it may be a business like

25  _____
   [7] Plaintiffs also allege that brick-and-mortar ammunition vendors have
26  discretion to charge fees or refuse to process a transaction.  FAC ¶¶ 30, 57.  But
   those brick-and-mortar stores, which may be California or out-of-state businesses,
27  may exercise that discretion over any request to process an online ammunition
   transaction, regardless of where the online vendor is located.  *See* Cal. Code Regs.,
28  tit. 11, § 4263.  Thus, to the extent plaintiffs challenge section 4263, *see* FAC ¶ 57,
   that challenge fails for the same reason their challenge to the statutes fails.

11

1    one of the Plaintiff out-of-state businesses.  No California law stops the State's

2    residents from buying ammunition outside of the State and using it however they

3    desire (subject to federal and local law).  It is only when they bring that ammunition

4    into California that residents must comply with section 30314.  *See id.*  In short,

5    that section regulates residents who bring ammunition into the State, not the out-of-

6    state commercial transaction in which that ammunition was purchased.

7        Prop. 63 thus does not discriminate against interstate commerce in its purpose,

8    by its terms, or in its effect.  The Western District of New York reached the same

9    conclusion when dismissing a dormant Commerce Clause claim challenging a very

10   similar New York law.  *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F.

11   Supp. 2d 349 (W.D.N.Y. 2013), *aff'd in part and rev'd in part on other grounds*,

12   804 F.3d 242 (2d Cir. 2015).[8]  Like Prop. 63, the New York Secure Ammunition

13   and Firearms Enforcement Act of 2013, known as the SAFE Act, requires

14   ammunition dealers to be licensed and to conduct background checks.  *Id.* at  357.

15   But it goes further than Prop. 63 and "bans the sale of ammunition over the

16   Internet, imposing a requirement that any ammunition transaction be conducted

17   'face-to-face.'"  *Id.*; *see also id.* at 378 (noting that the New York SAFE Act

18   "effectively bans ammunition sales over the Internet and imposes a requirement that

19   an ammunition transfer must occur in person" (quotation marks omitted)).  The

20   court concluded that the face-to-face requirement applies "evenhandedly between

21   in-state and out-of-state arms and ammunition dealers."  *Id.* at 380 (analogizing to

22   *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2d Cir. 2003), in

23   which the court rejected a dormant Commerce Clause challenge to a law requiring

24   that cigarettes be sold in face-to-face transactions).  Prop. 63 takes the same

25   evenhanded approach to out-of-state and in-state ammunition vendors.  *See* Cal.

26   Penal Code §§ 30312, 30314, 30370, 30385.

27   _____

28      [8] The dormant Commerce Clause claims were not at issue before the Second
     Circuit on appeal.  *N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 251 n.20.

12

The FAC suggests that Prop. 63 discriminates against interstate commerce because it "improperly favor[s] businesses with a physical presence in California" and because "ammunition vendors without a physical presence in California do not have direct access to California consumers, while those with a physical presence in California do."[9]  *See* FAC ¶ 57; *see also id.* ¶ 88.  This argument appears to relate to the FAC's citation to *Granholm v. Heald*, 544 U.S. 460 (2005).  *See* FAC ¶ 52.  But that case is inapposite here and it does not support Plaintiffs' theory.

In *Granholm*, the Court struck down a law requiring out-of-state wineries to establish a physical presence in New York before they could ship directly to customers in the state, which in-state wineries could essentially do as a matter of course.  *See id.* at 473-76.  The requirement was part of a national "patchwork of laws" designed to "protect local wineries" as part of "an ongoing, low-level trade war."  *See id.* at 473.  Prop. 63 is different.  It was not designed to promote the California ammunition industry; it was designed to save lives.  *See* Def. RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3).  Moreover, as discussed above, Prop. 63 does not have a discriminatory effect on interstate commerce because neither in-state nor out-of-state vendors may ship directly to customers in the California.[10]  *See* Cal. Penal Code § 30312.  Prop. 63 thus does not favor in-state economic interests, which the law in *Granholm* did by requiring out-of-state wineries to incur expenses that in-state wineries did not have to incur to ship wine directly to customers.  Under Prop. 63, any business that sells ammunition must do so in face-to-face transactions.

---

[9] Plaintiffs' use of the phrase "businesses with a physical presence in California," *see, e.g.*, FAC ¶ 88, elides the distinction between in-state and out-of-state economic interests, which is central to any dormant Commerce Clause analysis.  *See, e.g.*, *Dep't of Revenue of Ky.*, 553 U.S. at 337-38.

[10] Prop. 63 contains some exceptions to the ban on direct shipments.  *See* Cal. Penal Code § 30312(c).  But these exceptions confirm the law's nondiscriminatory nature.  Out-of-state vendors like Plaintiffs may continue to ship directly to these exempt purchasers subject to the same rules as in-state vendors.  *See, e.g.*, *id.* § 30312(c)(1) (noting the requirements that a purchaser must satisfy to take advantage of the exception on direct shipping for law enforcement agencies).

13

1    Plaintiffs' latent discriminatory-effect theory more closely resembles the

2    challenge brought in *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-20

3    (1978).  In that case, the Supreme Court upheld a Maryland law that prohibited

4    companies that produced and refined petroleum from also operating gas stations in

5    the state.  No company in Maryland produced or refined petroleum.  *Id.* at 123.

6    Exxon and other companies argued that the law violated the dormant Commerce

7    Clause because it restricted a method of distribution that burdened only out-of-state

8    companies.  *Id.*  Plaintiffs' argument here is similar.  The core of their dormant

9    Commerce Clause claim is not that Prop. 63 treats in-state companies or interests

10   differently from out-of-state companies or interests, as the law did in *Granholm*, but

11   rather that it will cause the supply of ammunition to shift from online (or mail

12   order) sales to sales at brick-and-mortar stores.  *See* FAC ¶¶ 47-59, 82-91.  That

13   theory cannot survive the rule in *Exxon*, which rejects the "notion that the

14   Commerce Clause protects the particular structure or methods of operation in a

15   retail market."  437 U.S. at 127.

16   **C.   The FAC Does Not Allege a Substantial Burden on Interstate**
         **Commerce and Thus Plaintiffs' Claim Under *Pike* Fails as a**
17       **Matter of Law**

18       Where, as here, a law does not discriminate against interstate commerce,

19   courts evaluate it under the balancing test articulated by the Supreme Court in *Pike*

20   *v. Bruce Church, Inc.*, 397 U.S. at 142.  *Pharm. Research & Mfrs. of Am.*, 768 F.3d

21   at 1044.  This test asks whether "the burden [the law] imposes on interstate

22   commerce is clearly excessive in relation to the putative local benefits."  *Id.*

23   (quotation marks omitted).  "[A] plaintiff must first show that the statute imposes a

24   substantial burden before the court will determine whether the benefits of the

25   challenged laws are illusory."  *Id.* (quotation marks omitted).  "Only a small

26   number of cases invalidating laws under the dormant Commerce Clause have

27   involved laws that were genuinely nondiscriminatory."  *Chinatown Neighborhood*

28   *Ass'n*, 794 F.3d at 1146 (ellipses and brackets omitted).

14

1.   **The FAC Does Not Allege Facts Showing a Substantial Burden on Interstate Commerce.**

A "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148.  Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.* (emphasis in original).  Such "significant burden[s]" generally involve "inconsistent regulation of activities that are inherently national or require a uniform system of regulation." *Id.*  Burdens on commerce that result from regulations pursuant to the State's police power to protect the public health and safety are generally not regarded as significant even if they involve some loss of trade.  *See id.* (citing *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)).  Indeed, the Supreme Court "generally has supported the rights of states to 'impose even burdensome regulations in the interest of local health and safety.'"  *Id.* (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).

Prop. 63 is a garden-variety exercise of police power to protect the public health and safety of Californians.  By placing restrictions on ammunition sales to prohibited persons that mirror similar restrictions on firearm sales, the law protects the public from gun crime and violence.  *See* Def. RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3).  The FAC alleges no facts that could support the conclusion that ammunition falls into the special category of commerce requiring national uniformity.

The nature of the burden alleged is not entirely clear.  *See* FAC ¶¶ 55-59, 84-88.  But the allegations appear to fall into three categories.  First, the FAC suggests that Prop. 63 will burden interstate commerce by causing out-of-state businesses Plaintiffs to lose money.  *See, e.g., id.* ¶ 20 ("The Challenged Provisions [will] . . . caus[e] Sam's Shooters [sic] Emporium to lose revenue from their business.").  As

15

1    the Ninth Circuit has explained, however, "the mere loss of profit" does not burden

2    interstate commerce for purposes of the dormant Commerce Clause.  *Nat'l Ass'n of*

3    *Optometrists*, 682 F.3d at 1152 n.11.

4         Second, the FAC suggests that the fees authorized by Prop. 63 and one of its

5    implementing regulations (Cal. Code Regs., tit. 11, § 4263) burden interstate

6    commerce.  *See* FAC ¶¶ 57, 86.  The law adds a fee of up to one dollar for any

7    ammunition transaction, which applies to in-state and out-of-state vendors alike.

8    Cal. Penal Code § 30370(e).  The Department may also charge a fee to cover its

9    reasonable costs, but that will not exceed fourteen dollars, to those who wish to

10   make a one-time purchase or transfer of ammunition.  *See id.* § 30370(c).  As with

11   the one-dollar transaction fee, this fee applies to all transactions and to any

12   purchasers who meet the law's requirements.  *See id.*  Prop. 63 also allows

13   ammunition vendors to charge a five dollar "administrative" fee to deliver

14   ammunition purchased online or through the mail.  *Id.* § 30312(a)(1); Cal. Code

15   Regs., tit. 11, § 4263(a).  If a purchaser cannot be present for immediate delivery,

16   regulations permit the licensed ammunition dealer to charge an additional storage

17   fee that the parties agree to in advance.  Cal. Code Regs., tit. 11, § 4263(b).  But

18   like the other fees, all of these fees are chargeable to California businesses that sell

19   ammunition online or through the mail.

20        Finally, Plaintiffs appear to contend that Prop. 63 burdens interstate commerce

21   by preventing California residents from purchasing ammunition online.  *See* FAC

22   ¶¶ 88-89.  But as the Supreme Court explained in *Exxon*, the Commerce Clause

23   "protects the interstate market, not particular interstate firms, from prohibitive or

24   burdensome regulations," and while it "may be true that the consuming public will

25   be injured by the loss of the high-volume, low-priced stations operated by the

26   independent refiners, . . . that argument relates to the wisdom of the statute, not to

27   its burden on commerce."  437 U.S. at 127-28.

28

16

1    The Ninth Circuit followed this guidance in *National Association of*

2    *Optometrists*, and upheld California laws prohibiting opticians from offering

3    eyewear in the same location in which eye exams are provided.  682 F.3d at 1145-

4    46.  That law did not similarly regulate optometrists and ophthalmologists, allowing

5    them to sell frames and lenses where they conducted eye exams.  *Id.* at 1146.

6    LensCrafters and a trade organization argued the law violated the dormant

7    Commerce Clause because it precluded out-of-state companies from offering one-

8    stop shopping and those companies would "incur great financial loss as a result of

9    the" laws.  *Id.* at 1147.  Following *Exxon*, the court explained that "there is not a

10   significant burden on interstate commerce merely because a non-discriminatory

11   regulation precludes a preferred, more profitable method of operating in a retail

12   market."  *Id.* at 1154.  "[A]n incidental shift in sales and profits to in-state entities

13   from retailers that operate in-state but are owned by companies incorporated out-of-

14   state," the Court held, does not violate the dormant Commerce Clause.  *Id.* at 1155.

15   The FAC thus alleges no legally cognizable burden on interstate commerce.

16   
17          **2.    The Act's Benefits Eclipse any Burden on Interstate**
               **Commerce.**

18   Because the FAC does not allege facts showing a significant or substantial

19   burden on interstate commerce, there is no need to weigh Prop. 63's benefits.  *See*

20   *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 ("[W]here . . . there is no

21   discrimination and there is no significant burden on interstate commerce, we need

22   not examine the actual or putative benefits of the challenged statutes.").  But even if

23   the FAC alleged a significant burden on interstate commerce, Prop. 63's benefits

24   would outweigh that burden.  The law is designed to prevent prohibited persons

25   from obtaining ammunition that can be used in murders, robberies, and other

26   crimes.  *See* Def. RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3).  "[R]egulations that touch

27   upon safety are those that the [Supreme] Court has been most reluctant to

28   invalidate."  *Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1045 (ellipsis omitted).

17

1 These laws receive a "strong presumption of validity." *Id.* (quotation mark
2 omitted).  The claimed burdens of potentially diverting ammunition sales from
3 online retailers to brick-and-mortar retailers, or the imposition of modest fees on
4 online transactions, as Plaintiffs allege, cannot outweigh the public safety benefits
5 that the voters could reasonably expect Prop. 63 to promote.

6
7 **II.   THE FAC FAILS TO STATE A CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE**

8        Plaintiffs allege that Prop. 63 violates the Equal Protection Clause because it
9 burdens their fundamental right to keep and bear arms and because it treats
10 California residents differently from non-residents.  FAC ¶¶ 123-30.  Neither of
11 these allegations states a viable equal protection claim.

12       The Equal Protection Clause prohibits a state from denying "to any person
13 within its jurisdiction the equal protection of its laws."  U.S. Const. amend. XIV,
14 § 1.  The clause ensures that "all persons similarly situated should be treated alike."
15 *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).
16 Legislative provisions that arbitrarily or irrationally create discrete classes cannot
17 withstand constitutional scrutiny under the Equal Protection Clause.  *Romer v.*
18 *Evans*, 517 U.S. 620, 623 (1996).  Courts must balance this principle with the
19 "practical necessity that most legislation classifies for one purpose or another, with
20 resulting disadvantage to various groups or persons."  *Id*. at 631 (citations omitted).
21 In an attempt to reconcile the promise of equal protection with the reality of
22 lawmaking, courts apply the most searching constitutional scrutiny to those laws
23 that burden a fundamental right or target a suspect class, such as those based on
24 race, national origin, or religion.  *Id.*  Laws that do not burden a protected class or
25 infringe on a constitutionally protected fundamental right are subject to rational
26 basis review.  *Id.* at 631.

27
28

18

Mem. of P. & A. in Supp. of Cal. Att'y
General's Mot. to Dismiss the First Am. Compl. (3:18-cv-00802-BEN-JLB)

## A.   An Alleged Violation of the Second Amendment Cannot Form the Basis of an Equal Protection Claim.

The Ninth Circuit has held that where an "equal protection challenge is no more than a Second Amendment claim dressed in equal protection clothing, it is subsumed by, and coextensive with the former, and therefore not cognizable under the Equal Protection Clause." *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir.) (quotations marks, brackets, and internal citation omitted), *vacated by*, 854 F.3d 1046 (9th Cir. 2016), *and reh'g en banc*, 873 F.3d 670 (9th Cir. 2017), *cert. denied*, No. 17-982 (U.S. May 14, 2018);[11] *see also Flanagan v. Harris*, No. LACV1606164JAKASX, 2017 WL 729788, at *5 (C.D. Cal. Feb. 23, 2017) ("An Equal Protection claim brought under the Fourteenth Amendment that is the same as one brought simultaneously under a different constitutional provision cannot provide an independent basis for relief.").

Other courts have reached the same conclusion.  *See, e.g.*, *Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir. 2013) ("Like every Circuit to have addressed this issue, we simply conclude that plaintiffs should not be allowed to use the Equal Protection Clause to obtain review under a more stringent standard than the standard applicable to their Second Amendment claim." (quotation marks omitted)).  The allegations that Prop. 63 violates Plaintiffs' equal protection rights because it restrains their fundamental rights under the Second Amendment, *see* FAC ¶¶ 59, 129, therefore fails as a matter of law.

---

[11] Under Circuit Rule 35-3, the reasoning of the three-judge panel decision is citable as precedent because it was adopted by the en banc court.  Circuit Rule 35-3 provides that after rehearing has been granted a "three-judge panel opinion shall not be cited as precedent by or to this Court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court."  9th Cir. R. 35-3.  The en banc court held that "Teixeira did not seek rehearing of the panel's rejection of his Equal Protection claims.  We affirm the district court on that claim for the reasons given in the panel opinion."  *Teixeira*, 873 F.3d at 676 n.7.

19

Mem. of P. & A. in Supp. of Cal. Att'y
General's Mot. to Dismiss the First Am. Compl. (3:18-cv-00802-BEN-JLB)

### B.   Plaintiffs Cannot State a Viable Equal Protection Claim Based on Their Status as California Residents.

Section 30314 prohibits residents from bringing ammunition into California unless they first deliver it to a licensed ammunition vendor.  Cal. Penal Code § 30314(a).  The FAC alleges that the law violates the Equal Protection Clause because it treats California residents differently than non-residents.  FAC ¶ 128.  It contends that "if two individuals (only one of whom is a California resident) were to purchase ammunition outside of California from the same business and then bring that ammunition into California, only the California resident would be in violation" of Prop. 63.  *Id.*  The FAC does not allege that residents of a state are a protected class.[12]  *See generally id.* ¶¶ 123-30.  The equal protection claim is thus subject to rational basis review.

Under rational basis review, a law "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).  "Those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it."  *Id.* at 315 (quotation marks omitted).  Lawmakers are given "leeway to approach a perceived problem incrementally."  *Id.* at 315.  "Evils in the same field may be of different dimensions and proportions, requiring different remedies . . . ."  *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).  "[R]eform may take one step at a

---

[12] Even if the FAC had alleged that the individual Plaintiffs were a protected class based on their residency in California, the claim would fail.  Equal protection challenges based on residency are subject to rational basis review.  *See, e.g., W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 667 n.21 (1981) (explaining that the Supreme Court has "required no more than a rational basis for discrimination by State against out-of-state interests in the context of equal protection litigation").  Moreover, suspect classes are those that have been subjected to discrimination, who have obvious, immutable, or distinguishing characteristics that define them as a discrete group, and who are a minority or politically powerless.  *See, e.g., Lyng v. Castillo*, 477 U.S. 635, 638 (1986).  A resident of a state who asserts that a state law discriminates against her based solely on her residency in the state enacting the law satisfies none of those criteria.

1   time, addressing itself to the phase of the problem which seems most acute to the

2   legislative mind." *Id.* Legislative distinctions "may be based on rational

3   speculation unsupported by evidence or empirical data." *See Beach Commc'ns*, 508

4   U.S. at 315.

5          Section 30314 satisfies this standard handily.[13]  The voters who adopted the

6   law wanted to keep ammunition out of the hands of prohibited people. *See* Def.

7   RJN, Ex. 1 at 163-64 (Prop. 63 §§ 2-3).  One way Prop. 63 achieves that goal is to

8   have the Department run background checks on those transporting ammunition into

9   the State. *See* Cal. Penal Code §§ 30314, 30352, 30370.  To complete a

10  background check, the Department reviews its records, including its Automated

11  Firearms System and database of certificates of eligibility. *Id.* § 30370(b).  These

12  are state records and databases.  The voters could have thus reasonably decided that

13  including non-residents in the background check process would be infeasible at this

14  time or overburden the process of updating the Department's systems to

15  accommodate background checks for ammunition.  They also could have decided,

16  for example, that the vast majority of people bringing ammunition into the State are

17  residents, and that ensuring that prohibited persons are not acquiring ammunition

18  from that source should be addressed first.  This type of incremental regulation is

19  permissible under rational basis review. *See Williamson*, 348 U.S. at 489.  And the

20  reasoning supporting it needs no support in the legislative record. *See Beach*

21  *Commc'ns*, 508 U.S. at 315.

22  **III.  FEDERAL LAW DOES NOT PREEMPT SECTION 30314.**

23          The FAC alleges that a section of the federal Firearm Owners Protection Act,

24  18 U.S.C. § 926A, preempts section 30314's prohibition on California residents

25  bringing or transporting ammunition into the State without first delivering it to a

26

27          [13] Section 30314 can withstand heightened scrutiny as well.  But for purposes
    of this motion to dismiss, and in the context of the FAC's residency-based equal
28  protection claim, there is no need to discuss that standard.

21

licensed ammunition vendor for processing.  FAC ¶¶ 77-79, 131-33.  Section 926A "provides, in essence, that anyone may transport firearms from one state in which they are legal, through another state in which they are illegal, to a third state in which they are legal, provided the firearms are transported in a prescribed, safe manner."[14]  *Coalition of N.J. Sportsmen v. Florio*, 744 F. Supp. 602, 609 (D.N.J. 1990).  But the Firearms Owners' Protection Act, including § 926A, was not intended "to occupy the field" of firearms regulation; rather, Congress intended to preempt only those state laws that created a "direct and positive conflict" with the Gun Control Act (which the Firearms Owners' Protection Act amended), such that the Act and the state law "cannot be reconciled or consistently stand together."  18 U.S.C. § 927; *see also City of Camden v. Beretta U.S.A. Corp.*, 81 F. Supp. 2d 541, 550 (D.N.J. 2000) ("Congress has stated its intent to share the field of firearms regulation with the states unless there is a direct and positive conflict between state law and federal law."); *Puerto Rico v. Franklin Ca. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) (explaining that an express preemption clause "necessarily contains the best evidence of Congress' pre-emptive intent").  Section 30314 does not directly or positively conflict with § 926A.  It ensures that California residents who bring ammunition into the State undergo a background check confirming that they may lawfully possess the ammunition.  *See* Cal. Penal Code § 30314; *id.*

---

[14] The full text of § 926A reads:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided,* That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

22

1    §§ 30312, 30370.  It does not impede people from travelling through California

2    with firearms or ammunition that they can lawfully possess in their state of origin

3    and destination.

4         The FAC's preemption claim has two fatal defects.  First, Plaintiffs assume

5    that § 926A covers the transportation of ammunition as well as firearms.  FAC ¶ 77.

6    By its terms, however, § 926A entitles non-prohibited people "to transport a

7    firearm"—not a firearm and ammunition—"for any lawful purpose . . . ."  The

8    definition of "firearm" does not include ammunition.  18 U.S.C. § 921(a)(3); *see*

9    *also id.* § 921(a)(17)(A) (defining the term "ammunition").  Section 926A's plain

10   language thus does not support Plaintiffs' argument.  *See Lamie v. U.S. Trustee*,

11   540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function

12   of the courts—at least where the disposition required by the text is not absurd—is

13   to enforce it according to its terms.").

14        Plaintiffs base their preemption argument on a clause in the statute requiring

15   that "any ammunition being transported" with a firearm be stored in the same

16   manner as the firearm, inaccessible to the driver or passengers of a vehicle.  *See*

17   FAC ¶ 77 (citing § 926A).  But that language is simply a prerequisite to invoking

18   the statute's protections for transporting a firearm.  *See* 18 U.S.C. § 926A.  It is not

19   a freestanding protection of transporting ammunition.  *See id.*  Nor can the reach of

20   the statute be enlarged by pretending that the definition of the term "firearm"

21   includes ammunition.  *See Burgess v. United States*, 553 U.S. 124, 130 (2008)

22   ("Statutory definitions control the meaning of statutory words in the usual case. . . .

23   As a rule, a definition which declares what a term means excludes any meaning that

24   is not stated." (quotation marks, ellipsis, and brackets omitted)); *see also Meese v.*

25   *Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the

26   term excludes unstated meanings of that term.").  Had Congress intended § 926A to

27   have the scope argued by Plaintiffs, it would have said that a non-prohibited person

28   is entitled to "transport a firearm *and ammunition* for any lawful purpose,"

23

1   language it used elsewhere in the Gun Control Act.  *See, e.g.*, 18 U.S.C. § 923

2   (providing that a license issued by the Attorney General "shall entitle the licensee to

3   transport, ship, and receive firearms *and* ammunition" (emphasis added).)

4          Second, even assuming for the sake of argument that the term "firearm" in

5   § 926A includes ammunition, the statute still does not preempt section 30314.

6   Plaintiffs' argument to the contrary conflicts with § 926A's text and purpose.  The

7   section allows the transport of a firearm "from any place where [a person] may

8   lawfully possess and carry such firearm to any other place where [the person] may

9   lawfully possess and carry such firearm . . . ."  18 U.S.C. § 926A.  Under section

10  30314, a California resident who brings ammunition into the State without

11  undergoing a background check would not lawfully possess that ammunition.  *See*

12  Cal. Penal Code § 30314(c).  That resident would therefore not be able to invoke

13  § 926A's protections.  *See Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 746 F.

14  Supp. 1415, 1427 (E.D. Cal. 1990) (rejecting § 926A preemption challenge to

15  California's ban on transporting or importing assault weapons and noting that

16  assault weapons could not be legally possessed in California).

17         Congress did not intend § 926A to work the way Plaintiffs are trying to use it

18  here.  The law was designed not to invalidate the substantive laws of origin or

19  destination states, but to validate them.  *See Coalition of N.J. Sportsmen*, 744 F.

20  Supp. at 609 ("A straightforward reading of § 926A demonstrates that the statute

21  prohibits only regulation of the interstate transport of firearms, and in no way

22  restricts a state's power to regulate firearms within the state."); *see also* 132 Cong.

23  Rec. H4102–03 (Jun. 24, 1986) (statement of Rep. McCollum) ("The safe harbor

24  provision itself does not modify the State or local laws at the place of origin or the

25  jurisdiction where the trip ends in any way.  Any traveler utilizing the safe harbor

26  provisions must comply with the laws of his State of origin as well as the laws of

27  the jurisdiction at his trip's end."); *id.* (statement of Rep. Hughes) ("[Section 926A]

28  makes clear that one is only entitled to take advantage of this Federal preemption if

24

Mem. of P. & A. in Supp. of Cal. Att'y
General's Mot. to Dismiss the First Am. Compl. (3:18-cv-00802-BEN-JLB)

the possession is lawful where the traveler starts and is lawful in the destination
State.").  It was intended to allow firearms owners to transport their lawfully owned
guns through jurisdictions with more restrictive gun laws.  *See Coalition of N.J.
Sportsmen*, 744 F. Supp. at 609; *see also* 132 Cong. Rec. H4102–03 (Jun. 24, 1986)
(statement of Rep. McCollum) ("This provision is designed to be a 'safe harbor' for
interstate travelers. . . .  [S]ection 926A will be valuable to the person who either
knows he will be traveling through a jurisdiction with restrictive laws or is
unfamiliar with the various laws of the jurisdiction he will be traversing.").
Plaintiffs do not allege that section 30314 prevents them from transporting
ammunition through California; instead, they allege that they want to transport it
into California without undergoing a background check.  *See* FAC ¶¶ 11-17, 77-79,
131-33.  Section 926A does not allow them to evade that requirement.

## CONCLUSION

For the foregoing reasons, this Court should grant the Attorney General's
motion to dismiss Plaintiffs' dormant Commerce Clause claim (first claim for
relief, FAC ¶¶ 82-91), equal protection claim (eighth claim for relief, *id.* ¶¶ 123-
30), and preemption claim (ninth claim for relief, *id.* ¶¶ 131-33).


Dated:  July 18, 2018                    Respectfully Submitted,

                                         XAVIER BECERRA
                                         Attorney General of California
                                         TAMAR PACHTER
                                         Supervising Deputy Attorney General



                                         /s/ Nelson Richards
                                         NELSON R. RICHARDS
                                         Deputy Attorney General
                                         *Attorneys for Defendant Attorney
                                         General Xavier Becerra*