XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
NELSON R. RICHARDS
Deputy Attorney General
State Bar No. 246996
 2550 Mariposa Mall, Room 5090
 Fresno, CA  93721
 Telephone:  (559) 705-2324
 Fax:  (559) 445-5106
 E-mail:  Nelson.Richards@doj.ca.gov
*Attorneys for Defendant Attorney General
Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>                Plaintiffs,<br><br>     **v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>              Defendants. | 3:18-cv-00802-BEN-JLB<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT XAVIER BECERRA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECLARATION OF NELSON R. RICHARDS**<br><br>Judge:      Hon. Roger T. Benitez<br>Date:       Sept. 20, 2018<br>Time:      10:00 a.m.<br>Courtroom:   5A<br>Action Filed:   April 26, 2018 |

# REQUEST FOR JUDICIAL NOTICE

Defendant Xavier Becerra, sued in his official capacity as the Attorney General of California, respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the documents attached to the accompanying declaration of counsel.  Exhibit 1 to the declaration is relevant to the claims in this case because it is an excerpt of the Official Voter Information Guide for the November 8, 2016 election that provides the full text of Proposition 63, several codified sections of which are challenged in this case.  Exhibit 2 is relevant to the claims in this case because it is the Department of Justice's description of a component of the process being challenged in the complaint.

Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be one "not subject to reasonable dispute" because it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be readily questioned.  Fed. R. Evid. 201(b).  "[A] federal court must take judicial notice of state statutes 'without plea or proof.'"  *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).  Ballot measures that have been adopted by the voters, such as Proposition 63, are to be published in the official California Statutes.  *See* Cal. Gov. Code § 9766(d)-(e).  As part of California law, Exhibit 1 is therefore a proper subject of judicial notice.  *See also Wishnev v. Nw. Mut. Life Ins. Co.*, 162 F. Supp. 3d 930, 936 (N.D. Cal. 2016) ("Ballot materials are a proper subject of judicial notice.").

"Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies."  *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (quotation marks and brackets

1

1    omitted).  Exhibit 2 is thus judicially noticeable because it is a copy of the portion

2    of the California Department of Justice's website on Certificates of Eligibility.

3

4

5    Dated:  July 18, 2018                    Respectfully Submitted,

6                                             XAVIER BECERRA
                                              Attorney General of California
7                                             TAMAR PACHTER
                                              Supervising Deputy Attorney General

8

9                                             /s/ Nelson Richards
10                                            NELSON R. RICHARDS
                                              Deputy Attorney General
11                                            *Attorneys for Defendant Attorney*
                                              *General Xavier Becerra*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**DECLARATION OF NELSON R. RICHARDS**

I, NELSON R. RICHARDS, declare:

1.      I am a Deputy Attorney General with the California Department of Justice, Office of the Attorney General, and an attorney for Defendant Xavier Becerra, Attorney General of California, in this matter.  I am an attorney at law duly licensed to practice before all courts of the State of California and admitted to practice before the United States District Court for the Southern District of California.  I have personal knowledge of the facts set forth below and if called as a witness, I could and would competently testify to them.

2.      This declaration is made in connection with the request for judicial notice in support of Defendant Xavier Becerra's motion to dismiss the first amended complaint.

3.      Exhibit 1 is a true and correct copy of an excerpt of the Official Voter Information Guide for the November 8, 2016 election that provides the full text of Proposition 63, several codified sections of which are challenged in this case.  The complete document is available on the California Secretary of State's website at: http://vig.cdn.sos.ca.gov/2016/general/en/pdf/complete-vig.pdf.

4.      Exhibit 2 is a true and correct copy of the California Department of Justice's webpage on Certificates of Eligibility, as accessed on July 18, 2018.  The webpage is available at:  https://oag.ca.gov/firearms/cert-eligibility.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

 Executed on:  July 18, 2018


                                              /s/ Nelson Richards
                                              NELSON R. RICHARDS
                                              Deputy Attorney General

# EXHIBIT 1

# California General Election Tuesday November 8, 2016

**Polls Are Open From 7:00 a.m. to 8:00 p.m. on Election Day!**

★ ★ ★ ★ OFFICIAL VOTER INFORMATION GUIDE ★ ★ ★ ★



★

**Certificate of Correctness**

I, Alex Padilla, Secretary of State of the State of California, do hereby certify that the measures included herein will be submitted to the electors of the State of California at the General Election to be held throughout the State on November 8, 2016, and that this guide has been correctly prepared in accordance with the law. Witness my hand and the Great Seal of the State in Sacramento, California, this 15th day of August, 2016.



**Alex Padilla, Secretary of State**

# VOTER BILL OF
# RIGHTS

## YOU HAVE THE FOLLOWING RIGHTS:

 **The right to vote if you are a registered voter.** You are eligible to vote if you are:
- a U.S. citizen living in California
- at least 18 years old
- registered where you currently live
- not in prison or on parole for a felony

 **The right to vote if you are a registered voter even if your name is not on the list.** You will vote using a provisional ballot. Your vote will be counted if elections officials determine that you are eligible to vote.

 **The right to vote if you are still in line when the polls close.**

 **The right to cast a secret ballot** without anyone bothering you or telling you how to vote.

 **The right to get a new ballot if you have made a mistake,** if you have not already cast your ballot. You can:

> **Ask an elections official at a polling place** for a new ballot; or
> **Exchange your vote-by-mail ballot** for a new one at an elections office, or at your polling place; or
> **Vote using a provisional ballot,** if you do not have your original vote-by-mail ballot.

 **The right to get help casting your ballot** from anyone you choose, except from your employer or union representative.

 **The right to drop off your completed vote-by-mail ballot at any polling place** in the county where you are registered to vote.

 **The right to get election materials in a language other than English** if enough people in your voting precinct speak that language.

 **The right to ask questions to elections officials about election procedures** and watch the election process. If the person you ask cannot answer your questions, they must send you to the right person for an answer. If you are disruptive, they can stop answering you.

 **The right to report any illegal or fraudulent election activity** to an elections official or the Secretary of State's office.
- On the web at **www.sos.ca.gov**
- By phone at **(800) 345-VOTE (8683)**
- By email at **elections@sos.ca.gov**

**IF YOU BELIEVE YOU HAVE BEEN DENIED ANY OF THESE RIGHTS,** CALL THE SECRETARY OF STATE'S CONFIDENTIAL TOLL-FREE VOTER HOTLINE AT **(800) 345-VOTE (8683).**

# TABLE OF CONTENTS

PAGE

| QUICK-REFERENCE GUIDE | 7 |

## PROPOSITIONS

**51** School Bonds. Funding for K–12 School and Community College Facilities. Initiative Statute. ......................18

**52** Medi-Cal Hospital Fee Program. Initiative Constitutional Amendment and Statute. .....................................24

**53** Revenue Bonds. Statewide Voter Approval. Initiative Constitutional Amendment. ......................................30

**54** Legislature. Legislation and Proceedings. Initiative Constitutional Amendment and Statute. ........................36

**55** Tax Extension to Fund Education and Healthcare. Initiative Constitutional Amendment. ..............................40

**56** Cigarette Tax to Fund Healthcare, Tobacco Use Prevention, Research, and Law Enforcement. Initiative Constitutional Amendment and Statute. ........................................................................................46

**57** Criminal Sentences. Parole. Juvenile Criminal Proceedings and Sentencing. Initiative Constitutional Amendment and Statute. ........................................................................................................54

**58** English Proficiency. Multilingual Education. Initiative Statute. ...............................................................60

**59** Corporations. Political Spending. Federal Constitutional Protections. Legislative Advisory Question. ...............64

**60** Adult Films. Condoms. Health Requirements. Initiative Statute. ............................................................68

**61** State Prescription Drug Purchases. Pricing Standards. Initiative Statute. ..................................................72

**62** Death Penalty. Initiative Statute. ...................................................................................................78

**63** Firearms. Ammunition Sales. Initiative Statute. .................................................................................84

**64** Marijuana Legalization. Initiative Statute. ........................................................................................90

**65** Carryout Bags. Charges. Initiative Statute. .....................................................................................100

**66** Death Penalty. Procedures. Initiative Statute. ..................................................................................104

**67** Ban on Single-Use Plastic Bags. Referendum. .................................................................................110

| OVERVIEW OF STATE BOND DEBT | 114 |

| UNITED STATES SENATE CANDIDATE STATEMENTS | 117 |

| TEXT OF PROPOSED LAWS | 118 |

## INFORMATION PAGES

Voter Bill of Rights................................................2

Assistance for Voters with Disabilities...................4

Voter Registration.............................................4

Voter Registration Privacy Information..................4

Ways to Vote.....................................................5

Provisional Voting.............................................5

Letter from the Secretary of State.........................6

Online Resources............................................16

Audio & Large Print Voter Information Guides.........16

Find Your Polling Place.....................................16

Elections in California......................................17

Top Contributors to Statewide Candidates and Ballot Measures........................17

Information About Candidate Statements...........116

U.S. Presidential Candidates............................116

Dates to Remember.......................................223

# Assistance for Voters with Disabilities

State and federal laws require polling places to be physically accessible to voters with disabilities. County elections officials inspect each site and often make temporary modifications for Election Day. Every person who works in a polling place is trained in election laws and voter rights, including the need to make reasonable modifications of policies and procedures to ensure equal access.

State and federal laws require that all voters be able to cast their ballots privately and independently. Each polling place must have at least one voting machine that allows all voters, including those who are blind or visually impaired, to cast a ballot without assistance. The voting machine permits voters to verify their vote choices and, if there is an error, allows voters to correct those choices before submitting their ballot.

## Check your sample ballot



Your county sample ballot booklet will:

• Describe how persons with disabilities can vote privately and independently

• Display a wheelchair symbol if your polling place is accessible to voters with disabilities

## At the polling place

If you need help marking your ballot, you may choose up to two people to help you. This person cannot be:

• Your employer or anyone who works for your employer

• Your labor union leader or anyone who works for your labor union

*Curbside voting* allows you to park as close as possible to the voting area. Elections officials will bring you a roster to sign, a ballot, and any other voting materials you may need, whether you are actually at a curb or in a car.

Contact your county elections office to see if curbside voting is available at your polling place.

# Voter Registration

If you have already registered to vote, you do not need to reregister *unless* you change your name, home address, mailing address or if you want to change or select a political party.

You can register to vote online at *RegisterToVote.ca.gov*. Or call the Secretary of State's *free* Voter Hotline at (800) 345-VOTE (8683) to get a form mailed to you.

Voter registration forms can be found at most post offices, libraries, city and county government offices, county elections offices, and the California Secretary of State's Office.

# Voter Registration Privacy Information

**Safe at Home Confidential Voter Registration Program:** Certain voters facing life-threatening (i.e. domestic violence, stalking victims) situations may qualify for confidential voter status. For more information, contact the Secretary of State's Safe at Home program toll-free at (877) 322-5227 or visit *http://www.sos.ca.gov/registries/safe-home/*.

**Voter Information Privacy:** Information on your voter registration affidavit will be used by elections officials to send you official information on the voting process, such as the location of your polling place and the issues and candidates that will appear on the ballot. Commercial use of voter registration information is prohibited by law and is a misdemeanor. Voter information may be provided to a candidate for office, a ballot measure committee, or other person for election, scholarly, journalistic, political, or governmental purposes, as determined by the Secretary of State. Driver license and social security numbers, or your signature as shown on your voter registration card, cannot be released for these purposes. If you have any questions about the use of voter information or wish to report suspected misuse of such information, please call the Secretary of State's Voter Hotline at (800) 345-VOTE (8683).

4

# Ways to Vote



## Vote by Mail

- Request a vote-by-mail ballot by **November 1**.
- Return by mail—must be postmarked on or before **November 8** and received by your county elections office no later than **November 14**.
- Return in person—to your county elections office or any polling place in your county before 8:00 p.m. on **November 8**.



## Vote Early in Person

Some counties offer early voting at a few locations before Election Day. Contact your county elections office to see if they offer early voting. County contact information can be found at: *http://www.sos.ca.gov/elections/voting-resources/county-elections-offices/*.



## Vote at the Polls on Election Day

- Polls are open on Election Day: **November 8 from 7:00 a.m. to 8:00 p.m.**
- The location of your polling place is printed on the back page of the sample ballot booklet your county elections official mailed to you. You can also find your polling place:
- ✆ By calling (800) 345-VOTE (8683)
- 🖥 Online at *www.sos.ca.gov/elections/polling-place*
- 📱 By texting *Vote* to GOVOTE (468683)

# Provisional Voting

If your name is not on the voter list at your polling place, you have the right to vote a provisional ballot.

## What Is a Provisional Ballot?

A provisional ballot is a regular ballot that is placed in a special envelope prior to being put in the ballot box.

## Who Casts a Provisional Ballot?

Provisional ballots are ballots cast by voters who:

- Believe they are registered to vote even though their names are not on the official voter registration list at the polling place.

- Vote by mail but did not receive their ballot or do not have their ballot with them, and instead want to vote at a polling place.

## Will My Provisional Ballot Be Counted?

Your provisional ballot will be counted after elections officials have confirmed that you are registered to vote in that county and you did not already vote in that election.

You may vote a provisional ballot at any polling place in the county in which you are registered to vote, however, only the elections contests you are eligible to vote for will be counted.

## How Can You Check the Status of Your Provisional Ballot?

Every voter who casts a provisional ballot has the right to find out from their county elections official if the ballot was counted and, if not, the reason why it was not counted.



Visit *http://www.sos.ca.gov/elections/ballot-status/* for a list of county contacts and information on how to check the status of your provisional ballot.



# Secretary of State

Dear Fellow Californians,

There is no greater right than the right to vote. Through voting, you help select your local, state, and national leaders, and ensure that your voice is heard. The Presidential General Election is fast approaching. I encourage you to participate in your most fundamental right as a citizen of the United States of America.

This Voter Guide can help you make informed decisions. It includes impartial analysis, arguments in favor and against the many ballot measures, declarations of the candidates, the Voter Bill of Rights, and other important information.

All of the information is presented here as a reference for you. This guide is also available online on the California Secretary of State website: *www.voterguide.sos.ca.gov.*

Please take the time to read the information in this guide carefully as we approach Election Day. If you would like to know who is financing each of the campaigns, you can search campaign finance information at: *http://powersearch.sos.ca.gov/.*

If you have any questions about how to vote, or how to register to vote, you can contact the office of the Secretary of State by calling toll-free 1-800-345-VOTE (8683). To obtain the contact information of your local county elections officials, you can visit the Secretary of State website at: *www.sos.ca.gov/county-elections-offices.*

Thank you for your commitment to the future of both our state and nation. The Presidential General Election is Tuesday, November 8. Your vote is important. Remember that your vote is your voice. Be heard. VOTE!

# QUICK-REFERENCE GUIDE

**PROP 63** FIREARMS. AMMUNITION SALES. INITIATIVE STATUTE.

**PROP 64** MARIJUANA LEGALIZATION. INITIATIVE STATUTE.

## SUMMARY

Requires background check and Department of Justice authorization to purchase ammunition. Prohibits possession of large-capacity ammunition magazines. Establishes procedures for enforcing laws prohibiting firearm possession by specified persons. Requires Department of Justice's participation in federal National Instant Criminal Background Check System. Fiscal Impact: Increased state and local court and law enforcement costs, potentially in the tens of millions of dollars annually, related to a new court process for removing firearms from prohibited persons after they are convicted.

## SUMMARY

Legalizes marijuana under state law, for use by adults 21 or older. Imposes state taxes on sales and cultivation. Provides for industry licensing and establishes standards for marijuana products. Allows local regulation and taxation. Fiscal Impact: Additional tax revenues ranging from high hundreds of millions of dollars to over $1 billion annually, mostly dedicated to specific purposes. Reduced criminal justice costs of tens of millions of dollars annually.

## WHAT YOUR VOTE MEANS

**YES** A YES vote on this measure means: A new court process would be created for the removal of firearms from individuals upon conviction of certain crimes. New requirements related to the selling or purchasing of ammunition would be implemented.

**NO** A NO vote on this measure means: No new firearm- or ammunition-related requirements would be implemented.

## WHAT YOUR VOTE MEANS

**YES** A YES vote on this measure means: Adults 21 years of age or older could legally grow, possess, and use marijuana for nonmedical purposes, with certain restrictions. The state would regulate nonmedical marijuana businesses and tax the growing and selling of medical and nonmedical marijuana. Most of the revenue from such taxes would support youth programs, environmental protection, and law enforcement.

**NO** A NO vote on this measure means: Growing, possessing, or using marijuana for nonmedical purposes would remain illegal. It would still be legal to grow, possess, or use marijuana for medical purposes.

## ARGUMENTS

**PRO** Proposition 63 will improve public safety by keeping guns and ammunition out of the wrong hands. Law enforcement and public safety leaders support Prop. 63 because it will reduce gun violence by preventing violent felons, domestic abusers, and the dangerously mentally ill from obtaining and using deadly weapons and ammo.

**CON** Law enforcement, anti-terrorism experts, and civil liberties groups overwhelmingly oppose Prop. 63. It was written by a politician seeking to make a name for himself, not the public safety community. It imposes costly burdens on law enforcement and the taxpayer and only affects the law-abiding.

## ARGUMENTS

**PRO** Prop. 64 creates a safe, legal system for adult use of marijuana. It controls, regulates and taxes marijuana use, and has the nation's strictest protections for children. It provides billions for afterschool programs, job training, drug treatment, and cracking down on impaired driving. Fix our approach to marijuana. Visit YesOn64.org!

**CON** Proposition 64 purposely omits DUI standard to keep marijuana-impaired drivers off our highways. California Association of Highway Patrolmen and Senator Dianne Feinstein strenuously oppose. Legalizes ads promoting smoking marijuana, Gummy candy and brownies on shows watched by millions of children and teens. Shows reckless disregard for child health and safety. Opposed by California Hospital Association. Vote "No".

## FOR ADDITIONAL INFORMATION

**FOR**
Lindsey Cobia
Safety for All
268 Bush Street #222
San Francisco, CA 94104
(415) 735-5192
safetyforall@safetyforall.com
www.safetyforall.com

**AGAINST**
Coalition for Civil Liberties
info@coalitionforcivilliberties.com
www.stoptheammograb.com

## FOR ADDITIONAL INFORMATION

**FOR**
Dustin Moore
Yes on 64, Californians to
   Control, Regulate and Tax
   Adult Use of Marijuana
   While Protecting Children
1029 H St., Suite 301
Sacramento, CA 95814
(916) 382-2952
info@yeson64.org
www.yeson64.org

**AGAINST**
Tim Rosales
No on 64
2150 River Plaza Drive #150
Sacramento, CA 95833
(916) 473-8866
info@NoOn64.net
www.NoOn64.net

PROPOSITION
# 63
## FIREARMS. AMMUNITION SALES.
## INITIATIVE STATUTE.

63

**OFFICIAL TITLE AND SUMMARY**                                    PREPARED BY THE ATTORNEY GENERAL

- Requires individuals to pass a background check and obtain Department of Justice authorization to purchase ammunition.
- Prohibits possession of large-capacity ammunition magazines, and requires their disposal, as specified.
- Requires most ammunition sales be made through licensed ammunition vendors and reported to Department of Justice.
- Requires lost or stolen firearms and ammunition be reported to law enforcement.
- Prohibits persons convicted of stealing a firearm from possessing firearms.
- Establishes new procedures for enforcing laws prohibiting firearm possession.
- Requires Department of Justice to provide information about prohibited persons to federal National Instant Criminal Background Check System.

**SUMMARY OF LEGISLATIVE ANALYST'S ESTIMATE OF NET STATE AND LOCAL GOVERNMENT FISCAL IMPACT:**

- Increased state and local court and law enforcement costs, potentially in the tens of millions of dollars annually, related to a new court process for removing firearms from prohibited persons after they are convicted.
- Potential increase in state costs, not likely to exceed the millions of dollars annually, related to regulating ammunition sales. These costs would likely be offset by fee revenues.
- Potential net increase in state and local correctional costs, not likely to exceed the low millions of dollars annually, related to changes in firearm and ammunition penalties.

---

## ANALYSIS BY THE LEGISLATIVE ANALYST

# BACKGROUND

### Restrictions on Firearm and Ammunition Possession

Under federal and state law, certain individuals are not allowed to have firearms. These "prohibited persons" include individuals (1) convicted of felonies and some misdemeanors (such as assault or battery), (2) found by a court to be a danger to themselves or others due to mental illness, and (3) with a restraining order against them. In California, individuals who are not allowed to have firearms are also not allowed to have ammunition.

### Regulation of Firearm Sales

Both federal and state law include various regulations related to firearm sales, including the licensing of firearm dealers. Such regulations include:

- ***Background Checks.*** Under federal law, firearm dealers must request background checks of individuals seeking to buy firearms from the National Instant Criminal Background

Check System (NICS). The NICS searches a number of federal databases to ensure that the buyer is not a prohibited person. As allowed by federal law, California processes all background check requests from firearm dealers in the state directly by using NICS and various state databases.

- ***Removal of Firearms From Prohibited Persons.*** The California Department of Justice (DOJ) maintains a database of individuals who have legally bought or registered a firearm with the state. DOJ agents use this information to remove firearms from individuals who are no longer allowed to have firearms.

- ***Other Regulations.*** Other state regulations related to firearms include: limits on the type of firearms that can be bought, a ten-day waiting period before a dealer may give a firearm to a buyer, and requirements for recording and reporting firearm sales.

Fees charged to firearm dealers and buyers generally offset the state's costs to regulate firearm sales.

FIREARMS. AMMUNITION SALES.
INITIATIVE STATUTE.

PROPOSITION
# 63



**63**

## Regulation of Ammunition Sales

Prior to this year, the state did not regulate ammunition sales in the same manner as firearms. In July 2016, the state enacted legislation to increase the regulation of ammunition sales. Such regulations include:

- *Licenses to Sell Ammunition.* Beginning January 2018, individuals and businesses will be required to obtain a one-year license from DOJ to sell ammunition. Certain individuals and businesses would not be required to obtain a license, such as licensed hunters selling less than 50 rounds of ammunition per month to another licensed hunter while on a hunting trip. In order to obtain a license, ammunition dealers will need to demonstrate that they are not prohibited persons. In addition, certain entities will be able to automatically receive an ammunition license, such as firearm dealers licensed by both the state and federal government and firearm wholesalers. A vendor who fails to comply with ammunition sale requirements three times would have their ammunition dealer's license permanently revoked. DOJ could charge a fee to individuals and businesses seeking a license to sell ammunition to support its administrative and enforcement costs.

- *DOJ Approval to Buy Ammunition.* Beginning July 2019, ammunition dealers will be required to check with DOJ at the time of purchase that individuals seeking to buy ammunition are not prohibited persons. This requirement would not apply to some individuals, such as persons permitted to carry concealed weapons. In addition, ammunition dealers will generally be required to collect and report information—such as the date of the sale, the buyers' identification information, and the type of ammunition purchased—to DOJ for storage in a database for two years. Failure to comply with these requirements is a misdemeanor (punishable by a fine and/or imprisonment in county jail). DOJ could generally charge an individual seeking to purchase ammunition a fee of up to $1 per

transaction to support its administrative and enforcement costs. DOJ could adjust this fee cap annually for inflation.

- *Other Regulations.* Beginning January 2018, state law generally will require that most ammunition sales (including Internet and out-of-state sales) take place through a licensed ammunition dealer. In addition, beginning July 2019, most California residents will be prohibited from bringing ammunition into the state without first having the ammunition delivered to a licensed ammunition dealer. Failure to comply with these requirements is a misdemeanor.

## Status of Recent Legislation

As discussed above, the state recently enacted legislation to increase the regulation of ammunition sales. The state also recently enacted legislation to further limit the ownership of large-capacity magazines and to create a penalty for filing a false lost or stolen firearm report to law enforcement. These laws will take effect unless they are placed before the voters as referenda. If that occurs, voters will determine whether the laws take effect.

# PROPOSAL

Proposition 63 (1) changes state regulation of ammunition sales, (2) creates a new court process to ensure the removal of firearms from prohibited persons after they are convicted of a felony or certain misdemeanors, and (3) implements various other provisions. Additionally, Proposition 63 states that the Legislature can change its provisions if such changes are "consistent with and further the intent" of the measure. Such changes can only be made if 55 percent of the members of each house of the Legislature passes them and the bill is enacted into law.

## Changes to State Regulation of Ammunition Sales

Proposition 63 includes various regulations related to the sale of ammunition. Some of the regulations would replace existing law with similar provisions. However, other regulations proposed by Proposition 63 are different, as discussed below.

PROPOSITION

# 63

FIREARMS. AMMUNITION SALES.
INITIATIVE STATUTE.

---

## ANALYSIS BY THE LEGISLATIVE ANALYST

CONTINUED

**63**

***Requirements to Buy Ammunition.*** Proposition 63 includes various requirements for individuals seeking to buy ammunition and for DOJ to regulate such purchases. Specifically, the measure:

- Requires individuals to obtain a four-year permit from DOJ to buy ammunition and for ammunition dealers to check with DOJ that individuals buying ammunition have such permits.
- Requires DOJ to revoke permits from individuals who become prohibited.
- Allows DOJ to charge each person applying for a four-year permit a fee of up to $50 to support its various administrative and enforcement costs related to ammunition sales.

The state, however, enacted legislation in July 2016 to replace the above provisions with alternative ones if Proposition 63 is approved by the voters. (This legislation was enacted pursuant to the provision of Proposition 63 allowing for changes that are "consistent with and further the intent" of the proposition, as described earlier.) Specifically, under the legislation: (1) ammunition dealers would be required to check with DOJ that individuals seeking to buy ammunition are not prohibited persons at the time of purchase and (2) DOJ could generally charge such individuals up to $1 per transaction. These provisions are similar to current law. Fewer individuals, however, would be exempt from this check than under current law. For example, individuals permitted to carry concealed weapons would be subject to this check.

***Licenses to Sell Ammunition.*** Similar to current law, Proposition 63 requires individuals and businesses to obtain a one-year license from DOJ to sell ammunition. However, the measure changes the types of individuals and businesses that would be exempt from obtaining a license. For example, the measure generally exempts individuals and businesses that sell a small number of rounds of ammunition from the requirement to get a license. The measure also makes various changes in the penalties for failure to follow ammunition sale requirements. For example, it establishes a new criminal penalty—specifically, a misdemeanor—for failing to follow vendor licensing requirements.

***Other Ammunition Requirements.*** This measure prohibits most California residents from bringing ammunition into the state without first having the ammunition delivered to a licensed ammunition dealer beginning in January 2018—a year and a half earlier than under current law. Additionally, failure to comply with this requirement would change from a misdemeanor to an infraction (punishable by a fine) for the first offense and either an infraction or a misdemeanor for any additional offense. The measure also requires DOJ to store certain ammunition sales information in a database indefinitely, rather than for two years.

## Creates New Court Process for Removal of Firearms

This measure creates a new court process to ensure that individuals convicted of offenses that prohibit them from owning firearms do not continue to have them. Beginning in 2018, the measure requires courts to inform offenders upon conviction that they must (1) turn over their firearms to local law enforcement, (2) sell the firearms to a licensed firearm dealer, or (3) give the firearms to a licensed firearm dealer for storage. The measure also requires courts to assign probation officers to report on what offenders have done with their firearms. If the court finds that there is probable cause that an offender still has firearms, it must order that the firearms be removed. Finally, local governments or state agencies could charge a fee to reimburse them for certain costs in implementing the measure (such as those related to the removal or storage of firearms).

## Implements Other Provisions

***Reporting Requirements.*** The measure includes a number of reporting requirements related to firearms and ammunition. For example, the measure requires that ammunition dealers report the loss or theft of ammunition within 48 hours. It also requires that most individuals report the loss or theft of firearms within five days to local law enforcement. An individual who does not make such a report within five days would be guilty of an infraction for the first two violations. Additional violations would be a misdemeanor. This measure

FIREARMS. AMMUNITION SALES.
INITIATIVE STATUTE.

PROPOSITION

# 63



**63**

## ANALYSIS BY THE LEGISLATIVE ANALYST                                  CONTINUED

also reduces the penalty for an individual who knowingly submits a false report to local law enforcement from a misdemeanor to an infraction and eliminates the prohibition from owning firearms for ten years for such an individual. This measure also requires DOJ to submit the name, date of birth, and physical description of any newly prohibited person to NICS.

**Large-Capacity Magazines.** Since 2000, state law has generally banned individuals from obtaining large-capacity magazines (defined as those holding more than ten rounds of ammunition). The law, however, allowed individuals who had large-capacity magazines before 2000 to keep them for their own use. Beginning July 2017, recently enacted law will prohibit most of these individuals from possessing these magazines. Individuals who do not comply are guilty of an infraction. However, there are various individuals who will be exempt from this requirement—such as an individual who owns a firearm (obtained before 2000) that can only be used with a large-capacity magazine. Proposition 63 eliminates several of these exemptions, as well as increases the maximum penalty for possessing large-capacity magazines. Specifically, individuals who possess such magazines after July 2017 would be guilty of an infraction or a misdemeanor.

**Penalty for Theft of Firearms.** Under current state law, the penalty for theft of firearms worth $950 or less is generally a misdemeanor punishable by up to one year in county jail. Under this measure, such a crime would be a felony and could be punishable by up to three years in state prison. Additionally, individuals previously convicted of a misdemeanor for the theft of a firearm would be prohibited from owning firearms for ten years. Currently, there is no such prohibition for a misdemeanor conviction for theft of firearms.

## FISCAL EFFECTS

**Increased Court and Law Enforcement Costs.** The new court process for removing firearms from prohibited persons after they are convicted would result in increased workload for the state and local governments. For example, state courts and county probation departments would have some increased

workload to determine whether prohibited persons have firearms and whether they have surrendered them. In addition, state and local law enforcement would have new workload related to removing firearms from offenders who fail to surrender them as part of the new court process. They could also have increased costs related to the storage or return of firearms. Some of the increased law enforcement costs related to the removal, storage, or return of firearms would be offset to the extent that local governments and state agencies charge and collect fees for these activities, as allowed by this measure. The total magnitude of these state and local costs **could be in the tens of millions of dollars annually.** Actual costs would depend on how this measure was implemented.

**Potential Increased State Regulatory Costs.** On balance, the measure's changes to the regulation of ammunition sales could increase state costs. For example, more individuals or businesses would likely be subject to state ammunition requirements under the measure. The actual fiscal effect of the changes would depend on how they are implemented and how individuals respond to them. We estimate that the potential increase in state costs would not likely exceed the millions of dollars annually. These costs would likely be offset by the various fees authorized by the measure and existing state law.

**Potential Net Increased Correctional Costs.** This measure makes various changes to penalties related to firearms and ammunition. While some changes reduce penalties for certain offenses, other changes increase penalties for certain offenses. On net, these changes could result in increased correctional costs to state and local governments, such as to house individuals in prison and jail. The magnitude of such costs would depend primarily on the number of violations and how the measure is enforced. The potential net increase in correctional costs would **likely not exceed the low millions of dollars annually.**

Visit *http://www.sos.ca.gov/measure-contributions* for a list of committees primarily formed to support or oppose this measure. Visit *http://www.fppc.ca.gov/ transparency/top-contributors/nov-16-gen-v2.html* to access the committee's top 10 contributors.

PROPOSITION
# 63

FIREARMS. AMMUNITION SALES.
INITIATIVE STATUTE.

---

## ★ ARGUMENT IN FAVOR OF PROPOSITION 63 ★

*PROPOSITION 63 WILL KEEP US SAFER BY REDUCING GUN VIOLENCE*

Police in Dallas doing their job . . .. A nightclub in Orlando . . .. An office holiday party in San Bernardino . . .. A church in Charleston . . .. A movie theater in Aurora . . .. An elementary school in Newtown . . ..

*What's next? How many more people need to die from gun violence before we take bold action to save lives?*

More than 300 Americans are shot each day, more than 80 of them fatally.

More than 1 million Americans were killed or seriously injured by guns from 2004–2014.

ENOUGH!

*It's time to take action to keep guns and ammo out of the wrong hands.*

Proposition 63—the Safety for All Act—will save lives by closing loopholes to prevent dangerous criminals, domestic abusers, and the dangerously mentally ill from obtaining and using deadly weapons.

PROPOSITION 63 WILL:

• Remove illegal guns from our communities by ensuring that dangerous criminals and domestic abusers sell or transfer their firearms after they're convicted.

• Require any business that sells ammunition to report if their ammunition is lost or stolen.

• Require people to notify law enforcement if their guns are lost or stolen, before the weapons end up in the wrong hands.

• Ensure people convicted of gun theft are ineligible to own guns.

• Strengthen our background check systems and ensure that California law enforcement shares data about dangerous people with the FBI.

*Proposition 63 keeps guns and ammo out of the wrong hands, while protecting the rights of law-abiding* Californians to own guns for self-defense, hunting, and recreation.

Right now, thousands of dangerous felons remain illegally armed because we don't ensure that people convicted of violent crimes actually relinquish their guns after conviction. The Department of Justice identified more than 17,000 felons and other dangerous people with more than 34,000 guns, including more than 1,400 assault weapons.

*Passing Proposition 63 will represent a historic and unprecedented step forward for gun safety.*

LEADERS FROM ACROSS CALIFORNIA SUPPORT PROPOSITION 63, INCLUDING:

• Lieutenant Governor Gavin Newsom • U.S. Senator Dianne Feinstein • Law Center to Prevent Gun Violence • California Democratic Party • California Secretary of State Alex Padilla • Speaker Emeritus of the Assembly Toni Atkins • Speaker Emeritus of the Assembly John Pérez • Sheriff Vicki Hennessy, San Francisco • Former Police Chief Ken James, Emeryville • SEIU • League of Women Voters of California • California Young Democrats • California Federation of Teachers • San Francisco Board of Education • Equality California • Courage Campaign • California American College of Physicians • California American College of Emergency Physicians • Southern California Public Health Association • Clergy and Laity United for Economic Justice • Coalition Against Gun Violence • Rabbis Against Gun Violence • States United to Prevent Gun Violence • Stop Handgun Violence • Stop Our Shootings • Women Against Gun Violence • Youth Alive!

To learn more please visit *www.SafetyforAll.com.*

**GAVIN NEWSOM,** Lieutenant Governor of California
**DIANNE FEINSTEIN,** United States Senator
**ROBYN THOMAS,** Executive Director
Law Center to Prevent Gun Violence

---

## ★ REBUTTAL TO ARGUMENT IN FAVOR OF PROPOSITION 63 ★

*Terrorists don't follow the law!*

Gavin Newsom refuses to acknowledge that the Orlando and San Bernardino attacks were ISIS inspired Islamic radicalism. It is the same ideology that motivated the 9/11 terror attacks that killed 2,996 innocents.

Exploiting terrorist attacks to push sweeping laws affecting law-abiding peoples' civil liberties is misleading, wrong, and dangerous.

None of the proposed laws would prevent terrorist attacks. The reality is terrorists can always find the means to wreak havoc, a box cutter in a plane on 9/11, a homemade bomb in Boston, or a truck in Nice, France. Terrorists and criminals get weapons from the black market, make them, or steal them from law-abiding citizens.

Everyone agrees that preventing weapons from falling into the wrong hands is crucial. We all share the concern about the growing trends of terrorism and radicalization.

*But, Prop. 63 is NOT the answer.*

Spending tens of millions of taxpayer dollars year after year on useless lists of everyone who buys and sells ammunition diverts critical resources and focus away from effective anti-terrorism efforts, leaving the public more vulnerable to attack and *LESS SAFE*.

*There's a reason law enforcement overwhelmingly opposes Prop. 63.*

The public interest would be better served if these resources were used to educate more Californians about what they can do to protect their families and communities from terrorist attacks or to further train law enforcement to do so.

*Stop this dangerous abuse of public resources.*

Vote NO on Prop. 63!

**ALON STIVI,** President
Direct Measures International, Inc.
**WILLIAM "BILLY" BIRDZELL,** U.S. Special Operations Command Anti-Terrorism Instructor
**RICHARD GRENELL,** Longest serving U.S. Spokesman at the United Nations

---

*Arguments printed on this page are the opinions of the authors, and have not been checked for accuracy by any official agency.*

**63**

## ★ ARGUMENT AGAINST PROPOSITION 63 ★

Prop. 63 is overwhelmingly opposed by the law enforcement community and civil rights groups because it will burden law abiding citizens without keeping violent criminals and terrorists from accessing firearms and ammunition.

The California State Sheriffs' Association, Association of Deputy District Attorneys for Los Angeles County, California Correctional Peace Officers Association, California Fish & Game Wardens' Association, California Reserve Peace Officers Association, and numerous other law enforcement and civic groups, representing tens of thousands of public safety professionals throughout California, are united in their opposition to this ineffective, burdensome, and costly proposal.

Prop. 63 would divert scarce law enforcement resources away from local law enforcement and overburden an already overcrowded court system with the enforcement of flawed laws that will turn harmless, law-abiding citizens into criminals. In fact, New York recently abandoned its enforcement of a similar proposal after it was passed, finding that it was impossible to implement and effectively maintain.

Doing what actually works to keep the public safe is the highest priority of law enforcement professionals who dedicate their lives to protecting Californians. Unfortunately, Prop. 63 will not make anyone safer. To the contrary, by directing resources away from measures that are truly effective at preventing the criminal element from acquiring guns and ammunition, it would make us all less safe. The immense public resources that Prop. 63

would waste should be used to hire more officers and to target, investigate, and prosecute dangerous individuals and terrorists.

After closely analyzing the language of Prop. 63, the law enforcement community found many problems in the details. Due to strict limitations on the Legislature's ability to amend voter-enacted propositions, most of these problems will be difficult or impossible for the Legislature to fix if Prop. 63 passes, saddling California with the burdens and costs of this flawed proposal forever.

By going around the Legislature, this initiative limits public safety professionals in developing future legislation that would truly promote public safety. California taxpayers should not waste hundreds of millions of their dollars on ineffective laws that have no value to law enforcement and will harm public safety by diverting resources away from effective law enforcement activities that are critical to public safety.

Please visit *WWW.WHERESMYAMMO.COM* for more information.

PLEASE VOTE NO ON PROP. 63.

**DONNY YOUNGBLOOD,** President
California State Sheriffs' Association
**KEVIN BERNZOTT,** Chief Executive Officer
California Reserve Peace Officers Association
**TIFFANY CHEUVRONT,** Principal Officer
Coalition for Civil Liberties

## ★ REBUTTAL TO ARGUMENT AGAINST PROPOSITION 63 ★

As law enforcement and public safety officials, we're not surprised that groups such as the NRA and its affiliates oppose Proposition 63. Make no mistake, the so-called "Coalition for Civil Liberties" is actually an NRA front group.

The gun lobby often claims we should focus on enforcing existing gun laws, and that's exactly what this initiative does—*Prop. 63 closes loopholes and helps enforce existing laws to keep guns and ammo out of the wrong hands.*

For example, Prop. 63 *ensures dangerous convicts prohibited from owning weapons follow the law and get rid of their firearms.* Law enforcement professionals have found that felons and dangerous people currently possess thousands of guns illegally—so closing this loophole will save lives.

Prop. 63 also *requires reporting lost and stolen firearms,* to help police shut down gun trafficking rings and locate caches of illegal weapons. Prop. 63 will help police recover stolen guns before they're used in crimes and return them to their lawful owners.

Prop. 63 also *improves background check systems* so that law enforcement can prevent people banned from owning weapons—such as violent felons—from buying guns and ammo.

And Prop. 63 clarifies existing law so that any gun theft is a felony, *ensuring that people who steal guns can't own guns.* That's another common-sense reform to save lives overwhelmingly supported by law enforcement professionals.

*Prop. 63 will close loopholes in our existing laws and prevent dangerous criminals, domestic abusers, and the dangerously mentally ill from obtaining and using deadly weapons.*

**NANCY O'MALLEY,** District Attorney
Alameda County
**JEFF ROSEN,** District Attorney
Santa Clara County
**VICKI HENNESSY,** Sheriff
San Francisco

subdivision (h) of Section 1170, in connection with a civil action brought against a federal, state, or local jail, prison, or correctional facility, or any official or agent thereof, shall be paid directly, after payment of reasonable attorney's fees and litigation costs approved by the court, to satisfy any outstanding restitution orders or restitution fines against that person. The balance of the award shall be forwarded to the payee after full payment of all outstanding restitution orders and restitution fines, subject to subdivisions (e) and (i). The Department of Corrections and Rehabilitation shall make all reasonable efforts to notify the victims of the crime for which that person was convicted concerning the pending payment of any compensatory or punitive damages. For any prisoner punished by imprisonment in a county jail pursuant to subdivision (h) of Section 1170, the agency is authorized to make all reasonable efforts to notify the victims of the crime for which that person was convicted concerning the pending payment of any compensatory or punitive damages.

(o) (1) Amounts transferred to the California Victim Compensation  Board for payment of direct orders of restitution shall be paid to the victim within 60 days from the date the restitution revenues are received by the California Victim Compensation Board. If the restitution payment to a victim is less than twenty-five dollars ($25), then payment need not be forwarded to that victim until the payment reaches twenty-five dollars ($25) or when the victim requests payment of the lesser amount.

(2) If a victim cannot be located, the restitution revenues received by the California Victim Compensation Board on behalf of the victim shall be held in trust in the Restitution Fund until the end of the state fiscal year subsequent to the state fiscal year in which the funds were deposited or until the time that the victim has provided current address information, whichever occurs sooner. Amounts remaining in trust at the end of the specified period of time shall revert to the Restitution Fund.

(3) (A) A victim failing to provide a current address within the period of time specified in paragraph (2) may provide documentation to the Department of Corrections and Rehabilitation, which shall verify that moneys were collected on behalf of the victim. Upon receipt of that verified information from the Department of Corrections and Rehabilitation, the California Victim Compensation Board shall transmit the restitution revenues to the victim in accordance with the provisions of subdivision (c) or (h).

(B) A victim failing to provide a current address within the period of time specified in paragraph (2) may provide documentation to the agency designated by the board of supervisors in the county where the prisoner punished by imprisonment in a county jail pursuant to subdivision (h) of Section 1170 is incarcerated, which may verify that moneys were collected on behalf of the victim. Upon receipt of that verified information from the agency, the California Victim Compensation Board shall transmit the restitution revenues to the victim in accordance with the provisions of subdivision (d) or (h).

SEC. 10.    Retroactive Application of Act.

(a) In order to best achieve the purpose of this act as stated in Section 3 and to achieve fairness, equality, and uniformity in sentencing, this act shall be applied retroactively.

(b) In any case where a defendant or inmate was sentenced to death prior to the effective date of this act, the sentence shall automatically be converted to imprisonment in the state prison for life without the possibility of parole under the terms and conditions of this act. The State of California shall not carry out any execution following the effective date of this act.

(c) Following the effective date of this act, the Supreme Court may transfer all death penalty appeals and habeas petitions pending before the Supreme Court to any district of the Court of Appeal or superior court, in the Supreme Court's discretion.

SEC. 11.    Effective Date.

This act shall become effective on the day following the election at which it was approved, pursuant to subdivision (a) of Section 10 of Article II of the California Constitution.

SEC. 12.    Severability.

The provisions of this act are severable. If any provision of this act or its application is held invalid, including but not limited to Section 10, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

# PROPOSITION 63

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends, repeals, and adds sections to the Penal Code; therefore, existing provisions proposed to be deleted are printed in strikeout type and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

## PROPOSED LAW

The Safety for All Act of 2016

SECTION 1.    Title.

This measure shall be known and may be cited as "The Safety for All Act of 2016."

SEC. 2.    Findings and Declarations.

The people of the State of California find and declare:

1. Gun violence destroys lives, families and communities. From 2002 to 2013, California lost 38,576 individuals to gun violence. That is more than seven times the number of U.S. soldiers killed in combat during the wars in Iraq and Afghanistan combined. Over this same period, 2,258 children were killed by gunshot injuries in California. The same number of children murdered in the Sandy Hook elementary school massacre are killed by gunfire in this state every 39 days.

2. In 2013, guns were used to kill 2,900 Californians, including 251 children and teens. That year, at least 6,035 others were hospitalized or treated in emergency rooms for non-fatal gunshot wounds, including 1,275 children and teens.

3. Guns are commonly used by criminals. According to the California Department of Justice, in 2014 there were 1,169 firearm murders in California, 13,546 armed robberies involving a firearm, and 15,801 aggravated assaults involving a firearm.

4. This tragic violence imposes significant economic burdens on our society. Researchers conservatively estimate that gun violence costs the economy at least $229 billion every year, or more than $700 per American

**63**

per year. In 2013 alone, California gun deaths and injuries imposed $83 million in medical costs and $4.24 billion in lost productivity.

5. California can do better. Reasonable, common-sense gun laws reduce gun deaths and injuries, keep guns away from criminals and fight illegal gun trafficking. Although California has led the nation in gun safety laws, those laws still have loopholes that leave communities throughout the state vulnerable to gun violence and mass shootings. We can close these loopholes while still safeguarding the ability of law-abiding, responsible Californians to own guns for self-defense, hunting and recreation.

6. We know background checks work. Federal background checks have already prevented more than 2.4 million gun sales to convicted criminals and other illegal purchasers in America. In 2012 alone, background checks blocked 192,043 sales of firearms to illegal purchasers including 82,000 attempted purchases by felons. That means background checks stopped roughly 225 felons from buying firearms every day. Yet California law only requires background checks for people who purchase firearms, not for people who purchase ammunition. We should close that loophole.

7. Right now, any violent felon or dangerously mentally ill person can walk into a sporting goods store or gun shop in California and buy ammunition, no questions asked. That should change. We should require background checks for ammunition sales just like gun sales, and stop both from getting into the hands of dangerous individuals.

8. Under current law, stores that sell ammunition are not required to report to law enforcement when ammunition is lost or stolen. Stores should have to report lost or stolen ammunition within 48 hours of discovering that it is missing so law enforcement can work to prevent that ammunition from being illegally trafficked into the hands of dangerous individuals.

9. Californians today are not required to report lost or stolen guns to law enforcement. This makes it difficult for law enforcement to investigate crimes committed with stolen guns, break up gun trafficking rings, and return guns to their lawful owners. We should require gun owners to report their lost or stolen guns to law enforcement.

10. Under current law, people who commit felonies and other serious crimes are prohibited from possessing firearms. Yet existing law provides no clear process for those people to relinquish their guns when they become prohibited at the time of conviction. As a result, in 2014, the Department of Justice identified more than 17,000 people who possess more than 34,000 guns illegally, including more than 1,400 assault weapons. We need to close this dangerous loophole by not only requiring prohibited people to turn in their guns, but also ensuring that it happens.

11. Military-style large-capacity ammunition magazines—some capable of holding more than 100 rounds of ammunition—significantly increase a shooter's ability to kill a lot of people in a short amount of time. That is why these large capacity ammunition magazines are common in many of America's most horrific mass shootings, from the killings at 101 California Street in San Francisco in 1993 to Columbine High School in 1999 to the massacre at Sandy Hook Elementary School in Newtown, Connecticut in 2012.

12. Today, California law prohibits the manufacture, importation and sale of military-style, large capacity

ammunition magazines, but does not prohibit the general public from possessing them. We should close that loophole. No one except trained law enforcement should be able to possess these dangerous ammunition magazines.

13. Although the State of California conducts background checks on gun buyers who live in California, we have to rely on other states and the FBI to conduct background checks on gun buyers who live elsewhere. We should make background checks outside of California more effective by consistently requiring the state to report who is prohibited from possessing firearms to the federal background check system.

14. The theft of a gun is a serious and potentially violent crime. We should clarify that such crimes can be charged as felonies, and prevent people who are convicted of such crimes from possessing firearms.

SEC. 3.   Purpose and Intent.

The people of the State of California declare their purpose and intent in enacting "The Safety for All Act of 2016" (the "Act") to be as follows:

1. To implement reasonable and common-sense reforms to make California's gun safety laws the toughest in the nation while still safeguarding the Second Amendment rights of all law-abiding, responsible Californians.

2. To keep guns and ammunition out of the hands of convicted felons, the dangerously mentally ill, and other persons who are prohibited by law from possessing firearms and ammunition.

3. To ensure that those who buy ammunition in California—just like those who buy firearms—are subject to background checks.

4. To require all stores that sell ammunition to report any lost or stolen ammunition within 48 hours of discovering that it is missing.

5. To ensure that California shares crucial information with federal law enforcement by consistently requiring the state to report individuals who are prohibited by law from possessing firearms to the federal background check system.

6. To require the reporting of lost or stolen firearms to law enforcement.

7. To better enforce the laws that require people to relinquish their firearms once they are convicted of a crime that makes them ineligible to possess firearms.

8. To make it illegal in California to possess the kinds of military-style ammunition magazines that enable mass killings like those at Sandy Hook Elementary School; a movie theater in Aurora, Colorado; Columbine High School; and an office building at 101 California Street in San Francisco, California.

9. To prevent people who are convicted of the theft of a firearm from possessing firearms, and to effectuate the intent of Proposition 47 that the theft of a firearm is felony grand theft, regardless of the value of the firearm, in alignment with Sections 25400 and 1192.7 of the Penal Code.

SEC. 4.   Lost or Stolen Firearms.

SEC. 4.1.   Division 4.5 (commencing with Section 25250) is added to Title 4 of Part 6 of the Penal Code, to read:

*DIVISION 4.5.   LOST OR STOLEN FIREARMS*

25250.   (a) Commencing July 1, 2017, every person shall report the loss or theft of a firearm he or she owns or possesses to a local law enforcement agency in the jurisdiction in which the theft or loss occurred within five days of the time he or she knew or reasonably should have known that the firearm had been stolen or lost.

(b) Every person who has reported a firearm lost or stolen under subdivision (a) shall notify the local law enforcement agency in the jurisdiction in which the theft or loss occurred within five days if the firearm is subsequently recovered by the person.

(c) Notwithstanding subdivision (a), a person shall not be required to report the loss or theft of a firearm that is an antique firearm within the meaning of subdivision (c) of Section 16170.

25255.   Section 25250 shall not apply to the following:

(a) Any law enforcement agency or peace officer acting within the course and scope of his or her employment or official duties if he or she reports the loss or theft to his or her employing agency.

(b) Any United States marshal or member of the Armed Forces of the United States or the National Guard, while engaged in his or her official duties.

(c) Any person who is licensed, pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and who reports the theft or loss in accordance with Section 923(g)(6) of Title 18 of the United States Code, or the successor provision thereto, and applicable regulations issued thereto.

(d) Any person whose firearm was lost or stolen prior to July 1, 2017.

25260.   Pursuant to Section 11108, every sheriff or police chief shall submit a description of each firearm that has been reported lost or stolen directly into the Department of Justice Automated Firearms System.

25265.   (a) Every person who violates Section 25250 is, for a first violation, guilty of an infraction, punishable by a fine not to exceed one hundred dollars ($100).

(b) Every person who violates Section 25250 is, for a second violation, guilty of an infraction, punishable by a fine not to exceed one thousand dollars ($1,000).

(c) Every person who violates Section 25250 is, for a third or subsequent violation, guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding six months, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

25270.   Every person reporting a lost or stolen firearm pursuant to Section 25250 shall report the make, model, and serial number of the firearm, if known by the person, and any additional relevant information required by the local law enforcement agency taking the report.

25275.   (a) No person shall report to a local law enforcement agency that a firearm has been lost or stolen, knowing the report to be false. A violation of this section is an infraction, punishable by a fine not exceeding two hundred fifty dollars ($250) for a first offense, and by a fine not exceeding one thousand dollars ($1,000) for a second or subsequent offense.

(b) This section shall not preclude prosecution under any other law.

SEC. 4.2.   Section 26835 of the Penal Code is amended to read:

26835.   A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:

(a) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(b) "IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(c) "IF YOU KEEP ANY FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A FINE OF UP TO FIVE THOUSAND DOLLARS ($5,000), UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(d) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A FINE OF UP TO ONE THOUSAND DOLLARS ($1,000), UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(e) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(f) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(g) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

**63**

**63**

*(h) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."*

SEC. 5.  Strengthening the National Instant Criminal Background Check System.

SEC. 5.1.  Section 28220 of the Penal Code is amended to read:

28220.  (a) Upon submission of firearm purchaser information, the Department of Justice shall examine its records, as well as those records that it is authorized to request from the State Department of State Hospitals pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b) To the extent that funding is available, the *The* Department of Justice may *shall* participate in the National Instant Criminal Background Check System (NICS), as described in subsection (t) of Section 922 of Title 18 of the United States Code, and, if that participation is implemented, shall notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, that the purchaser is a person prohibited from acquiring a firearm under federal law.

(c) If the department determines that the purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm or is a person described in subdivision (a) of Section 27535, it shall immediately notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact.

(d) If the department determines that the copies of the register submitted to it pursuant to subdivision (d) of Section 28210 contain any blank spaces or inaccurate, illegible, or incomplete information, preventing identification of the purchaser or the handgun or other firearm to be purchased, or if any fee required pursuant to Section 28225 is not submitted by the dealer in conjunction with submission of copies of the register, the department may notify the dealer of that fact. Upon notification by the department, the dealer shall submit corrected copies of the register to the department, or shall submit any fee required pursuant to Section 28225, or both, as appropriate and, if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

(e) If the department determines that the information transmitted to it pursuant to Section 28215 contains inaccurate or incomplete information preventing identification of the purchaser or the handgun or other firearm to be purchased, or if the fee required pursuant to Section 28225 is not transmitted by the dealer in conjunction with transmission of the electronic or telephonic record, the department may notify the dealer of

that fact. Upon notification by the department, the dealer shall transmit corrections to the record of electronic or telephonic transfer to the department, or shall transmit any fee required pursuant to Section 28225, or both, as appropriate, and if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

(f) (1) (A) The department shall immediately notify the dealer to delay the transfer of the firearm to the purchaser if the records of the department, or the records available to the department in the National Instant Criminal Background Check System, indicate one of the following:

(i) The purchaser has been taken into custody and placed in a facility for mental health treatment or evaluation and may be a person described in Section 8100 or 8103 of the Welfare and Institutions Code and the department is unable to ascertain whether the purchaser is a person who is prohibited from possessing, receiving, owning, or purchasing a firearm, pursuant to Section 8100 or 8103 of the Welfare and Institutions Code, prior to the conclusion of the waiting period described in Sections 26815 and 27540.

(ii) The purchaser has been arrested for, or charged with, a crime that would make him or her, if convicted, a person who is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, and the department is unable to ascertain whether the purchaser was convicted of that offense prior to the conclusion of the waiting period described in Sections 26815 and 27540.

(iii) The purchaser may be a person described in subdivision (a) of Section 27535, and the department is unable to ascertain whether the purchaser, in fact, is a person described in subdivision (a) of Section 27535, prior to the conclusion of the waiting period described in Sections 26815 and 27540.

(B) The dealer shall provide the purchaser with information about the manner in which he or she may contact the department regarding the delay described in subparagraph (A).

(2) The department shall notify the purchaser by mail regarding the delay and explain the process by which the purchaser may obtain a copy of the criminal or mental health record the department has on file for the purchaser. Upon receipt of that criminal or mental health record, the purchaser shall report any inaccuracies or incompleteness to the department on an approved form.

(3) If the department ascertains the final disposition of the arrest or criminal charge, or the outcome of the mental health treatment or evaluation, or the purchaser's eligibility to purchase a firearm, as described in paragraph (1), after the waiting period described in Sections 26815 and 27540, but within 30 days of the dealer's original submission of the purchaser information to the department pursuant to this section, the department shall do the following:

(A) If the purchaser is not a person described in subdivision (a) of Section 27535, and is not prohibited by state or federal law, including, but not limited to, Section 8100 or 8103 of the Welfare and Institutions Code, from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the dealer of that fact and the dealer may then immediately transfer the firearm to the purchaser, upon the dealer's recording on the register or

**63**

record of electronic transfer the date that the firearm is transferred, the dealer signing the register or record of electronic transfer indicating delivery of the firearm to that purchaser, and the purchaser signing the register or record of electronic transfer acknowledging the receipt of the firearm on the date that the firearm is delivered to him or her.

(B) If the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law, including, but not limited to, Section 8100 or 8103 of the Welfare and Institutions Code, from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the dealer and the chief of the police department in the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact in compliance with subdivision (c) of Section 28220.

(4) If the department is unable to ascertain the final disposition of the arrest or criminal charge, or the outcome of the mental health treatment or evaluation, or the purchaser's eligibility to purchase a firearm, as described in paragraph (1), within 30 days of the dealer's original submission of purchaser information to the department pursuant to this section, the department shall immediately notify the dealer and the dealer may then immediately transfer the firearm to the purchaser, upon the dealer's recording on the register or record of electronic transfer the date that the firearm is transferred, the dealer signing the register or record of electronic transfer indicating delivery of the firearm to that purchaser, and the purchaser signing the register or record of electronic transfer acknowledging the receipt of the firearm on the date that the firearm is delivered to him or her.

*(g) Commencing July 1, 2017, upon receipt of information demonstrating that a person is prohibited from possessing a firearm pursuant to federal or state law, the department shall submit the name, date of birth, and physical description of the person to the National Instant Criminal Background Check System Index, Denied Persons Files. The information provided shall remain privileged and confidential, and shall not be disclosed, except for the purpose of enforcing federal or state firearms laws.*

SEC. 6.    Possession of Large-Capacity Magazines.

SEC. 6.1.    Section 32310 of the Penal Code is amended to read:

32310.    (a) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, ~~commencing January 1, 2000,~~ any person in this state who manufactures or causes to be manufactured, imports into this state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170.

(b) For purposes of this section, "manufacturing" includes both fabricating a magazine and assembling a magazine from a combination of parts, including, but not limited to, the body, spring, follower, and floor plate or end plate, to be a fully functioning large-capacity magazine.

*(c) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing July 1, 2017, any person in this state who*

*possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, or is guilty of a misdemeanor punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.*

*(d) Any person who may not lawfully possess a large-capacity magazine commencing July 1, 2017 shall, prior to July 1, 2017:*

*(1) Remove the large-capacity magazine from the state;*

*(2) Sell the large-capacity magazine to a licensed firearms dealer; or*

*(3) Surrender the large-capacity magazine to a law enforcement agency for destruction.*

SEC. 6.2.    Section 32400 of the Penal Code is amended to read:

32400.    Section 32310 does not apply to the sale of, giving of, lending of, *possession of,* importation into this state of, or purchase of, any large-capacity magazine to or by any federal, state, county, city and county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties, whether on or off duty, and where the use is authorized by the agency and is within the course and scope of their duties.

SEC. 6.3.    Section 32405 of the Penal Code is amended to read:

32405.    Section 32310 does not apply to the sale to, lending to, transfer to, purchase by, receipt of, *possession of,* or importation into this state of, a large-capacity magazine by a sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, *or sworn federal law enforcement officer,* who is authorized to carry a firearm in the course and scope of that officer's duties.

SEC. 6.4.    Section 32406 is added to the Penal Code, to read:

*32406.    Subdivision (c) of Section 32310 does not apply to an honorably retired sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or honorably retired sworn federal law enforcement officer, who was authorized to carry a firearm in the course and scope of that officer's duties. "Honorably retired" shall have the same meaning as provided in Section 16690.*

SEC. 6.5.    Section 32410 of the Penal Code is amended to read:

32410.    Section 32310 does not apply to the sale*, or* purchase*, or possession* of any large-capacity magazine to or by a person licensed pursuant to Sections 26700 to 26915, inclusive.

SEC. 6.6.    Section 32420 of the Penal Code is repealed.

~~32420.    Section 32310 does not apply to the importation of a large-capacity magazine by a person who lawfully possessed the large-capacity magazine in the state prior to January 1, 2000, lawfully took it out of the state, and is returning to the state with the same large-capacity magazine.~~

SEC. 6.7.    Section 32425 of the Penal Code is amended to read:

**63**

32425.   Section 32310 does not apply to ~~either~~ *any* of the following:

(a) The lending or giving of any large-capacity magazine to a person licensed pursuant to Sections 26700 to 26915, inclusive, or to a gunsmith, for the purposes of maintenance, repair, or modification of that large-capacity magazine.

*(b) The possession of any large-capacity magazine by a person specified in subdivision (a) for the purposes specified in subdivision (a).*

~~(b)~~ *(c)* The return to its owner of any large-capacity magazine by a person specified in subdivision (a).

SEC. 6.8.   Section 32435 of the Penal Code is amended to read:

32435.   Section 32310 does not apply to any of the following:

(a) The sale of, giving of, lending of, *possession of,* importation into this state of, or purchase of, any large-capacity magazine, to or by any entity that operates an armored vehicle business pursuant to the laws of this state.

(b) The lending of large-capacity magazines by an entity specified in subdivision (a) to its authorized employees, while in the course and scope of employment for purposes that pertain to the entity's armored vehicle business.

*(c) The possession of any large-capacity magazines by the employees of an entity specified in subdivision (a) for purposes that pertain to the entity's armored vehicle business.*

~~(c)~~ *(d)* The return of those large-capacity magazines to the entity specified in subdivision (a) by those employees specified in subdivision (b).

SEC. 6.9.   Section 32450 of the Penal Code is amended to read:

32450.   Section 32310 does not apply to the purchase *or possession* of a large-capacity magazine by the holder of a special weapons permit issued pursuant to Section 31000, 32650, or 33300, or pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of this division, for any of the following purposes:

(a) For use solely as a prop for a motion picture, television, or video production.

(b) For export pursuant to federal regulations.

(c) For resale to law enforcement agencies, government agencies, or the military, pursuant to applicable federal regulations.

SEC. 7.   Firearms Dealers.

SEC. 7.1.   Section 26885 of the Penal Code is amended to read:

26885.   (a) Except as provided in subdivisions (b) and (c) of Section 26805, all firearms that are in the inventory of a licensee shall be kept within the licensed location.

(b) Within 48 hours of discovery, a licensee shall report the loss or theft of any of the following items to the appropriate law enforcement agency in the city, county, or city and county where the licensee's business premises are located:

(1) Any firearm *or ammunition* that is merchandise of the licensee.

(2) Any firearm *or ammunition* that the licensee takes possession of pursuant to Chapter 5 (commencing with Section 28050)*, or pursuant to Section 30312.*

(3) Any firearm *or ammunition* kept at the licensee's place of business.

SEC. 7.2.   Section 26915 of the Penal Code is amended to read:

26915.   (a) *Commencing January 1, 2018, a* ~~A~~ firearms dealer ~~may~~ *shall* require any agent *or employee* who handles, sells, or delivers firearms to obtain and provide to the dealer a certificate of eligibility from the Department of Justice pursuant to Section 26710. On the application for the certificate, the agent or employee shall provide the name and California firearms dealer number of the firearms dealer with whom the person is employed.

(b) The department shall notify the firearms dealer in the event that the agent or employee who has a certificate of eligibility is or becomes prohibited from possessing firearms.

(c) If the local jurisdiction requires a background check of the agents or employees of a firearms dealer, the agent or employee shall obtain a certificate of eligibility pursuant to subdivision (a).

(d) (1) Nothing in this section shall be construed to preclude a local jurisdiction from conducting an additional background check pursuant to Section 11105. The local jurisdiction may not charge a fee for the additional criminal history check.

(2) Nothing in this section shall be construed to preclude a local jurisdiction from prohibiting employment based on criminal history that does not appear as part of obtaining a certificate of eligibility.

(e) The licensee shall prohibit any agent who the licensee knows or reasonably should know is within a class of persons prohibited from possessing firearms pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, from coming into contact with any firearm that is not secured and from accessing any key, combination, code, or other means to open any of the locking devices described in subdivision (g).

(f) Nothing in this section shall be construed as preventing a local government from enacting an ordinance imposing additional conditions on licensees with regard to agents *or employees.*

(g) For purposes of this article, "secured" means a firearm that is made inoperable in one or more of the following ways:

(1) The firearm is inoperable because it is secured by a firearm safety device listed on the department's roster of approved firearm safety devices pursuant to subdivision (d) of Section 23655.

(2) The firearm is stored in a locked gun safe or long-gun safe that meets the standards for department-approved gun safes set forth in Section 23650.

(3) The firearm is stored in a distinct locked room or area in the building that is used to store firearms, which can only be unlocked by a key, a combination, or similar means.

(4) The firearm is secured with a hardened steel rod or cable that is at least one-eighth of an inch in diameter through the trigger guard of the firearm. The steel rod or cable shall be secured with a hardened steel lock that has

a shackle. The lock and shackle shall be protected or shielded from the use of a boltcutter and the rod or cable shall be anchored in a manner that prevents the removal of the firearm from the premises.

SEC. 8.   Sales of Ammunition.

SEC. 8.1.   Section 16150 of the Penal Code is amended to read:

16150.   (a) ~~As used in Section 30300, "ammunition" means handgun ammunition as defined in Section 16650.~~ *As used in this part, except in subdivision (a) of Section 30305 and in Section 30306, "ammunition" means one or more loaded cartridges consisting of a primed case, propellant, and with one or more projectiles. "Ammunition" does not include blanks.*

(b) As used in subdivision (a) of Section 30305 and in Section 30306, "ammunition" includes, but is not limited to, any bullet, cartridge, magazine, clip, speed loader, autoloader, or projectile capable of being fired from a firearm with a deadly consequence. "Ammunition" does not include blanks.

SEC. 8.2.   Section 16151 is added to the Penal Code, to read:

*16151.   (a) As used in this part, commencing January 1, 2018, "ammunition vendor" means any person, firm, corporation, or other business enterprise that holds a current ammunition vendor license issued pursuant to Section 30385.*

*(b) Commencing January 1, 2018, a firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, shall automatically be deemed a licensed ammunition vendor, provided the dealer complies with the requirements of Articles 2 (commencing with Section 30300) and 3 (commencing with Section 30342) of Chapter 1 of Division 10 of Title 4.*

SEC. 8.3.   Section 16662 of the Penal Code is repealed.

~~16662.   As used in this part, "handgun ammunition vendor" means any person, firm, corporation, dealer, or any other business enterprise that is engaged in the retail sale of any handgun ammunition, or that holds itself out as engaged in the business of selling any handgun ammunition.~~

SEC. 8.4.   Section 17315 of the Penal Code is amended to read:

17315.   As used in ~~Article 3 (commencing with Section 30345)~~ *Articles 2 through 5* of Chapter 1 of Division 10 of Title 4, "vendor" means a *an* ~~handgun~~ ammunition vendor.

SEC. 8.5.   Section 30306 of the Penal Code is amended to read:

30306.   (a) Any person, corporation, ~~or~~ firm, *or other business enterprise* who supplies, delivers, sells, or gives possession or control of, any ammunition to any person who he or she knows or using reasonable care should know is prohibited from owning, possessing, or having under custody or control, any ammunition or reloaded ammunition pursuant to subdivision (a) or (b) of Section 30305, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

*(b) Any person, corporation, firm, or other business enterprise who supplies, delivers, sells, or gives possession or control of, any ammunition to any person whom the person, corporation, firm, or other business enterprise*

knows or has cause to believe is not the actual purchaser or transferee of the ammunition, with knowledge or cause to believe that the ammunition is to be subsequently sold or transferred to a person who is prohibited from owning, possessing, or having under custody or control any ammunition or reloaded ammunition pursuant to subdivision (a) or (b) of Section 30305, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

~~(b)~~ *(c)* The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and another provision of law shall not be punished under more than one provision.

SEC. 8.6.   Section 30312 of the Penal Code is amended to read:

30312.   (a) ~~Commencing February 1, 2011, the~~ *(1) Commencing January 1, 2018, the sale of ammunition by any party shall be conducted by or processed through a licensed ammunition vendor.*

*(2) When neither party to an ammunition sale is a licensed ammunition vendor, the seller shall deliver the ammunition to a vendor to process the transaction. The ammunition vendor shall then promptly and properly deliver the ammunition to the purchaser, if the sale is not prohibited, as if the ammunition were the vendor's own merchandise. If the ammunition vendor cannot legally deliver the ammunition to the purchaser, the vendor shall forthwith return the ammunition to the seller. The ammunition vendor may charge the purchaser an administrative fee to process the transaction, in an amount to be set by the Department of Justice, in addition to any applicable fees that may be charged pursuant to the provisions of this title.*

(b) *Commencing January 1, 2018, the sale,* delivery or transfer of ownership of ~~handgun~~ ammunition *by any party* may only occur in a face-to-face transaction with the *seller,* deliverer, or transferor ~~being provided bona fide evidence of identity from the purchaser or other transferee,~~ *provided, however, that ammunition may be purchased or acquired over the Internet or through other means of remote ordering if a licensed ammunition vendor initially receives the ammunition and processes the transaction in compliance with this section and Article 3 (commencing with Section 30342) of Chapter 1 of Division 10 of Title 4 of this part.*

~~(b)~~ *(c)* ~~Subdivision~~ *Subdivisions* (a) *and (b)* shall not apply to ~~or affect~~ the sale, delivery, or transfer of ~~handgun~~ ammunition to any of the following:

(1) An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale, delivery, or transfer is for exclusive use by that government agency and, prior to the sale, delivery, or transfer of the ~~handgun~~ ammunition, written authorization from the head of the agency employing the purchaser or transferee is obtained, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency employing the individual.

(2) A sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, *or sworn federal law enforcement officer,* who is authorized to carry a firearm in the course and scope of the officer's duties.

**63**

**63**

(3) An importer or manufacturer of ~~handgun~~ ammunition or firearms who is licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) A person who is on the centralized list *of exempted federal firearms licensees* maintained by the Department of Justice pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

(5) A person whose licensed premises are outside this state and who is licensed as a dealer or collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(6) A person who is licensed as a collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, whose licensed premises are within this state, and who has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(7) ~~A handgun~~ *An* ammunition vendor.

(8) A consultant-evaluator.

*(9) A person who purchases or receives ammunition at a target facility holding a business or other regulatory license, provided that the ammunition is at all times kept within the facility's premises.*

*(10) A person who purchases or receives ammunition from a spouse, registered domestic partner, or immediate family member as defined in Section 16720.*

~~(c)~~ *(d)* A violation of this section is a misdemeanor.

SEC. 8.7.   Section 30314 is added to the Penal Code, to read:

*30314.   (a) Commencing January 1, 2018, a resident of this state shall not bring or transport into this state any ammunition that he or she purchased or otherwise obtained from outside of this state unless he or she first has that ammunition delivered to a licensed ammunition vendor for delivery to that resident pursuant to the procedures set forth in Section 30312.*

*(b) Subdivision (a) does not apply to any of the following:*

*(1) An ammunition vendor.*

*(2) A sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or sworn federal law enforcement officer, who is authorized to carry a firearm in the course and scope of the officer's duties.*

*(3) An importer or manufacturer of ammunition or firearms who is licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.*

*(4) A person who is on the centralized list of exempted federal firearms licensees maintained by the Department of Justice pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6.*

*(5) A person who is licensed as a collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, whose licensed premises are within this state, and who has a current certificate of*

*eligibility issued by the Department of Justice pursuant to Section 26710.*

*(6) A person who acquired the ammunition from a spouse, registered domestic partner, or immediate family member as defined in Section 16720.*

*(c) A violation of this section is an infraction for any first time offense, and either an infraction or a misdemeanor for any subsequent offense.*

SEC. 8.8.   The heading of Article 3 (commencing with Section 30342) of Chapter 1 of Division 10 of Title 4 of Part 6 of the Penal Code is amended to read:

Article 3.   ~~Handgun~~ Ammunition Vendors

SEC. 8.9.   Section 30342 is added to the Penal Code, immediately preceding Section 30345, to read:

*30342. (a) Commencing January 1, 2018, a valid ammunition vendor license shall be required for any person, firm, corporation, or other business enterprise to sell more than 500 rounds of ammunition in any 30-day period.*

*(b) A violation of this section is a misdemeanor.*

SEC. 8.10.   Section 30347 of the Penal Code is amended to read:

*30347.   (a) An ammunition vendor shall require any agent or employee who handles, sells, delivers, or has under his or her custody or control any ammunition, to obtain and provide to the vendor a certificate of eligibility from the Department of Justice issued pursuant to Section 26710. On the application for the certificate, the agent or employee shall provide the name and address of the ammunition vendor with whom the person is employed, or the name and California firearms dealer number of the ammunition vendor if applicable.*

*(b) The department shall notify the ammunition vendor in the event that the agent or employee who has a certificate of eligibility is or becomes prohibited from possessing ammunition under subdivision (a) of Section 30305 or federal law.*

*(c) ~~A~~ An ammunition* vendor shall not permit any *agent or employee* who the vendor knows or reasonably should know is a person described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title or Section 8100 or 8103 of the Welfare and Institutions Code to handle, sell, ~~or~~ deliver, *or have under his or her custody or control, any* ~~handgun~~ ammunition in the course and scope of employment.

SEC. 8.11.   Section 30348 is added to the Penal Code, to read:

*30348.   (a) Except as provided in subdivision (b), the sale of ammunition by a licensed vendor shall be conducted at the location specified in the license.*

*(b) A vendor may sell ammunition at a gun show or event if the gun show or event is not conducted from any motorized or towed vehicle.*

*(c) For purposes of this section, "gun show or event" means a function sponsored by any national, state, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.*

*(d) Sales of ammunition at a gun show or event shall comply with all applicable laws including Sections 30347, 30350, 30352, and 30360.*

SEC. 8.12.   Section 30350 of the Penal Code is amended to read:

30350.   ~~A~~ *An ammunition* vendor shall not sell or otherwise transfer ownership of, offer for sale or otherwise offer to transfer ownership of, or display for sale or display for transfer of ownership of any ~~handgun~~ ammunition in a manner that allows that ammunition to be accessible to a purchaser or transferee without the assistance of the vendor or an employee of the vendor.

SEC. 8.13.   Section 30352 of the Penal Code is amended to read:

30352.   (a) Commencing ~~February 1, 2011, a~~ *July 1, 2019, an ammunition* vendor shall not sell or otherwise transfer ownership of any ~~handgun~~ ammunition without, at the time of delivery, legibly recording the following information *on a form to be prescribed by the Department of Justice*:

(1) The date of the sale or other ~~transaction~~ *transfer*.

(2) The purchaser's or transferee's driver's license or other identification number and the state in which it was issued.

(3) The brand, type, and amount of ammunition sold or otherwise transferred.

(4) The purchaser's or transferee's *full name and* signature.

(5) The name of the salesperson who processed the sale or other transaction.

(6) ~~The right thumbprint of the purchaser or transferee on the above form.~~

~~(7)~~ *(6)* The purchaser's or transferee's full residential address and telephone number.

~~(8)~~ *(7)* The purchaser's or transferee's date of birth.

*(b) Commencing July 1, 2019, an ammunition vendor shall electronically submit to the department the information required by subdivision (a) for all sales and transfers of ownership of ammunition. The department shall retain this information in a database to be known as the Ammunition Purchase Records File. This information shall remain confidential and may be used by the department and those entities specified in, and pursuant to, subdivision (b) or (c) of Section 11105, through the California Law Enforcement Telecommunications System, only for law enforcement purposes. The ammunition vendor shall not use, sell, disclose, or share such information for any other purpose other than the submission required by this subdivision without the express written consent of the purchaser or transferee.*

*(c) Commencing on July 1, 2019, only those persons listed in this subdivision, or those persons or entities listed in subdivision (e), shall be authorized to purchase ammunition. Prior to delivering any ammunition, an ammunition vendor shall require bona fide evidence of identity to verify that the person who is receiving delivery of the ammunition is a person or entity listed in subdivision (e) or one of the following:*

*(1) A person authorized to purchase ammunition pursuant to Section 30370.*

*(2) A person who was approved by the department to receive a firearm from the ammunition vendor, pursuant to Section 28220, if that vendor is a licensed firearms dealer,*

and the ammunition is delivered to the person in the same transaction as the firearm.

*(d) Commencing July 1, 2019, the ammunition vendor shall verify with the department, in a manner prescribed by the department, that the person is authorized to purchase ammunition by comparing the person's ammunition purchase authorization number to the centralized list of authorized ammunition purchasers. If the person is not listed as an authorized ammunition purchaser, the vendor shall deny the sale or transfer.*

~~(b)~~ *(e)* ~~Subdivision~~ *Subdivisions* (a) *and (d)* shall not apply to ~~or affect~~ sales or other transfers of ownership of ~~handgun~~ ammunition by ~~handgun~~ ammunition vendors to any of the following, if properly identified:

~~(1) A person licensed pursuant to Sections 26700 to 26915, inclusive.~~

~~(2)~~ *(1)* ~~A handgun~~ *An* ammunition vendor.

~~(3)~~ *(2)* A person who is on the centralized list *of exempted federal firearms licensees* maintained by the department pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

~~(4)~~ *(3)* A ~~target facility that holds a business or regulatory license~~ *person who purchases or receives ammunition at a target facility holding a business or other regulatory license, provided that the ammunition is at all times kept within the facility's premises.*

~~(5)~~ *(4)* A gunsmith.

~~(6)~~ *(5)* A wholesaler.

~~(7)~~ *(6)* A manufacturer or importer of firearms *or ammunition* licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and the regulations issued pursuant thereto.

~~(8)~~ *(7)* An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale or other transfer of ownership is for exclusive use by that government agency, and, prior to the sale, delivery, or transfer of the ~~handgun~~ ammunition, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser, transferee, or person otherwise acquiring ownership is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that individual is employed.

*(8) A properly identified sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or properly identified sworn federal law enforcement officer, who is authorized to carry a firearm in the course and scope of the officer's duties.*

*(f) (1) Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a full-time paid peace officer who is authorized to carry a firearm in the course and scope of the officer's duties.*

*(2) The certification shall be delivered to the vendor at the time of purchase or transfer and the purchaser or transferee shall provide bona fide evidence of identity to verify that he or she is the person authorized in the certification.*

**63**

(3) The vendor shall keep the certification with the record of sale and submit the certification to the department.

(g) The department is authorized to adopt regulations to implement the provisions of this section.

SEC. 8.14.   Section 30363 is added to the Penal Code, to read:

30363.   Within 48 hours of discovery, an ammunition vendor shall report the loss or theft of any of the following items to the appropriate law enforcement agency in the city, county, or city and county where the vendor's business premises are located:

(1) Any ammunition that is merchandise of the vendor.

(2) Any ammunition that the vendor takes possession of pursuant to Section 30312.

(3) Any ammunition kept at the vendor's place of business.

SEC. 8.15.   Article 4 (commencing with Section 30370) is added to Chapter 1 of Division 10 of Title 4 of Part 6 of the Penal Code, to read:

    Article 4.   Ammunition Purchase Authorizations

30370.   (a) (1) Commencing on January 1, 2019, any person who is 18 years of age or older may apply to the Department of Justice for an ammunition purchase authorization.

(2) The ammunition purchase authorization may be used by the authorized person to purchase or otherwise seek the transfer of ownership of ammunition from an ammunition vendor, as that term is defined in Section 16151, and shall have no other force or effect.

(3) The ammunition purchase authorization shall be valid for four years from July 1, 2019, or the date of issuance, whichever is later, unless it is revoked by the department pursuant to subdivision (b).

(b) The ammunition purchase authorization shall be promptly revoked by the department upon the occurrence of any event which would have disqualified the holder from being issued the ammunition purchase authorization pursuant to this section. If an authorization is revoked, the department shall upon the written request of the holder state the reasons for doing so and provide the holder an appeal process to challenge that revocation.

(c) The department shall create and maintain an internal centralized list of all persons who are authorized to purchase ammunition and shall promptly remove from the list any persons whose authorization was revoked by the department pursuant to this section. The department shall provide access to the list by ammunition vendors for purposes of conducting ammunition sales or other transfers, and shall provide access to the list by law enforcement agencies for law enforcement purposes.

(d) The department shall issue an ammunition purchase authorization to the applicant if all of the following conditions are met:

(1) The applicant is 18 years of age or older.

(2) The applicant is not prohibited from acquiring or possessing ammunition under subdivision (a) of Section 30305 or federal law.

(3) The applicant pays the fees set forth in subdivision (g).

(e) (1) Upon receipt of an initial or renewal application, the department shall examine its records, and the records it is authorized to request from the State Department of State Hospitals, pursuant to Section 8104 of the Welfare and Institutions Code, and if authorized, the National Instant Criminal Background Check System, as described in Section 922(t) of Title 18 of the United States Code, in order to determine if the applicant is prohibited from possessing or acquiring ammunition under subdivision (a) of Section 30305 or federal law.

(2) The applicant shall be approved or denied within 30 days of the date of the submission of the application to the department. If the application is denied, the department shall state the reasons for doing so and provide the applicant an appeal process to challenge that denial.

(3) If the department is unable to ascertain the final disposition of the application within 30 days of the applicant's submission, the department shall grant authorization to the applicant.

(4) The ammunition purchase authorization number shall be the same as the number on the document presented by the person as bona fide evidence of identity.

(f) The department shall renew a person's ammunition purchase authorization before its expiration, provided that the department determines that the person is not prohibited from acquiring or possessing ammunition under subdivision (a) of Section 30305 or federal law, and provided the applicant timely pays the renewal fee set forth in subdivision (g).

(g) The department may charge a reasonable fee not to exceed fifty dollars ($50) per person for the issuance of an ammunition purchase authorization or the issuance of a renewal authorization, however, the department shall not set these fees any higher than necessary to recover the reasonable, estimated costs to fund the ammunition authorization program provided for in this section and Section 30352, including the enforcement of this program and maintenance of any data systems associated with this program.

(h) The Ammunition Safety and Enforcement Special Fund is hereby created within the State Treasury. All fees received pursuant to this section shall be deposited into the Ammunition Safety and Enforcement Special Fund of the General Fund, and, notwithstanding Section 13340 of the Government Code, are continuously appropriated for purposes of implementing, operating and enforcing the ammunition authorization program provided for in this section and Section 30352, and for repaying the start-up loan provided for in Section 30371.

(i) The department shall annually review and may adjust all fees specified in subdivision (g) for inflation.

(j) The department is authorized to adopt regulations to implement the provisions of this section.

30371.   (a) There is hereby appropriated twenty-five million dollars ($25,000,000) from the General Fund as a loan for the start-up costs of implementing, operating and enforcing the provisions of the ammunition authorization program provided for in Sections 30352 and 30370.

(b) For purposes of repaying the loan, the Controller shall, after disbursing moneys necessary to implement, operate and enforce the ammunition authorization program provided for in Sections 30352 and 30370, transfer all proceeds from fees received by the Ammunition Safety and Enforcement Special Fund up to the amount of the loan provided by this section, including interest at the pooled money investment account rate, to the General Fund.

SEC. 8.16.   Article 5 (commencing with Section 30385) is added to Chapter 1 of Division 10 of Title 4 of Part 6 of the Penal Code, to read:

### Article 5.   Ammunition Vendor Licenses

30385.   (a) The Department of Justice is authorized to issue ammunition vendor licenses pursuant to this article. The department shall, commencing July 1, 2017, commence accepting applications for ammunition vendor licenses. If an application is denied, the department shall inform the applicant of the reason for denial in writing.

(b) The ammunition vendor license shall be issued in a form prescribed by the department and shall be valid for a period of one year. The department may adopt regulations to administer the application and enforcement provisions of this article. The license shall allow the licensee to sell ammunition at the location specified in the license or at a gun show or event as set forth in Section 30348.

(c) (1) In the case of an entity other than a natural person, the department shall issue the license to the entity, but shall require a responsible person to pass the background check pursuant to Section 30395.

(2) For purposes of this article, "responsible person" means a person having the power to direct the management, policies, and practices of the entity as it pertains to ammunition.

(d) Commencing January 1, 2018, a firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, shall automatically be deemed a licensed ammunition vendor, provided the dealer complies with the requirements of Article 2 (commencing with Section 30300) and Article 3 (commencing with Section 30342).

30390.   (a) The Department of Justice may charge ammunition vendor license applicants a reasonable fee sufficient to reimburse the department for the reasonable, estimated costs of administering the license program, including the enforcement of this program and maintenance of the registry of ammunition vendors.

(b) The fees received by the department pursuant to this article shall be deposited in the Ammunition Vendors Special Account, which is hereby created. Notwithstanding Section 13340 of the Government Code, the revenue in the fund is continuously appropriated for use by the department for the purpose of implementing, administering and enforcing the provisions of this article, and for collecting and maintaining information submitted pursuant to Section 30352.

(c) The revenue in the Firearms Safety and Enforcement Special Fund shall also be available upon appropriation by the department for the purpose of implementing and enforcing the provisions of this article.

30395.   (a) The Department of Justice is authorized to issue ammunition vendor licenses to applicants who the department has determined, either as an individual or a responsible person, are not prohibited from possessing, receiving, owning, or purchasing ammunition under subdivision (a) of Section 30305 or federal law, and who provide a copy of any regulatory or business license required by local government, a valid seller's permit issued by the State Board of Equalization, a federal firearms license if the person is federally licensed, and a certificate of eligibility issued by the department.

(b) The department shall keep a registry of all licensed ammunition vendors. Law enforcement agencies shall be provided access to the registry for law enforcement purposes.

(c) An ammunition vendor license is subject to forfeiture for a breach of any of the prohibitions and requirements of Article 2 (commencing with Section 30300) or Article 3 (commencing with Section 30342).

SEC. 9.   Nothing in this Act shall preclude or preempt a local ordinance that imposes additional penalties or requirements in regard to the sale or transfer of ammunition.

SEC. 10.   Securing Firearms From Prohibited Persons.

SEC. 10.1.   Section 1524 of the Penal Code is amended to read:

1524.   (a) A search warrant may be issued upon any of the following grounds:

(1) When the property was stolen or embezzled.

(2) When the property or things were used as the means of committing a felony.

(3) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) When the property or things to be seized consist of an item or constitute evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

(5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) When there is a warrant to arrest a person.

(7) When a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

(8) When the property or things to be seized include an item or evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(9) When the property or things to be seized include a firearm or other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault as provided in Section 18250. This section does not affect warrantless seizures otherwise authorized by Section 18250.

(10) When the property or things to be seized include a firearm or other deadly weapon that is owned by, or in the possession of, or in the custody or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.

**63**

(11) When the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 6389 of the Family Code, if a prohibited firearm is possessed, owned, in the custody of, or controlled by a person against whom a protective order has been issued pursuant to Section 6218 of the Family Code, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

(12) When the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code has been committed or is being committed, tends to show that a particular person has committed a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code. A tracking device search warrant issued pursuant to this paragraph shall be executed in a manner meeting the requirements specified in subdivision (b) of Section 1534.

(13) When a sample of the blood of a person constitutes evidence that tends to show a violation of Section 23140, 23152, or 23153 of the Vehicle Code and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 23612 of the Vehicle Code, and the sample will be drawn from the person in a reasonable, medically approved manner. This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(14) Beginning January 1, 2016, the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order that has been issued pursuant to Division 3.2 (commencing with Section 18100) of Title 2 of Part 6, if a prohibited firearm or ammunition or both is possessed, owned, in the custody of, or controlled by a person against whom a gun violence restraining order has been issued, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

*(15) Beginning January 1, 2018, the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 29800 or 29805, and the court has made a finding pursuant to paragraph (3) of subdivision (c) of Section 29810 that the person has failed to relinquish the firearm as required by law.*

~~(15)~~ *(16)* When the property or things to be seized are controlled substances or a device, contrivance, instrument, or paraphernalia used for unlawfully using or administering a controlled substance pursuant to the authority described in Section 11472 of the Health and Safety Code.

~~(16)~~ *(17)* (A) When all of the following apply:

(i) A sample of the blood of a person constitutes evidence that tends to show a violation of subdivision (b), (c), (d),

(e), or (f) of Section 655 of the Harbors and Navigation Code.

(ii) The person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 655.1 of the Harbors and Navigation Code.

(iii) The sample will be drawn from the person in a reasonable, medically approved manner.

(B) This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(b) The property, things, person, or persons described in subdivision (a) may be taken on the warrant from any place, or from any person in whose possession the property or things may be.

(c) Notwithstanding subdivision (a) or (b), no search warrant shall issue for any documentary evidence in the possession or under the control of any person who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a psychotherapist as defined in Section 1010 of the Evidence Code, or a member of the clergy as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:

(1) At the time of the issuance of the warrant, the court shall appoint a special master in accordance with subdivision (d) to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant.

(2) (A) If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.

(B) At the hearing, the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. The hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make motions or present evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case, the matter shall be heard at the earliest possible time.

(C) If an item or items are taken to court for a hearing, any limitations of time prescribed in Chapter 2 (commencing with Section 799) of Title 3 of Part 2 shall be tolled from the time of the seizure until the final conclusion of the hearing, including any associated writ or appellate proceedings.

(3) The warrant shall, whenever practicable, be served during normal business hours. In addition, the warrant shall be served upon a party who appears to have possession or control of the items sought. If, after reasonable efforts, the party serving the warrant is unable to locate the person, the special master shall seal and return to the court, for

determination by the court, any item that appears to be privileged as provided by law.

(d) (1) As used in this section, a "special master" is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys that is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. These attorneys shall serve without compensation. A special master shall be considered a public employee, and the governmental entity that caused the search warrant to be issued shall be considered the employer of the special master and the applicable public entity, for purposes of Division 3.6 (commencing with Section 810) of Title 1 of the Government Code, relating to claims and actions against public entities and public employees. In selecting the special master, the court shall make every reasonable effort to ensure that the person selected has no relationship with any of the parties involved in the pending matter. Information obtained by the special master shall be confidential and may not be divulged except in direct response to inquiry by the court.

(2) In any case in which the magistrate determines that, after reasonable efforts have been made to obtain a special master, a special master is not available and would not be available within a reasonable period of time, the magistrate may direct the party seeking the order to conduct the search in the manner described in this section in lieu of the special master.

(e) Any search conducted pursuant to this section by a special master may be conducted in a manner that permits the party serving the warrant or his or her designee to accompany the special master as he or she conducts his or her search. However, that party or his or her designee may not participate in the search nor shall he or she examine any of the items being searched by the special master except upon agreement of the party upon whom the warrant has been served.

(f) As used in this section, "documentary evidence" includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films, and papers of any type or description.

(g) No warrant shall issue for any item or items described in Section 1070 of the Evidence Code.

(h) Notwithstanding any other law, no claim of attorney work product as described in Chapter 4 (commencing with Section 2018.010) of Title 4 of Part 4 of the Code of Civil Procedure shall be sustained where there is probable cause to believe that the lawyer is engaging or has engaged in criminal activity related to the documentary evidence for which a warrant is requested unless it is established at the hearing with respect to the documentary evidence seized under the warrant that the services of the lawyer were not sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.

(i) Nothing in this section is intended to limit an attorney's ability to request an in-camera hearing pursuant to the holding of the Supreme Court of California in People v. Superior Court (Laff) (2001) 25 Cal.4th 703.

(j) In addition to any other circumstance permitting a magistrate to issue a warrant for a person or property in another county, when the property or things to be seized consist of any item or constitute evidence that tends to show a violation of Section 530.5, the magistrate may

issue a warrant to search a person or property located in another county if the person whose identifying information was taken or used resides in the same county as the issuing court.

(k) This section shall not be construed to create a cause of action against any foreign or California corporation, its officers, employees, agents, or other specified persons for providing location information.

SEC. 10.2.   Section 27930 of the Penal Code is amended to read:

27930.   Section 27545 does not apply to deliveries, transfers, or returns of firearms made pursuant to any of the following:

(a) Sections 18000 and 18005.

(b) Division 4 (commencing with Section 18250) of Title 2.

(c) Chapter 2 (commencing with Section 33850) of Division 11.

(d) Sections 34005 and 34010.

*(e) Section 29810.*

SEC. 10.3.   Section 29810 of the Penal Code is amended to read:

29810.   (a) For any person who is subject to Section 29800 or 29805, the court shall, at the time judgment is imposed, provide on a form supplied by the Department of Justice, a notice to the defendant prohibited by this chapter from owning, purchasing, receiving, possessing, or having under custody or control, any firearm. The notice shall inform the defendant of the prohibition regarding firearms and include a form to facilitate the transfer of firearms. If the prohibition on owning or possessing a firearm will expire on a date specified in the court order, the form shall inform the defendant that he or she may elect to have his or her firearm transferred to a firearms dealer licensed pursuant to Section 29830.

(b) Failure to provide the notice described in subdivision (a) is not a defense to a violation of this chapter.

*(c) This section shall be repealed effective January 1, 2018.*

SEC. 10.4.   Section 29810 is added to the Penal Code, to read:

*29810.   (a) (1) Upon conviction of any offense that renders a person subject to Section 29800 or Section 29805, the person shall relinquish all firearms he or she owns, possesses, or has under his or her custody or control in the manner provided in this section.*

*(2) The court shall, upon conviction of a defendant for an offense described in subdivision (a), instruct the defendant that he or she is prohibited from owning, purchasing, receiving, possessing, or having under his or her custody or control, any firearms, ammunition, and ammunition feeding devices, including but not limited to magazines, and shall order the defendant to relinquish all firearms in the manner provided in this section. The court shall also provide the defendant with a Prohibited Persons Relinquishment Form developed by the Department of Justice.*

*(3) Using the Prohibited Persons Relinquishment Form, the defendant shall name a designee and grant the designee power of attorney for the purpose of transferring or disposing of any firearms. The designee shall be either a local law enforcement agency or a consenting third party*

**63**

**63**

who is not prohibited from possessing firearms under state or federal law. The designee shall, within the time periods specified in subdivisions (d) and (e), surrender the firearms to the control of a local law enforcement agency, sell the firearms to a licensed firearms dealer, or transfer the firearms for storage to a firearms dealer pursuant to Section 29830.

(b) The Prohibited Persons Relinquishment Form shall do all of the following:

(1) Inform the defendant that he or she is prohibited from owning, purchasing, receiving, possessing, or having under his or her custody or control, any firearms, ammunition, and ammunition feeding devices, including but not limited to magazines, and that he or she shall relinquish all firearms through a designee within the time periods set forth in subdivision (d) or (e) by surrendering the firearms to the control of a local law enforcement agency, selling the firearms to a licensed firearms dealer, or transferring the firearms for storage to a firearms dealer pursuant to Section 29830.

(2) Inform the defendant that any cohabitant of the defendant who owns firearms must store those firearms in accordance with Section 25135.

(3) Require the defendant to declare any firearms that he or she owned, possessed, or had under his or her custody or control at the time of his or her conviction, and require the defendant to describe the firearms and provide all reasonably available information about the location of the firearms to enable a designee or law enforcement officials to locate the firearms.

(4) Require the defendant to name a designee, if the defendant declares that he or she owned, possessed, or had under his or her custody or control any firearms at the time of his or her conviction, and grant the designee power of attorney for the purpose of transferring or disposing of all firearms.

(5) Require the designee to indicate his or her consent to the designation and, except a designee that is a law enforcement agency, to declare under penalty of perjury that he or she is not prohibited from possessing any firearms under state or federal law.

(6) Require the designee to state the date each firearm was relinquished and the name of the party to whom it was relinquished, and to attach receipts from the law enforcement officer or licensed firearms dealer who took possession of the relinquished firearms.

(7) Inform the defendant and the designee of the obligation to submit the completed Prohibited Persons Relinquishment Form to the assigned probation officer within the time periods specified in subdivisions (d) and (e).

(c) (1) When a defendant is convicted of an offense described in subdivision (a), the court shall immediately assign the matter to a probation officer to investigate whether the Automated Firearms System or other credible information, such as a police report, reveals that the defendant owns, possesses, or has under his or her custody or control any firearms. The assigned probation officer shall receive the Prohibited Persons Relinquishment Form from the defendant or the defendant's designee, as applicable, and ensure that the Automated Firearms System has been properly updated to indicate that the defendant has relinquished those firearms.

(2) Prior to final disposition or sentencing in the case, the assigned probation officer shall report to the court whether the defendant has properly complied with the requirements of this section by relinquishing all firearms identified by the probation officer's investigation or declared by the defendant on the Prohibited Persons Relinquishment Form, and by timely submitting a completed Prohibited Persons Relinquishment Form. The probation officer shall also report to the Department of Justice on a form to be developed by the department whether the Automated Firearms System has been updated to indicate which firearms have been relinquished by the defendant.

(3) Prior to final disposition or sentencing in the case, the court shall make findings concerning whether the probation officer's report indicates that the defendant has relinquished all firearms as required, and whether the court has received a completed Prohibited Persons Relinquishment Form, along with the receipts described in paragraph (1) of subdivision (d) or paragraph (1) of subdivision (e). The court shall ensure that these findings are included in the abstract of judgment. If necessary to avoid a delay in sentencing, the court may make and enter these findings within 14 days of sentencing.

(4) If the court finds probable cause that the defendant has failed to relinquish any firearms as required, the court shall order the search for and removal of any firearms at any location where the judge has probable cause to believe the defendant's firearms are located. The court shall state with specificity the reasons for and scope of the search and seizure authorized by the order.

(5) Failure by a defendant to timely file the completed Prohibited Persons Relinquishment Form with the assigned probation officer shall constitute an infraction punishable by a fine not exceeding one hundred dollars ($100).

(d) The following procedures shall apply to any defendant who is a prohibited person within the meaning of paragraph (1) of subdivision (a) who does not remain in custody at any time within the five-day period following conviction:

(1) The designee shall dispose of any firearms the defendant owns, possesses, or has under his or her custody or control within five days of the conviction by surrendering the firearms to the control of a local law enforcement agency, selling the firearms to a licensed firearms dealer, or transferring the firearms for storage to a firearms dealer pursuant to Section 29830, in accordance with the wishes of the defendant. Any proceeds from the sale of the firearms shall become the property of the defendant. The law enforcement officer or licensed dealer taking possession of any firearms pursuant to this subdivision shall issue a receipt to the designee describing the firearms and listing any serial number or other identification on the firearms at the time of surrender.

(2) If the defendant owns, possesses, or has under his or her custody or control any firearms to relinquish, the defendant's designee shall submit the completed Prohibited Persons Relinquishment Form to the assigned probation officer within five days following the conviction, along with the receipts described in paragraph (1) of subdivision (d) showing the defendant's firearms were surrendered to a local law enforcement agency or sold or transferred to a licensed firearms dealer.

(3) If the defendant does not own, possess, or have under his or her custody or control any firearms to relinquish, he or she shall, within five days following conviction, submit the completed Prohibited Persons Relinquishment Form to the assigned probation officer, with a statement affirming that he or she has no firearms to be relinquished.

**63**

(e) The following procedures shall apply to any defendant who is a prohibited person within the meaning of paragraph (1) of subdivision (a) who is in custody at any point within the five-day period following conviction:

(1) The designee shall dispose of any firearms the defendant owns, possesses, or has under his or her custody or control within 14 days of the conviction by surrendering the firearms to the control of a local law enforcement agency, selling the firearms to a licensed firearms dealer, or transferring the firearms for storage to a firearms dealer pursuant to Section 29830, in accordance with the wishes of the defendant. Any proceeds from the sale of the firearms shall become the property of the defendant. The law enforcement officer or licensed dealer taking possession of any firearms pursuant to this subdivision shall issue a receipt to the designee describing the firearms and listing any serial number or other identification on the firearms at the time of surrender.

(2) If the defendant owns, possesses, or has under his or her custody or control any firearms to relinquish, the defendant's designee shall submit the completed Prohibited Persons Relinquishment Form to the assigned probation officer, within 14 days following conviction, along with the receipts described in paragraph (1) of subdivision (e) showing the defendant's firearms were surrendered to a local law enforcement agency or sold or transferred to a licensed firearms dealer.

(3) If the defendant does not own, possess, or have under his or her custody or control any firearms to relinquish, he or she shall, within 14 days following conviction, submit the completed Prohibited Persons Relinquishment Form to the assigned probation officer, with a statement affirming that he or she has no firearms to be relinquished.

(4) If the defendant is released from custody during the 14 days following conviction and a designee has not yet taken temporary possession of each firearm to be relinquished as described above, the defendant shall, within five days following his or her release, relinquish each firearm required to be relinquished pursuant to paragraph (1) of subdivision (d).

(f) For good cause, the court may shorten or enlarge the time periods specified in subdivisions (d) and (e), enlarge the time period specified in paragraph (3) of subdivision (c), or allow an alternative method of relinquishment.

(g) The defendant shall not be subject to prosecution for unlawful possession of any firearms declared on the Prohibited Persons Relinquishment Form if the firearms are relinquished as required.

(h) Any firearms that would otherwise be subject to relinquishment by a defendant under this section, but which are lawfully owned by a cohabitant of the defendant, shall be exempt from relinquishment, provided the defendant is notified that the cohabitant must store the firearm in accordance with Section 25135.

(i) A law enforcement agency shall update the Automated Firearms System to reflect any firearms that were relinquished to the agency pursuant to this section. A law enforcement agency shall retain a firearm that was relinquished to the agency pursuant to this section for 30 days after the date the firearm was relinquished. After the 30-day period has expired, the firearm is subject to destruction, retention, sale or other transfer by the agency, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the retention of the firearm is necessary or proper to the ends of justice,

or if the defendant provides written notice of an intent to appeal a conviction for an offense described in subdivision (a), or if the Automated Firearms System indicates that the firearm was reported lost or stolen by the lawful owner. If the firearm was reported lost or stolen, the firearm shall be restored to the lawful owner, as soon as its use as evidence has been served, upon the lawful owner's identification of the weapon and proof of ownership, and after the law enforcement agency has complied with Chapter 2 (commencing with Section 33850) of Division 11 of Title 4. The agency shall notify the Department of Justice of the disposition of relinquished firearms pursuant to Section 34010.

(j) A city, county, or city and county, or a state agency may adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of a firearm pursuant to Section 33880.

(k) This section shall become operative on January 1, 2018.

SEC. 11.   Theft of Firearms.

SEC. 11.1.   Section 490.2 of the Penal Code is amended to read:

(a) Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

(b) This section shall not be applicable to any theft that may be charged as an infraction pursuant to any other provision of law.

(c) This section shall not apply to theft of a firearm.

SEC. 11.2.   Section 29805 of the Penal Code is amended to read:

29805.   Except as provided in Section 29855 or subdivision (a) of Section 29800, any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, Section 171b, paragraph (1) of subdivision (a) of Section 171c, 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 626.9, 646.9, or 830.95, subdivision (a) of former Section 12100, as that section read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, Section 17500, 17510, 25300, 25800, 30315, or 32625, subdivision (b) or (d) of Section 26100, or Section 27510, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant to Sections 871.5 and 1001.5 of the Welfare and Institutions Code, Section 490.2 if the property taken was a firearm, or of the conduct punished in subdivision (c) of Section 27590, and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not

exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. The court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. However, the prohibition in this section may be reduced, eliminated, or conditioned as provided in Section 29855 or 29860.

SEC. 12.   Interim Standards.

Notwithstanding the Administrative Procedure Act (APA), and in order to facilitate the prompt implementation of the Safety for All Act of 2016, the California Department of Justice may adopt interim standards without compliance with the procedures set forth in the APA. The interim standards shall remain in effect for no more than two years, and may be earlier superseded by regulations adopted pursuant to the APA. "Interim standards" means temporary standards that perform the same function as "emergency regulations" under the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code), except that in order to provide greater opportunity for public comment on permanent regulations, the interim standards may remain in force for two years rather than 180 days.

SEC. 13.   Amending the Measure.

This Act shall be broadly construed to accomplish its purposes. The provisions of this measure may be amended by a vote of 55 percent of the members of each house of the Legislature and signed by the Governor so long as such amendments are consistent with and further the intent of this Act.

SEC. 14.   Conflicting Measures.

(a) In the event that this measure and another measure on the same subject matter, including but not limited to the regulation of the sale or possession of firearms or ammunition, shall appear on the same statewide ballot, the provisions of the other measure or measures shall be deemed to be in conflict with this measure. In the event that this measure receives a greater number of affirmative votes than a measure deemed to be in conflict with it, the provisions of this measure shall prevail in their entirety, and the other measure or measures shall be null and void.

(b) If this measure is approved by voters but superseded by law by any other conflicting measure approved by voters at the same election, and the conflicting ballot measure is later held invalid, this measure shall be self-executing and given full force and effect.

SEC. 15.   Severability.

If any provision of this measure, or part of this measure, or the application of any provision or part to any person or circumstance, is for any reason held to be invalid or unconstitutional, the remaining provisions, or applications of provisions, shall not be affected, but shall remain in full force and effect, and to this end the provisions of this measure are severable.

SEC. 16.   Proponent Standing.

Notwithstanding any other provision of law, if the State, government agency, or any of its officials fail to defend the constitutionality of this Act, following its approval by the voters, any other government employer, the proponent, or in their absence, any citizen of this State shall have the authority to intervene in any court action challenging the constitutionality of this Act for the purpose of defending its constitutionality, whether such action is in trial court, on appeal, or on discretionary review by the Supreme Court

of California or the Supreme Court of the United States. The reasonable fees and costs of defending the action shall be a charge on funds appropriated to the Department of Justice, which shall be satisfied promptly.

## PROPOSITION 64

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends, repeals, and adds sections to the Business and Professions Code, the Food and Agricultural Code, the Health and Safety Code, the Labor Code, the Revenue and Taxation Code, and the Water Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

SECTION 1.   Title.

This measure shall be known and may be cited as the Control, Regulate and Tax Adult Use of Marijuana Act ("the Adult Use of Marijuana Act").

SEC. 2.   Findings and Declarations.

A. Currently in California, nonmedical marijuana use is unregulated, untaxed, and occurs without any consumer or environmental protections. The Control, Regulate and Tax Adult Use of Marijuana Act will legalize marijuana for those over 21 years old, protect children, and establish laws to regulate marijuana cultivation, distribution, sale and use, and will protect Californians and the environment from potential dangers. It establishes the Bureau of Marijuana Control within the Department of Consumer Affairs to regulate and license the marijuana industry.

B. Marijuana is currently legal in our state for medical use and illegal for nonmedical use. Abuse of the medical marijuana system in California has long been widespread, but recent bipartisan legislation signed by Governor Jerry Brown is establishing a comprehensive regulatory scheme for medical marijuana. The Control, Regulate and Tax Adult Use of Marijuana Act (hereafter called the Adult Use of Marijuana Act) will consolidate and streamline regulation and taxation for both nonmedical and medical marijuana.

C. Currently, marijuana growth and sale is not being taxed by the State of California, which means our state is missing out on hundreds of millions of dollars in potential tax revenue every year. The Adult Use of Marijuana Act will tax both the growth and sale of marijuana to generate hundreds of millions of dollars annually. The revenues will cover the cost of administering the new law and will provide funds to: invest in public health programs that educate youth to prevent and treat serious substance abuse; train local law enforcement to enforce the new law with a focus on DUI enforcement; invest in communities to reduce the illicit market and create job opportunities; and provide for environmental cleanup and restoration of public lands damaged by illegal marijuana cultivation.

D. Currently, children under the age of 18 can just as easily purchase marijuana on the black market as adults can. By legalizing marijuana, the Adult Use of Marijuana Act will incapacitate the black market, and move marijuana purchases into a legal structure with strict safeguards against children accessing it. The Adult Use of Marijuana Act prohibits the sale of nonmedical marijuana to those

# EXHIBIT 2

State *of* California Department *of* Justice                    



# XAVIER BECERRA

## *Attorney General*

| | Search |
| --- | --- |

Translate Website | Traducir Sitio Web

# Certificate of Eligibility

Home / Firearms / *Certificate of Eligibility*

## What is a Certificate of Eligibility (COE)?

A "Certificate of Eligibility" certifies the Department of Justice (DOJ) has checked its records and determined the recipient is not prohibited from acquiring or possessing firearms at the time the firearms eligibility criminal background check was performed. A COE is a pre-requisite licensing/permit requirement for all prospective licensed firearms dealers, licensed ammunition vendors, manufacturers, certified instructors, gun show promoters, explosive permit holders, and other firearm related employment activities, including, effective January 1, 2018, any agent or employee of a vendor who handles, sells, or delivers firearms and ammunition. The initial COE application process includes a firearms eligibility criminal background check and issuance of a certificate, which is valid for one year. Thereafter, the COE must be renewed annually. A COE can be revoked, at anytime, if the COE holder becomes prohibited from owning/possessing firearms and ammunition.

## Bureau of Firearms

Firearms Home

California Firearms Laws Summary, pdf (revised 2016)

FAQs

Forms and Publications

Becoming a Firearm Dealer and/or Ammunition Vendor in California

Firearm Safety Certificate Program, DOJ Certified Instructor Information

# How do I apply for a new COE (You have never had a COE or your current COE has been expired for more than 90 days)?

You can apply for a new COE through the California Firearms Application Reporting System (CFARS). The CFARS is a web-based application system that enables individuals to apply for, and receive their COE electronically from the DOJ. You can access the electronic application by accessing the following URL https://cfars.doj.ca.gov/login.do. Please note: prior to submitting your COE application through the CFARS, you must first submit your fingerprint impressions to the DOJ. To submit fingerprint impressions, you must take a completed Request for Live Scan Service form (BCIA 8016) to a Live Scan station and pay the designated fees. Please refer to the live scan station location information. The Live Scan operator will provide an Applicant Tracking Identifier (ATI) number on your copy of the Request for Live Scan Service form (BCIA 8016). The ATI number documents your fingerprint submissions. (You must enter your ATI number on the designated space of the COE application). Once you have completed your fingerprint submission requirements, you can complete the electronic COE application process using the CFARS.

You can also apply by completing a Certificate of Eligibility Application (BOF 4008) which is a manual form. The application must be mailed to the DOJ.

If you are an out-of-state resident applying for a COE and you are unable to provide your fingerprints via Live Scan, you must

and Comparable Entities

Certificate of Eligibility Information and Application Process

Bullet Button Assault Weapon Information and Registration Process

Firearms Reporting & Law Enforcement Gun Release Application

Firearm Regulations/Rulemak Activities

California Code of Regulations

Roster of Firearm Safety Devices Certified for Sale

Roster of

use the "hard card" fingerprint method by having your fingerprints taken on two hard cards at a local law enforcement agency in your state of residence.

You can then elect to use either method described above to submit your COE application and remit a check for $71 made payable to the DOJ along with the two completed fingerprint hard cards to:

Department of Justice

Bureau of Firearms – COE

P.O. Box 160487

Sacramento, CA 95816-0487

Handguns Certified for Sale

Unique Serial Number Application (USNA) Process

Contact Us

# How do I renew my COE (Your current COE is set to expire in the near future or has already expired)?

You can renew your COE through the CFARS. Fingerprint submissions are not required for a COE renewal.

Please note: you must renew your COE no later than 90 days after it's expiration date, otherwise you must re-apply for a new COE, which will require you to re-submit fingerprint impressions.

You can also renew your COE by completing a manual Certificate of Eligibility Application (BOF 4008). The application must be mailed to the DOJ along with a check for the appropriate fee.

# What are the fees associated with a new and renewal COE application?

- Initial COE Application – The fee is $71 which is collected by the Live Scan Operator during the required fingerprint submission. If you reside outside of the State of California and have your fingerprint images taken by your local law enforcement agency using hard cards, you must remit a check made payable to the DOJ in the amount of $71.
- Renewal COE Application –The fee is $22 which is paid when the application is submitted. If you renew your COE through the CFARS, your payment can be submitted electronically. If you renew your application using the manual COE application, you must remit a check made payable to the DOJ.

# Benefits of Using CFARS:

Creating a CFARS account is quick and free! Take advantage of the following benefits when you use the CFARS.

- **Convenience**– The online application eliminates the need to mail an application and/or forms to the DOJ and saves time. You have the ability to apply, renew or modify your COE as well as report any change in employment with a firearms dealer or ammunition vendor through the online application.
- **E-mail notifications** – With an account, you will receive electronic (complete, incomplete, and reject) notifications for your COE submission.
- **Pay by credit card** – The system accepts major credit cards such as Visa, Master Card, American Express and Discover.
- **Save time and money** – By applying/renewing online, you'll save time by not having to mail in an application and

also save money on postage.

- **Check your COE status** – Due to the sheer volume of COE applications and renewals, the process can take anywhere between 6-8 weeks. By applying online you can log in and check the status of your application at any time.

- **View and print your Certificate of Eligibility** – Once your application is approved, you can download and print your Certificate of Eligibility directly from the CFARS.

- **View your COE account history** – You can view your account history (including notices) by logging on to your CFARS account.

- **Submit an issue** – With an account, you may submit an issue by accessing "Report an Issue."

- **Streamlined processing** – Save time completing future renewal applications as your personal information is encrypted and securely stored. Thus, there is no longer the requirement to re-type your personal information.

- **Manage employee privileges** – As a business owner, you can confirm/track employee COE status', manage DOJ notifications, submit reports, submit payment for your employees' COEs, or delegate said administrative responsibilities to a designated employee.

# Additional Bureau of Firearms Links

- California Firearms Application Reporting System (CFARS)
- Frequently Asked Questions
- Forms and Publications
- Firearms Reporting & Law Enforcement Gun Release Application

- Assault Weapons Identification Guide
- California Firearms Laws Summary
- Firearms Information for New California Residents
- Contact Us

Back To Top



**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
**OFFICE OF THE ATTORNEY GENERAL**