XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
NELSON R. RICHARDS
Deputy Attorney General
State Bar No. 246996
  2550 Mariposa Mall, Room 5090
  Fresno, CA  93721
  Telephone:  (559) 705-2324
  Fax:  (559) 445-5106
  E-mail:  Nelson.Richards@doj.ca.gov
*Attorneys for Defendant Attorney General
Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>                              Plaintiffs,<br><br>          **v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>                              Defendants. | 3:18-cv-00802-BEN-JLB<br><br>**REPLY IN SUPPORT OF DEFENDANT XAVIER BECERRA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge:        Hon. Roger T. Benitez<br>Date:         Sept. 20, 2018<br>Time:         10:00 a.m.<br>Courtroom:          5A<br>Action Filed:      April 26, 2018 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Argument ................................................................................................................. 2

     I.    The Complaint Fails to State a Claim Under the Commerce
          Clause ...................................................................................................... 2

          A.    Prop. 63 Does Not Regulate Transactions That Occur
                Wholly Outside of California. ................................................... 2

          B.    Prop. 63 Does Not Discriminate Against Interstate
                Commerce .................................................................................. 4

     II.    Plaintiffs' Equal Protection Challenge to California Penal Code
          Section 30314 Fails on Rational Basis Review ...................................... 5

     III.   Federal Law Does Not Preempt Section 30314 .................................... 7

Conclusion ............................................................................................................ 10

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ................................................................. 5

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015) ................................................................ 3

*City of Camden v. Beretta U.S.A. Corp.*
    81 F. Supp. 2d 541 (D.N.J. 2000) ......................................................... 9

*Coalition of N.J. Sportsmen v. Florio*
    744 F. Supp. 602 (D.N.J. 1990) ............................................................ 9

*FCC v. Beach Commc'ns, Inc.*
    508 U.S. 307 (1993) .......................................................................... 6, 7

*Healy v. Beer Inst.*
    491 U.S. 324 (1989) ............................................................................. 3

*Jackson v. City & County of San Francisco*
    746 F.3d 953 (9th Cir. 2014) ................................................................. 8

*Jimenez v. Quarterman*
    555 U.S. 113 (2009) ............................................................................. 8

*Meese v. Keene*
    481 U.S. 465 (1987) ............................................................................. 8

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
    990 F. Supp. 2d 349 (W.D.N.Y. 2013) ................................................ 5

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018) ................................................................. 6

*Pharm. Research & Mfrs. of Am. v. County of Alameda*
    768 F.3d 1037 (9th Cir. 2014) ........................................................... 3, 5

*Romer v. Evans*
    517 U.S. 620 (1996) .......................................................................... 6, 7

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*Williamson v. Lee Optical of Okla., Inc.*
    348 U.S. 483 (1955) ........................................................................... 7

**STATUTES**

18 U.S.C.
    § 921(a)(3) ....................................................................................... 8
    § 926A .................................................................................... *passim*
    § 927 ................................................................................................ 9

California Penal Code
    § 30312 ...................................................................................... 2, 10
    § 30312(b) ....................................................................................... 4
    § 30314 ................................................................................... *passim*
    § 30352 .......................................................................................... 10
    § 30370 ............................................................................................ 2
    § 30370(b) ....................................................................................... 7
    § 30385 ............................................................................................ 2

Firearm Owners Protection Act ..................................................... 1, 7

Gun Control Act ................................................................................ 8

Safety for All Act of 2016 ................................................................ 1

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Second Amendment ......................................................................... 6

**OTHER AUTHORITIES**

132 Cong. Rec. H4102–03 (Jun. 24, 1986) ...................................... 9

iii

**INTRODUCTION**

California voters decided to regulate ammunition purchases similar to how firearm purchases are regulated when they adopted the Safety for All Act of 2016 (Prop. 63).  The new law was intended to keep ammunition out of the hands of violent felons and other prohibited persons.[1]  The First Amended Complaint (FAC) alleges that several of those provisions violate the dormant Commerce Clause and the Equal Protection Clause, and are preempted by the Firearm Owners Protection Act.  Each of those claims fails as a matter of law.

Prop. 63 does not violate the dormant Commerce Clause.  Although Plaintiffs argue that the law regulates wholly out-of-state transactions, by its terms, it applies to ammunition transfers or transport into California.  And, despite Plaintiffs' assertions to the contrary, the law treats in-state and out-of-state economic interests the same.

Plaintiffs concede that their Equal Protection claim is subject to rational basis review.  They argue that California Penal Code section 30314 treats resident and nonresident purchasers differently, imposing a burden on residents, who are prohibited from transporting ammunition into the State without first delivering it to a licensed ammunition vendor.  Treating resident and nonresident purchasers differently in this context is reasonable, however, because the background check process relies on state records, which do not include nonresident information.

Finally, Plaintiffs defend their preemption claim by inserting a word into 18 U.S.C. § 926A that Congress did not include, and applying the statute in a way that Congress did not intend.  That argument would be flawed in any case.  It is particularly flawed here, where Congress decided to preempt only those state laws that directly and positively conflict with federal law.  Prop. 63 is not such a law.

This Court should therefore dismiss these three claims from the FAC.

---

[1] *See* Def. Att'y General's Req. for Judicial Notice in Supp. of Mot. to Dismiss FAC, Ex. 1 at 163-64 (Prop. 63 §§ 2.1-3.4), ECF No. 11-2.

**ARGUMENT**

## I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE COMMERCE CLAUSE

The FAC fails to state a claim under the dormant Commerce Clause because the challenged provisions of Prop. 63 do not regulate commercial transactions that occur wholly outside of California and do not discriminate against interstate commerce. *See* Mem. of P. & A. in Supp. of Mot. to Dismiss (MTD) 19:3-13, ECF No. 11-1. Plaintiffs disagree, arguing that the statutes violate the dormant Commerce Clause because they have the practical effect of regulating commercial transactions outside of California and they discriminate in favor of in-state economic interests. Pls.' Opp'n to Def.'s Mot. to Dismiss the FAC (Opp'n) 7-14, ECF No. 12. Both arguments rely on a misunderstanding of Prop. 63 and the dormant Commerce Clause.

### A. Prop. 63 Does Not Regulate Transactions That Occur Wholly Outside of California.

The FAC fails to state a claim for a per se violation of the dormant Commerce Clause because Penal Code sections 30312, 30314, 30370, and 30385 regulate conduct within California's borders. MTD 6-14; *see also* FAC ¶¶ 47-58. Plaintiffs' contention that those sections regulate wholly out-of-state transactions is incorrect as a matter of law. *See* Opp'n 8-11. They argue that the challenged provisions leave California residents with "no mechanism to acquire ammunition from an out-of-state vendor without approval of an in-state vendor." Opp'n 10:20-22. But, even were that assertion accurate (it is not), Plaintiffs' conclusion that the law directly regulates transactions occurring wholly outside California would not follow. *See* Opp'n 10:22-11:1.

The challenged provisions apply only when a vendor sells ammunition directly to California residents in California, or when a California resident wants to bring ammunition obtained outside the State into California. *See* Cal. Penal Code

2

§§ 30312, 30314, 30370, 30385. "[T]here is nothing unusual or unconstitutional per se about a state or county regulating the in-state conduct of an out-of-state entity when the out-of-state entity chooses to engage the state or county through interstate commerce." *Pharm. Research & Mfrs. of Am. v. County of Alameda*, 768 F.3d 1037, 1043-44 (9th Cir. 2014). "[A] state may regulate commercial relationships in which at least one party is located in California." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015). Able's Sporting, Inc., for example, does not (and cannot) allege that any of the challenged provisions controls how it sells ammunition in its Huntsville, Texas, store. *See* FAC ¶¶ 18, 47-59. Nor does Prop. 63 require Able's to do anything when selling to a California resident who buys ammunition in Huntsville, or shipping ammunition to a California resident at an address outside of California.

The main case on which Plaintiffs rely, *Healy v. Beer Inst.*, 491 U.S. 324 (1989), reveals their faulty reasoning. *See* Opp'n 9:23-10:13. In *Healy*, Connecticut enacted a law requiring out-of-state beer vendors to post prices for beer sold in the state and to affirm under oath that, at the time of posting, the prices were no higher than the prices offered in the states bordering Connecticut. 491 U.S. at 327-28 (describing history of the law). The Court held that the law had "the undeniable effect of controlling commercial activity occurring wholly outside" Connecticut's boundaries because it interacted with border states' price-posting laws in a way that controlled the price offered in those states. *Id.* at 337-40. For example, the Connecticut law effectively controlled the price a Massachusetts beer vendor charged a Massachusetts resident for beer sold in Massachusetts.[2] *See id.* at 337-40. Plaintiffs can allege no similar effect here. Prop. 63 does not control the pricing of ammunition in other states—or anything about sales in other states to residents of other states.

---

[2] Plaintiffs' argument that "[u]nder *Healy*, a statute that affects the price an out-of-state vendor can charge for its products being sold in-state," Opp'n 10:6-7, misstates *Healy*'s holding.

**B.   Prop. 63 Does Not Discriminate Against Interstate Commerce**

Falling back on a discriminatory effect theory, Plaintiffs contend that Prop. 63 discriminates against interstate commerce by leaving "out-of-state vendors['] access to the California marketplace solely at the discretion of in-state vendors."[3] Opp'n 12:9-10.  As set forth in the motion to dismiss, this characterization of the challenged provisions is inaccurate.  *See* MTD 10-14.  Contrary to Plaintiffs' unsupported assertion, *see* Opp'n 13:16, Prop. 63 does not distinguish between in-state and out-of-state vendors.  Any vendor, in state or out of state, that sells directly to customers through the internet, mail, or other remote means, must process the transaction through a licensed ammunition vendor.  *See* Cal. Penal Code § 30312(b).  That vendor may be an in-state or an out-of-state company.  Thus, a California-based online retailer may have an out-of-state company with a location in California, such as Dick's Sporting Goods, process an ammunition purchase.  Under Prop. 63, out-of-state businesses have the exact same options as similarly situated in-state businesses.  To the extent a licensed ammunition vendor, whether a California or out-of-state company, may decline to process a transaction, it has that discretion with regard to in-state and out-of-state businesses that sell ammunition remotely.

Plaintiffs also argue that online or mail-order companies in California "can avoid the impact of Prop 63 by converting to a brick-and-mortar store" and that "there is *no* way an out-of-state vendor can escape its reach."  Opp'n 13:19-20 (emphasis in original).  Plaintiffs do not explain why this is the case.  Nothing in the law prevents an out-of-state internet or remote vendor from opening a brick-and-mortar store in the same way that a California based internet or remote vendor

---

[3] Plaintiffs focus on discriminatory effect to the exclusion of discriminatory purpose or facial discrimination theories.  *See* Opp'n 12 & n.5.  Even if they had addressed those arguments, they would fail for the reasons set forth in the motion to dismiss.  MTD 9-12.  Plaintiffs also concede that they are not asserting a *Pike* balancing claim.  *See* Opp'n 8 n.3.

4

can.  In both scenarios, the in-state and out-of-state businesses must follow the same approach.  The law affords no special treatment or protection to California companies.

Laws that treat "all private companies exactly the same" do not discriminate against interstate commerce in violation of the dormant Commerce Clause.  *See Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1042 (quotation marks omitted); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (same).  That is why the Western District of New York dismissed a dormant Commerce Clause challenge to a similar provision in New York that effectively bans remote sales by requiring that ammunition purchases take place in person.  *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F. Supp. 2d 349, 379-81 (W.D.N.Y. 2013) *aff'd in part and rev'd in part on other grounds*, 804 F.3d 242, 251 n.20 (2d Cir. 2015).  The court held that the in-person transaction requirement, which effectively banned remote sales, applied "evenhandedly between in-state and out-of-state arms and ammunition dealers."  *Id.* at 380.  Plaintiffs argue that the case is distinguishable because New York law did not "deny access to the New York marketplace in any manner, subject solely to the discretion of in-state economic interest."  Opp'n 13 n.6.  Under the New York law, however, out-of-state business, such as Able's here, cannot sell in New York at all.  *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F. Supp. 2d at 378 (noting that the New York law "bans the sale of ammunition over the Internet").  That Prop. 63 allows remote sales, so long as the ammunition is transferred in person, is an immaterial distinction because the law governs transactions in the same evenhanded way as the New York law.

## II.    PLAINTIFFS' EQUAL PROTECTION CHALLENGE TO CALIFORNIA PENAL CODE SECTION 30314 FAILS ON RATIONAL BASIS REVIEW

Courts will uphold a law against an Equal Protection challenge where it "neither burdens a fundamental right nor targets a suspect class," and "bears a

5

rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620 (1996).
Plaintiffs admit that their Equal Protection claim "is not based on the fact that the
activity being restricted is protected by the Second Amendment."[4]  Opp'n 15:19-20.
Nor do they respond to the Attorney General's argument that state residency does
not create a suspect class or quasi-suspect class.  *See* Opp'n 14-16; MTD 20:10-12
& n.12.  They thus concede that their Equal Protection challenge is subject to
rational basis review.  *See* Opp'n 14-16.

Despite this concession, they do not acknowledge the standard, or make a
serious attempt to satisfy it.  A court reviewing a statute under the rational basis
standard must uphold the law "against equal protection challenge if there is any
reasonably conceivable state of facts that could provide a rational basis for the
classification."  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).  As
the parties challenging the statute, Plaintiffs bear the "burden to negative every
conceivable basis which might support" section 30314.  *See id.* at 315.

The opposition falls far short of this standard.  Plaintiffs argue that the law is
irrational because it treats Plaintiff Rhode, who is an Olympic shotgun shooter and
California resident, differently from a hypothetical nonresident teammate.  *See*
Opp'n 16:4-14.  That teammate, Plaintiffs argue, can receive ammunition from
USA Shooting in Arizona and transport it directly into California, while Rhode
must deliver the ammunition to a licensed ammunition vendor for processing.  They
assert that "[t]here is simply no rational basis for treating the two differently."  *Id.*
at 16:15-16.  A plaintiff, however, cannot satisfy the rational basis standard by

---

[4] In his opening papers, the Attorney General argued that an alleged
infringement on Second Amendment rights cannot form the basis for an Equal
Protection claim.  MTD 19:3-13 (citing *Teixeira v. County of Alameda*, 822 F.3d
1047, 1052 (2016) *reasoning adopted by en banc court* 873 F.3d 670, 676 n.7 (9th
Cir. 2017) (en banc).)  The Ninth Circuit recently reaffirmed that position.  *Pena v.
Lindley*, 898 F.3d 969, 987 (9th Cir. 2018) (explaining that Equal Protection claim
"based on the Second Amendment's fundamental right to bear arms and the
disparate treatment of groups in exercising that right" was "subsumed in the Second
Amendment inquiry").

observing that the law treats similarly situated people differently and asserting that no reason supports the difference in treatment.[5]  *See Beach Commc'ns, Inc.*, 508 U.S. 314-15; *see also Romer*, 517 U.S. at 631 (recognizing the "practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons").

Plaintiffs do not meaningfully address the justifications identified in the Attorney General's motion to dismiss.  MTD 21.  Ammunition purchase authorizations in California rely on the information maintained in the State's Automated Firearms System.  *See* Cal. Penal Code § 30370(b); *see also id.* § 11106.  Nonresidents, such as Rhode's hypothetical teammate, do not appear in that system.[6]  It is therefore reasonable to limit section 30314's requirements to California residents.  In addition, under rational basis review, lawmakers are entitled to move incrementally.  *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).  Here, the voters may have decided addressing transport by residents was necessary.  *See* MTD 21:15-19.  Plaintiffs do not respond to that justification.  They cannot meet their heavy burden on a rational basis challenge by making bald assertions of irrationality and leaving reasonably conceivable justifications for the law unrebutted.

## III.  FEDERAL LAW DOES NOT PREEMPT SECTION 30314

The Firearm Owners Protection Act, 18 U.S.C. § 926A, does not preempt section 30314.  Plaintiffs contend that because the statute makes its preemptive effect on the transport of firearms contingent on proper storage of ammunition, it therefore also preempts laws relating to ammunition.  Opp'n 18:9-12.  Their argument disregards the plain text of the statute, which provides that "any person

---

[5] This assumes, for the sake of argument, that Rhode and her nonresident teammates are similarly situated, which is not obviously the case.

[6] For this reason, it is difficult to make sense of Plaintiffs' unsupported assertion that "California is set up to run background checks on non-residents." Opp'n 16:17.

who is not otherwise prohibited by this chapter from transporting, shipping, or receiving *a firearm* shall be entitled to transport *a firearm* for any lawful purpose . . . ."[7]  (emphasis added).  Plaintiffs' reading improperly relies on redefining Congress's definition of "firearm" to include ammunition, *see* 18 U.S.C. § 921(a)(3), or revising the statute to provide that "any person . . . shall be entitled to transport a firearm *and ammunition* for any lawful purpose."[8]  Both approaches disregard basic rules of statutory interpretation.  *See, e.g.*, *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("[S]tatutory interpretation . . . analysis begins with the plain language of the statute. . . .  It is well established that, when the statutory language is plain, we must enforce it according to its terms."); *Meese v. Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term.").

Plaintiffs appear to suggest that this Court should adopt their revision of § 926A to avoid an absurd result.  They contend that ammunition is "inextricable from firearm ownership."  Opp'n 18:15-17 (citing *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)).  But the text of § 926A does not provide that a person must be able to use the firearm while transporting it.  The

---

[7] The full text of § 926A reads:

Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle:  *Provided,* That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

[8] Tellingly, Plaintiffs do not respond to the Attorney General's argument that Congress spelled out "firearms and ammunition" in other places in the Gun Control Act.  *See* MTD 23:24-24:3 (citing U.S.C. § 923 as an example).

8

1    statute simply allows people to "transport firearms from one state in which they are
2    legal, through another state in which they are illegal, to a third state in which they
3    are legal, provided the firearms are transported in a prescribed, safe manner." *See*
4    *Coalition of N.J. Sportsmen v. Florio*, 744 F. Supp. 602, 609 (D.N.J. 1990).  A
5    faithful application of § 926A's text may mean that, in some situations, people will
6    have to acquire ammunition in their destination state.  But this is not absurd.  It is a
7    hypothetical inconvenience.  That does not rise to the level of a "positive conflict"
8    between § 926A and section 30314 making the two irreconcilable or incapable of
9    standing together.  *See* 18 U.S.C. § 927; *City of Camden v. Beretta U.S.A. Corp.*, 81
10   F. Supp. 2d 541, 550 (D.N.J. 2000).

11        In addition to conflicting with § 926A's plain meaning, Plaintiffs' argument
12   conflicts with the statute's purpose.  Congress did not intend § 926A to invalidate
13   the laws of destination states.  *See Coalition of N.J. Sportsmen*, 744 F. Supp. at 609
14   ("A straightforward reading of § 926A demonstrates that the statute prohibits only
15   regulation of the interstate transport of firearms, and in no way restricts a state's
16   power to regulate firearms within the state.").[9]  As one congressman explained,
17   § 926A "does not modify the State or local laws at the place of origin or the
18   jurisdiction where the trip ends in any way"; in other words, "[a]ny traveler
19   utilizing the safe harbor provisions must comply with the laws of his State of origin
20   as well as the laws of the jurisdiction at his trip's end."  *See* 132 Cong. Rec.
21   H4102–03 (Jun. 24, 1986) (statement of Rep. McCollum); *see* MTD 24-25 (citing
22   additional, similar statements).  Using the law to invalidate the laws of a destination
23   state, as Plaintiffs urge here, is at cross-purpose with that intent.

24
25   _____
        [9] Plaintiffs' attempt to distinguish *Coalition of New Jersey Sportsmen*
     because it involved a ban on possession and not transportation is unavailing.  *See*
26   Opp'n 20:26-21:4.  The court's conclusion that § 926A "in no way restricts a state's
     power to regulate firearms within the state" is based on the text of § 926A and
27   § 927 and a citation to a case explaining § 926A's legislative history.  *Coalition of
     N.J. Sportsmen*, 744 F. Supp. at 609 (citing *Oefinger v. Zimmerman*, 601 F. Supp.
28   405, 412 (W.D .Pa. 1984), *aff'd*, 779 F.2d 43 (3d Cir. 1985)).  The court's reading
     of the law cannot be explained away based on the facts of the case.

1    Plaintiffs assert that since they are allowed to lawfully possess ammunition in

2  California, § 926A preempts section 30314 because it "entitle[s] [them] to transport

3  a firearm . . . to any other place where [they] may lawfully possess and carry such

4  firearm." *See* 18 U.S.C. § 926A; Opp'n 19:20-20:12.  As discussed above, this

5  argument conflicts with the statute's plain language and purpose.  It also incorrectly

6  assumes that California residents can possess ammunition in California regardless

7  of how it is acquired.  A resident who purchases ammunition in the State must do

8  so through a licensed ammunition vendor, and starting in July 2019, receive

9  approval from the Department of Justice.  *See* Cal. Penal Code §§ 30312, 30352.

10  Section 30314 merely imposes the same requirement on residents transporting

11  ammunition into the State.

12                              **CONCLUSION**

13    For the foregoing reasons, this Court should grant the Attorney General's

14  motion to dismiss.

15

16

17  Dated:  September 13, 2018            Respectfully Submitted,

18                                        XAVIER BECERRA
                                          Attorney General of California
19                                        TAMAR PACHTER
                                          Supervising Deputy Attorney General

20

21                                        /s/ Nelson Richards
22                                        NELSON R. RICHARDS
                                          Deputy Attorney General
23                                        *Attorneys for Defendant Attorney*
                                          *General Xavier Becerra*

24

25

26

27

28