UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM RHODE, et al.,<br>　　　　　　　　　　　Plaintiffs,<br>v.<br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br>　　　　　　　　　　　Defendant. | Case No.: 18-cv-802-BEN<br><br>ORDER RE: DEFENDANT'S MOTION TO DISMISS and REQUEST FOR JUDICIAL NOTICE |

Plaintiffs set out nine claims for relief in an Amended Complaint ("Complaint"). Defendant Xavier Becerra filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss three of those claims: Claim 1 alleging a violation of U.S. Const. Art, I, § 8, Clause 3 (the "Commerce Clause"), Claim 8 alleging a violation of the Equal Protection Clause, and Claim 9 alleging federal preemption. This motion to dismiss does not address the Plaintiffs' other six claims alleging violations of the Second Amendment. Defendant also asks the Court to take judicial notice of two exhibits, the Proposition 63 ballot measure and his web page titled Certificate of Eligibility. The motion to dismiss is denied as to Claim 1 (Commerce Clause), granted as to Claim 8 (Equal Protection Clause), and denied as to Claim 9 (Federal Preemption). The request for judicial notice is granted.

# BACKGROUND

State Proposition 63 (the "Safety for All Act of 2016") amended the California Penal Code to regulate the sale of ammunition in some ways that are similar to the State's regulations on the sale of firearms. For example, like firearms, ammunition sales, deliveries, or transfers in California must now be processed through a state-licensed ammunition vendor in a face-to-face transaction. Cal. Penal Code § 30312(a)-(b). If California residents make ammunition purchases from sellers outside of California, the purchases must be received and processed by a California-licensed ammunition vendor in a face-to-face transaction. *Id.* California residents who obtain ammunition while outside California and desire to bring that ammunition back with them into California must first somehow deliver it to a licensed ammunition vendor and receive it from the vendor in a face-to-face transaction. *Id.* § 30314. Plaintiffs are a group of California residents, out-of-state ammunition sellers, and the California Rifle & Pistol Association. Defendant is the Attorney General of the State of California.

# LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if the complaint fails to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

"A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Reasonable inferences may be drawn in the non-movant's favor. A court need not, however, "necessarily assume the truth of legal

conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

# DISCUSSION

## Claim One – Commerce Clause, U.S. Const. Art, I, § 8, Clause 3

Plaintiffs claim that Proposition 63, codified at California Penal Code §§ 30312, 30314, 30370, and 30385, violates the Interstate Commerce Clause of the United States Constitution because it favors businesses in California and unjustifiably burdens interstate commerce. Defendant argues that Proposition 63 is a permissible in-state regulation.

The United States Supreme Court reminds us that, "[t]ime and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quotation marks and citations omitted). Nonresidence ought not foreclose a merchant in one state from access to markets in other states. *Id.* (citation omitted). "States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses." *Id.* "State laws that directly discriminate against out-of-state entities can survive only if the state demonstrates both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 (9th Cir. 2017), *cert. denied sub nom. Nationwide Biweekly Admin., Inc. v. Hubanks*, 138 S. Ct. 1698, 200 L. Ed. 2d 953 (2018) (citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986). "This rule reflects the Framers' concern that in order to

succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Id.* (citing *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979)).

Relying on *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1139 (9th Cir. 2015), Defendant argues that Proposition 63 is permissible because it regulates only sales or transfers to Californians within the State. Def. Mem. of P.A. in Supp., 14. But unlike the shark fin prohibition in *Chinatown*, Proposition 63's reach goes beyond California's borders. *Id.* ("California's 'Shark Fin Law' makes it 'unlawful for any person to possess, sell, offer for sale, trade, or distribute a shark fin' *in the state*.") (emphasis added). Proposition 63 now prohibits a seller of ammunition physically located outside of the state from selling directly to customers in California. *See* § 30312(b). Thus, prior to January 1, 2018, any merchant physically located outside California was permitted to sell ammunition directly to a customer in California, whether the transaction was accomplished by U.S. Mail, email, an internet web store, telephone text message, or telephone. Shipping arrangements were left up to the seller and buyer.

Since January 1, 2018, Proposition 63 criminalizes all of those transactions with merchants conducting business in other states, for example: Plaintiff Able's Sporting, Inc. (Texas), Plaintiff AMDEP Holdings, LLC (Florida), and Plaintiff R&S Firearms, Inc. (Arizona). These direct transactions are permitted now only if the out-of-state merchant opens a physical store in California and obtains, *inter alia*, a California ammunition vendor license. Def. Mem. of P. & A.,11 ("And an out-of-state ammunition vendor that has a physical store in California may obtain a license and sell ammunition in California."). The only alternative appears to be if a third-party California-based and California-licensed intermediary is hired to complete the delivery. Even then, the out-of-state product must be delivered to the customer in a face-to-face hand-off. Unless shippers like United Parcel Service, FedEx, and DHL

obtain ammunition vendor licenses, a California consumer will no longer be able to receive ammunition products from out-of-state sellers at their home. Consumers will have to travel from their homes to a California-licensed ammunition vendor – whether the vendor does business one mile away or one hundred miles away. As a result, out-of-state businesses who want to continue to sell directly to their California customers will have to open not just one store front inside California, but store fronts in every local market inside California in which they seek to sell ammunition.

Proposition 63's restrictions on out-of-state business firms are similar to the constraint on interstate commerce struck down in *Nationwide Biweekly*. In *Nationwide Biweekly*, the Ninth Circuit held,

> Thus, California's statute does precisely what the Supreme Court says cannot be done except in the "narrowest circumstances," it requires any corporation that wants to engage in a certain kind of business within the state to become a resident.
> If states were allowed to require local incorporation as a condition of engaging in interstate commerce, then national corporations could be required to incorporate in all 50 states in order to do business—either by creating an individual subsidiary for each state or by some similar means. No matter the specific approach taken, requiring incorporation under the laws of each individual state in order to operate a national business would contribute toward precisely the "Balkanization" the Dormant Commerce Clause is meant to prevent.

873 F.3d at 736-37 (citing *Heald*, 544 U.S. at 472); *c.f., American Fuel & Petrochemical Manufacturers v. O'Keefe*, 903 F.3d 903, 914 (9th Cir. 2018) (no Commerce Clause violation in Oregon fuel carbon tax scheme because, "the Program does not require or even incentivize an out-of-state operator to become a resident in order to compete on equal terms."); *see also Philadelphia v. New Jersey*, 437 U.S. 617, 628 (1978) ("The New Jersey law at issue in this case falls squarely within the area that the Commerce Clause puts off limits to state regulation. . . . What is crucial is the attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade.").

Defendant argues that it is wrong to compare out-of-state, online ammunition businesses with in-state brick-and-mortar stores.[1] Def. Mem. of P. & A., 10. Defendant argues that the correct comparison is between out-of-state online sellers and in-state online sellers. Defendant says that both must complete a sale through a third-party ammunition vendor and that therefore, the regulation is even handed. But how a state disfavors its resident online sellers compared to its resident brick-and-mortar sellers is of no moment for commerce clause analysis. What is important is that California's resident businesses are the only businesses that may sell directly to ammunition consumers. Sales of any quantity, by all other sellers, anywhere else in the country, must be funneled through a California resident vendor licensed to sell ammunition. *Nationwide Biweekly*, 873 F.3d at 737 ("The correct comparison, however, is between California corporations that are organized for the purpose of being [insurance] proraters and out-of-state corporations that are organized for the purpose of being proraters. . . . [t]he out-of-state corporation must

---

[1]In the current world of e-commerce, older concepts of a place of contracting or a place of purchase strain traditional legal theories, as the U.S. Supreme Court observes in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2095 (2018).

"Modern e-commerce does not align analytically with a test that relies on the sort of physical presence defined in *Quill*. . . . For example, a company with a website accessible in South Dakota may be said to have a physical presence in the State via the customers' computers. A website may leave cookies saved to the customers' hard drives, or customers may download the company's app onto their phones. Or a company may lease data storage that is permanently, or even occasionally, located in South Dakota. What may have seemed like a 'clear,' 'bright-line test' when *Quill* was written now threatens to compound the arbitrary consequences that should have been apparent from the outset. The 'dramatic technological and social changes' of our 'increasingly interconnected economy' mean that buyers are 'closer to most major retailers' than ever before — 'regardless of how close or far the nearest storefront.' Between targeted advertising and instant access to most consumers via any internet-enabled device, 'a business may be present in a State in a meaningful way without' that presence 'being physical in the traditional sense of the term.' A virtual showroom can show far more inventory, in far more detail, and with greater opportunities for consumer and seller interaction than might be possible for local stores."

*Id.* (citations omitted).

either incorporate in California or create a subsidiary incorporated in California. The statute therefore discriminates against out-of-state economic interests.").

This is similar to the New York law prohibiting direct sales from out-of-state wineries which was struck down for violating the Interstate Commerce Clause in *Heald*. There, the U.S. Supreme Court observed, "[w]e have viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. New York's in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm to become a resident in order to compete on equal terms." *Heald*, 544 U.S. at 474–75 (quotation marks and citations omitted); *but see Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2nd Cir. 2002) (statute requiring in-state face-to-face sales of more than four cartons of cigarettes did not violate Commerce Clause).

Finally, Defendant argues that the Complaint does not allege facts showing a substantial burden on interstate commerce and that even if it does, Proposition 63's benefits eclipse any burden. Def. Mem. of P. & A., 15-17. Where a statute regulates even-handedly to effectuate a local public interest and has only incidental effects on interstate commerce, courts weigh whether the burden on commerce is excessive in relation to the putative local benefit. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). To the extent that the burden is not specifically described by the Complaint, on a Rule 12(b)(6) motion, the court draws inferences in the non-movant's favor. Certainly in this case, there is a reasonable inference to be drawn in Plaintiffs' favor that Proposition 63 significantly burdens interstate commerce. Moreover, the degree of burden and how it compares to the benefits of Proposition 63 are predominantly fact questions that are not ripe for a motion to dismiss. As the U.S. Supreme Court teaches, "[w]e generally leave the courtroom door open to plaintiffs invoking the rule in *Pike*, that even nondiscriminatory burdens on commerce may be struck down on a showing that those burdens clearly outweigh

the benefits of a state or local practice." *Dep't of Revenue of Kentucky v. Davis*, 533 U.S. 328, 353 (2008). At the pleading stage, Plaintiffs have stated a plausible claim for relief that Proposition 63 violates the Commerce Clause. Therefore, Defendant's motion to dismiss Claim 1 is denied.

**Claim Eight – Equal Protection Clause**

Plaintiffs claim that Proposition 63, codified at § 30314, violates the Equal Protection Clause because it applies *only* to California residents. As a result, a non-resident may bring ammunition directly into California, while a resident must first have ammunition delivered to an in-state licensed ammunition vendor. Defendant argues that the Ninth Circuit has held that where an "equal protection challenge is no more than a Second Amendment claim dressed in equal protection clothing, it is subsumed by, and coextensive with the former, and therefore not cognizable under the Equal Protection Clause." *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016), *vacated in part by*, 854 F.3d 1046 (9th Cir. 2016), *and reh'g en banc*, 873 F.3d 670 (9th Cir. 2017), *cert. denied*, No. 17-982 (U.S. May 14, 2018).

Plaintiffs' claim is primarily a Second Amendment claim. The equal or unequal treatment of state residents and non-residents regarding firearm ammunition may be addressed in Plaintiffs' other claims for relief alleging violations of Second Amendment rights. Therefore, Defendant's motion to dismiss Claim 8 is granted.

**Claim Nine – Federal Preemption**

Plaintiffs allege 18 U.S.C. § 926A permits lawful travel with a firearm and ammunition through and to California and preempts California Penal Code § 30314(a). They seek a declaration that § 926A preempts § 30314. The Supremacy Clause invalidates state laws that interfere with, or are contrary to federal law. "The Supreme Court has stated that 'even though that [Supremacy] Clause is not a source of any federal rights, it does 'secure' federal rights by

according them priority whenever they come in conflict with state law.'" *Pac. Bell Tel. Co. v. City of Hawthorne*, 188 F. Supp. 2d 1169, 1175 (C.D. Cal. 2001) (citation omitted). Plaintiffs may "sue under the Supremacy Clause for declaratory relief that a state law is preempted by federal law -- even when the federal law does not authorize a private right of action." *Id.* (citations omitted).

Section 926A provides, in essence, that anyone may transport firearms from one state in which they are legal, through other states in which they are illegal, to a destination state in which they are legal, provided the firearms are transported in a prescribed, safe manner. Specifically, § 926A provides a safe harbor,

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any *ammunition* being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or *ammunition* shall be contained in a locked container other than the glove compartment or console.

18 U.S.C.A. § 926A (emphasis added). California's § 30314(a), in contrast, criminalizes bringing ammunition into the state that was purchased or obtained outside the state, when accomplished by a resident. Section 30314(a) provides,

> Commencing January 1, 2018, a resident of this state shall not bring or transport into this state any *ammunition* that he or she purchased or otherwise obtained from outside of this state unless he or she first has that *ammunition* delivered to a licensed ammunition vendor for delivery to that resident pursuant to the procedures set forth in Section 30312.

Cal. Penal Code § 30314(a) (emphasis added).

All agree that a California resident (who is not otherwise prohibited) may lawfully possess ammunition within the state, regardless of where the resident purchased or obtained the ammunition prior to January 1, 2018. In fact, § 30314 says nothing about simple possession of ammunition. Section 30314 criminalizes

- 9 -

18cv802

the *bringing* of foreign ammunition into the state by a resident.² Congress added § 927 to clarify that § 926A was not intended to occupy the field. Thus, § 926A only preempts state law where "there is a direct and positive conflict between [§ 926A] and the law of the State so that the two cannot be reconciled or consistently stand together." *See* 18 U.S.C. § 927.

Because California prohibits a resident from bringing foreign-bought ammunition back into the state, while federal law entitles a person to transport a firearm (and its ammunition) for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm, there appears to be a direct and positive conflict between the two laws. The direct conflict is at the point of coming into the state. Section 30314 prohibits travel (or bringing) into the state foreign-bought ammunition; § 926A affirmatively entitles a person to transport into the state a firearm and ammunition – regardless of where it is obtained. The state statute criminalizes the same act that the federal statute makes permissible.

"In considering the preemptive scope of a statute, congressional intent is the ultimate touchstone." With express preemption, "we focus first on the statutory language, which necessarily contains the best evidence of Congress' preemptive intent." *California Trucking Ass'n v. Su*, 903 F.3d 953, 959 (9th Cir. 2018) (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)) (citation and internal quotation marks omitted). When the task has "nuance," a court may turn to the legislative history and broader statutory framework of the statute "to better glean Congress' intent." *California Trucking*, 903 F.3d at 960.

Congress enacted § 926A as part of the Firearms Owners' Protection Act,

---

²One can imagine new border state businesses springing up along interstate highways as a result of § 30314. Since § 30314 does not apply to non-residents, a resident of California might buy foreign ammunition outside the state. On the trip back, the California resident might stop just outside the border and deliver the ammunition to a non-resident crosser, whereupon both would cross into California. The non-resident crosser would then re-deliver the ammunition to the resident, thus avoiding § 30314.

Pub. L. No. 99–308, § 107(a), 100 Stat. 449 (May 19, 1986), amended by Pub. L. No. 99–360, § 1(a), 100 Stat. 766 (July 8, 1986). "The statute is the product of a tortured legislative history." *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 143 (2d Cir. 2010) (Wesley, C.J., concurring). "The record from the Senate debate regarding this provision contains a memorandum stating that the language of Senator Dole's proposal was 'unambiguous in its creation of a federal right,' but 'far too vague to serve as the basis for preempting state laws coming into conflict with that right.'" *Id.* (quoting 131 Cong. Rec. S9101–05 (July 9, 1985)). That was addressed in a revised bill, enacted as part of the Firearm Owners Protection Act. *Id.* Soon after its enactment, § 926A was amended to its current form. *Id.* "The 'teeth' of this negative statutory right and the criminal defense that it makes available come from the Supremacy Clause. In other words, when the right arising out of § 926A applies, the state law in question must yield to the federal law that Congress enacted to create this safe harbor. This characteristic of the statute was acknowledged, and its efficacy as a policy decision was debated, throughout the legislative history of § 926A." *Id.* at 147-48 (citing H. Rep. No. 99–495, at 8, 28 (Mar. 14, 1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1334, 1354; *see also* 131 Cong. Rec. E5359–02 (Dec. 3, 1985) (memorandum from the staff of the House Judiciary Committee); 131 Cong. Rec. S8686–01 (June 24, 1985) (statement of Sen. Hatch)).

It appears that the safe harbor provision of § 926A and the Firearms Owners' Protection Act evinces a Congressional intent to protect a firearm owner when traveling from the complexities and vagueries of state and local firearms laws. Implicit in § 926A's double mention of "ammunition" is the idea that the federal safe harbor was for traveling with both firearm and ammunition. Because California's law criminalizes bringing certain ammunition into the state at the same

place that Congress has designed a safe harbor,³ Plaintiffs have made a plausible claim for declaratory judgment relief based on preemption. As Defendant sought dismissal under Rule 12(b)(6), rather than a judgment on the pleadings under Rule 12(c), further factual development may take place for resolution by summary judgment or trial. *See e.g., Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 608 (E.D. Va. 2004) ("If plaintiffs can adduce facts to prove this allegation, they may establish a conflict with federal law and hence a Supremacy Clause bar. Thus, [Rule 12(b)(6)] dismissal on this issue is not warranted at this point in the litigation. Resolution of this issue must await a more fully developed factual record at summary judgment or trial.").

**CONCLUSION**

The motion to dismiss is denied as to Claim 1 (Commerce Clause), granted as to Claim 8 (Equal Protection Clause), and denied as to Claim 9 (Federal Preemption).

DATED: October 17, 2018

Hon. Roger T. Benitez
United States District Judge

---

³California's statute is unlike the Chicago, Illinois ordinance that was challenged under the supremacy clause in *Second Amendment Arms v. City of Chicago*, 2012 WL 4464900 *6 (N.D. Ill. 2012). In that case, the court granted a motion to dismiss finding no federal preemption by § 926A. But the Chicago ordinance included specific language designed to avoid a federal conflict. Section 8–20–090 of the Chicago ordinance, entitled "interstate transportation of firearms," provided: "It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. § 926A." *Id*. California's statute has no such language.