1  C.D. Michel – SBN 144258
2  Sean A. Brady – SBN 262007
   Matthew D. Cubeiro – SBN 291519
3  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Boulevard, Suite 200
4  Long Beach, CA 90802
   Telephone: (562) 216-4444
5  Facsimile: (562) 216-4445
   Email: cmichel@michellawyers.com
6
7  Attorneys for Plaintiffs

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11  KIM RHODE, et al.,                    Case No.: 3:18-cv-00802-BEN-JLB
12                        Plaintiffs,     MEMORANDUM OF POINTS AND
13                                        AUTHORITIES IN SUPPORT OF
                          v.              PLAINTIFFS' MOTION FOR
14                                        PRELIMINARY INJUNCTION
15  XAVIER BECERRA, in his official
    capacity as Attorney General of the State   Hearing Date:    August 19, 2019
16  of California,                               Hearing Time:    10:30 a.m.
                                                 Courtroom:       5A
17                        Defendant.             Judge:           Hon. Roger T. Benitez

18                                        [Filed concurrently with Notice of Motion
19                                        and Motion for Preliminary Injunction,
                                          Request for Judicial Notice, Declarations
20                                        Sean A. Brady, Richard Travis, James
                                          Gilhousen, Dan Wolgin, Denise Welvang,
21                                        Scott Lindemuth, Bill Ortiz, David
                                          Burwell, Chris Puehse, Travis Morgan,
22                                        Ethan Bartel, Myra Lowder, Daniel Gray,
23                                        Christina McNab, and George Dodd]

24

25

26

27

28

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION
                                                            18cv802

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................i

Table of Authorities ..........................................................................................iii

Introduction ........................................................................................................1

Factual Background ............................................................................................1

I.     California's Ammunition Scheme ...............................................................1

II.    DOJ's Ammunition Purchase and Transfer Regulations .........................3

       A.     Standard Ammunition Eligibility Check (AFS Match) ...................4

       B.     Basic Ammunition Eligibility Check (Single Transaction or Purchase) ........5

       C.     Firearms Eligibility Check .............................................................6

       D.     COE Verification Process ..............................................................6

III.   DOJ's Emergency Regulations Regarding Identification Requirements for Firearms and Ammunition Eligibility Checks..........................................7

IV.    Implementation of DOJ's Ammunition Regulations.................................8

V.     Implementation of DOJ's Federally Compliant ID Regulations............10

       A.     Obtaining a U.S. Passport or U.S. Birth Certificate....................10

       B.     Impact on out-of-state vendors....................................................11

Legal Standard ................................................................................................11

Argument.........................................................................................................11

I.     Plaintiffs Are Likely to Succeed on the Merits ......................................11

       A.     California's Ammunition Scheme Violates the Second Amendment..........11

              1.     California's Ammunition Scheme Plainly Implicates Second Amendment Conduct ................................................................12

              2.     California's Ammunition Scheme Fails Heightened Scrutiny ..........13

                     a.     California's ammunition scheme is not "substantially related" to any public safety interest. ....................14

                     b.     California's ammunition scheme lacks a reasonable "fit" with the State's interest in preventing criminal misuse...........16

       B.     California's Ammunition Scheme Also Violates the Dormant Commerce Clause....................................................................20

II.    The Remaining Preliminary Injunction Factors Warrant Relief .............23

i

A.  Plaintiffs Will Suffer Irreparable Harm if the Court Denies Relief ............... 23

B.  Granting Preliminary Injunctive Relief Is in the Public Interest ................. 24

C.  The Balance of Equities Tips Sharply in Plaintiffs' Favor ........................... 24

Conclusion ..................................................................................................................... 25

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................ 24

*Am. Libraries Ass'n v. Pataki*,
    969 F.Supp. 160 (S.D.N.Y.1997) ........................................................... 23

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ................................................................ 11

*Associated Indus. of Mo. v. Lohman*,
    511 U.S. 641 (1994) ................................................................................. 22

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ..................................................................................... 13

*Caetano v. Massachusetts*,
    136 S. Ct. 1027 (2016) ............................................................................ 12

*Chalk v. U.S. Dist. Ct. (Orange Cty. Superin. of Schs.)*,
    840 F.2d 701 (9th Cir. 1998) ............................................................ 11, 24

*Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) ................................................................................. 17

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ...................................................................... 11, 12, 14

*Duncan v. Becerra*,
    265 F. Supp. 3d 1106 (S.D. Cal. 2017) ................................................... 12

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ................................................................................. 13

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................................. 23

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ....................................................... 13, 17, 23

*Granholm v. Heald*,
    544 U.S. 460 (2005) ............................................................... 20, 22

*Healy v. Beer Instit.*,
    491 U.S. 324 (1989) ..................................................................... 20

*Heller v. District of Columbia* (*Heller III*),
    801 F.3d 264 (D.C. Cir. 2015) ................................................... 7, 14

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ......................................................... 24

*Luis v. United States*,
    136 S. Ct. 1083 (2016) ................................................................... 12

*Maine v. Taylor*,
    477 U.S. 131 (1986) ............................................................... 21, 22

*McCutcheon v. FEC*,
    134 S. Ct. 1434 (2014) ........................................................... 13, 17

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ......................................................... 11, 12, 23

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ......................................................... 23

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) ......................................................... 23

*N.C. State Conf. of NAACP v. McCrory*,
    831 F.3d 204 (4th Cir. 2016) ......................................................... 15

*Nationwide Biweekly Admin., Inc. v. Owen*,
    873 F.3d 716 (9th Cir. 2017) ................................................... 20, 22

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
    460 U.S. 37 (1983) ....................................................................... 13

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ......................................................... 24

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ..................................................................... 13

iv
TABLE OF AUTHORITIES

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) .................................................................23

*Rocky Mountain Farmers Union v. Goldstene*,
  843 F. Supp. 2d 1071 (E.D. Cal. 2011) ...................................................23

*Rodde v. Bonta*,
  357 F.3d 988 (9th Cir. 2004) ...................................................................25

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) .................................................................24

*Silvester v. Becerra*,
  No. 17-342, 2018 WL 943032 (U.S. Sup. Ct. Feb. 20, 2018) .............. 12, 16

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
  __ U.S. __, 139 S. Ct. 2449 (2019)..........................................................20

*Tucson Woman's Clinic v. Eden*,
  379 F.3d 531 (9th Cir. 2004) ...................................................................13

*Turner Broad. Sys., Inc. v. FCC*,
  520 U.S. 180 (1997)..................................................................................17

*U. Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
  550 U.S. 330 (2007)..................................................................................20

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) .................................................... 12, 13, 17

*Valle Del Sol Inc. v. Whiting*,
  709 F.3d 808 (9th Cir. 2013) ...................................................................17

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) .................................................................24

*Valley Bank of Nev. v. Plus Sys., Inc.*,
  914 F.2d 1186 (9th Cir. 1990) .................................................................20

*W. Lynn Creamery v. Healy*,
  512 U.S. 186 (1994)........................................................................20, 21, 22

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989)..................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.,*
   55 U.S. 7 (2008) ........................................................................................... 11

**Statutes**

Cal. Code Regs. tit. 11, § 4045.1 ............................................................. 7, 15

Cal. Code Regs. tit. 11, § 4260 ....................................................................... 2

Cal. Code Regs. tit. 11, § 4261 ....................................................................... 2

Cal. Code Regs. tit. 11, § 4262 ....................................................................... 2

Cal. Code Regs. tit. 11, § 4263 ................................................................. 2, 21

Cal. Code Regs. tit. 11, § 4300 ....................................................................... 3

Cal. Code Regs. tit. 11, § 4301 ....................................................................... 3

Cal. Code Regs. tit. 11, § 4302 ............................................................... 3, 4, 5

Cal. Code Regs. tit. 11, § 4303 .............................................................. *passim*

Cal. Code Regs. tit. 11, § 4304 ............................................................... 3, 4, 6

Cal. Code Regs. tit. 11, § 4305 ............................................................... 3, 4, 6

Cal. Code Regs. tit. 11, § 4306 ................................................................. 3, 21

Cal. Code Regs. tit. 11, § 4307 ....................................................................... 3

Cal. Code Regs. tit. 11, § 4308 ................................................................. 3, 16

Cal. Code Regs. tit. 11, § 4309 ....................................................................... 3

Cal. Code Regs. tit. 11, § 4350 ....................................................................... 5

Cal. Code Regs. tit. 11, § 4351 ....................................................................... 5

Cal. Code Regs. tit. 11, § 4352 ....................................................................... 5

Cal. Code Regs. tit. 11, § 4353 ....................................................................... 5

Cal. Pen. Code § 3031 .................................................................................. 21

Cal. Pen. Code § 28180 ......................................................................... 4, 5, 6

vi
TABLE OF AUTHORITIES

Cal. Pen. Code § 28180 ........................................................................... 4

Cal. Pen. Code § 30312 ................................................................... *passim*

Cal. Pen. Code § 30314 ............................................................. 3, 21, 25

Cal. Pen. Code § 30352 ............................................................. 3, 16, 25

Cal. Pen. Code § 30355 ................................................................... 9, 16

Cal. Pen. Code § 30370 ....................................................................... 25

**Other Authorities**

27 C.F.R. § 478.11 ............................................................................... 15

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1
     (2d ed. 1995) ............................................................................... 23

Senate Bill No. 1235 ............................................................................. 1

Teri Weaver, *Cuomo Agrees to Changes to* ....................................... 14

U.S. Const., amend. I ..................................................................... 13, 23

U.S. Const., amend. II ................................................................... *passim*

# INTRODUCTION

California has enacted unprecedented restraints on the acquisition and transfer of ammunition. The scheme purports to funnel everyone seeking to exercise their Second Amendment right to acquire ammunition into a single, controlled source, an in-state licensed vendor, for the purpose of confirming purchasers' legal eligibility to possess ammunition and to keep track of all purchases. While making sure dangerous people do not obtain weapons is a laudable goal for government, California's scheme goes too far and must be enjoined. California ammunition vendors have reported as high as 60% of people who undergo California's background check do not pass. And California has placed the additional, absurd requirement that the very identification it issues is insufficient to undergo the background check, resulting in countless other eligible people being unable to exercise their rights. These two phenomena alone are enough to justify a preliminary injunction to stop the irreparable harm to the public. But there are even more burdens caused by California's scheme that make it undeniable. What's more, these laws unlawfully burden interstate commerce, resulting in out-of-state vendors being wholly precluded from the California ammunition market. For these reasons, the Court should return California to the status quo of two years ago, along with the rest of the country, while the parties litigate the merits.

# FACTUAL BACKGROUND

## I.   CALIFORNIA'S AMMUNITION SCHEME

California's new ammunition restrictions are the product of Senate Bill No. 1235, enacted July 1, 2016, and Proposition 63, approved by voters during the November 2016 General Election. As a result, with few exceptions, "the sale of ammunition by any party must be conducted by or processed through a licensed ammunition vendor." Cal. Penal Code § 30312(a)(1). All persons wishing to sell ammunition must either have an "ammunition vendor license" from the California Department of Justice, or already be California licensed firearm dealers ("Vendors"). *Id*. §§ 16151, 30342, 30385(d). Vendors cannot display ammunition in a manner that allows it to be accessible to a prospective

1

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

purchaser. *Id.* § 30350; *see also* Cal. Code Regs. tit. 11, §§ 4260-4262.

When neither party to an ammunition sale is a Vendor, the seller must first "deliver the ammunition to a [V]endor to process the transaction," who will then "promptly and properly deliver the ammunition to the purchaser, if the sale is not prohibited, as if the ammunition were the [V]endor's own merchandise." *Id.* § 30312(a)(2). Any person who wishes to sell more than 500 rounds of ammunition in a 30-day period, however, cannot process the transfer through a Vendor, but rather must become one. *Id*. § 30342(a). Vendors may charge purchasers a fee to process private party transactions. *Id*. § 30312(c). "If the purchaser will be present for immediate delivery of the ammunition, the fee shall not exceed five dollars ($5)." Cal. Code Regs. tit. 11 § 4263(a). "If the purchaser will not be present for immediate delivery of the ammunition, the vendor may charge an additional storage fee as agreed upon with the purchaser prior to the vendor receiving the ammunition." *Id*. § 4263(b). In other words, there is no cap on what a Vendor can charge a private party purchaser who is not present for immediate delivery, which, as a practical matter, includes all transactions originating from out-of-state. What's more, DOJ has taken the position that Vendors are not required to process private-party transactions, including from out-of-state vendors selling to California consumers. Decl. Sean A. Brady Supp. Mot. Prelim. Inj. ("Brady Decl.") ¶ 9. Thus, ammunition vendors that do not have a physical presence in California operate at the whim of Vendors that do.

With few exceptions, all ammunition transactions must occur "face-to-face" with the seller and buyer physically present. Cal. Penal Code § 30312(b). Ammunition may still be "acquired over the internet or through other means of remote ordering if a licensed ammunition vendor initially receives the ammunition and processes the transaction." *Id*. Other than sales to law enforcement and certain firearm related businesses, exceptions to the vendor processing and "face-to-face" requirements include (1) persons who purchase or receive ammunition at a target facility holding a business or other regulatory license, provided the ammunition stays on the facility's premises; or (2) persons who purchase or receive ammunition from a spouse, registered domestic partner,

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

or immediate family member. *Id.* §§ 30312(c)(6), 30312(c)(9)-(10). DOJ has taken the position that federally licensed collectors who possess a Certificate of Eligibility ("COE") are *not* exempt. Brady Decl. ¶ 8; *but see* Cal. Penal Code § 30312(c)(6).

And subject to some narrow exemptions, a resident of California may not bring into California any ammunition acquired outside of the state, unless it is first shipped to a licensed vendor in California to process the transaction. Cal. Penal Code § 30314(a)-(b). This transaction would also be completely subject to the in-state vendor's discretion to charge the purchaser a fee in any amount or to simply refuse to process it. *Id.* § 30312(a).

DOJ must electronically approve all ammunition sales processed by a Vendor in a manner proscribed by DOJ regulations before a transferee may take possession of any ammunition as of July 1, 2019. *Id.* § 30370(a). DOJ can "recover the reasonable cost of regulatory and enforcement activities" related to this electronic approval requirement by charging ammunition transferees a per transaction fee not to exceed $1 for the first two options, and up to "the fee charged for the department's Dealers' Record of Sale (DROS) process" ($19) for the third option. *Id.* § 30370(c), (e).

Once approved, all ammunition sales are also electronically recorded with DOJ at the time of delivery, including: (1) the date of transfer, (2) the transferee's driver's license or other identification number and the state in which it was issued, residential address and telephone number, date of birth, full name and signature; (3) the brand, type, and amount of ammunition being sold or transferred; and (4) the name of the salesperson. *Id.* § 30352(a)(1)-(7). The only exception for this requirement is for persons who receive ammunition at a target facility holding a business or other regulatory license, provided the ammunition stays on the facility's premises. *Id.* § 30352(e)(3).

## II. DOJ'S AMMUNITION PURCHASE AND TRANSFER REGULATIONS

On June 24, 2019, a mere week before they took effect, DOJ adopted regulations establishing the procedures for obtaining the required electronic DOJ approval and record-keeping requirements (the "System"). *See* Cal. Code Regs. tit. 11, §§ 4300-4309. The regulations provide four methods Vendors can use to obtain electronic approval:

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

1.  A check of the transferee's information to ensure it matches an entry in the Automated Firearms System ("AFS") and matches no entry in the Prohibited Armed Persons File (called the "Standard Ammunition Eligibility Checks (AFS Match)");

2.  A check to ensure the transferee is not prohibited from purchasing or possessing ammunition (called the "Basic Ammunition Eligibility Check (Single Transaction or Purchase)");

3.  A purchase or transfer of ammunition as part of a firearm transaction (called the "Firearms Eligibility Check"); *or*,

4.  Verification of the transferee's current COE (called the "COE Verification Process").

Cal. Code Regs. tit. 11, §§ 4302-4305.

## A.   Standard Ammunition Eligibility Check (AFS Match)

To submit a Standard Ammunition Eligibility Check, the System requires Vendors to collect a transferee's "name, date of birth, current address, and driver's license or other government identification number in the manner described in Penal Code section 28180,"[1] as well as a telephone number. Cal. Code Regs. tit. 11, § 4302(c); *see also* Decl. David Burwell Supp. Pls.' Mot. Prelim. Inj. ("Burwell Decl.") ¶ 3; Decl. Chris Puehse Supp. Pls.' Mot. Prelim. Inj. ("Puehse Decl.") ¶ 5; Decl. Travis Morgan Supp. Pls.' Mot. Prelim. Inj. ("Morgan Decl.") ¶ 3; Decl. Ethan Bartel Supp. Pls.' Mot. Prelim. Inj. ("Bartel Decl.") ¶ 3; Decl. Myra Lowder Supp. Pls.' Mot. Prelim. Inj. ("Lowder Decl.") ¶ 3; Decl. Daniel Gray Supp. Pls.' Mot. Prelim. Inj. ("Gray Decl.") ¶ 3; Decl. Bill Ortiz Supp. Pls.' Mot. Prelim. Inj. ("Ortiz Decl.") ¶ 5. This information must be uploaded to DOJ's Dealer Record of Sale Entry System ("DES"). *Id*.; *see also* Decl. Christy McNab

---

[1] Penal Code section 28180 requires the purchaser's name, date of birth, and driver's license or identification number to "be obtained electronically from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means except as authorized by the department." The only exceptions are when the purchaser's identification consists of a military identification card or, because of technical limitations, the magnetic strip reader cannot obtain the required information (in which case the vendor must "obtain a photocopy of the identification as proof of compliance"). Cal. Penal Code § 28180(a),(b).

Supp. Pls.' Mot. Prelim. Inj. ("McNab Decl.") ¶ 4. Upon completion of the check, DOJ will update the submitted DES record to instruct the Vendor to either approve or reject the transaction. Cal. Code Regs. tit. 11, § 4302(d). The fee for this option is $1. Cal. Code Regs. tit. 11, § 4302(b). On its website, DOJ states that a determination can be made by DOJ in about 2 minutes. Ex 26. And in a bulletin released only to Vendors, DOJ states that an approval for this option is only valid for a period of 18 hours. Ex. 22.

DOJ also created a means to update AFS records so that purchasers may submit a Standard Ammunition Eligibility Check. *See* Cal. Code Regs. tit. 11, §§ 4350-4353. But to update an AFS record, individuals must provide their personal information "as it was, at the time when a firearm was purchased or transferred into his or her ownership, as reported to" DOJ. Cal. Code Regs. tit. 11, § 4353(c). Failing to provide this or other required information will result in a rejection for the requested change. *See* Cal. Code Regs. tit. 11, § 4353(i). In practice, this means the information must match exactly what was submitted to DOJ as part of the original transaction. Individuals lacking it must request a copy of their existing AFS records by submitting an "Automated Firearms System (AFS) Request for Firearm Records Form."[2] In addition to the notarization requirement, DOJ's processing time for this form has been reported to be as long as four months. Decl. Rick Travis Supp. Pls.' Mot. Prelim. Inj. ("Travis Decl.") ¶ 13.

### B. Basic Ammunition Eligibility Check (Single Transaction or Purchase)

To submit a Basic Ammunition Eligibility Check, the System requires Vendors to collect the transferee's "name, date of birth, current address, gender, hair color, eye color, height, weight, and driver's license or other government identification number in the manner described in Penal Code section 28180, and telephone number, United States citizenship status, federal Alien Registration Number or I-94 (if applicable), place of birth, alias name(s), and race." Cal. Code Regs. tit. 11, § 4303(c). This information must

---

[2] See Ex. 28. A copy of this form is available at
https://oag.ca.gov/sites/all/files/agweb/pdfs/ firearms/forms/AFSPrivateCitizen.pdf.

be uploaded to DES and the Vendor must provide the transferee with an Ammunition Transaction Number "to monitor the status" of the check. Cal. Code Regs. tit. 11, § 4303(c)-(d); *see also* McNab Decl. ¶ 12. Once the check is complete, DOJ will update the submitted DES record instructing the Vendor to either approve or reject the transaction. Cal. Code Regs. tit. 11, § 4303(e). The fee is $19 and any approval expires 30 calendar days from when it is issued. Cal. Code Regs. tit. 11, § 4303(b), (d)(1). On its website, DOJ states that a determination "may take days to complete." Ex 26.

### C.     Firearms Eligibility Check

The System also establishes a procedure for individuals who are purchasing a firearm from a California licensed firearm dealer to also purchase ammunition at the same time. Cal. Code Regs. tit. 11, § 4304. For this option, a transferee "shall only pay the fee for the firearms eligibility check." Cal. Code Regs. tit. 11, § 4304(b). But if trying to take possession of ammunition before completion of the firearms eligibility check, the transferee must conduct a separate transaction using one of the other available options to obtain the necessary electronic DOJ approval. Cal. Code Regs. tit. 11, § 4304(c).

### D.     COE Verification Process

To submit a COE Verification, the System requires Vendors to collect the transferee's "name, date of birth, current address, and driver's license or other government identification number in the manner described in Penal Code section 28180, telephone number, and COE number" and upload this information to DES. Cal. Code Regs. tit. 11, § 4305(c). *Id.*; *see also* McNab Decl. ¶ 4. DOJ will then update the submitted DES record instructing the Vendor to either approve or reject the transaction. Cal. Code Regs. tit. 11, § 4305(d). The fee for this option is $1. Cal. Code Regs. tit. 11, § 4305(b). On its website, DOJ states that a COE verification can be made by DOJ in about 2 minutes. Ex 26. And in a bulletin released only to Vendors, DOJ states that an approval for the COE verification is only valid for 18 hours. Ex. 22. A COE can only be obtained by applying to DOJ via the California Firearms Application Reporting System. Ex. 32. The initial application process "includes a firearms eligibility criminal background

check" following the submission of the applicant's fingerprints through a Live Scan. *Id*. Initial applications require a $71 fee be paid to DOJ, as well as any fee charged by the Live Scan Operator during the required fingerprint submission. *Id*. Once issued, a COE is valid for one year and must be renewed annually for a $22 fee. *Id*.

### III. DOJ's EMERGENCY REGULATIONS REGARDING IDENTIFICATION REQUIREMENTS FOR FIREARMS AND AMMUNITION ELIGIBILITY CHECKS

DOJ now requires individuals undergoing any firearm or ammunition eligibility check—*which includes both ammunition purchases and COE applications*—to present federally compliant identification or supplemental proof of lawful U.S. presence. Cal. Code Regs. tit. 11, § 4045.1.[3] All California residents are issued a driver license or identification card with the notation "FEDERAL LIMITS APPLY" ("FLA ID"), unless the individual expressly requests a REAL ID and meets the requirements for one. *See* Ex. 29. If the proof of lawful U.S. presence differs from the person's name, individuals must also provide a certified legal document supporting the reasons for the name change. *Id*.

Under DOJ's regulation, a California driver license or identification card with the notation "FEDERAL LIMITS APPLY" is sufficient for virtually all other purposes, yet not to acquire ammunition. Cal. Code Regs. tit. 11, § 4045.1. While this form of ID is issued by the State itself, as proof of both identity and residence, individuals possessing this state-issued ID must nonetheless present additional documentation (such as a valid U.S. passport or certified copy of a U.S. birth certificate) to purchase ammunition. Cal. Code Regs. tit. 11, § 4045.1(b). Should this additional proof not match precisely the name appearing on the California ID, additional documentation must be provided explaining the reason for the name change. Cal. Code Regs. tit. 11, § 4045.1(c).

/ / /

_____

[3] In general, "federally compliant identification" in California consists of a REAL ID issued by the California Department of Motor Vehicles. See Ex. 34. Driver's licenses or identification cards with the notation "FEDERAL LIMITS APPLY" do not constitute "federally compliant identification." *Id*.

**IV.   IMPLEMENTATION OF DOJ'S AMMUNITION REGULATIONS**

On July 1, 2019, the System took effect. Before its implementation, however, the only guidance DOJ provided to Vendors came in an "Important Notice" transmitted only through DES on June 28, 2019, which for the first time specified the equipment Vendors must possess to access the System. McNab Decl. ¶¶ 5, 9. Vendors who tried to prepare for the new requirements were only able to review the "proposed" text from earlier DOJ regulatory actions, as DOJ had not disclosed the adopted text to Vendors. McNab Decl. ¶ 6. Upon logging in to the System through DES for the first time on July 1, 2019, Vendors who were not already California licensed firearm dealers were forced to review and acknowledge over 65 bulletins, totaling over 400 pages, before being able to access DES and begin processing transactions. McNab Decl. ¶¶ 7, 10; Puehse Decl. ¶¶ 3-4.

For every background check option, DES requires Vendors to collect a purchaser's gender, race, eye color, hair color, height, weight, date of birth, place of birth, U.S. Citizenship status, and phone number in addition to the information collected from the purchaser's ID—despite DOJ's regulations requiring this information only for Basic Ammunition Eligibility Checks. Cal. Code Regs. tit. 11, § 4303(c); *see also* McNab Decl. ¶ 12. At least one Vendor has been unable to obtain the required personal information for any one purchaser by swiping the ID through the magnetic strip reader as required by DOJ—and has instead been forced to manually edit some or all of the required entries. McNab Decl. ¶12. And sometimes DES provides Vendors a choice for some required information where selecting the incorrect one results in a rejection. McNab Decl. ¶ 13.[4]

But this is only the first half of the process. Once a transferee's eligibility check has been approved, the Vendor must then help the customer select the ammunition to be purchased and begin entering this information into DES. McNab Decl. ¶¶ 20-21. DOJ has instructed all Vendors to print any pages associated with the transaction, have both the

---

[4] For example, in one transaction for the customer's residence DES listed both "Huntington Beach" and Huntington BCH" as selectable options. *Id.*

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

recipient and salesperson sign each page, and keep copies of the pages for up to 5 years. McNab Decl. ¶¶ 23, 33; Cal. Penal Code § 30355; Ex. 22 at 13. Before the System's implementation, a typical ammunition transaction could take less than a minute to complete. McNab Decl. ¶ 25. But it now can take 20 minutes—*often more*—just to enter and process the required information through DES, in addition to the time necessary for DOJ to approve or reject the transaction. McNab Decl. ¶ 26; Gray Decl. ¶ 8; Lowder Decl. ¶ 8; Bartel Decl. ¶ 8; Morgan Decl. ¶ 8; Puehse Decl. ¶ 10.[5] Vendors are also often forced to spend time educating customers on the new requirements and background check options to avoid unnecessary rejections of their transactions. McNab Decl. ¶¶ 30-31.

Following implementation of the System, some Vendors have reported estimated losses of nearly half the daily revenues they enjoyed before the new restrictions took effect. McNab Decl. ¶ 32. Some Vendors have also expressed a genuine fear that the added costs to their business will result in them being unable to maintain a profitable business moving forward. McNab Decl. ¶¶ 33, 38; Gray Decl. ¶ 13; Lowder Decl. ¶ 13; Bartel Decl. ¶ 13; Morgan Decl. ¶ 13; Puehse Decl. ¶ 15.

The System has also resulted in significantly higher denials for ammunition transactions when compared to that of denials for firearm purchases. Vendors have experienced rejection rates between 10% and 60% for all ammunition transactions submitted on or after the System took effect. Burwell Decl. ¶ 9; Puehse Decl. ¶ 11; Morgan Decl. ¶ 9; Bartel Decl. ¶ 9; Lowder Decl. ¶ 9; Gray Decl. ¶ 9; McNab Decl. ¶ 31; Ortiz Decl. ¶ 13. Typical rejection rates for firearm purchases, on the other hand, average around 1%. Ortiz Decl. ¶ 14. In addition to these rejections, many Vendors have been forced to turn away potential customers because they refused to pay for the background check, were unsure if they possessed the necessary documentation, or were unsure if they had records on file with DOJ to obtain the required electronic approval. Burwell Decl. ¶¶

---

[5] Some Vendors have reported wait times as high as over a half hour before DOJ responds to a Standard Check or COE Verification—significantly greater than the 2 minutes DOJ has estimated it would take. Ortiz Decl. ¶ 12; *see also* Ex. 26.

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

10; Puehse Decl. ¶¶ 12-13; Morgan Decl. ¶¶ 10-11; Bartel Decl. ¶¶ 10-11; Lowder Decl. ¶¶ 10-11; Gray Decl. ¶¶ 10-11; McNab Decl. ¶¶ 27-30; Ortiz Decl. ¶¶ 15-16.

## V. IMPLEMENTATION OF DOJ'S FEDERALLY COMPLIANT ID REGULATIONS

Following implementation of DOJ's emergency regulation requiring federally compliant identification for firearm and ammunition eligibility checks, some Vendors have reported that they have been forced to turn away about half of their customers in a given day for lacking a federally compliant ID or supplemental documentation. McNab Decl. ¶¶ 27-28. In fact, Vendors are being forced to turn away customers whose job entails gun use, including some serving in the United States military and a Department of Defense firearms instructor, because of issues with their ID. McNab Decl. ¶¶ 29, 34-35.[6]

Customers of Vendors are not the only victims of DOJ's emergency regulation. Employees of both California licensed firearm dealers and Vendors who lack the required federally compliant ID or supplemental documentation may soon be unemployed if they cannot obtain at least one. *See, e.g.*, Ortiz Decl. ¶ 17; Decl. George Dodd Supp. Pls.' Mot. Prelim. Inj. ("Dodd Decl.") ¶ 7-12. They are now unable to acquire ammunition or keep their job, despite having already been cleared by DOJ to do both.

### A. Obtaining a U.S. Passport or U.S. Birth Certificate

Those with a FLA ID only must obtain supporting documentation, e.g., a passport or birth certificate. To obtain a U.S. passport, one must provide "primary evidence of U.S. citizenship," which for U.S. born individuals is generally limited to a U.S. birth certificate. Ex. 30. Absent expediting costs, individuals must also pay at least $145 in fees, $110 of which is non-refundable. Ex. 31. Processing times range anywhere between 6-8 weeks.[7] Obtaining a certified copy of a U.S. birth certificate will require a search of

---

[6] Other than an "Important Notice" transmitted only to Vendors, DOJ has provided no official notice to the public of its adoption. *See* Ex. 20.

[7] See https://travel.state.gov/content/travel/en/passports/requirements/processing-times.html. It is possible to expedite the processing of a U.S. Passport application for an additional $60 fee. Ex. 31. And should the individual be unable to provide a U.S. birth certificate, a file search will be necessary, requiring an additional $150 fee. *Id*.

10

county records which can cost up to $34 and take up to 22 weeks to process.[8]

## B. Impact on out-of-state vendors

While the provisions of California's scheme that just took effect on July 1, 2019, only directly affect Vendors, they have also reached out-of-state vendors. Since that time, at least some have noticed an even further decrease in their business with California. Decl. James Gilhousen Supp. Pls.' Mot. Prelim. Inj. ("Gilhousen Decl.") ¶¶ 3, 6-8; Decl. Dan Wolgin Supp. Pls.' Mot. Prelim. Inj. ("Wolgin Decl.") ¶¶ 3-7. Plaintiff Able Ammo has yet to make a single sale to California following July 1, 2019. Gilhousen Decl. ¶ 8.

## LEGAL STANDARD

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cty. Superin. of Schs.)*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of injunction; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008)).

## ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

## A. California's Ammunition Scheme Violates the Second Amendment

The Second Amendment provides that "the right of the people to keep and bear Arms . . . shall not be infringed." After conducting an extensive textual and historical analysis, the Supreme Court confirmed in *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), that the Second Amendment protects an "individual right to possess and carry weapons" for self-defense. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010),

---

[8] See https://www.vitalrecordsonline.com/state-fees-vital-records. It is possible to expedite the search at an additional cost of up to $46.

the Court held that the "right to keep and bear arms for the purpose of self-defense" recognized in *Heller* is "fully applicable to the States," *id*. at 750, because it is "among those fundamental rights necessary to our system of ordered liberty," *id*. at 778. Thus, states and municipalities must protect the individual right protected by the Second Amendment and may not "enact any gun control law that they deem to be reasonable." *Id*. at 783 (plurality opinion); *see also Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016).

The Ninth Circuit has developed a multi-step framework for adjudicating Second Amendment claims. A court first "asks whether the challenged law burdens conduct protected by the Second Amendment," and, if so, then analyzes the law under heightened scrutiny. *United States v. Chovan* (9th Cir. 2013) 735 F.3d 1127, 1136. Whether strict or intermediate scrutiny is applied depends on "(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Id*. at 1138 (citations omitted). "The result is a sliding scale." *Silvester*, 843 F.3d at 821; *see also Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1119 (S.D. Cal. 2017). If the law "imposes such a severe restriction . . .that it amounts to a destruction of the Second Amendment right," it is "unconstitutional "under any level of scrutiny." *Silvester*, 843 F.3d at 821. Under Ninth Circuit precedent, a "law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny." *Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny applies. *Silvester*, 843 F.3d at 821.

### 1. California's Ammunition Scheme Plainly Implicates Second Amendment Conduct

The Second Amendment protects the possession and acquisition of "arms" that are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624-25. It is settled that the Second Amendment protects rights to transfer, acquire, and possess ammunition necessary to keep and bear arms for self-defense. *See Jackson*, 746 F.3d at 967-68. "Constitutional rights . . . implicitly protect those closely related acts necessary to their exercise. . .. The right to bear arms, for example, 'implies a corresponding right to obtain the bullets necessary to use them.' " *Luis v. United States*,

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

136 S. Ct. 1083, 1097 (2016) (Thomas, J., concurring) (quoting *Jackson*, 746 F.3d at 967 (recognizing that "without bullets, the right to bear arms would be meaningless")). Indeed, "[a] regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." *Jackson*, 746 F.3d at 967 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)). The scheme, which imposes a burden on the acquisition of all ammunition in California, is thus subject to heightened scrutiny. *Chovan*, 735 F.3d at 1134.

### 2.   California's Ammunition Scheme Fails Heightened Scrutiny

Because California's scheme imposes severe burdens on exercising the right to acquire ammunition, including effectively barring some from acquiring ammunition necessary to exercise their right to armed defense at all, the Court should apply strict scrutiny. *See, e.g.*, *id.* at 1284-85; *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 544 (9th Cir. 2004) ("[A] law is subject to strict scrutiny . . . when that law impacts a fundamental right, not when it infringes it."); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 54 (1983) (similar). Ultimately, however, it matters not because, even under intermediate scrutiny, the law must be presumed unconstitutional, and the government bears the burden of justifying it. *See*, *e.g.*, R.*A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (content-based speech regulations are presumptively invalid). The State cannot meet that burden here. To do so, it must make two showings. First, it must prove that the System is "substantially related" to an important government interest. *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993); *see Chovan*, 735 F.3d at 1139-40. Second, it must prove that its chosen means are "closely drawn" to achieve that end without "unnecessary abridgment" of constitutionally protected conduct. *McCutcheon v. FEC*, 134 S. Ct. 1434, 1456-57 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)); *see Jackson*, 746 F.3d at 961 (noting that Second Amendment heightened scrutiny is "guided by First Amendment principles"). California's ammunition scheme is neither.

/ / /

/ / /

### a.    California's ammunition scheme is not "substantially related" to any public safety interest.

The State will no doubt argue that its scheme furthers public safety by keeping ammunition away from dangerous people, *see* Def.'s Mot. Dismiss First Am. Compl. 1; *see also* Prop 63 sec. 3; SB 1235 Sec. 19—a valid interest, to be sure. But, "it would be hard to persuasively say that the government has an interest sufficiently weighty to justify a regulation that infringes constitutionally guaranteed Second Amendment rights if the Federal Government and the states have not traditionally imposed—and even now do not commonly impose—such a regulation." *Heller II*, 670 F.3d at 1294 (Kavanaugh, J., dissenting). As explained above, that is precisely the case here: only one other state in the country has adopted an ammunition scheme even remotely comparable to California's, and that law was never even implemented because it was infeasible.[9] Surely more states would have adopted such a scheme if it even appeared to work or could be feasibly implemented.

Even accepting that certain ammunition background check and registration systems may substantially further public safety, the question is whether *this* one does. *See Heller v. District of Columbia* (*Heller III*), 801 F.3d 264, 297 (D.C. Cir. 2015) (upholding firearm registration but striking specific registration requirements because the District failed to provide "substantial evidence" that they would promote public safety). More specifically, the question is whether the particulars of the System's excessive burdens on purchasers and Vendors are substantially related to the State's interest. *Id.* They are not.

Currently, anyone possessing a FLA ID cannot even undergo a background check to purchase ammunition without first providing the additional documentation required

---

[9] See Teri Weaver, *Cuomo Agrees to Changes to NY Safe Act Regarding Ammunition Sales*, https://www.syracuse.com/state/2015/07/cuomo_agrees_to_changes_to_ny_safe_act_regarding_ammunition_sales.html (July 10, 2015) (noting that the "ammunition sales database will not be prematurely introduced *until the technology is ready and it does not create an undue burden for business owners*" (emphasis added)).

14

under Cal. Code Regs. tit. 11, § 4045.1. In other words, the State contends that the identification that California issues as a default and thus implicitly deems sufficient for all other purposes is insufficient for purchasing ammunition—a constitutional right!  No court would ever uphold a state law requiring that some form of identification be presented to vote but that the form standard supplied by the state itself is somehow insufficient. *See N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 236 (4th Cir. 2016), *cert. denied*, *North Carolina v. N.C. State Conf. of NAACP*, 137 S. Ct. 1399 (2017). Making matters worse, the State does not even have the excuse here that federal law compels its extra identification requirement because the federal government accepts FLA IDs as sufficient for its own purposes—including to pass background checks to purchase a *firearm. See* 27 C.F.R. § 478.11; Brady Decl. ¶ 4. There is simply no plausible basis on which a state can claim that an ID issued by the state itself, and accepted as sufficient by the federal government, is nonetheless insufficient even to allow an individual to undergo a *background check* to determine whether he may exercise his Second Amendment rights.

Compounding these threshold problems, would-be ammunition purchasers with adequate identification are being denied passage of the AFS Match background checks at an alarming rate—in some cases as high as 60 percent. Burwell Decl. ¶ 9; Puehse Decl. ¶ 11; Morgan Decl. ¶ 9; Bartel Decl. ¶ 9; Lowder Decl. ¶ 9; Gray Decl. ¶ 9; McNab Decl. ¶ 31; Ortiz Decl. ¶ 13. Whatever the general denial rate actually is, it is certainly many times that of denials for firearm background checks, according to licensed firearm dealers who have been in business for decades. Ortiz Decl. ¶ 14 (noting firearm denial rates are less than 1%). Such a high (and disproportionate) denial rate cannot accurately reflect the number of persons who are prohibited from possessing a firearm, meaning that many law-abiding people are being unjustifiably denied the ability to obtain ammunition for the firearms that they are constitutionally entitled to keep and bear.

For those successful in overcoming the identification and background check hurdles, the System requires a Vendor to record details of ammunition purchases that

must then be uploaded to a DOJ database. Cal. Penal Code § 30352(a)(1-7); Cal. Code Regs. tit. 11, § 4308(c)(2). DOJ also requires Vendors to print the details of each transaction, sign the printout, have the purchaser sign it, and retain the signed documents in some format for a period of five years. McNab Decl. ¶ 23; Gray Decl. ¶¶ 6-7; Lowder Decl. ¶¶ 6-7; Bartel Decl. ¶¶ 6-7; Morgan Decl. ¶¶ 6-7 Puehse Decl. ¶¶ 8-9; Burwell Decl. ¶ 6-7; Decl. Denise Welvang Supp. Pls.' Mot. Prelim. Inj. ("Welvang Decl.") ¶ 4.; Ex. 22; Cal. Pen. Code § 30355. To Plaintiffs' knowledge, the State has identified no interest in its maintaining records about what ammunition people purchase. Indeed, the State has failed to connect the time-consuming and costly task for Vendors of compiling details for every single ammunition purchase to any law enforcement function; especially when such records cannot even be relied on as accurate. See, e.g., McNab Decl. ¶¶ 13, 15 (DES providing different options for the same city and DOJ instructing Vendors to manually edit a purchaser's personal information); Ortiz Decl. ¶¶ 18-19 (DES unable to match existing Firearm Safety Certificate ("FSC") records because of purchaser's suffix).

And given that such records are already being recorded in the "Ammunition Purchase Records File" maintained by DOJ, it is hard to imagine any interest at all in burdening vendors by requiring that they also keep those records. See Cal. Pen. Code § 30352(b). Indeed, Congress repealed a federal law requiring ammunition vendors to maintain copies of transactions after the BATFE Director testified to Congress that those "recordkeeping requirements for ammunition have no substantial law enforcement value." *Legislation to Modify the 1968 Gun Control Act*, Hearing Report, Committee on the Judiciary, U.S. House of Representatives, October 38, 30, Nov. 8, 1985, and February 19 and 27, 1986. The State has made no findings to the contrary.

### b. California's ammunition scheme lacks a reasonable "fit" with the State's interest in preventing criminal misuse.

Even assuming this scheme did substantially further the State's interests, "intermediate scrutiny requires a 'reasonable fit' between the law's ends and means." *Silvester v. Becerra*, No. 17-342, 2018 WL 943032 *4 (U.S. Sup. Ct. Feb. 20, 2018)

16

(Thomas, J., dissenting from denial of certiorari) (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993)); *see also Chovan*, 735 F.3d at 1136, 1139. The fit requirement seeks to ensure that the encroachment on constitutional rights is "not more extensive than necessary" to serve the government's interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 816 (9th Cir. 2013). The government thus bears the burden of establishing that the law is "closely drawn to avoid unnecessary abridgment" of constitutional rights, *McCutcheon*, 572 U.S. at 197; *see Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989). Government is entitled to *no deference* when assessing the fit between its purported interests and the means selected to advance them. *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 214 (1997). Instead, it must *prove* that those means do not burden "substantially more" constitutionally protected conduct than "necessary to further [its important] interest." *Id.*

Here, the System results in countless people being unable to even begin the State-mandated process for exercising the constitutional right to acquire ammunition, simply because they only have the ID that California itself  issued them! "This 'prophylaxis-upon-prophylaxis approach' requires that [the Court] be particularly diligent in scrutinizing the law's fit." *McCutcheon*, 572 U.S. at 221. The State cannot require that an ammunition purchaser present a California ID, and then reject the very ID that California itself standardly issues and accepts for virtually all other purposes. *See Ezell*, 651 F.3d 690 (city ordinance that mandated firing-range training as prerequisite to permit to own a firearm yet prohibited all shooting ranges in city violated the Second Amendment). And the State certainly cannot do so when the federal government accepts the very same state-issued ID for purposes of running background checks on firearm purchasers. Simply put, the State cannot deem the same ID that both the state and federal government accept as sufficient for virtually all other purposes somehow insufficient when it comes to the exercise of Second Amendment rights.

Worse still is that residents of other states are barred from acquiring ammunition while within the state at all, unless they have a valid COE. It is unreasonable to expect a

17

non-resident of California to have a COE or even know that a COE will be needed to acquire ammunition once in the state—particularly when obtaining a COE is about a month-long process and around $90 in fees. This is effectively a ban on non-California-residents acquiring ammunition. That is the opposite of tailoring.

Further, the System results in prospective ammunition purchasers being denied clearance under the AFS Match form of background check *up to 60%* of the time. Burwell Decl. ¶ 9; Puehse Decl. ¶ 11; Morgan Decl. ¶ 9; Bartel Decl. ¶ 9; Lowder Decl. ¶ 9; Gray Decl. ¶ 9; McNab Decl. ¶ 31; Ortiz Decl. ¶ 13. It is inconceivable that such a high number of purchasers are legitimately failing because they are actually prohibited persons. Recall, the average denial rate for *firearms* according to at least some Vendors is less than 1%. Ortiz Decl. ¶ 14. That such a large number of people are improperly denied ammunition under the System is unacceptable for a system that acts as a gatekeeper to the exercise of a fundamental right. Even if these purchasers are ultimately able to acquire ammunition at a later time by remedying any discrepancy, that the State precludes them from doing so indefinitely until the purchaser can prove that they are not prohibited persons, flips constitutional order on its head. The State has the burden to prove that a person is not entitled to exercise a right—not the other way around. This background check is the polar opposite of sufficiently tailored.

Finally, the State cannot justify the System's time-consuming nature. There must be a way of conducting a background check that does not require a Vendor to regularly dedicate a *half hour to each customer*. See, e.g., McNab Decl. ¶ 26; Gray Decl. ¶ 8; Lowder Decl. ¶ 8; Bartel Decl. ¶ 8; Morgan Decl. ¶ 8; Puehse Decl. ¶ 10; Ortiz Decl. ¶¶ 10-12. Purchasers are foregoing the process because of the time commitment or uncertainty about their records with DOJ. Burwell Decl. ¶¶ 10; Puehse Decl. ¶¶ 12-13; Morgan Decl. ¶¶ 10-11; Bartel Decl. ¶¶ 10-11; Lowder Decl. ¶¶ 10-11; Gray Decl. ¶¶ 10-11; McNab Decl. ¶¶ 27-30; Ortiz Decl. ¶¶ 15-16. The System is also a significant barrier to entry for those newly exercising their Second Amendment rights. It requires people to either purchase a firearm and register it in AFS or pay $19 just to be able to purchase a

box of ammunition that may cost only $5. Some are opting to do neither. *Id.*

Several Vendors have explained that these delays result in significant lost business. McNab Decl. ¶¶ 32-33, 37-38. This is in addition to all of the other costs Vendors must incur under the scheme, including the fee to acquire a vendor license, wages for additional employees necessary to serve customers by being the intermediary between them and the product, the cost of a COE for each of their employees, and the costs of creating and storing the required records of each transaction. McNab Decl. ¶¶ 3, 9, 23, 33, 37. In aggregate, these restrictions result in a severe burden not only on those seeking to exercise their right, but on Vendors, the purveyors of the right. Some Vendors have even expressed fear that these burdens could result in shutting their business down. Burwell Decl. ¶ 12; Puehse Decl. ¶ 15; Morgan Decl. ¶ 13; Bartel Decl. ¶ 13; Lowder Decl. ¶ 13; Gray Decl. ¶ 13; McNab Decl. ¶ 38. Doing so would mean they would be unable to provide the public the means to exercise their rights. When Vendors are saying they may close their doors because of this scheme, something is wrong, the law cannot be sufficiently tailored.

In sum, the State has created a screening system that: (1) prevents a significant portion of people from even undergoing the screen because California does not recognize the very ID it issues residents as sufficient to even underdo a background check under this system; (2) results in a significant number of people being denied exercise of their right without cause; and (3) imposes time-consuming, costly burdens on Vendors and purchasers that could easily be avoided. A system that is so hyper-technical and sensitive to common variables is unacceptable as a gatekeeper to exercising constitutional rights.

Finally, California's restrictions on acquiring ammunition directly from out-of-state vendors or importing it also imposes a constitutionally impermissibly burden because it eliminates a significant source of ammunition for California purchasers, especially those people far away from any Vendor. Decl. Scott Lindemuth Supp. Pls.' Mot. Prelim. Inj. ("Lindemuth Decl.") ¶ 3. In any event, if the Court finds it appropriate to enjoin the System, it should also enjoin the face-to-face requirement and importation

1  restriction as well, for the only interest the State has articulated in enforcing those

2  provisions is that they further its professed interest in conducting background checks.

3  Accordingly, if the State is enjoined from requiring individuals to engage in a distinct,

4  and largely inaccurate, background check system to purchase ammunition, then no

5  purpose would be served by requiring individuals to engage in face-to-face transactions

6  that the State has defended only as a means to facilitating its background check scheme.

### B. California's Ammunition Scheme Also Violates the Dormant Commerce Clause

8      The Commerce Clause limits states' ability to regulate interstate commerce, even

9  where federal law is silent on the issue. *U. Haulers Ass'n v. Oneida-Herkimer Solid*

10  *Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). The Supreme Court recently affirmed its

11  commitment to this "dormant" aspect of the Commerce Clause as a tool to "preserve[] a

12  national market for goods and services." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,

13  __ U.S. __, 139 S. Ct. 2449, 2459 (2019). It prohibits a state from regulating commercial

14  transactions that take place wholly outside of the state's border, "whether or not the

15  commerce has effects within the State." *Healy v. Beer Instit.*, 491 U.S. 324, 336 (1989);

16  *see also W. Lynn Creamery v. Healy*, 512 U.S. 186, 194-95 (1994). "[W]hen a state law

17  directly affects transactions that 'take place across state lines' or entirely outside of the

18  state's borders," the law is "invalid per se." *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.

19  2d 1186, 1189-90 (9th Cir. 1990) (citations omitted). What's more, as this Court has

20  noted, the Supreme Court has held "time and again" that, "in all but the narrowest

21  circumstances, state laws violate the Commerce Clause if they mandate differential

22  treatment of in-state and out-of-state economic interests that benefits the former and

23  burdens the latter." Order Re: Defendant's Motion to Dismiss ("Order") 3 (quoting

24  *Granholm v. Heald*, 544 U.S. 460, 472 (2005)). "State laws that directly discriminate

25  against out-of-state entities can survive only if the state demonstrates both that the statute

26  serves a legitimate local purpose, and that this purpose could not be served as well by

27  available nondiscriminatory means." *Nationwide Biweekly Admin., Inc. v. Owen*, 873

28  F.3d 716, 736 (9th Cir. 2017), *cert. denied sub nom.*, *Nationwide Biweekly Admin., Inc. v.*

*Hubanks*, 138 S. Ct. 1698 (2018) (citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).[10] California's ammunition scheme violates both of these precepts.

     As this Court observed in denying the State's motion to dismiss Plaintiffs' Dormant Commerce Clause claim, California generally "prohibits a seller of ammunition physically located outside of the state from selling directly to customers in California." Order 4; *see* Cal. Penal Code § 30312(b); Brady Decl. ¶ 8. As a result, out-of-state vendors seeking to sell ammunition to California residents can do so only if they first ship it to an in-state vendor who then completes the transfer to the purchaser—with the limited exception of California law enforcement purchasers and other firearm and ammunition businesses. Cal. Pen. Code §§ 30312(a),(b), (e)(1)-(11), 30314(a); Cal. Code Regs. tit. 11 § 4306. But DOJ has taken the view that Vendors may refuse to receive and process third-party ammunition transfers. Brady Decl. ¶ 9. And various California Vendors are, in fact, refusing to process these transactions from out-of-state vendors. Gilhousen Decl. ¶¶ 3-4; Wolgin Decl. ¶ 9. For those out-of-sate vendors fortunate enough to find a California Vendor willing to process the transaction, the Vendor may charge the California resident any fee amount it wishes to do so. *See* Cal. Penal Code § 3031(b); Cal. Code Regs. tit. 11, § 4263. A California resident seeking to acquire ammunition from an out-of-state vendor cannot even escape the reach of in-state Vendors' control by physically leaving the state. To bring the ammunition home, the California resident would have to, *while out-of-state*, ship it to a Vendor and retrieve it once back in-state. Just as with businesses shipping into California, however, the in-state Vendor may refuse to accept the shipment or charge excessively to accept it.

     In sum, California's ammunition scheme not only prevents out-of-state vendors, like Plaintiffs Able's Sporting, Inc. and AMDEP Holdings, LLC, from accessing California customers in a particular manner, but it authorizes, and has in fact resulted in,

---

[10] A state law that regulates even-handedly still violates the Commerce Clause if it impermissibly burdens interstate commerce in relation to local interest. *See Healy*, 512 U.S. at 194-95. Plaintiffs do not, at this time, assert such a claim, pending discovery.

in-state Vendors completely excluding them from accessing the California market. Gilhousen Decl. ¶¶ 3-4; Wolgin Decl. ¶ 9; Brady Decl. ¶¶ 8-9. It renders out-of-state vendors' ability to do business in California *entirely* dependent on the discretion of their in-state competitors. The "practical effect" is to nullify, or at least control the terms of, transactions occurring wholly out of state, i.e., extraterritorially, which the Commerce Clause absolutely forbids. *See Healy*, 512 U.S. at 339.

California's scheme, at minimum, impermissibly discriminates against out-of-state ammunition commerce. It is just like the constraints on interstate commerce struck down in *Nationwide Biweekly*, 873 F.3d at 736-37. Order 5. There, the Ninth Circuit held that a California statute does precisely what the Supreme Court says cannot be done except in the "narrowest circumstances"—i.e., requiring anyone wanting to engage in a certain kind of business within the state to become a resident. *Nationwide Biweekly*, 873 F.3d at 736-37 (citing *Heald*, 544 U.S. at 472). The effect of California's scheme is to force companies located out-of-state to have a physical in-state presence as a condition to having secure and equal access to its ammunition market. Such a dynamic, by definition, favors in-state economic interests over out-of-state interests. It thus also necessarily "deprive[s] citizens of their right to have access to the markets of other states on equal terms," *Granholm*, 544 U.S. at 473, violating the dormant Commerce Clause.

A court "need not inquire into the purpose or motivation behind a law to determine that in actuality it impermissibly discriminates against interstate commerce." *Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 653 (1994). Even if California does not intend to benefit its in-state economic interests, it does in fact broadly discriminate against interstate commerce. Given the law's sweeping discriminatory impact, the State cannot meet its heavy burden to establish that it falls within the "narrowest [of] circumstances" where the discrimination should be allowed to persist. *Granholm*, 544 U.S. at 472. To do so, the State would have to show that the law both " 'serves a legitimate local purpose,' *and* that this purpose could not be served as well by available nondiscriminatory means." *Nationwide Biweekly*, 873 F.3d at 736 (citing *Maine v. Taylor*, 477 U.S. 131, 138

(1986)). The State has failed to explain why it is necessary for vendors located out-of-state to use an in-state Vendor as an intermediary to access the California ammunition market. Because the State cannot meet its burden to justify California's extraterritorial effects and discrimination against out-of-state vendors, Plaintiffs are likely to succeed on the merits of their Dormant Commerce Clause challenge.

## II.   THE REMAINING PRELIMINARY INJUNCTION FACTORS WARRANT RELIEF

### A.   Plaintiffs Will Suffer Irreparable Harm if the Court Denies Relief

If this Court concludes that Plaintiffs are likely to succeed on one or both of their alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *See McDonald*, 561 U.S. at 780; *see also Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable and having no adequate remedy at law"). The same is true for Commerce Clause violations. *See Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1071 (E.D. Cal. 2011) (citing *Am. Libraries Ass'n v. Pataki*, 969 F.Supp. 160, 168 (S.D.N.Y.1997)), *Rev'd on other grounds sub nom., Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070 (9th Cir. 2013).

The constitutional violations alone are enough to satisfy the irreparable harm factor, but the circumstances here make the irreparable harm unmistakable. Because continued enforcement of the scheme not only unjustly denies individuals their Second Amendment rights, but also jeopardizes the existence of some Vendors, who are the

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

purveyors of those rights, the need to "preserve the status quo pending a determination of the action on the merits"—the fundamental purpose of a preliminary injunction—is particularly strong. *Chalk*, 840 F.2d at 704.

### B.    Granting Preliminary Injunctive Relief Is in the Public Interest

For similar reasons, granting preliminary injunctive relief is clearly in the public interest. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Here, Plaintiffs seek to vindicate their fundamental Second Amendment rights, as well as their rights under the Commerce Clause. As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Thus, not only Plaintiffs' rights are at stake, but so are the rights of any law-abiding Californian who is unduly burdened by the State's ammunition scheme. The public interest thus tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208. Moreover, the State has no plausible argument that enjoining enforcement of its ammunition scheme will unduly endanger public safety. After all, doing so would merely return California to the status quo, which is the same for every other state in the union.

### C.    The Balance of Equities Tips Sharply in Plaintiffs' Favor

Finally, the balance of hardships tips sharply in Plaintiffs' favor. This factor considers "the balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011). In contrast to Plaintiffs' and the public's many injuries, the State will suffer no concrete harm from a preliminary injunction. The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). Even absent the

constitutional dimension of this lawsuit, the balance of harms tips in Plaintiffs' favor. Denying or severely hindering law-abiding people from acquiring ammunition cannot plausibly be understood to serve any public safety interest. To the contrary, California's ammunition scheme makes the public *less* secure by making it more difficult for Plaintiffs and the law-abiding public to defend themselves.

The balance of equities also favors litigants seeking only "to preserve, rather than alter, the status quo while they litigate the merits of th[eir] action." *Rodde v. Bonta*, 357 F.3d 988, 999 n.14 (9th Cir. 2004). Granting the relief Plaintiffs seek will merely preserve the over century-long status quo from before the scheme took effect, while the case moves forward on the merits. This further "strengthens [Plaintiffs'] position" in the analysis of the equitable injunction factors. *Id.* On the other hand, granting an injunction will end the ongoing violation of Plaintiffs' rights, allowing them and the public the freedom to exercise those rights without fear of prosecution.

## CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion and enjoin enforcement of California Penal Code sections 30312(a), 30312(b), 30314(a), 30370, and 30352(a-d) while this case goes on to resolution on the merits.

Dated: July 22, 2019                    **MICHEL & ASSOCIATES, P.C.**


                                        *s/ Sean A. Brady*
                                        Sean A. Brady
                                        Email: sbrady@michellawyers.com
                                        Attorneys for Plaintiffs

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

## CERTIFICATE OF SERVICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Becerra*
Case No.: 3:18-cv-00802-JM-JMA

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following parties by electronically filing the foregoing on July 22, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Nelson R. Richards                          *Attorneys for Defendant Attorney General*
Deputy Attorney General                     *Xavier Becerra*
nelson.richards@doj.ca.gov
2550 Mariposa Mall, Room 5090
Fresno, CA 93721

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 22, 2019, at Long Beach, CA.

*s/ Laura Palmerin*
Laura Palmerin

CERTIFICATE OF SERVICE

18cv802