1  C.D. Michel – SBN 144258
   Sean A. Brady – SBN 262007
2  Matthew D. Cubeiro – SBN 291519
   MICHEL & ASSOCIATES, P.C.
3  180 E. Ocean Boulevard, Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Facsimile: (562) 216-4445
5  Email: cmichel@michellawyers.com
6
7  Attorneys for Plaintiffs
8
                  **UNITED STATES DISTRICT COURT**
9
                **SOUTHERN DISTRICT OF CALIFORNIA**
10
11  KIM RHODE, et al.,                    Case No.: 3:18-cv-00802-BEN-JLB
12                      Plaintiffs,        **DECLARATION OF SEAN A. BRADY**
13              v.                         Hearing Date:  August 19, 2019
                                           Hearing Time:  10:30 a.m.
14  XAVIER BECERRA, in his official        Courtroom:     5A
    capacity as Attorney General of the State   Judge:    Hon. Roger T. Benitez
15  of California,
16                      Defendant.
17
18
19
20
21
22
23
24
25
26
27
28
                                   1
                    DECLARATION OF SEAN A. BRADY

**DECLARATION OF SEAN A. BRADY**

1.    I am an attorney at the law firm of Michel & Associates, P.C., attorneys of record for plaintiffs in this action. I am licensed to practice law before the United States Court for the Southern District of California. I am also admitted to practice before the Central, Northern, and Eastern District Courts of California, superior courts of the state of California, and the United States Supreme Court. I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

2.    On January 31, 2019, our office, on behalf of Plaintiff California Rifle & Pistol Association, Incorporated, ("CRPA") submitted a letter of comment on the California Department of Justice's proposed regulations regarding "Ammunition Purchases or Transfers – OAL File No. Z-2018-1204-08." A true and correct copy of this letter of comment is attached as **Exhibit 35**.

3.    On May 8, 2019, our office, on behalf of Plaintiff CRPA submitted a second letter of comment on the California Department of Justice's proposed regulations regarding "Ammunition Purchases or Transfers – Title 11, Division 5, Chapter 11 (OAL File No. Z-2018-1204-08)." A true and correct copy of this second letter of comment is attached as **Exhibit 36**.

4.    On June 20, 2019, our office, on behalf of Plaintiff CRPA submitted a letter of comment on the California Department of Justice's proposed emergency regulations regarding "Identification Requirements for Firearms and Ammunition Eligibility Checks – Title 11, Division 5, Chapter 4." A true and correct copy of this letter of comment is attached as **Exhibit 37**.

5.    On June 26, 2019, Plaintiff CRPA hosted a webinar presented by our office regarding "Ammunition Background Checks: Prop 63, SB 1235, and DOJ's Regulations." A recording of this webinar can be viewed online at https://crpa.org/resources/crpa-webinars/.

6.      On October 18, 2016, Plaintiff CRPA hosted a webinar presented by our office regarding "Newsom Ballot Initiative (Proposition 63): What Does it Do? How Will it Change California's Firearms Laws?" A recording of this webinar can be viewed online at https://crpa.org/resources/crpa-webinars/.

7.      On April 24, 2016, Plaintiff CRPA hosted a webinar presented by our office regarding "California Legal Update: SB 1235 (Ammunition)." A recording of this webinar can be viewed online at https://crpa.org/resources/crpa-webinars/.

8.      On July 10, 2019, I emailed opposing counsel asking DOJ's position whether out-of-state persons can ship ammunition directly to a California resident if that resident has both a valid Certificate of Eligibility ("COE") issued by DOJ and a Curio/Relic license (Type 03 FFL) ("C&R") issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"). On July 12, 2019, opposing counsel responded that it was DOJ's position that out-of-state persons ***cannot*** ship ammunition directly to COE and C&R holders.

9.      On July 10, 2019, I emailed opposing counsel asking DOJ's position whether California-based ammunition vendors are required to process private party ammunition transactions. On July 12, 2019, opposing counsel responded that it was DOJ's position that California-based ammunition vendors are ***not required*** to process private party ammunition transactions.

10.      On July 19, 2019, our office received a letter from DOJ's Certificate of Eligibility Unit on behalf of Plaintiff CRPA stating that the COE applications submitted by CRPA employees "cannot be processed" because DOJ is no longer accepting COE applications via mail as a result of a recently adopted regulation that took effect on July 1, 2019. CRPA employees originally submitted their applications and paid all associated application fees in June 2019.

/ / /

/ / /

/ / /

DECLARATION OF SEAN A. BRADY

18cv802

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on July 22, 2019.

*s/ Sean A. Brady*
Sean A. Brady
Declarant

4
DECLARATION OF SEAN A. BRADY

**EXHIBIT 35**

**SENIOR PARTNER**
C. D. Michel*

**MANAGING PARTNER**
Joshua Robert Dale

**SPECIAL COUNSEL**
W. Lee Smith

**ASSOCIATES**
Anna M. Barvir
Sean A. Brady
Tiffany D. Cheuvront
Matthew D. Cubeiro
Alexander A. Frank
**Los Angeles, CA**

**OF COUNSEL**
Joseph Di Monda
Scott M. Franklin
Clint B. Monfort
Michael W. Price
Tamara M. Rider
**Los Angeles, CA**



**MICHEL & ASSOCIATES, P.C.**
Attorneys at Law

**WRITER'S DIRECT CONTACT:**
562-216-4465
MCubeiro@michellawyers.com

\*   Also admitted in Texas and the
   District of Columbia

January 31, 2019

Jessie Romine
Bureau of Firearms
Division of Law Enforcement
Department of Justice
P.O. Box 160487
Sacramento, CA 95816-0487
Ammoregs@doj.ca.gov
**Via Email and U.S. Mail**

> **Re: Comments Regarding Proposed Regulations Regarding Ammunition Purchases or Transfers – OAL File No. Z-2018-1204-08**

To Whom It May Concern:

We write on behalf of our clients, the National Rifle Association of America ("NRA") and the California Rifle & Pistol Association, Incorporated ("CRPA"), as well as their respective members throughout California, in opposition to the proposed regulations regarding "Ammunition Purchases or Transfers," which if adopted would add sections 4300-4309 to Title 11 of the California Code of Regulations ("C.C.R").

For the reasons discussed below, our clients oppose the regulations as currently drafted.

## I.   CALIFORNIA'S ADMINISTRATIVE PROCEDURES ACT

The APA is designed to provide the public with a meaningful opportunity to participate in the making of regulations by California state agencies and to ensure the creation of an adequate record for review.[1] Every regulation is subject to the rulemaking procedures of the APA unless expressly exempted by statute.[2]

---

[1] Office of Administrative Law, *Guide to Public Participation in the Regulatory Process*, https://www.oal.ca.gov/wp-content/uploads/sites/166/2017/05/How-2-Participate-102016.pdf (Oct. 2016).

[2] A "regulation" is defined as every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order or standard adopted by any state

Under to the APA, California's Office of Administrative Law ("OAL") is tasked with reviewing all regulations that have been submitted to it for publication in the California Code of Regulations Supplement and for transmittal to the Secretary of State.[3] Specifically, OAL will review any proposed regulation to ensure it satisfies the following criteria:

- **Necessity** – meaning the record of the rulemaking proceeding demonstrates by substantial evidence the need for a regulation to effectuate the purpose of the statute, court decision, or other provision of the law that the regulation implements, interprets, or makes specific, taking into account the totality of the record (where evidence includes, but is not limited to, facts, studies, and expert opinion);

- **Authority** – meaning the provision of law which permits or obligates the agency to adopt, amend, or repeat a regulation;

- **Clarity** – meaning written or displayed so that the meaning of the regulations will be easily understood by those persons directly affected by them;

- **Consistency** – meaning being in harmony with, and not in conflict with or contradictory to, existing statutes, court decisions, or other provisions of law;

- **Reference** – meaning the statute, court decision, or other provision of law which the agency implements, interprets, or makes specific by adopting, amending, or repealing a regulation; and,

- **Nonduplication** – meaning that a regulation does not serve the same purpose as a state or federal statute or another regulation.[4]

Should a regulation fail to comply with the above requirements, OAL may disapprove the regulation.[5] And any person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief.[6]

## II. DOJ'S PROPOSED REGULATIONS ARE INCOMPLETE AND LACK SUFFICIENT CLARITY AS REQUIRED BY THE APA

As a threshold matter, DOJ's proposed regulations are incomplete. Key aspects of the proposal are missing, such as how licensed ammunition vendors are to determine which proposed background check process to use for a particular customer due to the varying options. Both our clients and our office have been informed by multiple DOJ representatives that DOJ intends to propose additional

---

agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure. Cal. Gov. Code § 11342.600.

[3] Cal. Gov. Code § 11349.1.

[4] Cal. Gov. Code §§ 11349, 11349.1(a)(1-6). OAL may also consider the clarity of the proposed regulation in the context of related regulations already in existence. Cal. Gov. Code § 11349.1(b).

[5] Cal. Gov. Code § 11349.3.

[6] Cal. Gov. Code § 11350.

regulations regarding the sale or transfer of ammunition beyond this proposal. Presumably, those regulations will address the many gaps in this current proposal.

Under the APA, the clarity of a proposed regulation may be considered in the context of related regulations already in existence.[7] Following that same logic, the clarity of a proposed regulation may be considered in the context of related regulations that have yet to be proposed. Without the anticipated additional regulations that have yet to be proposed, the meaning of the regulations cannot be said to be easily understood by those persons directly affected by them.

As a result, DOJ's proposal as currently written fails to satisfy the clarity requirement of the APA. The public is entitled to see the entire regulatory package together, not in this piecemeal fashion. DOJ should amend the proposal to include any and all additional regulations to ensure the proposal satisfies the clarity requirement of the APA as well as providing members of the public a meaningful opportunity to comment.

### III.   PROPOSED SECTION 4301 – DEFINITIONS: AFS RECORDS DO *NOT* IDENTIFY AN INDIVIDUAL AS AN OWNER OF A FIREARM

Included with DOJ's proposed regulations are definitions for terms used throughout. One such definition is provided for the term "AFS Record," which reads:

> [A] firearm record on file with the Department that identifies an individual as an owner of a firearm. An AFS record has been established with the Department when an individual has purchased or transferred a rifle or shotgun from a firearms dealer on or after January 1, 2014, or an individual that has purchased or transferred a handgun from a firearms dealer at any time. An AFS record may also be established after the Department processes an individual's assault weapon registration or an individual's report of firearm ownership.

But there is a fundamental flaw in DOJ's proposed definition—AFS records do ***not*** identify an individual as an owner of a firearm. Indeed, the former head of DOJ's Bureau of Firearms Division, Stephen Lindley, recently testified as an expert witness to that effect. In his report, Mr. Lindley stated that "no local law enforcement agency should rely upon AFS as the sole basis for establishing ownership of a firearm or rejecting a claim of ownership" because "AFS merely serves as a database of transaction records related to a firearm."

Mr. Lindley's testimony echoes a prior information bulletin authored by DOJ's Division of Law Enforcement submitted to all California Sheriffs and Chiefs of Police.[8] As noted by DOJ in this bulletin, it is likely that many long guns are not recorded in AFS for various reasons. And because not all handguns were required to be sold through a California licensed firearms dealer prior to 1991, there are a great number of lawfully owned handguns that were not subject to any requirement that the transaction be recorded in AFS. As a result, DOJ's bulletin emphasizes that:

---

[7] Cal. Gov. Code § 11349.1(b).

[8] *2009-BOF-03: Critical Changes to the Law Enforcement Gun Release (LEGR) Program*, California Department of Justice, Division of Law Enforcement, http://michellawyers.com/wp-content/uploads/2019/01/Info-Bulletin-re-Changes-to-LEGR-Program.pdf (Jan. 4, 2010).

> *[An] AFS transaction record simply means that on the date of transaction (DOT), the individual was eligible to own/possess firearms. It does not indicate ownership of the firearm.*

DOJ's Initial Statement of Reasons ("ISOR") claims the proposed definitions "will help to eliminate any misunderstandings between the Department and the public." Given DOJ's clear, prior interpretations (at least one of which was expressed to all California law enforcement professionals), DOJ should ensure consistency to help eliminate any misunderstanding. To that end, we suggest the definition for "AFS Record" instead read:

> *[A] firearm record on file with the Department that indicates on the date of the transaction, the individual was eligible to own and possess firearms. An AFS record has been established with the Department when an individual has either purchased or transferred a rifle or shotgun through a California licensed firearms dealer on or after January 1, 2014, or an individual has purchased or transferred a handgun through a California licensed firearms dealer at any time. An AFS record may also be established after the Department processes an individual's assault weapon registration or an individual's report of firearm ownership.*

## IV.   PROPOSED SECTION 4302 - "STANDARD AMMUNITION ELIGIBILITY CHECK"

Proposed section 4302 concerns what DOJ refers to as the "Standard Ammunition Eligibility Check." As stated in proposed subsection (a), "the fee for a Standard Ammunition Eligibility Check is $1.00." In addition to citing subdivision (e) of Penal Code section 30370 for authority, DOJ states in their ISOR that subdivision (a) is necessary to specify the fee assessed and to recover the total cost of implementation.

Section (e) of Penal Code section 30370 states that DOJ "shall recover the reasonable cost of regulatory and enforcement activities related to this article by charging ammunition purchasers and transferees a per transaction fee not to exceed one dollar ($1)" and "not to exceed the reasonable regulatory and enforcement costs."[9] In its ISOR, DOJ states that the fees collected pursuant to this subsection "will be used to repay the loan for start up costs" as well as "salaries of the 73 permanent employees." DOJ has not specified, however, if the fee will be reduced once the initial loan for start up costs is paid in full. What's more, DOJ has not specified how the 73 employees will be used, if at all, when processing what is presumably a fully automated check of the AFS system.

As a result, the proposed $1 fee exceeds DOJ's regulatory authority as it is not consistent with the authorizing statute.

---

[9] DOJ's authority to impose a fee is also generally limited by subsection (b)(1) of Government Code section 11010, which states that no state agency "shall levy or collect any fee or charge in an amount that exceeds the estimated actual or reasonable cost of providing the service, inspection, or audit for which the fee or charge is levied or collected."

### A.  Lack of Established Procedures for Licensed Ammunition Vendors

The proposed regulations lack crucial information as to when or how a licensed ammunition vendor must use the Standard Ammunition Eligibility Check process. As discussed below, potential ammunition purchasers may also undergo a "One-Time Ammunition Transaction" involving a more comprehensive "Basic Ammunition Eligibility Check," or a "COE Verification Process" in addition to the Standard Ammunition Eligibility Check when attempting to purchase ammunition. Yet the proposed regulations are silent as to how a licensed ammunition vendor is to determine what procedure to use.

The proposed regulations also state that DOJ "shall instruct the ammunition vendor to approve or reject the purchase or transfer," and that if rejected, "the ammunition vendor shall provide the purchaser or transferee with an ATN that can be used to obtain the reason for the rejection." What the proposed regulations do not specify, however, is how DOJ determines whether to approve or reject a Standard Ammunition Eligibility check. There are no criteria a prospective purchaser or licensed ammunition vendor can refer to.[10]

As a result, both licensed ammunition vendors and their customers are incapable of easily understanding the effects of the proposed regulations as currently drafted. DOJ should amend its proposal to address these lack of clarity concerns before moving forward.

### i.      Use of Out-of-State or Other Identification

In connection with the proposed regulation requiring additional purchaser information, purchasers will be required to provide their driver license or other government identification number "in the manner described in Penal Code section 28180." Penal Code section 28180 requires purchasers to provide this information electronically from the magnetic strip on the purchaser's driver's license or identification.[11] The only exceptions to this requirement are for military IDs or when the magnetic strip reader is unable to obtain the required information.[12]

The proposed regulation lacks crucial information as to how exactly licensed ammunition vendors are to process ammunition transactions for out-of-state residents and individuals providing government ID that may not be compatible with DOJ's electronic system. For example, the current firearm background check system in California will generate a "DMV Reject Notice" when the driver's license or identification card used is not valid, or when the information provided is in conflict

---

[10] While it is true that an individual can request a copy of their AFS records from DOJ, the process for obtaining those records requires individuals to submit a notarized form with a copy of a valid identification card. It is our understanding, however, that the current processing time for obtaining such records is between 3 and 4 months, well beyond that which would make this a feasible option for prospective purchasers to determine if they have a valid AFS record.

[11] Cal. Penal Code § 28180(a).

[12] Cal. Penal Code § 28180(b)(1-2).

with the files maintained by the California Department of Motor Vehicles ("DMV").[13] Because DOJ has stated the ammunition background check process will be "essentially the same" as a firearms eligibility check, it can only be assumed individuals with out-of-state or other identification not compatible will result in similar "DMV Reject Notices." What's more, nothing in either the Penal Code or DOJ's proposed regulations require licensed ammunition vendors who are not otherwise California licensed *firearms* dealers to possess a magnetic strip reader.

DOJ's proposed regulations need to clarify how licensed ammunition vendors are to process transactions involving individuals from out of state who may not have a government identification compatible with DOJ's electronic system, and how DOJ intends to conduct a background check on individuals with out-of-state identification to ensure they are not automatically rejected as would occur under DOJ's current system. Otherwise, this regulation is void for lack of clarity.

## V.   PROPOSED SECTION 4303 - "ONE-TIME AMMUNITION TRANSACTIONS"

For unknown reasons, DOJ has chosen to label proposed section 4303 as "One-Time Ammunition Transactions." But DOJ's chosen label is likely to create unnecessary confusion. This is because Standard Ammunition Eligibility Checks, as described and labeled in proposed section 4302, are also "one-time" transactions which are used for purposes of conducting a single transaction. As a result, DOJ should instead label this section "Basic Ammunition Eligibility Check" to be consistent with section 4302, and otherwise remove the unnecessary "One-Time Ammunition Transaction" definition and other uses of the term throughout the proposal.

The proposed regulation concerning One-Time Ammunition Transactions also suffers from the same flaws as the Standard Ammunition Eligibility Check in that it lacks crucial procedural information. This includes when and how licensed ammunition vendors are to utilize the One-Time Ammunition Transaction process and how to handle out-of-state identification. Without this crucial information, both licensed ammunition vendors and their customers are incapable of easily understanding the effects of the proposed regulations as currently drafted, making Section 4303 void for lack of clarity.

### A.   Conflict with Federal Law

At the outset, the proposed regulation conflicts with federal law and regulations. Under federal law, access to federal databases for purposes of conducting a background check is strictly limited to *firearm* transactions. Accessing these databases "for any other purpose," including ammunition transactions, is "strictly prohibited."[14]

Because California is a "Point-of-Contact" state, California has agreed to implement and maintain its own background check system and conduct the required background checks by accessing federal databases on behalf of California licensed firearm dealers. But California is prohibited from

---

[13] See *DROS Entry System (DES) Firearms Dealership User Guide*, California Department of Justice, Bureau of Firearms at 36 (12/29/2017 Rev. 3), available online at https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/dros_entry_guide.pdf.

[14] See 28 C.F.R. § 25.6.

accessing these federal databases for purposes other than conducting a background check in connection with a firearm transaction.

### B.  Proposed $19 Fee

Proposed subdivision (a) of section 4303 would establish a $19 fee for a Basic Ammunition Eligibility Check. DOJ states in their ISOR that this check "is essentially the same background check as a firearms eligibility check" and that the proposed fee "is consistent with the fee paid for a firearms eligibility check." DOJ also cites to subdivision (c) of Penal Code section 30370 for authorization, which reads in part:

> *The department shall recover the cost of processing and regulatory and enforcement activities related to this section by charging the ammunition transaction or purchase applicant a fee **not to exceed the fee charged for the department's Dealers' Record of Sale (DROS) process**, as described in Section 28225 **and not to exceed the department's reasonable costs**.*[15]

In 2017, the Sacramento County Superior Court issued a decision affirming DOJ's ministerial duty under Penal Code section 28225 to perform a reassessment of the Dealers' Record of Sale ("DROS") fee.[16] That fee, which is currently set at $19 per DOJ's regulations, has remained unchanged for over 15 years since 2004.[17] During litigation, DOJ failed to identify any internal process that would trigger the mandatory review of the current fee, and failed to produce any documentation to substantiate its claim that it performs "regular monitoring" of the DROS fee as required by law. What's more, DOJ's DROS account "amassed a surplus of over $35 million, primarily consisting of DROS Fee revenues at the time the case was originally filed."[18]

The fact that the current DROS fee is generating such a substantial surplus is clear evidence that DOJ's proposed $19 fee exceeds DOJ's regulatory authority for two important reasons. First, it is wholly improper for DOJ to propose a fee based on that which a court has ordered DOJ to reassess. To do so otherwise demonstrates a clear disregard for the Court's ruling

Notwithstanding that ruling, the proposed $19 fee far exceeds DOJ's reasonable costs for the proposed Basic Ammunition Eligibility Check. As DOJ has expressly stated, the process is "essentially the same" as a firearms eligibility check. And because the fee for a firearms eligibility check has consistently generated a surplus, it cannot be said the proposed fee does not exceed DOJ's "reasonable costs." Indeed, if the process is so substantially similar, the proposed fee will generate a similar surplus.

---

[15] Emphasis added.

[16] *Gentry v. Harris*, Case No. 34-2013-80001667. A copy of the Court's ruling can be viewed online at http://michellawyers.com/wp-content/uploads/2017/08/2017-08-09-Ruling-re-Mtns-for-Adjudication.pdf.

[17] 11 C.C.R. § 4001.

[18] See http://michellawyers.com/wp-content/uploads/2013/12/Gentry_Complaint-for-Declaratory-and-Injunctive-Relief-and-Petition-for-Writ-of-Mandamus.pdf

To date, DOJ has yet to perform the required reassessment of the DROS fee as ordered by the Court. But the fact remains that the proposed $19 fee clearly exceeds DOJ's reasonable costs, and for that reason exceeds DOJ's regulatory authority under the APA.

### C.  Proposed Purchaser Information to Be Collected

Subdivision (b) of proposed section 4303 concerns the required information a licensed ammunition vendor must collect from the purchaser when processing an ammunition transaction. Penal Code section 30352 expressly states what information is to be collected, which includes:

- The date of the sale or other transfer;
- The purchaser's driver's license or other identification number and the state in which it was issued;
- The brand, type, and amount of ammunition sold or otherwise transferred;
- The purchaser's full name and signature;
- The name of the salesperson who processed the sale or other transaction;
- The purchaser's full residential address and telephone number; and,
- The purchaser's date of birth.[19]

The information required under Penal Code section 30352 is exclusive and does not allow for the collection of additional information to be collected by the licensed ammunition vendor. Any information collected in addition to this information, therefore, would be in violation of Penal Code section 30352.[20] Yet DOJ's proposed regulation requires the following information to be collected in addition to the above:

- Gender;
- Hair color;
- Eye color;
- Height;
- Weight;
- United States citizenship status;
- Federal Alien Registration Number or I-94 (if applicable);
- Place of birth;
- Alias name(s); and,
- Race.[21]

---

[19] Cal. Penal Code § 30352(a)(1-7).

[20] This is due to the doctrine of statutory construction *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other). Because the legislature has specifically listed what information must be collected, without providing for any additional information to be collected by the licensed ammunition vendor, it is presumed the legislature intended only this information to be collected.

[21] 11 C.C.R. § 4303(b) (proposed).

OAL File # Z-2018-1204-08
January 31, 2019
Page **9** of **13**

Given the exclusive nature of Penal Code section 30352, the proposed regulation as written exceeds DOJ's statutory authority and is otherwise inconsistent with the statute it purports to implement. And because DOJ has expressly stated the process is "essentially the same" as a firearms eligibility check, it can only be assumed the reason for collecting a purchaser's citizenship status, federal alien registration number, and place of birth are for purposes of accessing these federal databases. As explained above, to do so for purposes of conducting an ammunition background check would violate federal law.[22]

DOJ's proposed requirement for citizenship information also violates recently enacted state laws pertaining to immigration enforcement. In 2017, the California Legislature enacted Senate Bill No. 54 ("SB 54"), prohibiting state agencies from using funds or personnel to "investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes," including "***[i]nquiring into an individual's immigration status***."[23] None of the exceptions to this restriction allow DOJ to inquire into an individual's citizenship status for purposes of conducting an ammunition background check.[24] As a result, the proposed regulation requiring additional information regarding a person's immigration status is in direct violation of existing state law, thereby exceeding DOJ's regulatory authority.

### D. Proposed ATN Numbers

Subdivision (c) of proposed section 4303 states that the ammunition vendor will provide the purchaser or transferee with an Ammunition Transaction Number ("ATN") "to monitor the status of the Basic Ammunition Eligibility Check through the Department's CFARS website. DOJ's ISOR states this subdivision is necessary "to inform an individual how to use an ATN to obtain the status for the Basic Ammunition Eligibility Check from the Department."

This subdivision, however, directly conflicts with the Penal Code it purports to implement. Specifically, subdivision (a) of Penal Code section 30370 requires DOJ to "electronically approve the purchase or transfer of ammunition through a vendor" but that "[t]his approval ***shall occur at the time of purchase or transfer***."[25] In other words, the decision on whether to approve or deny a particular transaction must be made at the time of transfer, thereby precluding DOJ from enacting any system that would delay a transaction beyond the time of purchase or transfer.[26]

---

[22] It is our understanding that DOJ is aware of this issue and has been expressly instructed by the Bureau of Alcohol, Tobacco, Firearms and Explosives and/or the Federal Bureau of Investigation that accessing the federal databases for purposes of conducting ammunition background checks is prohibited.

[23] Cal. Govt. Code § 7284.6(a)(1)(A) (emphasis added). Notably, Attorney General Xavier Becerra has publicly stated that DOJ is not in the business of deportation and should not be "doing the job of federal immigration agents." https://www.washingtonpost.com/world/national-security/california-tells-local-law-enforcement-to-follow-federal-law--but-dont-be-immigration-enforcers/2018/03/28/bee713f4-32b2-11e8-94fa-32d48460b955_story.html?utm_term=.076e8c8b4e71.

[24] See Cal. Govt. Code § 7284.6(b).

[25] Emphasis added.

[26] The legislative history of SB 1235 also makes this quite clear. For example, according to the Senate Appropriations Committee, the $25 million start-up loan issued to DOJ was to, among other

As a result, DOJ's proposed regulation issuing an ATN to a prospective purchaser for no other purpose than to monitor the status of the Basic Ammunition Eligibility Check is in direct conflict with the Penal Code section it seeks to implement and otherwise exceeds DOJ's regulatory authority.

## VI.   PROPOSED SECTION 4304 – "FIREARMS ELIGIBILITY CHECK"

Proposed section 4304 concerns the purchase of ammunition in connection with the purchase of a firearm, which as noted is already subject to an eligibility check. Subdivision (b) of proposed section 4304, however, is poorly worded in that it assumes an individual with an AFS record or Certificate of Eligibility ("COE") will automatically be approved upon paying a $1 fee for the Standard Ammunition Eligibility Check. To that end, the proposed regulation should instead simply read that if a person wants to take possession of the ammunition before the Department completes the firearms eligibility check, a Standard Ammunition Eligibility Check, Basic Ammunition Eligibility Check, or COE Verification Process must be conducted prior to the transfer of the ammunition. But DOJ needs to clarify how licensed ammunition vendors are to determine which procedure to follow for a customer.

What's more, nothing in the proposed regulation specifies how a licensed ammunition vendor is supposed to collect the required information regarding the transfer of ammunition as called for under Penal Code section 30352. As a result, DOJ needs to amend this proposed regulation to ensure consistency and clarity with existing law as required by the APA.

## VII.   PROPOSED SECTION 4305 – "COE VERIFICATION PROCESS"

Proposed section 4305 addresses the procedure for verifying a purchasers COE as an alternative to the Standard Ammunition Eligibility Check and Basic Ammunition Eligibility Check. DOJ has proposed a $1 fee for this type of check, while also proposing ammunition vendors collect the following information about the purchaser in connection with the transfer:

- Name;
- Date of birth;
- Current address; and,
- Driver license or other government identification number.[27]

As a threshold matter, the proposed regulation fails to include the required information as called for in the Penal Code. Specifically, subdivision (a) of Penal Code section 30352 requires licensed ammunition vendors to collect the following information in addition to what DOJ has proposed:

- The date of the sale or other transfer;
- The state in which the purchaser's driver's license or other identification was issued;

---

requirements, "develop the system ***enabling real-time review and approval*** of transactions at the point of sale/transfer." *SB 1235, Third Reading*, Senate Rules Committee, Office of Senate Floor Analyses at 12 (emphasis added).

[27] 11 C.C.R. § 4305(a-b) (proposed). DOJ's proposed regulation

- The brand, type, and amount of ammunition sold or otherwise transferred;
- The purchaser's signature;
- The name of the salesperson who processed the sale or transaction; and,
- The purchaser's telephone number.[28]

Because Penal Code section 30352 requires this information to be collected at the time of delivery "on a form to be prescribed the Department of Justice," DOJ needs to amend its regulation to clarify that the above information needs to be collected when transferring ammunition pursuant to the proposed COE Verification Process. Doing so will ensure consistency and clarity with existing law as required by the APA.

In addition to the above, DOJ has again chosen a fee amount of $1, stating in their ISOR that this "will contribute toward start up costs and ongoing system maintenance, including employee salaries." But that is not the appropriate standard in which to select the fee. As clearly stated in subdivision (e) of Penal Code section 30370, the fee selected by DOJ must not "exceed the reasonable regulatory and enforcement costs." What's more, DOJ has demonstrated in other respects that it can verify a person's COE without cost.[29] As a result, DOJ needs to clarify how the proposed $1 fee does not exceed the reasonable regulatory and enforcement costs in processing COE verifications as required under the Penal Code.

## VIII. PROPOSED SECTION 4306 – "AMMUNITION PURCHASES OR TRANSFERS FOR EXEMPTED INDIVIDUALS"

Proposed section 4306 lists specific types of identification that will identify an individual as exempt from the requirement that licensed ammunition vendors must first obtain DOJ approval. Specifically, proposed subdivision (a) lists the following:

- A valid FFL;
- An authorized law enforcement representative's written authorization from the head of the agency authorizing the ammunition purchase or transfer;
- A centralized list of exempted FFLs DOJ-issued certificate indicating the individual is on the centralized list of exempted FFLs;
- A sworn state, or local peace officer's credential and verifiable written certification from the head of the agency; or,
- A sword federal law enforcement officer's credential and verifiable written certification from the head of the agency.[30]

---

[28] Cal. Penal Code § 30352(a)(1-7).

[29] For example, employees of California licensed firearm dealers must generally possess a valid COE as a condition of employment. DOJ recently proposed regulations modifying the DROS Entry System ("DES") which includes a procedure for verifying a prospective employee's COE, yet there is no cost associated with this procedure. See https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/dros-text-of-regs-120718.pdf.

[30] 11 C.C.R. § 4306(a)(1-5) (proposed).

DOJ cites Penal Code section 30352 as authority for this proposed regulation. But the proposed list fails to include both licensed ammunition vendors and persons who purchase or receive ammunition at a target facility as expressly listed in Penal Code section 30352.[31]

As a result, DOJ should amend its proposed regulation to include these individuals, and what procedures a licensed ammunition vendor should follow when transferring ammunition to them in order to satisfy the consistency and clarity requirements of the APA.

## IX.   PROPOSED SECTION 4307 – "TELEPHONIC ACCESS FOR AMMUNITION VENDORS"

Proposed section 4307 addresses the required telephonic access for ammunition vendors without accessibility to an internet connection due to their location not allowing for internet service. Our primary concern with the proposed regulation, however, is the hours of operation of DOJ's telephonic system. Presumably, retail businesses such as ammunition vendors will be open outside of a typical 9-5 workday and otherwise open 7 days a week. DOJ's proposed regulation does not specify if the telephonic access system will be available during such times. For this reason, DOJ needs to clarify when the system will be operational to ensure clarity for existing ammunition retail businesses.

## X.   DOJ'S ECONOMIC IMPACT ANALYSIS IN THEIR INITIAL STATEMENT OF REASONS IS SEVERELY FLAWED AND OTHERWISE FACTUALLY INACCURATE

In addition to the text of the proposed regulations, DOJ has made several inaccurate and/or misleading claims and statements in its ISOR warranting attention.

First, DOJ estimates there will be approximately 13 million ammunition purchases or transfers conducted each year pursuant to a Standard Ammunition Eligibility Check. This estimation appears to have been calculated based on 931,037 background checks conducted in California in 2014 for firearm transactions. But the basis for this estimation is fundamentally flawed, as DOJ is referencing background checks—not actual gun sales. A single background check could incorporate more than one firearm. And using background check numbers for a single year fails to account for firearms already owned by California residents.[32] DOJ also fails to describe how it selected 40 rounds as the number of rounds in each box of ammunition. A simple web search of available ammunition yields wildly varying numbers of rounds per box, with the most common quantities either 50 or 20 rounds per box.

DOJ claims "there is no evidence that these regulations will deter ammunition sales or be a significant burden to ammunition purchases." Yet DOJ's own statements directly contradict this point. It states that "ammunition purchases are considered a leisurely activity, and oftentimes done while out shopping for other items or browsing for future purchases, which is beneficial to both parties." What's more, DOJ also states that costs are "minimal because although it takes time for the Department to process an ammunition eligibility check, ammunition purchasers will be shopping for other products in the store, allowing the ammunition vendor to sell more items to the public." Notwithstanding the fact

---

[31] See Cal. Penal Code §§ 30352(e)(1), 30352(e)(3).

[32] Indeed, perhaps a better method of estimating the actual number of firearms currently owned by California residents would be to simply refer to the total number of records currently in DOJ's AFS database, some of which go as far back as the early 1900's.

that DOJ is obligated to process transactions in real-time and without any delay (contrary to DOJ's assertions), such statements make it clear that there is indeed a significant burden.

DOJ's analysis also ignores attempts by other states at implementing similar legislation. In 2013, New York enacted identical ammunition background check requirements. But before the law could be implemented, New York's Governor issued a memorandum of understanding suspending enforcement of the ammunition background check requirements. That memorandum cited "the lack of adequate technology" while also stating that the database "cannot be established and/or function in the manner originally intended at this time."[33] New York's Governor has also issued a statement that "the ammunition sales database *will not be prematurely introduced until the technology is ready and it does not create an undue burden for business owners*."[34]  To date, New York has yet to implement the ammunition sales database.

## XI.   CONCLUSION

As currently drafted, the proposed regulations are incomplete and lack key substantive provisions that would allow members of the public to easily understand them and provide meaningful opportunity to comment. They also raise serious issues as to the required authority, clarity, and consistency required under the APA. For these reasons, we respectfully request DOJ revise the proposal accordingly and address the concerns identified above.

Should you have any questions regarding this letter, please do not hesitate to contact our office at your convenience.


Sincerely,
**Michel & Associates, P.C.**

Matthew D. Cubeiro

---

[33] See https://www.nytimes.com/2015/07/11/nyregion/plan-to-require-background-checks-for-ammunition-sales-is-suspended-in-new-york.html.

[34] See https://www.syracuse.com/state/index.ssf/2015/07/cuomo_agrees_to_changes_to_ny_safe_act_regarding_ammunition_sales.html (emphasis added).

# EXHIBIT 36



SENIOR PARTNER
C. D. MICHEL*

MANAGING PARTNER
JOSHUA ROBERT DALE

SPECIAL COUNSEL
W. LEE SMITH

ASSOCIATES
ANNA M. BARVIR
SEAN A. BRADY
TIFFANY D. CHEUVRONT
MATTHEW D. CUBEIRO
ALEXANDER A. FRANK
LOS ANGELES, CA

OF COUNSEL
JOSEPH DI MONDA
SCOTT M. FRANKLIN
CLINT B. MONFORT
MICHAEL W. PRICE
TAMARA M. RIDER
LOS ANGELES, CA

*    ALSO ADMITTED IN TEXAS AND THE
     DISTRICT OF COLUMBIA

WRITER'S DIRECT CONTACT:
562-216-4465
MCUBEIRO@MICHELLAWYERS.COM

May 8, 2019

**VIA EMAIL & FAX**
Kelan Lowney
Department of Justice
P.O. Box 160487
Sacramento, CA 95816-0487
**EMAIL:** ammoregulations@doj.ca.gov; ammoregs@doj.ca.gov
**FAX: (916) 731-3387**

> **Re:    Proposed Regulations Regarding Ammunition Purchases or
> Transfers – Title 11, Division 5, Chapter 11 (OAL File No. Z-
> 2018-1204-08)**

To whom it may concern:

We write on behalf of our clients, the National Rifle Association of America ("NRA") and the California Rifle & Pistol Association, Incorporated, as well as their respective members throughout California, in opposition to the proposed regulations regarding "Ammunition Purchases or Transfers" (the "proposed regulations"), which if adopted would add sections 4300-4309 to Title 11 of the California Code of Regulations ("C.C.R.").

On January 31, 2019, our office submitted a letter of comment concerning the California Department of Justice's ("DOJ") original text of the proposed regulations.[1] That letter addressed the general requirements of California's Administrative Procedure Act ("APA") and several key deficiencies thereunder with DOJ's proposal. For the sake of brevity, those concerns will not be repeated here. Although DOJ has addressed some of our clients' concerns with this revised proposal, many substantial problems remain.

For these reasons and those discussed below, our clients still oppose the regulations as currently drafted.

---

[1] A copy of this comment letter can be viewed online at http://michellawyers.com/wp-content/uploads/2019/01/Ltr-to-DOJ-re-Ammo-Background-Check-Regs.pdf.

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 2 of 7

## I.   DOJ'S MARCH 14, 2019, STAKEHOLDERS MEETING

As an initial matter, we were recently informed that DOJ held a stakeholder's meeting on March 14, 2019, with several licensed ammunition vendors regarding the upcoming background check requirements the proposed regulations purport to implement. Among statements made by DOJ officials during this meeting, stakeholders were informed that the ammunition background check system had already been developed and was currently undergoing testing.

It is of great concern that DOJ has already created the system for which ammunition transactions will be processed beginning July 1, when *the required regulations implementing that system have yet to be formally adopted*. In this and other firearm-related rulemaking activities, our clients have repeatedly informed DOJ of one of the core tenants of the APA, namely to provide members of the public a meaningful opportunity to comment on proposed regulations. By creating a system before members of the public have been provided a meaningful opportunity to comment on regulations required to implement that system, DOJ is once again displaying its utter disregard for the rulemaking process and the public itself.

Because of this, we have little doubt DOJ will ignore the comments it receives. What's more, DOJ has taken a wholly unnecessary gamble using taxpayer funds on a system that has yet to be formally approved. DOJ owes stakeholders, members of the public, and California's Office of Administrative Law ("OAL") an explanation for this action.

### A.  DOJ's Statements to Stakeholders Regarding Out-of-State Driver's Licenses

DOJ also informed stakeholders during the March 14, 2019, meeting that the proposed system will not be able to accept out-of-state driver's licenses or IDs. If true, such a restriction would not only illegally constrain the scope of Penal Code section 28180, but would also amount to a violation of various constitutional provisions.

DOJ has stated in its Initial Statement of Reasons ("ISOR") Addendum that the information to be collected from a prospective purchaser "must be collected in the manner described in Penal Code section 28180." Penal Code section 28180 requires firearm dealers to collect a purchaser's name, date of birth, and driver's license or identification number "from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means, except as authorized."[2] But Penal Code section 28180 also states that if the magnetic strip reader is unable to obtain the required information, the firearms dealer "shall obtain a photocopy of the identification as proof of compliance."[3] And while it may be true that California's new ammunition sales restrictions require ammunition vendors to collect a purchaser's information "as described in Section 28180," the law also makes clear that out-of-state identification may be used when purchasing ammunition. See Cal. Penal Code § 30370(b) (requiring information to be collected pursuant to Penal Code section 28180); Cal. Penal Code § 30352(a)(2) (requiring the purchaser's driver's license or other identification number "*and the state in which it was issued*" to be recorded upon delivery of the ammunition).

---

[2] Cal. Penal Code § 28180(a).

[3] Cal. Penal Code § 28180(b)(2).

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 3 of 7

Regardless, denying non-California-residents their right to acquire ammunition would run afoul of multiple constitutional guarantees. The Second Amendment "implies a corresponding right to obtain the bullets necessary to use them" and a "regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose" thus violating that right. *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014). The right to travel guarantees that "a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenez v. Roe,* 502 U.S. 489, 501 (1999) (quoting U.S. Const. Art. IV, §2, cl. 1). Facially discriminatory regulations violate the Commerce Clause, regardless of whether they have a discriminatory purpose. *See United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 338 (2007). And, finally, "where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which invade or restrain them must be closely scrutinized" and be necessary to serve a compelling government interest. *City of Cleburne, Tex., v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For these reasons, DOJ needs to clarify whether out-of-state identification can be used to purchase ammunition under the proposed regulation. Failure to do so would, at minimum, constitute a lack of the clarity required of a regulation under the APA.

## B.  Additional Statements Made By DOJ to Stakeholders

Several other problematic statements made by DOJ to stakeholders during the March 14, 2019 meeting, include:

- Large retailers will have access to the system as of June 1, 2019, whereas others would only have access beginning July 1, 2019—the day the background check process is scheduled to begin.

- DOJ plans on creating training materials and a step-by-step webinar for licensed ammunition vendors regarding the ammunition background check process.

- A full-scale background check for a customer is anticipated to take anywhere from several hours to several days, whereas an AFS/COE check should take a few minutes.

- A purchaser's Driver's License must match their AFS/COE records in order to be approved for a purchase.

- A full-scale background check will only rely on a person's state records—federal databases will not be included as part of the background check process.

As stated by Government Code section 11342.600 and OAL, a "regulation" is "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."[4] Unless expressly exempted by statute, every regulation is subject to the APA's rulemaking procedures.[5]

---

[4] Cal. Gov. Code § 11342.600; See also https://www.oal.ca.gov/wp-content/uploads/sites/166/2017/05/What_Is_a_Regulation.pdf.

[5] Cal. Gov. Code § 11346.

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 4 of 7

Assuming the above statements are accurate, these amount to "regulations" within the meaning of the APA, thereby requiring DOJ to provide members of the public a meaningful opportunity to comment on them or else they are void as illegal underground regulations.[6] Yet, nowhere in the proposed regulations or their revised text does DOJ discuss access by large retailers, training materials and webinars, or the time DOJ estimates it will need to conduct the required background check.[7]

DOJ has also failed to provide any clarifying information as to what constitutes a "match" for purposes of the Standard Ammunition Eligibility Check, despite this issue being raised in our prior comment letter. It is also unclear why DOJ has simply stated that is has "exercised no discretion" as to this requirement when it has shown itself to be more than capable of adopting regulations that help clarify requirements elsewhere. In sum, to the extent DOJ intends to implement the actions described in the above statements it must at least amend the proposal to include them as part of the proposed regulations.

i.      **Use of Federal Databases**

In the ISOR Addendum, DOJ states that a purchaser's citizenship status and federal Alien Registration Number or I-94 (if applicable) are required to conduct the Basic Ammunition Eligibility Check. DOJ's basis for this assertion is that Penal Code section 30370, subdivision (c), requires DOJ to develop a procedure in which "a person who is not prohibited from purchasing or possessing ammunition may be approved." In reaching this conclusion, DOJ states that it "has determined that it would be counter to the legislative intent . . . to approve purchases of ammunition by individuals who may be prohibited from doing so under either state or federal law." DOJ nevertheless recognizes it is not permitted to use federal databases to ensure a person is not prohibited (as discussed in our prior comment letter).

But DOJ is incorrect in its assumptions for several reasons. First, DOJ makes no mention in the ISOR Addendum regarding the prohibitions under existing state laws adopted pursuant to Senate Bill No. 54 ("SB 54").[8] These provisions, clearly reflect the California legislature's intent, which has also been recognized by Attorney General Becerra himself, prohibit state agencies—***including DOJ***—from inquiring into an individual's immigration status.[9] What's

---

[6] Cal. Gov. Code § 11340.5(a) (prohibiting DOJ from enforcing any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a "regulation" under the APA unless it has been adopted as such and filed with the Secretary of State pursuant to the APA).

[7] What's more, as noted in our prior comment letter, DOJ is statutorily obligated to approve or deny the required background check "at the time of purchase or transfer." Cal. Penal Code § 30370(a). In other words, DOJ is statutorily prohibited from delaying ammunition background checks for any amount of time.

[8] These restrictions were raised in our prior comment letter, but DOJ makes no mention of them in its ISOR Addendum or revised regulations.

[9] Cal. Govt. Code § 7284.6(a)(1)(A).

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 5 of 7

more, the California Legislature's "intent" is irrelevant as applied to a voter approved initiative, which is what created the controlling law here.[10]

DOJ also argues that both the Standard Ammunition Eligibility Check and the COE Verification methods involve a check of a person's immigration status. But that is irrelevant because neither is specifically required for the purposes of lawfully acquiring ammunition in California. Individuals need only to have submitted immigration information in connection with their original COE application or firearm purchase.[11] And DOJ already administers the Armed Prohibited Person System as a means to disarm individuals who later become prohibited and revoke any previously issued COE.

In any event, DOJ prohibited from accessing federal databases for purposes of conducting ammunition background checks. It cannot simply add a layer to the background check process (i.e. referencing its Prohibited Armed Persons File) and access federal databases through other means as a way of circumventing this restriction. For these reasons, DOJ's collection and use of a person's citizenship information in connection with an ammunition background check is strictly prohibited by federal and state law and lacks the necessity, authority, and consistency required by the APA.

## II.     DOJ'S REVISED ECONOMIC AND FISCAL IMPACT STATEMENT AND PROPOSED FEES

In addition to the revised text of the proposed regulations and ISOR addendum, DOJ has also included a revised Economic and Fiscal Impact Statement that goes into additional detail concerning the expected cost and revenue of administering the required ammunition background check program. The information serves to justify DOJ's selected fees. But as discussed below, there are serious flaws with DOJ's estimations.

### A.  DOJ's Estimated Costs to Businesses Are Grossly Understated

DOJ's cost estimate for vendor staff processing time is based on California's minimum wage ($11/hour). This is an unreasonable assessment given that COEs are required for every vendor employee and the required training for such employees. Using minimum wage also ignores management level positions necessary to oversee employees and assumes a two-minute processing time for each transaction. Given the oversight necessary to ensure compliance with California law (which can result in license revocation and potential criminal penalties for any

---

[10] Although it is true that Senate Bill No. 1235 was adopted in connection with Proposition 63, Proposition 63 controls and is the actual source for these requirements. See also *In re Espinoza*, 192 Cal.App. 4th 97 (4th Dist. 2011) (prohibiting state agencies from offering an interpretation that cannot be "construed in context of the nature and obvious purpose . . . that does not harmoniz[e] [with] all [the] provisions relating to the subject matter").

[11] To further illustrate this point, the COE application does not even contemplate ammunition purchases as a reason for seeking a COE, as the application and COE requirements have long been in place well before the adoption of the ammunition sales restrictions. See *BOF 4008 (Rev. 10/2014): Certificate of Eligibility Application*, California Department of Justice, Bureau of Firearms, https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/coeapp.pdf (Oct. 2014).

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 6 of 7

violation), it is wholly unreasonable for DOJ to assume costs based on California's minimum wage and such a short time estimation for each transaction, not to mention the cost of legal counsel to guide vendors through compliance.

This gross understatement is further illustrated when compared to DOJ's salaries for the "59 new positions" that are responsible for processing ammunition transactions on DOJ's end. These salaries total $5,839,347 in the first year (an average of $98,971 per employee), and $4,515,371 for every year thereafter (an average of $76,531 per employee). Even assuming the national standard of 2,087 hours per year, this amounts to approximately $36 per hour at least per DOJ employee tasked with processing ammunition transactions—excluding any additional costs such as training. For DOJ to assume a minimum wage employee will be responsible for administering a vendor's program, when DOJ's own employees earn more than double that, raises serious questions as to its projected costs to businesses.

For these reasons, DOJ needs to revise its Economic and Fiscal Impact Statement to better account for ammunition vendor wages and related costs.

### B. DOJ's Proposed Fees Exceed Its Reasonable Cost of Regulatory and Enforcement Activities

DOJ states that the proposed fees of $1 for Standard Ammunition Background Checks and COE Verifications are "necessary to recover the reasonable costs of regulatory and enforcement activities." Yet, DOJ also states that it intends to "build a reserve for economic uncertainties." Not only is such a reserve contrary to both the express limitations of the Penal Code and the California Constitution,[12] but DOJ provides no information as to how much of a reserve it intends to maintain.

For the first year the system is scheduled to launch, DOJ has estimated it will incur $12,844,697 in expenses while taking in $14,104,000 in revenue. And in fiscal years thereafter, DOJ estimates an average of $9,886,506 in expenses while taking in the same amount of revenue. The reasons for the initial costs in the first year "include personal services, operating expenses and equipment, system enhancements, infrastructure, and other costs."

***Taking DOJ's estimates at face value, the proposed fees exceed 9% of its costs in the first fiscal year and nearly 30% of its overall costs in the years thereafter.***

As stated in Penal Code section 30370, DOJ is only authorized to "recover the reasonable cost of regulatory and enforcement activities," and is only authorized to charge a fee that ***cannot exceed*** those costs.[13] In other words, DOJ is not authorized to charge a fee that would allow it to

---

[12] *See* Cal. Const. art. XIIIA, § 3(a)(1), (d) (when charging a fee, an agency must show "that the amount is no more than necessary to cover the reasonable costs of the governmental activity[.]")
[13] Cal. Penal Code § 30370(e); See also Cal. Penal Code § 30370(c) (allowing DOJ to "recover the cost of processing and regulatory and enforcement activities" related to the full-scale background check procedure which cannot "exceed the fee charged for [DOJ's] Dealers' Record of Sale (DROS) process").

Proposed Regulations Regarding Ammunition Purchases or Transfers
May 8, 2019
Page 7 of 7

"build a reserve" and then adjust the fee at a later date. But DOJ's proposed fee does just that, and therefore violates the necessity, authority, and consistency requirements of the APA, as well as the California Constitution.

### III.     REVISED SECTION 4306 – EXEMPTED INDIVIDUALS

DOJ has revised the list of individuals it considers exempt from DOJ approval to purchase or transfer ammunition. In the revised text, DOJ states that these individuals are exempt "pursuant to Penal Code section 30352, subdivision (e)." But there is a fundamental problem with this statement. Penal Code section 30352, subdivision (e) *only* exempts those listed individuals *as applied to subdivisions (a) and (d) of Penal Code section 30352*. It does not provide an exception to the requirements of Penal Code section 30370, a wholly separate Penal Code provision which ammunition vendors must abide by when processing ammunition transactions. While we recognize this as an oversight on the part of the author of the law, DOJ is nevertheless prohibited under the APA from expanding the exception to apply to both provisions absent further legislation.

### IV.     CONCLUSION

DOJ states that it would be "unduly burdensome" and "unnecessarily expensive" to develop and use a system separate from California's Dealer Record of Sale ("DROS") Entry System ("DES"). Yet DOJ was given a loan of $25 million from the California Legislature for this express purpose, which appears to have not even been utilized.[14] Coupled with the serious issues concerning the required authority, clarity, and consistency under the APA, and the fact that DOJ has prematurely developed the system which these regulations are purportedly designed to implement, our clients respectfully request DOJ revise the proposal accordingly. Should DOJ refuse to do so, our clients are prepared to take any action available under the law to compel DOJ's compliance, including litigation.

Should you have any questions regarding this letter or its contents, please do not hesitate to contact our office at your convenience.

Sincerely,
**Michel & Associates, P.C.**

Matthew D. Cubeiro

---

[14] As noted in DOJ's Revised Economic and Fiscal Impact Statement, DOJ estimates it will incur $12,844,697 in expenses for the first fiscal and $9,886,506 in expenses every year thereafter. The larger first year expenses are due to initial program costs which, presumably, include the creation of the new system. In other words, DOJ has only spent $2,958,191 of the initial $25 million start-up loan it received from the California legislature. What's more, these costs are being incurred during the first fiscal year in which DOJ expects to earn revenue from the new system, raising a question as to why the initial loan was even necessary.

# EXHIBIT 37



SENIOR PARTNER
C. D. Michel*

MANAGING PARTNER
Joshua Robert Dale

SPECIAL COUNSEL
W. Lee Smith

ASSOCIATES
Anna M. Barvir
Sean A. Brady
Tiffany D. Cheuvront
Matthew D. Cubeiro
Alexander A. Frank
Los Angeles, CA

OF COUNSEL
Joseph Di Monda
Scott M. Franklin
Clint B. Monfort
Michael W. Price
Tamara M. Rider
Los Angeles, CA

\*   Also admitted in Texas and the
     District of Columbia

WRITER'S DIRECT CONTACT:
562-216-4465
MCubeiro@michellawyers.com

June 20, 2019

**VIA E-MAIL**

Department of Justice                         Office of Administrative Law
Bureau of Firearms                            300 Capitol Mall, Suite 1250
Attn: Jacqueline Dosch                        Sacramento, CA 95814
P.O. Box 160487                               staff@oal.ca.gov
Sacramento, CA 95816
Emergencyregs@doj.ca.gov

> Re:   **Proposed Emergency Regulations Regarding Identification
>        Requirements for Firearms and Ammunition Eligibility
>        Checks – Title 11, Division 5, Chapter 4.**

To whom it may concern:

We write on behalf of our clients, the National Rifle Association of America and the
California Rifle & Pistol Association, Incorporated, as well as their respective members and
clients throughout California and the United States, in opposition to the California Department of
Justice's ("DOJ") proposed emergency regulations regarding "Identification Requirements for
Firearms and Ammunition Eligibility Checks – Title 11, Division 5, Chapter 4."[1] If adopted, the
proposed regulations would generally require federally compliant identification cards ("IDs") for
all firearm and ammunition transactions that require an eligibility check.

For the following reasons, the Office of Administrative Law ("OAL") should reject the
proposed emergency regulations and require DOJ to follow the standard rulemaking process:

1. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") has expressly
   stated that federally compliant ID's are not required to satisfy federal background check
   laws when purchasing a firearm or ammunition;

---

[1] The proposed emergency regulations were noticed to the public on or about June 10, 2019. A
copy of the posted notice can be viewed online at
https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/id-fa-ammo-notice-proposed-
emergency-061019.pdf?. Documents relating to the proposed emergency rulemaking can also be
viewed online at https://oag.ca.gov/firearms/regs.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 2 of 11

2. California statutes concerning ID requirements for firearm and ammunition transactions are in direct conflict with DOJ's proposed "emergency" regulations;

3. Federal laws concerning ID requirements for firearm transactions specifically contemplate the use of federal non-compliant IDs for legitimate firearm transactions;

4. No "emergency" exists, and DOJ's findings are otherwise insufficient and based on speculation;

5. DOJ's proposed "emergency" regulations would impose significant financial and time-related costs for businesses and individuals alike, costs which DOJ completely fails to address in its Economic and Fiscal Impact Statement; and,

6. DOJ's proposed "emergency" regulations significantly impact other pending regulatory matters which, when combined, raise serious inconsistency concerns.

Both the content and timing of DOJ's proposed "emergency" regulations are highly suspect. Our clients are gravely concerned with this latest in a series of attempts by DOJ's to circumvent the notice and hearing requirements of California's Administrative Procedure Act ("APA") at a time when California licensed firearm dealers and retailers are already facing substantial changes to their business in connection with other pending regulations from DOJ regarding ammunition purchases and transfers.[2]

As explained below, no emergency exists justifying the proposed regulations being submitted on an "emergency" basis under the APA. Indeed, BATFE has expressly stated that federally compliant IDs are not necessary for purposes of firearm and ammunition eligibility checks. Coupled with other pending significant changes to ammunition transactions scheduled to take effect on July 1, 2019, the shortened notice and comment period DOJ seeks will only lead to hardship for thousands of lawful California businesses and California residents.

I.    THE REAL ID ACT OF 2005 AND BAFTE POLICIES CONCERNING THE USE OF FEDERAL NON-COMPLIANT IDS FOR FIREARM TRANSACTIONS

In 2005, Congress enacted the REAL ID Act which, among other provisions, requires federally compliant IDs ("REAL ID") to board any airplane, enter any military base, or enter any federal facility as of October 1, 2020.[3] But it was originally unclear if such IDs would also be necessary when purchasing a firearm. BATFE ultimately clarified this ambiguity in 2012 by stating such IDs would not be required for firearm-related transactions.[4]

---

[2] See OAL File No. 2019-0517-07, "Ammunition Purchases or Transfers," currently scheduled for a decision from OAL by July 1, 2019.

[3] H.R. 418, 109th Cong.

[4] *FFL Newsletter: Federal Firearms Licensee Information Service*, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-may-2012/download (May 2012).

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 3 of 11

  The following year, California enacted Assembly Bill No. 60 ("AB 60"), which required DMV to issue IDs to individuals who could not provide proof of their lawful presence in the United States.[5] Shortly after the adoption of AB 60, BATFE issued an open letter clarifying its position, stating that AB 60 type IDs could not be used to purchase a firearm.



*Example of a REAL ID (left), versus a non-REAL ID (right).*[6]

  Initially, BATFE's restriction had no effect on lawful California residents' ability to purchase a firearm because, presumably, they were not issued an AB 60 license. But in January 2018, DMV began issuing federal non-compliant IDs with the same "FEDERAL LIMITS APPLY" language printed on the front of the license to lawful residents of California. As a result, any lawful resident issued a federal non-compliant ID was, pursuant to BATFE's policy, prohibited from purchasing a firearm or ammunition despite the person's lawful presence in the United States.

---

[5] Such IDs have the notation "FEDERAL LIMITS APPLY" printed on the front. As applied to firearm transactions, federal law generally prohibits individuals who are not lawful residents from purchasing or possessing any firearm or ammunition. See, e.g., 18 U.S.C. § 922(d)(5). Licensed firearm dealers "must establish the identity, place of residence, and age of the transferee/buyer," who must also "provide a valid government-issued photo identification document to the transferor/seller that contains the transferee's/buyer's name, residence address, and date of birth." See *ATF E-Form 4473 (5300.0)*, https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (Oct. 2016).

[6] See also https://www.dmv.ca.gov/portal/dmv/detail/realid.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 4 of 11

After the issue was brought to BATFE's attention, BATFE de-published its previously stated position, replacing it with a new letter which stated California licensed firearm dealers:

> *may accept . . . licenses/identification documents that meet the definition in 18 U.S.C. 1028(d) in fulfilling their requirements under 18 U.S.C. 922(t)(1)(C) and 27 CFR 478.124(c)(3)(i). However, licensees may consider asking for additional documentation (e.g. passport) so that the transfer is not further delayed.[7]*

BATFE's policy revision effectively meant California residents who were issued federally non-compliant IDs by DMV could continue to lawfully exercise their rights and use their ID when purchasing a firearm, even if the ID states "FEDERAL LIMITS APPLY" on the front. This position was later echoed by DOJ, who stated:

> *Going forward, [DOJ] will inform interested parties that any valid California driver's license or identification card may be used as "clear evidence of the person's identity and age," including REAL ID and "FEDERAL LIMITS APPLY" versions.[8]*

**Both BATFE's updated policy and DOJ's statement were made in early 2018, _well over a year ago_**. Yet now DOJ is claiming an "emergency" exists to reverse that policy. While DOJ does mention recent changes to California law pursuant to Senate Bill 244 ("SB 244") (effective January 1, 2019), SB 244 did not change the fact that AB 60 licenses are otherwise indistinguishable from a federal non-compliant ID issued by DMV. In fact, the "guidance" issued by DOJ to California firearm dealers following the adoption of SB 244 was essentially the same as that mentioned above following BATFE's updated policy.

## II.   CALIFORNIA'S EXISTING LAWS CONCERNING "CLEAR EVIDENCE OF THE PERSON'S IDENTITY AND AGE" AND "BONE FIDE EVIDENCE OF IDENTITY" ARE IN DIRECT CONFLICT WITH DOJ'S PROPOSED "EMERGENCY" REGULATIONS

When purchasing a firearm in California, purchasers must present "clear evidence of the person's identity and age" to a California licensed firearms dealer.[9] California law defines the term "clear evidence of the person's identity and age" as either:

1) A "valid California driver's license;" or,

2) A "valid California identification card issued by the Department of Motor Vehicles."[10]

---

[7] See http://michellawyers.com/wp-content/uploads/2019/06/Email-from-ATF-re-Purchase-of-Firearms-Using-CA-Drivers-Licenses-or-ID-Cards.pdf.

[8] See http://michellawyers.com/wp-content/uploads/2019/06/DOJ-Letter-re-Purchase-of-Firearms-Using-CA-Drivers-Licenses-or-ID-Cards-Red.pdf.

[9] Cal. Penal Code § 26815(c).

[10] Cal. Penal Code § 16400.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 5 of 11

As applied to ammunition transactions, California law simply requires individuals to provide their "driver's license or other identification number and the state in which it was issued," or, in the case of a person meeting an exception to the ammunition transfer requirements, "bona fide evidence of identity."[11] As defined under California law, "bona fide evidence of identity" is "a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license, state identification card, identification card issued to a member of the armed forces, or other form of identification that bears the name, date of birth, description, and picture of the person."[12]

Neither firearm nor ammunition transactions, therefore, require individuals to provide federally compliant IDs or any supplemental documentation demonstrating a person's lawful presence in the United States under California law. A driver's license or ID issued by DMV, regardless if issued pursuant to AB 60, is still a "valid" ID within the meaning of California law as applied to firearm transactions. Likewise, a federal non-compliant ID sufficiently provides a person's name, date of birth, description, and picture as required for ammunition transactions.[13] What's more, having been aware of the issues concerning federal non-compliant IDs for over a year, DOJ failed to include any proposed regulatory changes requiring federally compliant IDs in their proposed regulations regarding "Ammunition Purchases or Transfers" which are currently pending before OAL.[14]

III. **FEDERAL ID REQUIREMENTS SPECIFICALLY CONTEMPLATE THE USE OF FEDERAL NON-COMPLIANT IDS FOR FIREARM AND AMMUNITION TRANSACTIONS**

Under federal law, firearm purchasers must provide a "valid identification document" containing a photograph of the purchaser.[15] Such documents must be "made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, *a foreign government, political subdivision of a foreign government, an international government or and international quasi-governmental organization* which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals."[16]

Federal regulations also require licensed firearm dealers to "verify the identity of the transferee by examining the identification document."[17] As defined under federal regulations, such documents must contain "the name, residence address, date of birth, and photograph of the holder and which was made or issued by or under the authority of the United States Government,

---

[11] See Cal. Penal Code §§ 30352(a)(2), 30352(c), 30352(e)(8)(B)(ii).

[12] Cal. Penal Code § 16300.

[13] See Cal. Penal Code § 16300.

[14] See OAL File No. 2019-0517-07.

[15] 18 U.S.C. § 922(t)(1)(C).

[16] 18 U.S.C. § 1028(d)(3) (emphasis added).

[17] 27 C.F.R. § 478.124(c)(3)(i).

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 6 of 11

a State, a political subdivision of a State, ***a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization*** which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals."[18]

This shows that federal law specifically contemplates the use of federal non-compliant IDs for purposes of firearm transactions, ***including IDs issued by foreign governments***. And for good reason. There are several exceptions to the federal restrictions against non-U.S. citizens acquiring or possessing firearms. Such exceptions include aliens who have been lawfully admitted to the United States under a nonimmigrant visa who have either: 1) Been admitted to the United States for lawful hunting or sporting purposes; or, 2) Are in possession of a hunting license or permit lawfully issued in the United States.[19] Such individuals are incapable of obtaining a federally compliant REAL ID by nature of their immigration status, yet are ***not*** also prohibited under federal law from acquiring or possessing firearms.

## IV.   DOJ'S CLAIM OF "EMERGENCY" IS A DIRECT RESULT OF ITS OWN POLICY AGENDA REGARDING IMMIGRATION, AND ITS FINDINGS FAIL TO ADEQUATELY DEMONSTRATE THE EXISTENCE OF AN EMERGENCY

An "emergency" in the context of the APA is a situation that calls for immediate action to avoid serious harm to the public peace, health, safety, or general welfare.[20] Unless a situation is expressly deemed by statute as an emergency, state agencies must make a finding of emergency by describing specific facts supported by substantial evidence that demonstrate the existence of an emergency and the need for immediate adoption of the proposed regulation. But if the emergency existed and was known by the agency with sufficient time to have been addressed through nonemergency regulations, the finding of emergency must also include facts explaining the failure to address the situation. Findings based only upon expediency, convenience, best interest, general public need, or speculation, are not adequate to demonstrate the existence of an emergency under the APA. [21]

As a threshold matter, DOJ has been aware of this issue long enough to have sought adoption of regulations using the regular rulemaking process. One of the key points DOJ raises in its "Finding of Emergency" is the adoption of SB 244 by the California Legislature in 2018.[22]

---

[18] 27 C.F.R. § 478.11 (emphasis added).

[19] 18 U.S.C. § 922(y)(2)(A).

[20] Gov't Code § 11342.545.

[21] Gov't Code § 11346.1(b)(2).

[22] See https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/id-fa-ammo-finding-emergency.pdf; See also Senate Bill No. 244 (2017-2018 Reg. Sess.) https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201720180SB244. DOJ also references a "California Special Alert" our clients presented to their members concerning the use of non-REAL IDs for firearm purchases. But DOJ fails to note that this alert is outdated and has been replaced with more recent information. The most recent information can be found online at https://crpa.org/news/crpa/information-bulletin-real-ids-non-real-ids-and-ab-60-type-licenses-

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 7 of 11

DOJ states that SB 244, as well as other recently adopted California laws regarding driver's licenses and identification cards, have caused "significant changes . . . governing their use as evidence of citizenship or immigration status."[23] These changes, according to DOJ, "have affected the eligibility check process and have left firearm dealers and ammunition vendors, as well as law enforcement agencies, unable to rely on federal non-compliant licenses."[24] But DOJ was clearly aware of the adoption of SB 244 and its effect, and still waited nearly six months after it took effect to propose their "emergency" regulations.

What is not stated by DOJ is that it failed to mention any of these concerns to the California Legislature while SB 244 and other related bills were being considered. In fact, California's Attorney General has often expressed support for California's efforts in these regards.[25] As a result, DOJ's claimed "emergency" is of its own making. DOJ could have raised its concerns at any point during the legislative process for the bills it mentions—yet it chose not to do so in favor of supporting its unrelated immigration agenda. What's more, DOJ's findings amount to nothing more than a general public need or speculation, as demonstrated by the fact that it has not described a single instance where a prohibited person was able to obtain firearms or ammunition as a result of these issues. DOJ's findings are therefore not adequate to demonstrate the existence of an emergency as required by the APA.

## V.   DOJ's Proposed "Emergency" Regulations Will Result In Significant Time and Monetary Costs for Licensed Businesses and Their Customers

DOJ's "Estimated Private Sector Cost Impacts" information provided in its Economic and Fiscal Impact Statement grossly mischaracterizes the impact these proposed regulations will have on lawful private businesses. DOJ states that no businesses or jobs are affected because the proposal only "specif[ies] the documentation used to identify yourself when submitting a form or

---

for-purchasing-a-firearm/. As you can see, this information was distributed in October 2018, **nearly seven months after the alert referenced by DOJ**. At the very least, DOJ's reference to outdated information highlights the lack of a true emergency, for DOJ appears to have itself relied on information provided by our client as a basis for its claim.

[23] https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/id-fa-ammo-finding-emergency.pdf?.

[24] *Id.*

[25] See, e.g., presentation by Jonathan Blazer, Special Assistant to the Attorney General, California Department of Justice, http://www.cpcaannualconference.com/uploads/8/1/4/9/81491828/bs3a_-_impact_of_immigration_policies_on_health_centers_-_2slides.pdf (Oct. 2017) (noting DOJ's "Overall commitment" to "Protect and Advance the Rights and Safety of all Californians – Including Immigrants" while also "Defend[ing] the Ability of Law Enforcement and other State/Local Agencies to Focus on Core Missions (Public health and *Safety*)" (emphasis added)). What's more, DOJ issued a press release as early as 2014 concerning licenses issued pursuant to AB 60, illustrating just how long DOJ has been aware of such licenses. See https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-issues-consumer-alert-driver-license-scams.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 8 of 11

application that is already in regulation." But all California licensed firearm dealer and licensed ammunition vendors employees must possess a valid Certificate of Eligibility ("COE") which must be renewed annually.[26] Yet DOJ makes no mention of the potential impacts on the thousands of business owners and employees who may have difficulty in renewing the required licenses as a result of the proposed regulations. In fact, many younger employees of firearm businesses could find themselves out of work should they be unable to obtain the required documentation in time for the required annual renewal of their COE.

DOJ also fails to mention any of the related costs associated with obtaining the required documentation. As discussed in greater detail below, there are significant time and monetary expenses involved in obtaining the required forms of identification and/or supplemental documentation. Nowhere in DOJ's Economic and Fiscal Impact Statement are these mentioned or even alluded to.

What's more, DOJ makes no mention of the potential lost revenue to businesses should their customers not have the required documentation at hand when attempting to purchase a firearm or ammunition, let alone the additional time it may take to process a transaction. DOJ's failure to address these concerns should be cause enough for OAL to disapprove of the proposed "emergency" regulations.

### a. Obtaining a REAL ID in California

To obtain a REAL ID in California, individuals must present an original or certified copy of an appropriate "Identity Document," a certified legal document supporting a name change (if applicable), proof of Social Security Number (photocopies are not accepted), and at least two different documents establishing proof of California residency.[27] The required "Identity Document" can include a U.S passport or U.S. birth certificate, as well as other types of identification. Application fees for a REAL ID are $36 for a driver's license and $31 for an identification card, with an unspecified processing time.[28]

While it is true some California gun owners have already obtained a REAL ID, many of those IDs are in fact federally non-compliant as a result of DMV's failure to properly implement the REAL ID program. As stated on DMV's website, DMV "followed the process" of Wisconsin, but several months later was informed by the federal government that those processes were inadequate.[29] DOJ's proposed "emergency" regulations, however, make no mention of this issue—*let alone how a California licensed firearms dealer will be able to distinguish between*

---

[26] See, generally, https://oag.ca.gov/firearms/cert-eligibility. See also 11 C.C.R. § 4045.1(d)(1) (apply DOJ's proposed "emergency" regulations to "Certificate of Eligibility applications, pursuant to Penal Code section 26710").

[27] See https://www.dmv.ca.gov/portal/wcm/connect/2db22455-e270-47a3-819c-d7c7716d5194/List_of_Docs_REALID.pdf?MOD=AJPERES&CVID=.

[28] https://www.dmv.ca.gov/portal/dmv/detail/realid.

[29] See https://www.dmv.ca.gov/portal/dmv/detail/realid/residencyfaqs (last visited June 19, 2019).

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 9 of 11

*a REAL ID that is federally compliant and a REAL ID that was issued prior to DMV
amending its application process to be federally compliant*.

### b. Required "Identity Document" for REAL IDs and DOJ's Proposed "Emergency" Regulations as Both Applied to U.S. Citizens

Although DOJ's proposed "emergency" regulations list several alternative documents that can be provided in support of a federally non-compliant ID, only some of these can be obtained by a U.S. citizen.[30] The same is true for the required "Identity Document" when applying for a REAL ID. A foreign passport with a valid U.S. immigrant visa, for example, would not be available to U.S. citizens by nature of their citizenship. This generally leaves the option of obtaining a U.S. passport or certified copy of a U.S. birth certificate, which can be both costly and time consuming.

To obtain a U.S. Passport, initial applicants must provide "primary evidence of U.S. citizenship," which for U.S. born individuals can only be a U.S. birth certificate.[31] Absent any expedited processing costs, initial applicants must also pay at least $145 in fees, $110 of which is non-refundable whether or not the passport is issued. It will also take anywhere between 6-8 weeks to process the application. Expedited processing is available, but at a cost of $60 in addition to the $145 fee.[32] And should the individual be unable to provide a birth certificate, a file search will be necessary, requiring an additional $150 fee.[33]

Obtaining a certified copy of a U.S. birth certificate can be equally time consuming, depending on the person. Consider, for example, a California adult resident who was adopted at a young age from a different state. Not only may this person not know for certain his or her county or city of birth, but he or she may not also know the name of their biological parents—information that is often required when seeking a certified copy of a birth certificate.[34] While lacking this information may not ultimately prohibit the individual from obtaining a certified copy of their birth certificate, it will most certainly delay the application. Setting aside those delays, some states take up to 22 weeks to process applications and charge up to $34 in standard processing fees (with up to an additional $46 for "expedited" processing).[35]

---

[30] See 11 C.C.R. § 4045.1(b) (proposed).

[31] See https://travel.state.gov/content/travel/en/passports/requirements/citizenship-evidence.html.

[32] See https://travel.state.gov/content/dam/passports/forms-fees/Passport%20Fees%20Chart_TSG.pdf.

[33] Id. It should also be noted that individuals must provide a 2" x 2" color photo taken within the past six months, necessitating the individual possess the equipment to do so or pay an additional fee to have the photo taken (usually $15 if taken at a U.S. Post Office).

[34] See, e.g., Vital Records "Certified Copy of Birth" application, available online at https://www.vitalrecordsonline.com/birth-certificate/application.

[35] See https://www.vitalrecordsonline.com/state-fees-vital-records.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 10 of 11

*In sum, expediting a U.S. Passport application for a person who also lacks a birth certificate will require over $355 in fees, at minimum, just to be able to satisfy DOJ's proposed emergency regulations when purchasing a firearm or ammunition in California. And the least-costly alternative (obtaining a certified copy of a birth certificate) can take up to 22 weeks depending on the person's place of birth.*

But the person's difficulties may not end here. Should the person's name appear differently on his or her federal non-compliant ID (or the chosen "Identity Document" when applying for a REAL ID), the individual will also be required to provide an additional certified document. Such documents include adoption paperwork or a marriage certificate. Obtaining any of these documents are likely to require a fee and additional processing time in addition to the above.[36]

## VI.   EFFECT OF DOJ's PROPOSED "EMERGENCY" REGULATIONS ON OTHER PENDING REGULATORY ACTIONS (AMMUNITION PURCHASES OR TRANSFERS)

Finally, the effect DOJ's proposed "emergency" regulations have on a currently pending regulatory proposal should be considered. As noted above, OAL is currently reviewing a standard rulemaking proposal from DOJ concerning "Ammunition Purchases or Transfers."[37] At the time of drafting this letter, OAL is still reviewing this proposal and is scheduled to issue a decision by July 1, 2019. Significant portions of this pending proposal address the required identification and background check requirements regarding ammunition transactions. DOJ's proposed "emergency" regulations, therefore, should be considered in connection with the pending ammunition transaction proposal.

For example, in "Attachment A" to DOJ's Economic and Fiscal Impact Statement for the related ammunition transactions proposal, DOJ states that it "estimates that it will take approximately two minutes to process a Standard Ammunition Eligibility Check or Certificate of Eligibility (COE) verification, so the direct costs for an ammunition vendor can be derived from taking the approximate two-minute processing time and multiplying it by the 13 million transactions while valuing ammunition vendor staff time at $11 per hour."[38] Yet nowhere in this estimation does DOJ appear to consider the time it will take for vendors to verify the person's federally-compliant ID or any of the related documentation that may be necessary should the proposed "emergency" regulations be enacted. Nor does the proposal consider any of the costs or times associated with obtaining the necessary ID or related documents.

In sum, DOJ's Economic and Fiscal Impact Statement for the proposed regulations regarding ammunition transactions previously submitted to OAL is erroneous or, at best, incomplete, and should not be considered absent further clarification from DOJ that these issues were considered. Even then, the question remains why DOJ's Economic and Fiscal Impact

---

[36] See, e.g., https://www.vitalrecordsonline.com/state-fees-vital-records (listing fees for marriage certificates and processing times up to 22 weeks for standard processing).

[37] OAL File No. 2019-0517-07.

[38] https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/ammo-std399-15day-041819.pdf?.

Proposed Emergency Regulations Regarding ID Requirements
June 20, 2019
Page 11 of 11

Statement for the proposed "emergency" regulations at issue are silent on the matter. As a result, should DOJ wish to have its "emergency" regulations adopted, consistency and fairness demands that DOJ revise its related ammunition transaction proposal accordingly.

**VII.  CONCLUSION**

Only in the most urgent circumstances should a state agency be permitted to circumvent the strict procedural requirements of the APA through the emergency rulemaking process. As illustrated above, no such emergency exists here. What's more, any issues are a direct result of the California Legislature and Attorney General's policy agenda relating to immigration. Given the express guidance from BATFE allowing the use of non-REAL IDs for firearm-related transactions, as well as the many significant problems this proposal creates for existing laws and other pending regulations, it is wholly improper for DOJ to mandate their use via regulation.

Should you have any questions concerning the contents of this letter, please do not hesitate to contact our office.

Sincerely,
**Michel & Associates, P.C.**

Matthew D. Cubeiro

# CERTIFICATE OF SERVICE
## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Becerra*
Case No.: 3:18-cv-00802-JM-JMA

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

## DECLARATION OF SEAN A. BRADY

on the following parties by electronically filing the foregoing on July 22, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Nelson R. Richards                          *Attorneys for Defendant Attorney General*
Deputy Attorney General                  *Xavier Becerra*
nelson.richards@doj.ca.gov
2550 Mariposa Mall, Room 5090
Fresno, CA 93721

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 22, 2019, at Long Beach, CA.

*s/ Laura Palmerin*
Laura Palmerin

CERTIFICATE OF SERVICE

18cv802