C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| KIM RHODE, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>                Defendant. | Case No.: 3:18-cv-00802-BEN-JLB<br><br>**DECLARATION OF CHRISTINA MCNAB**<br><br>Hearing Date:   August 19, 2019<br>Hearing Time:   10:30 a.m.<br>Courtroom:   5A<br>Judge:   Hon. Roger T. Benitez |

# DECLARATION OF CHRISTINA MCNAB

1. I, Christina McNab, make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I am the owner of LAX Ammunition OC, a small family-operated licensed ammunition vendor located in Huntington Beach, California. With the help of my husband, I opened my doors August 2017 and hired a small team of one active and one former military veteran to help operate the store. My customers are law-abiding citizens: blue & white collar men and women, entrepreneurs, law enforcement, first-responders, CEOs, firearms instructors, active/retired military and families, who come to buy ammunition for recreational shooting, hunting, home defense, and firearms classes. Prior to the enforcement of Proposition 63, my store regularly averaged 30 customers per day and up to 100-300 visits per day during weekends or sales events. On average days, one employee could manage the store, and on higher-volume days, I would ask for "all hands on deck," and retain both my employees and the help of my husband to better service our customers. Since the adoption of Proposition 63, my business has suffered a series of logistical, financial, moral, and administrative dilemmas that I fear if allowed to continue, will force me to shut my doors, lose my means of supporting my family, and leave two employees without jobs that they love and rely on to support their own families. I also know the Second Amendment community will lose a valuable resource for exercising their rights and enjoying their sport.

3. Following the adoption of Proposition 63 and Senate Bill No. 1235 in 2016, our business was required to obtain a license issued by the California Department of Justice ("DOJ") to lawfully sell ammunition in California after January 1, 2018. But DOJ failed to adopt the regulations necessary for the issuance of this license prior to the January 1, 2018, deadline. Although our business was later issued a license following the adoption of the necessary regulations, we were forced to operate without the license for a

brief period. DOJ never provided our business with any official guidance during this period despite our repeated requests.

4. On July 1, 2019, new requirements regarding the sale or transfer of ammunition by licensed vendors took effect. Pursuant to these requirements, our business must now use DOJ's Dealer Record of Sale ("DROS") Entry System ("DES") to process all ammunition transactions. DES is the same system used by California licensed firearm dealers to process firearm transfers in California.

5. Prior to the implementation of the new July 1, 2019, sales restrictions, the only guidance on how to process ammunition transactions using DES was provided to us by DOJ on June 28, 2019, three days before the new sales restrictions were scheduled to take effect. However, our business was not provided full access to DES until the morning of July 1, 2019, the same day the new sales restrictions took effect.

6. In preparation for the new restrictions taking effect July 1, 2019, I reviewed DOJ's proposed regulations regarding the sale or transfer of ammunition and proposed "emergency" regulations requiring federally compliant IDs for all firearm and ammunition transactions. I was unable to review the text of these regulations as they had not been made available to me with enough time to review them prior to the July 1, 2019, implementation date.

7. Upon logging in to DES the morning of July 1, 2019, DOJ's system prompted us to review dozens of DOJ "Information Bulletins" regarding DES. There were approximately 65 bulletins in total, each numbering anywhere from 5-7 pages in length, totaling over 400 pages of material. DES would not allow our business to process any ammunition transactions until we first acknowledged that we had read and understood all these materials. Neither DOJ's guide nor its recently adopted regulations had given us prior warning of this requirement.

8. Once able to access DES, we then attempted to provide access to our employees. Initially, we were unable to provide this access because DES was requesting our "CFD" number. Nothing in the DES guide or DOJ's regulations explained what this

was. Only after conducting an online internet search did we then recognize this "CFD" number as a "California Firearms Dealer" number. But because we are not a California licensed firearms dealer, we had not been provided with a CFD number by DOJ. After several failed attempts, we were finally able to allow our employees access to DES by submitting our Ammunition Vendor License number.

9. Accessing and processing ammunition transactions through DES requires a computer, internet connection, web browser, Adobe Acrobat Reader, a magnetic strip reader that meets California Department of Motor Vehicles ("DMV") specifications, printer, paper, and printer ink, among other items. That these things would be necessary was only made clear to us in the transaction guide provided to us by DOJ on June 28, 2019, less than 3 days before the new sales restrictions took effect.

10. After reviewing all required "Information Bulletins," our business was then able to begin processing ammunition transactions through DES. Our first attempts to process transactions, however, resulted in several errors when attempting to populate the required form fields to process transactions. Among such errors were the name and address of the purchaser being transposed after swiping the purchaser's California Driver's License or ID, requiring a manual correction. DOJ's regulations and the DES guide require our business to populate DES with the purchaser's Driver's License or ID by swiping it through a magnetic strip reader and clicking "Populate Fields" in DES. The only exceptions are when the purchaser's ID consists of a military ID or, due to technical limitations, when the magnetic strip reader is unable to obtain the required information. As of the creation of this Declaration, I have yet to have one successful and complete transfer of ID information into DES from a swipe of the ID through our magnetic strip reader, resulting in us having to enter some or all customer information manually for every purchase to date. Swiping a person's Driver's License or ID does not populate the city, state, or zip code fields in DES, requiring us to manually enter this information. Neither DOJ's guide nor its recently adopted regulations provide any information as to the cause of these errors or how to correct them.

11. There are generally three ways in which DES can process an ammunition transaction. DOJ has labeled these options in DES as: 1) Standard Ammunition Eligibility Check (SAEC); 2) Basic Ammunition Eligibility Check (BAEC); and, 3) Certificate of Eligibility (COE) Verification. The Standard Ammunition Eligibility Check and Certificate of Eligibility Verification require a $1 processing fee, whereas the Basic Ammunition Eligibility Check requires a $19 processing fee.

12. Regardless of which transaction option is selected, DES requires our business to collect a purchaser's gender, race, eye color, hair color, height, weight, date of birth, place of birth, and U.S. Citizenship status, and phone number, in addition to the information collected from the purchaser's Driver's License or ID. DOJ's regulations state such information is only required when processing a Basic Ammunition Eligibility Check. The DES guide, however, makes clear that all this information is required for each type of transaction. DES will not allow our business to process a transaction unless all of this information has been entered.

13. Depending on the purchaser's personal information, DES will provide a drop-down menu to select the city of the person's place of residence. In some instances, this drop-down menu has provided multiple options for the same city. For example, in one transaction where the customer's residence is in Huntington Beach, California, the drop-down menu listed both "Huntington Beach" and "Huntington BCH" as selectable options. For purchasers utilizing the Standard Ammunition Eligibility Check option, we can only presume that selecting the incorrect option will result in a denial through DES. Neither DOJ's regulations, the DES guide, nor DES itself provides any information regarding how to determine the appropriate option to choose from.

14. Prior to July 1, 2019, DOJ promulgated new "emergency" regulations requiring our business to verify a purchaser's Driver's License or ID is federally compliant. Our business must now verify if a purchaser's Driver's License or ID has the notation "FEDERAL LIMITS APPLY," in which case we must request additional proof of lawful U.S. residence (such as a U.S. passport or certified U.S. birth certificate) from

the purchaser prior to submitting an ammunition transaction in DES. In the event the name on the purchaser's Driver's License or ID differs from name on the purchaser's proof of lawful U.S. residence, DOJ's new regulations also require the purchaser to provide an additional certified document (such as an adoption, name change, or marriage certificate) illustrating the reason for the name change. DOJ's new regulations also require our business to retain a copy of any supplemental documentation provided by the purchaser, which means taking more time and resources for copying, printing it out and filing it away.

15. Contrary to California law and DOJ's new "emergency" regulations requiring federally compliant IDs, DOJ representatives have instructed our business to manually edit the fields in DES (purchaser's name and address) that were populated by swiping the purchaser's ID through a magnetic strip reader. DOJ representatives have also instructed us to manually edit the purchaser's information to ensure a purchaser's Standard Ammunition Eligibility Check is approved, even if the information entered in DES differs from the information on the purchaser's Driver's License or ID.

16. Our business is now required to first assist the customer in identifying which type of ammunition background check to run in connection with their transaction. This process takes anywhere from 3-5 minutes. At no point has DOJ provided our business with any materials we can share with customers, either in advance of or when processing the transaction, to help them determine which background check process to use.

17. Once the customer has selected which background check process to use, it takes our staff an additional 5 or more minutes to input the customer's personal information into DES. The ability of the magnetic strip reader to automatically populate certain fields in DES determines how long this part of the process takes. Additional time is also necessary should the system provide certain options, such as using "Huntington Beach" or "Huntington BCH" for the purchaser's place of residence as discussed above. This takes additional time as we often have to explain the reason why selecting the appropriate option is crucial to avoid inadvertent rejections by DES. During the eligibility

check, we also must make copies of any documents required, adding more time to the transaction.

18. Prior to submitting the background check information, our staff must also ensure the customer will pay the associated fee for the selected background check. To reduce operating costs and the time it takes for our customers to purchase ammunition, our business does not charge the required fee up front. Charging the required fee up front would require a second transaction for payment of this fee which would take additional unnecessary time. By doing so, however, our business runs the risk of a person being denied a transaction through DES and then refusing to pay the required fee. What's more, our credit card processing system would charge a $0.50 processing fee for a $1 transaction as necessary for the Standard Ammunition Eligibility Check or Certificate of Eligibility (COE) Verification. While some customers may choose to pay in cash, we estimate nearly 96% of our customers would use a credit card as their preferred payment method.

19. Once a purchaser's personal information has been entered into DES and the required background is submitted, we must then wait for DES to determine if the transaction is approved or denied before proceeding to the next step of the transaction. Most Standard Ammunition Eligibility checks and Certificate of Eligibility (COE) Verifications have been processed almost instantly. On several instances, however, DOJ has taken as long as 16 minutes to issue an approval or rejection. Of the Basic Ammunition Eligibility Checks that we have submitted, it has taken DOJ at least two or more hours to determine a purchaser's eligibility. It should be noted regarding the Basic Eligibility Checks we have run these are customers with an AFS record. Should a customer not have an AFS record, the process could take up to 10 days.

20. Assuming a purchaser's eligibility check is approved by DOJ, we can then begin the process of assisting the customer in selecting the ammunition they wish to purchase. Following the implementation of California's new ammunition sales restrictions, our business is required to display any ammunition in such a manner as to

prevent unauthorized access by a customer, and one of our employees must assist the customer in collecting the ammunition they wish to purchase. Depending on the amount of different types of ammunition being purchased, and whether or not the customer already knows exactly what ammunition to purchase, and an employee is able to immediately assist them, this process can take several minutes.

21. After the ammunition has been selected, one of our employees must then access DES and locate the purchaser's approved transaction in the system. Once located, the employee must then enter all required information for each type of ammunition being purchased into DES. The required information consists of the ammunition manufacturer, caliber, condition, and quantity. DES also lists additional fields such as bullet type, weight, usage type, casing, primer type, muzzle velocity, muzzle energy, and cost per round, but states this information is not mandatory. A standard ammunition customer purchases anywhere from 2-10 different types or calibers or brands of ammunition. The DES system only allows for one type of brand and one type of caliber per page entry, requiring a new DROS page generated for each brand and a new DROS page for each caliber. To do this, according to the DES User guide, we must "repeat steps 2-5" to enter each additional caliber or each additional brand. Therefore, depending on the amount and different types of ammunition being purchased, this process will take at minimum 2 minutes and up to 15+ minutes depending on what a customer is buying.

22. Once a purchaser's ammunition information has been entered, we can then "Deliver" the ammunition to the customer by making the appropriate selection in DES. But before doing so, we must first take payment from the customer using our own business inventory management system separate from DES. Depending on what payment method the customer uses, this process can take an additional 2-3 minutes.

23. After selecting "Deliver" in DES, the DES guide instructs us to print the transaction information "as that will be the only opportunity to generate a printed DROS Ammunition copy for customer signature." For every type (brand and/or caliber) of ammunition purchased, DES will print a separate page that, according to the DES guide,

must be signed by both the customer and our employee who is processing the transaction. Neither California law nor DOJ's regulations require us to print a copy of the transaction. Since the enforcement of Proposition 63 on July 1, 2019, we have been forced to print on average 1-10 pages per customer. Add to this, the required documentation for ID requirements, and we have 2-12 printed pages per customer.

24. According to the DES guide, approvals issued in connection with a Standard Ammunition Eligibility Check or Certificate of Eligibility (COE) Verification are valid for a period of no more than 18 hours. Approvals for Basic Ammunition Eligibility Checks, however, are valid for up to 30 days. If a customer left the store while their Standard Ammunition Eligibility Check or Certificate of Eligibility (COE) Verification was pending DOJ approval, they must return to the store after DOJ issues the approval, select the ammunition they wish to purchase, and have the ammunition recorded and delivered through DES within 18 hours. Neither California law nor DOJ's regulations expressly limit how long approvals are valid for.

25. Prior to the implementation of California's ammunition transaction restrictions that took effect on July 1, 2019, our business was able to process ammunition transactions in less than a minute.

26. Following the implementation of California's ammunition transaction restrictions that took effect on July 1, 2019, it now takes at least 20 minutes—often more—to process an ammunition transaction.

27. Following the implementation of the July 1, 2019, ammunition transaction requirements, approximately half of our customers have either been unable to process a transaction because they lacked the necessary documentation (such as having a "FEDERAL LIMITS APPLY" ID but lacking a U.S. passport or other acceptable proof of lawful U.S. residence), or have had their transaction denied by DOJ for reasons unknown to us. As of the creation of this Declaration, we have suffered a significant reduction in customers qualified to initiate the Standard or Basic Eligibility Checks due to "FEDERAL LIMITS APPLY" ID restrictions and not having a passport or Birth

Certificate on their person. On Wednesday July 3, 2019, we had to turn away 12 customers who came into our store with the intent to purchase ammunition but were unaware their ID was subject to the "FEDERAL LIMITS APPLY" restriction.

28. I have already fielded dozens of calls from customers asking what documentation they need to purchase ammunition. In discussing the federally compliant ID requirements, nearly half of the potential customers I have spoken to do not know if they have the required supplemental documentation.

29. Of those customers who have attempted to purchase ammunition at our store with a federally non-compliant ID, approximately only one in three possess the necessary supplemental documentation. In one example, a customer who works as a Department of Defense firearms instructor possessed a federally non-compliant ID but was unable to purchase ammunition because he was unaware his ID had the "FEDERAL LIMITS APPLY" notation and did not also possess the required supplemental documentation.

30. Nearly every customer who has attempted to purchase ammunition at our store is unaware of all the new requirements applicable to ammunition transactions. On multiple occasions, I have had to instruct customers on these requirements and, after doing so, they decided against processing a transaction.

31. Of the customers who have submitted a Standard Ammunition Eligibility Check, approximately 10% have been rejected. But had I not instructed my customers what was required prior to initiating a transaction, I would estimate nearly half of my customers would not have obtained the necessary electronic DOJ approval because they would have submitted personal information that did not match one of their existing AFS records.

32. I estimate my business has lost nearly half the daily revenue experienced before the adoption of Prop 63.

33. California law requires my business to maintain any and all records generated in connection with ammunition transactions starting July 1, 2019, and to make them available for inspection for no less than 5 years. I am genuinely concerned that I

will be unable to maintain records for this length of time given the amount of paperwork and information generated as a result of DOJ's requirements because of the significant expenses they require my business to incur, including the space necessary to store such records.

34. I have also had to turn away at least 6 customers who are members of our armed forces, who do not have a California ID. I have had to turn away at least 4 customers who had Driver's Licenses issued by other states, but who either reside partly in California or are visiting. I have lost business to customers who are new to the shooting industry, and do not yet have an AFS record, because they haven't purchased a firearm yet. As is often the case with prospective firearm purchasers, they come to us to buy ammunition at our store, then go to a range to either rent or borrow a firearm to "try it out." These customers do not have an AFS record and would therefore have to submit to the $19 Basic Eligibility Check and wait up to 10 days for approval. Of course, this doesn't seem like a suitable option to them, and they decline to do the Basic Eligibility Check.

35. It should also be noted that along with a considerable imbalance between the regulations and DES operation requirements, there is a complete lack of equitable protocol in how to process customers who are either active military, or who have an old address on their driver's license, but have a firearm registered to their new address not present on their driver's license. I have been told by DOJ that members of our armed forces who do not have a California ID, and/or do not have Duty Station Paperwork in California, and/or have a California ID with the "FEDERAL LIMITS APPLY" notation but no U.S. passport or birth certificate immediately available, cannot be processed for an eligibility check. However, my parent company at LAX AMMUNITION LA, was told that active military can use their Department of Defense (DoD) ID and any given California address (with or without a firearm registered to it) to process a Standard Eligibility Check and that retention of any address/ID paperwork was not required. Furthermore, I was instructed by DOJ on two separate occasions that if a customer has an

alternate address that is not reflected on their ID, but the customer knows this alternate address matches their existing AFS records, I could manually enter the alternate address when submitting a Standard Eligibility Check for the customer in DES. DOJ instructed that I would need to collect and retain proof of the alternate address. My parent company was told no such protocol is needed.

36. DOJ has stated in its DES Guide that it has established a "Customer Support Center" to assist businesses like ours with any issues processing transactions through DES. We have repeatedly attempted to communicate with the Customer Support Center on the issues we have experienced with DES but have to date been unable to speak with a representative. The phone line is either busy or instructs us to leave a message. But even after instructing us to leave a message, the system does not allow us to do so.

37. Prior to the implementation of the July 1, 2019, ammunition sales restrictions, my business could be efficiently run with just one employee. Following the implementation of the new requirements, however, we now require at least two employees to effectively run the store, one to process the required background checks, and one to assist customers in selecting and uploading ammunition transactions through DES.

38. I am genuinely concerned that the recent changes to California law requiring background checks for all ammunition transactions, as implemented by DOJ, will result in a significant loss in business due to the complicated and unequal ID requirements, as well as the time and costs necessary for processing transactions. Given those additional costs our business has been forced to incur, coupled with the loss in business, I am genuinely concerned that I will no longer be able to maintain a profitable business moving forward and will be forced to close my business.

///

///

///

1 | I declare under penalty of perjury that the foregoing is true and correct. Executed
2 | within the United States on  July 10 , 2019.

*[signature]*

Christina McNab
Declarant

# CERTIFICATE OF SERVICE
## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Becerra*
Case No.: 3:18-cv-00802-JM-JMA

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**DECLARATION OF CHRISTINA MCNAB**

on the following parties by electronically filing the foregoing on July 22, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| Nelson R. Richards<br>Deputy Attorney General<br>nelson.richards@doj.ca.gov<br>2550 Mariposa Mall, Room 5090<br>Fresno, CA 93721 | *Attorneys for Defendant Attorney General Xavier Becerra* |

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 22, 2019, at Long Beach, CA.

*s/ Laura Palmerin*
Laura Palmerin