1    XAVIER BECERRA
     Attorney General of California
2    TAMAR PACHTER
     Supervising Deputy Attorney General
3    P. PATTY LI
     Deputy Attorney General
4    NELSON R. RICHARDS
     Deputy Attorney General
5    State Bar No. 246996
       1300 I Street, Suite 125
6      P.O. Box 944255
       Sacramento, CA 94244-2550
7    Telephone:  (916) 210-7867
     Fax:  (916) 324-8835
8    E-mail:  Nelson.Richards@doj.ca.gov
     *Attorneys for Defendant Attorney General*
9    *Xavier Becerra*

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

| **KIM RHODE et al.,** | 3:18-cv-00802-BEN-JLB |
|---|---|
| Plaintiffs, | |
| v. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT XAVIER BECERRA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF NELSON R. RICHARDS** |
| **XAVIER BECERRA, in his official capacity as Attorney General of the State of California, et al.,** | |
| Defendants. | Date:        August 19, 2019<br>Time:        10:30 a.m.<br>Dept:        5A<br>Judge:      Hon. Roger T. Benitez<br>Action Filed:    4/27/2018 |

**REQUEST FOR JUDICIAL NOTICE**

Defendant Xavier Becerra, sued in his official capacity as the Attorney General of California, respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the documents attached to the accompanying declaration of counsel:

- **Exhibit 1** is a journal article, Tita et al., *The Criminal Purchase of Firearm Ammunition*, 12 Injury Prevention 308, 309 (2006).

- **Exhibit 2** is an August 12, 2008 Staff Report to the Council of the City of Sacramento titled "Presentation: Ammunition Sales Records Study."

- **Exhibit 3** is the New Jersey State Commission on Investigation's February 2007 report titled *Armed and Dangerous: Guns, Gangs and Easy Access to Firearms Ammunition in New Jersey*.

- **Exhibit 4** is the November 20, 2018 guidance issued by the California Department of Justice titled "California Department of Justice Update Regarding the Use of 'Federal Limits Apply' Driver Licenses and Identification Cards to Purchase Firearms."

- **Exhibit 5** is the November 20, 2018 consumer alert issued by the California Department of Justice titled "Consumer Alert Regarding the Use of 'Federal Limits Apply' Driver Licenses and Identification Cards to Purchase Firearms."

- **Exhibit 6** to this request is a true and correct copy of a November 20, 2018 press release titled "California Department of Justice Issues Consumer Alert on the Use of 'Federal Limits Apply' Driver Licenses and IDs to Purchase Firearms."

Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be one "not subject to reasonable dispute" because it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be readily

1

RJN in Supp. of Def.'s Opp'n to Pls.' Mot. for Prelim. Inj. (3:18-cv-00802-BEN-JLB)

1    questioned.  Fed. R. Evid. 201(b).  "Under Rule 201, the court can take judicial

2    notice of public records and government documents available from reliable sources

3    on the Internet, such as websites run by governmental agencies."  *Gerritsen v.*

4    *Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (quotation

5    marks and brackets omitted).  Exhibits 2 through 6 are thus judicially noticeable

6    because they are copies of government records or documents that are available from

7    reliable sources on the Internet.

8        In the context of a constitutional challenge to a law under the intermediate

9    scrutiny standard, this Court may consider studies that lawmakers could have relied

10   upon.  *See, e.g.*, *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 20115) ("When

11   reviewing the reasonable fit between the government's stated objective and the

12   regulation at issue, the court may consider the legislative history of the enactment

13   as well as studies in the record or cited in pertinent case law." (quotation marks

14   omitted)).  This Court may thus consider Exhibit 1 as well.

15        In the alternative, Exhibits 1 through 3 are legislative facts, which this Court

16   may consider.  *See* Fed. R. Evid. 201 advisory committee notes to subdivision (a)

17   (1972) (explaining that legislative facts "are those which have relevance to legal

18   reasoning and the lawmaking process, whether in the formulation of a legal

19   principle or ruling by a judge or court or in the enactment of a legislative body,"

20   and that no rule deals with judicial notice of those facts).  "Judicial notice of

21   legislative facts . . . is unnecessary."  *Von Saher v. Norton Simon Museum of Art at*

22   *Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009).

23

24

25

26

27

28

2

RJN in Supp. of Def.'s Opp'n to Pls.' Mot. for Prelim. Inj. (3:18-cv-00802-BEN-JLB)

1    Dated:  August 5, 2019                    Respectfully Submitted,

2                                              XAVIER BECERRA
                                               Attorney General of California
3                                              TAMAR PACHTER
                                               Supervising Deputy Attorney General
4

5

6                                              /s/ Nelson Richards
                                               NELSON R. RICHARDS
7                                              P. PATTY LI
                                               Deputy Attorneys General
8                                              *Attorneys for Defendant Attorney*
                                               *General Xavier Becerra*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF NELSON R. RICHARDS

I, NELSON R. RICHARDS, declare:

1.     I am a Deputy Attorney General with the California Department of Justice, Office of the Attorney General, and an attorney for Defendant Xavier Becerra, Attorney General of California, in this matter.  I am an attorney at law duly licensed to practice before all courts of the State of California and admitted to practice before the United States District Court for the Southern District of California.  I have personal knowledge of the facts set forth below and if called as a witness, I could and would competently testify to them.

2.     This declaration is made in support of Defendant Xavier Becerra's opposition to Plaintiffs' motion for preliminary injunction.

3.     Exhibit 1 to this request and declaration is a true and correct copy of Tita et al., *The Criminal Purchase of Firearm Ammunition*, 12 Injury Prevention 308, 309 (2006).  I obtained a copy of this journal article from the website of the U.S. National Library of Medicine, National Institute of Health at:  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2563465/.

4.     Exhibit 2 to this request and declaration is a true and correct copy of the August 12, 2008 Staff Report to the Council of the City of Sacramento titled "Presentation: Ammunition Sales Records Study."  I obtained a copy of this document from the City of Sacramento's website at:  https://sacramento.granicus.com/MetaViewer.php?view_id=22&clip_id=1590&meta_id=155275.

5.     Exhibit 3 to this request and declaration is a true and correct copy of the New Jersey State Commission on Investigation's February 2007 report titled *Armed and Dangerous: Guns, Gangs and Easy Access to Firearms Ammunition in New Jersey*.  I obtained a copy of this document from the Commission's website at: https://www.state.nj.us/sci/pdf/Armed%20and%20Dangerous.pdf.

6.     Exhibit 4 to this request and declaration is a true and correct copy of the November 20, 2018 guidance issued by the California Department of Justice titled

4

1   "California Department of Justice Update Regarding the Use of 'Federal Limits

2   Apply' Driver Licenses and Identification Cards to Purchase Firearms."  I obtained

3   a copy of this document from records of the Attorney General's Office, to which I

4   have access.

5       7.      Exhibit 5 to this request and declaration is a true and correct copy of the

6   November 20, 2018 consumer alert issued by the California Department of Justice

7   titled "Consumer Alert Regarding the Use of 'Federal Limits Apply' Driver

8   Licenses and Identification Cards to Purchase Firearms."  I obtained a copy of this

9   document from records of the Attorney General's Office, to which I have access.

10      8.      Exhibit 6 to this request is a true and correct copy of a November 20,

11  2018 press release titled "California Department of Justice Issues Consumer Alert

12  on the Use of 'Federal Limits Apply' Driver Licenses and IDs to Purchase

13  Firearms."  I obtained a copy of this document from records of the Attorney

14  General's Office, to which I have access.

15

16  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

17  is true and correct.

18

19   Executed on:  August 5, 2019

20

21                                          /s/ Nelson Richards
                                            NELSON R. RICHARDS
22                                          Deputy Attorney General

23

24

25

26

27

28

5

# EXHIBIT 1

## ORIGINAL ARTICLE

# The criminal purchase of firearm ammunition

## G E Tita, A A Braga, G Ridgeway, G L Pierce

Injury Prevention 2006;**12**:308–311. doi: 10.1136/ip.2006.013052

See end of article for
authors' affiliations
.......................

Correspondence to:
Professor G E Tita,
University of California–
Irvine, Criminology, Law,
and Society, 2307 Social
Ecology II, Irvine, CA
92697-7080, USA;
gtita@uci.edu

Accepted 4 August 2006
.......................

**Objective:** Laws that prohibit certain individuals from owning firearms also pertain to ammunition. Whereas retail sales of firearms to criminals are regularly disrupted by instant background checks, sales of ammunition are essentially unchecked and the rate at which criminals acquire ammunition is unknown. This research describes the ammunition market and estimates the rate at which criminals are acquiring ammunition.
**Design:** Criminal background checks conducted on individuals purchasing ammunition in the City of Los Angeles in April and May 2004.
**Setting:** Los Angeles, CA, USA.
**Subjects:** Ammunition purchasers.
**Main outcome measures:** Criminal activity that prohibits one from owning, purchasing, or possessing ammunition.
**Results:** 2.6% (95% CI 1.9% to 3.2%) of ammunition purchasers had a prior felony conviction or another condition that prohibited them from possessing ammunition. During the study period prohibited possessors purchased 10 050 rounds of ammunition in Los Angeles.
**Conclusions:** These estimates suggest that monitoring ammunition transactions may help reduce the supply of ammunition to criminals and the frequency of injuries from felonious gun assaults. Such a record can also provide information for generating leads on illegal firearm possession.

From 1993–96, emergency rooms in the United States treated an estimated 413 186 incidents of non-fatal firearm injuries stemming from causes ranging from gunshot wounds, injuries sustained while trying to elude gunfire, lacerations from recoil, and being struck by a firearm.[1] Over this period, an estimated 7630 people were treated annually for injuries resulting from purposefully being *struck by a gun*. This number, however, pales in comparison to the nearly 87 000 injuries caused by being *struck by a bullet fired from a gun*. Clearly, guns without ammunition are much less dangerous than loaded ones and, besides the fear that guns induce, the unloaded gun is no more dangerous than any other blunt object. Unlike the public health view on drug policy, which recognizes the importance of limiting access to both the agent of harm (the narcotic) and the instrument of delivery (for example, syringe), gun policy has focused primarily on limiting access to the instrument of delivery, firearms, while eschewing efforts to limit access to ammunition, the actual agent of harm.

Gun violence has decreased over the past decade, yet many Americans still die by gunfire and, of course, many more are still affected by non-fatal gun violence. In 2004, there were 11 344 gun murders, 164 998 gun assaults, and 162 938 gun robberies.[2] In 2003, there were 16 907 suicides with firearms.[3] Advocates on all sides of the gun control debate in the United States agree that policies and interventions that make guns *and ammunition* less available to those who are prone to violence deserve high priority, will save lives, and reduce the burden of gun violence on society. One broad class of strategies is designed to limit access to different kinds of weapons by different kinds of people.[4] The basic policy idea is to restrict access to firearms and ammunition by the "bad guys" without denying access to the "good guys".[5] Existing firearms regulations in the United States that prohibit certain individuals from purchasing or possessing a firearm also apply to the purchase and possession of ammunition. While there has been considerable policy action at the federal, state,

and local level to identify and screen out ineligible purchasers of firearms through criminal background checks, there has been little action to identify and screen out disqualified buyers from illegally acquiring ammunition. Most countries restrict certain individuals, such as violent offenders and those with certain mental illnesses, from possessing firearms but the United Nations Group of Experts notes that "measures to control small arms and light weapons would not be complete if they did not include ammunition and explosives".[6] Clearly ammunition makes guns much more lethal. If gun-using criminals could be hindered from obtaining ammunition, it follows that gun violence may decline. Furthermore, recent research suggests that even within an urban center plagued by gun violence, guns are more readily available for purchase than ammunition.[7] This finding suggests that greater efforts to prevent criminal access to ammunition may be more effective in reducing firearm injury than further limiting access to firearms.

## REGULATING AMMUNITION SALES AND SCREENING AMMUNITION PURCHASERS

A number of nations as well as some US states currently require ammunition purchasers to have valid identification cards and/or firearms licenses. Proposed legislation in California (SB 357) would further require ammunition dealers in California to log all ammunition purchases and their purchasers in a state database. Although this bill failed in 2005, state law has not preempted city ordinances enacted in Los Angeles, San Francisco, Oakland, and several other California cities to regulate ammunition commerce. These statutes have tougher proof of identification standards (state issued identification card and the purchaser's fingerprint) and require the seller to retain documentation of all

.......................

**Abbreviations:** ATF, Bureau of Alcohol, Firearms, Tobacco and Explosives; DOJ, Department of Justice; FFL, Federal Firearms Licensee; LAPD, Los Angeles Police Department.

ammunition purchasers in a non-electronic "ammunition log".

Underpinning these legislative efforts is the belief that prohibited possessors are currently purchasing ammunition at licensed dealers and could be prevented from doing so through criminal background checks and transaction records. Currently there is no direct research evidence to support this position and efforts against this legislation have pointed out this lack of evidence. The Citizens Committee for the Right to Keep and Bear Arms (CCRKBA) correctly noted following the defeat of SB 1152 that "there is *no existing data* to suggest that an ammunition purchase registry will have any positive impact on crime"[8] (authors' italics). Similarly, the National Association of Firearms Retailers criticized the measure, noting that "no valid public safety purpose will be advanced by burdening our members in California with keeping a registry of perfectly legal ammunition sales and law-abiding ammunition purchasers. We are aware of *no scientifically valid study* that concludes an ammunition registry would be an effective law enforcement tool"[8] (authors' italics).

As noted above, there is reason to believe that targeting retail ammunition sales will in fact impact levels of firearm injury. Recent ethnographic research on the workings of illegal guns markets in Chicago suggests that it was more difficult for criminals to acquire ammunition than guns.[7] Most youth reported trouble with securing ammunition and faced considerable price markups compared to the legal market. If it is true that for many criminals ammunition is scarce then effective screening procedures or transaction record keeping for ammunition purchases at retail outlets could be used to good effect in reducing an important supply line of ammunition.

In this study, we sought to learn more about the retail market in ammunition by examining bullet and shotgun shell purchases in the City of Los Angeles, which passed a city ordinance in 1998 requiring proof of identification and a thumbprint (55.11 LAMC). We examined the characteristics of sales conducted in the City of Los Angeles, California with a particular focus on the purchasers' criminal history. We also explored the frequency in which prohibited possessors acquire ammunition from licensed dealers. Our results indicate that prohibited possessors acquired about 10 000 rounds of ammunition during the two month study period.

## DATA

These data were collected as part of a US Department of Justice (DOJ) funded study aimed at understanding and disrupting the illegal gun market serving criminals and youth in Los Angeles. Local ordinance requires every Federal Firearms Licensee (FFL) in Los Angeles that sells ammunition to maintain ammunition purchase logs on all transactions, which the Los Angeles Police Department (LAPD) Gun Unit periodically collects. The data recorded for each transaction are handwritten into the ammunition log and include purchaser-specific data, as well as purchase-specific information. Identifying information for each purchaser includes name, age, sex, date of birth, address, thumbprint, and a driver's license/state issued identification number. Data also include the type and quantity of ammunition purchased along with the date for each transaction.

Our study uses ammunition log data to examine purchases made in the City of Los Angeles during the months of April and May 2004. During the study time period, there were only 15 FFLs in all of Los Angeles that sold ammunition: eight sporting goods stores, three firing ranges, two law enforcement facilities, one war surplus store, and one small business that reloads ammunition for sale. As part of the DOJ study, the LAPD Gun Unit collected the completed logs from 10 businesses and handed these records over to the Southern

California Regional Crime Gun Center operated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). We excluded the two law enforcement facilities because they sell only to law enforcement employees, who by definition cannot have a criminal background. Limited availability of LAPD officers for collecting the data on ammunition purchases during the study's time period resulted in data not being collected from the ammunition reload business, one of the sporting goods stores, and one of the firing ranges. As such, these ammunition dealers were excluded from our analyses. ATF personnel computerized the data from the 10 remaining FFLs. For each transaction in the ammunition logs, ATF personnel checked whether the purchaser appeared in the National Criminal Information Center (NCIC) data or in the California Department of Justice's Criminal History files. They recorded the full criminal histories of the complete sample of ammunition purchasers with criminal backgrounds.

Seven of the observed ammunition retailers are in the San Fernando Valley, the northern half of the City of Los Angeles. These retailers represent approximately 93% of the ammunition transactions recorded during the study period. None of the business premises of the 10 ammunition retailers were located near the high crime South Los Angeles area of the city. Although this area leads the city in total homicide and total gun crime, none of the "local" places to purchase ammunition actually falls within the Los Angeles city limits. According to the LAPD and ATF, the likely ammunition supply for this area consists of the nearly one dozen ammunition dealers near South Los Angeles which are located just outside of the city limits in the surrounding Los Angeles County municipalities, and therefore not required to record ammunition purchases. Thus, our analysis of Los Angeles' ammunition data represents a snapshot of the ammunition market in the northern half of the city. Though it is only a portion of the city, in 2002 the San Fernando Valley's 1.4 million residents comprised 37% of the city's population. By itself it would rank as the seventh largest city in the United States.

## RESULTS

In April and May 2004 there were 2031 unique purchasers who made 2540 transactions that resulted in the sale of 4823 boxes of ammunition that totaled 436 956 rounds.

### Who buys ammunition?

Though most of the ammunition purchasers reside locally, a small number of non-California residents (n = 60) also purchased ammunition in the city. It is not clear whether these individuals purchased ammunition while visiting or if these are new local residents who have not yet changed their official place of residence. Among the remaining 97% of purchasers (n = 1971), Los Angeles city residents make up 70% of the purchasers and another 19% reside within Los Angeles County. The overwhelming majority of purchasers live within the San Fernando Valley, which is to be expected as ammunition prices are relatively stable across merchants. An informal survey of local ammunition dealers in and around Los Angeles indicated that a 500 round box of lower end .22 ammunition ranged from \$14 to \$16, a difference for which we do not expect consumers to travel great distances given that local gas process peaked at \$2.36 per gallon during this period.

While 92% of gun purchasers in Los Angeles County are male,[9] a slightly larger percentage (96%) of ammunition purchasers in the city are male. As shown in table 1, bullet purchasers are also more likely to fall into the 21–24 years age category (15%) than gun purchasers (9%).

Tonso, Bogard, Ridgeway, et al

**Table 1** Age distribution of Los Angeles county handgun purchasers and Los Angeles city ammunition purchasers

| Age (years) | Handguns (county) | Ammunition (city) |
|---|---|---|
| 21–24 | 9.0% | 15.4% |
| 25–34 | 23.5% | 28.6% |
| 35–44 | 25.3% | 24.1% |
| 45–54 | 24.1% | 18.0% |
| 55–64 | 12.9% | 8.7% |
| 65+ | 5.2% | 2.9% |

## Should they be buying?

During the study period, 6.5% of ammunition purchasers had a criminal record. A criminal record, however, is not sufficient for prohibiting a purchaser from buying ammunition. Federal law prohibits convicted felons and domestic violence misdemeanants from acquiring ammunition. Additionally, California state law includes provisions that prohibit individuals convicted of violent misdemeanors from purchasing and possessing ammunition. Of the study's ammunition purchasers, 1.5% had prior felony convictions; 13 drug related felonies, eight grand theft or burglary felonies, two cases of felony check fraud, two weapon offenses, and one case each of extortion, stalking, and sex with client (details of two other felony convictions were unknown). An additional 1.1% of the purchasers had other conditions (for example, misdemeanor assault or an active restraining order) that prohibited their purchases. Table 2 summarizes these findings.

These prohibited possessors made 2.8% (71/2540) of all transactions and collectively purchased 2.3% (10 050/436 956) of the rounds sold in the two month study period. They generally purchase the same kinds of ammunition as legal purchasers. For example among prohibited possessors, 40% purchased 9 mm ammunition while 38% of legal purchasers bought 9 mm ammunition. By comparison, the Violence Prevention Research Program[9] reported that 0.8% of attempted gun purchases statewide involved a prohibited possessor in 2000, but the background check and 10 day waiting period interrupted those purchases. While the Los Angeles ammunition ordinance requires ammunition transactions to be recorded, there is no instant check and before 2004 the logs were only referenced when police were following up on specific crimes. As a result prohibited possessors were able to purchase ammunition with little risk of detection.

**Table 2** Criminal background of ammunition purchasers

| | n | Percentage during study period (95% CI)† |
|---|---|---|
| Unique purchasers | 2031 | |
| Purchasers with a criminal record* | 133 | 6.5 (5.5 to 7.6) |
| Purchasers prohibited from purchasing ammunition | 52 | 2.6 (1.9 to 3.2) |
| Felony conviction | 30 | 1.5 (1.0 to 2.0) |
| Non-felony offense | 22 | 1.1 (0.6 to 1.5) |

*Having a criminal record does not necessarily prohibit ammunition purchases.
†The 95% confidence intervals are computed as if April and May are representative of a stationary process of ammunition purchasing.

## CONCLUSIONS

These data suggest that, despite having to identify themselves through showing a driver's license, leaving a fingerprint, and creating a record of the transaction, prohibited purchasers still buy ammunition at Los Angeles dealers. Though some ineligible buyers may be deterred by these requirements and make purchases at dealers beyond the city limits, the lack of enforcement of existing laws means that prohibited persons still complete the required elements of the transaction and walk out of the store with ammunition.

In an attempt to stem the flow of ammunition to prohibited purchasers, policy makers might consider extending instant background checks to include ammunition purchases. A criminal background check would be an unnecessary inconvenience in about 97% of ammunition transactions in Los Angeles. However, in just two months, prohibited persons acquired some 10 050 rounds through retail outlets. A background check would eliminate illegal ammunition transactions at retail outlets and denied ammunition purchase rate would probably converge to around 0.8%, the denial rate for firearms. Similar to the illegal market substitution effects associated with the passage of the Brady Law,[10 11] prohibited purchasers seem likely to exploit alternative sources of ammunition such as unregulated private sellers operating in the secondary firearms markets.

An alternative policy to the instant criminal background check would be to use the ammunition transaction records as an intelligence gathering tool for law enforcement. Routine examination of ammunition purchasers could be used to identify prohibited persons who illegally possess ammunition and, most likely, illegally possess firearms as well. The ammunition logs have been used as a basis for developing probable cause in securing search warrants, some of which have resulted in the recovery of illegal firearms [conversation with the supervising attorney of the Gun Violence Section of the Los Angeles City Attorney's office].

At present, the key impediment to the utility of the Los Angeles ammunition log for law enforcement is that it is restricted to dealers located within the city limits. Los Angeles residents can easily cross into other areas of the county and purchase untraceable ammunition. Given the dearth of purchasers residing in South Los Angeles, and that these neighborhoods have severe gun violence problems, it is clear that Los Angeles retailers are not the source of this area's ammunition supply. Illegal street sales, mail order purchases, and retail purchases outside the city limits are all possible ammunition sources, none of which is currently monitored. A first step in turning the ammunition log into a useful intelligence tool for South Los Angeles would be to have neighboring municipalities cooperate in a concerted effort to collect similar data on ammunition transactions. Although our study focused on one part of Los Angeles, our findings have implications for other states and nations that monitor firearm sales but not ammunition purchases; without monitoring or enforcement, prohibited purchasers are not completely deterred from purchasing ammunition.

## Implication for prevention

Relative to firearms and ammunition in legal hands, guns and ammunition in the hands of a prohibited possessor are at high risk of being used in violent crime.[12] Monitoring ammunition transaction can reduce that risk by either following those criminal purchasers back to their firearms or interrupting criminal purchases at the point-of-sale with an instant check. Expanding the monitoring to the county level or the state level may result in FFLs beyond the jurisdiction of the legislation becoming easy sources for illicit ammunition purchases. Due to less stringent gun controls, dealers in Nevada and Arizona are already noteworthy out-of-state sources of crime guns recovered in Los Angeles[13] and seem likely to become illicit sources of ammunition. A statewide program might push the illegal ammunition

## Key points

- Individuals prohibited from purchasing firearms and ammunition continue to purchase ammunition through licensed dealers because existing laws are rarely enforced.
- In the City of Los Angeles during the study period, prohibited individuals purchased 10 050 rounds of ammunition, 2.8% of all transactions.
- Firearm policy should adopt the public health approach, which recognizes the importance of addressing both the mechanism of delivery (the gun) and the agent of harm (the bullet) in order to be effective in reducing gunshot injuries.

purchases out of the state and, therefore, increase the "effective price" of illegal ammunition sales on the streets of Los Angeles.[14] Increasing the costs associated with the illegal acquisition of ammunition may cause criminals to economize on firearm use and, in turn, reduce gun violence. The potential for substitution to alternative black market sources is a concern for any gun market intervention.[15] Nonetheless, given the heavy burden of gun violence, policymakers need to consider policy interventions that remove easy opportunities for violent gun-using criminals to arm themselves.

### Study limitations

This study used administrative data from 10 of 13 non-law enforcement ammunition retailers in the City of Los Angeles over a two month period. Therefore, this study's findings may not be representative of all ammunition transactions in the greater Los Angeles area nor in other cities around the world. Although the Los Angeles city ordinance requires dealers to document all ammunition transactions there may be non-compliance. Compliance could be associated with whether or not the purchaser is eligible to possess ammunition. ATF completed the background checks for all purchasers based on names and state issued IDs from the hand written logs collected from the retailers. Accurate criminal history checks depended on this information being written correctly and clearly on the forms.

## ACKNOWLEDGEMENTS

This research was funded by a grant from the National Institute of Justice No 2001-IJ-CX-0028. The funder was not involved in the design or conduct of this study.

. . . . . . . . . . . . . . . . . . . . .

### Authors' affiliations

**G E Tita,** Criminology, Law and Society, University of California–Irvine, Irvine, CA, USA

**A A Braga,** John F Kennedy School of Government at Harvard University, Cambridge, MA, USA

**G Ridgeway,** Statistics Group, RAND, Santa Monica, CA, USA

**G L Pierce,** College of Criminal Justice, Northeastern University, Boston, MA, USA

Competing interests: none.

### REFERENCES

1 **Hootman JM,** Annest JL, Mercy JA, *et al.* National estimates of non-fatal firearm related injuries other than gunshot wounds. *Inj Prev* 2000;**6**:268–74.
2 **Bureau of Justice Statistics.** *Key facts at a glance:* Crimes committed with firearms, 1973–2004. Available at http://www.ojp.usdoj.gov/bjs/glance/tables/guncrimetab.htm (accessed May 2006).
3 **NCHS Vital Statistics System, Office of Statistics and Programming, National Center for Injury Prevention and Control.** Available at http://www.cdc.gov/ncipc/wisqars (accessed July 2006).
4 **Zimring FE.** Firearms, violence, and public policy. *Sci Am* 1991;**265**:48–54.
5 **Cook PJ,** Moore MH, Braga AA. Gun control. In:Wilson JQ, Petersilia J (eds). *Crime: public policies for crime control.* Oakland, CA: Institute for Contemporary Studies Press, 2002.
6 United Nations Report of the Group of Experts on the Problem of Ammunition and Explosives (A/54/155). Submitted by the UN Secretary-General June 29, 1999.
7 **Cook PJ,** Ludwig J, Venkatesh S, *et al. Underground gun markets,* NBER working paper 11737. Cambridge, MA: National Bureau of Economic Research, 2005.
8 CCRKBA calls California Senate Bill 1152 'regulatory excess' [press release]. Bellevue, WA: Citizens Committee for the Right to Keep and Bear Arms, June 23, 2004.
9 **Violence Prevention Research Program.** *Handgun commerce in California, 2000.* Sacramento, CA: Violence Prevention Research Program, 2004.
10 **Ludwig J,** Cook PJ. Homicide and suicide rates associated with the implementation of the Brady Handgun Violence Prevention Act. *JAMA* 2000;**284**:585–91.
11 **Cook PJ,** Braga AA. Comprehensive firearms tracing: strategic and investigative uses of new data on firearms markets. *Ariz L Rev* 2001;**43**:277–309.
12 **Wright MA,** Wintemute GJ, Claire BE. People and guns involved in denied and completed handgun sales. *Inj Prev* 2005;**11**:247–50.
13 **US Bureau of Alcohol, Tobacco, and Firearms.** *Crime gun trace reports (1999): national report.* Washington, DC: US Bureau of Alcohol, Tobacco, and Firearms, 2000.
14 **Moore MH.** Achieving discrimination on the effective price of heroin. *Am Econ Rev* 1973;**63**:270–7.
15 **Wellford C,** Pepper J, Petrie C (eds). *Firearms and violence: a critical review.* Washington, DC: The National Academies Press, 2005.

# EXHIBIT 2



# REPORT TO COUNCIL
# City of Sacramento

**915 I Street, Sacramento, CA 95814-2604**
**www. CityofSacramento.org**

<u>Staff Report</u>
## August 12, 2008

Honorable Mayor and
Members of the City Council

**Title:  Presentation: Ammunition Sales Records Study**

**Location/Council District:**  Citywide

**Recommendation:** Receive a special presentation by the Sacramento Police Department on the outcomes associated with passage of a series of City Ordinances mandating ammunition sales logs.

**Contacts:**     James Maccoun, 808-0417 Rick Braziel, 808-0800

**Presenters:**   Rick Braziel, Chief of Police ; James Maccoun, Police Captain

**Department:**  Police

**Division:**  Office of the Chief

**Department ID:**  11001021

**Description/Analysis**

**Issue:**  This report provides information and the findings by the Sacramento Police Department approximately one year following the enactment of Chapter 5.66 of the City Code concerning firearm ammunition sales logs.

**Policy Considerations:** Chapter 5.64 of the City Code specifies local regulations concerning the sales of ammunition and/or firearms. This Chapter requires a special City license for such activities and mandates that both the proprietor and designated employees complete a background check.

The City Council enacted Chapter 5.66 of the City Code on August 9, 2007 and made its provisions effective on November 7,2007.  Among the key provisions of this Chapter are requirements that the positive identity of purchasers of firearms ammunition be recorded, paper records be retained by licensees for two years, and key information be forwarded to the Police Department electronically within 5 (five) days of the transaction.

Police Department staff created a secure, electronic method to obtain ammunition records from retailers and established a protocol to identify purchasers who are prohibited by section 12316 (b)(1) of the California Penal

1

Ammunition Sales Records Study                                    August 12, 2008

Code from purchasing or possessing ammunition.  The electronic reporting system had the added benefit of insuring compliance with the employee background check requirements of Chapter 5.64 of the Sacramento City Code.

Detectives from the Sacramento Police Department have successfully utilized the information obtained to arrest numerous persons for firearms violations and seize dozens of illegally possessed weapons. Agents from the Federal Bureau of Alcohol, Tobacco, and Firearms have provided resources and assistance.

Both the Sacramento County District Attorney's Office and the United States Attorney's Office for the Eastern District of California have provided prosecutorial counsel. Both offices are actively prosecuting offenders identified through this program based on their respective authority.

**Environmental Considerations:**

> **California Environmental Quality Act (CEQA):**  This report concerns administrative activities that will not have any significant effect on the environment, and that do not constitute a "project" as defined by the California Environmental Quality Act (CEQA) [CEQA Guidelines Sections 15061(b)(3); 15378(b)(2)].
>
> **Sustainability Considerations:** There is are sustainability considerations associated with this report.

**Commission/Committee Action:** Not Applicable

**Rationale for Recommendation:**  Not Applicable

**Financial Considerations:**   There are no General Fund impacts or financial considerations associated with this report.

**Emerging Small Business Development (ESBD):**  This action is not subject to the California Environmental Quality Act (CEQA) because it does not constitute a "project" as defined in section 15378 of the CEQA Guidelines, and is otherwise exempt pursuant to section 15061(b)(3) (no significant effect on the environment) of the CEQA Guidelines.

Ammunition Sales Records Study                                  August 12, 2008

Respectfully Submitted by: _____
                                    James Maccoun, Police Captain

Approved by: _____
                        Rick Braziel, Chief of Police

Recommendation Approved:

_____
Ray Kerridge
City Manager

Ref: COP XXX

**Table of Contents:**

| | | |
|---|---|---|
| | Report | pg. 1 |
| **Attachments** | | |
| 1 | Background | pg. 4 |
| 2 | PowerPoint Presentation | pg. 6 |

3

Ammunition Sales Records Study                                         August 12, 2008

**Attachment 1**

## Background

The City's ammunition sales log ordinance does not prevent or delay a sale of ammunition at the point of sale. Instead, it mandates that the firearm dealers record the identity of the purchaser and details of the transaction and then forwards this data to the Sacramento Police Department. This data has allowed the Department to identify and investigate offenders involved in firearm-related crimes.

This ordinance requires that the following key bits of data be recorded on a form approved by the Chief of Police at the time of the ammunition purchase:

- name, address, and date of birth of transferee;
- the date of the sale;
- the transferee's driver's license number, state identification card number, passport number, or other valid government-issued photographic identification;
- the brand, type, and quantity of firearms ammunition transferred;
- the identity of the person transferring the firearms ammunition on behalf of the ammunition vendor;
- the transferee's signature and right thumbprint.

The requirement that the right thumbprint of the transferee be included for the purpose of positive identification of offenders has proven to be essential for the successful prosecution of violators.

This ordinance also requires that vendors transmit to the Police Department electronically all of the identifying information  This requirement has allowed the Police Department to electronically check the legal firearms rights status of transferees.  The system for the electronic transfer of purchaser information was operational on January 23, 2008 and has proven to be secure, effective and reliable.  The Sacramento Police Department confirms the legal eligibility of all purchasers of firearms ammunition which is reported pursuant to this ordinance.

The cooperation, compliance, and assistance of all gun and ammunition dealers has been very good. Initially it was determined that not all dealers understood or were in complete compliance with the existing requirements for employee work permits. Because the ammunition log reporting system required that transactions be tracked by employee at the point of sale this situation was quickly and voluntarily corrected by those involved. On-site inspections and follow-up investigations have revealed no violations and responsible conduct by all licensees in the City of Sacramento.

The rate of detection of criminal violators has proven to be higher than originally expected. In order to be effective and to rapidly recover illegal weapons additional

Ammunition Sales Records Study                                    August 12, 2008

investigative staff had to be assigned to assist in these investigations.  The Police Department does not know at this time how long it can sustain such comprehensive follow-up investigation.

The ordinance and the enforcement program which has resulted from it, have proven to be effective tools for locating firearms violators.  Staff believes that this is the only program in existence in the nation which electronically records all local purchases of firearms ammunition and checks the legal eligibility of every purchaser to possess firearms and ammunition.

# **Ammunition Ordinance**

## -2250 purchasers-
## January 16th 2008 to June 29th 2008





# Prohibited persons

- **74 prohibited people purchased ammunition**
    - 61 had felony convictions (84%)
    - 12 had misdemeanor convictions (16%)
    - Only 1 of the prohibited based on DV restraining order

- **Prohibited persons are 3.2% of purchasers**

# Suspects with felony convictions

- **34% (21) prohibited because of a violent felony conviction**

- **49% (30) prohibited because of non-violent felony conviction**

- **16 % (10) prohibited because of narcotic sales prior**

# Prohibited purchasers

- **5 were gang members**
- **16 were on probation (no parolees)**
- **3 had warrants (non-traffic)**
- **11 were 2nd strikers**
- **1 was a 3rd striker**

# Ammunition purchased

- **67% of the ammunition purchased would primarily be used in handguns**
- **17% of the ammunition could be used in handguns or rifles**
- **10% was rifle ammunition**
- **6% was shotgun ammunition**

# Status of cases

- **51 people have been arrested**

- **6 arrest warrants have been issued**

- **15 cases currently under investigation**

# Charges filed by DA

- **53 people charged with a felony**

- **1 person charged with a misdemeanor**

- **1 case rejected by DA**

# Federal prosecutions

- 7 suspects have been indicted in federal court

# Resolution of cases

- **11 have received felony convictions**

- **8 have received misdemeanor convictions**

- **No federal cases adjudicated yet**

# Searches

- **28 search warrants have been executed**

- **17 probation searches have been completed**

- **Firearms and/or ammunition were located 66% of the time**

# Evidence recovered

- **56 firearms seized**
- **100 marijuana plants**
- **30 doses of Ecstasy**
- **1 Stolen laptop taken in residential burglary**
- **3 Stolen firearms**

# Firearms seized

- **34% (19) were pistols**
- **46% (26) were rifles**
- **19% (11) were shotguns**
- **7 were assault weapons**
- **2 were Federal NFA violations**
- **3 were stolen**

# NFA and AW seizure



# Prohibited AW and receivers



# All firearms to be traced



# Resources

- **4 SPD Detectives, 1 ATF Agent, and 2 light duty Officers**

- **Search warrant service often requires assistance from SWAT teams**

- **These investigations require timely and diligent effort**

# Additional findings

- **Good cooperation by firearm dealers**
- **Employee background checks maintained**
- **Inspections have been made and will continue**
- **SPD and allied agencies use information in criminal investigations regularly**

# EXHIBIT 3



**State of New Jersey
Commission of Investigation**

# <u>ARMED AND DANGEROUS</u>

«»

## Guns, Gangs and Easy Access to Firearms Ammunition in New Jersey

*February 2007*

*State of New Jersey*
*Commission of Investigation*



# <u>ARMED</u>
# <u>AND DANGEROUS</u>

## Guns, Gangs and Easy Access
## to Firearms Ammunition
## in New Jersey

**SCI**
**28 West State St.**
**P.O. Box 045**
**Trenton, N.J.**
**08625-0045**

**609-292-6767**

**<u>www.state.nj.us/sci</u>**



# State of New Jersey

COMMISSION OF INVESTIGATION
28 WEST STATE STREET
PO BOX - 045
TRENTON, NEW JERSEY 08625-0045
TEL (609) 292-6767
FAX (609) 633-7366

W. Cary Edwards
*Chair*
Joseph R. Mariniello, Jr.
Kathy Flicker
Patrick E. Hobbs
*Commissioners*

Alan A. Rockoff
*Executive Director*

February 2007

Governor Jon S. Corzine
The President and Members of the Senate
The Speaker and Members of the General Assembly

The State Commission of Investigation, pursuant to <u>N.J.S.A.</u> 52:9M, herewith

formally submits the final report of its investigation into the subversion of legal firearms

ammunition sales in New Jersey.

Respectfully,

W. Cary Edwards
Chair

Kathy Flicker
Commissioner

Joseph R. Mariniello, Jr.
Commissioner

Patrick E. Hobbs
Commissioner

# TABLE OF CONTENTS

*Executive Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

*Guns vs. Ammunition: The Law* . . . . . . . . . . . . . . . . . . . . . . **8**

    **New Jersey's Mixed Message.** . . . . . . . . . . . . . . . . . . . . . . . **8**

    **Other Jurisdictions: Tough Ammo Controls.** . . . . . . . . . . . . . . **10**

*The View From Law Enforcement* . . . . . . . . . . . . . . . . . . . . . **16**

*Referrals and Recommendations* . . . . . . . . . . . . . . . . . . . . . **23**

*Appendix* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A-1**

# *Executive Summary*

The Commission undertook an investigation into the sale and availability of firearms ammunition as part of an ongoing statutory mission to monitor organized crime and assist law enforcement. Initially focused on certain criminal activities involving street gangs and drug-dealing syndicates, the probe was broadened to encompass a wide range of disturbing issues stemming from the ease of legal access to ammunition, particularly for handguns.

In sum, the findings of this unprecedented statewide investigation shatter conventional wisdom and raise critical questions that bear directly upon government's fundamental duty to safeguard the public.  While New Jersey maintains some of the most stringent and restrictive laws in the United States governing the purchase and sale of handguns, the trade in actual bullets – the very projectiles that make firearms lethal – remains a wide-open, unregulated bazaar of misguided commercial activity the practical effect of which includes exacerbated gun violence on the streets of communities across this state.

On any given day, shoppers in New Jersey can enter retail gun outlets, sporting goods stores and other venues and readily purchase firearms ammunition of virtually every caliber in about as much time, and with about as much effort, as it takes to buy a soccer ball or a bag of groceries. The sole prerequisite for an ammo transaction – and this is not even codified in law – is the display of some form of identification, however rudimentary, that purports to establish the buyer's proof-of-age. Proper credentials to own a gun are not required. Even if an individual is expressly prohibited by law from owning a gun, ammunition is another matter entirely. The buyer could be a convicted

felon, a gang member, someone with a history of mental illness or violence – a terrorist even.   No matter: As currently structured, the system allows bullets to be sold indiscriminately.

To gain a clear and comprehensive understanding of just how vulnerable this system is to subversion by criminal elements, the Commission tested and examined lawful sales of handgun ammunition at 60 retail establishments licensed by the state to sell firearms.[1] The stores were selected randomly with wide geographic distribution across 19 of New Jersey's 21 counties. In some instances, criminal informants acting at the direction of Commission investigators entered the stores and successfully bought ammunition even in situations where they produced false identification. In others, handwritten sales logs – the only form of record-keeping required of such stores – revealed numerous purchases of handgun ammunition by persons with a veritable laundry list of criminal histories, including assaults on police officers, sex and drug offenses, domestic violence, child abuse and ties to organized crime.

In all, 43 of the 60 retail outlets surveyed by the Commission – nearly three-quarters of the sample – were found to have sold handgun ammunition to individuals with criminal records.   Further analysis showed that most of these buyers did not possess proper credentials to own or possess any kind of firearm, either a handgun or a long gun (rifle or shotgun).

---

[1] According to the State Police, there are approximately 330 wholesale and retail establishments in New Jersey licensed to sell firearms.

As a consequence of this unbridled traffic in firearms ammunition, the Commission found:

### Ammo Purchases by Gang Members/Associates

- Individuals known to police as members or associates of criminal street gangs purchase handgun ammunition lawfully in New Jersey. Some of this ammunition has been traced to actual subsequent criminal activity, including homicides and other gang-related gun violence. In one instance, individuals later identified as members of the Bloods, the most notorious of the proliferating gangs in New Jersey, purchased ammunition at retail stores and took target practice at a legitimate indoor firing range.

### Ammo Purchases by Convicted Felons

- Lawful purchases of ammunition by convicted felons are widespread. At one store alone, more than 15,000 rounds of handgun ammunition were sold to 42 convicted felons over one four-year period. The criminal history of one such individual included convictions for aggravated assault, unlawful possession of a handgun, unlawful use of a body-armor vest, and possession of a weapon for unlawful use.

### Repeat Purchases by Persons with Criminal Records

- Repeat purchases of ammunition by individuals with criminal records are not uncommon. Indeed, store sales logs revealed repetitive

purchases of significant quantities of handgun ammunition – thousands of rounds at a time – by individuals over a relatively brief period.

**Under-Age Purchases**

- Despite the proof-of-age requirement contained in the New Jersey Administrative Code, individuals later determined to be under-age – including juveniles – were found to have successfully purchased handgun ammunition at retail stores.

**"Straw" Purchases**

- "Straw" purchases, in which ammunition is bought by a surrogate on behalf of someone seeking to conceal his/her own identity and involvement in the transaction, are carried out with ease in New Jersey.

**Unrestricted Sale of Handgun Ammunition via the Internet**

- Handgun ammunition of every size and caliber – including particularly deadly hollow-point, or hollow-nose, bullets – is readily available from Internet Web sites maintained by dealers in New Jersey and elsewhere in the nation. Commission investigators using their real names, a simple credit card and the mailing address of the SCI's Trenton headquarters as the ordering destination successfully purchased a small arsenal of handgun ammunition, including hollow-points, from internet sites without providing any proof of age or identification.

4

**Limited Recourse for Ammunition Dealers**

- Under the current law allowing broad and largely unrestricted access to ammunition, store owners have little recourse but to complete sales transactions even when approached by suspect individuals. In effect, they must choose between risking confrontation with customers they turn away – including threats of possible civil action or worse – or acting as accomplices in the legal conveyance of merchandise possibly destined for the criminal underworld.

**Obstacles to Law Enforcement**

- State and local police and prosecutors are restricted in their ability under current law to intervene in ammunition sales. They have no authority to bring charges for possession of ammunition and have their hands tied when it comes to referrals from retailers of suspicious customers. Police also have no recourse under the law in circumstances involving the seizure of ammunition during execution of a search warrant stemming from a suspected violent crime.

- Handwritten ammunition sales logs maintained by retailers are often illegible and contain inconsistent data. Moreover, local police and county prosecutors do not have legal access to these logs absent a court order.

While this investigation dealt primarily with the subversion of legal ammunition sales, the Commission during its course also discovered gaps and inconsistencies in the

5

current system for tracking and controlling possession of firearms. For example, although New Jersey law requires gun owners to relinquish their licensing credentials if they suffer certain disabilities – a permit in the case of a handgun, a firearms identification card in the case of a long gun – this requirement is not routinely or consistently enforced.

Given the combined urgency of these matters, the Commission on December 12, 2006 conducted a public hearing in Trenton to air the preliminary findings of its investigation and to gather additional facts and data through testimony from various expert witnesses.  The full transcript of that proceeding is contained on a CD attached to this final summary report.  The Commission wishes to express its gratitude to those distinguished members of the law enforcement community who participated in this investigation. Inter-agency cooperation at the federal, state and local levels made possible its successful completion.

But just as this report represents an end, it is also a beginning.  Pursuant to its statutory mission to make recommendations for improvements in laws and regulations, the Commission herein outlines a series of practical systemic reforms designed to assist government in general, and law enforcement in particular, to fulfill their overarching responsibility to safeguard public safety and welfare.  Under present circumstances, that responsibility is in deep peril. It is patently ridiculous, shocking even, to contemplate a system that requires a background check and an official permit to own a handgun but, unaccountably and astonishingly, mandates nothing of the sort as a condition for purchasing the means to transform that gun into a deadly weapon. It is a system that undermines the authority of our police, makes a mockery of our gun control laws and renders the streets of our towns and cities more dangerous at the very moment we are

6

struggling to come to grips with a rising tide of gang violence. The factual foundation established by the findings of this investigation provides an ample basis for long-overdue legislative, regulatory and prosecutorial remedies, and the Commission stands ready to assist in that vital effort.

# *Guns vs. Ammunition: The Law*

## New Jersey's Mixed Message

Under state law in New Jersey, it is far easier to buy the lethal ingredients for firearms than to purchase the weapons themselves.[2]  Indeed, by way of comparison, the state's current statutory framework provides a more elaborate web of regulation for the ownership and operation of motor vehicles than for access to firearms ammunition.

It is noteworthy that few aspects involving access to ammunition even carry the force of statute. The only regulatory provisions, such as they are, reside instead in the state's Administrative Code at Title 13, Chapter 54. This section of the Code requires purchasers of ammunition to display personal identification but does not specify the type. For sales of handgun ammunition, the Code also requires retail dealers to maintain a written record of all sales transactions showing the name of the ammunition manufacturer; the type, caliber or gauge; the quantity sold and date of sale; and the name, address and date of birth of the purchaser.  No such records are required for the sale or disposition of ammunition for rifles or shotguns. However, with respect to both handguns and long guns, dealers are required to confirm the lawful age of the buyer – 21 for handgun ammunition, 18 for rifles and shotguns – but the Code does not specify the method for doing so.  Nor does the Code specify or require any means to verify or corroborate the veracity of the identification materials displayed.

---

[2] The Appendix to this report contains two exhibits presented during the Commission's public hearing to illustrate weaknesses in current laws and regulations governing sales and possession of ammunition. Exhibit A-101 shows the sharp contrast between statutory prohibitions on the sale of guns versus ammunition, while Exhibit A-101-a is the official application required for the purchase of firearms.

The only statutory restrictions involving access to firearms ammunition in New Jersey are contained in <u>N.J.S.A.</u> 2C:39, which makes it a fourth degree crime to manufacture, transport, sell, ship or possess hollow-nose (also known by the terms "hollow-point" and "dum-dum") and/or body-armor-piercing handgun ammunition. The apparent force of these prohibitions, however, are weakened by wholesale exemptions, which include not only law enforcement officers, military personnel, collectors and licensed sellers, but also any individual who purchases such ammunition and transports it to, or stores it at, his/her property or residence.  Hollow-point bullets, which are designed to maximize physical trauma upon impact, are readily available without restriction via the Internet. During this investigation, Commission investigators purchased hundreds of rounds of such ammunition from dealers who maintain Web-based sales outlets in New Jersey and other states.

•     •     •

State laws governing the sale and purchase of actual firearms, meanwhile, are far more detailed and restrictive. The critical elements are as follows:

Retail dealers of firearms must be licensed by the state and adhere to a wide range of standards and qualifications designed to safeguard the public safety, health and welfare. Indeed, the statutory strictures related to firearms sales are so exacting under <u>N.J.S.A.</u> 2C:58-2 that dealers are not even allowed to place any "firearm or imitation thereof . . . in any window or in any other part of the premises where it can be readily seen from the outside."

As to buyers, anyone purchasing or otherwise acquiring a handgun in New Jersey must be at least 21 old and possess a permit signed by the chief of police of the

municipality in which the applicant resides, or by the Superintendent of the State Police if the applicant's locale maintains no full-time police department.  In the case of a long gun (rifle or shotgun), the minimum age for ownership is 18 and, upon approval of the local police chief or State Police Superintendent, the applicant is issued a Firearms Purchaser Identification Card.

With regard to both handguns and long guns, the application form is quite detailed as to the type and nature of information required. In addition to filling it out, applicants must submit two sets of fingerprints and sign a form consenting to a search of mental health records. Applicants are also required to undergo a criminal background check.

State law prohibits the sale or transfer of a handgun or long gun to any person who:

- Has been convicted of a felony.
- Is drug dependent.
- Has been or is confined to an institution for treatment of a mental disorder.
- Suffers from a physical disease or defect which would make it unsafe for him/her to handle firearms.
- Knowingly falsifies any information on the application form.
- Refuses to waive statutory or other rights of confidentiality relating to institutional confinement.
- Is subject to a domestic violence court order.
- Has been convicted in any court of a misdemeanor crime of domestic violence.
- If in possession of a firearm, would otherwise be determined to be a threat to the public health, safety and welfare.

## Other Jurisdictions: Tough Ammo Controls

While New Jersey leads the nation in some respects in its statutory framework for regulating ownership of guns, it lags behind the federal government and a number of states and cities in controlling access to ammunition.  The following summary of legal

controls over the sale and possession of ammunition in other jurisdictions bears upon the

fundamental issues raised in the Commission's investigation:

### *Federal Law*

Title 18 of the United States Code makes it unlawful for any person to purchase a

firearm and/or ammunition who:

- Has been convicted in any court of a crime punishable by a prison term exceeding one year.
- Is a fugitive from justice.
- Is an unlawful user of or addicted to any controlled substance.
- Has been adjudicated as a mental defective or who has been committed to an institution for treatment of a mental disorder.
- Is an undocumented alien.
- Has been dishonorably discharged from the U.S. Armed Forces.
- Has renounced his/her U.S. citizenship.
- Has been convicted in any court of a misdemeanor crime of domestic violence.

### *Other Jurisdictions*

#### **Delaware**

Like the federal government, Delaware prohibits convicted felons from

purchasing and possessing ammunition but extends the prohibition to a far more

extensive array of suspect individuals, including those

- Convicted of a crime of violence involving physical injury.
- Committed for treatment of a mental disorder.
- Convicted for unlawful use, possession or sale of illegal drugs.
- Adjudicated delinquent as juveniles.
- Subject to family court protection-from-abuse orders.
- Convicted of domestic violence.
- Found to be fugitives from justice.

Violation of these prohibitions is considered a felony under Delaware state

law.

11

**Illinois**

Persons seeking to purchase handgun ammunition must possess a valid firearm owner's identification card issued by the State Police. Applicants for such cards must be at least 21 years old or, if under-age, obtain written permission from a parent or legal guardian. Disqualifying factors include any felony conviction under the law of Illinois or any other state, addiction to narcotics, mental retardation, status as an undocumented alien and/or confinement to a psychiatric treatment institution within five years preceding the filing of an application.

Illinois also regulates the purchase of ammunition from out-of-state dealers.  Any resident who does so must, prior to shipment, provide the seller with a copy of his/her valid firearm owner's identification card and either a valid Illinois driver's license or Illinois State Identification Card.  The ammunition may only be shipped to an address on either of those two documents.

**Massachusetts**

Purchasers of ammunition must obtain a state firearms identification card, valid for no more than six years, and be at least 18 years of age. Those between 15 and 18 must have written permission from a parent or legal guardian. Applicants must be fingerprinted to the State Police.  Disqualifying factors include:

- Felony convictions punishable by imprisonment for more than two years.

- Violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental receipt or transportation of ammunition for which a term of imprisonment may be imposed.
- Conviction for possession or sale of illegal drugs.
- Current or past confinement to a psychiatric hospital or institution.
- Being under treatment or confinement for drug addiction or habitual drunkenness.
- Status as an alien.
- Being subject to an order for a permanent or temporary protection due to domestic violence.
- Being subject to an outstanding arrest warrant in any state or federal jurisdiction.

Massachusetts also requires ammunition dealers to be licensed and to report all ammunition sales within seven days to the state's Criminal History Systems Board. Failure to report such transactions can result in suspension or permanent revocation of an individual's firearms identification card or license to carry a firearm, or both, and is punishable by a fine of between $200 and $1,000 for the first offense and, for a second offense, a fine of between $1,000 and $5,000.

Massachusetts has also made it a crime to own, possess or transfer ammunition to any individual not holding a valid firearms identification card. Violation for this provision is punishable by up to two years in prison and/or a fine of up to $500. Second or subsequent violations are punishable by imprisonment of up to two years and/or a fine of up to $1,000.

**California**

State law prohibits the sale of handgun ammunition to anyone under the age of 21 and makes it a crime to possess or own ammunition by individuals

convicted of felony offenses, violent crimes and sex offenses or by individuals with mental-health disorders or those with drug addictions.

### Florida

Besides making it a crime for convicted felons to buy or possess firearms ammunition, Florida has adopted expansive legislation that extends that prohibition to a wide category of persons whose actions have placed them into a statutory category called "violent felony offenders." These are individuals previously convicted of a felony or a conspiracy to commit one or more of the following crimes: murder, manslaughter, aggravated manslaughter of a child, aggravated manslaughter of an elderly person or disabled adult, arson, sexual battery, robbery, kidnapping, aggravated child abuse, aggravated abuse of an elderly person or disabled adult, aggravated assault with a deadly weapon, armed burglary, aggravated battery, aggravated stalking and the unlawful throwing, placing or discharging of a destructive device or bomb. Individuals convicted of violating this section of the law as it pertains to the prohibition on ammunition possession face a mandatory prison sentence of 15 years without parole.

### New York State

State law makes it a misdemeanor for a dealer to sell handgun ammunition to any person not authorized to possess such a firearm.

### New York City

Through its administrative code, the city prohibits the sale of ammunition in its jurisdiction to anyone who does not possess a proper license to own a

handgun or rifle. Ownership credentials must also match the caliber of the ammunition purchased.

In addition, sellers of ammunition within the city are required to maintain sales records showing the caliber, quantity and type of ammunition sold; the name and address of the buyer; the date and time of each transaction; the number of the firearm license or permit or a description of the proof of status of an individual claiming to be exempt from licensure. Information contained in these records must be made available to all law enforcement agencies.

New York City also requires permits for any ammunition dealer who intends to store, sell or offer for sale more than 200 rounds of ammunition.

### District of Columbia

Under the city's municipal code, individuals must hold a valid city-issued registration certificate for a firearm in order to lawfully possess ammunition for a handgun or rifle. Further, the ammunition must be of the same caliber and gauge as the registered firearm.

Washington also has imposed some significant requirements on licensed retail dealers.  The code prohibits the sale or transfer of ammunition unless

- The transaction is made in person;
- The buyer displays a valid firearms registration certificate or, in the case of a non-resident, provides proof that the weapon is lawfully owned in the jurisdiction where that person resides;
- The dealer checks to ensure that the ammunition requested matches the gauge and caliber of the registered firearm; and
- The buyer signs a receipt, which along with the gun registration identifiers, must be maintained by the dealer for a period of one year from the date of sale.

## *The View from Law Enforcement*

During its December 2006 public hearing on these matters, the Commission received extensive testimony from prominent federal, state and local law enforcement officials who characterized free-wheeling access to ammunition as a dangerous and unnecessarily prevalent component of rising gun violence. Gregory Paw, Director of the State Division of Criminal Justice, starkly summarized the situation as follows:

"We have the toughest laws on sale, ownership, possession and transportation of firearms, but no statute regulating sale of ammunition. . . We need these regulations so that gangsters and thugs have to worry about where they're going to get their next round. . . . This is what is fueling these violent street gangs . . . [and] there's no question day-to-day in our cities that this is the number one issue facing law enforcement in New Jersey. It's a long-term issue. It affects the safety and quality of life for citizens across the state, and it's turned parts of our urban landscape into very tragically a killing field, and it's because of these bullets and the guns that these killing fields exist."

Paw called, at a minimum, for legislation to ban the sale of ammunition without proof that a buyer possesses proper ownership credentials for a gun of the same caliber as the bullets sought. He said such a measure would constitute "one important weapon . . . in our fight against illegal guns and our fight against gangs in New Jersey."

Similarly, Christopher J. Christie, the United States Attorney for New Jersey, described guns and ammunition as "the stock and trade of the street gangs in New Jersey" and testified that "there is not a county in this state that is immune from gang violence."

Christie told the Commission he is particularly concerned about the ease with which ammunition can be obtained by seemingly legitimate individuals acting secretly as surrogates for gang members and others linked to the criminal underworld.

". . . [T]he straw purchaser aspect of the ammunition problem is enormous," he testified. "Not only with [individuals] using fake ID, but people who are just going in at the direction of members of gangs and buying just incredible amounts of ammunition . . . tens of thousands of rounds of ammunition that they will use and they will store in safehouses throughout the city, separate from where they keep the firearms, and then they have people who . . . will collect the ammunition from the safehouses for use.

"I think that a great service [the Commission] will be doing is to look at those laws that cover the sale of ammunition, and I think the federal government has to look at that as well because you're only dealing with half the problem when you're dealing with the gun issue."

Three investigators for the Monmouth County Prosecutor's Office – Captain Brian Rubino, Lieutenant James Scully and Detective Rosendo Perez – described the purchase of handgun ammunition from a suburban sporting goods store by under-age members of the Bloods street gang and called for more stringent controls and identification requirements. At a minimum, they said, the system for providing official credentials for the purchase of firearms should be strengthened and extended to ammunition and include photographic I.D. cards with fixed expiration dates.

". . . [I]f you talk to the average law-abiding citizen, they would be amazed to hear how easy it is to buy ammunition in the State of New Jersey," Rubino stated. "Not many law enforcement officers understand how easy it is to purchase ammunition."

Indeed,  Rubino said it has been his experience that criminals, gang members and others have easily adapted to the paradoxical statutory structure governing access to guns and ammunition. "There is what is called a sharing of firearms," he stated.  "There might be one firearm with six individuals that have access to it. It's not unusual over the last number of years to find ammunition on individuals on the street or in their houses. Most of them that we come across . . . are convicted felons, but they have access to ammunition. When they need their gun, they make a phone call and it's delivered to them or they go to a location and pick it up.

". . . [I]f they didn't have access to buy [ammunition], being required to have a firearms ID card, they wouldn't get to the first step to get it in their hands."

Trenton Police Detective Frank Clayton and Frank Guido, an investigator for the Mercer County Prosecutor's office, testified that it is not unusual to find caches of commercially-purchased ammunition during searches of property linked to criminal suspects. In one such instance, they recounted the discovery of assorted boxes of handgun ammunition inside the car of an individual stopped by Trenton police and found to be the subject of outstanding arrest warrants. The bullets, including 50 rounds each of .380 cal., .25 cal. and 9 mm ammunition, were found in a bag bearing the name of a prominent sporting goods store along with what appeared to be a handwritten ammunition shopping list. Subsequent investigation determined that the ammunition was purchased at the behest of a high-ranking member of the Bloods.

"There are a lot of things that can be done," Guido stated. "This gets tossed around among law enforcement officers all the time. . . .One of the things that really doesn't make sense to us is that a person who does not have the ability or the legality to

18

purchase a handgun or permit to purchase a handgun [is now] allowed to purchase handgun ammunition just because they're [a certain age] and have identification."

Guido and Clayton also expressed serious concern over the absence in the current system of any mechanism to alert retailers, prior to completion of a transaction, that they might be selling ammunition to an individual with a criminal record. Likewise, they noted that law enforcement agencies across New Jersey presently lack the ability to "red flag" excessive ammunition purchases or purchases by persons linked to gangs or other criminal organizations and threat groups.

State Police Lt. Col. Frank Rodgers, meanwhile, pointed to recent record levels of gun-related homicides in New Jersey's major cities and stated bluntly, "The citizens of those communities are absolutely terrorized."  By maintaining a system that allows virtually unrestricted firearms ammunition sales, he said, "we're making it easy for them to shoot at us. It's that simple."

Rodgers, who appeared with Detective Sgt. First Class John Cunha of the State Police Firearms Investigation Unit, told the Commission that, at a minimum, restrictions mirroring federal law should be imposed at the state level to prohibit access to ammunition by felons. "I feel strongly that a convicted offender should not be allowed to purchase or be in the possession of ammunition for the same reason that they shouldn't be allowed to own a gun," he stated.  As to the issue of how to control "straw purchases", Rodgers said criminal sanctions should be part of the strategy. "Those penalties have to be substantially enhanced to bring to bear some level of deterrence," he testified. "Very specific facts that I'm familiar with in ongoing investigations demonstrate to me that there [is] no deterrence whatsoever [in] the statutes that exist today."

Rodgers devoted substantial testimony to an evaluation of the need to bring computer databases, digital identification systems and other forms of high-technology – as well as adequate resources – to bear on the challenge of tracking and controlling access to both ammunition and firearms. Echoing concerns expressed by others about gaps like the lack of photographic identification requirements for firearms ownership credentials, he stated that more than five years after the September 11, 2001 terrorist attacks "it's almost unbelievable that we have taken all of the steps that we have to protect ourselves, and [we have] digital driver's licenses and everything else, yet we let someone walk into a business to purchase a firearm and we don't exercise that same level of precaution. . . . At minimum, . . . [the state should] adopt the same standards that we use to protect us when we give a 17-year-old the control of a car. If we're going to give an 18-year-old control of a gun, it seems logical that we at least do the same thing." In this context, Rodgers said it is vital for the public to understand how "sophisticated" violent criminal elements in New Jersey have become in recent years in their use of high-technology to communicate with each other and camouflage their activities. "They've entirely embraced the Internet," he said. They've optimized it, no bones about it."

From the law enforcement perspective, the sales logs required of ammunition retailers are emblematic of the type of materials ripe for upgrading through computer technology, Rodgers observed. Currently handwritten in bound volumes, these documents often are difficult to read and contain inconsistent and/or incomplete information. "It seems to me that assuming that we never went beyond the paper system," he stated, "[it] need[s] to be standardized, and [it] would be incumbent upon us a division to issue something that requires the standard reporting of certain identifiers, master index

type of data.  Taking it beyond that, I think the logical step is moving to some sort of electronic medium." He warned, however, that such an initiative would itself present a challenge because it would require the establishment of an effective high-tech "infrastructure" upon which it could be built.

Rodgers also testified that it is vital for law enforcement agencies in New Jersey to enhance and coordinate the processing and sharing of criminal intelligence information via a comprehensive central repository of data relevant to firearms-related investigations and other activities. New Jersey's existing State Intelligence Management System (SIMS) provides an effective foundation for such an initiative, he stated, but it also requires "a robust analytical network" to function at full potential. "We can have all the information in the world," he said, "but if we don't have somebody that is putting together the types of products, assessments, that will influence law enforcement, decision-makers, legislator[s] and others, we will continue to expend resources in areas where we don't receive the return on investment that the public demands."

Finally, Rodgers and Sgt. Cunha addressed the challenge faced by the State Police Firearms Investigation Unit in keeping pace with an ever-increasing workload. The unit is charged with a range of diverse responsibilities, including conducting criminal background checks on applicants for gun permits, auditing weapons-storage practices by retailers and reviewing sales logs.  The sheer volume of such activity, combined with limited staff and resources, leaves the Unit little time to track phenomena such as whether, and to what extent, gun owners who suffer disabilities relinquish permits or firearms identification cards, as required by state law. "It's an antiquated system," Rodgers testified, "one that didn't anticipate our reality today, didn't take account [of] the

resources that we could bring to tighten this up.  It certainly was the intention of the legislature back then to put some provisions into place that would . . . keep this in check, and it's a whole different world today."

# *Referrals and Recommendations*

The Commission refers the finding of this investigation to the following governmental agencies for any action they deem appropriate:

- The New Jersey Department of Law and Public Safety, including the Office of the Attorney General, the Division of Criminal Justice and the State Police.

- The Office of the United States Attorney for the District of New Jersey.

• • •

**1. Strengthen Requirements for Purchasing Firearms Ammunition in New Jersey**

Legislation should be enacted to mandate the following requirements for the lawful purchase of firearms ammunition in New Jersey:

- For a handgun, any individual seeking to buy ammunition must, at the time of sale, present proof that he/she is at least 21 years of age and possesses a valid New Jersey permit or license to own such a weapon. In the case of a non-resident of New Jersey, proof must be presented that the weapon is lawfully possessed in the jurisdiction where the buyer resides.

- For a long gun (rifle or shotgun), any individual seeking to buy ammunition must, at the time of sale, present proof that he/she is at least 18 years of age and possesses a valid permit or license to own such a weapon. In the case of a nonresident of New Jersey, proof must be

presented that the weapon is lawfully possessed in the jurisdiction where the buyer resides.

- Firearms ownership credentials should be subject to renewal every three years.
- Ammunition to be purchased must be of the same gauge and caliber as the firearm(s) reflected on the official permit or licensure documents.

## 2.  Upgrade and Modernize Firearms/Ammunition Ownership Credentials

- Any person who obtains a permit or license to purchase and possess a firearm, whether a handgun or long gun, should, as a condition of ownership, be issued an official identification card bearing his/her name, address, physical description, photograph, firearm serial number and license expiration date.
- Any person seeking to purchase ammunition should be required to display this digital photographic identification card as a condition of purchase.

## 3.  Tighten Ammunition Sales Practices

- Any sale or transfer of firearms ammunition physically conducted in New Jersey should be made in person between the seller and the person for whom the ammunition is intended.
- Sellers should be required to examine the firearm permit or licensure documents presented by purchasers to ensure that the ammunition sought

is of the gauge and caliber of the weapon for which such documents were issued.

- Prior to completion of any ammunition sale, the purchaser should be required to sign a receipt, a copy of which must be retained by the seller.

- Boxes and other containers of ammunition to be sold in New Jersey should be stamped with bar-codes containing information about the contents, and sellers should be equipped with appropriate bar-code scanning technology so that an electronic record of sales transactions can be maintained.

- Vendors should be required to report all ammunition sales within seven days of each transaction to the state, and a determination should be made as to which entity, whether the State Police Firearms Investigation Unit or some other unit of government, would be the most appropriate repository for such information.

- Sellers should be provided with a mechanism to track large-volume and/or unusually frequent purchases of ammunition by buyers.

### 4.  Regulate Out-of-State Ammunition Purchases by New Jersey Residents

- Any New Jersey resident who seeks to purchase ammunition from out-of-state vendors, either directly or through mail-order catalogs or the internet, should be required to provide such vendors with a copy of his/her firearms permit or licensure documents and a copy of his/her New Jersey photo driver's license or other form of currently valid government-issued photo identification, such as a passport.

25

- All ammunition purchased in this manner should only be shipped to an address listed on the presented personal identification documents.

5. **Enact Prohibitions on the Sale, Transfer and/or Ownership of Ammunition**

Legislation should be enacted to prohibit the sale or transfer of firearms ammunition to, and the possession of such ammunition by, any individual who:

- Has been convicted of, or pled guilty to, any crime listed in Title 2C of the New Jersey Criminal Code or any comparable crime in any other state or federal jurisdiction.
- Has been adjudicated a youthful offender or juvenile delinquent in New Jersey or other jurisdiction.
- Has been confined within the past five years to a hospital or institution for the treatment of mental illness.
- Is residing in the U.S. illegally.
- Is currently subject to a restraining order or other order of protection.
- Is currently subject to an outstanding arrest warrant in any state or federal jurisdiction.
- Has been convicted of, or pled guilty to, any violation of law regulating the use, possession, sale, ownership, transfer, purchase, lease, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed.
- Has been convicted of, or pled guilty to, any violation of law regulating the use, possession or sale of controlled dangerous substances or other illegal drugs.

Appropriate criminal penalties should be imposed against anyone convicted of violating such prohibitions. Further, it should be considered a violation of the terms of probation or parole for any offender in any of the above categories to be found in possession of a firearm or ammunition.

26

### 6.   Strengthen Criminal Penalties

Appropriate criminal penalties, including fines and terms of incarceration, should be enacted for:

- The ownership, possession or transfer of ammunition by anyone not possessing a valid permit or license for a firearm.

- Individuals who leave firearms ammunition unattended in the presence of children or for purposes of illegally transferring it to a person or persons not possessing valid firearms ownership credentials.

- Anyone who possesses ammunition of a caliber, gauge or type but who does not also possess a valid license or permit to own or possess a firearm with which the ammunition may be used.

### 7.   Strengthen the N.J. State Police Firearms Investigation Unit

Licensure fees for the sale and purchase of firearms in New Jersey should be increased to realistically reflect the cost of maintaining effective oversight of such activity, and the proceeds of such fees should be dedicated to the operation of the Division of State Police Firearms Investigation Unit.

### 8.   Enhance and Modernize Receipt and Maintenance of Information by Ammunition Sellers

Under current law, licensed ammunition vendors in New Jersey are required to collect only rudimentary information from buyers – name, address, date of transaction and the amount, type, and caliber of ammunition sold.  This information is then entered, by hand, into sales log books subject to periodic inspection by agents of the U.S. Bureau

of Alcohol, Tobacco and Firearms. As the Commission's investigation has shown, however, this limited record-keeping provides law enforcement with a thoroughly inadequate system of oversight over the commerce in guns and bullets.

Legislation, therefore, should be enacted to require that buyers relinquish additional significant information, including the serial numbers of the firearms for which ammunition is being purchased and identifying data from gun ownership permits or licensure documents.

Efforts should also be made to equip vendors with state-of-the-art computer technology that would enable them to forego handwritten logs and enter all information obtained from buyers into a central database accessible to law enforcement.

**9.  Require Ready Access by Law Enforcement Agencies to Ammunition Sales Information**

Legislation should be enacted to ensure that all information logged by vendors pertaining to the sale of firearms ammunition be made available at any time to all local, state and county law enforcement authorities.  In the event a licensed vendor ceases business operations, such records should immediately be surrendered to the local chief of police, county prosecutor or Division of State Police.

# APPENDIX

# SALES PROHIBITIONS
## *Guns vs. Ammunition*

| Guns | Ammunition |
|------|------------|
| | |

**Guns**

➢ **Criminal Record**

➢ **Public Health, Safety and Welfare**

➢ **Medical, Mental or Alcoholic Background**

➢ **Narcotics/Dangerous Drug Offense**

➢ **Falsification of Application**

➢ **Domestic Violence**

➢ **Other**

**Ammunition**

➢ **Under Age**

Exhibit
A - 101

**STATE OF NEW JERSEY**

*This form is prescribed by the Superintendent for use by applicants for Firearms I.D. Cards and Handgun Purchase Permits. Any alteration to this form is expressly forbidden.*

☐ Application for Firearms Purchaser Identification Card

☐ Application to Purchase a Handgun   Amount of permits being applied for: _____

All persons wishing to obtain a Firearms Purchaser Identification Card or Permit to Purchase a Handgun are required to complete this application form.
**Submit in duplicate.** *(If internet form, make and sign two originals)*

Municipality Code #

(1) Last Name *( If female, include maiden)*   First   Middle | (2) Resident Address   *(Number - Street - City - State - Zip)*

(3) Date of Birth   Month / Day / Year | (4) Age   *(Place of Birth - City - State or Country)* | (5) U.S. Citizen ☐ Yes ☐ No | (6) Social Security Number   _ - _ - _

(7) Sex   Height   Weight   Eyes   Race   Hair   Complexion | (8) Distinguishing Physical Characteristics

(9) Name of Employer | (10) Employer's Address *(Number - Street - City - State - Zip)*

(11) Occupation | (12) Home Telephone ( ) - | (13) Business Telephone ( ) -

(14) Driver's License Number & State | (15) If you possess a N.J. Firearms Purchaser ID Card, list the number

| | | | | |
|---|---|---|---|---|
| (16) Have you ever been adjudged a juvenile delinquent? | ☐ Yes ☐ No | If Yes, List Date(s) | Place(s) | Offense(s) |
| (17) Have you ever been convicted of a disorderly persons offense, that has not been expunged or sealed? | ☐ Yes ☐ No | If Yes, List Date(s) | Place(s) | Offense(s) |
| (18) Have you ever been convicted of a criminal offense that has not been expunged or sealed? | ☐ Yes ☐ No | If Yes, List Date(s) | Place(s) | Offense(s) |
| (19) Have you ever had a firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun refused or revoked? | ☐ Yes ☐ No | If Yes, By Whom? | When?   Where | Why? |
| (20) Have you ever had an Employee of Firearms Dealer License refused or revoked? | ☐ Yes ☐ No | If Yes, By Whom? | When?   Where | Why? |

(21) Are you an Alcoholic? ☐ Yes ☐ No | (22) Have you ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis? *If Yes, give the name and location of the institution or hospital and the date(s) of such confinement or commitment.* ☐ Yes ☐ No

(23) Are you dependent upon the use of any narcotic or other controlled dangerous substance? ☐ Yes ☐ No

(24) Are you now being treated for a drug abuse problem? ☐ Yes ☐ No | (25) Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an in-patient or outpatient basis for any mental or psychiatric conditions? *If Yes, give the name & location of the doctor, psychiatrist, hospital or institution and the date(s) of such occurrence.* ☐ Yes ☐ No

(26) Do you suffer from a physical defect or sickness? ☐ Yes ☐ No

(27) If answer to question 26 is yes, does this make it unsafe for you to handle firearms? *If not, explain.* ☐ Yes ☐ No | (28) Are you subject to any court order issued pursuant to Domestic Violence? *If yes, explain.* ☐ Yes ☐ No

(29) Have you ever been convicted of any domestic violence in any jurisdiction which involved the elements of (1) striking, kicking, shoving, or (2) purposely or attempting to or knowingly or recklessly causing bodily injury, or (3) negligently causing bodily injury to another with a weapon? *If Yes, explain.* ☐ Yes ☐ No

(30) Are you presently, or have you ever been a member of any organization which advocates or approves the commission of acts of violence, either to overthrow the government of the United States or of this State, or to deny others of their rights under the Constitution of either the United States or the State of New Jersey? *If yes, list name and address of organization(s) here:* ☐ Yes ☐ No

(31) Names & Addresses of two reputable persons who are presently acquainted with the applicant, other than relatives:
   Name   Address   Telephone Number
A. _____
B. _____

**APPLICANT: DO NOT WRITE BELOW THIS SPACE**

A non-refundable fee of $5.00 for a Firearms Purchaser Identification Card or $2.00 for each Permit to Purchase a Handgun, payable to either the Superintendent of State Police or the Chief of Police in the municipality in which you reside, must accompany this application.

*I hereby certify that the answers given on this application are complete, true and correct in every particular. I realize that if any of the foregoing answers made by me are false, I am subject to punishment.*

**APPROVED** ☐

**IDENTIFICATION CARD/PERMIT NUMBER(S)**

**DISAPPROVED** ☐

**Reason for Disapproval**

**GRANTED ON APPEAL** ☐

☐ A. CRIMINAL RECORD
☐ B. PUBLIC HEALTH SAFETY AND WELFARE
☐ C. MEDICAL, MENTAL OR ALCOHOLIC BACKGROUND
☐ D. NARCOTICS/ DANGEROUS DRUG OFFENSE
☐ E. FALSIFICATION OF APPLICATION
☐ F. DOMESTIC VIOLENCE
☐ G. OTHER (SPECIFY) _____

(27) _____
Signature of Applicant   Date of Application
*(The disclosure of my social security number is voluntary. Without this number, the processing of my application may be delayed. This number is considered confidential.)*

Falsification of this form is a crime of the third...

**APPLICANT: DO NOT W...**

This _____   Da...

Signature _____

Department of Police

**Exhibit A – 101a**

STS-33 (Rev 11/03)

# EXHIBIT 4

## <u>IMPORTANT NOTICE</u>

<u>CALIFORNIA DEPARTMENT OF JUSTICE UPDATE REGARDING THE USE OF
"FEDERAL LIMITS APPLY" DRIVER LICENSES AND IDENTIFICATION CARDS TO
PURCHASE FIREARMS</u>

California law requires a prospective firearms purchaser to present "clear evidence of [the purchaser's] identity and age."  (Pen. Code, §§ 26815, subd. (c), 27540, subd. (c).)
Any **valid** California driver license or identification card may be used as "clear evidence of the person's identity and age" (Pen. Code, § 16400), including REAL ID and "FEDERAL LIMITS APPLY" versions (samples below).  Please note, however, that:

- A person whose presence in the United States is not authorized under federal law is prohibited from receiving or possessing a firearm or ammunition (18 U.S.C. § 922 (d)(5)(A), (g)(5)(A));

- It is *unclear* whether a person with a "FEDERAL LIMITS APPLY" driver license or identification card is eligible to purchase a firearm under federal law, because that person was not necessarily required to submit satisfactory proof of lawful presence in the United States; and

- Recently enacted state legislation (Cal. Stats. 2018, ch. 885, S.B. 244) prohibits certain "FEDERAL LIMITS APPLY" driver licenses and identification cards—those issued to persons who were not required to submit satisfactory proof of lawful presence in the United States—from being used as evidence of an individual's citizenship or immigration status for any purpose.  These driver licenses and identification cards are physically indistinguishable from other "FEDERAL LIMITS APPLY" driver licenses and identification cards issued to individuals who have provided satisfactory proof of lawful presence in the United States.

The California Department of Justice suggests that if a prospective purchaser presents a "FEDERAL LIMITS APPLY" driver license or identification card, a firearms dealer may wish to consider asking for documentation of lawful presence in the United States, such as a:

- Valid, unexpired U.S. passport or passport card

- Certified copy of U.S. birth certificate

- U.S. Certificate or Consular Report of Birth Abroad of a U.S. Citizen

- Valid, unexpired foreign passport with valid U.S. immigrant visa and approved Record of Arrival/Departure (I-94) form

- Certified copy of birth certificate from a U.S. Territory

- Certificate of Naturalization or U.S. Citizenship

- Valid, unexpired Permanent Resident Card

See the next page for examples of California "REAL ID" and "Federal Limits Apply" Driver Licenses.









Should you have any questions please contact the Bureau of Firearms, Customer Support Center at (855) 365-3767 or via e-mail at bofdes@doj.ca.gov.

# EXHIBIT 5



California Department of Justice
Attorney General Xavier Becerra

## Consumer Alert Regarding the Use of "Federal Limits Apply" Driver Licenses and Identification Cards to Purchase Firearms

If you have a "FEDERAL LIMITS APPLY" driver license or identification card and wish to use it as identification to purchase a firearm, the dealer might require you to present proof that you are lawfully present in the United States.  This is because federal law prohibits anyone who is not lawfully present in the United States from receiving or possessing a firearm or ammunition.

The Department of Motor Vehicles (DMV) currently issues two types of California driver licenses and identification cards: "REAL ID" and "FEDERAL LIMITS APPLY" (samples below).  An applicant for a "FEDERAL LIMITS APPLY" driver license or identification card is not necessarily required to provide proof to DMV of lawful presence in the country.

Recently enacted state legislation (Cal. Stats. 2018, ch. 885, S.B. 244) prohibits certain "FEDERAL LIMITS APPLY" driver licenses and identification cards—those issued to persons who were not required to submit satisfactory proof of lawful presence in the United States—from being used as evidence of an individual's citizenship or immigration status for any purpose.  These driver licenses and identification cards are physically indistinguishable from other "FEDERAL LIMITS APPLY" driver licenses and identification cards issued to individuals who have provided satisfactory proof of lawful presence in the United States.

The California Department of Justice has advised firearms dealers that they may wish to consider requiring proof of lawful presence from all purchasers who present a "FEDERAL LIMITS APPLY" driver license or identification card.  If you plan to purchase a firearm using a "FEDERAL LIMITS APPLY" driver license or identification card, the dealer might also require you to present one of the following documents:

- Valid, unexpired U.S. passport or passport card
- Certified copy of U.S. birth certificate
- U.S. Certificate or Consular Report of Birth Abroad of a U.S. Citizen
- Valid, unexpired foreign passport with valid U.S. immigrant visa and approved Record of Arrival/Departure (I-94) form
- Certified copy of birth certificate from a U.S. Territory
- Certificate of Naturalization or U.S. Citizenship
- Valid, unexpired Permanent Resident Card

To avoid surprises, you should check with the firearms dealer you plan to visit to verify the dealer's identification requirements.  Alternatively, you can obtain a REAL ID driver license or identification card, which would provide sufficient proof of lawful presence in the United States. Please note that beginning October 1, 2020, the federal government will require your driver license or identification card to be a REAL ID if you wish to use it as identification to board a domestic flight or enter military bases and most federal facilities. Information about REAL ID licenses and identification cards can be obtained from the DMV at www.dmv.ca.gov.









*This alert is for informational purposes only and should not be construed as legal advice or as policy of the State of California. If you want advice on a particular case, you should consult an attorney or other expert.*

# EXHIBIT 6

State *of* California Department *of* Justice

  



# XAVIER BECERRA

## *Attorney General*

| | Search |
|---|---|

Translate Website | Traducir Sitio Web

# California Department of Justice Issues Consumer Alert on the Use of "Federal Limits Apply" Driver Licenses and IDs to Purchase Firearms

Press Release  /  *California Department of Justice Issues Consumer Alert on th…*



Tuesday, November 20, 2018

Contact: (916) 210-6000, agpressoffice@doj.ca.gov

**SACRAMENTO** – Today, the California Department of Justice issued a consumer alert to Californians and a notice to firearms dealers regarding identification requirements for the purchase of firearms in California. Recent changes to California driver licenses and identification cards may result in firearms dealers requiring that holders of a driver license or identification card with the words "Federal Limits Apply" on it provide documentary proof that they are lawfully present in the United States in order to purchase a firearm. This is because federal law prohibits anyone who is not lawfully present in the United States from receiving or possessing a firearm or ammunition.

The Department of Motor Vehicles (DMV) currently issues two types of California driver licenses and identification cards: "REAL ID" and "Federal Limits Apply." Applicants for a "Federal Limits Apply" driver license or identification card are not necessarily required to provide proof of lawful presence to DMV, unlike "REAL ID" applicants.

In today's consumer alert, the California Department of Justice informs consumers that firearms dealers may wish to consider requiring individuals with a "Federal Limits Apply" driver license or identification card to present proof of lawful presence. This may include one of the following documents:

- Valid, unexpired U.S. passport or passport card
- Certified copy of U.S. birth certificate
- U.S. Certificate or Consular Report of Birth Abroad of a U.S. Citizen
- Valid, unexpired foreign passport with valid U.S. immigrant visa and approved Record of Arrival/Departure (I-94) form
- Certified copy of birth certificate from a U.S. Territory
- Certificate of Naturalization or U.S. Citizenship
- Valid, unexpired Permanent Resident Card

Consumers should check with the dealer from whom they plan to purchase a firearm to verify the dealer's identification requirements. Alternatively, consumers can obtain a REAL ID driver license or identification card, which would provide sufficient proof of lawful presence in the United States.

A copy of the consumer alert can be found here.

# # #

11/20/20... California Department of Justice Issues Consumer Alert on the Use of Federal Limits Apply Over Licenses and Use to Purchase Firea…

Case 3:19-cv-00802-BEN-JLB Document 34-7 Filed 09/05/19 PageID.1467 Page 81 of 84



**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
**OFFICE OF THE ATTORNEY GENERAL**

| | |
|---|---|
| | Search |

---

### WHO WE ARE

About AG Xavier Becerra

History of the Office

11/20/2019   California Department of Justice Issues Consumer Alert on the Use of "Federal Limits Apply" Driver Licenses and as to Purchase Firea…

Case 3:19-cv-00802-BEN-JLB   Document 34-7   Filed 09/05/19   PageID.1468   Page 82 of 84

Organization of the Office

## WHAT WE DO

Public Safety

Opinions and Quo Warranto

Research

Children & Families

Civil Rights

Consumer Protection

Environment & Public Health

Tobacco Directory

Tobacco Grants

## OPEN GOVERNMENT

Ballot Initiatives

Conflicts of Interest

Criminal Justice Statistics

Meetings and Public Notices

OpenJustice Initiative

Public Records

Publications

Regulations

## Memorial

Agents Fallen in the Line of Duty

## Vote

Register to Vote

## WHAT WE'RE WORKING ON

21st Century Policing

Children's Rights

Consumer Protection and Economic Opportunity

Environmental Justice

Equality

Health Care

Immigration

OpenJustice

## MEDIA

Consumer Alerts

Press Releases

Media Library

## CAREERS

Getting a State Job

Examinations

Job Vacancies

Internships & Student Positions

Attorney General's Honors Program

Earl Warren Solicitor General Fellowship

---

Office of the Attorney General    Accessibility    Privacy Policy    Conditions of Use    Disclaimer

© 2018 DOJ

# CERTIFICATE OF SERVICE

Case Name:   **Rhode v. Becerra**                    No.   **3:18-cv-00802-BEN-JLB**

I hereby certify that on <u>August 5, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT XAVIER BECERRA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF NELSON R. RICHARDS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>August 5, 2019</u>, at Sacramento, California.


|   Tracie L. Campbell   |   */s/ Tracie Campbell*   |
| :---: | :---: |
| Declarant | Signature |

SA2018101286
13985049.docx