C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| KIM RHODE, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>　　　　　Defendant. | Case No.: 3:18-cv-00802-BEN-JLB<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:　August 19, 2019<br>Hearing Time:　10:30 a.m.<br>Courtroom:　　5A<br>Judge:　　　　Hon. Roger T. Benitez<br><br>[Filed concurrently with Declaration of Matthew D. Cubeiro] |
|---|---|

# ARGUMENT

## I. Plaintiffs Have Standing to Challenge the System on Its Face

The State argues that the Individual Plaintiffs lack standing to challenge the System's "purported burdens" because none of them has alleged to have experienced those burdens. Opp'n 17-18. The State is wrong. An individual whose right to acquire ammunition is affected by burdens imposed on vendors has standing to challenge those burdens. *See Jackson v. City & Cty. of San Francisco*, 829 F. Supp. 2d 867, 872 n. 3; *Doe v. Bolton*, 410 U.S. 179, 186 (1973) (holding that a woman had standing to challenge abortion statute because it "deterred hospitals and doctors from performing abortions," limiting access to the right). In any event, CRPA has standing to sue on its members' behalf, and that is enough. *See, e.g.*, *Arlington Heights v. Metro. Housing Devel. Corp.*, 429 U.S. 252, 264 & n. 9. As alleged in the FAC, "CRPA represents the interests of those who are affected by the" scheme, and California's "purchaser authorizations requirements severely burden the purchase, sale, and transfer of ammunition by overburdening consumers." FAC ¶¶ 22, 75. CRPA's declaration explains how those burdens have affected its members in practice. Travis Decl. ¶¶ 4-14.

The State is also wrong that Plaintiffs' facial challenge fails because they cannot establish that " 'no set of circumstances exists under which [the regulation or statute] would be valid' " because "tens of thousands of ammunition transactions were processed in July alone." Opp'n 17 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Setting aside that the *Salerno* standard has long been hotly debated and rarely applied,[1] the State's application of it here is misplaced. Following the State's logic, even a flat ban on firearms could not be struck on its face because there will always be a class of persons who cannot legally possess firearms to whom the law would be validly applied. So the

---

[1] *Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999) (rejecting view that "plaintiff must establish that no set of circumstances exists under which the Act would be valid"); *Washington v. Glucksberg*, 521 U.S. 702, 739-40 (1997) (Stevens, J., conc.) ("I do not believe the Court has ever actually applied such a strict standard, even in *Salerno* itself.")

question is not whether anyone can clear the many hurdles the System places in the way of the right to obtain ammunition. Instead, it is whether the State can demand that purchasers submit to a system that undisputedly (1) wrongfully denies nearly 18% of all purchasers, (2) rejects the State's standard-issued ID, and (3) causes undue delays that may put vendors out of business, eliminating the source of ammunition necessary to exercise the right to armed self-defense. *See* Mot. 8-10; Opp'n 16, 21. Under "no set of circumstances" could such a scheme be valid. *Salerno*, 481 U.S. at 745. What's more, in other rights contexts, a facial challenge will stand regardless of a law's "plainly legitimate sweep," if a "substantial number" of the law's applications are invalid. *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 n.6 (2008).

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Claims that California's Ammunition Scheme Violates the Second Amendment

### A. California's Ammunition Scheme Implicates the Second Amendment

According to the State, its scheme is immune from Second Amendment scrutiny because it is one of those "laws imposing conditions or qualifications on the commercial sale of arms" that the Supreme Court described as "presumptively lawful." Opp'n 12. But the Ninth Circuit has already said not only that the Second Amendment protects the acquisition of ammunition, but also that "*Heller* does not include ammunition regulations in the list of 'presumptively lawful' regulations." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014). In all events, whatever the Supreme Court intended to be a "presumptively lawful" commercial sales regulation, it certainly did not have in mind a law that could deny substantial numbers of people their rights.

### B. California's Ammunition Scheme Fails Heightened Scrutiny

First, contrary to the State's claim, Plaintiffs do not concede that intermediate scrutiny applies. Opp'n 13, n.4. Instead, Plaintiffs expressly state that strict scrutiny should apply because the System imposes the severe burden of denying many non-prohibited-persons access to ammunition, without which they cannot exercise their core right to armed self-defense at all, even within their homes. Mot. 13. Plaintiffs focus on the

intermediate scrutiny analysis in greater depth because the State cannot meet its burden even under that lower standard. Mot. 13.

In describing its burden under intermediate scrutiny, the State relies almost exclusively on Second Amendment cases from the Ninth Circuit. It does not address the Supreme Court's articulation of intermediate scrutiny that Plaintiffs lay out in their motion—that the State bears the burden of proving *both* that the System is "substantially related" to an important interest and "closely drawn" to achieve that end. Mot. 13 (quoting *Edenfield v.* Fane, 507 U.S. 761, 770-71 (1993); *McCutcheon v. FEC*, 134 S. Ct. 1434, 1456-57 (204)). When the State is held to these burdens, it cannot meet either.

### 1. California's ammunition scheme is not "substantially related" to any public safety interest.

For a law to be substantially related to the government's interests, the government must prove that its "restriction will in fact alleviate" its concerns. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). It is not enough for the government to rely on "mere speculation or conjecture." *Id*. Plaintiffs do not dispute that keeping weapons away from dangerous people is a substantial public safety interest. Opp'n 15. They do, however, dispute that California's scheme substantially furthers that interest.

First, the State touts the experiences of Los Angeles and Sacramento in monitoring ammunition purchases as evidence that its system works. Opp'n 15. But neither of those systems rejects FLA IDs or requires a background check to purchase ammunition—let alone one that denies about one of every six eligible purchasers. L.A., Cal., Mun. Code § 55.11; Sacramento, Cal., City Code §§ 5.66, 5.66.020, 5.66.040. So neither supports the State's claim that it has a substantial interest in rejecting an FLA ID or requiring a background check so susceptible to improperly rejecting lawful purchasers.

In evaluating whether the State's System "will in fact alleviate" its concerns, a more apt comparison is to *the State's* firearm background check system. A study funded by the University of California Firearm Violence Research Center—created by the California Legislature—determined that comprehensive background check requirements were "not

associated with significant and specific changes in rates of fatal firearm violence." Cubeiro Decl., Ex. 40 at 53. Specifically, the study concluded that implementation of these requirements "did not result in population-level changes in the rates of firearm-related homicides and suicides in California." *Id*., Ex. 40 at 55. The State offers only speculation that its ammunition background check system would fare any better.

Contrary to the state-funded study, the State claims that it knows background checks work because background checks stopped 82,000 prohibited persons from making firearm purchases in 2012 alone. Opp'n 5, 16 (citing Prop. 63 §§ 2.6-2.7). The State cites no evidence for this claim. It is nothing more than a talking point. Evidence does show, however, that while the federal check resulted in 76,152 *initial* denials in 2010, about 94% were dropped at the first stage of review by BATF. Cubeiro Decl., Ex. 41 at 6, tbl. 2 (93.8% of denials did not meet referral guidelines, were overturned or cancelled).

Finally, the State relies on a report from New Jersey about the problems of criminal ammunition acquisition. Opp'n 15. But New Jersey never implemented an ammunition scheme even remotely similar to California's in response to that report. Indeed, no other state has. The State argues that the lack of similar laws is not the standard for proving that a law is substantially related to a government interest. Opp'n 15. But Plaintiffs never claim that it is. Instead, they argue that the dearth of such laws reveals their lack of utility or, at least, infeasibility.[2] Mot. 14 (quoting *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1294 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).

In sum, while some ammunition laws may be substantially related to the government's interest in public safety, *this* scheme is not.

### 2. California's ammunition scheme lacks a reasonable "fit" with the State's interest in preventing criminal misuse.

In arguing that its scheme meets the "fit" requirement, the State boasts that the System prevented 106 prohibited persons from obtaining ammunition—of the *62,083*

---

[2] The State ignores that New York scrapped its almost identical background check system, Mot. 14 & n.9.

people who tried to purchase ammunition in July—as well as the "large number" of prohibited persons who the State contends were likely dissuaded from even attempting purchase. Opp'n 16. But in assessing the proper "fit" under intermediate scrutiny, courts are not concerned with the purported benefits of a law. Instead, the concern is whether a law's encroachment on constitutional rights is "not more extensive than necessary" to serve the government's interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 816 (9th Cir. 2013). Thus, the inquiry is only whether the government can meet its burden of proving that its law does not burden "substantially more" constitutionally protected conduct than "necessary to further [its important] interest." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 214 (1997). That is a burden the State cannot meet, based on its own evidence.

According to the State, over 18% of ammunition purchases were rejected in July. Opp'n 21. Among those rejections were about *11,000 non-prohibited persons*—nearly 100 times the number of prohibited persons the State claims the System ferreted out. Morales Decl. ¶¶ 49-52. Also included were about 1 of every 8 COE holders who attempted purchase, Morales Dec. ¶ 51, even though these people have taken extra steps with the State, including an extensive background check and fingerprinting, to establish that they are eligible to purchase *firearms*, Req. Jud. Notice, Ex. 32. While the State speculates that these people "may" be able to "quickly" remedy any issue that impedes their ability to purchase, it provides no specifics. Opp'n 21. Likely because it could not. Indeed, for many, the fix is not at all quick. Brady Decl., Ex. 35 at 5, n.10 (noting waiting times of 3-4 months to fix AFS records).[3] In short, the System wrongly and indefinitely denied *at least 10,000 legitimate purchasers* of their constitutional right to acquire ammunition. The "fit" could hardly be looser.

And this does not even account for the untold numbers of people who could not

---

[3] The State argues that Plaintiffs have not shown that these people were unable to eventually acquire ammunition. Opp'n 21. But Plaintiffs do not have access to the System, the State does! Yet it does not say whether any of those rejected could fix the issue and obtain ammunition, let alone that many did. *See* Opp'n 21; Morales Decl.

undergo a background check because they lacked the required documentation or would not submit to one for other reasons. *See* Bartel Decl. ¶¶ 10-11; Burwell Decl. ¶ 10; Dodd Decl. ¶ 12; Gray Decl. ¶¶ 10-11; Lowder Decl. ¶¶ 10-11; McNab Decl. ¶¶ 27- 30; Morgan Decl. ¶¶ 10-11; Ortiz Decl. ¶¶ 15-16; Puehse Decl. ¶¶ 12-13. The State does not dispute that it requires documentation beyond its standard-issued ID to purchase ammunition. Instead, it argues that Plaintiffs provide no evidence that the additional ID requirement has prevented anyone from acquiring ammunition and that the claim that it did is dubious because presenting acceptable identification is an "easy cure." Opp'n 21.[4] While it may be an "easy cure" for someone who has the required records, the State ignores the burden that acquiring the documentation places on someone who does not. Mot. 10-11 (citing Dodd Decl. ¶¶ 7-12; Ortiz Decl. ¶ 17; Exs. 30-31).

In any event, the State simply cannot show that its additional ID requirement does not burden more constitutionally protected conduct than necessary. It bars anyone lacking ID beyond what the State issues as a default. Mot. 7 (citing Cal. Code Regs. tit. 11, § 4045.1). The State claims the requirement precludes "persons without lawful presence" in the country from acquiring ammunition. Opp'n 20. The irony that FLA IDs were created to accommodate those very people speaks volumes. Assemb. B. 60, 2013-2014 Reg. Sess. (Cal. 2013). But more telling is that the *only* thing *California* will not accept its standard-issued (FLA) ID for is purchasing firearms and ammunition. What's more, the State does not (and cannot) dispute that the federal government accepts that same ID for *firearm* background checks, it merely quibbles about Plaintiffs' citation. Opp'n 20-21, n.11; Cubeiro Decl., Exs. 38-39.[5] Finally, the State ignores the problem that non-residents cannot purchase ammunition without a COE, which takes weeks and more than $71 in

---

[4] The State finds it sound to assume that the System dissuaded countless prohibited persons from undergoing the background check but demands evidence that some non-prohibited persons refused to proceed for other reasons. Opp'n 21, 24.

[5] The State also suggests that its ID requirement is reasonable because NRA advised firearm vendors to request additional documentation for purchasers with FLA licenses. Opp'n 9. But NRA was doing so only to protect those vendors from legal trouble because the State was wrongfully citing those vendors who did not do so. Cubeiro Decl. ¶¶ 2-9.

fees to obtain. Mot. 6-7.

As for the longer processing time for ammunition transactions, the State misses the point. While the extra wait itself may be constitutionally problematic—given all the other hurdles firearm owners must overcome merely to exercise their rights—that is not Plaintiffs' main concern. Instead, they argue that the delays are completely (or mostly) avoidable and that the System unreasonably causes these delays. What's more, the State understates the wait by focusing only on the time between when the vendor "clicks the delivery button" and when DOJ processes a background check request. Opp'n 19. There is additional time both preceding that process (helping customers locate ammunition, explaining background check options, uploading personal information) and following it (print and sign copies of transaction). This extra time could be easily avoided. As could the extra time and cost of collecting records about the type and amount of ammunition sold, which have been found to lack any law enforcement value, Mot. 16; particularly for vendors to print and store them.

Finally, stating that there is no Second Amendment right to sell arms, the State discounts Vendors' complaints that the requirements are so burdensome that they could mean closing shop. Opp'n 22. But the State misses the point. It is not the Vendors who are asserting a right here. Instead, Plaintiffs are sharing these stories because the burdens on Vendors, as the purveyors of Second Amendment rights, affect Plaintiffs' ability to exercise their rights. *See Jackson*, 829 F. Supp. 2d at 872 n.3; *Doe*, 410 U.S. at 186.

### III. Plaintiffs Are Likely to Succeed on Their Dormant Commerce Clause Claim

The State ignores Plaintiffs' argument that the ammunition scheme regulates extraterritorially and is invalid per se. Mot. 21-22. Plaintiffs should thus prevail on this claim. In any event, because California's scheme "directly discriminate[s] against out-of-state entities," it "can survive only if the state demonstrates both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 (9th Cir. 2017), *cert. denied sub nom.*, *Nationwide Biweekly Admin., Inc. v. Hubanks*, 138

1  S. Ct. 1698 (2018) (citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986)). The State does not
2  even attempt to make that showing. Instead, it argues that its scheme is not discriminatory
3  because Vendors cannot *ship* ammunition directly to consumers either. Opp'n 22. But that
4  is not the relevant inquiry.

5      The State does not dispute Plaintiffs' claims that Vendors may legally refuse to
6  process third-party ammunition transfers, or that Vendors are, in fact, doing just that. Mot.
7  21 (citing Brady Decl. ¶¶ 8-9; Gilhousen Decl. ¶¶ 3-4; Wolgin Decl. ¶ 9). Nor does the
8  State deny Plaintiffs' claim that a Vendor willing to process such a transaction may charge
9  the purchaser any fee amount it wishes to do so. *Id.* In sum, in-state vendors have direct
10 access to California consumers while out-of-state vendors do not. As this Court has
11 already held "[w]hat is important is that California's resident businesses are the only
12 businesses that may sell directly to ammunition consumers." Order Re: Defs.' Mot.
13 Dismiss 6 (citing *Nationwide*, 873 F.3d at 737). The State urges this Court to reconsider
14 its reading of *Nationwide*, arguing that it only "held that making incorporation under
15 California law a prerequisite to obtain a state-issued license likely violated the Dormant
16 Commerce Clause," and because California's scheme does not, the case is inapt. Opp'n
17 23. The Court should reject the State's reading. *Nationwide* held that a statute requiring a
18 business to incorporate in California violates the Commerce Clause because it "requires
19 any corporation that wants to engage in a certain kind of business within the state to
20 become a resident." 873 F.3d at 736-37. The court was not concerned with the
21 incorporation requirement per se, but that it required in-state residence. *Id.*, *see also*
22 *Granholm v. Heald*, 544 U.S. 460, 472 (2005) ("The mere fact of nonresidence should not
23 foreclose a producer in one State from access to markets in other States.")

24 **IV.  Plaintiffs Are Irreparably Harmed by the Violation of Their Rights**
25     Again, "the deprivation of constitutional rights 'unquestionably constitutes
26 irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting
27 *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). So if the Court agrees that Plaintiffs are likely
28 to succeed on the merits, preliminary relief is proper. The State's rebuttal is unpersuasive.

First, the State argues that Plaintiffs have not established irreparable harm because, unlike in the First Amendment context where "deprivation even from [sic] minimal periods of time constitutes irreparable injury," the deprivation of other fundamental rights apparently requires more. Opp'n at 23 (citing *Constructors Ass'n of W. Penn. v. Kreps*, 573 F.2d 811, 820 n.33 (3d Cir. 1978)). Because, according to the State, the Individual Plaintiffs can eventually purchase ammunition, there is no harm. But the State cites no Second Amendment case in which the court chose to treat the right differently from the First for purposes of finding irreparable harm. And it ignores those cases in which courts, including this one, have treated the deprivation of Second Amendment rights as irreparable. *See, e.g.*, *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017).[6]

The State's citation of *Constructors Association* hardly helps its cause. As the State itself quotes, the court there recognized that the denial of "equal protections rights may be more less serious depending on the other injuries which accompany such deprivation." Opp'n at 23 (quoting *Constructors*, 573 F.2d at 820 n.33). Here, the "other injuries" are no doubt severe—indeed, deprivation of access to ammunition could be deadly. As this Court held when it granted a preliminary injunction in *Duncan*, " '[t]he right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary.' . . . Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." 265 F. Supp. 3d at 1135 (quoting *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016)).

Second, the State claims that "Plaintiffs cannot establish irreparable harm under a dormant Commerce Clause theory because the law . . . has been in effect for over a year-and-a-half." Opp'n at 23-24. But, as the State obliquely admits, Opp'n at 24, "delay" in bringing a motion for preliminary injunction is merely "a factor to be considered," *Lydo*

---

[6] The State chooses to focus on the mere "minutes" it claims have been added to ammunition transactions. Opp'n 23. But it ignores the scenarios in which non-prohibited persons are being wrongly denied access to ammunition indefinitely. Mot. 9-10.

*Enterps., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). Indeed, the Ninth Circuit held that it "would be loath to withhold relief solely on that ground." *Id.* at 1214 (noting that a five-year delay weakened claim of irreparable harm but was not dispositive). Here, the laws' effects changed dramatically when the State implemented its regulations last month, and the violation of Plaintiffs' constitutional rights worsened. The Court should not treat Plaintiffs' purported delay, alone, as reason to deny preliminary relief.

## V. The Balance of Harms and the Public Interest Tip in Plaintiffs' Favor

As for the balance of harms and public interest factors, the State complains that it "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." Opp'n 25 (quoting *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)). That purported harm, however, cannot overcome the severe harm that the State's likely unconstitutional ammunition scheme imposes. To be sure, the Court should not exercise its authority to enjoin a "duly enacted" law lightly, but if a law violates the constitutional rights of the People, the Court properly enjoins it. *Ashcroft v. ACLU*, 542 U.S. 656, 664-65 (2004); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

In their facial challenge, Plaintiffs object to a scheme that improperly denies thousands of people their right to acquire ammunition necessary for armed self-defense. The State speculates, but has not proved, that those thousands of people can take "minor steps" to overcome this violation of their rights. Opp'n 24. While preventing 106 prohibited persons from acquiring ammunition is a public good, Opp'n 24, when weighed against the (potentially deadly) harm of indefinitely denying access to thousands of *non-prohibited* persons, the balance of harms tips sharply in Plaintiffs' favor.

## CONCLUSION

For these reasons, Plaintiffs ask the Court to issue a preliminary injunction.

Dated: August 12, 2019  **MICHEL & ASSOCIATES, P.C.**

*s/ Sean A. Brady*
Sean A. Brady
Email: sbrady@michellawyers.com
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Becerra*
Case No.: 3:18-cv-00802-JM-JMA

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

on the following parties by electronically filing the foregoing on August 12, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| Nelson R. Richards<br>Deputy Attorney General<br>nelson.richards@doj.ca.gov<br>2550 Mariposa Mall, Room 5090<br>Fresno, CA 93721 | *Attorneys for Defendant Attorney General Xavier Becerra* |

I declare under penalty of perjury that the foregoing is true and correct. Executed August 12, 2019, at Long Beach, CA.

*s/ Laura Palmerin*
Laura Palmerin