XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
NOREEN P. SKELLY
Deputy Attorney General
NELSON R. RICHARDS
Deputy Attorney General
State Bar No. 246996
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7867
  Fax:  (916) 324-8835
  E-mail:  Nelson.Richards@doj.ca.gov
*Attorneys for Defendant Attorney General*
*Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kim Rhode et al.,** | 3:18-cv-00802-BEN-JLB |
| Plaintiffs, | |
| v. | **SUPPLEMENTAL DECLARATION OF MAYRA G. MORALES IN SUPPORT OF DEFENDANT XAVIER BECERRA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| **Xavier Becerra, in his official capacity as Attorney General of the State of California, et al.,** | |
| Defendants. | Dept:        5A |
| | Judge:       Hon. Roger T. Benitez |
| | Action Filed:    4/27/2018 |

# DECLARATION OF MAYRA G. MORALES

I, MAYRA G. MORALES, declare:

1.      I am a Staff Services Manager III for the California Department of Justice, Bureau of Firearms (hereafter generally referred to together as the "Department").  I make this declaration of my own personal knowledge and experience and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.      I understand that at the August 19, 2019 hearing on Plaintiffs' motion for preliminary injunction, the Court requested additional information from the Attorney General.  I have reviewed pages 132 through 135 of the transcript of the hearing.  Based on that review, I see that the Court requested the following information:

      a.  The reasons for the 10,837 Standard Ammunition Eligibility Check rejections in July 2019.  (In this Declaration, I will generally refer to these checks as "AFS Checks.")

      b.  Whether those who were rejected have been able to acquire ammunition.

      c.  Whether any of the prohibited persons prevented from purchasing ammunition are, in fact, not prohibited persons.

      d.  The Court requested the same information for August 2019.

3.      As part of my job duties, I can request data from the Department's Application Development Bureau regarding ammunition eligibility transactions.  I have obtained the data that the Court requested, with some additional data to provide context.

4.      Across both July and August, the three most common reasons for AFS Check rejections were: (1) the address submitted by the vendor on the purchaser's behalf did not match the address in the AFS system; (2) the purchaser likely did not

1

have an entry in the AFS system, meaning they elected the wrong eligibility check; and (3) the name submitted by the vendor on the purchaser's behalf did not match the name in the AFS system.  Together, these accounted for about 80% of the rejections.

5.    The number of purchasers who appear to have incorrectly used an AFS Check alone was about 30% of the total rejections in both months.

6.    The other 50% of people who received an AFS rejection due to an address or name mismatch could update or correct their AFS record via the Department's website.

7.    Of the individuals who had an AFS Check rejected in July or August, between 30% and 40% had successfully purchased ammunition by August 31, 2019.

8.    These numbers, and others, are set forth in more detail below.

9.    Section I of this declaration provides additional information on Basic Ammunition Eligibility Check (which I will refer to as "Basic Checks").

10.    Section II provides information on AFS Checks for July and August 2019, including the total number of transactions, the number of approvals, denials, and rejections, the reasons for the rejections, and the number of people who were able to purchase ammunition after an AFS Check rejection.

11.    Section III discusses the 289 people who were prevented from purchasing ammunition in July and August because they were determined to be prohibited based on Department records, including information that responds to the Court's question about whether any of those people were mistakenly denied.

## I.    BASIC AMMUNITION ELIGIBILITY CHECKS

12.    Although I understand that the Court was primarily concerned with the rejection rates for AFS Checks, it bears noting that the default ammunition eligibility check is the Basic Check described in California Code of Regulations, title 11, section 4303.  This check can be used irrespective of whether a purchaser

2

or transferee (I will generally refer to these together as "purchaser") can take advantage of one of the other eligibility checks.

13.    Under section 4303(B), a Basic Check costs $19 and entails submitting identifying information, including the purchaser's name, date of birth, current address, and ID number, to the Department's Dealer Record of Sale (DROS) Entry System (DES).  The process proceeds in two steps.  First, the Department automatically checks the person's ID or driver license number (I will generally refer to IDs and driver licenses as "IDs"), name, and date of birth, against DMV records to confirm the information submitted matches a DMV record and that the ID is valid.  If the information matches, then the submitted information is automatically run through four state databases:  (1) Automated Criminal History Record System (ACHS); (2) Mental Health Firearms Prohibition System (MHFPS); (3) California Restraining and Protective Order System (CARPOS); and (4) Wanted Persons System (WPS).

14.    If a purchaser's information results in no hits in the system, the Basic Check is processed automatically, meaning that Department employees are not directly involved in the process.  If the purchaser's information results in a hit in one of the four systems, the eligibility check will require manual review by a Department analyst.  A manual review can take anywhere from a few minutes to days or weeks depending on the nature of the hit in the database.  For instance, if the ACHS shows the purchaser was charged with a felony, but does not have a disposition of that felony, the manual check would entail tracking down the disposition, which can take at least several business days.

15. Table 1.1 lists the approvals, rejections, and denials for July and August.

| Table 1.1: Basic Checks — Approvals, Denials, & Rejections[1] | | |
|---|---|---|
| | **July 2019** | **August 2019** |
| Basic Checks Processed | 3,798 | 5,066[2] |
| Approved | 3,607[3] (94.97%) | 4,827[4] (95.28%) |
| Denied (Prohibited Persons) | 119 (3.13%) | 125 (2.47%) |
| Rejected (no match with DMV records) | 22 (0.58%) | 17 (0.34%) |
| Rejected (incomplete history) | 50 (1.32%) | 35 (0.69%) |

16. Table 1.2 sets forth the average processing times for 3,709 Basic Checks that were submitted in July, and 4,542 Basic Checks that were submitted in August, that had eligibility determinations made on or before August 31, 2019.

| Table 1.2: Basic Checks — Processing Times | | |
|---|---|---|
| | **July 2019** | **August 2019** |
| Average Time | 1 day, 17 hrs., 31 mins. | 1 day, 4 hrs., 50 mins. |

---

[1] This information is as of September 24, 2019, for transactions submitted in July and August 2019. The July numbers are different from what was provided in my August 2, 2019 Declaration in Support of Defendant Xavier Becerra's Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 34-1 (August 2 Declaration), because subsequent action has been taken on the transactions since August 2.

[2] In August, 62 Basic Checks that were submitted were delayed. A Basic Check can be delayed for many reasons. Most often it is because a Department analyst must conduct additional research on an arrest cycle for a prohibiting event with a missing disposition. The Department will do its due diligence to obtain the necessary information. However, if the Department is unable to obtain the information it will ultimately deny the transaction because an eligibility determination could not be made.

[3] One approved transaction was originally denied and subsequently approved. The statistic is counted only in the Approved status as to not double count.

[4] Two approved transactions were originally denied and subsequently approved. The statistic is counted only in the Approved status as to not double count.

4

Supp. Morales Decl. in Supp. of Def.'s Opp'n to
Pls.' Mot. for Prelim. Inj. (3:18-cv-00802-BEN-JLB)

17.   Table 1.3 lists the average processing times for Basic Checks that were manually and automatically approved in July and August.  These numbers are a subset of the 3,709 Basic Checks that were submitted in July, and 4,542 Basic Checks that were submitted in August, that had eligibility determinations made on or before August 31, 2019.

| Table 1.3: Approved Basic Checks — Processing Times | | |
|---|---|---|
| | **July 2019** | **August 2019** |
| Automatically Processed | 811 (22.63%) | 1,041 (23.79%) |
| Average Time | 2 hrs., 5 mins. | 1 hr., 36 mins. |
| Manually Processed | 2,773 (77.37%) | 3,334 (76.21%) |
| Average Time | 2 days, 2 hrs. 29 mins. | 1 day, 12 hrs., 5 mins. |

## II.   AFS CHECK (STANDARD AMMUNITION ELIGIBILITY CHECKS) INFORMATION FOR JULY AND AUGUST 2019

18.   This section of my declaration provides the information that the Department has collected since the hearing regarding AFS Check rejections. Section II.A briefly recounts how the AFS Check works and provides the topline data for July and August 2019.  Section II.B sets forth the reasons for the rejections. Section II.C provides information on purchasers who were rejected in an AFS Check in July or August who purchased ammunition on or before August 31, 2019.

### A.   AFS Check Approvals, Denials, and Rejections for July and August 2019

19.   As set forth in more detail in paragraphs 13-24 of my August 2 Declaration, an AFS Check allows a person who owns a firearm and who has an entry in the State's Automated Firearms System to use that entry to establish their eligibility to purchase ammunition, rather than relying on the databases used in a Basic Check (described in paragraph 13, above).

5

20. If all the information matches an AFS entry and the purchaser is not in the Armed Prohibited Persons System, then the transaction will be approved. If the person is in the armed Prohibited Persons System, the transaction will be denied.

21. A purchaser who has an AFS Check rejected and is otherwise eligible to purchase ammunition may do one of four things.

22. First, in many scenarios the purchaser may use the California Firearms Application Reporting System (CFARS) to update their AFS personal information to correct the cause of the mismatch. This process is set forth in paragraphs 20-24 of my August 2 Declaration and is also described on the Department's website at: https://oag.ca.gov/firearms/afspi.

23. Second, if the purchaser owns a firearm that is not in AFS, the purchaser may submit a Firearms Ownership Report using the form available on the Department's website at https://oag.ca.gov/firearms/forms or by submitting the form electronically through CFARS at https://cfars.doj.ca.gov/login.do. Once the report is processed and approved, this will result in an AFS entry for the purchaser that can be used to purchase ammunition.

24. Third, the purchaser can purchase a new firearm, which will allow them to purchase ammunition at the same time, and also create an AFS entry that can be used for future ammunition purchases.

25. Alternatively, these purchasers may elect to rely on a Basic Check, or, if they have a COE, they may rely on a COE Check.

26.  Table 2.1 sets forth the July and August 2019 approvals, denials and rejections for AFS Checks.

| Table 2.1: AFS Checks — Approvals, Denials, & Rejections | | |
|---|---|---|
| | **July 2019** | **August 2019** |
| AFS Checks Processed | 57,553 | 101,058 |
| Approved | 46,702 | 80,811 |
| Denied (Prohibited Persons) | 14 | 28 |
| Rejected (no match with AFS records) | 10,837 | 20,219 |

27.  As noted in the tables, denials occur when official records identify the purchaser as a prohibited person who cannot lawfully possess a firearm or ammunition.  A rejection occurs when the purchaser does not match an entry in AFS. The reasons for the rejections in July and August 2019 are set forth in more detail in the following section.

**B.    Information on AFS Check Rejections for July and August 2019**

28.  AFS Checks are a streamlined eligibility check that rely on the purchaser already having undergone a firearms background check and being subject to inclusion in the APPS system, in the event they later become prohibited. Determining whether a potential ammunition purchaser has an up-to-date AFS entry is therefore integral to how the AFS Checks work.

29.  Under California Code of Regulations, title 11, section 4302, an AFS Check involves checking whether a purchaser has a valid entry in the State's Automated Firearms System.  Under subdivision (c) of that regulation, to run an AFS Check, a licensed ammunition vendor collects the purchaser's name, date of birth, current address, and ID number, and submits that information to DES.  The system then automatically checks whether the submitted information matches an AFS record, and, if it does, runs the purchaser's information against the Armed

7

Prohibited Persons System (APPS) database to determine whether the purchaser is a prohibited person.

30.    If the purchaser's name, address, date of birth, or ID number, or some combination of that information, do not match an AFS record, the transaction is rejected.  For example, a purchaser may submit an AFS Check in which their name, address, and date of birth match an AFS entry, but their ID number does not.  Or, a purchaser might submit a check in which their date of birth and ID number matches, but their name and address do not.  It is also possible that none, or only one piece of information matches an AFS entry.

31.    A small number of purchasers had AFS entries, but those entries were no longer valid because the purchaser had transferred the firearm associated with the entry to someone else.

32.    In both July and August, about one in three of the AFS Check rejections were for purchasers who it can reasonably be concluded do not have an AFS entry.

33.    A large number of the rejections—over 50% of the total in both months—fell into one of two categories: (1) their address did not match an AFS entry but their name, date of birth, and ID number did; or (2) their name did not match an AFS entry but their address, date of birth, and ID number did.  Both categories of people may use CFARS to correct their AFS information in a relatively short amount of time.

8

34.    Table 2.2 summarizes the reasons for the AFS Check rejections for July and August, listing the reasons from most common to least common based on July and August data:

| Table 2.2: AFS Checks — Reasons for Rejections | | | | |
|---|---|---|---|---|
| | **July 2019** | | **August 2019** | |
| **Total Rejected** | 10,837 | | 20,219 | |
| **Address Mismatch (name, date of birth, and ID number match)** | 4,077 | 37.62% | 7,160 | 35.41% |
| **No Identifiable AFS Entry (purchaser not eligible for AFS Check)** | 3,303 | 30.48% | 6,563 | 32.46% |
| **Name Mismatch (date of birth, address, and ID number match)** | 1,452 | 13.40% | 2,563 | 12.68% |
| **Name and ID Number Mismatch (date of birth and address match)** | 423 | 3.90% | 774 | 3.83% |
| **AFS Entry No Longer Valid (Name, Date of Birth, ID Number, and Address Match)** | 322 | 3% | 576 | 2.85% |
| **Name and Address Mismatch (date of birth and ID number match)** | 301 | 2.78% | 671 | 3.32% |
| **AFS Entry No Longer Valid (Partially Matched on a combination of Name, Date of Birth, ID, Address)** | 258 | 2.38% | 522 | 2.58% |
| **ID Number and Address Mismatch (name and date of birth match)** | 248 | 2.29% | 497 | 2.46% |
| **ID Number Mismatch (name, date of birth, and address match)** | 209 | 1.93% | 383 | 1.89% |
| **Date of Birth Mismatch (name, address, and ID number match)** | 148 | 1.37% | 259 | 1.28% |
| **Date of Birth and ID Number Mismatch (name and address match)** | 41 | 0.38% | 124 | 0.61% |
| **Date of Birth and Address Mismatch (name and ID number match)** | 34 | 0.31% | 72 | 0.36% |

9

| | | | | |
|---|---|---|---|---|
| **Name and Date of Birth Mismatch (address and ID number match)** | 16 | 0.15% | 28 | 0.14% |
| **Name, Date of Birth, and Address Mismatch (ID number match)** | 5 | 0.05% | 27 | 0.13% |

35.    The information in Table 2.2 is derived from Microsoft Excel spreadsheets that list the transaction number, date, time, place, ID type, and reason for each rejection.  I understand that those spreadsheets, with individual identifying information omitted, are being produced to counsel for Plaintiffs.

**C.    Information on Purchasers Rejected in an AFS Check Who Later Purchased Ammunition on or before August 31, 2019**

36.    The Court also asked the Attorney General whether purchasers who were rejected were able to purchase ammunition later.

37.    Answering that question requires determining how many unique people attempted to purchase ammunition using AFS Checks who were subsequently rejected.  Given the volume of data, the best way to answer this question is to use unique ID numbers as proxies for individual people.  While potentially imperfect at the margins, I believe this approach provides a reasonably accurate method for identifying individual purchasers.

38.    The 10,851 rejections and denials in July correspond to 9,027 unique ID numbers.  I understand that the primary difference between rejections and denials and unique ID numbers is largely because 1,824 individuals tried to use the AFS Check procedure more than once and were rejected or denied on more than one occasion.  The 20,247 rejections and denials in August correspond to 16,037 unique ID numbers.  As with the July numbers, I understand that the primary difference between rejections and denials and unique ID numbers is largely because 4,182 individuals tried to use the AFS Check procedure more than once and were rejected or denied on more than one occasion.

10

39.   Table 2.3 provides the number of individuals who were rejected from an AFS Check but who were able to purchase ammunition by August 31, 2019.

| Table 2.3: Purchasers Who were Rejected on an AFS Check and Subsequently Purchased Ammunition on or before August 31, 2019 | | |
|---|---|---|
| | **July 2019** | **August 2019** |
| Individuals Rejected in AFS Checks | 9,027 | 16,037 |
| Number Who Purchased Ammunition on or before August 31, 2019, after an AFS Check Rejection | 3,468 | 4,923 |

## III.   PROHIBITED PERSONS PREVENTED FROM PURCHASING AMMUNITION IN JULY AND AUGUST 2019

40.   The Court also asked the Attorney General to provide additional information about the purchasers who had been denied approval to purchase ammunition because they are prohibited.  In particular, the Court expressed concern that people may have been considered prohibited who actually are not prohibited persons.

41.   As reported in paragraphs 50 and 52 of my August 2 Declaration, 106 people in July were prevented from purchasing ammunition because Department records showed them to be prohibited.  Since then, additional people who submitted eligibility checks in July have been prevented from purchasing ammunition bringing the total for July transactions to 134.

42.   In August, the number thus far is 155, for a total of 289 persons denied from purchasing ammunition in July and August because they were prohibited.

43.   The Department investigates attempts to purchase ammunition by prohibited persons.  Data on specific denials is highly sensitive, and disclosing it outside the Department could impede or undermine ongoing criminal investigations.

11

44.   With that concern noted, I have asked our law enforcement staff to provide me with general information on the denials.  To give a sense of the reasons for some of the denials, I will provide a few examples.  One person in the Central Valley who was denied had been committed under California Welfare and Institutions Code section 5150 in 2018.  Another in the Central Valley had a 2016 misdemeanor conviction for battery on a spouse.  One in southern California had a felony 2008 conviction for robbery.  Some of the purchasers had older convictions: an attempted purchaser in the Los Angeles region with a 1984 burglary conviction, another in the northern California East Bay region with 1989 assault and battery conviction, and another in Orange County with 1980 conviction for assault with a deadly weapon.

45.   I have also inquired whether, to the Department's knowledge, any of the people denied from purchasing ammunition because they were prohibited were, on a subsequent review, determined to not be prohibited.  Determining whether this is the case is a labor intensive process.  The Department has reviewed approximately 45 of the 289 purchasers that were denied in July and August on the grounds of prohibiting offenses, mental health commitments, or restraining orders.  Four purchasers were subsequently determined to have been eligible to purchase ammunition at the time of purchase.  In addition, five additional purchasers were ineligible on the face of their official records, but were later determined to be eligible after Department staff investigated the matter, contacted the appropriate courts, and requested that they update the official status of the individuals.  As a result of these investigations—which are unrelated to this lawsuit or the Court's request for information at the August 2 hearing—those individuals are now eligible to purchase ammunition.

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

2    is true and correct.

3

4    Executed on:  September 27, 2019

5

6

7                             MAYRA G. MORALES

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

# CERTIFICATE OF SERVICE

Case Name:   **Rhode v. Becerra**                              No.

I hereby certify that on September 27, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**SUPPLEMENTAL DECLARATION OF MAYRA G. MORALES IN SUPPORT OF DEFENDANT XAVIER BECERRA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 27, 2019, at Sacramento, California.

| Tracie L. Campbell | /s/ Tracie Campbell |
|:---:|:---:|
| Declarant | Signature |

SA2018101286
14150450.docx