FILED

MAY 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KIM RHODE; et al., | No. 20-55437 |
| Plaintiffs-Appellees, | D.C. No. 3:18-cv-00802-BEN-JLB Southern District of California, San Diego |
| v. | |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | ORDER |
| Defendant-Appellant. | |

Before: SILVERMAN, NGUYEN, and COLLINS, Circuit Judges.

This appeal challenges the district court's preliminary injunction prohibiting the enforcement of California restrictions on the purchase of ammunition on Second Amendment and dormant Commerce Clause grounds. The California Attorney General moves for a stay of the injunction pending appeal.

In evaluating a motion for stay pending appeal we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Appellant satisfies the first factor because he has "show[n], at a minimum, that [he] has a substantial case for relief on the merits." *See Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). As the Supreme Court recognized in *Heller*, Second Amendment rights are not unlimited. *See District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) ("[N]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms."); *see also Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 970 (9th Cir. 2014) (Second Amendment right to purchase ammunition "may be subjected to governmental restrictions which survive the appropriate level of scrutiny"). The dormant Commerce Clause does not prohibit a state from enforcing a law that does not "discriminate[] against or directly regulate[] interstate commerce" and is not "clearly excessive in relation to the putative local benefits." *See Pharmaceutical Research & Mfrs. of Am. v. County of Alameda*, 768 F.3d 1037, 1041-46 (9th Cir. 2014) (citations omitted).

Appellant has also shown sufficient likelihood of irreparable harm absent a stay, and that the remaining factors favor a stay. The provisions of state law at issue were in effect for more than nine months before the district court's preliminary injunction. Appellees do not contend that they were unable to purchase ammunition lawfully and with minimal delay while those provisions were in effect. *See, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 681 (9th Cir.

2

2017) (en banc) ("[M]issing is any allegation by [appellant] that any honest-to-God resident . . . cannot lawfully buy a gun nearby." (internal quotation marks and citation omitted)).

    We therefore grant appellant's emergency motion (Docket Entry No. 3) for a stay of the district court's April 23, 2020 preliminary injunction pending appeal.

*Rhode v. Becerra*, 20-55437

COLLINS, Circuit Judge, dissenting:

Appellant California Attorney General Xavier Becerra has moved for a stay of the district court's preliminary injunction barring enforcement of specified provisions of California law (1) requiring background checks for sales of ammunition; and (2) restricting direct out-of-state sales of ammunition to California purchasers. I disagree with the majority's conclusion that the standards for obtaining a stay have been met, and I therefore respectfully dissent.

In determining whether to grant a stay pending appeal, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In my view, Appellant has not made a sufficient showing on the merits, and the balance of hardships also weighs against a stay here.

1. The Second Amendment, which "is fully applicable to the States," protects "the right to keep and bear arms for the purpose of self-defense."

1

*McDonald v. City of Chicago*, 561 U.S. 742, 749–50 (2010) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). This Second Amendment "right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (internal quotation marks and citation omitted). Because the challenged scheme for requiring background checks for ammunition purchases thus directly "burdens conduct protected by the Second Amendment," *Mai v. United States*, 952 F.3d 1106, 1113 (9th Cir. 2020), Appellant must show that it satisfies the appropriate level of constitutional scrutiny.

We "determine the appropriate level [of scrutiny] by considering '(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right.'" *Bauer v. Becerra*, 858 F.3d 1216, 1221–22 (9th Cir. 2017) (quoting *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016)). "[O]ur test for the appropriate level of scrutiny amounts to 'a sliding scale.'" *Id.* at 1222 (quoting *Silvester*, 843 F.3d at 821). "A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id.* (quoting *Silvester*, 843 F.3d at 821). "Further down the scale, a 'law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is

2

appropriate.'" *Id.* (quoting *Silvester*, 843 F.3d at 821). Because I conclude that Appellant has failed to make the requisite strong showing on the merits of his defense of the ammunition background check system under intermediate scrutiny, I have no occasion to decide whether a higher level of scrutiny should be applied.

    a. As a threshold issue, Appellant argues that Plaintiffs lack standing to bring a facial challenge. According to Appellant, Plaintiffs' contention that the background check system fails intermediate scrutiny impermissibly rests in large measure on how the law operates as a whole, rather than as applied only to Plaintiffs. This argument appears to misconceive the nature of intermediate scrutiny as applicable here. Our intermediate scrutiny standards in the Second Amendment context have "looked to the First Amendment as a guide" and similarly require a showing of a "significant, substantial, or important" objective and "a reasonable fit between the challenged regulation and the asserted objective." *United States v. Chovan*, 735 F.3d 1127, 1138–39 (9th Cir. 2013). Even in the commercial speech context, where the expansive overbreadth doctrine does not apply, an "attack upon a commercial-speech restriction on narrow-tailoring grounds" requires some consideration of how the law operates as a whole, and therefore, in a successful challenge, "the rationale of the narrow-tailoring holding may be so broad as to render the statute effectively unenforceable." *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989); *see also*

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 565 n.8 (1980) (expressly distinguishing between the overbreadth doctrine and an intermediate-scrutiny narrow-tailoring challenge, and noting that, in the latter type of challenge, "to the extent the limitations are unnecessary to serve the State's interest, they are invalid"). Applying comparable principles in the Second Amendment context, I conclude that, at least at this stage, Appellant has not made a sufficient showing that the district court erred in employing a broader focus in evaluating Plaintiffs' contention that they (including those whom the organizational plaintiff represents) are being impermissibly subject to burdens by regulations that lack a sufficient reasonable fit to survive intermediate scrutiny. *Cf. Jackson*, 746 F.3d at 962 (in considering Second Amendment facial challenge under intermediate scrutiny, court stated that the question was whether restriction was "a permissible burden on the Second Amendment right to 'keep and bear arms' or it [was] not").

  b. Appellant's motion does not establish a reasonable probability of success under intermediate scrutiny. For purposes of this motion, I assume that California has a substantial interest in ensuring that ammunition does not fall into the hands of persons prohibited under California or federal law from possessing it, such as felons, aliens unlawfully present in the United States, and "mental defective[s]." *See* 18 U.S.C. § 922(g); *see also* CAL. PENAL CODE § 30305. California law and/or

federal law already impose criminal penalties on such possession, *see* 18 U.S.C. § 922(g); *see also* CAL. PENAL CODE § 30305, and both impose systems for conducting background checks in connection with purchases of firearms, *see* 18 U.S.C. § 922(t); *see also* CAL. PENAL CODE § 28220.  The question is whether the additional restriction that California has imposed here, *i.e.*, generally requiring background checks before each purchase of ammunition, has been shown by Appellant to be "reasonably tailored" to providing further material support to that goal in light of its impact on constitutional rights.  *Pena v. Lindley*, 898 F.3d 969, 986 (9th Cir. 2018).  Here, the factual findings of the district court indicate a particularly lopsided imbalance between the claimed benefits and burdens.

The district court found that, through January 2020, there were some 754 instances in which a prohibited person was prevented from purchasing ammunition through California's ammunition background check system, and approximately 101,047 instances in which "residents who are not prohibited persons . . . failed a background check." *Rhode v. Becerra*, ___ F. Supp. 3d ___, 2020 WL 2392655, at *11 (S.D. Cal. April 23, 2020).  Appellant argues that the district court apparently overlooked the possibility that many of these instances involved the same person failing on multiple occasions, and Appellant contends that when that factor is considered, the court's number overstates the "number of unique individuals" involved by about 25%.  (The evidence cited by Appellant on this point suggests

that he thinks the number should instead be about 81,112 persons.) Appellant also emphasizes that many of these 81,000 or so persons were subsequently able to pass a different, more cumbersome form of background check and to purchase ammunition. But as the district court noted, "between 53.5% and 60% of residents who are rejected each month still ha[d] not been authorized to purchase ammunition" as of January 2020, and "the resolution process" for those who had succeeded was "hardly quick." *Id*. at *18. Taking these adjustments into account indicates that, through January 2020, approximately 750 prohibited purchasers had been stopped from buying ammunition but roughly 45,000 or so "residents who are not prohibited persons" had also been prevented from doing so. *Id*. at *11.[1] And beyond this disparity in impacts, the district court also noted the system's apparent effect on the overall volume of ammunition transactions: although California had forecast that "approximately 13 million ammunition transactions" would occur in one year, the number of background checks conducted using the two primary methods was "only 635,856" over a seven-month period. *Id.* at *12.

    The purpose of the tailoring requirement is to ensure that the benefits of a regulation are not disproportionate to the burdens on constitutionally protected

---

[1] Appellant's motion speculates that, for the approximately 30% of rejections that occurred due to the would-be purchaser's lack of a firearm record in the relevant state system, "it is possible" that some subset of those persons "were prohibited persons." Appellant points to no evidence that substantiates that speculation, much less attempts to quantify it.

6

conduct. *Cf. Ward v. Rock Against Racism*, 491 U.S. 781, 799–800 (1989) (discussing intermediate scrutiny applicable to time, place, and manner regulations, and noting that "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."). Without endorsing everything that the district court said in its voluminous opinion, I agree that the sort of stark imbalance between benefits and burdens here suggests poor tailoring. 2020 WL 2392655, at *19–22.

    2. Although the Commerce Clause is a positive grant of power to Congress, *see* U.S. CONST., art. I, § 8, cl. 3, the Supreme Court has held that there is a "negative" aspect to the clause that prohibits "state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). We analyze dormant Commerce Clause claims using a "two-tiered approach." *Pharmaceutical Research & Mfrs. of Am. v. County of Alameda*, 768 F.3d 1037, 1041 (9th Cir. 2014). Under the first tier, we ask whether the state law "either discriminates against or directly regulates interstate commerce." *Id.* (internal quotation marks and citation omitted). If the state law does either, it is "virtually *per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (cleaned up). Under the second tier, we ask whether "the burden

7

[the state law] imposes on interstate commerce is clearly excessive in relation to the putative local benefits." *Pharmaceutical Research & Mfrs. of Am.*, 768 F.3d at 1044 (cleaned up).  I do not believe that Appellant has made a sufficiently strong showing on his claim that California's restriction on direct interstate sales of ammunition is consistent with the dormant Commerce Clause.

      The district court concluded that, by requiring that all sales of ammunition "occur in a face-to-face transaction," CAL. PENAL CODE § 30312(b), California has both discriminatorily favored in-state ammunition merchants and has imposed burdens on interstate commerce that "far outweigh whatever benefit it is designed to achieve." *Rhode*, 2020 WL 2392655, at *33.  Particularly given Appellant's likely lack of success concerning the background check system (which might otherwise be thought to provide some arguable justification for the face-to-face requirement), Appellant has not shown at this stage that he has a fair chance of success in his contention that the district court erred in finding that the challenged provision violates the Commerce Clause.

      3.  Even if I were to conclude that Appellant has at least raised "serious legal questions" on appeal, I do not think that he has made the concomitant showing that "the balance of hardships tips sharply in [his] favor." *Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (internal quotation marks and citation omitted).  I do not disagree with Appellant's

contention that "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined," *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers), but it is likewise true that the loss of constitutional rights "generally constitute[s] irreparable harm," *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009). Particularly given the very lopsided allocation of burdens and benefits occasioned by California's wholly novel effort at ammunition background checks, the balance of equities, if anything, tips sharply against Appellant here.

  For these reasons, I would deny the request for a stay of the preliminary injunction. I respectfully dissent.