*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)[1, 2]**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | **Defendant's Survey of Statutes (Pre-Founding – 1889)** | | |
| 1 | 1403 | England | 4 Hen 4, c.29 | Prohibited the use of armor or arms in sensitive places by people not allowed by the King. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>English history is ambiguous at best, and the Supreme Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id.* at 2139.<br><br>Not "relevantly similar" to CA's ammunition background check. *Bruen*, 142 S.Ct. at 2133.<br><br>Defendant has not indicated whether the law was ever repealed or reviewed by a court.[3] |
| 2 | 1619 | Virginia | 1619: Laws enacted by the First General Assembly of Virginia 70, reprinted in H. R. McIlwaine and John P. Kennedy, eds., Journals of the House of Burgesses of Virginia, | Prohibited selling or giving "Indians" arms or ammunition. Punishable by hanging. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

[1] In compliance with the Court's Order dated December 15, 2022 (Dkt. 77), Defendant created this survey of statutes, laws, and regulations that Defendant has determined are relevant to this action.  Plaintiffs disagree that nearly all of those statutes, laws, and regulations are relevant to the historical analysis required in this case, and in compliance with the Court's December 15 Order, the chart reflects Plaintiffs' position regarding the relevance of each law.

[2] The surveys have been filed in compliance with the Court's Order directing the parties to identify all relevant laws, statutes, and regulations from the time of the Second Amendment to twenty years after adoption of the Fourteenth Amendment.  In compliance with that Order and in recognition of the historical inquiry mandated by *Bruen*, the spreadsheets identify hundreds of relevant firearms laws, some of which were drafted well before the Thirteenth Amendment's abolition of slavery and the Fourteenth Amendment's Equal Protection Clause.  While our subsequent briefing, as ordered by the Court, will explain in more detail the historical context and relevance of such laws, the Attorney General emphasizes his strong disagreement with racial and other improper discrimination that existed in some such laws, and which stand in stark contrast to California's commonsense firearm laws, which are designed to justly and equitably protect all Californians.  The listing of such racist and discriminatory statutes should in no way be construed as an endorsement of such laws by the Attorney General or his counsel in this matter.

[3] Plaintiffs will not repeat this objection for each entry lacking a law's current enforcement status because it applies to nearly every entry in this survey. It should be presumed that any law in this survey for which Defendants did not provide such status has been repealed or replaced or is otherwise no longer enforced.

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | vol. 1 (Richmond, 1905), 9-14 | | people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 3 | 1633 | Massachusetts | The Charters and General Laws of the Colony and Province of Massachusetts 133 (1814) | Prohibited the possession, trade, sale, and repair of guns, ammunition, armor, and weapons generally for "any Indian" enforced by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 4 | 1633 | Virginia | 1633 Va. Acts 219, Acts Made by the Grand Assembly, Holden at James City, August 21st, 1633, An Act that No Arms or Ammunition Be Sold to the Indians, Act X | Prohibited the sale of firearms, powder, shot, or ammunition to "any Indians." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 5 | 1639 | New Jersey | 1639 N.J. Laws 18, Ordinance of the Director and Council of New Netherland, Prohibiting the Sale of Firearms . . . to Indians | Prohibited the sale of firearms, and ammunition to "Indians" punishable by death. Informants of violations eligible for monetary reward. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 6 | 1639 | Virginia | 1639 Va. Acts 226, Acts of January 6th, 1639, Act X | Prohibited "negroes" from being provided with arms and ammunition, punishible by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being provided arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 7 | 1639 | Virginia | 1639 Va. Acts 224, Acts of January 6th, 1639, Act XVII | Prohibited bartering with "the Indians" for arms and ammunition. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|---------------------------|----------------------|
| | | | | | able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms through barter.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 8 | 1642 | Virginia | 1642 Va. Acts 255, Acts of March 2nd, 1642, Act XXII | Prohibited the sale of piece, powder and shot to "any Indian" punishable by imprisonment or fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms through barter.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 9 | 1645 | New York | 1645 N.Y. Laws 47, By the Director and Council of New Netherland Further Prohibiting the Sale of Firearms, etc., to Indians | Prohibited the selling and bartering of firearms and ammunition with "the Indians." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 10 | 1647 | Massachusetts | 1647: Laws and Liberties of Massachusetts, reprinted in *The Laws and Liberties of Massachusetts* 28 (Harvard Univ. Press 1929) | Prohibited the repairing, selling, and giving of "any Indian" a gun, ammunition, or armour, punishable by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 11 | 1647 | Rhode Island | 1647 Acts & Orders 39 | Prohibited the giving, selling, repairing guns, ammunition, or weapons to or for "the Indians." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 12 | 1656 | New York | Laws and Ordinances of New Netherland, 1638–74, 234–35 (1868) | Prohibited "any Indians" with guns from entering houses. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB

**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
|     |                   |              |          |                          | able to, while this law prohibited a certain class of people (Native Americans) from carrying arms in certain places. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 13  | 1657              | Virginia     | William Waller Hening, 1 The Statutes at Large; Being a Collection of All the Laws of Virginia 441 (1808) | Prohibited the giving or selling piece, powder, or shot to "any Indian," subject to imprisonment and seizure of property. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 14 | 1662 | England | 1662 Militia Act, 8 Danby Pickering, The Statutes at Large, from the Twelfth Year of King Charles II, to the Last Year of King James II 40 (1763) | Ordered the king's agents to search for and seize all arms in the custody or possession of any person "judge[d] dangerous to the peace of the kingdom." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id.* at 2139.<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law disarmed criminals and did not affect citizens generally otherwise. |
| 15 | 1662 | England | 14 Car. II c.3 (1662) | Ordered deputy lieutenants to seize arms from any person "judge[d] dangerous to the Peace of the Kingdom." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id.* at 2139.<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law disarmed criminals and did not affect citizens generally otherwise. |
| 16 | 1663 | Massachusetts | Ch. 58, § 2 (1633), Charters and General Laws of the Colony and Province of Massachusetts Bay 132, 133 (1814) | Prohibited the sale or barter of guns and ammunition to "any Indian." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | people (Native Americans) from obtaining arms altogether. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 17 | 1664 | New York | 2 The Colonial Laws of New York from the Year 1664 to the Revolution 687 (James B. Lyon ed., 1894) | Prohibited "any slave" from possessing or using any gun, pistol, sword, club, or any other kind of dangerous weapon not in the presence of their master. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). <br><br> Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from possessing arms altogether. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 18 | 1665 | Connecticut | The Public Records of the Colony of Connecticut, Prior to the | Prohibited the repairing, selling, and giving "any Indian" a gun | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Union with New Haven Colony, May, 1665 (1850) | or ammunition, punishable by fine. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 19 | 1665 | Connecticut | The Public Records of the Colony of Connecticut, Prior to the Union with New Haven Colony, May, 1665 (1850) | Prohibited the selling of a gun, pistol, or any instrument of war to any "Dutch or French men." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (the Dutch and French) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 20 | 1671 | England | 22 & 23 Car. 2, ch. 25 (1671) | Prohibited any person "not having Lands and Tenements of the clear yearly value of One hundred pounds" from firearm possession. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id*. at 2139.<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law disarmed created a privileged class of individuals who could have firearms, an idea that the Second Amendment explicitly rejects. |
| 21 | 1676 | Massachusetts | Records of the Colony of New Plymouth in New England 173 (1856) | Prohibited the selling, bartering, and giving of arms or ammunition to "any Indian," punishable by death. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 22 | 1676 | Pennsylvania | Charter to William Penn, And Laws of the Province of Pennsylvania, Passed Between the Years 1682 and 1700 32 (1879) | Prohibited the giving, selling, or bartering guns, ammunition, armour, or boats and the repair of guns to "any Indian," punishable by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 23 | 1677 | Rhode Island | Records of the Colony of Rhode Island and Providence Plantations, in New England 561 (1857) | Required seizure of guns and ammunition from "any Indian." | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 24 | 1680 | New York | The Colonial Laws of New York from the Year 1664 to the Revolution . . ., at 40-41 (1896) | Prohibited the giving or selling to, or bartering with, "any Indian," or repairing guns and ammunition of "any Indian," punishable by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 25 | 1689 | England | English Bill of Rights of 1689, 1 Wm. & Mary ch. 2, § 7 | Provided a right for Protestants to have "Arms for their Defence suitable to their conditions and as allowed by law." | Though it is an English law predates the founding by nearly 100 years, it evidences a general right to arms for self-defense that carried into the New World. *See Bruen*, 142 S.Ct. at 2136.<br><br>To the extent, however, the law limited its scope to "Protestant" subjects, it includes a restriction on the rights of disfavored populations (e.g., Catholics) that would not survive the 14th Amendment. |
| 26 | 1689 | England | An Act for the Better Securing the Government by Disarming Papists and Reputed Papists, 1 W. & M., Sess. 1, ch. 15 (Eng. 1688) | Prohibition on Catholics from possessing firearms and ammunition unless an oath renouncing their faith was taken. | "Historical evidence that long predates [the founding] may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S.Ct. at 2136.<br><br>English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id*. at 2139. |
| 27 | 1694 | New Jersey | The Grants, Concessions, and Original Constitutions of the Province of New Jersey 341 (1881) | Prohibition on "slaves" from carrying a firearm into the woods, punishable by fine. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 28 | 1700 | Delaware | "Chapter XLIII An Act for the trial of Negroes, Section 6," Laws of the State of Delaware 104 | Prohibited "any Negro or Mulatto slave" from carrying weapons without the master's license. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).

Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans) from carrying arms.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 29 | 1712 | New York | "An Act for Preventing, Suppressing, and Punishing the Conspiracy and Insurrection of Negroes, and other Slaves," Acts of Assembly, Passed in the Province of New York, From 1691, to 1718, at 144 (London, 1719) | Prohibition on "any Negro, Indian, Mulatto Slave" from having or using any gun or pistol outside of their master's presence. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).

Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans, Native Americans) from carrying arms.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 30 | 1713 | Maryland | "Laws of Maryland, 1713; Ch. 44, Sect. 32," The Black Code of the District of Columbia in Force September 1st, 1848, at 11 (New York, 1848) | Prohibition on "Negro or other slave" from carrying a gun or offensive weapon of their master's land. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). <br><br> Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying arms. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 31 | 1715 | Maryland | 1715 Md. Laws 117, An Act for the Speedy Trial of Criminals, and Ascertaining Their Punishment in the County Courts When Prosecuted There, and For Payment of Fees | Prohibited "any negro or other slave" from carrying any gun or offensive weapon off their master's land without a ticket. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). <br><br> Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Due From Criminal Persons, ch. 26, § 32 | | able to, while this law prohibited a certain class of people (slaves) from carrying arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 32 | 1723 | Connecticut | Acts and Laws Passed by the General Court or Assembly of His Majesties Colony of Connecticut in New-England 292 | Prohibited the prosecution of "any Indian" for gun or ammunition except by a particular Court, requiring the guns be forfeited. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law instead governs rules of criminal prosecution more than firearm regulation.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 33 | 1723 | Connecticut | 1723 Conn. Acts 292, An Act for Preventing Lending Guns, Ammunition etc. to the Indians | Prohibited giving or selling "any Indian" guns and ammunition. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 34 | 1729 | North Carolina | 1715-55 N.C. Sess. Laws 36, An Additional Act to an Act for Appointing Toll-Books, and for Preventing People from Driving Horses, Cattle, or Hogs to Other Persons' Lands, ch. 5, § 7 | Prohibited "slaves" to hunt on any person's land besides their master's with any weapon. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from hunting.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 35 | 1739 | South Carolina | Acts Passed by the General Assembly of South Carolina, An Act for the better Ordering and Governing Negroes and Other Slaves in this Province 11-12 | Required any "Negro or Slave" to have a ticket to use a firearm that must be renewed every month. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 36 | 1740 | South Carolina | 1731-43 S.C. Acts 168, § 23 | Prohibited any "negro or slave" from possessing or using firearms or weapons without a ticket or license from their master, punishable by seizure of weapons. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 37 | 1750 | New Jersey | 1750-1756 N.J. Laws 444, An Act Regulating Taverns, Ordinaries, Inn Keepers and Retailers of Strong Liquors, ch. 112, § 4 | Prohibited "any Negro or Mulatto Slave" from being off their master's property with a gun on the Lord's Day after nine in the evening. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).<br><br>Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying firearms at certain times.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 38 | 1755 | Georgia | The Colonial Records of the State of Georgia Vol. XVIII, Statutes Enacted by the Royal Legislature | Requirement that "any Slave" have a ticket to use a firearm that must be renewed every month, subject to seizure. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | of Georgia from its First Session in 1754 to 1768 117-18 (Allen D. Candler eds., 1910) | | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 39 | 1756 | South Carolina | Statutes at Large of South Carolina 31 | Prohibited "Acadians" from using a firearm or other offensive weapon and allowed people to seize such weapons. | The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).

Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Acadians) from possessing arms.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 40 | 1756 | Virginia | 7 William Waller Hening, The Statutes at Large; a Collection of all the Laws of Virginia 35 (1820) | Prohibited Catholics from being armed and requiring oaths of allegiance and supremacy in front of justices of the peace. | The law predates the Founding by too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634).

Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Catholics) from being armed.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 41 | 1763 | Maryland | 1757-68 Md. Acts 53, An Act for Prohibiting All Trade with the Indians, for the Time Therein Mentioned, ch. 4, § 3 | Prohibited the selling and giving to "any Indian Woman" any gunpowder or to "any Indian Man" more than one pound of gunpowder, punishable by fine. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 42 | 1763 | Pennsylvania | Ch. 506, § 1, 1763 Pa. Laws at 319–20 | Prohibited the giving, selling, bartering guns, ammunition, or warlike equipment to "any Indian," punishable by fine or imprisonment. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 43 | 1765 | Georgia | The Colonial Records of the State of Georgia Vol. XVIII, Statutes Enacted by the Royal Legislature of Georgia from its First Session in 1754 to 1768, An Act for the Better Ordering and Governing Negroes 668. (Allen D. Candler eds., 1910) | Required that "any Slave" have a ticket to use a firearm that must be renewed every month. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 44 | 1768 | Georgia | A Digest of the Laws of the State of Georgia. From Its First Establishment as a British Province Down to the Year 1798 . . ., at 153-54 (1800) | Prohibited "any slave" from possessing firearms, ammunition, or weapons without a ticket from their master or a white person over the age of sixteen present and any time after sunset on Saturday but before sunrise Monday morning. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 45 | 1769 | England | 1 Blackstone ch. 1 (1769) | Recognized the "fifth and last auxiliary right," which provided that Protestant subjects had the right to "arms for their defence, suitable to their condition and degree, and such as are allowed by law." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 46 | 1769 | Massachusetts | A Collection of Original Papers Relative to The | Prohibited the selling or bartering guns, ammunition, | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | History of the Colony of Massachusetts-Bay 492 (1769) | and swords to "any Indian," punishable by fine. | to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 47 | 1776 | Massachusetts | Act of Mar. 14, 1776, ch. VII, 1775-76 Mass. Act 31–32, 35 | Recommended the disarming of persons who are "notoriously disaffected to the cause of America, or who refuse to associate to defend by arms the United American Colonies." | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 48 | 1776 | Pennsylvania | 1776 Pa. Laws 11, An Ordinance Respecting the Arms of Non-Associators, § 1 | Authorized officers to collect all arms in the hands of "non-associators". | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 49 | 1776 | South Carolina | An Act to Prevent Sedition, and Punish Insurgents and Disturbers of the Public Peace, 4 Statutes at Large of South Carolina 343-44 (Columbia 1838) | Prohibited any person to "take up arms with a hostile intent." | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies, in this case by punishing "insurgents."<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 50 | 1777 | Pennsylvania | 1777 Pa. Laws 61 An Act, obliging the male white inhabitants of this state to give assurances of allegiance to the same, and for other purposes therein mentioned, ch. XXI, §§ 2, 4 | Required an oath of allegiance; refusal of which punishable by disarming. | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 51 | 1777 | Virginia | Act of May 5, 1777, ch. 3, in 9 Hening's Statute at Large 281, 281-82 (1821) | Required any "free male inhabitants of this state above a certain age" to take an oath of allegiance to the state. | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 52 | 1778 | Pennsylvania | 1778 Pa. Laws 123, An act for the further security of the government, ch. LXI, §§ 1–3, 5, 10 | Required an oath of allegiance; refusal of which punishable by disarming. | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 53 | 1779 | Pennsylvania | The Acts of the General Assembly of the Commonwealth of Pennsylvania 193 (1782); 1779 Pa. Laws 193, An Act. . . for Disarming Persons Who Shall Not Have Given Attestations of Allegiance and Fidelity to this State, §§ 4-5 | Prohibited firearm possession for people "disaffected to the liberty and independence" of the state, empowered officers to disarm any person who did not take an oath. | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 54 | 1787 | Massachusetts | Act of Feb. 16, 1787, ch. VI, 1787 Mass. Acts 555 | Required persons against the Government to deliver their arms to a justice of the peace and "subscribe the oath of allegiance to this Commonwealth." | The law is not "relevantly similar" to CA's ammunition background check because such loyalty oaths have nothing to do with whether the individual was law abiding citizen, but rather confirms their loyalty to a particular group, in this case the revolting colonies.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 55 | 1792 | Virginia | Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force . . ., at 187 (1803) | Prohibited any "negro or mulatto" from possessing any gun, ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing arms altogether. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 56 | 1797 | Delaware | 1797 Del. Laws 104, An Act for the Trial of Negroes, ch. 43, § 6 | Prohibited "any Negro or Mulatto slave" from possessing any gun, ammunition, or weapon without their master's license. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from possessing arms altogether. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | | | |
| 57 | 1798 | Kentucky | 1798 Ky. Acts 106, § 5 | Prohibited any "Negro, mulatto, or Indian" from possessing any gun, ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans, Native Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 58 | 1798 | New Jersey | Charles Nettleton, Laws of the State of New-Jersey, at 370-71 (1821) | Prohibited "any negro or other slave" from hunting or carrying a gun on the first day of the week, or Sunday subject to imprisonment. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying arms at certain times.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 59 | 1799 | Mississippi [Territory] | 1799 Miss. Laws 113, A Law for the Regulation of Slaves | Prohibited any "negro or mulatto" from possessing or carrying firearms, guns, ammunition or weapons. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 60 | 1801 | District of Columbia | "Ordinances of the Corporation of Georgetown, 1801, October 24th, Sect. 2", The Black Code of the District of Columbia in Force September 1st, 1848 50 (New York, 1848) | Prohibited "any servant or slave" from shooting any gun or other firearms. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from using firearms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S. Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.")[4] |
| 61 | 1804 | Indiana [Territory] | 1804 Ind. Acts 108, A Law Entitled a Law Respecting Slaves, § 4 | Prohibited "any slave or mulatto" from keeping or carrying any gun, powder, shot, club, or any other weapon or ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 62 | 1804 | Mississippi [Territory] | 1804 Miss. Laws 90-91, An Act Respecting Slaves, § 4 | Prohibited any "Slave" from keeping or carrying any gun, powder, shot, club, weapon, or ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

---

[4] Because Plaintiffs' position is that all of the presented laws after 1800 are well outside of the founding era, they do not repeat this objection to each law listed.

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 63 | 1805 | Alabama [Territory] | Harry Toulmin, A Digest of the Laws of the State of Alabama . . . 627 (1823) | Prohibited any "slave" from keeping or carrying any gun, powder, shot, club, weapon, or ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 64 | 1805 | Virginia | 1805 Va. Acts 51, An Act Concerning Free Negroes and Mulatoes | Prohibited any "free negro or mulato" from carrying a firelock of any kind without a license from the court. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from carrying arms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 65 | 1806 | Louisiana [Territory] | An Act prescribing the rules and conduct to be observed with respect to Negroes and other Slaves of this territory, in A General Digest of the Acts of the Legislature of Louisiana, Passed from the Year 1804 to 1827, . . . (1828) | Prohibited any person who keeps "slaves for the purpose of hunting" from delivering to any "slaves" any firearm for the purpose of hunting without permission. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from hunting without permission. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 66 | 1806 | Maryland | 1806 Md. Laws 44, An Act to Restrain the Evil Practices Arising From Negroes Keeping Dogs, and to Prohibit Them From Carrying Guns or Offensive Weapons, ch. 81 | Prohibited "any negro or mulatto" from keeping a dog or gun, except any "free negro or mulatto" who has a license for such purpose. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing firearms without a license. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 67 | 1806 | Virginia | 1806 Va. Acts 51, ch. 94 | Required any "free negro or mulatto" to obtain a license to keep or carry any kind of firelock, military weapon, powder, or lead. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from carrying arms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 68 | 1807 | Mississippi [Territory] | Harry Toulmin, The Statutes of Mississippi Territory, Revised and Digested by the Authority of the General Assembly 593 (Natchez, 1807) | Prohibition for people to purchase and trade guns and hunting articles with "any Indian." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 69 | 1818 | Missouri [Territory] | Henry S. Geyer, A Digest of the Laws of Missouri Territory. Comprising: An Elucidation of the Title of the United States to Louisiana 374 (1818) | Prohibition on any "slave or mulatto" from owning or carrying a gun, powder, shot, club, or other weapons. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans) from possessing or carrying arms altogether. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 70 | 1819 | Iowa – Borough of Vincennes [Territory] | Ordinances of the Borough of Vincennes, with the Act of Incorporation and Supplement Thereto Prefixed 54-55 (1820) | Prohibited "any negro or mulatto" from possessing "deadly weapons." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing firearms without a license. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 71 | 1819 | Virginia | Ch. 111 §§ 7 & 8, 1 Va. Code 423 (1819) | Prohibited "free negro or mulatto" from keeping or carrying any kind of firelock, military weapon, powder, or lead without a license from a court. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from carrying arms without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 72 | 1827 | Delaware | 1827 Del. Laws 153, An Act Concerning Crimes and Offenses Committed by Slaves, And For, The Security of Slaves Properly Demeaning Themselves, ch. 6, § 8 | Prohibited "any negro or mulatto slave" from carrying any gun, pistol, sword, dirk, or unusual or dangerous weapons or arms without special permission. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 73 | 1828 | Florida [Territory] | An Act relating to Crimes and Misdemeanors Committed by Slaves, Free Negroes, and Mulattoes, in Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840, at 227 (John P. Duval ed., 1839) | Prohibited "any slave" from willfully or maliciously shooting any free white person with a gun. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans) from possessing or carrying arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 74 | 1831 | Tennessee | Acts 1741, c. 24, in 1 Statute Laws of the State of Tennessee of a Public & General Nature, 314 (1831) | Prohibited any "slave" from being armed with a gun, sword, club, or other weapon without a certificate from a court. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 75 | 1831 | Tennessee | Tenn. Const., Art. I, § 26 (1834) | Establishes the right to keep and bear arms for the "free white men of this State." | The law evidences a general right to arms for self-defense that was well known at the time. To the extent, however, the law limited its scope to "free white men", it includes a restriction on the rights of disfavored populations (e.g., non-whites) that would not survive the 14th Amendment |
| 76 | 1832 | Delaware | 1832 Del. Laws 208, A Supplement to an Act to Prevent the Use of Firearms by Free Negroes and Free Mulattoes, and for Other Purposes, ch. 176, § 1 | Prohibited "free negroes and free mulattoes" from having, owning, keeping, or possessing any gun, pistol, sword, or warlike instrument without permission of five or more citizens of the neighborhood. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing arms altogether. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 77 | 1833 | Alabama | Digest of the Laws of the State of Ala. 391-92 (1833) | Prohibited any "slave" from keeping or carrying any gun or | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | ammunition without permission from a justice of the peace. | able to, while this law prohibited a certain class of people (slaves) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 78 | 1833 | Florida [Territory] | An Act concerning patrols, in Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840, at 65 (John P. Duval ed., 1839) | Prohibited "any slave, free negro, or mulatto" from keeping any firearm in the home. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 79 | 1833 | Georgia | 1833 Ga. Laws 226, 228, § 7 | Prohibition for "any free person of colour" to own, use, or carry any firearms. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | people (Black Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 80 | 1835 | Arkansas [Territory] | Slaves, in Laws of the Arkansas Territory 521 (J. Steele & J. M'Campbell, Eds., 1835) | Prohibited any "slave or mulatto" from possessing or carrying a gun, ammunition, or weapon. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 81 | 1835 | South Carolina | William Rice, *A Digested Index of the Statute Law of South Carolina From the Earliest Period to the* | Prohibited any "free negro or other free person of color" from carry firearms without a ticket. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | *Year 1836, Inclusive* 356 (Charleston 1838) | | people (Black Americans) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 82 | 1835 | Tennessee | 1835-36 Tenn. Pub. Acts 168, An Act to Amend the Penal Laws of the State, ch. 58, § 1 | Prohibited any "free person" from selling, loaning, or giving any gun, pistol, sword, or dirk to "any slave." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 83 | 1836 | Arkansas | Ark. Const., Art. II, § 21 (1836) | Establishes the right to keep and bear arms for "the free white men of this State." | The law evidences a general right to arms for self-defense that was well known at the time. To the extent, however, the law limited its scope to "free white men", it includes a restriction on the rights of |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | disfavored populations (e.g., non-whites) that would not survive the 14th Amendment. |
| 84 | 1837 | Arkansas | Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State 733-34 (1838) | Prohibited "any slave" from possessing any gun or weapon without written permission from their master. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from being armed without permission.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 85 | 1838 | Arkansas | Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, at 733-34 (1838) | Prohibited any "free negro" from possessing or carrying a gun, ammunition, or weapon of any kind without a license. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being armed without permission.

The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.

If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 86 | 1838 | Florida [Territory] | Fla. Const., Art. I, § 21 (1838) | Provided a right to keep and bear arms for "the free white men of this State." | The law evidences a general right to arms for self-defense that was well known at the time. To the extent, however, the law limited its scope to "free white men", it includes a restriction on the rights of disfavored populations (e.g., non-whites) that would not survive the 14th Amendment. |
| 87 | 1839 | Texas [Republic of Texas] | 1839 Tex. Gen. Laws 172, An Act Concerning Slaves, § 6 | Prohibited any "slave" from carrying firearms or weapons without the consent of his master. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 88 | 1840 | North Carolina | James Iredell, A Digested Manual of the Acts of the General Assembly of North Carolina, from the Year 1838 to the Year 1846 . . . 73 (1847) | Prohibited "any free negro, mulatto, or free person of color" from carrying or possessing any shotgun, musket, rifle, pistol, sword, dagger, or bowie knife without a license from the Court of Pleas and Quarter Sessions of his or her country. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 89 | 1840 | Texas [Republic of Texas] | 2 The Laws of Texas 1822-1897 . . . 172 (1898) | Prohibition on any "slave" from carrying a gun or other deadly weapon without the permission of their master. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 90 | 1841 | Delaware | 1841 Del. Laws 430, An Act Concerning Fees, ch. 368, § 1 | Set payment for Justices of the Peace to receive 25 cents for each license issued to "negroes" to keep a firearm. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | | | If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 91 | 1843 | Delaware | A Further Supplement to an Act Entitled "An Act to Prevent the Use of Fire-arms by Free Negroes and Free Mulattoes and for Other Purposes, § 1, 9 Del. Laws 552 (1843) | Repealed laws allowing the Justice of the Peace to license or permit a "free negro or free mulatto" to have, use, or possess a gun or fowling piece. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 92 | 1846 | North Carolina | James Iredell, A Digested Manual of the Acts of the General Assembly of North Carolina, from the Year 1838 to the Year 1846 . . . 75 (1847) | Prohibited selling or delivering firearms and weapons to "any slave, or slaves, any gun cotton, fire arms, swords, dirks or other side arms." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from obtaining arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 93 | 1848 | Louisiana – Parish of East Feliciana | John C. White, Digest of the Laws and Ordinances of the Parish of East Feliciana, Adopted by the Police Jury of the Parish 68 (1848) | Prohibited any "slave" from carrying a gun off the plantation without the permission. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from obtaining arms. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 94 | 1850 | Kentucky | 1851 Ky. Acts 296, Of Dealing With Slaves and Suffering Them to go at Large, § 12 | Prohibited "any negro" from keeping or carrying a gun, weapon, powder, or shot. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from carrying arms. <br><br> The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. <br><br> If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 95 | 1853 | Kentucky – City of Louisville | Oliver H. Strattan, City Clerk A Collection of the State and Municipal Laws, in Force, and Applicable to the City of Louisville, Ky. . . . 175 (1857) | Prohibited the sale of gunpowder to minors under 15 years of age, "free colored persons," or "slaves" without permission from a parent, guardian, or master. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans, minors) from obtaining gunpowder without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 96 | 1853 | Oregon [Territory] | Act of Jan. 16, 1854, § 1, 1854 Or. Laws 257 | Prohibited any "white citizen" to sell, barter, or give any kind of firearm or ammunition to "an Indian." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Native Americans) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 97 | 1854 | Missouri | 1854 Mo. Laws 1094, An Act Concerning Free | Prohibited any "free negro or mulatto" from possessing or | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | Negros and Mulattoes, ch. 114, §§ 2-3 | carrying any firelock, or weapon of any kind, or any ammunition without license from a Justice of the Peace. | to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from being armed without permission.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 98 | 1858 | New Mexico [Territory] | 1858-1859 N.M. Laws 68, An Act to Provide for the Protection of Property in Slaves in this Territory, ch. 26, § 7 | Prohibited any person to transfer to "any slave any sword, dirk, bowie-knife, gun, pistol or other fire arms, or any other kind of deadly weapon of offence, or any ammunition of any kind suitable for fire arms." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 99 | 1859 | Kentucky – Town of Harrodsburg | 1859 Ky. Acts 245, An Act to Amend an Act Entitled "An Act to Reduce to One of the Several Acts in Relation | Prohibited "any slave or free person of color, any gun, pistol, bowie knife, slung shot, sword cane, or other weapon used for | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of |

49

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | to the Town of Harrodsburg," § 23 | the purpose of offence or defence." | people (slaves, Black Americans) from possessing arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 100 | 1860 | Georgia | 1860 Ga. Laws 56, An Act to add an additional Section to the 13th Division of the Penal Code, making it Penal to Sell to or Furnish Slaves or Free Persons of Color, with Weapons of Offence and Defence; and for other Purposes therein mentioned, § 1 | Prohibited any person from selling or furnishing to any "minor, or slave, or free negro" "any pistol, dirk, bowie-knife, brass-knucks, slungshot, colt, cane-gun, or other deadly weapon, which is carried concealed." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans, young people) from obtaining arms altogether.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 101 | 1860 | Kentucky – Town of Harrodsburg | 1860 Ky. Acts 245, An Act to amend an act, entitled "An act to reduce into one the several acts in relation to the town of | Prohibited any person from selling or furnishing to any "minor, or slave, or free negro" "any pistol, dirk, bowie-knife, brass-knucks, slungshot, colt, cane-gun, or other deadly | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (slaves, Black Americans, young people) from obtaining arms altogether. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Harrodsburg, ch. 33, § 23 | weapon, which is carried concealed." | The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 102 | 1860 | North Carolina | 1860-61 N.C. Sess. Laws 68, Pub. Laws, An Act to Amend Chapter 107, Section 66, of the Revised Code, Relating to Free Negroes Having Arms, ch. 34, § 1 | Prohibited "any free negro" from wearing or carrying or keeping in his house any "any shot gun, musket, rifle, pistol, sword, sword cane, dagger, bowie knife, powder or shot." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from carrying arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 103 | 1863 | Delaware | 1863 Del. Laws 332, An Act in Relation to Free Negroes and Mulattoes, ch. 305, § 7 | Prohibited any "free negroes and free mulattoes" from possessing a gun, pistol, sword, or any other warlike instrument, punishable by fine or imprisonment. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 104 | 1865 | Mississippi | *Laws of the State of Mississippi* (Jackson, Miss: J.J. Shannon & Sons, 1866), at 82-86, 91, 165 | Prohibited any "freedman, free negro or mulatto" from keeping or carrying any firearms, ammunition, dirk, or bowie knife. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing or carrying arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries.<br><br>If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 105 | 1865 | South Carolina | Acts of the General Assembly of the State of South Carolina (Columbia, SC: Julian A. Selby, 1866), at 14-15, 34-44 | Prohibited any "[p]ersons of color" from being a part of the militia and from keeping a firearm, sword, or other military weapon without permission. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (Black Americans) from possessing arms.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen* does not even consider the many explicitly racist laws of the 18th and 19th centuries. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | If laws restricting the rights of disfavored groups could establish a historical tradition to justify limiting citizens' right generally, both *Heller* and *Bruen* would have been decided in favor of the government. |
| 106 | 1868 | Kansas | 1 General Statutes of the State of Kansas 329 (1876) | Prohibited possession of any firearm by "[a]ny person who is not engaged in any legitimate business, any person under the influence of intoxicating drink, and any person who has ever borne arms against the government of the United States." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited certain classes of people from "*carrying*" arms. Defendant wrongly described this law as prohibiting "possession" but it is a carry restriction, a relevant distinction under *Bruen*. 142 S.Ct. at 2133.<br><br>This law appears to be unique and is thus an outlier, insufficient to establish an American tradition of requiring any ammunition background checks, let alone one like California's, which requires all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to and denies exercise of the right over trivial issues like having the wrong address in a state database. *Bruen*, 142 S.Ct. at 2133. |
| 107 | 1881 | Florida | 1881 Fla. Laws 87, An Act to Prevent the Selling, Hiring, Bartering, Lending or Giving to Minors Under Sixteen Years of Age, or to any Person of Unsound Mind, Certain Fire-arms or other Dangerous Weapons, ch.. 3285, § 1-2 | Prohibition for persons to sell or give a pistol or firearm to a minor under 16 years of age or persons of unsound mind. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibited a certain class of people (young people, those of unsound mind) from being given arms. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | **Defendant's Survey of Statutes (1889 – 1930s)** | |
| 108 | 1899 | Wyoming | 1899 Wyo. Sess. Laws 32-33, An Act for the Better Protection of the Game and Fish of this State . . ., ch. 19, § 14 | Allowed residents to receive hunting license for $1, non-residents to receive hunting license for $40. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").[5] |
| 109 | 1902 | New Jersey | 1902 N.J. Laws 780, An Act to Require Non-residents to Secure Licenses before Hunting or Gunning within the State of New Jersey and Providing Penalties for Violation of Its Provisions, ch. 263, § 1 | Imposed licensing requirement for non-residents of the state "to hunt and gun." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement. |
| 110 | 1903 | Pennsylvania | 1903 Pa. Laws 178, An Act Requiring non-resident hunters, and unnaturalized, foreign born, resident-hunters, to procure a license before hunting in the Commonwealth … §§ 1 and 2 | Imposed licensing requirement for non-residents and unnaturalized foreign-born resident to possess a gun in the fields, forests, or waters of the State.  Punishable by fine. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns hunting license restrictions/qualifications. Defendant fails to qualify this law as relating to hunting only. |

---

[5] This objection applies to each entry in this survey after the year 1888, particularly 20th century history which the Supreme Court did not even bother to discuss in *Bruen*, 142 S.Ct. at 2154, n.28, but Plaintiffs will not repeat it for each.

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| 111 | 1905 | Utah | 1905 Utah Laws 197, An Act for the Protection of Fish, Game, and Birds . . . , ch. 118, § 30 | Imposed licensing requirement for non-residents and unnaturalized foreign-born resident to kill any game, animals, birds, or fish in the State. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement. |
| 112 | 1909 | Delaware | 1909 Del. Laws 577, House Joint Resolution Providing for Increase in Non-Resident Gunners License Fee, ch. 271 | Imposed licensing requirement for non-residents who "make it a practice to gun" in the state. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns licensing for nonresident individuals engaged in, apparently, recreational shooting. It was not a background check but a licensing fee. The full text reads:<br><br>"Whereas, there are numerous gunners from other States who make it a practice to gun in this State, and under existing laws a license fee of Five Dollars is collected from them. And Whereas, our neighboring States charge non-resident gunners a license fee of more than Five Dollars. Therefore be it resolved by the Senate and House of Representatives of the State of Delaware in General Assembly met: That from and after the passage of this Resolution up to and including April 30th, 1911, all non-resident gunners shall be required to pay a license fee of Ten Dollars per annum, said license fee to be collected in the same manner and by the same agency as non-resident gunners' licenses are now collected."[6] |
| 113 | 1909 | Pennsylvania | 1909 Pa. Laws 466, An Act to give additional protection to wild birds and animals. . | Prohibited unnaturalized foreign born residents from hunting in the Commonwealth, or to possess a shotgun or rifle. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

---

[6] https://firearmslaw.duke.edu/laws/1909-del-laws-577/.

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | .prohibiting the hunting for or capture or killing of, such wild birds or animals or game by unnaturalized foreign-born residents; forbidding the ownership or possession of shotgun or rifle by any unnaturalized foreign-born resident, § 1 | | able to, while this law concerns a hunting license requirement for non-residents. |
| 114 | 1911 | Washington | 1911 Wash. Sess. Laws 303, An Act Relating to the Carrying of Firearms, Requiring Licenses of Certain Persons, and Fixing a Penalty for the Violation Thereof, ch. 52, § 1 | Required noncitizens to receive a license from the state auditor, upon a certificate from the consul of the individual's country of origin and payment of a fee, before noncitizen can possess a firearm. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law prohibits noncitizens from possessing arms without permission. |
| 115 | 1911 | New York | 1911 N.Y. Laws 443, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 1 | Prohibited noncitizens from carrying or possessing firearms or dangerous weapons in a public place are guilty of a felony; law does not apply to regular and ordinary transportation of firearms as merchandise, or for peace officers or military or civil organizations when parading or going to a meeting of their respective organizations. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law generally prohibits foreigners and non-residents from possessing arms. |
| 116 | 1913 | Montana | 1913 Mont. Laws 53, An Act to Provide that | Required noncitizens to obtain a license (costing $25) from the | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Aliens Shall Pay a Gun License, and Providing a Penalty for Failure to Obtain License; to Provide for and Regulate the Duties of the Game and Fish Warden and His Deputies, and to Provide for the Disposition of the Fines so Collected, ch. 38, § 1 | Game and Fish Warden before possessing a firearm; license valid for one year; provision does not apply to: (1) individuals who have purchased hunting license; (2) state residents owning at least 160 acres of land; (3) settlers on public land beginning to acquire land under federal law; or (4) persons engaged in tending or herding sheep or other animals. | to exercise their right to acquire ammo before they are able to, while this law concerns hunting license qualifications for foreigners and non-residents. |
| 117 | 1913 | Wyoming | 1913 Wyo. Sess. Laws 165, An Act . . . Relating to the Duties of the State Game Warden, Assistant and Deputy Game Wardens, and the Preservation of the Game Animals and Game Birds and Fish of the State of Wyoming . . . , ch. 121, § 38 | Required nonresidents obtain a license for $5 from the Justice of the Peace in order to hunt game birds in the state. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement for non-residents. |
| 118 | 1914 | Illinois – City of Chicago | Ordinance of May 25, 1914, §§4a-6. (Samuel A. Ettelson, Opinions of the Corporation Counsel and Assistants from May 1, 1915, to June 30, 1916, at 458-59 (Vol. 7, 1916) | Required weapon sales through licensed dealers only; required purchasers of such weapons to first receive a permit from the General Superintendent of Police.  Required purchasers provide proof of good moral character to receive permit; gives Superintendent discretion on issuance of permits. | This law would be unconstitutional under *Bruen*, which rejected discretionary permitting of this nature.<br><br>Screening firearm sales is not "relevantly similar" to screening ammo sales; particularly a screen one can fail for trivial issues like a wrong address in a state database. *Bruen*, 142 S.Ct. at 2133..<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Id.* |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | Prohibited the issuance of permits to anyone who was convicted of any crime and minors. Punishable by a fine. | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive of a tradition. *Id.* at 2156. |
| 119 | 1915 | Wyoming | 1915 Wyo. Sess. Laws 91, An Act Relating to the Preservation of the Game Animals, Game Birds, and Fish of the State of Wyoming . . . , ch. 91, § 13 | Required noncitizens to purchase a specified license before owning or possessing any firearm or fishing tackle. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement for non-citizens. |
| 120 | 1915 | New Jersey | 1915 N.J. Laws 662-63, . . . Forbidding the Ownership or Possession of Shotgun or Rifle by Any Unnaturalized, Foreign-Born Person within the State of New Jersey and Prescribing Penalties for Violation of its Provisions, ch. 355, § 1 | Prohibited noncitizens from owning or possessing a shotgun or rifle. Punishable by fine and confiscation and resale of firearm. Not applicable to noncitizens owning at least $2,000 worth of property in the state. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement for *certain* non-citizens. |
| 121 | 1915 | North Dakota | 1915 N.D. Laws 225, An Act Relating to Game and Fish . . . , ch. 161, § 67 | Prohibited noncitizens from owning or possessing any shotgun or rifle; violators subject to fine, imprisonment, confiscation of weapon. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a hunting license requirement for non-citizens. Defendant fails to qualify this law as relating to hunting only. |
| 122 | 1916 | New Jersey | 1916 N.J. Laws 275-76, An Act to Prohibit Any Person from Going into the Woods or Fields with a Gun or Other Firearm when | Prohibited any individuals from going into the woods or fields with a firearm while intoxicated or under influence of drugs or alcohol. Punishable by | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns safety relating to hunting only; it is a manner restriction. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | Intoxicated, or under the Influence of any Drug or Intoxicating Liquor, ch. 130, §§ 1-2 | revocation of hunting and fishing license. | |
| 123 | 1917 | New Hampshire | 1917 N.H. Laws 728-29, An Act for the Regulation of the Sale and Use of Explosives and Firearms, ch. 185, § 6 | Required noncitizens obtain a permit before possessing firearm. Permitted obtained by submitting application to police chief or selectment; permit must state purposes for possession of firearm and description of firearm to be obtained. Permit-holder must keep permit on them at all times. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns licensing of gun possession by foreigners. |
| 124 | 1917 | Oregon | 1917 Or. Sess. Laws 804-08, An Act Prohibiting the manufacture, sale, possession, carrying, or use of any blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, dirk, dagger or stiletto, and regulating the carrying and sale of certain firearms, and defining the duties of certain executive officers, and providing penalties for violation of the provisions of this Act, § 11 | Provided that noncitizens convicted of carrying a deadly weapon are guilty of a felony and subject to up to 5 years' imprisonment. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns criminal restrictions on *foreigners carrying* mostly non-firearm weapons. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 125 | 1917 | Minnesota | 1917 Minn. Laws 839-40, An Act . . . Making It Unlawful for Any Such Foreign Born Resident to Either Own or Be Possessed of a Shot-gun or Rifle or Other Firearms of Any Make, ch. 500, § 1 | Prohibited noncitizens from possessing firearms "of any make." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on foreign-born persons possessing firearms at all; a law that would clearly fail scrutiny today. |
| 126 | 1917 | Utah | 1917 Utah Laws 278, An Act . . . Forbidding the Ownership or Possession of Fire Arms or Other Deadly Weapon by an Unnaturalized Foreign Born Person within the State of Utah, ch. 95, § 1 | Prohibited noncitizens from owning, possessing, or having under their control and shot gun, rifle or firearm "of any make." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens from possessing firearms at all. |
| 127 | 1919 | Colorado | 1919 Colo. Sess. Laws 416–17, Foreign-Born Unnaturalized Citizens, § 1 | Prohibited noncitizens from owning or possessing any shotgun, rifle, pistol or firearm of any kind; violators subject to fine, imprisonment, confiscation of weapon. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens from possessing firearms at all. |
| 128 | 1921 | New Mexico | 1921 N.M. Laws 201-02, An Act to Provide Additional Protection to Wild Birds and Game; Prohibiting the Hunting, Capturing or Killing of Wild Birds and Game Animals by Unauthorized (Unnaturalized) Foreign | Prohibited the use, possession, or control of any shotgun or rifle by noncitizen; violators subject to fine, imprisonment, and confiscation and resale of shotgun or rifle | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens from possessing firearms at all. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Born Residents of New Mexico and Adjoining States; Prohibiting the Possession or Use by Such Residents of Shotguns or Rifles within the State of New Mexico; Prescribing Penalties for Violation of this Act, ch. 113, §§ 1-4 | | |
| 129 | 1921 | Michigan | 1921 Mich. Pub. Acts 21, An Act to Give Additional Protection to Wild Birds and Animals and Game within the State of Michigan, Prohibiting the Hunting for or Capture or Killing of Such Wild Birds, or Animals, or Game, by Unnaturalized Foreign-born Residents, Forbidding the Ownership or Possession of Shotgun, or Rifle, or Pistol, or Firearms of Any Kind, by Any Unnaturalized Foreign-born Resident, within the State, and Prescribing Penalties for Violation of its Provisions, § 1 | Prohibited ownership or possession of firearms by noncitizens; violators subject to fine, imprisonment, and confiscation and resale of weapon by state. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens from possessing firearms at all. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 130 | 1922 | Massachusetts | 1922 Mass. Acts 563, ch. 485, An Act Relative to the Sale and Carrying of Firearms, ch. 485, § 8 (amending § 130) | Prohibited the sale or furnishing of firearms, air guns, or dangerous weapons to minors under age 15 or noncitizens without a permit to carry firearms; violators subject to fine.  Law does not apply to instructors furnishing military weapons to pupils for instruction or drill. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on furnishing minors or certain non-citizens with firearms. |
| 131 | 1923 | North Dakota | Act of Mar. 17, 1923, ch. 266, § 5, 1923 N.D. Laws 379, 380; 1923 N.D. Laws 380, Pistols and Revolvers, ch. 266, § 5 | Prohibition on firearms for those convicted of a felony and "unnaturalized foreign born person[s]." | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on felons and non-citizens from possessing firearms. |
| 132 | 1923 | California | Act of June 13, 1923, ch. 339, § 2, 1923 Cal. Stat. 696 | Prohibited firearm possession and any "other firearm capable of being concealed upon the person" for those convicted of a felony or unnaturalized foreign-born. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on felons and non-citizens from possessing firearms. |
| 133 | 1923 | New York | 1923 N.Y. Laws 140–41, An Act to Amend the Conservation Law in Relation to Aliens, ch. 110, § 2 | Prohibited noncitizens from owning or possessing any shotgun or rifle without a special license. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns hunting license restrictions/qualifications. Defendant fails to qualify this law as relating to hunting only. |
| 134 | 1923 | Connecticut | 1923 Conn. Pub. Acts 3708, An Act Concerning the Possession, Sale and Use of Pistols and Revolvers, ch. 252, § 7 | Prohibited the sale, delivery, or transfer of any pistol or revolver to any noncitizen. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on furnishing non-citizens with firearms. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 135 | 1923 | Connecticut | 1923 Conn. Acts 3732, Unnaturalized Persons, ch. 259, § 17 | Prohibited noncitizens from owning or possessing any shotgun or rifle; violators subject to confiscation and resale of gun by state upon conviction. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens possessing long-guns (not handguns). |
| 136 | 1923 | California | 1923 Cal. Stat. 695 An Act to Control and Regulate the Possession, Sale and Use of Pistols, Revolvers, and Other Firearms Capable of Being Concealed Upon the Person | Prohibited ownership, possession, or control of any pistol, revolver or concealable firearm by any noncitizen or felony convicts. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on felons and non-citizens from possessing firearms. |
| 137 | 1925 | Wyoming | 1925 Wyo. Sess. Laws 110, An Act Prohibiting Persons not Citizens of the United States, from Possessing, Wearing or Carrying any Dangerous or Deadly Weapon. . . , ch. 106, § 1 | Prohibited noncitizens from owning, possessing, or carrying dangerous or deadly weapons; violators subject to misdemeanor conviction, fine or imprisonment | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens from possessing firearms. |
| 138 | 1925 | Nevada | 1925 Nev. Stat. 54, An Act to Control and Regulate the Manufacture, Sale, Possession, Use, and Carrying of Firearms and Weapons, and other Matters Properly Relating Thereto, ch. 47, § 2 | Prohibited noncitizens and convicts from owning, possessing, or having under their custody or control any pistol, revolver, or concealable firearms; violators subject to felony conviction and imprisonment of 1-5 yrs. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts and non-citizens from possessing firearms. |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 139 | 1925 | West Virginia | 1925 W.Va. Acts 31, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace . . . , ch. 3, § 7, pt. b | Prohibited noncitizens from owning, keeping, or possessing firearms | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on non-citizens possessing firearms. |
| 140 | 1925 | Indiana | 1925 Ind. Acts 496, ch. 207, An Act to Regulate and Control the Possession, Sale, and Use of Pistols and Revolvers in the State of Indiana | Prohibited felony convicts from possessing or having under their control a pistol or revolver; violates subject to felony conviction and imprisonment of 1-5 yrs. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on felons possessing firearms. |
| 141 | 1927 | Rhode Island | 1927 R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms, §§ 1, 3 | Prohibited individuals convicted of violent crimes from purchasing, owning, carrying, possessing, or having under their control any firearm. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts of violent crimes possessing firearms. |
| 142 | 1927 | Hawaii Territory | 1927 Haw. Sess. Laws 209-217, An Act Regulating the Sale, Transfer and Possession of Certain Firearms and Ammunitions, and Amending Sections 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2146 and 2147 of the Revised Laws of Hawaii 1925, §§ 1, 4 | Prohibited individuals convicted of violent crimes from owning, possessing, or having under their control any pistol or revolver. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts of violent crimes possessing firearms. |
| 143 | 1931 | California | 1931 Cal. Stat. 2316–17, An Act to Control and Regulate the Possession, | Prohibited noncitizens, felony convicts, or drug addicts from owning, possessing, or having | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Sale and use of Pistols, Revolvers, and other Firearms Capable of Being Concealed Upn the Person, ch. 1098, § 1 | under their custody or control any pistol, revolver, or concealable firearm; violators subject to fine or imprisonment. | able to, while this law concerns a prohibition on felony convicts, drug abusers, and non-citizens from possessing ***handguns***. |
| 144 | 1931 | Pennsylvania | 1931 PA. Laws 498, No. 158 | Prohibited individuals convicted of violent crimes from owning, possessing or having a firearm under their control. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts of violent crimes possessing firearms. |
| 145 | 1933 | Hawaii Territory | 1933 Haw. Sess. Laws 38, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 6 | Prohibited individuals convicted of violent crimes from owning, possessing, or having under their control a pistol, revolver, or ammunition. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts of violent crimes possessing ***handguns***. |
| 146 | 1933 | Hawaii Territory | 1933 Haw. Sess. Laws 39, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 8 | Required license for concealed carry of pistol, firearm, or ammunition; prohibits issuance of license to felony convicts or mentally ill; violators subject to fine or imprisonment. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law requires a license to *carry* a concealed firearm.<br><br>Even if relevant, this 20th-century law requiring a license to *carry* should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Laws from Territories in 20th-century are particularly not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Id*. at 2154.<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Id.* at 2154, n.28. |
| 147 | 1933 | Oregon | 1933 Or. Laws 488, An Act to Amend Sections | Prohibited noncitizens and felony convicts from owning, possessing, or having under | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are |

*Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding–1930s)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | 72-201, 72-202, 72-207, Oregon Code 1930, § 2 | their custody or control and pistol, revolver, concealable firearm, or machine gun; violators subject to felony conviction and imprisonment of 1-5 yrs. | able to, while this law concerns a prohibition on convicts of felonies and non-citizens from possessing *certain* firearms. |
| 148 | 1938 | United States | Federal Firearms Act, 52 Stat. 1250-51 (1938) | Prohibited any person who has been convicted of a "crime of violence or is a fug[a]tive from justice" from receiving "any firearm or ammunition" which has been shipped in interstate commerce. | Not "relevantly similar" to challenged laws, which require all ammunition purchasers to prove eligibility to exercise their right to acquire ammo before they are able to, while this law concerns a prohibition on convicts of felonies and non-citizens from possessing *certain* firearms. |