ROB BONTA
Attorney General of California
P. PATTY LI
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3479
Fax: (415) 703-1234
E-mail: John.Echeverria@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>Defendant. | Case No. 3:18-cv-00802-BEN-JLB<br><br>**DEFENDANT'S BRIEF IN RESPONSE TO THE COURT'S ORDER ENTERED ON FEBRUARY 7, 2023**<br><br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez<br>Action Filed: April 26, 2018 |

## INTRODUCTION

California's Ammunition Laws[1] fully comport with the Second Amendment at both stages of the text-and-history standard adopted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Even if Plaintiffs can demonstrate that their proposed course of conduct is covered by the "plain text" of the Second Amendment (and they cannot), the Ammunition Laws are consistent with the Nation's historical tradition of weapons regulation.[2] On February 7, 2023, the Court ordered the Attorney General to file a brief identifying "the best historical regulation that is a proper analogue and relevantly similar to a statewide background check for buying ammunition," to be filed with the previously ordered briefing. Dkt. 80. All of the analogues relied upon by the Attorney General demonstrate a robust tradition of firearm regulation that supports the constitutionality of the Ammunition Laws. *See* Def.'s Br. at 20–25.

Among the analogues the Attorney General has identified, the background check laws already approved by the Supreme Court in *Bruen* for concealed-carry permits are particularly analogous to a "statewide background check for buying ammunition." Dkt. 80. The Ammunition Laws' background check requirements are relevantly similar to background checks approved by the Supreme Court, which are "presumptively lawful" "conditions and qualifications on the commercial sale

[1] The Attorney General uses "Ammunition Laws" to refer to the four laws challenged in this case. Those laws require that (1) ammunition transactions take place in a face-to-face interaction at a licensed ammunition vendor, (2) purchasers submit to a background check before the ammunition sale or transfer may be completed, (3) purchasers demonstrate proof of lawful presence in this country, and (4) ammunition vendors report certain information to the California Department of Justice. These provisions were enacted by Proposition 63, as amended by Senate Bill 1235. 2016 Cal. Stat., ch. 55.

[2] The Attorney General incorporates by reference his Brief in Response to the Court's Order Entered on December 15, 2022 ("Def.'s Br.") (Dkt. 81), including the arguments that Plaintiffs have not shown that the Ammunition Laws burden conduct covered by the plain text of the Second Amendment. Def.'s Br. at 15–18.

of arms," *District of Columbia v. Heller*, 554 U.S. 570, 627 & n.26 (2008), and are rooted in a tradition of disarming dangerous or unvirtuous groups.

## ARGUMENT

### I. *BRUEN* REQUIRES A HOLISTIC AND CONTEXTUALIZED ANALYSIS OF THE RELEVANT HISTORY, RATHER THAN A SINGLE "DEAD RINGER"

In assessing the constitutionality of a modern firearm regulation—especially in a case implicating "unprecedented societal concerns or dramatic technological changes," *Bruen*, 142 S. Ct. at 2132–33, as here, Def.'s Br. at 19–20—the historical analysis cannot be limited to the assessment of a single past law. The Supreme Court instructed that the government need not identify "a dead ringer" or "a historical *twin*" in the historical record. *Id.* at 2133. The *Bruen* standard is not an "abstract game of spot-the-analogy-across-the-ages." *United States v. Kelly*, No. 3:22-cr-00037, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022). Instead, it requires "an evaluation of the challenged law in light of the broader attitudes and assumptions demonstrated by th[e] historical prohibitions" to determine whether the challenged law is one that *could have existed* consistent with the understanding of the Second or Fourteenth Amendments at the time of ratification. *Id.* at *5 n.7. Even an "imperfect match" can provide useful insight into the broader historical traditions that may justify a modern firearm regulation. *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037, at *24 (S.D.N.Y. Jan. 26, 2023).

*Bruen* made clear that the Second Amendment is not a "regulatory straightjacket," 142 S. Ct. at 2133, confining permissible government regulations to only those laws that had been enacted when the Second and Fourteenth Amendments were ratified. To the contrary, governments are free to adopt a "'variety' of gun regulations," *id.* at 2162 (Kavanaugh, J., concurring) (citation omitted),and "experiment[] with reasonable firearms regulations" to address threats to public safety, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality opinion). Requiring the government to spot a "near perfect match between a

modern-day regulation[] and historical regulations would likely render *Bruen*'s analogical historical reasoning exactly th[e] 'regulatory straight jacket'" that the Second Amendment is not. *United States v. Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *5 (S.D. Cal. Dec. 6, 2022) (Curiel, J.); *see also United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *9 (W.D. Tex. Oct. 3, 2022) (noting that there are more crimes called "felonies" today and that it would be "absurd" to read "*Bruen* robotically [to] require the Government in an as-applied challenge[] to find an analogy specific to the crime charged"). Those considerations inform how to assess the historical analogues identified by the Attorney General and illuminate why the inquiry cannot be limited to a single historical law.

## II. THE BACKGROUND CHECK REQUIREMENTS APPROVED BY THE SUPREME COURT IN *BRUEN* ARE PART OF A TRADITION OF DISARMING DANGEROUS OR UNVIRTUOUS GROUPS AND ARE RELEVANTLY SIMILAR TO THE AMMUNITION LAWS

The Ammunition Laws' background check requirements are relevantly similar to the background check laws already approved by the Supreme Court in *Bruen*, which arose out of a tradition of historical laws prohibiting dangerous or unvirtuous persons from possessing firearms. *Bruen* expressly endorsed background check requirements for concealed-carry permits, which are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at, 635). The Supreme Court's approval of background checks for the public carry of firearms logically extends to background checks for firearm and ammunition purchases as well. *Or. Firearms Fed'n, Inc. v. Brown*, __ F. Supp. 3d __, No. 2:22-cv-01815-IM, 2022 WL 17454829, at *15 (D. Or. Dec. 6, 2022) (relying on the "clear guidance from *Bruen*" in that a holding permit-to-purchase requirement, including background checks, does not violate the Second Amendment).[3]

---

[3] In identifying this type of law, the Attorney General does not suggest that

The Supreme Court endorsed background checks even though such requirements relating to the acquisition or carrying of firearms did not appear until the early 20th century. *See* Dkt. 36-1 at 6–9 (summarizing history of background check requirements dating back to New York's 1911 Sullivan Law); *see also Silvester v. Harris*, 843 F.3d 816, 824 (9th Cir. 2016) (discussing history of California waiting-period laws enacted since 1923 to, *inter alia*, provide time to conduct a background check for firearm purchases). Despite appearing in the 20th century, these restrictions and requirements are "'lineal descendants' of historical laws banning dangerous people from possessing guns." *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting). Numerous cases have recognized this robust tradition of firearm regulation, which justifies contemporary restrictions on the ability of certain individuals to acquire and possess firearms and ammunition. Def.'s Br. at 21–23 (citing cases). Thus, the 20th-century background check requirements sanctioned in *Bruen* are consistent with "historical laws banning dangerous people from possessing guns." *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting); Def.'s Br. at 21–24. These background check requirements are relevant under *Bruen* precisely because they are consistent with this long-standing tradition. *Compare Bruen*, 142 S. Ct. at 2153 n.28 (discounting probative value of 20th century laws that "contradict[ed] earlier evidence").

Background check laws and the historical tradition from which they arose are relevantly similar to the Ammunition Laws' background check requirements based on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133. The Ammunition Laws impose a comparable, minimal burden on this right because, like background checks for concealed-carry permits and firearms purchases and the historical tradition of prohibiting dangerous persons from possessing firearms, the Ammunition Laws are minimally

---

the other laws relied upon, or that could have been identified with additional time, are not equally analogous and relevantly similar to the Ammunition Laws.

burdensome "conditions and qualifications on the commercial sale of arms," which are not called into question by the Supreme Court's Second Amendment precedents. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626). The Ammunition Laws also mirror federal requirements for firearm purchases, as federal law generally prohibits "the sale of a firearm 'to a person who does not appear in person' at [the dealer's] business." *Abramski v. United States*, 573 U.S. 169, 181 (2014) (citing 18 U.S.C. § 922(c)). In addition, the Ammunition Laws use objective criteria to determine whether an ammunition purchaser is prohibited under federal or state law, which is similar to the background checks approved of by the Supreme Court. *See Bruen*, 142 S. Ct. at 2138 n.9. And the recordkeeping and reporting requirements applicable to licensed ammunition vendors, *see* Cal. Penal Code § 30352, do not burden their customers. The Ammunition Laws therefore impose a comparably minimal burden on the right of "law-abiding, responsible citizens," *Bruen*, 142 S. Ct. at 2131 (quoting *Heller*, 554 U.S. at 635), to keep and bear arms for self-defense.

Any minimal burden imposed by the Ammunition Laws is comparably justified by the public safety interest in preventing prohibited persons from using firearms. Both the Ammunition Laws and the background check requirements sanctioned by the Supreme Court are means of enforcing existing prohibitions under federal and state law. Like background checks for firearms purchases, the Ammunition Laws' background checks are designed to ensure that only "law-abiding, responsible citizens" may purchase ammunition. *Bruen*, 142 S. Ct. at 2131.

## CONCLUSION

For these reasons, and those discussed in the concurrently filed Additional Brief, Plaintiffs' Second Amendment claim fails as a matter of law.

Dated: February 10, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
P. PATTY LI
Supervising Deputy Attorney General

*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*