C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| KIM RHODE, et al., | Case No.: 3:18-cv-00802-BEN-JLB |
|---|---|
| Plaintiffs, | |
| v. | **PLAINTIFFS' RESPONSE TO DEFENDANT'S BRIEF RE: COURT'S ORDER ENTERED ON DECEMBER 15 2022** |
| XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
| Defendant. | |

## INTRODUCTION

This Court requested that the State provide the historical laws that best support California's Ammunition Laws' constitutionality under *Bruen*. Not one of the laws provided remotely resembling any of those first-of-their-kind laws. It is little surprise, then, that the State spends the bulk of its brief trying to escape a historical inquiry altogether, including raising issues wholly unrelated to the briefing that this Court requested. But those efforts were in vain.  The Ammunition Laws undeniably regulate conduct within the Second Amendment's text and Plaintiffs have standing to challenge them. Because the State failed to identify even any relevantly similar laws to conditioning ammunition purchases on background checks, in-person-purchaser mandates, citizenship tests, or registration, let alone establish an enduring American tradition of such requirements, the Ammunition Laws violate the Second Amendment.

## ARGUMENT

### I. California's Novel Ammunition Regime Fails *Bruen*'s Test.

When confronted with a Second Amendment challenge, a court must now begin by asking whether the conduct in which an individual seeks to engage is within the ambit of the Second Amendment. *Id.* at 2129-30. If so, then "the Constitution presumptively protects that conduct," *id.*, and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127. "Only" if the government can "identify a well-established and representative historical analogue" to the regulation it seeks to defend, *id.* at 2133, "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command,'" *id.* at 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Because California's Ammunition Laws undeniably affect Second Amendment protected conduct and are neither part of any historical tradition nor address novel societal concerns or technological advances, they are unconstitutional.

### A. California's Ammunition Laws Plainly Regulate Conduct Presumptively Covered by the Plain Text of the Second Amendment.

The first question under *Bruen* is whether the conduct in which an individual seeks to engage is covered by the Second Amendment. 142 S.Ct. at 2129-30. The answer here is obviously yes. Plaintiffs simply want to purchase the ammunition that is essential to putting their firearms to practical use. That conduct falls comfortably within the Second Amendment. Tellingly, the State does not even attempt to argue otherwise. It instead attempts a sleight of hand, trying to characterize Plaintiffs' proposed course of conduct as wishing to "purchase ammunition without passing a background check" or "having to complete a face-to-face transaction at a licensed firearms dealer" and "without the dealer retaining records of the transaction." Defendant's Brief in Response to the Court's Order Entered on December 15, 2022 ("State's Brief") at 16.

That is not how the inquiry works. *Bruen* did not define the conduct in which the plaintiffs there sought to engage as carrying a firearm in public "without first showing special need." It defined it as "carrying handguns publicly for self-defense"—full stop. 142 S.Ct. at 2134. Because *that conduct* fell within the plain text of the Second Amendment, New York bore the burden of trying to prove that *the restrictions* it imposed on that conduct are "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Here, too, Plaintiffs' right to acquire ammunition stands on its own, and the State must justify its restrictions on that right by identifying a longstanding historical tradition in this country of imposing similar restrictions. The State cannot escape its historical burden by narrowly redefining the proposed course of conduct to bake in its regulatory hoops.

The State additionally makes the sweeping argument that the Ammunition Laws should escape Second Amendment scrutiny entirely because their "requirements do not ***prevent*** any 'people' from 'keep[ing]' or 'bear[ing] 'Arms' for lawful purposes." State's Brief at 16 (emphasis added). In other words, in the State's view, unless a plaintiff proves

that a restriction is so severe as to eviscerate her right to keep or bear arms, the Second Amendment is not even implicated.

It is difficult to imagine an argument less faithful to *Bruen*. Indeed, that is just a thinly veiled effort to resuscitate the two-step test that *Bruen* discarded. Tellingly, the State cites no supporting authority; because there is none. In reality, whether a law is subject to Second Amendment scrutiny turns not on how "severe" a burden it imposes on Second Amendment rights, but on whether the plaintiff's "proposed course of conduct" falls within "the plain text of the Second Amendment." *Bruen*, 142 S.Ct. at 2134. It if does, then the State must prove that "historical regulations impose[d] a comparable burden on the right of armed self-defense," both in terms of "how and why the regulations burden" the right. *Id*. at 2133. The State cannot short-circuit that analysis by observing that at least it has not (explicitly) prevented people from keeping or bearing arms altogether.

In any event, as this Court has already found, the Ammunition Laws have prevented at least *some* law-abiding citizens from purchasing ammunition. "Today, a United States Citizen who has only a standard California-issued DL or ID will not qualify to take the first step in purchasing ammunition, i.e., the ammunition background check." And, as of April 23, 2020, at least "101,047 law-abiding citizens (plus an untold additional number who may have been discouraged by the clumsiness of the system) were unable to exercise their Second Amendment right to acquire ammunition for their firearms." *Rhode v. Becerra*, 445 F. Supp. 3d 902, 917 (S.D. Cal. 2020) ("*Rhode I*"). That number now, years later, is certainly many thousands more. The State claims that such rejections "are rare and can be handled by addressing the reason for the rejection (by, for example, updating records)" or "using a different method of background check . . .." State's Brief at 17. But a rejection rate over 15% of qualified purchasers cannot be seriously characterized as "rare." And, as the record shows, a decisive majority of people do not go on to address the reason for their rejection but instead give up on procuring ammunition through California's process. *See* Supp. Morales Decl., ECF No. 42, ¶ 7.

1  That is likely due to the complicated process for doing so as this Court already described,
2  including "the first hurdle they faced[,] discovering the reason for the rejection." *Rhode I*,
3  445 F. Supp. 3d at 918. What's more, the State ignores the significant percentage of
4  people who the background check wrongly *denied* as prohibited persons. *Id.* at 922.

5       Whatever the text of the Second Amendment's scope, a regime *capable* of
6  preventing *any* law-abiding person, let alone thousands, from indefinitely acquiring
7  ammunition—particularly when it provides no meaningful guidance to those wrongfully
8  prevented on how to overcome their respective barrier—is undoubtedly included.  As the
9  Ninth Circuit has explained, "without bullets, the right to bear arms would be
10 meaningless. A regulation eliminating a person's ability to obtain or use ammunition
11 could thereby make it impossible to use firearms for their core purpose." *Jackson v. City*
12 *& Cty. of S.F.,* 746 F.3d 953, 967 (9th Cir. 2014) ("*Jackson*"). "Thus, the right to possess
13 firearms for protection implies a corresponding right to obtain the bullets necessary to use
14 them." *Id*. (*citing Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). The State's
15 dismissal of the Ammunition Laws' impact on that right simply does not square with the
16 respect that the right deserves.

17      Nevertheless, the State argues that *Bruen*'s explicit approval of "background
18 check[s]" means that they generally "fall outside of the plain text of the Second
19 Amendment" and evade historical analysis. State's Brief at 17.  But that makes no sense.
20 Setting aside that it said nothing about *ammunition* background checks, *Bruen* makes
21 clear, as the State acknowledges, that background checks cannot be "put toward abusive
22 ends" and they remain subject to as-applied legal challenges.  *Bruen*, 142 S.Ct. at 2138,
23 n.9. The State fails to explain why either of those would be the case for an activity that
24 falls outside of the Second Amendment's text. That is because they would not. And, even
25 assuming that only abusive background checks fall within the Second Amendment's text,
26 California's system qualifies for the reasons already explained above (e.g., imposing
27 absurd ID requirements; rejecting thousands of eligible purchasers over trivialities;
28 providing no meaningful guidance to those wrongly rejected ammunition; etc.).

Of course "[t]he purchasing of ammunition 'may be subjected to governmental restrictions.'" State's Brief at 16 (quoting *Jackson*, 746 F.3d at 970). But not *any* restriction. Only those that form part of "an *enduring* American tradition of state regulation." *Id.* at 2155. As explained below, the State has utterly failed to establish such a tradition for the Ammunition Laws, as it must to successfully defend them.

### B. The State Has Identified No Historical Tradition Lending Any Support to Conditioning Ammunition Purchases on Perpetual Background Checks; Citizenship Tests; Purchaser's Physical Presence; or Registration.

Because the State seeks to regulate conduct that is presumptively protected by the Second Amendment, it is the State's burden to "demonstrate that [its] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. That is a burden the State cannot meet. As a practical matter, the State cannot promote its Ammunition Laws as "cutting edge" and then defend them as consonant with historical tradition. There is no squaring that circle.

Since there never has been any on-point historical precedent for California's novel Ammunition Laws, the State necessarily engages in reasoning by analogy. Indeed, the State implicitly concedes that without such "a more nuanced approach" of reasoning by analogy it cannot prevail here, as it makes no argument under the normal standard that *Bruen* lays down. The State's reliance on analogies, however, is misplaced.

### 1. The State fails to meet *Bruen*'s threshold to reason by analogy.

For one thing, *Bruen* made clear that such "a more nuanced approach" of reasoning by analogy "*may*" be appropriate, but only when "unprecedented societal concerns or dramatic technological changes" make the search for a dead-ringer futile. *Bruen*, 142 S.Ct. at 2132. That threshold alone presents an insuperable obstacle for the State, as there is nothing novel about the problem that the State seeks to address. The State is worried about ammunition falling into the hands of people who would misuse firearms. There may be some things new under the sun, but the commercial availability of ammunition and the risk that dangerous individuals might avail themselves of it is not one of them.

States have faced that risk since the dawn of the union. But for the vast majority of our Nation's history, to the extent states addressed that concern at all, they did so by regulating *firearms*, not by layering cumbersome secondary layers of restrictions onto each and every acquisition of *ammunition*. Indeed, excluding blatantly discriminatory measures designed to deprive disfavored political groups, such as blacks and Catholics, the State cites to only three laws that even mention ammunition, and they were all 20th century enactments. ECF No. 79-2 at 9-10.

The State argues that a supposed proliferation of so-called "ghost guns" demands a "more nuanced approach" of reasoning by analogy. State Brief at 18. But the State fails to explain how acquiring "unregulated and unserialized" arms without undergoing a background check is a modern development. State's Brief at 19-20.  That is because it cannot. The State concedes that background checks are a 20th century invention. *Id*.  And the notion that pre-20th century governments regulated the exchange of firearms or required that they be serialized finds no support in the historical record, as federal serialization requirements did not even start until 1968 with the federal Gun Control Act. The State thus cannot rely on its invented "ghost gun" category of arms to justify recasting an age-old issue of untraceable firearms and purchasers as a modern one. Likewise, the State puts forth no support for its argument that modern ammunition poses new concerns because, again, it cannot. The same type of firearms firing the same type of ammunition have been around for over a century. *See* The Editors of Encyclopedia Britannica, *Cartridge ammunition*, https://www.britannica.com/technology/cartridge-ammunition#ref26921 (last accessed February 21, 2023) (describing the 19th century development of centerfire ammunition).

Nor at this point in our Nation's history is there anything novel about the ability to impose background checks for purchasing firearms; the only thing novel is California's well-nigh unprecedented effort to impose them for ammunition purchases. As the State acknowledges, background checks for firearms began in the early 1900s. Yet it took nearly a century before the first state even attempted to impose background checks for

ammunition sales, *see* James B. Jacobs & Zoe A. Fuhr, *Universal Background Checking – New York's SAFE Act*, 79 Alb. L. Rev. 1327, 1349-52 (2016), and it took even longer than that for California to become the first state in history to actually implement one. Thus, even if one were to conceive of the ability to conduct point-of-sale background checks as a "dramatic technological change[]," *Bruen*, 142 S.Ct. at 2132, that change came 100 years too early to justify California's novel regime.[1]

### 2. The State offers no "relevantly similar" regulations to California's Ammunition Laws.

In addition to timing, there is a more fundamental problem for the State's efforts to reason by analogy. As *Bruen* explained, to be "relevantly similar," "historical regulations must impose a comparable burden on the right of armed self-defense," both in terms of "how and why the regulations burden" the right. 142 S.Ct. at 2133.  In other words, they must address a similar problem in a similar way that imposes a similar degree of burden. Yet, as far as Plaintiffs can tell, (setting aside the racially and religiously discriminatory enactments) only three of the 225 laws which the State has identified as potential comparators even mention ammunition, and only *one* of them concerns the *same subject matter* as the regime challenged here—the acquisition of ammunition—much less burden Second Amendment rights to the same degree.[2] It is a 1938 federal law merely

---

[1] The State argues that "the development of a reliable and fast internet, computer databases, and other technologies that enable the accurate and efficient processing of ammunition sales" are "dramatic technological changes" that justify a nuanced approach. State brief at 19:7-12. But being able to do more effectively something that it has already been doing for a century is hardly a "dramatic technological change[]." *Bruen*, 142 S.Ct. at 2132. If anything, that ought to make it easier for the state to deploy that information technology to better enforce its prohibited-person laws without imposing ever greater burdens on law-abiding citizens.

[2] It is so obvious as hardly worthy of mention, but even assuming any of the three ammunition laws were analogous (or from a relevant time period), they are quintessential "outlier[s]" that come nowhere close to establishing an "enduring American tradition." *Bruen*, 142 S.Ct. at 2154; *see, e.g.*, *id.* at 2142 ("we doubt that *three* colonial regulations could suffice to show a tradition of public-carry regulation"); *id.* at 2147 n.22 (law from the Territory of New Mexico was "an outlier statute"); *id.* at 2153 ("[T]he Texas statute, and the rationales set forth in *English* and *Duke*, are outliers. … "[W]e will not give disproportionate weight to a single state statute and a pair of state-court decisions.").

criminalizing the act of a prohibited person acquiring ammunition, not a screening law. The State has thus identified *no* law imposing a similar burden to the Ammunition Laws.

Indeed, despite being invited by this Court to identify the specific historical laws that most resemble California's Ammunition Laws, ECF No. 80, the State does not even attempt to note *any* particular one(s). Instead, it argues that the laws provided in its surveys demonstrate "a tradition of historical laws prohibiting dangerous or unvirtuous persons from possessing firearms" and that "[t]he Ammunition Laws' background check requirements are relevantly similar to the background check laws already approved by the Supreme Court in *Bruen*" because they "arose out of that tradition." Defendant's Brief in Response to the Court's Order Entered on February 7, 2023 at 3.[3]  But there is an obvious difference between imposing one-time burdens on the acquisition of a firearm or procurement of a carry-license and imposing those burdens virtually every time a law-abiding citizen wants to acquire the means to operate that firearm. Every state save California and New York has recognized that distinction for at least a century—a fact that itself speaks volumes.

But the Ammunition Laws are still worse.  Even assuming ammunition background checks generally fell within the nation's regulatory tradition, that does not mean that *this* particular background check is automatically constitutional. As *Bruen* notes, the Second Amendment does not tolerate "abusive" aspects of screening schemes, such as "lengthy wait times" or "exorbitant fees" that act to "deny ordinary citizens their right . . . ." *Bruen*, 142 S. Ct. at 1238 n.9.  As explained above and as this Court has already found, the Ammunition Laws deny ordinary citizens their right to acquire ammunition over trivialities and then fail to provide those wrongly denied any meaningful guidance on how to overcome the scheme's respective obstacle. *Rhode I,* 445

---

[3] The State does cite one 20th century law not appearing in its surveys as comparable to California's face-to-face requirement. *Id*. at 5. But it does not even attempt to do that for its one-of-a kind ammunition registration. Cal. Penal Code § 30352. *Id*.

F. Supp. 3d at 917-920. So whatever the Second Amendment says about ammunition background check schemes generally, it certainly does not tolerate *this* one.

In short, American governments have not "required law-abiding, responsible citizens to" submit to a Kafkaesque oversight regime every single time they seek to purchase ammunition, where denials are unexplained today and approvals count for nothing tomorrow. *Bruen*, 142 S.Ct. at 2156. California has sought to address a problem—present for hundreds of years—in a way that no other state (save one just several years ago) ever contemplated. Its regulatory regime is more akin to a form of probation, under which the state engages in constant supervision of anyone who seeks to exercise their Second Amendment rights, assuming always and everywhere that any such person must be "more likely … to violate the law" than follow it, *United States v. Knights*, 534 U.S. 112, 120 (2001), no matter how many or how recently past background checks have proven otherwise. That is no way to treat law-abiding citizens even when fundamental rights are not concerned. To countenance such a law in this context would be to impermissibly convert the Second Amendment into a "second-class right" all over again. *Bruen*, 142 S.Ct. at 2156.

Thus, even if it can meet the threshold for application of "a more nuanced approach" under *Bruen* by showing there are unprecedented concerns or technological advances (it cannot), the State still cannot meet that standard. Because the State concedes that it cannot successfully defend the Ammunition Laws without the standard applying, Plaintiffs necessarily prevail.

**II.     The State Raises Various Issues Beyond the Scope of the Court's Order.**

The State starts out by objecting to how this Court has handled proceedings in this matter since receiving the Ninth Circuit's order remanding this case in light of *Bruen*. State's Brief at 8-10.  Plaintiffs will defer to the Court in how it responds to those arguments, unless the Court requests their input. There is one issue, however, that Plaintiffs do wish to highlight for the Court. Because Plaintiffs' challenge to California Penal Code section 30314 on federal preemption grounds is not currently before the

Court on this, or any, motion, Plaintiffs request that the Court construe this briefing as supporting a motion for partial summary judgment with respect to Plaintiffs Second Amendment and Dormant Commerce Clause claims or, alternatively, a rehearing of their previous motion for preliminary injunction. Plaintiffs intend to bring a subsequent motion on their federal preemption claim to preserve that issue on appeal.

Next, the State renews its challenges to Plaintiffs' standing. State's Brief at 10-11. Plaintiffs will not respond because, in addition to being beyond the scope of this Court's ordered briefing, this Court has already decided that issue in Plaintiffs' favor. See Order on MPI at 42-43.  Nor will Plaintiffs respond to the State's baseless argument that their facial challenge fails, State's Brief at 11-13, because it is far afield from the scope of this 10-page brief, which is responding to the State's supposed historical analogues. Of course, Plaintiffs remain ready and willing to provide briefing on either subject, upon this Court's request.

## CONCLUSION

For the above reasons, this Court should issue an order declaring that all the Ammunition Laws violate the Second Amendment and that California Penal Code sections 30312 and 30314 also violate the Dormant Commerce Clause, and permanently enjoining those provisions' enforcement on those grounds.

Dated: February 21, 2023          **MICHEL & ASSOCIATES, P.C.**

*s/ Sean A. Brady*
Sean A. Brady
Email: sbrady@michellawyers.com
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Becerra*
Case No.: 3:18-cv-00802-JM-JMA

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**PLAINTIFFS' RESPONSE TO DEFENDANT'S BRIEF RE: COURT'S ORDER ENTERED ON DECEMBER 15, 2022**

on the following parties by electronically filing the foregoing on February 21, 2023, with the Clerk of the District Court using its ECF System, which electronically notifies them.

John D. Echeverria
Deputy Attorney General
john.echeverria@doj.ca.gov
Anthony P. O'Brien
Deputy Attorney General
anthony.obrien@doj.ca.gov
Christina R.B. Lopez
Deputy Attorney General
christina.lopez@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
   *Attorneys for Defendant Attorney*
   *General Rob Bonta*

    I declare under penalty of perjury that the foregoing is true and correct. Executed on February 21, 2023, at Long Beach, CA.

*/s/ Laura Palmerin*
Laura Palmerin

CERTIFICATE OF SERVICE

18cv802