ROB BONTA
Attorney General of California
P. PATTY LI
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
CHRISTINA R.B. LÓPEZ
Deputy Attorney General
State Bar No. 312610
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6106
  Fax:  (916) 324-8835
  E-mail:  Christina.Lopez@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>Defendant. | Case No. 3:18-cv-00802-BEN-JLB<br><br>**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' BRIEF FILED ON FEBRUARY 10, 2023**<br><br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez<br>Action Filed: April 26, 2018 |

# INTRODUCTION

In *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111, 2148 n.9 (2022), the Supreme Court explained that "nothing" in its decision "should be interpreted to suggest the unconstitutionality of . . . licensing regimes" that are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" The court reasoned that such licensing regimes, which "often require applicants to undergo a background check or pass a firearms safety course," "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment" rights when they incorporate "narrow, objective, and definite standards." *Id.* (internal quotation marks omitted). Under those standards, California's Ammunition Laws[1] are presumptively constitutional. The Ammunition Laws incorporate a "background check" requirement and operate through "narrow, objective, and definite standards," as *Bruen* authorizes. Although Plaintiffs cite *Bruen* extensively in their February 10 brief, they never once address the discussion in *Bruen* authorizing this type of law. *See* Pls.' Br. Re: Relevant Analogs, Dkt. No. 83 ("Pls.' Br.").

Nor do Plaintiffs meaningfully engage with *Bruen*'s first requirement—that the *specific* conduct covered by the Ammunition Laws be covered by the "plain text" of the Second Amendment. 142 S. Ct. at 2129–30. Although the Court's order called for briefing "focus[ed]" on historical analogues, Dkt. No. 77, the textual stage of the *Bruen* test is a threshold inquiry, and it is Plaintiffs' burden to establish that the plain text covers their proposed conduct.

---

[1] The Attorney General uses "Ammunition Laws" to refer to the laws that require that (1) ammunition transactions take place in a face-to-face interaction at a licensed ammunition vendor, (2) purchasers submit to a background check before the ammunition sale or transfer may be completed, (3) purchasers demonstrate proof of lawful presence in this country, and (4) ammunition vendors report certain information to the California Department of Justice. These provisions were enacted by Proposition 63, as amended by Senate Bill 1235. 2016 Cal. Stat., ch. 55.

In their only mention of analogous background checks in the brief, Plaintiffs contend that "[t]o the extent [] 20th century laws stand as an analogue for background checks, they only support background checks for firearms at most." Pls.' Br. at 11. That is conclusory, and it is wrong. First, conditions on the sale of ammunition that in no way prohibit its possession by law-abiding citizens do not burden any Second Amendment right. Second, even if any part of the Ammunition Laws were covered by the Second Amendment, such conditions are the type of "licensing regimes" and "background checks" that were authorized by the Supreme Court, in accordance with history and tradition. Rather than address these critical points, Plaintiffs contend that none of the laws cited in the charts filed at the Court's direction are analogues of the Ammunition Laws. But as Defendant has demonstrated, the history reflected in the charts establishes a long tradition of ensuring that only law-abiding and responsible persons exercise their Second Amendment rights. At both steps of the *Bruen* analysis, and according to *Bruen* itself, the Ammunition Laws pass constitutional muster.

## ARGUMENT

### I. PLAINTIFFS DO NOT AND CANNOT SHOW THAT THEIR PROPOSED CONDUCT IS COVERED BY THE SECOND AMENDMENT[2]

Instead of meaningfully addressing how the Ammunition Laws burden conduct covered by the plain text of the Second Amendment, Plaintiffs primarily rely on this Court's preliminary injunction decision. Pls.' Br. at 2. But that analysis was conducted pre-*Bruen*. The Ninth Circuit vacated the decision and remanded for further consideration *in light of Bruen*.[3]

*Bruen* confirms that the Ammunition Laws do not burden any Second Amendment right. According to *Bruen*, as a threshold matter, Plaintiffs must show

---

[2] The Attorney General here incorporates pages 15–18 of his Brief in Response to the Court's Order Entered on December 15, 2022, Dkt. No. 81 ("Def.'s Br.").

[3] As there is no motion currently pending (for injunction or otherwise), the current posture of this case is not clear. *See* Def.'s Br. at 8–9.

that the "plain text" of the Second Amendment protects the conduct in which they wish to engage. 142 S. Ct. at 2129–30. Plaintiffs bear the initial burden of demonstrating that the text of the Second Amendment presumptively protects their desired conduct—*i.e.*, that the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms" for lawful purposes, U.S. Const. amend. II. *See* Def.'s Br. at 13–14. They have failed to do so here.

Plaintiffs incorrectly characterize their desired conduct as the possession of ammunition. Pls.' Br. at 3.[4] But for the purpose of *Bruen*'s plain text analysis, the proposed conduct is the conduct that the challenged law actually prohibits—here, the purchase of ammunition without having to complete a face-to-face transaction at a licensed firearms dealer, without the dealer retaining records of the transaction, and without passing a background check. *See Oakland Tactical Supply, LLC v. Howell Twp.*, 2023 WL 2074298, at *3 (E.D. Mich. Feb. 17, 2023) ("The proposed conduct could not be simply 'training with firearms' because the zoning ordinance does not prohibit 'training with firearms.' Rather, the[] proposed conduct is the construction and use of an outdoor, open-air 1,000-yard shooting range."). The Ammunition Laws operate as a "licensing regime" with background check and similar requirements as a condition precedent to purchasing ammunition.

In short, Plaintiffs' Second Amendment challenge seeks to vindicate a Second Amendment right to purchase ammunition without a background check or complying with commercial conditions. Plaintiffs have identified no textual basis for their assertion that this specific conduct is protected by the Second Amendment. Accepting Plaintiffs' gloss of the prohibited conduct as implicating a more general right to purchase ammunition would mean that "any number of [] challenged regulations would [] boil down to mere possession, then promptly and automatically proceed to" the historical stage of the *Bruen* analysis, *United States v.*

---

[4] Plaintiffs cite *Jackson v. City and County of San Francisco*, but the law at issue in *Jackson* outright "prohibit[ed] the sale of" certain ammunition, 746 F.3d 953, 958 (9th Cir. 2014). The Ammunition Laws plainly do not.

*Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022) —an outcome not contemplated by *Bruen*, *see Def. Distributed v. Bonta*, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022) (identifying "a penumbra" of rights "is quite-clearly not a 'plain text' analysis, required under *Bruen*").

What the Ammunition Laws *actually* do is allow all law-abiding citizens to purchase ammunition, subject to certain conditions. As evidenced by the fact that no Plaintiff has claimed to have been prevented from purchasing ammunition,[5] such conditions are not the same as a bar or prohibition. Plaintiffs apparently wish to purchase ammunition without having to complete a face-to-face transaction at a licensed firearms dealer, without the dealer retaining records of the transaction, and without passing a background check. *See Reyna*, 2022 WL 17714376, at *4 (characterizing proposed conduct as "'possession of a firearm *with an obliterated serial number*' and not 'mere possession [of a firearm]'" (emphasis added)); Pls.' Br. at 3. *Bruen* confirms that this conduct is not covered by the plain text of the Second Amendment. 142 S. Ct. at 2134, 2138 n.9 (objective conditions that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'—*i.e.*, "the people"—are permissible).

The Ammunition Laws do not prevent any "'law-abiding, responsible citizens'" from keeping, carrying, or "'us[ing] arms' for self-defense." *Bruen*, 142 S. Ct. at 2131 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)); *see also Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (en banc) (noting that the plaintiff failed to state a claim that the challenged law "impedes . . . residents from acquiring firearms"). They merely "impos[e] conditions and qualifications on the commercial sale of [ammunition]"—a "presumptively lawful"

---

[5] This fact in itself precludes this lawsuit, as it demonstrates that no plaintiff has standing. *See* Def.'s Br. at 10–11.

course for the State to take. *Heller*, 554 U.S. at 626–27 & n.26.[6] The Ammunition Laws thus do not burden conduct protected by the Second Amendment.

## II. THE AMMUNITION LAWS ARE CONSISTENT WITH THE HISTORY AND TRADITION OF FIREARMS REGULATION[7]

Even if Plaintiffs' desired conduct were covered by the Second Amendment (it is not), the Ammunition Laws are part of a historical tradition of regulation that *Bruen* recognized. *Bruen* explicitly authorizes "background check[s]" or requirements to "pass a firearms safety course," so long as the schemes are not "put toward abusive ends" where "lengthy wait times" or "exorbitant fees deny ordinary citizens their right to public carry." 142 S. Ct. at 1238 n.9. Background check requirements are constitutionally permissible, "subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." *Id.* at 2162 (Kavanaugh, J., concurring). In other words, *Bruen* condones background checks and licensing schemes with objective criteria.

Even though background checks first appeared in the early 20th century, *Bruen* confirms that they are consistent with a history and tradition of ensuring "that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 2138 n.9. *Heller* similarly confirmed the "longstanding" history and tradition of regulating possession by prohibited persons, 554 U.S. at 626, and the Ninth Circuit has recognized that "the right to bear arms was inextricably tied to the concept of a virtuous citizenry" and that "the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)," *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (cleaned up)[8]; *see also Duncan v.*

---

[6] This presumption could conceivably be rebutted by evidence that the condition or qualification is applied in an unconstitutional manner, but that would not amount to a facial challenge to the statute as a whole. *See Bruen*, 142 S. Ct. at 1238 n.9; *id.* at 2162 (Kavanaugh, J., concurring).

[7] The Attorney General here incorporates pages 13–15 of Defendant's Brief.

[8] Even though it was decided before *Bruen*, *Vongxay* is good law, to which courts in this Circuit are bound. *United States v. Jackson*, 2023 WL 1967199, at *5 & n.4 (W.D. Wash. Feb. 13, 2023) ("join[ing] with other district courts in this

*Bonta*, 19 F.4th 1087, 1157 & n.27 (9th Cir. 2021)[9] (Bumatay, J., dissenting) ("Prohibiting the possession of arms by those found by the state to be dangerous, like violent criminals, dates to the Founding." (citing *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting))).[10]

The Ammunition Laws are part of that long tradition. They extend background checks for purchasing or carrying firearms to the purchase of ammunition, to ensure that only "law-abiding, responsible" individuals are able to acquire ammunition. 142 S. Ct. at 1238 n.9. The background check requirement aims to ensure that persons prohibited under California or federal law from possessing, receiving, owning, or purchasing operable firearms, *see* 18 U.S.C. § 922(g); Cal. Penal Code §§ 29800, 29805; Cal. Welf. & Inst. Code § 8103, are also barred from acquiring ammunition. And the requirement "track[s] squarely with the objective regime outlined in *Bruen*" and comports with the "clear guidance from *Bruen*" that such a regime is constitutional. *See Or. Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *15 (D. Or. Dec. 6, 2022) (holding permit-to-purchase requirement similarly comports with *Bruen*). Significantly, Plaintiffs do not disagree that the purpose of the Ammunition Laws is preventing prohibited persons from obtaining ammunition. In fact, they concede that the Ammunition Laws are "designed to gatekeep objectively dangerous people from obtaining ammunition." Pls.' Br. at 7.

The Ammunition Laws impose a comparable burden on the right to armed self-defense as the examples of presumptively constitutional regulation outlined in *Bruen*. The background check requirement employs objective criteria and does not

---

circuit" in finding itself "bound by *Vongxay* and its progeny" post-*Bruen* (collecting cases)).

[9] Although the opinions in *Duncan* and *Kanter* have been vacated and abrogated, respectively, the dissenting opinions are cited for their persuasive value.

[10] *See also* pages 20–21 of Defendant's Brief and the cases cited therein.

prohibit law-abiding citizens from acquiring ammunition.[11]  The in-person requirements are also minimally burdensome "conditions and qualifications on the commercial sale of [ammunition]," which are not called into question by the Supreme Court's Second Amendment precedents.  *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).  Finally, it is not clear how recordkeeping and reporting requirements could be a burden on an ammunition customer's right to armed self-defense at all, and Plaintiffs do not explain how they would.  As set forth above, these types of conditions and qualifications are part of a historical tradition of preventing dangerous or unvirtuous individuals from keeping or bearing arms that has been credited not just by the Supreme Court in *Bruen* and *Heller*, but also by other courts.  *See also* Br. of *Amicus Curiae* in Supp. of Def.'s Opp'n to Pls.' Mot. for Preliminary Inj. at 6–11, Dkt. 36-1 (summarizing history of early background check, personal identification, and recording/reporting requirements).

Any burden imposed by the Ammunition Laws is also comparably justified to the examples of presumptively constitutional regulation identified in *Bruen*.  The Ammunition Laws seek to ensure that only law-abiding, responsible individuals are able to purchase ammunition.  That is the very same justification for such conditions blessed by *Bruen*.  142 S. Ct. at 2138 n.9 (noting that permissible conditions were "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'").  Plaintiffs acknowledge as much.  Pls.' Br. at 8 (noting that "the 'why' for [] laws" that prohibited "loiterers, drunks, and former confederate military members" from possessing arms "is fairly similar to California's ammunition scheme").  Plaintiffs' argument that "a prohibition on a specific set of people is not an analogue to requiring paid background checks each

---

[11] Contrary to Plaintiffs' suggestions, *e.g.*, Pls.' Br. at 3, rejections of persons who are not otherwise prohibited from possessing ammunition are rare and can be handled by addressing the reason for the rejection (by, for example, updating records, using a different method of background check, or both).  3d Suppl. Decl. of Mayra G. Morales ¶ 26, Dkt. No. 53.  And a small number of erroneous denials does not render the Ammunition Laws as a whole facially unconstitutional under the Second Amendment.

time [a] law abiding resident of California wants to purchase ammunition" misses the point. Pls.' Br. at 11. The purpose (or "why") of the conditions in the Ammunition Laws is to *confirm* that a purchaser is, in fact, law abiding. According to *Bruen*, the State is permitted to do just that.

Plaintiffs' response to the historical analogues fails to heed *Bruen*'s instruction that a "more nuanced approach" is required where, as here, a challenged law implicates "unprecedented societal concerns or dramatic technological changes." 142 S. Ct. at 2132.[12] The Ammunition Laws address both. Not only do the Ammunition Laws' background check requirements implicate "dramatic technological changes" because they became possible only after the development of reliable and fast internet, computer databases, and other technologies that enable the accurate and efficient processing of firearm and ammunition sales, but they were also necessitated by technological changes in ammunition, including substantially more lethal, higher-caliber rounds than what was commonly available at the founding. The Ammunition Laws also address the "unprecedented societal concerns [and] dramatic technological changes" presented by the modern-day proliferation of "ghost guns," or self-assembled, fully functional firearms made from user-friendly kits purchased online—and for which regulation of ammunition purchases is necessary to catch non-law-abiding persons unlawfully in possession of such firearms. In light of these "unprecedented societal concerns or dramatic technological changes," a "more nuanced approach" than Plaintiffs' law-by-law comparison is warranted here. *Id.*

Instead of engaging in a nuanced approach, Plaintiffs raise the same few unpersuasive objections in response to every law cited in Defendant's chart. Pls.' Br. at 5–12. Such a myopic response fails to acknowledge that the laws contained in Defendant's charts generally reflect a history of allowing only law-abiding,

---

[12] The Attorney General here incorporates pages 18–20 of Defendant's Brief.

responsible citizens to exercise their Second Amendment rights, and that conditions to assure as much are supported by history and tradition.[13] Even so, Plaintiffs do acknowledge that the "how" and "why" of laws cited by the Attorney General are analogous to the Ammunition Laws and demonstrate this overarching point. *See* Pls.' Br. at 8 (conceding that laws requiring an individual to "prove entitlement before being allowed to access arms" and "prohibiting arms from what appears to be loiterers, drunks, and former confederate military members"—i.e., non-law-abiding and unvirtuous citizens—are similar to the Ammunition Laws). This is entirely consistent with *Bruen*, which states that "nothing" in the decision "should be interpreted to suggest the unconstitutionality of . . . licensing regimes" that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 142 S. Ct. at 2138 n.9.

In any event, Plaintiffs' specific criticisms of the laws cited in Defendant's charts fall short. First, Plaintiffs' attacks on the relevance of analogous laws in English history and after the Fourteenth Amendment was ratified are misplaced. Pls.' Br. at 5–6, 9. As *Bruen* explains, the Second Amendment codified a pre-existing right "inherited from our English ancestors," 142 S. Ct. at 2127 (quoting *Heller*, 554 U.S. at 599), and thus restrictions on that right recognized under English law prior to the founding of the United States are relevant in understanding the scope of the inherited right. And *Bruen* also recognized that "a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases in the Constitution," especially "where a governmental practice has been open, widespread, and unchallenged since the early days of the Republic." *Id.* at 2136–37 (internal quotation marks omitted). The laws cited from early England

---

[13] As noted in the prior briefing, laws applicable to only certain groups may still reflect a relevant tradition of firearm regulation, even if those laws were morally repugnant and would be unconstitutional today under the Equal Protection Clause or other provision of the Constitution. *See* Def.'s Br. at 20–21 & n.12. Those historical laws provide additional evidence of a regulatory tradition, even if the tradition was applied in an otherwise unconstitutional manner. *See id.*

and the post-Reconstruction era—which are entirely consistent with laws cited during the formation of the Second and Fourteenth Amendments—are thus relevant under *Bruen*.

Moreover, in light of the longstanding history and tradition set forth above, Plaintiffs' claim that they cannot see how laws that authorized seizure of arms from "dangerous" persons "mak[e] a difference in the analysis here" is perplexing. Pls.' Br. at 7; [14–15].[14] It is also unclear why Plaintiffs write off the many laws from the founding era that "deal with restricting access to arms by those who did not support the Revolution," Pls.' Br. at 7–8; *e.g.*, [47–54], as those laws demonstrate the government's ability to keep arms out of the hands of persons deemed dangerous or unvirtuous. Plaintiffs' next complaint—that otherwise similar laws are distinct from the Ammunition Laws merely because they "left the onus on the government" to show an individual was prohibited, instead of requiring proof that an individual was not, Pls.' Br. at 9; [106–07]—is squarely foreclosed by *Bruen*'s confirmation that licensing schemes are permissible, 142 S. Ct. at 1238 n.9. Finally, Plaintiffs do not really contend that the purpose of "laws that pertain to firearm possession by convicts and violent criminals" are different from the Ammunition Laws at all. Pls.' Br. at 11; [131–32, 136, 138, 140–48].

Considering the comparable burden and justification of the Ammunition Laws, in light of *Bruen*'s express language and direction for a nuanced approach, the Ammunition Laws fall squarely within the history and tradition of regulation permissible under the Second Amendment.

## CONCLUSION

Plaintiffs' Second Amendment claim fails as a matter of law.[15]

---

[14] Numbers in brackets refer to the numbers assigned to the laws listed on Defendant's surveys of historical analogues. Dkt. 79.

[15] The Attorney General respectfully repeats his request for a stay of any judgment in Plaintiffs' favor for a sufficient period to allow the Attorney General to seek a stay from the Ninth Circuit. Dkt. 81 at 25.

| | | |
|---|---|---|
| 1 | Dated: February 21, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | P. PATTY LI<br>Supervising Deputy Attorney General |
| 4 | | JOHN D. ECHEVERRIA<br>Deputy Attorney General |
| 6 | | *s/ Christina R.B. López* |
| 8 | | CHRISTINA R.B. LÓPEZ<br>Deputy Attorney General<br>*Attorneys for Defendant Rob Bonta,* |
| 9 | | *in his official capacity as California Attorney General* |

11
Defendant's Brief in Response to Plaintiffs' Brief Filed on February 10, 2023
(3:18-cv-00802-BEN-JLB)