14:03:20   1                      UNITED STATES DISTRICT COURT

           2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

           3

           4    KIM RHODE, ET AL.,                      .
                                                        .
           5         PLAINTIFFS,                        . NO.18-CV-0802-BEN-JLB
                                                        .
           6              VS.                           . JULY 17, 2023
                                                        .
           7    ROB BONTA, IN HIS OFFICIAL CAPACITY. SAN DIEGO, CALIFORNIA
                AS ATTORNEY GENERAL OF THE STATE OF.
           8    CALIFORNIA,                             .
                                                        .
           9         DEFENDANT.                         .
14:03:20       . . . . . . . . . . . . . . . . . ..
          10

          11                  TRANSCRIPT OF MOTION HEARING
                          BEFORE THE HONORABLE ROGER T. BENITEZ
          12                  UNITED STATES DISTRICT JUDGE

          13    APPEARANCES:

          14    FOR THE PLAINTIFFS:      MICHEL & ASSOCIATES, PC
                                         BY: SEAN A. BRADY, ESQ.
          15                                 KONSTADINOS T. MOROS, ESQ.
                                         180 EAST OCEAN BOULEVARD, SUITE 200
          16                             LONG BEACH, CALIFORNIA  90802

          17    FOR THE DEFENDANT:       DEPARTMENT OF JUSTICE
                                         OFFICE OF ATTORNEY GENERAL
          18                             BY: CHRISTINA R.B. LOPEZ
                                             JOHN D. ECHEVERRIA
          19                             300 SOUTH SPRING STREET, SUITE 1702
                                         LOS ANGELES, CALIFORNIA  90013
          20

          21
                COURT REPORTER:          JULIET Y. EICHENLAUB, RPR, CSR
          22                             USDC CLERK'S OFFICE
                                         333 WEST BROADWAY, ROOM 420
          23                             SAN DIEGO, CALIFORNIA  92101
                                         JULIET_EICHENLAUB@CASD.USCOURTS.GOV
          24

          25    REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

| | | |
|---|---|---|
| 14:03:20 | 1 | SAN DIEGO, CALIFORNIA; JULY 17, 2023; 2:03 P.M. |
| | 2 | -OOO- |
| | 3 | THE CLERK:  TWO ON CALENDAR, 18CV0802, RHODE, ET AL., |
| | 4 | VS. BECERRA, ET AL.,; MOTION HEARING. |
| | 5 | THE COURT:  COUNSEL, IF YOU WOULD PLEASE REGISTER |
| | 6 | YOUR APPEARANCES, SPELLING YOUR LAST NAME FOR THE RECORD, |
| | 7 | PLEASE. |
| | 8 | MR. BRADY:  GOOD AFTERNOON, YOUR HONOR.  SEAN BRADY, |
| | 9 | B-R-A-D-Y, ON BEHALF OF THE PLAINTIFFS. |
| | 10 | MR. MOROS:  GOOD AFTERNOON, YOUR HONOR.  KONSTADINOS |
| | 11 | MOROS, M-O-R-O-S, ON BEHALF OF THE PLAINTIFFS. |
| | 12 | MS. LOPEZ:  GOOD AFTERNOON, YOUR HONOR.  DEPUTY |
| | 13 | ATTORNEY GENERAL CHRISTINA LOPEZ, L-O-P-E-Z, ON BEHALF OF THE |
| | 14 | DEFENDANT. |
| 14:04:01 | 15 | MR. ECHEVERRIA:  GOOD AFTERNOON, YOUR HONOR.  JOHN |
| | 16 | ECHEVERRIA, DEPUTY ATTORNEY GENERAL, FOR THE DEFENDANT. |
| | 17 | ECHEVERRIA IS E-C-H-E-V-E-R-R-I-A. |
| | 18 | THE COURT:  ALL RIGHT.  WELL, WELCOME.  I HAVEN'T |
| | 19 | SEEN SOME OF YOU FOR QUITE A WHILE.  I APOLOGIZE FOR THAT. |
| | 20 | I'VE BEEN RATHER BUSY.  AS YOU KNOW, I HAVE FOUR OF THESE |
| | 21 | SECOND AMENDMENT CASES, AND I'M TRYING TO MAKE MY WAY THROUGH |
| | 22 | ALL OF THEM AND ALL OF THE FINE MATERIALS THAT YOU HAVE ALL |
| | 23 | PROVIDED ME TO READ WITH SOURCES AND SUB-SOURCES AND SO ON. |
| | 24 | ANYWAY, SO I BROUGHT YOU HERE TODAY FOR A COUPLE OF |
| | 25 | REASONS.  YOU SAW IN MY ORDER I'M CONSIDERING DEALING WITH THIS |

14:04:50   1   CASE IN ONE FELL SWOOP, THAT IS, DOING MY PRELIMINARY

2   INJUNCTION ORDER ALONG WITH MY TRIAL ON THE MERITS OR USING A

3   SUMMARY JUDGMENT PROCEDURE, WHATEVER THE CASE MAY BE, BUT DOING

4   IT ALL AT ONE TIME.

5          THIS CASE WAS RETURNED TO ME BY THE NINTH CIRCUIT

6   AFTER THE SUPREME COURT RETURNED IT TO THE NINTH CIRCUIT AFTER

7   THE *BRUEN* CASE WAS DECIDED.  SO MY RECOLLECTION IS THAT I HAD

8   DECIDED THIS CASE ORIGINALLY AT THE PRELIMINARY INJUNCTION

9   STAGE APPLYING THE INTERMEDIATE SCRUTINY TEST TO WHICH THE

10  *BRUEN* CASE IS NOW JETTISON, AND I BELIEVE THAT'S BASICALLY WHY

11  IT'S HERE, BACK HERE.

12         SO I THOUGHT, WELL, OKAY, I COULD GO BACK, I COULD

13  ONCE AGAIN DECIDE JUST THE PRELIMINARY INJUNCTION ISSUE IN THIS

14  CASE, BUT THEN WHAT WOULD HAPPEN IS THAT WE WOULD WIND UP IN

14:06:00  15  THE SAME SITUATION THAT WE WERE IN IN *DUNCAN* WHERE THE CASE

16  GOES UP ON APPEAL TO THE NINTH CIRCUIT, THEN THE NINTH CIRCUIT

17  DEALS WITH THE PRELIMINARY INJUNCTION; IF THEY REVERSE ME, THEN

18  THE CASE COMES BACK TO ME, AND THEN WE HAVE TO DEAL WITH THAT

19  AGAIN; THEN THE CASE GOES BACK TO THE NINTH CIRCUIT AND THEN WE

20  HAVE TO DEAL WITH IT ONE MORE TIME.  AND I THOUGHT, WELL, SO

21  MUCH WATER HAS FLOWED UNDER THE BRIDGE AT THIS POINT IN TIME

22  THAT WE MIGHT AS WELL DEAL WITH BOTH ISSUES AT THE SAME TIME,

23  BOTH THE MERITS AND THE PRELIMINARY INJUNCTION ISSUE.  SO

24  THAT'S WHY I HAVE YOU HERE TODAY.

25         NOW I BELIEVE THAT I RECEIVED SOMETHING FROM MR.

14:06:49  1  ECHEVERRIA INDICATING THAT, AS I RECALL, HE WANTED TO DO

2  DISCOVERY AND EXPERT WITNESS DISCOVERY AND SO ON AND SO FORTH.

3  I DON'T BELIEVE I RECEIVED ANYTHING FROM THE PLAINTIFFS IN THIS

4  CASE, IF I'M NOT MISTAKEN; RIGHT, MR. BRADY?

5          MR. BRADY:  THAT'S CORRECT.  WE DID NOT SUBMIT

6  ANYTHING.

7          THE COURT:  AND MR. MOROS?

8          MR. MOROS:  NO, WE DID NOT.

9          THE COURT:  THAT BEING THE CASE, MR. ECHEVERRIA, I'D

10  LOVE TO HEAR FROM YOU, OR MS. LOPEZ -- SORRY.  BY THE WAY, I

11  CAN'T SEE.  I'M HAVING EYE SURGERY IN A COUPLE WEEKS, AND I'M

12  TOLD I CAN'T WEAR CONTACT LENSES AND I CAN'T WEAR GLASSES.  SO

13  I CAN'T SEE YOU, REALLY.  I KNOW YOU'RE THERE, BUT I DON'T KNOW

14  IF YOU'RE SMILING OR FROWNING AT ME.  I APOLOGIZE FOR THAT.

14:07:35 15  BUT ANYWAY, I THINK IT'S MS. LOPEZ, RIGHT?

16          MS. LOPEZ:  YES, YOUR HONOR.  I WILL BE HAPPY TO

17  ADDRESS THE DISCOVERY ISSUE.  DO YOU PREFER WE USE THE PODIUM?

18          THE COURT:  HOWEVER YOU FEEL COMFORTABLE.

19          MS. LOPEZ:  OKAY.  AS TO THE DISCOVERY ISSUE IN

20  PARTICULAR, OUR FILING WAS JUST MEANT TO GIVE THE COURT A

21  LITTLE BIT OF A HEADS UP OF THE REQUEST WE'D MAKE TODAY.  I

22  THINK THERE ARE TWO AREAS.  ONE YOUR HONOR MENTIONED, EXPERT

23  DISCOVERY; WE MADE THAT REQUEST IN THE PAST, AND I'M AWARE OF

24  THE PRIOR RULINGS ON THAT MATTER.

25          THE COURT:  THE EXPERT DISCOVERY BEING THE

14:08:10  1    HISTORIANS?

2         MS. LOPEZ:  THE HISTORIANS, THAT'S CORRECT.  BUT YOUR

3    HONOR, I THINK THERE IS ONE AREA THAT IS PARTICULAR TO THIS

4    CASE THAT HAS NOT BEEN ADDRESSED.

5         THE COURT:  WHAT'S THAT?

6         MS. LOPEZ:  THE BACKGROUND CHECKS.  AND SO IT'S OUR

7    POSITION THAT *BRUEN* DEALT WITH THE BACKGROUND CHECKS, PLACED

8    THEM FIRMLY WITHIN THE HISTORICAL TRADITION THAT WE'RE LOOKING

9    AT HERE, BUT TO THE EXTENT THAT EXPERT CONTEXT COULD BE HELPFUL

10   ON WHEN BACKGROUND CHECKS BECAME FREQUENTLY UTILIZED, WHY THEY

11   BECAME UTILIZED IN THIS SPACE, THAT'S ONE AREA OF SECOND

12   AMENDMENT HISTORY THAT HAS NOT BEEN EXPLORED IN ANY OF THE

13   CASES BEFORE YOUR HONOR.

14        SO THERE ARE MANY EXPERTS TALKING ABOUT LAWS OF THE

14:08:57 15   FOUNDING, THINGS LIKE THAT THAT WE HAVE NOT SUBMITTED IN THIS

16   CASE BECAUSE WE BELIEVE THAT *BRUEN* HAS ALREADY ADDRESSED THE

17   BACKGROUND CHECK ISSUE, BUT TO THE EXTENT MORE CONTEXT COULD BE

18   HELPFUL, THAT IS ONE AREA THAT HAS NOT BEEN EXPLORED.

19        THE COURT:  SO I SEEM TO RECALL HAVING ASKED FOR

20   ANALOGS, RIGHT?  BECAUSE AS I UNDERSTAND *BRUEN*, *BRUEN* NOW ASKS

21   US TO LOOK AT THIS TEXT HISTORY AND TRADITION OF THE SECOND

22   AMENDMENT, AND MY RECOLLECTION IS THAT I RECEIVED, BESIDES ALL

23   OF THE OTHER LAWS, STATUTES AND SO ON THAT WERE SUBMITTED TO

24   ME, WHEN I LOOKED AT THEM, I ASKED FOR CLOSEST ANALOGS THAT THE

25   STATE HAD; DID I NOT?

14:09:57  1          MS. LOPEZ:  YES, YOUR HONOR, AND WE DID SUBMIT

2      SURVEYS IN THIS CASE AS WELL AND IDENTIFY IN SOME OF THE

3      BRIEFING WHICH ANALOGS WE BELIEVE ARE MOST APPLICABLE.

4              THE COURT:  SO HOW WOULD EXPERT -- HELP ME OUT HERE.

5      SO 702 PROVIDES THAT THE REASON FOR EXPERT WITNESSES IS PEOPLE

6      WHO HAVE EDUCATION, SKILLS OR TRAINING, THAT WOULD BE OF

7      ASSISTANCE TO THE TRIER OF FACT; HOW WOULD YOUR EXPERTS BE

8      HELPFUL TO ME IN DECIDING THE ISSUE OF THE BACKGROUND CHECKS?

9              MS. LOPEZ:  WELL, *BRUEN* PLACES THE BACKGROUND CHECKS

10     WITHIN THE HISTORICAL TRADITION OF CONFIRMING THAT A

11     PROSPECTIVE PURCHASER IS A LAW-ABIDING, RESPONSIBLE CITIZEN;

12     AND TO THAT END, THE ANALOGS THAT WE'VE IDENTIFIED TALK ABOUT

13     LAWS THAT WERE ENACTED TO ENSURE THAT PEOPLE WERE LAW-ABIDING,

14     RESPONSIBLE CITIZENS.  AS I SAY, I THINK *BRUEN* HAS ACTUALLY

14:11:04 15    SQUARELY ADDRESSED THAT ISSUE; BUT IF YOUR HONOR IS NOT SO

16     CONVINCED THAT BACKGROUND CHECKS WERE SQUARELY ADDRESSED BY

17     *BRUEN* IN THAT WAY, EXPERT TESTIMONY TYING THEM TO THAT

18     TRADITION AND PLACING THEM INTO THE CONTEXT OF THAT TRADITION

19     WOULD BE HELPFUL UNDER 702.

20             THE COURT:  CAN YOU TELL ME WHICH LAWS, WHICH -- CAN

21     YOU TELL ME WHERE I WOULD LOOK TO THAT WOULD PLACE BACKGROUND

22     CHECKS WITHIN THE HISTORICAL TRADITION?

23             MS. LOPEZ:  PARTICULARLY, *BRUEN* FOOTNOTE NINE.

24             THE COURT:  I'M PRETTY FAMILIAR WITH FOOTNOTE NINE.

25     SO OKAY.

14:11:53  1        MS. LOPEZ:  SO IN FOOTNOTE NINE THE COURT SAYS THAT

2  NOTHING IN THE DECISION SHOULD CALL INTO QUESTION LICENSING

3  REGIMES THAT INCLUDE BACKGROUND CHECKS; AND IN THE SAME

4  FOOTNOTE, THE COURT TALKS ABOUT REQUIRING APPLICANTS TO UNDERGO

5  A BACKGROUND CHECK AS DESIGNED TO ENSURE ONLY THAT THOSE

6  BEARING ARMS ARE, IN FACT, LAW-ABIDING, RESPONSIBLE CITIZENS.

7  THAT'S A QUOTE FROM THE FOOTNOTE, AND THE FOOTNOTE APPEARS

8  WITHIN THE HISTORICAL DISCUSSION IN *BRUEN* AS FAR AS LITERALLY

9  WHERE IT'S LOCATED.

10        THE COURT:  WHY WOULD THEY PUT THAT IN A FOOTNOTE?

11        MS. LOPEZ:  WELL, I CAN'T GET INTO THE MIND OF THE

12  SUPREME COURT, BUT IT IS THERE IN THE OPINION AND IT

13  SPECIFICALLY SAYS THAT THE DECISION DOES NOT CALL INTO QUESTION

14  THOSE THINGS.  MAYBE THE COURT FOUND THAT TO BE AN OBVIOUS

14:12:55 15  EXTENSION OF *HELLER*.  MAYBE THE COURT HAD OTHER REASONS.  BUT

16  IT'S AS MUCH A PART OF THE OPINION AS ANYTHING ELSE.

17        THE COURT:  I DIDN'T SEE ANY -- YOU KNOW, *BRUEN*,

18  *MCDONALD*, *ANTONYUK*, *HELLER*, ARE ALL REALLY WELL-WRITTEN

19  OPINIONS WITH LOTS OF CITATIONS.  I DID NOT SEE A CITATION

20  ANYWHERE FOR A HISTORICAL REFERENCE BEING PART OF THE

21  TRADITION, BACKGROUND CHECKS BEING PART OF THE HISTORICAL

22  TRADITION.  I WONDER WHY THAT WOULD BE.

23        MS. LOPEZ:  I IMAGINE BECAUSE IT WAS NOT AT ISSUE.

24  THAT WAS NOT THE ISSUE SQUARELY PRESENTED IN *BRUEN*.  I AGREE

25  WITH YOUR HONOR THAT THE COURT DID NOT EMBARK ON THE TYPE OF

14:13:53   1   HISTORICAL ANALYSIS, EXHAUSTIVE HISTORICAL ANALYSIS OF

2   BACKGROUND CHECKS IN PARTICULAR, AND MAYBE THAT'S A REASON IT

3   WAS IN A FOOTNOTE AS WELL, THAT IT WAS JUST NOT SOMETHING THAT

4   NEEDED TO BE DONE FOR THE *BRUEN* CASE IN PARTICULAR; BUT THE

5   COURT DID MAKE A POINT TO INCLUDE IN THE DECISION THAT NOTHING

6   THEY WERE SAYING SHOULD CALL INTO QUESTION THESE OTHER

7   PRESUMPTIVELY LAWFUL MEASURES TO USE *HELLER'S* PRESUMPTIVELY

8   LAWFUL LANGUAGE AND LANGUAGE THAT WAS PARROTED BY JUSTICES IN

9   *BRUEN*.

10             THE COURT:  SO MAYBE YOU CAN ANSWER THIS FOR ME:  I

11   HAVE LOOKED AT I DON'T KNOW HOW MUCH MATERIAL ON, BY ALL THE

12   EXPERTS THAT THE STATE HAS HIRED AND BROUGHT INTO EACH OF THESE

13   FOUR CASES.  THERE'S A LOT OF MATERIAL AND A LOT OF STATUTES

14   AND CASES AND SO ON THAT I HAVE READ AND BOOKS AND ARTICLES;

14:15:08  15   AND I'VE TRIED TO READ BOOKS AND ARTICLES AND SO ON THAT WERE

16   CITED BY EACH OF THESE.

17             I CAN'T FIND -- LOOKING BACK AT ALL OF THE HISTORICAL

18   DATA THAT HAS BEEN SUBMITTED TO ME UP UNTIL THIS TIME, I CANNOT

19   FIND A SINGLE THING ANYWHERE WHERE BACKGROUND CHECKS WERE

20   MENTIONED, THOUGHT ABOUT, WRITTEN ABOUT AT OR ABOUT THE TIME

21   THAT THE SECOND AMENDMENT WAS ADOPTED.  CAN YOU DIRECT ME TO

22   SOMETHING THAT WOULD HELP ME OUT?  MR. ECHEVERRIA, I THINK I

23   SEE HIM -- LOOKS LIKE HE'S CHOMPING AT THE BIT TO SAY SOMETHING

24   I THINK.

25             MR. ECHEVERRIA:  I'M CHOMPING AT THE BIT TO HEAR WHAT

14:16:12  1    MS. LOPEZ HAS TO SAY.

2              THE COURT:  OKAY.  ALL RIGHT.  MS. LOPEZ, YOU'RE ON

3    THE HOT SEAT.

4              MS. LOPEZ:  YOUR HONOR, DEFENDANT CONCEDES THAT

5    BACKGROUND CHECKS AS THEY EXIST TODAY WERE NOT UTILIZED AT THE

6    FOUNDING, BUT WHAT WE DO HAVE AT THE FOUNDING ARE LAWS THAT

7    DISARM, INCLUDING AS TO AMMUNITION, THOSE PEOPLE WHO WERE

8    VIEWED AS IRRESPONSIBLE OR DISLOYAL TO THE STATE.  NOW IT IS

9    TRUE -- AND THIS WAS THE POINT I WAS ATTEMPTING TO MAKE

10   REGARDING DISCOVERY -- THAT THE GENESIS OF THE BACKGROUND CHECK

11   AS WE KNOW IT TODAY HAS NOT BEEN THE SUBJECT OF EXPERT

12   DISCOVERY PRELIMINARILY BECAUSE OF TWO REASONS.  ONE, BECAUSE

13   IT IS NOT -- IT IS ONLY AT ISSUE IN THIS CASE AS OPPOSED TO THE

14   OTHER CASES THAT YOUR HONOR IS READING MATERIALS IN; AND

14:17:07  15   SECONDARILY, BECAUSE THE PRIOR CASES HAVE BLESSED THESE SORT OF

16   COMMERCIAL RESTRICTIONS AND IN *BRUEN* GOING SO FAR AS TO SAY

17   BACKGROUND CHECKS IN PARTICULAR.

18             AND SO TO THE EXTENT THAT YOUR HONOR DOESN'T VIEW

19   *BRUEN* AS DISPOSITIVE ON THAT ISSUE, I DO THINK THAT EXPERT

20   DISCOVERY ON THE HISTORICAL CONTEXT IN WHICH BACKGROUND CHECKS

21   IN PARTICULAR AROSE DOES FIT WITHIN *BRUEN'S* MANDATE THAT WE

22   LOOK AT THE HISTORICAL TRADITION HERE AND IS A NECESSARY ASPECT

23   TO DEVELOPING THIS CASE.

24             THE COURT:  ARE YOU REFERRING TO, FOR EXAMPLE, THE

25   CASES WHERE PEOPLE HAD TO SWEAR LOYALTY TO THE UNITED STATES IN

14:17:56  1   ORDER TO BE ABLE TO CARRY OR POSSESS -- I'M NOT SURE IF IT WAS

2   POSSESSION, I THINK IT WAS CARRY -- BUT TO CARRY CERTAIN

3   FIREARMS, THAT TYPE OF HISTORY; IS THAT WHAT YOU'RE REFERRING

4   TO?

5          MS. LOPEZ:  YES, THAT'S PART OF IT, YOUR HONOR, AND I

6   DO BELIEVE IT WAS BOTH CARRY AND POSSESS IN THOSE

7   CIRCUMSTANCES.  WE IDENTIFIED PARTICULAR LAWS IN THAT REGARD.

8   AND THEN THERE WERE ALSO LAWS, AS I MENTIONED, DISARMING

9   CITIZENS THAT WERE VIEWED TO BE IRRESPONSIBLE IN THE EYES OF

10   THE STATE.

11          THE COURT:  YOU'RE NOT GOING TO -- MS. LOPEZ, YOU'RE

12   NOT GOING TO ASK ME TO UPHOLD THESE BACKGROUND CHECKS ON THE

13   BASIS THAT FOR A CONSIDERABLE PERIOD OF TIME THERE WERE LAWS

14   THAT MADE IT UNLAWFUL FOR AFRICAN AMERICANS, MULATTOS AND

14:18:59  15   SLAVES TO POSSESS FIREARMS, ARE YOU?

16          MS. LOPEZ:  WELL, YOUR HONOR, THE STATE, OF COURSE,

17   DOESN'T CONDONE THOSE LAWS OR THINK THEY ARE CONSTITUTIONAL AS

18   CONCEIVED OF TODAY, BUT THEY DO SUPPORT A TRADITION, IN THE

19   NINTH CIRCUIT'S WORDS, TIED TO THE CONCEPT OF A VIRTUOUS

20   CITIZENRY.  THOSE WERE THE WORDS THE COURT USED TO DESCRIBE THE

21   HISTORICAL TRADITION WE'RE LOOKING AT.

22          THE COURT:  SO BECAUSE PARTICULARLY IN THE SOUTH,

23   AFRICAN AMERICANS, MULATTOS AND SLAVES WERE SEEN AS NOT WORTHY

24   CITIZENS, THAT'S PART OF OUR TRADITION THAT WE SHOULD UPHOLD,

25   THAT WE SHOULD LOOK TO?

14:19:44  1            MS. LOPEZ:  UNFORTUNATELY, THAT IS PART OF THE

2      HISTORY OF THIS COUNTRY, AND I THINK *BRUEN* ITSELF LOOKED TO

3      DECISIONS SUCH AS *DRED SCOTT* IN ITS OWN APPLICATION OF THE

4      LAWS; AND SO TO THE EXTENT, AS I MENTIONED, THE WAY THAT THE

5      HISTORICAL TRADITION HAS BEEN CHARACTERIZED AS PREVENTING

6      LAW-ABIDING, RESPONSIBLE CITIZENS OR VIRTUOUS CITIZENRY FROM

7      ARMING THEMSELVES, INCLUDING AS AMMUNITION, THAT IS PART OF THE

8      TRADITION THAT'S RELEVANT HERE.

9            THE COURT:  SO IF I ISSUED AN ORDER THAT SAID THE

10     COURT FINDS THAT VARIOUS STATES WERE RIGHTEOUS IN FINDING THAT

11     BLACKS, MULATTOS AND SLAVES WERE UNVIRTUOUS CITIZENS, AND BASED

12     ON THAT TRADITION THIS COURT FINDS THAT BACKGROUND CHECKS ARE

13     THEREFORE LAWFUL AND CONSTITUTIONAL, THE STATE OF CALIFORNIA

14     WOULD BE OKAY WITH THAT?

14:20:42  15           MS. LOPEZ:  I CERTAINLY WOULDN'T CALL THOSE LAWS

16     RIGHTEOUS, YOUR HONOR, AND I DON'T THINK YOU NEED TO GO THAT

17     FAR.  THEY DEMONSTRATE A HISTORY, REGARDLESS OF THEIR MERIT.

18     AND IT'S NOT JUST THOSE.  AS I MENTIONED, THERE ARE -- I DON'T

19     HAVE THE PRECISE NUMBER IN FRONT OF ME -- SIX OR EIGHT LAWS, IF

20     NOT MORE, INCLUDED IN THE SURVEY THAT WAS SUBMITTED THAT DO NOT

21     INVOLVE RACE OR OTHER PROTECTED CHARACTERISTICS, THAT JUST

22     INVOLVE BEING A LOYAL CITIZEN.

23           THE COURT:  OKAY.  SO NOW YOU'VE GOTTEN BACK TO WHERE

24     I STARTED WHICH IS WHAT YOU CALL THE SURVEY, WHICH IS CONDENSED

25     IN SMALL TYPE, WHAT I HAVE HERE IN THIS BINDER.  SO IN THE

14:21:42  1    SURVEY THAT YOU PROVIDED TO ME, YOU'VE ALREADY TOLD ME OF SIX

2    TO EIGHT INSTANCES THAT YOU BELIEVE SUPPORT THE HISTORY, TEXT

3    AND TRADITION FOR BACKGROUND CHECKS, RIGHT?

4         MS. LOPEZ:  IT'S MANY MORE THAN THAT WHEN YOU

5    INCLUDED LAWS WE WERE JUST DISCUSSING.  MY POINT THERE WAS IT'S

6    NOT JUST LAWS THAT WOULD BE UNCONSTITUTIONAL TODAY.  THERE ARE

7    MORE THAN THAT.  THERE ARE A NUMBER THAT DO NOT INVOLVE

8    PROTECTED CHARACTERISTICS.

9         THE COURT:  LET ME MOVE ON TO SOMETHING ELSE.  YOU

10   TALK ABOUT DISCOVERY.  IT'S BEEN A LONG TIME SINCE I'VE

11   PRACTICED LAW, PERHAPS TOO LONG, BUT DISCOVERY GENERALLY IS

12   SOMETHING YOU WANT TO FIND OUT FROM THE OTHER SIDE.  BUT YOU'RE

13   TELLING ME THAT YOU HAVE EXPERTS THAT WOULD TESTIFY TO THESE

14   THINGS.  SO WE'RE NOT REALLY TALKING ABOUT DISCOVERY, ARE WE?

14:22:41 15        MS. LOPEZ:  WELL, TWO POINTS, YOUR HONOR.  AND I

16   DON'T WANT TO LOSE THE SECOND HALF OF THE DISCOVERY, THE

17   TRADITIONAL SORT OF DISCOVERY YOU'RE TALKING ABOUT THAT WE WANT

18   TO TAKE REGARDING STANDING AND OTHER ISSUES THAT WE'RE NOT

19   CURRENTLY TALKING ABOUT.  EXPERT DISCOVERY I DO THINK IS ITS

20   OWN PROCESS AND BEAST THAT IS STILL CALLED DISCOVERY UNDER THE

21   FEDERAL RULES OR IS SITUATED WITHIN DISCOVERY UNDER THE FEDERAL

22   RULES BUT CONTEMPLATES EACH SIDE EXCHANGING ANY EXPERTS THAT

23   THEY WISH TO RELY ON.

24        SO IN THAT FRAME, BECAUSE IT'S PART OF THE DISCOVERY

25   PROCESS AND RULES, UNDER THE FEDERAL RULES, WE HAVE CALLED IT

14:23:24  1   DISCOVERY; BUT YES, I AM TALKING ABOUT AT THE MOMENT
        2   PROMULGATING EXPERTS, AND THEN I IMAGINE THE PLAINTIFFS WOULD
        3   WANT A CHANCE TO ENGAGE IN THE EXPERT DISCOVERY PROCESS THAT
        4   THEY ARE PERMITTED IF EXPERTS ARE SET FORTH.
        5        THE COURT:  GETTING BACK TO MY EARLIER QUESTION, IF
        6   YOU SUBMIT TO ME THE LAWS SUCH AS, FOR EXAMPLE, THE LAWS HAVING
        7   TO DO WITH AFRICAN AMERICANS, MULATTOS AND SLAVES, LAWS HAVING
        8   TO DO WITH BACK AT THE REVOLUTIONARY WAR STAGE PEOPLE HAVING TO
        9   SUBMIT AN OATH, TAKE AN OATH THAT THEY WOULD SUPPORT THE NEW
        10  GOVERNMENT, IF YOU SUBMIT TO ME THOSE LAWS, RIGHT, WHY DO I
        11  NEED SOMEONE TO TELL ME WHAT THOSE LAWS SAY AND HOW I SHOULD
        12  INTERPRET THEM?  THAT SEEMS TO ME THAT THAT'S WHAT WE JUDGES DO
        13  ALL THE TIME.  THIS IS WHAT WE DO.  WE READ LAWS, WE READ
        14  STATUTES, WE READ YOUR BRIEFS, AND THEN WE FIGURE OUT FROM THAT
14:24:49  15  WHAT OUR DECISION SHOULD BE.  BUT YOU KNOW, HAVING SOMEONE TO
        16  SIT UP HERE AND TELL ME THEIR OPINION OF WHAT THOSE LAWS SAY OR
        17  MEAN, HOW DOES THAT HELP ME?  UNDER 702, HOW DOES THAT HELP ME
        18  AT ALL?
        19       MS. LOPEZ:  ONE AREA IT HELPS, AND YOUR HONOR, IS
        20  *BRUEN'S* REQUIREMENT, IS THAT WHEN YOU'RE DOING THAT ANALYSIS
        21  THAT YOU LOOK TO THE JUSTIFICATION FOR THE LAWS; SO WE CAN
        22  PROVIDE YOU THE TEXT OF THE LAWS OR A DESCRIPTION OF THE LAWS
        23  AS WE'VE DONE, AND YOU CAN READ THE LAWS -- I AGREE WITH YOUR
        24  HONOR THERE.  BUT *BRUEN* MADE CLEAR THAT PART OF THE ANALYSIS
        25  WOULD TURN ON THE CONTEXT OF THOSE LAWS AND IN PARTICULAR, THE

13

14:25:39  1    JUSTIFICATION FOR THEM TO DETERMINE --

          2             THE COURT:  I'M SORRY.  I DON'T MEAN TO INTERRUPT

          3    YOU.  BUT ACTUALLY, I DO MEAN TO INTERRUPT YOU.  BUT I'M SORRY.

          4    LOOK, WHY DO I NEED SOMEONE TO TELL ME WHY IN THE SOUTHERN

          5    STATES THEY HAD LAWS THAT WOULD PREVENT AFRICAN AMERICANS,

          6    MULATTOS AND SLAVES FROM OWNING GUNS?  I DON'T NEED AN EXPERT

          7    TO TELL ME THAT.  DO YOU?

          8             MS. LOPEZ:  THERE MAY BE OTHER REASONS THOSE LAWS

          9    EXISTED, YOUR HONOR, AND THE OTHER LAWS THAT WE CITE TO AS

         10    WELL.

         11             THE COURT:  ANOTHER LAW HAVING TO DO WITH FOLKS WHO

         12    WOULD TAKE A LOYALTY OATH AND THAT LAW WAS DESIGNED TO KEEP

         13    PEOPLE FROM, YOU KNOW, WHO MIGHT WANT TO REBEL AGAINST THE

         14    UNITED STATES, RIGHT?  BECAUSE IT WAS A NEW COUNTRY, RIGHT?

14:26:28 15    AND WE WANTED TO MAKE SURE THAT PEOPLE WHO WERE GOING TO BE

         16    ARMED WERE PEOPLE THAT WERE GOING TO BE SUPPORTIVE OF THE NEW

         17    COUNTRY, RIGHT?  I DON'T NEED A HISTORIAN TO SIT UP HERE -- I

         18    CAN READ THAT.  AND I HAVE, BY THE WAY.  YOU FOLKS HAVE CITED

         19    SO MUCH STUFF, AND I'VE DONE SO MUCH READING.  SO I READ THAT

         20    HISTORY ALREADY.

         21             MS. LOPEZ:  I THINK THAT'S EXACTLY THE POINT, YOUR

         22    HONOR.  THAT DOESN'T APPEAR IN THE TEXT OF THE LAWS.  THOSE ARE

         23    THINGS THAT HAVE BEEN DEVELOPED IN THE SCHOLARSHIP AND THAT

         24    YOUR HONOR MAY HAVE READ THOSE ALREADY IN THE OTHER CASES.  THE

         25    SAME WOULD BE TRUE FOR BACKGROUND CHECKS, PUTTING THEM IN THAT

14:27:12  1    CONTEXT.  SO I THINK YOUR HONOR HAS ACTUALLY PUT YOUR FINGER ON

2    EXACTLY WHY -- THOSE ARE INFERENCES THAT ARE BEING MADE AND

3    THEY SHOULD BE MADE ON A FULL RECORD WHICH INCLUDE SCHOLARSHIPS

4    SUCH AS WHAT YOU'VE ALREADY READ.

5              THE COURT:  OKAY.  ALL RIGHT.  LET'S MOVE ON TO THE

6    STANDING ISSUE, DISCOVERY FOR STANDING.

7              MS. LOPEZ:  YES, YOUR HONOR.

8              THE COURT:  AS I RECALL, WHEN I ISSUED MY INITIAL

9    ORDER, THERE WERE AT LEAST TWO PEOPLE THAT I SELECTED THAT I

10   DON'T THINK STANDING CAN BE -- FIRST OF ALL, I HAVE NOT FOUND

11   ANY CASE LAW ON THE SUBJECT OF HOW I SHOULD EXERCISE MY

12   DISCRETION IN GRANTING OR DENYING STANDING DISCOVERY.  AND

13   MAYBE YOU HAVE SOME.  I HAVEN'T SEEN IT YET.  I THINK IT'S AN

14   ABUSE OF DISCRETION STANDARD IF I'M NOT MISTAKEN.  THERE WERE

14:28:13 15   TWO PEOPLE THAT I REFERRED TO IN MY ORDER; ONE OF THEM WAS A

16   VIETNAM VET WHO WAS I THINK CONFINED TO A WHEELCHAIR.  HE

17   DIDN'T HAVE A BIRTH CERTIFICATE.  HE DIDN'T HAVE A REAL I.D.

18   LAW.  IS THERE REALLY ANY WAY -- HE COULDN'T GET THROUGH WHAT I

19   CALL THE FRONT DOOR TO GET THE AMMUNITION.  IS THE STATE REALLY

20   GOING TO QUARREL ABOUT WHETHER OR NOT THAT PERSON HAS STANDING

21   TO CHALLENGE A LAW THAT SAYS HE CAN'T BUY AMMUNITION UNLESS HE

22   GOES THROUGH THIS BACKGROUND CHECK?

23             MS. LOPEZ:  A COUPLE THINGS ON THAT, YOUR HONOR.  THE

24   FIRST BEING I BELIEVE YOU'RE REFERRING TO MR. GEORGE DODD.  MR.

25   DODD I DON'T BELIEVE IS A PLAINTIFF IN THIS CASE.  HIS

14:29:02  1  DECLARATION WAS SUBMITTED IN A SEPARATE CONTEXT.  I'M SURE

        2  PLAINTIFF COULD TELL YOU THEIR THOUGHT PROCESS ON WHY, BUT MR.

        3  DODD IS NOT A PLAINTIFF IN THIS CASE.  HE DOES HAVE PARTICULAR

        4  CIRCUMSTANCES THAT MAYBE IN SOME HYPOTHETICAL WORLD, SETTING

        5  ASIDE THAT THE FEDERAL GOVERNMENT IS ALSO REQUIRING REAL I.D.'S

        6  FOR MANY PURPOSES GOING FORWARD THAT MR. DODD, AT LEAST

        7  ACCORDING TO HIS DECLARATION, LIKELY WOULDN'T BE ABLE TO

        8  SATISFY BUT SETTING ALL THAT ASIDE --

        9       THE COURT:  CAN I ASK YOU A QUESTION?  YOU JUST

       10  PIQUED MY CURIOSITY.  YOU JUST SAID SOMETHING ABOUT THE FEDERAL

       11  GOVERNMENT REQUIRING THIS I.D.  I'M WONDERING, JUST AS A MATTER

       12  OF CURIOSITY, SAY IF THE STATE OF CALIFORNIA SAID, YOU KNOW

       13  WHAT, WE'RE NOT GOING TO ALLOW YOU TO VOTE UNLESS YOU COME IN

       14  AND PROVIDE US WITH A REAL I.D. DRIVER'S LICENSE AND/OR A

14:30:20 15  PASSPORT; DO YOU WANT TO TAKE A GUESS HOW LONG IT WOULD TAKE

       16  THE NINTH CIRCUIT TO TELL THE STATE OF CALIFORNIA THAT THEY

       17  COULDN'T DO THAT?

       18       MS. LOPEZ:  I NEVER VENTURE TO GUESS WHAT THE NINTH

       19  CIRCUIT IS GOING TO DO, YOUR HONOR.

       20       THE COURT:  COME ON.  I WON'T HOLD YOU TO IT. I

       21  PROMISE, IN FACT, WE'LL EVEN MAKE THIS A SEALED PART OF THE

       22  RECORD; OKAY?

       23       MS. LOPEZ:  THAT MAY WELL BE THE CASE THAT THERE

       24  WOULD BE A LAWSUIT CHALLENGING THAT.  IT WOULD BE AN AS-APPLIED

       25  LAWSUIT.  THAT WAS GOING TO BE MY OTHER POINT ABOUT WHAT WE'RE

14:30:57  1  TALKING ABOUT HERE WITH THE DISCOVERY IS THERE ARE VERY

2  PARTICULAR FACTS THAT FOOTNOTE NINE IN *BRUEN* ITSELF MAKES CLEAR

3  COULD IN SOME WORLDS SUPPORT AN AS-APPLIED CHALLENGE.  AND

4  JUSTICE KAVANAUGH USED THAT WORDING IN PARTICULAR, AN

5  AS-APPLIED CHALLENGE.  MAYBE A REAL I.D. IS ONE OF THOSE

6  CIRCUMSTANCES.

7        THE COURT:  SO IN YOUR VIEW, THE STATE -- THE STATE

8  HAS UNLIMITED BUDGETS BASICALLY.  IT'S THE MONSTER OUT THERE.

9  OKAY?  IN YOUR VIEW, ANYONE WHO GOES TO BUY AMMUNITION AND WHO

10  IS PREVENTED FROM BUYING AMMUNITION, THE REMEDY IS FOR EACH ONE

11  OF THESE LITTLE CITIZENS OUT THERE THAT TRIES TO DO THAT, THE

12  REMEDY IS FOR THEM TO FILE A LAWSUIT AGAINST THE GOLIATH OF THE

13  STATE AND FACE YOU OR MR. ECHEVERRIA, WHO IS AN INCREDIBLE

14  ADVOCATE, RIGHT?  AND THAT'S YOUR IDEA OF HOW THIS WOULD WORK,

14:31:59  15  RATHER THAN LOOKING AT IT HOLISTICALLY AND SAYING, LOOK, HERE

16  ARE THESE CASES WHERE PEOPLE WHO HAD TROUBLE BUYING AMMUNITION,

17  AMMUNITION PROTECTED BY THE SECOND AMENDMENT.

18        MS. LOPEZ:  THAT'S NOT MY VIEW, YOUR HONOR,

19  RESPECTFULLY.  THAT'S WHAT THE CASE LAW SAYS AS TO WHAT MAKES

20  FOR AN APPROPRIATE FACIAL CHALLENGE.  IF THE LAWS ON THEIR FACE

21  ARE CONSTITUTIONAL IN A BROAD SWATH OF THE CASES, THAT'S ONE

22  QUOTE FROM THE NINTH CIRCUIT, UNDER NO CIRCUMSTANCES IS ANOTHER

23  FORMULATION OF THE TEST -- THERE ARE VARIOUS FORMULATIONS, BUT

24  THEY ALL BOIL DOWN TO THE SAME NOTION THAT WHEN YOU'RE LOOKING

25  AT A FACIAL CHALLENGE, YOU'RE LOOKING AT THE STATUTE ON ITS

14:32:47  1  FACE AND YOU DO NEED TO HAVE PLAINTIFFS TO ARTICULATE FACTS AS

2  TO WHY IN A CERTAIN APPLICATION THE LAWS ARE UNCONSTITUTIONAL

3  IF YOU'RE GOING BEYOND THAT SORT OF FACIAL ANALYSIS.

4        NOW, AS I SAY, MR. DODD IS NOT A PLAINTIFF IN THIS

5  CASE.  THERE IS NO PLAINTIFF THAT SAID, I CAN'T GET A REAL

6  I.D., AND I CAN'T GET THROUGH THE FRONT DOOR, TO USE YOUR

7  HONOR'S LANGUAGE, AND THAT JUST MAKES THE LIKELIHOOD OF SUCCESS

8  HERE AT THE THRESHOLD ON THE FACIAL CHALLENGE UNLIKELY.

9  SECONDARILY, I SAID STANDING, BUT AS TO JUSTICIABILITY AS A

10  WHOLE, WE ARE NOW FOUR YEARS IN THE APPLICATION OF THESE LAWS,

11  AND THERE WERE DECLARATIONS THAT WERE FILED IN JULY OF 2019 OR

12  WHAT HAVE YOU.

13        AS FAR AS DISCOVERY GOES, DEFENDANT HAS NO

14  INFORMATION AS TO WHERE THESE PLAINTIFFS STAND TODAY FROM A

14:33:55  15  MOOTNESS PERSPECTIVE AND A REDRESSABILTY PERSPECTIVE.  WHAT CAN

16  THE COURT DO TODAY TO ACTUALLY REDRESS ANY OF THESE ALLEGED

17  HARMS OF WHICH, AS I MENTIONED, DEFENDANT DIDN'T BELIEVE THERE

18  WAS STANDING FOR IN THE FIRST PLACE, LET ALONE FOUR YEARS INTO

19  THE LAWS?  AND I WOULD NOTE THAT STANDING IS THE PLAINTIFF'S

20  BURDEN AND SO TO THE EXTENT THERE HADN'T BEEN EVIDENCE PUT

21  FORTH ON THOSE ISSUES, THAT'S FOR PLAINTIFFS TO DO, BUT

22  DEFENDANT IS ENTITLED TO DISCOVERY ON THOSE FACTS.

23        THE COURT:  WHAT ABOUT THE IDEA THAT SOME OF THESE

24  ALLEGED HARMS, NOT WITHSTANDING THE FACT THAT SOME OF THESE

25  PEOPLE MAY HAVE DIED OR BEEN ABLE TO ACQUIRE AMMUNITION AFTER

14:34:48  1  ALL, BUT THAT THE LAWS THAT ARE ALLEGED ARE CAPABLE OF

2  REPETITION, AWAITING REVIEW OF WHETHER OR NOT THE LAW'S

3  CONSTITUTIONAL?

4       MS. LOPEZ:  THAT'S AN ISSUE THAT DEFENDANT WOULD BE

5  HAPPY TO BRIEF IF YOUR HONOR IS LOOKING FOR SOME BRIEFING ON

6  EXCEPTION TO MOOTNESS.  BUT THE THRESHOLD ISSUE REMAINS THAT,

7  AS YOUR HONOR POINTED OUT, SOME OF THESE PEOPLE MAY HAVE PASSED

8  AWAY; THERE COULD BE ANY NUMBER OF CIRCUMSTANCES FOR THESE

9  PEOPLE TODAY THAT THE DEFENDANT SITTING HERE TODAY IS NOT AWARE

10  OF TO EVEN ARGUE AGAINST, AND THAT'S WHERE THE NEED FOR

11  DISCOVERY ARISES.  IF IT'S THE CASE THAT THE INDIVIDUAL

12  PLAINTIFFS HAVE SUCCESSFULLY PURCHASED AMMUNITION FOR FOUR

13  YEARS -- AND QUITE FRANKLY, THE DECLARATIONS THAT WERE

14  SUBMITTED IN 2019 FOR THE INDIVIDUAL PLAINTIFFS DIDN'T INDICATE

14:35:44  15  THAT THEY COULDN'T PURCHASE AMMUNITION.

16       THE COURT:  WELL, AT LEAST ONE SHOWED THAT IT TOOK

17  NINE DAYS.

18       MS. LOPEZ:  I BELIEVE THERE WAS ONE DECLARATION FROM

19  A MEMBER OF CRPA IN WHICH HE DID WAIT NINE DAYS BECAUSE HE HAD

20  TO UPDATE HIS AFS RECORD.

21       THE COURT:  HE TRIED THREE TIMES, AS I RECALL; RIGHT?

22       MS. LOPEZ:  I BELIEVE HE UPDATED IT ONE TIME AND THEN

23  TRIED IMMEDIATELY AGAIN TO PURCHASE AMMUNITION BEFORE THE

24  UPDATE HAD BEEN PROCESSED.

25       THE COURT:  SO LONG STORY SHORT, IT TOOK HIM NINE

14:36:19  1   DAYS TO BE ABLE TO BUY THE AMMUNITION THAT HE WANTED, ALMOST AS

2   LONG AS IT WOULD TAKE IF HE WERE TO GO OUT AND BUY A GUN,

3   RIGHT, WHICH WOULD ALMOST MAKE IT SEEM AS IF YOU'RE BETTER OFF

4   TO JUST GO OUT AND BUY -- YOU KNOW, DON'T GO OUT AND BUY

5   AMMUNITION; BUY A GUN.  IF YOU BUY A GUN, THEN YOU CAN BUY

6   AMMUNITION, RIGHT?  BECAUSE IT TAKES THE SAME AMOUNT OF TIME IF

7   YOU BUY A GUN AND PASS THE BACKGROUND CHECK, THEN YOU CAN DO

8   THE STANDARD, THEN YOU CAN GO THROUGH THE STANDARD CHECK AS

9   OPPOSED TO THE BASIC CHECK; RIGHT?

10       MS. LOPEZ:  THAT'S RIGHT.  WHEN YOU PURCHASE THE

11   FIREARM, IT CREATES THE NECESSARY RECORD TO USE --

12       THE COURT:  SO THE STATE IS ENCOURAGING PEOPLE TO GO

13   OUT AND BUY FIREARMS?

14       MS. LOPEZ:  THE STATE IS ENCOURAGING PEOPLE TO HAVE

14:37:04 15  UPDATED RECORDS REGARDING FIREARM POSSESSION, THAT'S CERTAINLY

16   TRUE.

17       THE COURT:  CAN I ASK YOU A QUESTION?  THIS KIND OF

18   TROUBLED ME.  IF I UNDERSTAND THIS -- AND I DON'T PROFESS TO BE

19   ABSOLUTELY CERTAIN OF THIS -- BUT AS I RECALL, WHAT HAPPENED

20   WAS THAT THERE WAS AN INITIATIVE THAT WAS ON THE BALLOT AND THE

21   INITIATIVE PROPOSED SOMETHING LIKE, OKAY, YOU GO IN AND APPLY

22   FOR A ONE-TIME PERMIT, GOOD FOR FOUR YEARS, YOU PAY I THINK IT

23   WAS 50 BUCKS.  YOU KNOW, YOU CAN CORRECT ME IF I'M WRONG ON ANY

24   OF THIS.  SO THE INITIATIVE SAID, HERE IS WHAT YOU DO:  YOU GO

25   OUT AND YOU PAY 50 BUCKS, YOU GET A PERMIT AND THAT PERMIT IS

14:37:49   1    GOOD FOR FOUR YEARS.  SO FOR FOUR YEARS YOU CAN GO BUY

  2    AMMUNITION.  AND OF COURSE, ANYTIME YOU GO BUY AMMUNITION THEY

  3    CAN CHECK TO SEE IF YOU'RE A PROHIBITED PERSON, RIGHT?  BUT

  4    THEN THE LEGISLATURE DIDN'T LIKE WHAT WAS ON THE INITIATIVE AND

  5    THEY PROSPECTIVELY AMENDED WHAT THE PEOPLE POTENTIALLY VOTED

  6    FOR; AM I CORRECT IN THAT?

  7         MS. LOPEZ:  IT'S CORRECT IN THE TIMELINE, YOUR HONOR,

  8    THAT SB 1235, WHICH IMPLEMENTED PROPOSITION 63, TO SOME EXTENT

  9    PROSPECTIVELY AMENDED THE LAW IN THAT IT WAS PASSED IN THE

10    SESSION JUST BEFORE THE PROPOSITION WAS ON THE BALLOT.

11         THE COURT:  SO THE LEGISLATURE DIDN'T LIKE WHAT THE

12    PEOPLE WERE GOING TO BE VOTING ON, AND IN FACT VOTED ON, AND

13    THEY IMPLEMENTED THIS OTHER SYSTEM WHICH IS A SYSTEM THAT'S AT

14    ISSUE HERE, RIGHT?

14:38:46 15         MS. LOPEZ:  IT IS THE SYSTEM THAT'S AT ISSUE HERE.

16    PROPOSITION 63 GAVE THE LEGISLATURE THE POWER TO AMEND THE LAW

17    AND THERE'S BEEN BRIEFING IN THIS RECORD --

18         THE COURT:  YEAH, BUT YOU KNOW HOW MUCH I'VE READ.

19    THAT'S WHY I'M ASKING.  THAT'S MY RECOLLECTION, RIGHT?

20         MS. LOPEZ:  YES.  I BELIEVE THERE WAS SUPPLEMENTAL

21    BRIEFING ADDRESSING THIS PRECISE ISSUE IN THE RECORD AT DOCKET

22    NUMBER 58 WHERE DEFENDANT EXPLAINED THAT UNDER CALIFORNIA LAW,

23    SO LONG AS THE PROPOSITION GIVES THE LEGISLATURE THE POWER TO

24    AMEND AND THE AMENDMENTS ARE ALIGNED WITH THE PROPOSITION'S

25    PURPOSE, THOSE ARE PERFECTLY ACCEPTABLE ACTIONS FOR THE

14:39:39   1   LEGISLATURE TO TAKE UNDER CALIFORNIA LAW.  AND THAT HAS NEVER

2   BEEN CHALLENGED IN THIS CASE.

3            THE COURT:  DO YOU KNOW WHY WHAT WAS PROPOSED IN THE

4   ORIGINAL PROPOSITION WAS NOT ACCEPTABLE TO THE LEGISLATURE? WHY

5   DID THEY HAVE TO MAKE IT SO MUCH MORE COMPLICATED, SO MUCH MORE

6   DIFFICULT?

7            MS. LOPEZ:  I DON'T HAVE THE PRECISE REASONS FOR THE

8   LEGISLATURE'S PASSAGE OF THE AMENDMENT.

9            THE COURT:  WERE THERE ANY LEGISLATIVE FINDINGS IN

10   ANY OF THEM, DO YOU KNOW?

11            MS. LOPEZ:  THERE ARE LEGISLATIVE FINDINGS IN SB

12   1235.  I DON'T KNOW THAT ANY OF THEM RELATE TO THE PARTICULAR

13   DISTINCTION THAT YOUR HONOR IS CALLING INTO QUESTION.

14            THE COURT:  OKAY.  JUST A SECOND.  I DON'T WANT TO

14:40:20  15   KEEP YOU HERE ALL DAY AND ALL NIGHT.  SO LET ME LOOK AND SEE IF

16   I HAVE ANY OTHER -- OKAY.  LET ME TURN TO THE PLAINTIFFS.  SO

17   YOU'VE HEARD MS. LOPEZ, HER COMMENTS AND HER ANSWERS TO MY

18   QUESTIONS.  MR. BRADY, DO YOU HAVE ANYTHING YOU WISH TO COMMENT

19   ON OR WISH TO SAY?

20            MR. BRADY:  I HAVE QUITE A FEW THINGS TO RAISE, YOUR

21   HONOR.

22            THE COURT:  I'M LISTENING.

23            MR. BRADY:  THANK YOU.  SO I THINK IT'S A LITTLE BIT

24   DIFFICULT TO KNOW WHERE TO BEGIN BUT I'LL TAKE THE HISTORICAL,

25   THE NEED FOR AN EXPERT TO EXPLAIN THE HISTORICAL CONTEXT AND

14:41:33 1   THE SCHOLARSHIP ASSOCIATED WITH LAWS.  *BRUEN* TALKS ABOUT THESE

2   STATUTES, THE LAWS IN EFFECT AT THE TIME.  IT DOESN'T TALK

3   ABOUT THE SCHOLARSHIP AROUND THEM OR THE EFFECTS OF THESE LAWS

4   OR EXPLAINING THEM.  IT SAYS, WERE THERE LAWS THAT DID X, Y AND

5   Z, YES OR NO?  AND THE COURT --

6        THE COURT:  I DON'T KNOW THAT THAT'S -- THAT'S NOT MY

7   READING OF EITHER *HELLER* OR *BRUEN*.  I THINK THAT MIGHT BE A BIT

8   OF AN OVERSTATEMENT.  ANYWAY, GO AHEAD.

9        MR. BRADY:  I COULD FIND YOUR HONOR THE REFERENCE IN

10  *BRUEN* WHERE IT TALKS ABOUT THE STATUTES AND THE LAWS.  I

11  BELIEVE WHAT I'M GETTING AT, WHAT THE STATE IS GETTING AT WITH

12  THESE EXPERTS TALKING ABOUT SCHOLARSHIP IS TO SAY, WELL, THERE

13  WASN'T NECESSARILY A LAW IN PLACE BUT THIS WAS SORT OF THE

14  ATMOSPHERE AND WHAT PEOPLE FELT ABOUT THIS TIME PERIOD BUT

14:42:38 15  THAT'S NOT WHAT --

16       THE COURT:  SHE'S TALKING ABOUT PUTTING THE LAWS IN

17  CONTEXT I THINK IS WHAT I HEARD HER SAY.  RIGHT?

18       MR. BRADY:  YES.  AND I DON'T THINK -- BUT AS YOUR

19  HONOR INDICATED, I DON'T BELIEVE THE COURT NEEDS AN EXPERT TO

20  PROVIDE THAT.  AND ALL THAT SAID, I THINK -- TO TAKE A STEP

21  BACK, I DON'T THINK THAT WHAT THE STATE IS REQUESTING WOULD

22  NECESSARILY BE OUT OF BOUNDS BY SAYING THAT THEY WANT TO HAVE

23  THESE EXPERTS WEIGH IN.  BUT A YEAR AFTER *BRUEN* CAME DOWN, IT'S

24  BEEN OVER A YEAR NOW, AND THEY'VE MADE NO OFFER OF PROOF THAT

25  WE'VE DONE SOME PRELIMINARY RESEARCH OR WE'VE TALKED TO AN

14:43:23  1   EXPERT WHO SAYS THAT HE OR SHE IS AWARE OF A COUPLE OF THESE

2   BACKGROUND CHECK LAWS THAT THEY'D LIKE TO DO SOME FURTHER

3   DIGGING INTO.  NOTHING HAS PRECLUDED THE STATE, IN OTHER WORDS,

4   FROM FINDING --

5           THE COURT:  LET ME SAY THIS:  MY EXPERIENCE SO FAR

6   WITH ALL FOUR OF THESE CASES IS THAT, GENERALLY, IN ALL THE

7   CASES THROUGHOUT THE NATION IN ALL THE STATES IT'S ALMOST

8   ALWAYS THE SAME EXPERTS, AND IT'S LIKE MUSICAL CHAIRS, AND I

9   DON'T THINK THESE EXPERTS HAVE TO RESEARCH ANYTHING MORE.  THE

10   RESEARCH HAS BEEN DONE.  YOU CAN RESEARCH ALL YOU WANT.  WE CAN

11   RESEARCH FOR 100 YEARS, 200 YEARS.  I DON'T THINK YOU'RE GOING

12   TO FIND ANYTHING ELSE.

13           I THINK WHAT MS. LOPEZ IS TALKING ABOUT IS AN EXPERT

14   WHO CAN TELL ME, LOOK, THIS IS WHY THERE WERE THESE LAWS THAT

14:44:32  15   SAID THAT BLACKS AND MULATTOS AND SLAVES COULD NOT OWN GUNS AND

16   THAT TRADITION BROUGHT FORWARD EXPLAINS WHY WE CAN JUSTIFY

17   HAVING BACKGROUND CHECKS.  I THINK THAT'S WHAT SHE'S SAYING.

18   NOW MY THINKING IS -- AND I SAY THAT BECAUSE I'VE SEEN THIS IN,

19   I DON'T KNOW WHICH ONE OF MY CASES, BUT I'VE SEEN THIS ALREADY

20   IN SOME OF MY OTHER CASES.  MR. ECHEVERRIA KNOWS.  I THINK HE'S

21   INVOLVED IN ALL FOUR OF THEM ANYWAY, AREN'T YOU?  OR THREE OF

22   THEM?

23           MR. ECHEVERRIA:  I'M INVOLVED IN ALL OF THEM, YOUR

24   HONOR.

25           THE COURT:  SO I'VE SEEN THIS ALREADY.  I'VE SEEN

14:45:18  1    THIS CONTEXT.  BUT I'M SURPRISED I DON'T HAVE ANYTHING LIKE

        2    THAT IN THE RECORD IN THIS CASE, BUT YOU COULD.  SO MY QUESTION

        3    WOULD BE TO MR. BRADY AND MR. MOROS, IF MR. ECHEVERRIA AND MS.

        4    LOPEZ AND THE STATE WERE TO PRODUCE, FOR EXAMPLE, A DECLARATION

        5    BY --

        6           MR. MOROS:  SAUL CORDELL.

        7           THE COURT:  HOW DID YOU KNOW?

        8           MR. MOROS:  I READ A LOT OF THEM TOO, YOUR HONOR.

        9           THE COURT:  SAUL CORDELL; THAT SAYS OH, I'VE BEEN

       10    LOOKING AT THIS STUFF FOR 25 YEARS AND THIS IS WHY THEY DID

       11    WHAT THEY DID.  OKAY.  NOW ARE EITHER ONE OF YOU GOING TO BE

       12    INTERESTED IN TAKING HIS DEPOSITION TO TEST HIS OPINIONS?

       13           MR. BRADY:  BEING A TYPICAL LAWYER, I OBVIOUSLY WOULD

       14    NOT WAIVE MY RIGHT TO BE ABLE TO DEPOSE; BUT THAT BEING SAID,

14:46:25 15    YOUR HONOR, I THINK I COULD SAY PRETTY CONFIDENTLY THAT I WOULD

       16    NOT.  AT THIS POINT, I DON'T THINK WE WOULD.  I DON'T SEE ANY

       17    REASON.  AS YOUR HONOR INDICATED, IF IT'S THE STATE'S POSITION,

       18    AS YOU JUST DESCRIBED, WHAT MS. LOPEZ IS SIMPLY SAYING, THEY

       19    NEED EXPERTS TO PROVIDE THE CONTEXT FOR THE LAWS THEY ALREADY

       20    PROVIDED AND THEY'RE NOT LOOKING TO PROVIDE NEW LAWS, IF THAT

       21    IS INDEED THE CASE, THEN I THINK, AS YOUR HONOR INDICATED, WE

       22    ALL KNOW WHY THESE LAWS WERE PASSED.  THEY ARE TO BAR, AS WE

       23    JUST TALKED ABOUT, INDIANS, SLAVES, NON-WHITES.  AND TO CALL

       24    THEM CITIZENS, QUOTE, CITIZENS, AS I BELIEVE MS. LOPEZ REFERRED

       25    TO THEM, THEY WEREN'T CITIZENS.  THAT WAS THE ENTIRE POINT.

14:47:12  1    THEY WERE SEEN AS LESSERS.  THEY DIDN'T HAVE ANY RIGHTS.  THEY

2    WERE IN SOME INSTANCES NOT EVEN SEEN AS HUMAN BEINGS.

3              THE COURT:  YOU DON'T HAVE TO ARGUE THE MERITS TO ME.

4    WHAT I'M GETTING TO IS -- I SUSPECT YOU'RE PROBABLY AS WELL

5    VERSED IN THESE CASES AS I AM BY NOW, AND I'M JUST WONDERING --

6    I HAVEN'T HAD A TRIAL SINCE SEPTEMBER, BELIEVE IT OR NOT.  AND

7    SO I THINK THE NEXT TRIAL I HAVE I'M GOING TO HAVE TO HAVE A

8    CHECKLIST TO REMIND MYSELF HOW TO CONDUCT A TRIAL.  SO I'M NOT

9    TRYING TO GET AWAY FROM TRYING TO DO A TRIAL, PER SE.  IT JUST

10   SEEMS LIKE AN INEFFICIENT WAY OF USING RESOURCES, AND IT SEEMS

11   TO ME THE MORE EFFICIENT WAY TO DO THIS WOULD BE TO PERHAPS

12   HAVE THE STATE SUBMIT DECLARATIONS, SUBMIT DECLARATIONS BY

13   THESE EXPERTS THAT YOU HAVE.  IF MR. BRADY AND MR. MOROS WANT

14   TO DEPOSE THEM, GREAT.  AND IF MR. BRADY AND MR. MOROS HAVE

14:48:23 15   EXPERTS THAT THEY WANT TO SUBMIT THEIR DECLARATIONS, AND YOU

16   WANT TO DEPOSE THEM, WE COULD DO THAT.  I MEAN, WHAT DO YOU

17   THINK?

18             MS. LOPEZ:  I THINK THAT'S RIGHT AS TO THE EXPERTS,

19   YOUR HONOR, AND THAT'S HOW WE PROCEEDED IN MANY OF THE OTHER

20   CASES BEFORE OTHER DISTRICT COURTS THAT WERE REMANDED

21   POST-*BRUEN* AS TO THE EXPERT DISCOVERY IN PARTICULAR.  THERE'S

22   BEEN SOME OF THE EXPERTS THAT WERE DEPOSED, MANY WHO WERE NOT,

23   AND SO IT'S JUST A CALL FOR THE PARTIES IN THAT REGARD.

24             ONE THING THAT MR. BRADY SAID THAT I DO THINK NEEDS

25   TO BE ADDRESSED IS -- I AGREE WITH YOUR HONOR'S ARTICULATION AS

14:49:12
1   TO WHAT I THINK THE EXPERT TESTIMONY WOULD BE RELEVANT TO.  IN

2   ADDITION TO, IN THIS CASE, THERE'S THE ISSUE OF THE BACKGROUND

3   CHECKS AND THE SURVEYS THAT WERE SUBMITTED, I BELIEVE THE

4   TIMELINE WAS CUT OFF BEFORE MANY BACKGROUND CHECKS LAWS

5   THEMSELVES, THE PRECISE ISSUE OF A BACKGROUND CHECK, WENT INTO

6   EFFECT.  SO THE EXTENT AN EXPERT COULD PROVIDE CONTEXT ON

7   BACKGROUND CHECKS IN PARTICULAR, THAT WOULD BE ONE ADDITIONAL

8   AREA THAT IS RELEVANT IN THIS CASE, IN ADDITION TO PROVIDING

9   CONTEXT UNDER *BRUEN* FOR THE LAWS THAT HAVE ALREADY BEEN

10  SUBMITTED.

11          THE COURT:  OKAY.  WELL, I'M NOT TRYING TO DEPRIVE

12  YOU FOLKS OF EXERCISING YOUR WONDERFUL ADVOCACY SKILLS, HAVING

13  LIVE WITNESSES, AND YOU KNOW, CROSS-EXAMINATION.  IT'S BEEN A

14  LONG TIME SINCE I'VE DONE THAT, BUT I LOVED DOING THAT WHEN I

14:50:06  15  WAS SITTING ON THAT SIDE OF THE BENCH AND I KNOW IT CAN BE A

16  LOT OF FUN, BUT IT ALSO CAN BE A WASTE OF TIME.  ANYWAY, WHAT

17  I'M SAYING IS, I WOULD SUGGEST, IF EVERYONE AGREES, THAT THE

18  STATE SUBMITS -- I DON'T KNOW WHY I'M DOING THIS TO MYSELF

19  BECAUSE I'M GOING TO HAVE TO READ ALL THIS STUFF AGAIN.  YOU

20  SUBMIT YOUR EXPERT WITNESS REPORT, THEY THEN DECIDE WHETHER

21  THEY WANT TO DEPOSE YOUR WITNESS OR MAYBE WE CAN HAVE THEM HERE

22  IN COURT IF WE NEED TO, AND THEN I CAN DECIDE THE ISSUE THAT

23  WAY.  WHAT DO YOU THINK ABOUT THAT, MS. LOPEZ?

24          MS. LOPEZ:  I AGREE WITH THAT PROCESS, YOUR HONOR.

25          THE COURT:  WELL, IN THAT CASE -- YOU'RE WONDERFUL TO

14:50:49  1   WORK WITH, BY GOSH.  TELL YOU WHAT, WHY DON'T WE DO THIS:  I'LL

        2   ORDER THE STATE SUBMIT EXPERT WITNESS DECLARATIONS ON

        3   BACKGROUND CHECKS, HISTORY, TRADITION OF BACKGROUND CHECKS AND

        4   THE REASONS FOR THEM AND SO ON.  I'LL ORDER THAT GETS DONE

        5   WITHIN 30 DAYS.  AND THEN WHAT I'LL DO IS I'LL GIVE PLAINTIFFS,

        6   I'LL GIVE YOU 15 DAYS TO ELECT WHETHER OR NOT YOU WANT TO

        7   DEPOSE THESE FOLKS OR WHETHER YOU WANT TO PROFFER YOUR OWN

        8   EXPERT, AND IF SO, THEN I'LL GIVE THEM TIME TO DEPOSE YOUR

        9   EXPERTS.  HOW IS THAT?

       10          MR. BRADY:  JUST TO CLARIFY -- I'M FINE WITH THAT,

       11   YOUR HONOR.  BUT JUST TO CLARIFY, WE'LL HAVE THE 15 DAYS TO

       12   CONDUCT A DEPOSITION OR TO DETERMINE --

       13          THE COURT:  TO DETERMINE.  YOU'RE GOING TO HAVE TO

       14   READ THIS STUFF AND MY GUESS IS YOU PROBABLY HAVE OTHER STUFF

14:51:56 15   TO DO BESIDES THIS CASE.  SO I'LL GIVE YOU 15 DAYS TO READ IT

       16   AND DECIDE IF YOU WANT TO DEPOSE THEM, OR WE CAN HAVE THEM COME

       17   IN AND TESTIFY.  I ACTUALLY ENJOY LIVE WITNESSES.  LIKE I SAID,

       18   I HAVEN'T HAD A TRIAL SINCE SEPTEMBER.  SO WE CAN DO THAT.  AND

       19   IF YOU DECIDE TO FILE SOMETHING INSTEAD, A BRIEF FOR EXAMPLE,

       20   TELLING ME WHY YOU THINK THEY'RE WRONG, THEN YOU HAVE ANOTHER

       21   30 DAYS AFTER THAT.  HOW IS THAT?  DOES THAT WORK?

       22          MS. LOPEZ:  YES, YOUR HONOR.  TO CLARIFY, DID YOU

       23   WANT THE DECLARATIONS INITIALLY FILED WITH THE COURT OR JUST

       24   SUBMITTED TO THE PLAINTIFF'S COUNSEL?

       25          THE COURT:  I'D LIKE TO SEE THEM.

28

14:52:33  1          MS. LOPEZ:  30 DAYS FILED WITH THE COURT.

2          THE COURT:  I DON'T HAVE ENOUGH TO DO.  HOPEFULLY MY

3    EYES WILL BE BETTER BY THEN, AND I'LL BE ABLE TO READ STUFF

4    CAREFULLY.

5          OKAY.  LET'S TALK ABOUT THE STANDING DISCOVERY ISSUE.

6    BY THE WAY, WHEN WE DO THAT, THEN I'LL BE DECIDING THE CASE ON

7    THE MERITS.  OKAY?

8          MS. LOPEZ:  I UNDERSTAND, YOUR HONOR.

9          THE COURT:  ALL RIGHT.  NOW LET'S TALK ABOUT THE

10   STANDING ISSUE.  MR. BRADY, YOU HAVE NOT -- AND MR. MOROS --

11   YOU HAVEN'T HAD A CHANCE TO ADDRESS THE STANDING ISSUE AND THE

12   REQUEST FOR DISCOVERY; SO TALK TO ME.

13         MR. BRADY:  WELL, I BELIEVE WE'VE ADDRESSED PART OF

14   THE DISCOVERY WHICH IS THE EXPERTS.  BUT AS FAR AS THE

14:53:18 15  STANDING, THE DEPOSITIONS OF THE PLAINTIFFS, I DON'T THINK IT'S

16   NECESSARY.  I BELIEVE -- YOU KNOW, THIS CASE WAS NEVER STAYED,

17   I'D LIKE TO REMIND THE COURT.  IT WAS NEVER STAYED PENDING

18   APPEAL.  THE STATE'S HAD FOUR-ISH YEARS TO QUESTION THE

19   PLAINTIFF'S STANDING.  THE STANDING THEY ARTICULATED, EACH

20   INDIVIDUAL, IS LAID OUT IN THE COMPLAINT.

21         THERE'S BEEN NO AMENDMENTS BY THE PLAINTIFFS.

22   THEY'VE LAID IT OUT IN DECLARATIONS.  AND IT JUST REALLY CANNOT

23   BE QUESTIONED THAT THESE PLAINTIFFS HAVE PURCHASED AMMUNITION.

24   THEY SUBMITTED THAT IN DECLARATIONS.  THEY STATED IT IN THE

25   COMPLAINT AND THAT THEY INTEND TO PURCHASE AMMUNITION AND THEY

14:54:06   1   WOULD THUS BE SUBJECT TO THESE LAWS.  THERE ARE OTHERS WHO GO

         2   OUT OF STATE.  I GUESS IT COMES DOWN TO WHAT IS THE STATE GOING

         3   TO LEARN IN DEPOSING INDIVIDUAL PLAINTIFFS.

         4        THE COURT:  WELL, I SUPPOSE WHAT THEY'RE GOING TO

         5   LEARN IS THAT IF, FOR EXAMPLE, THEY HAVE "PLAINTIFF A" AND

         6   "PLAINTIFF A" SAYS I WASN'T ABLE TO BUY AMMUNITION BUT NOW YOU

         7   CAN, THEN THE QUESTION IS, DOES "PLAINTIFF A" HAVE STANDING TO

         8   CONTINUE TO BE A PLAINTIFF IN THIS CASE?

         9        MR. BRADY:  PLAINTIFF IS WILLING TO CONCEDE THAT NONE

        10   OF THEM HAVE BEEN DENIED AMMUNITION AND THAT ALL OF THEM ARE

        11   ABLE TO PURCHASE AMMUNITION.  THAT'S NOT THE NATURE OF THE

        12   CHALLENGE.  THE NATURE OF THE CHALLENGE IS THAT THEY'RE SUBJECT

        13   TO THIS BACKGROUND CHECK THAT HAS THESE ISSUES.  AND I WANT TO

        14   TAKE A STEP BACK.

14:54:53  15        THE STATE IS FOCUSING ON WHAT YOUR HONOR REFERS TO AS

        16   THE BLOCKS AT THE FRONT DOOR OF THE BACKGROUND CHECK SYSTEM,

        17   AND THAT'S ALL THEY'RE FOCUSED ON WITH RESPECT TO STANDING.

        18   BUT THE PLAINTIFFS HAVE ALLEGED THAT THEY WANT TO PURCHASE

        19   AMMUNITION OUT OF STATE VIA A REMOTE VENDOR, A SHIPPING COMPANY

        20   LIKE THE OTHER SHIPPING PLAINTIFFS OR TRAVEL OUT OF STATE AND

        21   BRING AMMUNITION BACK AND THE BACKGROUND CHECK SYSTEM, BECAUSE

        22   IT REQUIRES THAT IT BE DONE FACE-TO-FACE, PRECLUDES PLAINTIFFS

        23   FROM DOING THAT.  THEY HAVE STANDING RIGHT THERE TO CHALLENGE

        24   THESE LAWS JUST ON THAT ALONE.

        25        THE COURT:  I SEE.  SO YOU'RE TALKING ABOUT -- OKAY.

14:55:38  1   SO YOU'RE TALKING ABOUT THE FACT THAT NO MATTER WHAT HAS

        2   HAPPENED, THEY DO NOT HAVE THE ABILITY TO GO OUT OF STATE,

        3   PURCHASE AMMUNITION AND BRING IT BACK INTO THE STATE, AND THAT

        4   GIVES THEM STANDING.

        5           MR. BRADY:  CORRECT.  AND THE IMPEDIMENT TO THAT IS

        6   THE BACKGROUND CHECK SYSTEM BECAUSE IT REQUIRES IT BE DONE

        7   FACE-TO-FACE.  SO RIGHT THERE THEY HAVE STANDING.  AND THE CASE

        8   LAW SAYS THAT ONCE THE PLAINTIFF HAS STANDING, THEY'RE NOT

        9   RESTRICTED TO JUST THEIR SET OF CIRCUMSTANCES; OTHERWISE, IT

       10   WOULD ALMOST BE IMPOSSIBLE TO EVER BRING A FACIAL CHALLENGE.

       11   AND THEY ARE SAYING THAT IN ALL INSTANCES THIS LAW IS

       12   UNCONSTITUTIONAL.  JUST BECAUSE SOME PEOPLE CAN NAVIGATE IT AND

       13   ARE ABLE TO PROCURE AMMUNITION UNDER IT DOES NOT NEGATE THE

       14   FACT THAT 15-ISH PERCENT OF PEOPLE ARE DENIED.

14:56:42 15           AND FOR THE STATE TO SAY THAT NOBODY HAS STANDING TO

       16   CHALLENGE THAT EXCEPT FOR THE PEOPLE WHO ARE ACTUALLY DENIED,

       17   AND THEN THEY HAVE TO BRING AN AS-APPLIED CHALLENGE, THEN THE

       18   STATE WOULD SAY, OH, WELL, WE CAN TELL YOU HOW TO FIX YOUR

       19   PROBLEM; YOU WERE DENIED BECAUSE OF THIS REASON, SO GO AHEAD

       20   AND FIX IT AND NOW YOU DON'T HAVE STANDING ANYMORE.

       21           IN OTHER WORDS, UNDER THE STATE'S THEORY OF THE

       22   STANDING REQUIREMENT HERE, TO CHALLENGE ALL THESE DEFICIENCIES

       23   IN THE SYSTEM, SOMEBODY WOULD HAVE TO BRING A FEDERAL LAWSUIT

       24   EVERY SINGLE TIME FOR THEIR SPECIFIC SET OF CIRCUMSTANCES.  AND

       25   A GROUP LIKE THE CRPA, WHICH IS THE PLAINTIFF, CAN'T PROTECT

14:57:27  1   ITS MEMBERS FROM A SYSTEM THAT HAS THOSE ISSUES.  IT WOULD BE

        2   SAYING LIKE THE ACLU CAN'T CHALLENGE A LAW THAT PRECLUDES 15

        3   PERCENT OF PEOPLE FROM BEING ABLE TO REGISTER TO VOTE JUST

        4   BECAUSE THEY DON'T KNOW WHO THOSE 15 PERCENT ARE AS

        5   INDIVIDUALS, AND THEY'RE NOT BRINGING A LAWSUIT TO CHALLENGE

        6   THE LAW.

        7           THE CRPA HAS SUBMITTED A DECLARATION BY ITS EXECUTIVE

        8   DIRECTOR THAT CRPA MEMBERS HAVE BEEN DENIED AND THAT CRPA

        9   MEMBERS HAVE DECIDED TO FOREGO BUYING AMMUNITION BECAUSE OF

       10   THIS SYSTEM.  THAT IS STANDING THAT THOSE MEMBERS WOULD HAVE,

       11   AND THUS, CRPA WOULD HAVE, IN ADDITION TO THE INDIVIDUALS.

       12           THE COURT:  I WAS THINKING ABOUT THE CENTER FOR

       13   BIODIVERSITY LAWSUITS INVOLVING ENVIRONMENTAL CLAIMS, BUT

       14   YOU'RE RIGHT, THE ACLU MIGHT ALSO BE AN ANALOG.  MR. MOROS?

14:58:31 15           MR. MOROS:  JUST ONE THING TO ADD, YOUR HONOR, TO MY

       16   COLLEAGUE'S POINTS.  THE STATE KEEPS BRINGING UP *BRUEN* FOOTNOTE

       17   NINE AND ITS APPARENT BLESSING OF BACKGROUND CHECK SYSTEMS.

       18   WHAT FOOTNOTE NINE WAS TALKING ABOUT WAS THE PROCESS IN PLACE

       19   IN THE SHALL ISSUE STATES WHICH REQUIRES A BASIC BACKGROUND

       20   CHECK AS PART OF GETTING A CARRY PERMIT.

       21           WE HAVE TO KEEP IN MIND HERE THAT THE AMMUNITION

       22   BACKGROUND CHECK IS THE FIRST OF ITS KIND IN THE NATION, AND

       23   THERE'S NO OTHER LAW ANYWHERE WHERE YOU'D HAVE TO DO A

       24   BACKGROUND CHECK EACH TIME YOU GO.  EVEN IF YOU'RE NOT SHIPPING

       25   FROM OUT OF STATE, BECAUSE IF YOU ORDER AMMO ONLINE, YOU HAVE

14:59:03  1  TO SHIP IT TO A GUN STORE, PAY THE FEES; EVEN IF YOU JUST GO

2  INTO A STORE, YOU'RE GOING TO HAVE TO PAY AT MINIMUM A DOLLAR.

3  WE CAN SAY THAT'S MAYBE NOT A HUGE DEAL, BUT FOR OTHER PEOPLE

4  THEY'LL HAVE TO PAY AS MUCH AS $20, $19 I THINK, FOR A FULL

5  BACKGROUND CHECK IF THEY'VE SINCE MOVED ADDRESSES SINCE THEY

6  LAST BOUGHT A FIREARM.

7           SO WHEN THE STATE IS TALKING ABOUT FOOTNOTE NINE, THE

8  SUPREME COURT WASN'T CONTEMPLATING A BACKGROUND CHECK SYSTEM

9  EVERY TIME YOU BUY AMMUNITION.  THEY WERE TALKING ABOUT A

10  BACKGROUND CHECK YOU DO ONCE EVERY TWO TO FIVE YEARS WHEN YOU

11  RENEW YOUR CARRY PERMIT OR WHEN YOU APPLY FOR THE FIRST

12  TIME --

13           THE COURT:  WHICH WOULD HAVE BEEN MORE CONSISTENT

14  WITH WHAT THE PEOPLE ORIGINALLY VOTED ON, RIGHT, IN THE

14:59:43  15  PROPOSITION?  THAT'S WHAT YOU'RE SAYING?

16           MR. MOROS:  EXACTLY, YOUR HONOR.  THIS ISN'T

17  NECESSARILY A CASE ABOUT "ARE BACKGROUND CHECKS ON AMMO OKAY"?

18  IT'S, "IS THIS SYSTEM OF BACKGROUND CHECKS ON AMMUNITION

19  ACCEPTABLE"?

20           THE COURT:  THAT RAISES A REALLY INTERESTING QUESTION

21  TO ME.  I'LL POSE IT TO MS. LOPEZ AND MR. ECHEVERRIA.  IF THE

22  COURT FINDS THAT THE AMENDMENT TO PROP 63, WHAT IS IT, 303.70,

23  IF THE COURT WERE TO FIND THAT THAT IS UNCONSTITUTIONAL, DOES

24  THAT RESTORE PROP 63 AS IT WAS ORIGINALLY ENACTED BY THE VOTERS

25  OF THE STATE OF CALIFORNIA?

15:00:43  1             MS. LOPEZ:  THAT'S AN ISSUE THAT COULD CERTAINLY BE

        2    BRIEFED, YOUR HONOR.  IT'S NOT AN ANSWER THAT I HAVE FOR YOU

        3    TODAY BECAUSE IT HADN'T BEEN RAISED AS A LIVE ISSUE IN THIS

        4    CASE TO DATE.  I DON'T --

        5             THE COURT:  I HAVE A LOT OF TIME ON MY HANDS.  I

        6    THINK OF A LOT OF STUFF, YOU KNOW.

        7             MS. LOPEZ:  I DID WANT TO MAKE ONE POINT TO MR.

        8    BRADY'S COMMENTS.

        9             THE COURT:  WAIT, DON'T MOVE TOO FAST.  WHAT DO YOU

       10    THINK?  YOU WORK FOR THE STATE.  I'M SURE YOU HAVE DONE THIS

       11    KIND OF THING BEFORE.  I'M NOT GOING TO HOLD YOU TO IT, BUT

       12    WHAT DO YOU THINK?  SO IF I WERE TO FIND -- HYPOTHETICALLY,

       13    LET'S JUST SAY THAT I FIND THAT THE AMENDMENT SB 1325 IS

       14    UNCONSTITUTIONAL, DOES THE ORIGINAL VOTER-APPROVED INITIATIVE

15:01:37 15    TAKE EFFECT, OR DOES THE LEGISLATURE BY AMENDING PROP 63

       16    ESSENTIALLY EXTINGUISH THOSE PORTIONS IN PROP 63 THAT IT

       17    PURPORTED TO AMEND?

       18             MS. LOPEZ:  I THINK IN THE USUAL CASE, YOUR HONOR, IF

       19    WE WEREN'T TALKING ABOUT PROPOSITIONS, AND AN AMENDED LAW WAS

       20    FOUND UNCONSTITUTIONAL, IT WOULD NOT REVERT TO THE PRE-AMENDED

       21    STATE.

       22             THE COURT:  IT WOULD NOT.

       23             MS. LOPEZ:  IF YOU WERE JUST LOOKING AT A REGULAR

       24    LAW.  WE DO HAVE SEVERABILITY IN THIS CASE SO I DO THINK THAT

       25    WOULD ALSO MATTER; THE VAST MAJORITY OF THE LAW WOULD STAND

                                                                      34

15:02:16  1  REGARDLESS OF IF THERE WERE ANY FINDINGS OF

2  UNCONSTITUTIONALITY --

3        THE COURT:  THAT WOULD ONLY APPLY TO 303.70, RIGHT,

4  AS I RECALL?

5        MS. LOPEZ:  THAT'S RIGHT.  THERE REALLY IS

6  ONLY -- AND I BELIEVE YOU IDENTIFIED IT IN YOUR INITIAL ORDER

7  -- THERE'S REALLY ONLY ONE MAJOR DISTINCTION AND THAT'S WHAT

8  YOUR HONOR HAS SAID ABOUT THE PROCESS OF A CERTIFICATE BEING

9  VALID FOR A LONGER TIME VERSUS THE FOUR VERSIONS FOR BACKGROUND

10  CHECKS THAT WE HAD TODAY.

11        THE COURT:  I INTERRUPTED MR. MOROS.  HE WAS TALKING

12  TO ME AND IT CAUSED ME TO THINK ABOUT THAT.  I THOUGHT, WELL --

13  BECAUSE I THINK I SAID IN MY ORDER I'M NOT PRE-JUDGING

14  ANYTHING.  I'M JUST SAYING IT WOULD SEEM TO ME THAT IF WE

15:03:08  15  DECIDED THAT BACKGROUND CHECKS ARE IN FACT CONSTITUTIONAL, MY

16  RECOLLECTION IS THAT THE BOTTOM, THE END OF FOOTNOTE NINE

17  THERE'S A CAVEAT AND THE CAVEAT IS SOMETHING TO THE EFFECT OF,

18  YEAH, BUT YOU CAN HAVE, LET'S JUST SAY BACKGROUND CHECKS, BUT

19  THEY CAN'T BE UNREASONABLE OR WHATEVER, WHICH LEADS ME TO

20  CONCLUDE THAT AS I THOUGHT I SAID, I WASN'T PARTICULARLY SURE

21  THAT THE ORIGINAL PROP 63 WOULD BE UNREASONABLE.  SO THAT'S WHY

22  I ASKED THE QUESTION, WOULD IT REVERT BACK TO THE ORIGINAL

23  PROPOSITION VOTED ON BY THE PEOPLE OF THE STATE OF CALIFORNIA?

24  ANYWAY, MR. MOROS?

25        MR. MOROS:  I WRAPPED UP MY COMMENTS, BUT MR. BRADY

15:04:06 1    MIGHT HAVE SOMETHING TO SAY.

2          MR. BRADY:  IF I MAY, YOUR HONOR, REGARDING THE PROP

3    63 AND REVERTING BACK, I LOOKED INTO THIS AND I DON'T BELIEVE

4    THERE'S ANY DOCTRINE THAT WOULD REVERT BACK.  I DON'T THINK A

5    SEVERABILITY CLAUSE WOULD HAVE ANY IMPACT.  AND THE REASON

6    BEING IS, AS MS. LOPEZ INDICATED, PLAINTIFFS DON'T REALLY

7    DISPUTE THAT WHAT THE LEGISLATURE DID WAS UNAUTHORIZED.  IT IS

8    ADMITTEDLY ODD, BUT AT THE SAME TIME THE TEXT OF PROP 63

9    EXPRESSLY SAYS THAT THE LEGISLATURE CAN AMEND THE LAW WITH THE

10   55 PERCENT.  THEY DID IT PREEMPTIVELY, BUT THE PEOPLE WERE

11   AWARE THAT PROP 63 GAVE THE LEGISLATURE POWER TO CHANGE THE

12   LAW.  IF THEY WERE, IN THEORY, OPPOSED TO THAT, THEN THEY COULD

13   HAVE OBJECTED TO THAT.  BUT IT MAKES SENSE, AS SOMEBODY WHO IS

14   ANTI PRETTY MUCH ALL PROPOSITIONS BECAUSE NO MATTER THEIR

15:05:01 15  SUBJECT MATTER --

16         THE COURT:  TELL US HOW YOU THINK.

17         MR. BRADY:  FULL DISCLOSURE.  BUT THE REASON I AM

18   PLAYS IN HERE IS BECAUSE IT MAKES SENSE FOR THE LEGISLATURE TO

19   ADDRESS THE IMPLEMENTATION AND TECHNICALITIES OF THESE THINGS,

20   WHEREAS, YOU GIVE THE PEOPLE THE BIG PICTURE AND THE PEOPLE,

21   BIG PICTURE-WISE, CHOSE AMMUNITION BACKGROUND CHECKS.  BUT I

22   THINK THAT IT'S ALSO -- IT SHOULD ALSO BE IMPLICIT BY THE

23   PEOPLE AGREEING THAT THE LEGISLATURE SHOULD HAVE THIS POWER,

24   THAT THE PEOPLE WERE SAYING YOU ALL FIGURE OUT THE PARTICULARS.

25   AND THE LEGISLATURE DID FIGURE OUT THE PARTICULARS.  SO I DON'T

15:05:42   1    THINK WE HAVE ANY CHALLENGE TO WHAT THE LEGISLATURE DID, AS ODD

2    AS IT IS.

3         THE COURT:  WELL, I WASN'T ASKING ABOUT A CHALLENGE

4    TO WHAT THE LEGISLATURE DID.  WHAT I WAS TALKING ABOUT WAS --

5    AND I HONESTLY DON'T KNOW THE ANSWER, I'VE NEVER RESEARCHED IT.

6    BUT MR. MOROS' COMMENTS CAUSED ME TO THINK ABOUT IT.

7         OKAY.  SO THE PEOPLE SAID, HERE IS WHAT WE'RE GOING

8    TO DO:  WE'RE GOING TO HAVE A CERTIFICATE FOR FOUR YEARS, YOU

9    PAY 50 BUCKS NOW AND YOU GO IN, PRESENT YOUR CERTIFICATE, AND

10    YOU CAN BUY ALL THE AMMO YOU WANT.  I DON'T KNOW.  BASED ON THE

11    CAVEAT AT THE BOTTOM OF FOOTNOTE NINE, ONE COULD I THINK

12    REASONABLY ARGUE THAT THAT IS NOT UNREASONABLE.  BUT THEN ALONG

13    COMES THE LEGISLATURE AND SAYS, TOO-BAD-SO-SAD, WE DON'T LIKE

14    THAT AND WE WANT SOMETHING MORE.  WHICH, IN MY OPINION, AS I

15:06:42  15    STATED IN MY PRIOR ORDER, IS PRETTY BURDENSOME, ONEROUS AND

16    EXPENSIVE, RIGHT?  SO IF I WERE TO STICK TO MY ORIGINAL

17    FINDINGS, ASSUMING AFTER I'VE HEARD ALL THE OTHER COMMENTS AND

18    READ ALL THE OTHER DECLARATIONS THAT I EXPECT, IF I WERE TO SAY

19    THAT THE LEGISLATURE'S AMENDMENTS WERE UNCONSTITUTIONAL, WOULD

20    THE ORIGINAL TERMS OF THE PROPOSITION THEN KICK IN, BECOME

21    EFFECTIVE?  THAT'S WHAT I WAS TRYING --

22         MR. BRADY:  I UNDERSTOOD THAT TO BE YOUR POINT, YOUR

23    HONOR.  MY POINT WAS IN EXPLAINING WHAT THE LEGISLATURE DID IN

24    BEING LEGITIMATE IS THAT BECAUSE IT WAS LEGITIMATE THEY DIDN'T

25    JUST ADD A NEW SECTION TO PROP 63, THEY REPEALED.  THEY HAD THE

15:07:38  1   AUTHORITY TO REPEAL THE PREVIOUS SECTION AND REPLACE IT WITH

2   THIS, AND THAT'S WHY I WAS SAYING IT WOULDN'T REVERT BACK.

3          THE COURT:  YOU'RE RIGHT.  THAT'S THE APPROPRIATE

4   WORD.  I THINK I SAID EXTINGUISH, BUT REPEAL IS THE APPROPRIATE

5   WORD.  THAT'S RIGHT.  BY AMENDING, THEY REPEALED THE PREVIOUS.

6   THAT PRETTY MUCH ANSWERS IT.  OKAY.  THANK YOU, MR. BRADY.  I

7   APPRECIATE THAT.

8          OKAY.  MS. LOPEZ, ANYTHING ELSE?

9          MS. LOPEZ:  YES, I JUST HAD ONE POINT TO MAKE IN

10   RESPONSE TO MR. BRADY'S POINT ABOUT OUT-OF-STATE PURCHASES.  I

11   DON'T KNOW THAT I'VE SEEN IN ANY OF THE, AT LEAST IN THE

12   INDIVIDUAL DECLARATIONS, A COMPLAINT THAT SOMEBODY WANTED TO GO

13   OUT OF STATE TO PURCHASE THEIR AMMUNITION.  CRPA'S

14   ORGANIZATIONAL STANDING IS ANOTHER QUESTION, AND THERE ARE

15:08:29  15   PARTICULAR REQUIREMENTS FOR ORGANIZATIONAL STANDING THAT DO

16   REQUIRE THAT IT NOT BE NECESSARY FOR INDIVIDUALS TO BE INCLUDED

17   IN THE SUIT.

18          AND WHAT I DO THINK FOOTNOTE NINE MAKES CLEAR IN THAT

19   REGARD IS THAT THERE MAY BE VERY PARTICULAR CHALLENGES THAT CAN

20   BE RAISED TO ANY GIVEN LICENSING SCHEME, AS YOUR HONOR HAS

21   IDENTIFIED, BUT THOSE ARE VERY FACT SPECIFIC.  AND SO ONE THAT

22   DOES SUPPORT THE NEED FOR DISCOVERY IN THESE CASES --

23          THE COURT:  WHY WOULD THAT BE FACT SPECIFIC?  I MEAN,

24   LOOK, IT'S A LAW THAT APPLIES TO ANY RESIDENT OF THE STATE OF

25   CALIFORNIA WHO WISHES TO BUY AMMUNITION OUTSIDE OF THE STATE OF

15:09:27  1    CALIFORNIA.  I THINK I MENTIONED THIS.  IF I'M NOT MISTAKEN, I

       2    THINK I MENTIONED IT -- MR. ECHEVERRIA PROBABLY REMEMBERS THIS.

       3    I KIND OF SORT OF WAS SURPRISED -- I USED TO BE A HUNTER.  I

       4    USED TO HUNT.  SO I USED TO GO ACROSS STATE LINES TO ARIZONA TO

       5    GO DOVE HUNTING.  SO VERY OFTEN -- YOU KNOW, I'M NOT ONE WHO

       6    SOMETIMES DOESN'T RUN OUT OF AMMUNITION.  SO -- YOU LAUGH BUT

       7    IF YOU WANT TO HIT THOSE LITTLE BITTY BIRDS -- SO FROM TIME TO

       8    TIME I WOULD GO TO THE SPRAGUE'S, FOR EXAMPLE, AND BUY A BOX OF

       9    AMMUNITION BUT I WOULDN'T USE ALL THE AMMUNITION.  I'D STILL

      10    HAVE MAYBE -- I MIGHT ONLY -- I MIGHT BE CLOSE TO MY LIMIT.  I

      11    MIGHT ONLY NEED THREE MORE SHELLS.  THAT MEANS I HAVE 22 SHELLS

      12    IN THE BOX, AND NOW I'M GOING TO COME BACK TO THE STATE OF

      13    CALIFORNIA.

      14          UNTIL THIS LAW WAS PASSED, THAT WAS PERFECTLY LEGAL.

15:10:40 15    BUT NOW, ANY CITIZEN THAT GOES ACROSS STATE LINES TO DO, FOR

      16    EXAMPLE, WHAT I JUST SAID TO YOU, IF THEY CAME BACK AND BROUGHT

      17    THAT AMMUNITION ACROSS THE BORDER, THEY WOULD BE VIOLATING THIS

      18    LAW.  SO WHY IS THIS FACT SPECIFIC?  DO WE HAVE TO DRAG IN HERE

      19    A HUNDRED DIFFERENT HUNTERS TO SAY, YES, I WENT TO ARIZONA TO

      20    GO HUNTING AND I WANTED TO BRING BACK THE AMMUNITION I BOUGHT

      21    BUT I COULDN'T BECAUSE IT WOULD BE A VIOLATION OF THE LAW?

      22    THAT DOESN'T MAKE A LOT OF SENSE TO ME.

      23          MS. LOPEZ:  NO, YOUR HONOR, BUT WE DO NEED TO HAVE

      24    EVIDENCE IN THE RECORD THAT THAT'S ACTUALLY A PROBLEM AND NOT

      25    JUST A HYPOTHETICAL SCENARIO.  THERE'S NO PLAINTIFF THAT TALKS

```
15:11:19   1   ABOUT THAT IN THE LEAST.  AND STANDING DOCTRINE EXISTS FOR A
           2   REASON, SO THAT COURTS ARE NOT ADDRESSING HYPOTHETICAL
           3   SCENARIOS THAT DON'T EXIST IN REAL LIFE AND THAT COURTS ARE
           4   ADDRESSING -- THAT THEIR ORDERS CAN ACTUALLY REDRESS THE
           5   PROBLEM, AND I DON'T THINK ON THE RECORD WE HAVE HERE EITHER OF
           6   THOSE THINGS ARE CLEAR TODAY AFTER THESE LAWS HAVE BEEN IN
           7   EFFECT FOR FOUR YEARS.
           8           THE COURT:  SO FAR I THINK YOU'VE DONE A WONDERFUL
           9   ARGUMENT ON BEHALF OF THE STATE, AND I DON'T NEED TO FLATTER
          10   PEOPLE, BUT I'VE BEEN IMPRESSED.  BUT NOW YOU'RE ACTUALLY
          11   BASICALLY TELLING ME THIS:  YOU'RE TELLING ME THAT A LAW THAT
          12   EVERYONE UNDERSTANDS THAT SAYS YOU CAN'T BRING AMMUNITION FROM
          13   OUTSIDE OF THE STATE, THAT SOMEHOW OR ANOTHER THAT WE CAN'T
          14   AGREE THAT, IN FACT, THERE ARE GOING TO BE PEOPLE WHO WOULD
15:12:11  15   WANT TO BUY AMMUNITION OUT OF THE STATE, BRING IT INTO THE
          16   STATE, AND THAT THE ONLY WAY WE'D EVER BE ABLE TO RESOLVE THAT
          17   ISSUE IS IF WE DRUG SOMEONE INTO THE COURTROOM TO SAY "OH,
          18   YEAH, I TRIED TO BRING AMMUNITION FROM CALIFORNIA, NEVADA OR
          19   WHATEVER BUT I WOULDN'T, I COULDN'T DO IT BECAUSE IT'S AGAINST
          20   THE LAW."  WHY DO WE WANT TO GO THERE?
          21           MS. LOPEZ:  RESPECTFULLY, YOUR HONOR, THAT'S WHAT
          22   STANDING DOCTRINE TURNS ON.  YOU NEED SO HAVE SOMEONE THAT HAS
          23   INJURY.  IT MAY NOT BE THEY TRIED TO DO IT, BUT THEY AT LEAST
          24   WANT TO DO IT, AND WE DON'T HAVE THAT RECORD HERE.  THE OTHER
          25   FACT SPECIFIC --
```

15:12:49   1          THE COURT:  ALL RIGHT.  THEN LET ME STOP YOU RIGHT

2     THERE.  MR. BRADY, MR. MOROS, YOU HAVE 30 DAYS TO FILE A

3     DECLARATION FROM ONE OF YOUR PLAINTIFFS OR ONE OF YOUR MEMBERS

4     STATING WHETHER OR NOT THEY WOULD WANT TO BRING AMMUNITION FROM

5     OUTSIDE THE STATE -- I DON'T KNOW WHETHER OR NOT YOU'VE ALREADY

6     DONE IT --

7          MR. BRADY:  I APOLOGIZE FOR NOT KNOWING WHETHER

8     THAT'S IN THE RECORD.  I BELIEVE IT IS BECAUSE WE HAVE THE

9     FEDERAL PREEMPTION CHALLENGE AS WELL, YOUR HONOR, BUT WE'LL

10    SUBMIT THAT DECLARATION.

11         THE COURT:  I'LL TELL YOU WHAT YOU CAN DO.  YOU CAN

12    LOOK AT THE RECORD AND REFRESH MY RECOLLECTION.  IF IT'S

13    ALREADY THERE, JUST GIVE ME A ONE-PAGE BRIEF AND SAY, JUDGE,

14    YOU FORGOT, IT'S ALREADY HERE; IN WHICH CASE, I'LL LOOK AT IT.

15:13:35  15    IF NOT, FILE A DECLARATION.  IF YOU FILE A DECLARATION, I'LL

16    LET THEM IF THEY WANT TO SPEND STATE MONEY DEPOSING YOUR

17    DECLARANT, WE'LL DO THAT AS WELL.  OKAY?

18         MS. LOPEZ:  THAT IS HELPFUL, YOUR HONOR, BECAUSE I DO

19    THINK THE OTHER ISSUE IT RAISES IS HONING IN ON WHICH ASPECTS

20    OF THE LAW ARE PARTICULARLY BEING CHALLENGED.  I MAY ALSO NOT

21    HAVE A PARTICULAR RECOLLECTION OF WHAT'S IN THE DECLARATIONS,

22    BUT IF THE ISSUE THAT'S BEING IDENTIFIED IS JUST THIS PURCHASE

23    OF AMMUNITION OUT OF STATE, THAT'S SOMETHING DIFFERENT THAN

24    WHAT FOOTNOTE NINE IS TALKING ABOUT.  WHAT FOOTNOTE NINE TALKS

25    ABOUT --

15:14:10  1         THE COURT: RIGHT. I GOT YOU. IT'S A BACKGROUND

 2  CHECK.

 3         MS. LOPEZ: RIGHT, AND FACT SPECIFIC THINGS LIKE WAIT

 4  TIMES, THINGS THAT ARE APPLICATION BASED THAT DON'T APPEAR ON

 5  THE FACE OF THE LAW.

 6         THE COURT: OKAY. BUT I THOUGHT WE HAD ALREADY

 7  TALKED ABOUT 303.12 A LONG, LONG, LONG, LONG TIME AGO. AND IN

 8  FACT, THAT'S THE CASE, WHAT I WAS SAYING WAS IF -- SO MY

 9  RECOLLECTION IS THAT THERE WAS SOMEONE WHO SAID THAT THEY TRIED

 10  TO DO THE STANDARD BACKGROUND CHECK BUT THEY COULDN'T, RIGHT?

 11  BUT IF WE WERE TO SAY, OKAY, BUT FOR WHATEVER REASON THEY WERE

 12  ABLE TO FINALLY RESOLVE THAT ISSUE, IT DOES NOT CURE THE FACT

 13  THAT WHEN THEY TRIED TO EXERCISE THEIR CONSTITUTIONAL RIGHT BY

 14  BUYING AMMUNITION THEY WERE PREVENTED FROM DOING SO BY THIS

15:15:28  15  LAW; RIGHT? THE FACT THEY MAY HAVE EVENTUALLY BEEN ABLE TO

 16  ACQUIRE THE AMMUNITION DOESN'T CHANGE ANYTHING, DOES IT?

 17         MS. LOPEZ: WHAT IT IMPACTS HERE, YOUR HONOR, IS THE

 18  RELIEF THAT'S BEING REQUESTED. SO THE RELIEF THAT'S BEING

 19  REQUESTED IS ALL PROSPECTIVE, INJUNCTIVE, DECLARATORY

 20  RELIEF --

 21         THE COURT: SURE.

 22         MS. LOPEZ: -- AND I AGREE WITH YOUR HONOR THAT

 23  WHATEVER IN THE PAST HAPPENED, BUT WHETHER OR NOT ANYTHING THE

 24  COURT DOES TODAY CAN REDRESS THAT PROBLEM IS A SEPARATE

 25  MATTER.

15:16:01  1    THE COURT:  REMEMBER, PART OF THIS IS AN INJUNCTION,

2 RIGHT?  SO THE QUESTION IS -- I CAN'T AWARD DAMAGES, BUT WHAT I

3 CAN DO IS IF I DECIDE THAT, IN FACT, IT IS UNCONSTITUTIONAL,

4 THIS BACKGROUND CHECK, THAT SOMEBODY TRIED TO BUY AMMUNITION,

5 THEY WERE PREVENTED FROM ACQUIRING AMMUNITION AT LEAST FOR A

6 PERIOD OF TIME, IF I FIND THAT TO BE TRUE, IN ORDER TO AVOID

7 THIS HAPPENING TO THAT PERSON AGAIN OR TO OTHERS, I THINK THAT

8 MY INJUNCTIVE RELIEF WOULD SAY, "STATE OF CALIFORNIA, YOU CAN'T

9 DO THIS ANYMORE," RIGHT?

10    MS. LOPEZ:  WELL, THAT BOILS DOWN TO WHETHER OR NOT

11 THIS IS A FACIAL OR AN AS-APPLIED CHALLENGE.  RESPECTFULLY,

12 YOUR HONOR, YOU COULD SAY, "STATE OF CALIFORNIA, YOU CANNOT

13 APPLY THIS LAW TO THIS PERSON OR IN THAT WAY."  THOSE ARE

14 AS-APPLIED CONSIDERATIONS THAT ARE DIFFERENT THAN SAYING, "THIS

15:16:57  15 LAW IS UNCONSTITUTIONAL AS A WHOLE."  SO I DO THINK IT IMPACTS

16 THE RELIEF.

17    I DID HAVE JUST ONE CLARIFICATION ON 303.12 AND YOUR

18 HONOR'S HYPOTHETICAL ABOUT HUNTING.  IT WOULD NOT BE THE CASE

19 FROM MY UNDERSTANDING THAT YOU COULD NOT BRING YOUR AMMUNITION

20 BACK; YOU'D JUST HAVE TO TAKE IT TO A LICENSED VENDOR.

21    THE COURT:  OKAY.  OKAY.  AS A FORMER HUNTER, AS A

22 FORMER HUNTER, EVERY YEAR HUNTERS GO TO ARIZONA TO SHOOT THOSE

23 LITTLE BITTY BIRDS AND THEY DO THAT MANY, MANY TIMES AND VERY

24 OFTEN THEY GO TO BIG FIVE OR THEY GO TO SPRAGUE'S AND THEY BUY

25 AMMUNITION BECAUSE MAYBE THEY'RE NOT THE GREATEST SHOT OR BIRDS

15:17:45  1  ARE FLYING TOO FAST OR MAYBE THEY HAD TOO MANY BEERS THE NIGHT

       2  BEFORE; FOR WHATEVER REASON, THEY NEED TO GO BUY MORE

       3  AMMUNITION.  IF YOU'RE TELLING ME THIS LAW SAYS, OH, YEAH, YOU

       4  CAN DO THAT, BUT HEY, WHEN YOU COME BACK ACROSS THE BORDER YOU

       5  GOT TO GO FIND AN FFL WHO WILL ALLOW YOU TO THEN KEEP THAT

       6  AMMUNITION --

       7            MR. MOROS:  RESPECTFULLY, YOUR HONOR, YOU'D HAVE TO

       8  SHIP IT TO THE FFL BEFORE YOU CROSSED THE STATE BORDER.  SO

       9  YOU'VE ALREADY COMMITTED A CRIME.

      10            THE COURT:  SORRY.

      11            MS. LOPEZ:  I JUST WANT TO POINT OUT, YOUR HONOR,

      12  THIS DOES NOT DESCRIBE OUT-OF-STATE PURCHASES, AND THAT IS

      13  IMPORTANT.

      14            THE COURT:  YOU CAN BUY OUT OF STATE.  YOU JUST HAVE

15:18:27 15  TO KEEP THE AMMUNITION OUT OF STATE UNLESS YOU WANT TO DO WHAT

      16  MR. MOROS JUST SUGGESTED.

      17            MS. LOPEZ:  HAVE A LICENSED AMMUNITION VENDOR PROCESS

      18  IT FOR YOU, THAT'S CORRECT.

      19            THE COURT:  IN STATE.

      20            MS. LOPEZ:  CORRECT.

      21            THE COURT:  NOT OUT OF STATE.  SO YOU COULDN'T GO TO

      22  SPRAGUE'S IN ARIZONA AND SAY, "I'M GOING TO TAKE THIS OVER TO

      23  CALIFORNIA, CAN YOU SIGN OFF ON IT?"  THEY WOULDN'T BE ABLE TO

      24  DO THAT, RIGHT, BECAUSE IT HAS TO BE IN STATE.

      25            MS. LOPEZ:  THAT'S RIGHT, YOUR HONOR; NOR COULD A

15:18:54   1   CALIFORNIA VENDOR SHIP ANY AMMUNITION DIRECTLY EITHER.

2            THE COURT:  GOT YOU.  OKAY.  SO WE HAVE OUR MARCHING

3   ORDERS I THINK, RIGHT?  ANYBODY HAVE ANY QUESTIONS ABOUT IT?  I

4   HAVE A COURT REPORTER THAT I THINK IS STILL AWAKE, AND SHE'LL

5   BE MORE THAN HAPPY TO PROVIDE YOU WITH A TRANSCRIPT OF WHAT'S

6   BEEN SAID.  STICK TO THE TIME LIMITS I'VE GIVEN YOU.

7            FOLKS, MY CHAMBERS IS ALWAYS OPEN TO QUESTIONS IF YOU

8   THINK THAT THERE'S SOMETHING THAT WE OUGHT TO ADDRESS.  WE MAY

9   BE ABLE TO DO IT TELEPHONICALLY OR WHATEVER.  I'M NOT INVITING

10   ANYTHING.  I'M JUST SIMPLY TELLING YOU BECAUSE OF THE FACT THAT

11   THIS IS AN IMPORTANT CASE FOR BOTH THE STATE AND THE PEOPLE.

12   IF ANYTHING COMES UP, FOR EXAMPLE, YOU'RE TRYING TO TAKE A

13   DEPOSITION OF SOMEONE AND YOU'RE HAVING ISSUES WITH SCHEDULING

14   OR WHATEVER, LET ME KNOW AND I'LL TRY TO RESOLVE IT.  OKAY.

15:19:52  15            MR. BRADY:  WELL, YOUR HONOR, SINCE YOU MENTION IT, I

16   HAVE AN ASK FOR YOU, IF I MAY.

17            THE COURT:  WHAT?

18            MR. BRADY:  WELL, IT IS PLAINTIFF'S POSITION THAT

19   THIS IS A FACIAL MATTER, AS YOUR HONOR INDICATED.  IT'S NOT

20   FACT SPECIFIC.  THE LAWS ON THEIR FACE SAY YOU CANNOT DO THESE

21   THINGS.  BUT IF THE STATE IS GOING TO FOCUS ON FOOTNOTE NINE AS

22   REQUIRING US TO SHOW THESE SPECIFIC SHOWINGS, I'M AFRAID

23   THAT -- WE BELIEVE WE'VE ALREADY SHOWN IT.  THIS ISN'T A

24   HYPOTHETICAL INJURY.  THE STATE KNOWS THAT 15 PERCENT OF PEOPLE

25   WERE BEING REJECTED OR DENIED --

15:20:33  1          THE COURT:  I THOUGHT IT WAS 16.

         2          MR. BRADY:  WELL, THAT IS ABOUT TO BE MY ASK BECAUSE

         3  THE STATE HAS INDICATED THAT THERE'S A POTENTIAL MOOTNESS ISSUE

         4  AND A STALENESS, IF YOU WILL, OF OUR EVIDENCE, AND SO

         5  PLAINTIFFS MIGHT NEED AN UPDATE ON THE SORTS OF DECLARATIONS

         6  THAT YOUR HONOR WAS ORDERING FROM THE STATE ABOUT THE RATES OF

         7  REJECTION, OF DENIALS, OF HOW MANY PEOPLE HAVE SINCE COME BACK

         8  AND BEEN ABLE TO OBTAIN THE AMMUNITION BECAUSE IT WAS YEARS

         9  AGO, LIKE YOUR HONOR SAID, 15 OR 16 PERCENT OF PEOPLE, AND THEN

        10  MORE THAN HALF OF THE PEOPLE WHO WERE WRONGLY REJECTED OR

        11  REJECTED, DENIED OVER TRIVIAL MATTERS SUCH AS NOT HAVING THE

        12  RIGHT ADDRESS ON THEIR I.D. OR SOMETHING, NEVER WENT BACK TO

        13  OBTAIN AMMUNITION THROUGH THE SYSTEM.

        14          AND THESE ARE -- WHEN WE TALK ABOUT STANDING, I WANT

15:21:38 15  TO MAKE IT CLEAR, AS MS. LOPEZ HERSELF INDICATED, WE'RE TRYING

        16  TO AVOID HYPOTHETICAL INJURY.  THERE'S NO HYPOTHETICAL INJURY

        17  HERE.  THE STATE KNOWS PEOPLE ARE BEING INJURED.  THEY'RE JUST

        18  SIMPLY SAYING BECAUSE YOU PLAINTIFFS AREN'T THE SPECIFIC ONES

        19  BEING INJURED IN THIS PARTICULAR WAY, YOU CAN'T RAISE THOSE

        20  COMPLAINTS.  BUT THAT'S NOT WHAT THE STANDING DOCTRINE SAYS.

        21  AS WE'VE INDICATED, THEY CERTAINLY HAVE STANDING TO BRING THE

        22  FACIAL CHALLENGE, AND BY VIRTUE OF THAT, THEY HAVE STANDING TO

        23  BRING, TO POINT OUT HOW OTHERS ARE INJURED AS WELL.

        24          BUT IN ANY EVENT, IF THAT'S GOING TO BE THE STATE'S

        25  ARGUMENT, THAT WE HAVE TO SHOW ALL THESE PARTICULARS, I DON'T

| | |
|---|---|
| 15:22:16 | 1 |

WANT TO GET INTO A POSITION WHERE THE STATE TELLS US WE'RE

2  RELYING ON STALE EVIDENCE OF HOW BAD THIS SYSTEM IS.

3          THE COURT:  SO YOU WANT UPDATED DECLARATIONS?  IS

4  THAT WHAT YOU'RE ASKING FOR?

5          MR. BRADY:  THAT WOULD BE GREAT, YOUR HONOR, YES.

6          THE COURT:  ALL RIGHT.  I THINK THAT'S FAIR.  SO I'LL

7  ORDER THE STATE TO SUBMIT UPDATED DECLARATIONS ON, JUST LIKE

8  YOU DID BEFORE, ON THE NUMBER OF APPLICANTS, THE NUMBER OF

9  PEOPLE THAT HAVE BEEN REJECTED ON BASIC STANDARD, HOW MANY

10  PEOPLE HAVE SIMPLY GIVEN UP.  BY THE WAY, JUST OUT OF

11  CURIOSITY, DO YOU HAPPEN TO KNOW HOW MANY OF THOSE PEOPLE -- I

12  BELIEVE THERE WAS 750, IF I'M NOT MISTAKEN, 750 PEOPLE WHO WERE

13  FOUND TO BE PROHIBITED PERSONS WHO TRIED TO BUY AMMUNITION

14  DURING THE RELEVANT PERIOD WE'RE TALKING ABOUT.  DO YOU HAPPEN

15:23:13  15  TO KNOW HOW MANY OF THOSE PEOPLE WERE PROSECUTED AND HOW MANY

16  OF THE GUNS THAT THOSE PEOPLE OWNED WERE ACTUALLY SEIZED AND

17  TAKEN AWAY FROM THEM?

18          MS. LOPEZ:  YOUR HONOR, PART OF THE ADDITIONAL

19  EVIDENCE THAT WE DID INTEND TO SUBMIT TODAY, AND I THINK WE

20  PREVIEWED THAT IN OUR FILING AS WELL, ARE CALLED PROHIBITED

21  PERSONS REPORTS THAT ARE PUBLIC DOCUMENTS ISSUED BY THE BUREAU

22  OF FIREARMS EVERY YEAR, AND THEY DO ADDRESS -- I DON'T KNOW IF

23  IT'S THOSE SPECIFIC 750 INDIVIDUALS, BUT THEY DO TALK ABOUT THE

24  EFFORTS THAT ARE MADE FROM THESE AMMUNITION BACKGROUND

25  CHECKS.

15:23:49   1            THE COURT:  I'VE READ THOSE REPORTS.  I THINK THEY'RE

        2    ONLINE.

        3            MS. LOPEZ:  THEY ARE ONLINE, YOUR HONOR.

        4            THE COURT:  I'VE SEEN THEM.  BUT I'M WONDERING ABOUT

        5    THE SPECIFIC 750 PEOPLE.

        6            MS. LOPEZ:  I DON'T HAVE THAT INFORMATION TODAY.  IT

        7    IS SOMETHING I CAN ATTEMPT TO LOOK INTO.

        8            THE COURT:  CAN YOU PROVIDE THAT INFORMATION TO ME

        9    WITHIN THE NEXT 30 DAYS?

       10            MS. LOPEZ:  TO THE EXTENT IT'S AVAILABLE, I WILL

       11    CERTAINLY TRY.

       12            THE COURT:  IT'S GOT TO BE AVAILABLE.  YOU KNOW WHO

       13    THE PROHIBITED PERSONS ARE, AND THE STATE KNOWS WHAT IT DID

       14    AFTER THEY FOUND OUT THEY WERE PROHIBITED PEOPLE, RIGHT?

15:24:21  15            MS. LOPEZ:  I DON'T KNOW IT WOULD BE A STATE

       16    PROSECUTION.  THAT'S MY CONCERN, YOUR HONOR, IS THAT THERE

       17    WOULD BE SOME --

       18            THE COURT:  OKAY.

       19            MS. LOPEZ:  -- QUESTION AS TO WHO DOES THE

       20    PROSECUTING AND IT WOULDN'T BE MR. BONTA.  I THINK IT WOULD BE

       21    COUNTY SPECIFIC.

       22            THE COURT:  ALL RIGHT.  FAIR ENOUGH.  I DON'T WANT TO

       23    BELABOR THE POINT.  GOOD ENOUGH.  ANYTHING ELSE?  IF NOT,

       24    LISTEN, I THANK YOU VERY MUCH.  IT WAS GOOD TO SEE YOU AGAIN.

       25    WE'LL BE HEARING FROM YOU AND WE'LL SEE.  WE'LL GO FROM THERE.

```
15:24:55   1   OKAY.  THANK YOU.  APPRECIATE YOUR BEING HERE.  THIS HEARING IS

           2   CONCLUDED.

           3              (MATTER CONCLUDED.)

           4                   C-E-R-T-I-F-I-C-A-T-I-O-N

           5
                        I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
           6   AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
               DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
           7   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
               THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
           8   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
               WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
           9   CONFERENCE.

          10              DATED: JULY 25, 2023, AT SAN DIEGO, CALIFORNIA.

          11

          12                        /S/ JULIET Y. EICHENLAUB
                                    JULIET Y. EICHENLAUB, RPR, CSR
          13                        OFFICIAL COURT REPORTER
                                    CERTIFIED SHORTHAND REPORTER NO. 12084

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25
```