**EXHIBIT E**

**WEAPONS FORFEIT/CONFISCATION LAWS**

# EXHIBIT E

## WEAPONS FORFEIT/CONFISCATION LAWS

### CARRY/POSSESSION

#### ALABAMA

Harry Toulmin, A Digest of the Laws of the State of Alabama : Containing the Statutes and Resolutions in Force at the End of the General Assembly in January, 1823. To which is Added an Appendix; Containing the Declaration of Independence; the Constitution of the United States; the Act authorizing the People of Alabama to form a Constitution and State Government; and the Constitution of the State of Alabama Page 627, Image 655 (1823) available at The Making of Modern Law: Primary Sources.  1805
Negroes and Mulattoes, Bond and Free – 1805, Chapter I, An Act respecting Slaves. – Passed March 6, 1805: Sec. 4. And be it further enacted, that no slave shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, except the tools given him to work with, or that he is ordered by his master, mistress, or overseer, to carry the said articles from one place to another, but all and every gun , weapon, or ammunition, found in the possession or custody of any slave, may be seized by any person, and upon due proof made thereof, before any justice of the peace of the county or corporation where such seizure shall be made, shall, by his order, be forfeited to the seizer, for his own use; and moreover, every such offender shall have and receive, by order of such justice, any number of lashes, not exceeding thirty-nine, on his bare back for every such offense : Provided nevertheless, That any justice of the peace may grant, in his proper county, permission in writing to any slave, on application of his master or overseer, to carry and use a gun and ammunition within the limits of his said master's or owner's plantation, for a term not exceeding one year, and revocable at any time within such term, at the discretion of the said justice, and to prevent the inconveniences arising from the meeting of slaves.

#### ARIZONA

Act of Mar. 18, 1889, 1889 Ariz. Sess. Laws 16–17
Sec. 1. If any person within any settlement, town, village or city within the Territory shall carry on or about his person, saddle, or in his saddlebags, any pistol, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any

other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition thereto, shall forfeit to the County in which he is convicted, the weapon or weapons so carried.

Sec. 2. The preceding article shall not apply to a person in actual service as a militiaman, nor as a peace officer or policeman, or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack upon legal process.

Sec. 3. If any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this Territory are collected to vote at any election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of a knife manufactured and sol for the purposes of offense or defense, he shall be punished by a fine not less than fifty nor more than five hundred dollars, and <u>shall forfeit to the County the weapon or weapons</u> so found on his person.

Sec. 4. The preceding article shall not apply to peace officers, or other persons authorized or permitted by law to carry arms at the places therein designated. . . .

Sec. 6. Persons traveling may be permitted to carry arms within settlements or towns of the Territory for one-half hour after arriving in such settlements or town, and while going out of such towns or settlements; and Sheriffs and Constables of the various Counties of this Territory and their lawfully appointed deputies may carry weapons in the legal discharge of the duties of their respective offices.

Laws regulating weapons in certain places, Title 11, §§ 381, 387, 388, & 391 in The Revised Statutes of Arizona Territory (1901).

"Sec. 381. Any person who shall, purposely or carelessly, discharge any gun, pistol or other firearm in any saloon, dance house, store or other public house or business house in this territory, thereby endangering the life or person of another, or thereby disturbing any of the inmates thereof, or who shall thereby injure, destroy or damage any property therein, or who shall discharge the same in any city, village or town of this territory, except in necessary self-defense, shall be

fined in any sum not exceeding three hundred dollars, or be imprisoned in the county jail for a period not exceeding six months, or shall be punished by both such fine and imprisonment."

"Sec. 385. If any person within any settlement, town, village or city within this territory shall carry on or about his person, saddle, or in saddlebags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, bowie-knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and, in addition thereto, <u>shall forfeit to the county</u> in which he is convicted the weapon or weapons so carried.

"Sec. 387. If any person shall go into church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering, or to any election precinct, on the day or days of any election, where any portion of the people of this territory are collected to vote at any election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, bowie knife or any other kind of a knife manufactured and sold for the purposes of offense or defense, he shall be punished by a fine not less than fifty nor more than five hundred dollars, and <u>shall forfeit to the county the weapon</u> or weapons so found on his person.

Sec. 388. The preceding section shall not apply to peace officers or other persons authorized or permitted by law to carry arms at the places therein designated."

"Sec. 391. It shall be the duty of the keeper of each and every hotel, boarding house and drinking saloon, to keep posted up in a conspicuous place in his bar room, or reception room, if there be no bar in the house, a plain notice to travelers to divest themselves of their weapons, in accordance with section 382 of this act,1 and the sheriffs of the various counties shall notify the keepers of hotels, boarding houses and drinking saloons, in their respective counties, of their duties under this law, and if after such notification any keeper of a hotel, boarding house or drinking saloon shall fail to keep notices posted, as required by this act, he shall, on conviction thereof before a justice of the peace, be fined in the sum of five dollars, to go to the county treasury."

1901, AZ, Title 11, §§ 381, 387, 388, & 391 of the AZ Penal Code
The Revised Statutes of Arizona Territory: Containing Also the Laws Passed by the Twenty-First Legislative Assembly, the Constitution of the United States, the Organic Law of Arizona and the Amendments of Congress Relating Thereto

(Columbia, MO: Press of E. W. Stephens, 1901), 1249-1254. Penal Code, Part One of Crimes and Punishments: Title 11—Of Crimes Against the Public Peace, §§ 381, 387, 388, & 391.

1. Sec. 382 is posted elsewhere in the repository, but for ease of reference, it reads as follows: "It shall be unlawful for any person (except a peace officer in actual service and discharge of his duty), to have or carry concealed on or about his person, any pistol or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, or other knuckles of metal, bowie-knife or any kind of knife or weapon, except a pocketknife, not manufactured and used for the purpose of offense and defense."

## ARKANSAS

Slaves, in Laws of the Arkansas Territory 521 (J. Steele & J. M'Campbell, Eds., 1835). Race and Slavery Based | Arkansas | 1835

§ 3. No slave or mulatto whatsoever, shall keep or carry a gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof made before any justice of the peace of the district [county] where such seizure shall be, shall by his order be forfeited to the seizor, for his own use, and moreover, every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her bare back well laid on for every such offense.

Act of Mar. 26, 1931, No. 225, §§ 1-6, Ark. Acts 705-06 (to prohibit the possession, transportation or sale of machine guns, and inflicting penalty for violation thereof).

"SECTION 1. It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or for any railroad company, or express company, or other common carrier, or any officer, agent; or employee of any of them, or any other person acting in their behalf knowingly to ship or to transport from one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm of the type com-monly known as a machine gun.

SECTION 2. It shall be unlawful for any person to store, keep, possess, or have in possession, or permit another to store, keep, possess, or have in possession, except as hereinafter provided, any firearm of the type commonly known as a machine-gun.

SECTION 3. It shall be unlawful for any person to sell, or give away, or be interested directly or indirectly, in the sale or giving away, of any firearm of the type commonly known as a machine-gun.

SECTION 4. Provided, this Act shall not apply to the military authorities of the State or nation, and provided further, that any peace officer of the State, counties or political subdivision thereof, may possess ma-chine-guns when required in the performance of their duties. After April 1, 1931, every person permitted by this Act to possess a machine-gun, shall file in the office of the Secretary of State, on a blank to be supplied by the Secretary of State, an application to be properly sworn to, which shall include his name and address, and the serial number of the machine-gun which he desires to possess. Thereupon, the Secretary of State shall file such application, in his office, registering such officer in a book or index to be kept for that purpose, and assign to him a number, and issue to him a card, which he shall keep with him while he has such machine-gun in his possession. Such registration shall be made on the date application is received and filed with the Secretary of State, and shall expire on December 31, of the year in which said license is issued.

SECTION 5. Any person violating any part of this law shall upon conviction be fined in any sum not more than $1,000.00, and not less than $100.00, and the machine-gun or guns found in his possession shall be confiscated and the title thereof shall pass to the political subdivision of the State making the capture.

SECTION 6. All laws and parts of laws in conflict herewith are hereby repealed, and whereas criminals are using machine-guns for illegal purposes, this Act being necessary for the immediate preservation of the public peace, health, and safety, an emergency is here-by declared, and it shall be in force and effect from and after its passage."

Uniform Machine Gun Act, Act No. 80, §§ 1-14, 1935 Ark. Acts 171-75.
"ACT 80.
'AN ACT Relating to Machine Guns, and to Make Uniform the Law With Reference Thereto.'
Be It Enacted by the General Assembly of the State of Arkansas;
SECTION 1. 'Machine Gun' applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. 'Crime of Violence' applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, and larceny. 'Person' applies to and includes firm, partnership, association or corporation.

SECTION 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than twenty years).

SECTION 3. Possession or use of a machine gun for offensive or agressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than ten years).

SECTION 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose;

(a) when the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) when the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) when empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

SECTION 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

SECTION 6. Nothing contained in this act shall prohibit or interfere with the manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose;

the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake;

the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive.

SECTION 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given, or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every

manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of (not less than …….hundred dollars).[1]

SECTION 8. Every machine gun now in this State adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the (Secretary of state), on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the (secretary of state), and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

SECTION 9. Warrant to search any house or place and <u>seize any machine gun</u> adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record upon application of the (district attorney), shall have jurisdiction and power to order any machine gun, thus or otherwise <u>legally seized,</u> to be confiscated and either destroyed or delivered to a peace officer of the State or a political subdivision thereof.

SECTION 10. If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

SECTION 11. This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

SECTION 12. This act may be cited as the Uniform Machine Gun Act.

SECTION 13. All acts or parts of acts which are inconsistent with the provisions of this act are hereby repealed.

SECTION 14. WHEREAS, under the present law of the state of Arkansas the officers of the state are powerless to effectively combat crime, therefore, it being necessary for the preservation of the public peace, health and safety, an emergency is hereby declared, and this act shall take effect and be in force from and after its passage and approval."

Acts Concurrent Resolutions, Memorials and Proposed Constitutional Amendments of the Fiftieth General Assembly of the State of Arkansas Passed at the Regular Session Held at the Capitol in the City of Little Rock, Arkansas,

Convening on the 14th Day of January, 1935, and Adjourning on the 14th Day of March, 1935  Little Rock: AR: Democrat Printing & Litho. Co., 1935), 171-175. Act 80—An Act Relating to Machine Guns, and to Make Uniform the Law With Reference Thereto, §§ 1-14. Approved February 26, 1935.

## CALIFORNIA

1917 Cal. Sess. Laws 221-225, An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another, §§ 3-4.

SEC. 3. Every person who carries in any city, city and county, town or municipal corporation of this state any pistol, revolver, or other firearm concealed upon his person, without having a license to carry such firearm as hereinafter provided in section six of this act, shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.

SEC 4. The unlawful possessing or carrying of any of the instruments, weapons, or firearms enumerated in section one to section three inclusive of this act, by any person other than those authorized and empowered to carry or possess the same as hereinafter provided, is a nuisance, and such instruments, weapons or firearms are hereby declared to be nuisances, and when any of said articles shall be taken from the possession of any person the same shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the police force, or police department thereof. The officers to whom the same may be so surrendered, except upon certificate of a judge of a court of record, or of the district attorney of any county that the preservation thereof is necessary or proper to the ends of justice, shall proceed at such time or times as he deemds proper, and at least once in each year to destroy or cause to be destroyed such instruments, weapons, or other firearms in such manner and to such extent that the same shall be and become wholly and entirely ineffective and useless for the purpose for which it was manufactured.

## DISTRICT OF COLUMBIA

An Ordinance Prohibiting the Carrying of Firearms, Ordinances of the Corporation of Georgetown (1859).

"Be it ordained by the Board of Aldermen and Board of Common Council of the Corporation of Georgetown, That from and after the 1st of April, 1859, it shall not be lawful for any person or persons to have about their persons any concealed deadly or dangerous weapons, such as daggers, pistols, bowie-knives, dirk-knives, colt, slung-shots, or brass or other metallic knuckles, within the limits of this Corporation ; and any person or persons who shall be duly convicted of so carrying or having on their persons any such weapons, shall forfeit and pay upon such convictions not less than five dollars nor more than twenty dollars, which fine shall be prosecuted and recovered in the same manner as other fines and forfeitures according to this Corporation are sued for and recovered: Provided, That the police officers and military, when on duty, shall be exempt from such fines and forfeitures. And be it further enacted, That all such weapons named above <u>shall be taken away</u> from the persons on whom they may be found, and deposited with the Mayor."

1859, DC, An Ordinance Prohibiting the Carrying of Firearms, Ordinances of the Corporation of Georgetown

Ordinances of the Corporation of Georgetown, from January, 1859, to January, 1860, with a Table of Contents (Washington, D.C.: Thomas McGill, 1860), 22-23. An Ordinance Prohibiting the Carrying of Firearms, &c. Approved 2 April, 1859.

Washington D.C. 27 Stat. 116 (1892)

CHAP. 159.–An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it shall not be lawful for any person or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

SEC. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such fine and

imprisonment, in the discretion of the court: Provided, That the officers, non-commissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty: Provided, further, that nothing contained in the first or second sections of this act shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapons, or from carrying the same from place of purchase to his dwelling house or place of business or from his dwelling house or place of business to any place where repairing is done, to have the same repaired, and back again: Provided further, That nothing contained in the first or second sections of this act shall be so construed as to apply. to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District of Columbia, and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any one time, upon satisfactory proof to him of the necessity for the granting thereof; and further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition.

SEC. 3. That for the second violation of the provisions of either of the preceding sections the person or persons offending shall be proceeded against by indictment in the supreme court of the District of Columbia, and upon conviction thereof shall be imprisoned in the penitentiary for not more than three years.

SEC. 4. That all such weapons as hereinbefore described which may be <u>taken from any person</u> offending against any of the provisions shall, upon conviction of such person, be disposed of as may be ordered by the judge trying the case, and the record shall show any and all such orders relating thereto as a part of the judgment in the case.

SEC. 5. That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, pay a fine or penalty of not less than twenty dollars nor more than one hundred dollars, or be imprisoned in the jail of the District of Columbia not more than three months. No person shall engage in or conduct  the business of selling, bartering, hiring, lending, or giving any weapon or

weapons of the kind hereinbefore named without having previously obtained from the Commissioners of the District of Columbia a special license authorizing the conduct of such business by such person, and the said Commissioners are hereby authorized to grant such license, without fee therefor, upon the filing with them by the applicant therefor of a bond with sureties, to be by them approved, conditioned in such penal sum as they shall fix to the United States for the compliance by said applicant with all the provisions of this section; and upon any breach or breaches of said condition said bond shall be put in suit by said United States for its benefit, and said Commissioners may revoke said license. Any person engaging in said business without having previously obtained said special license shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, of which one half shall be paid to the informer, if any, whose information shall lead to the conviction of the person paying said fine. All persons whose business it is to sell barter, hire, lend or give any such weapon or weapons shall be and they hereby, are, required to keep a written register of the name and residence of every purchaser, barterer, hirer, borrower, or donee of any such weapon or weapons, which register shall be subject to the inspection of the major and superintendent of Metropolitan Police of the District of Columbia, and further to make a weekly report, under oath to said major and superintendent of all such sales, barterings, hirings, lendings or gifts. And one half of every fine imposed under this section shall be paid to the informer, if any, whose information shall have led to the conviction of the person paying said fine. Any police officer failing to arrest any person guilty in his sight or presence and knowledge, of any violation of any section of this act shall be fined not less than fifty nor more than five hundred dollars.
SEC 6. That all acts or parts of acts inconsistent with the provisions of this act be, and the same hereby are, repealed.

## **FLORIDA**

An Act to prevent Indians from roaming at large through the Territory, in Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840, at 46 (John P. Duval ed., 1839). 1827
Sec. 1. Be it enacted . . . If any male Indian, of the years of discretion, venture to roam or ramble beyond the boundary lines of the reservations which have been assigned to the tribe or nation to which said Indian belongs, it shall and may be lawful for any person or persons to apprehend, seize, and take said Indian, and carry him before some justice of the peace, who is hereby authorized, impowered, and required, to direct . . . not exceeding thirty-nine stripes . . . moreover, to cause the gun of said Indian (if he has one) to <u>be taken from him</u>, and deposited with the

colonel of the county, or captain of the district, in which said Indian may be taken, subject to the order of the super-intendent of Indian affairs. Sec. 2. And be it further enacted, That no general license to roam, or remain out of said limits, for the purpose of hunting, shall be received by said justice as an excuse of any Indian, when found without his assigned limits.

Leslie A. Thompson, A Manual or Digest of the Statute Law of the State of Florida, of a General and Public Character, in Force at the End of the Second Session of the General Assembly of the State, on the Sixth Day of January, 1847 Page 547, Image 582 (1847) available at The Making of Modern Law: Primary Sources.
For the Prevention of Indians Roaming at Large Throughout the State, § 1. From and after the passage of this act, if any male Indian of the years of discretion, venture to roam or ramble beyond the boundary lines of the reservations, which have been assigned to the tribe or nation to which said Indian belongs, it shall and may be lawful for any person or persons to apprehend, seize, and take said Indian, and carry him before some Justice of the Peace, who is hereby authorized, empowered, and required, to direct (if said Indian have not a written permission from the agent to do some specific act) not exceeding thirty-nine stripes, at the discretion of the Justice, to be laid on the bare back of said Indian; moreover, to cause the gun of said Indian (if he has one) to be taken from him, and deposited with the colonel of the county, or captain of the district, in which said Indian may be taken, subject to the order of the superintendent of Indian Affairs.

An Act Prescribing Additional Penalties for the Commission of Offences against the State, and for Other Purposes, Ch. 1460, No. 3, §§ 12-15, 1865 Fla. Laws 23, 25-27.
"Sec 12. Be it further enacted. That it shall not be lawful for any negro, mulatto, or other person of color, to own, use or keep in his possession or under his control, any Bowie-knife, dirk, sword, fire-arms or ammunition of any kind, unless he first obtain a license to do so from the Judge of Probate of the county in which he may be a resident for the time being: and the said Judge of Probate is hereby authorized to issue such license, upon the recommendation of two respectable citizens of the county, certifying to the peaceful and orderly character of the applicant; and any negro, mulatto, or other person of color, so offending, shall be deemed to be guilty of a misdemeanor, and upon conviction, shall forfeit to the use of the informer all such fire-arms and ammunition, and in addition thereto, shall be sentenced to stand in the pillory for one hour, or be whipped, not exceeding thirty-nine stripes, or both, at the discretion of the jury,

Sec. 13. Be it further enacted, That it shall be the duty of the Judge of Probate to keep an accurate register of all licenses so issued as aforesaid, and at each regular

meeting of the Board of County Commissioners, to lay the same before them for their supervision, who shall have power to revoke any licenses which, in their opinion, may have been granted to improper persons.

       Sec. 15. Be it further enacted, That if any person shall form any military organization in this State, not authorized by law, or shall participate or aid or abet in the formation of such organization, he shall be deemed to be guilty of a misdemeanor, and upon conviction shall be fined in a sum not exceeding one thousand dollars, and imprisoned for a term not exceeding six months; or shall be made to stand in the pillory for one hour, and be whipped, not exceeding thirty-nine stripes, at the discretion of the jury: Provided, That if the person so convicted shall, upon the trial, be proved to have accepted an office in such organization, the penalties herein provided may be increased three-fold, at the discretion of the jury." Acts and Resolutions Adopted by the General Assembly of Florida at Its Fourteenth Session, Begun and Held at the Capitol, in the City of Tallahassee, on Monday, December 18, 1865 (Tallahassee, FL: Dyke & Sparhawk, 1866),  25-27. Chapter 1,460 [ No. 3. ]—An Act Prescribing Additional Penalties for the Commission of Offences against the State, and for Other Purposes, §§ 12-15. Passed the House of Representatives January 4, 1866. Passed the Senate January 8, 1866. Approved by the Governor January 15, 1866.

## GEORGIA

A Digest of the Laws of the State of Georgia. From Its First Establishment as a British Province down to the Year 1798, Inclusive, and the Principal Acts of 1799: In Which is Comprehended the Declaration of Independence; the State Constitutions of 1777 and 1789, with the Alterations and Amendments in 1794. Also the Constitution of 1798 Page 153-154, Image 160-161 (1800) available at The Making of Modern Law: Primary Sources. 1768 Laws of Georgia, An Act to amend and Continue "An Act for the Establishing and Regulating Patrols, and for Preventing any Person from Purchasing Provisions or any Other Commodities from, or Selling Such to any Slave, Unless Such Slave Shall Produce a Ticket from His or Her Owner, Manager or Employer . . . Be it enacted, That immediately from and after passing of this act, it shall not be lawful for any slave, unless in the presence of some white person, to carry or make use of fire arms, or any offensive weapon whatsoever, unless such slave shall have a ticket or license in writing from his master, mistress, or overseer, to hunt and kill game, cattle, or mischievous birds or beasts of prey, and that such license be renewed every week, or unless there be some white person of the age of sixteen years or upwards in the company of such slave when he is hunting or shooting, or that such slave be actually carrying his master's arms to or from his master's

plantation by a special ticket for that purpose, or unless such slave be found in the day-time, actually keeping off birds within the plantation to which such slave belongs, loading the same gun at night, within the plantation to which such slave belongs, loading the same gun at night, within the dwelling house of his master, mistress or white overseer: Provided always, That no slave shall have liberty to carry any gun, cutlass, pistol, or other offensive weapon, abroad at any time between Saturday evening after sunset and Monday morning before sun rise, notwithstanding a license or ticket for so doing. II. And be it further enacted, That in case any or either of the patrols, established or to be established within this province, by virtues of the said act, on searching and examining any negro house for offensive weapons, fire arms and ammunition, shall find any such, or in case any person shall find any slave using or carrying fire arms or other offensive weapons, contrary to the intent and meaning of this act, such patrol, or person or persons, may lawfully seize and take away such offensive weapons, fire arms, and ammunition, but before the property thereof shall be vested in the person or persons who shall seize the same, such person or persons shall, within three days next after such seizure, go before a justice of the peace, and shall make oath of the manner of taking thereof, and if such justice of the peace, after such oath made, or upon due examination, shall be satisfied that the said fire arms, offensive weapon, or ammunition, shall have been seized according to the directions, and agreeable to the true intent and meaning of this act, the said justice shall, by certificate under his hand and seal, declare them forfeited, that the property is lawfully vested in the person or persons who seized the same.

## **ILLINOIS**

Revised Ordinances of the City of Danville [Illinois] Page 66, Image 133 (1883) available at The Making of Modern Law: Primary Sources.
Ordinances of the City of Danville. Concealed Weapons. § 22.
Whoever shall carry concealed upon or about his person any pistol, revolver, derringer, bowie-knife, dirk, slung-shot, metallic knuckles, or a razor, as a weapon, or any other deadly weapon of like character, capable or being concealed upon the person, or whoever shall in a threatening or boisterous manner, flourish or display the same, shall be fined not less than one dollar, nor more than one hundred dollars; and in addition to the said penalty shall, upon the order of the magistrate before whom such conviction is had, forfeits the weapon so carried to the city.

Ch. 26—Concealed Weapons, §§ 1-8, in, Revised Ordinances of the Village of Hinsdale, Illinois (1912).

"Unlawful to Carry.] Sec. 1. It shall be unlawful for any person within the limits of the village of Hinsdale to carry or wear under his clothes or concealed about his person any pistol, colt or slung shot, cross knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk, dagger, or other dangerous or deadly weapon.

Confiscation of Weapons.] Sec. 2. Any such weapon or weapons duly adjudged by any police magistrate or justice of the peace to have been worn or carried by any person, in violation of the preceding section, shall be forfeited or confiscated to the village of Hinsdale, and shall be so adjudged, as a part of the judgment for each violation, by the magistrate before whom the trial of any person for a violation of this chapter shall be had.

Arrest for Carrying.] Sec. 3. Any policeman of the village of Hinsdale may, within the limits of said village, without a warrant, arrest any person or persons whom he may find in the act of carrying or wearing concealed about his or their persons any weapon specified in section one of this chapter, until a summons or warrant can be procured on complaint [sic] made, under oath or affirmation, for the trial of such person or persons.

Penalty.] Sec. 4. Any person or persons convicted of violating any of the provisions of this chapter shall be subject to a fine of not less than five dollars nor more than two hundred dollars.

To Whom Not Applicable.] Sec. 5. The prohibitions of this chapter shall not apply to the officers or members of the police force of said village when on duty, nor to any officer of any court whose duty it may be to serve warrants or to make arrests; nor to persons whose business or occupation may seem to require the carrying of weapons for their protection, and who shall have obtained from the president a license so to do, as hereinafter provided.

President to Grant License.] Sec. 6. The president may grant to so many and such persons as he may think proper licenses to carry concealed weapons, and may revoke any and all of such licenses at his pleasure.

Fee for License.] Sec. 7. Applications for such licenses shall be made to the village clerk, and when granted the applicant therefor shall pay to the village collector, for the use of the village, the sum of two dollars.

What License Shall State.] Sec. 8. Every such license shall state the name, age, occupation and residence of the person to whom it is granted."

1912, Hinsdale, IL, Ch. 26—Concealed Weapons, §§ 1-8

Lawrence P. Conover, ed., Revised Ordinances of the Village of Hinsdale, Illinois 1912: Printed and Published by Authority of the President and Board of Trustees of the Village of Hinsdale, Pursuant to Ordinance, Passed and Approved, February 5, 1912, Issued in Book Form, February 15, 1912 (Hinsdale, IL: Merrill Printing Company, 1912), 168-169. Chapter 26—Concealed Weapons, §§ 1-8. Undated.

## INDIANA

1804 Ind. Acts 108, A Law Entitled a Law Respecting Slaves, § 4.
And be it further enacted, That no slave or mulatto whatsoever shall keep or carry any gun, powder, shot, club or other weapon whatsoever, offensive or defensive, but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof thereof made before any justice of the peace of the district where such seizure shall be, shall by his order be forfeited to the seizor, for his use and moreover every such offender shall have and receive by order of such justice any number of loashes not exceeding thirty nine on his or her bare back, well laid for every such offense.

1905 Ind. Acts 687–88, Weapon—Carrying Dangerous § 449.
Every person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword in cane or any other dangerous or deadly weapon concealed, or who shall carry or wear any such weapon openly, with the intent or avowed purpose of injuring his fellowman, shall, on conviction, be fined not exceeding five hundred dollars. Any such weapon which upon arrest upon this charge shall be found upon the person of such arrested person shall be taken by the officer making such arrest, and unless such officer be the sheriff, such weapon shall be deposited with such sheriff, and in every instance such weapon shall be held by the sheriff subject to the final order of the court thereupon. In case the arrested person be found guilty of violating this statute by wearing or carrying such concealed weapon there shall be entered as part of the judgment of conviction of said crime an order to the sheriff directing the destruction of such weapon by the justice, mayor, city judge or judge of the criminal or circuit court before whom or in whose court such cause is pending, and the sheriff shall execute the same in the manner and at the time fixed by such order. Any person three times convicted within any period of two years of committing any of the offenses defined in this section shall upon such third conviction be imprisoned in the state prison not more than one year.

1925 Ind. Acts 495, 495-98
Pistols and Revolvers Defined.
SECTION 1. Be it enacted by the general assembly of the State of Indiana, That the term "pistol or revolver," as used in this act, shall be construed as meaning any firearm with a barrel less than twelve inches in length.
Crime-Committing When Armed With Pistol or Revolver.
SEc. 2. If any person shall, within the State of Indiana, commit or attempt to commit a crime, when armed with a pistol or revolver, and having no permit to

carry the same, he shall, in addition to the punishment provided for the crime, be guilty of a felony and shall be punished by imprisonment for not less than one year and not more than five years.

Subsequent Offenses.

SEc. 3. The judge shall have the power to sentence any person who may be convicted for a second or third, or other subsequent offense under section 2 of this act, to double or triple the penalty imposed thereby.

Felony-Conviction For-Prohibited From Possessing Pistol.

SEC. 4. No person who has been convicted of a felony committed against the person or property of another shall own or have in his possession or under his control, within the State of Indiana, a pistol or revolver. A violation of this section shall constitute a felony and be punishable by imprisonment for not less than one year, and not more than five years.

Pistol or Revolver-Possession Without Permit.

SEc. 5. No person shall carry, within the State of Indiana, a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a permit therefor as hereinafter provided. Violations of this section shall constitute a misdemeanor and be punished by a line of one hundred dollars ($100.00), to which may be added imprisonment for not more than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed by the sheriff on order of the court.

Persons Exempt From Act.

SEc. 6. The provisions of the preceding section shall not apply to marshals, sheriffs, deputy sheriffs, policemen or any other duly appointed peace officers, nor the pistols or revolvers of any bank, trust company, or common carriers, or to the officers or employes of any bank, trust company, or common carriers, while such officers or employes are guarding money or valuables within the line of their duties as such employes, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps or the mail service of the United States, or the national guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or the State of Indiana, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at .or going to or from their customary places of assembly.

## **IOWA**

Ordinances of the Borough of Vincennes, with the Act of Incorporation and Supplement Thereto Prefixed Page 54-55, Image 54-55 (1820) available at The Making of Modern Law: Primary Sources. 1819

[An Ordinance to Prevent Nuisances, Etc.] § 7. Be it further ordained by the authority aforesaid, That any negro or mulatto, shall be punished with thirty-nine stripes on the bare back, if found with deadly weapons, other than the legal implements of his, or her business, when engaged therein; and it is hereby made the duty of the town constable, and permitted to any other citizen, to disarm and imprison such negro or mulatto, as may be found with a belt or butcher-knife, dirk, sword, or pistol, and make complaint to any magistrate within this Borough, to award the aforesaid punishment.

Chas. Ben. Darwin, Ordinances of the City of Burlington, with Head Notes and an Analytic Index Page 72-73, Image 72-73 (1856) available at The Making of Modern Law: Primary Sources. 1847
Burlington City Ordinances, An Ordinance to Regulate the Storage and Sale of Gunpowder in the City of Burlington, § 1. Be it ordained by the city Council of the city of Burlington, That it shall not be lawful for any merchant, trader, or other person, to retail or deliver gun-powder in said city in the night time, under a fine of five dollars. §2. It shall not be lawful for any such person to keep for sale or other purposes in said city, in his place of business, more than twenty-five pounds of gun-powder at any one time, and then only in a safe canister. § 3. It shall not be lawful for any person whatsoever to store away gun-powder for safe keeping, in any quantity whatever, in any ware-house, dwelling house, cellar, or other building or place, within the limits of said city, unless such house or place shall have first been designated by the city Council of said city and by them approbated as a suitable place for that purpose, and then only so long as the same shall from time to time be deemed suitable by the said city Council. § 4. If any person shall violate any of the provisions of the third section of this ordinance he shall forfeit for the use of the corporation all the gun-powder which the person so violating the same may have on hand, and on conviction thereof, shall also pay a fine of one hundred dollars, and the city Marshal shall seize and remove such powder to a secure place and dispose of it by sale, and pay the proceeds, reserving costs and charges, into the city treasury.

## KENTUCKY

1798 Ky. Acts 106. No negro, mulatto, or Indian whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive but all and every gun, weapon and ammunition found in the possession or custody of any negro, mulatto or Indian may be seized by any person and upon due proof thereof made before any justice of the peace of the county where such seizure shall be shall by his order, be forfeited to the seizor for his own use, and moreover every

such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her back, well laid for every such offense.

## LOUISIANA

An Act prescribing the rules and conduct to be observed with respect to Negroes and other Slaves of this territory, in A General Digest of the Acts of the Legislature of Louisiana, Passed from the Year 1804 to 1827, Inclusive, And in Force at this Last Period, With An Appendix and General Index, Black Code (Approved June 7, 1806) (L. Moreau Lislet, Printed by Benjamin Levy, 1828).

"SECTION 19. No slave shall, by day or by night, carry any visible or hidden arms, not even with a permission for so doing, and in case any person or persons shall find any slave or slaves, using or carrying such fire arms, or any offensive weapons of any other kind, contrary to the true meaning of this act, he, she or they, lawfully, may seize and carry away such fire arms, or other offensive weapons; but before the person or persons, who shall so seize such fire arms can possess the same of right, he, she or they shall go, within forty-eight hours after the said seizure, before the next justice of the peace, and shall declare, upon oath, the manner in which he, she or they have seized the said arms; and if the justice of the peace, upon the oath of such person or persons, or upon any other examination or proof, be satisfied that the said fire arms or other offensive weapons have been seized, pursuant to the true intent and meaning of this act, the said justice of the peace shall de- clare, by a certificate under his hand and seal, that the said arms are forfeited, and that they have lawfully become the property of the person or persons who has or have seized the same: Provided,that no certificate of the above de- scription shall be delivered by any justice of the peace, until the owner or owners of the said fire arms or other offensive weapons, which shall have been seized as aforesaid, or the overseer or overseers who shall have the said slave or slaves in charge, upon whom the said fire arms or other offensive weapons shall have been seized, as aforesaid, be duly sum- moned to show cause, (if he, she or they have any,) why the said arms should not be forfeited, or until forty-eight hours shall have elapsed after the citation and oath made before the said justice of the peace: Provided, that the said slave or slaves do not actually carry the arms of his master to………….or from his plantation to………..with a special permission for that purpose."

## MAINE

1909 Me. Laws 141, An Act to prohibit the use of Firearms fitted with any device to deaden the sound of explosion, ch. 129, § 1

It shall be unlawful for any person to sell, offer for sale, use or have in his possession, any gun, pistol or other firearm, fitted or contrived with any device for deadening the sound of explosion. Whoever violates any of the provisions of this act shall <u>forfeit such firearm or firearms</u> and the device or silencer, and shall further be subject to a fine not exceeding one hundred dollars, or to imprisonment not exceeding sixty days, or to both fine and imprisonment. . .

## MARYLAND

1806 Md. Laws 44, An Act To Restrain The Evil Practices Arising From Negroes Keeping Dogs, And To Prohibit Them From Carrying Guns Or Offensive Weapons, ch. 81
…it shall not be lawful for any negro or mulatto within this state to keep any dog, bitch or gun , except he be a free negro or mulatto, and in that case he may be permitted to keep one dog, provided such free negro or mulatto shall obtain a license from a justice of the peace for that purpose, and that the said license shall be in force for one year, and no longer, and if any dog or bitch owned by any negro, not possessed of such license, shall be seen going at large, it shall be lawful for any person to kill the same, and in case of any suit instituted therefor, the person or persons killing the said dog or bitch may plead the general issue, and give this act in evidence. II. …it shall not be lawful for any free negro or mulatto to go at large with any gun, or other offensive weapon; and in case any free negro or mulatto shall be seen going at large carrying a gun, or other offensive weapon, he shall be liable to be carried before any magistrate, in virtue of a warrant to be issued by any justice of the peace, directed to a constable of the county, and on conviction of having violated the provisions of this section of the act, such offender shall thereupon <u>forfeit, to the use of the informant, such gun,</u> or other offensive weapon, which shall thus have been found in his or her possession, and be subject to the payment of the costs which shall have accrued in such prosecution; provided, that nothing in this act shall extend to prevent any free negro or mulatto from carrying a gun, or other offensive weapon, who shall, at the time of his carrying the same, have a certificate from a justice of the peace, that he is an orderly and peacable person, which certificate shall be in force for one year from the date thereof and no longer.

The Baltimore City Code: Comprising the Statutes and Ordinances Relating to the City of Baltimore, at 171 – Art. XVI, Section 27 (1869)
27.  If the said board of police shall have reason to believe that in the neighborhood of any election polls in the said city or elsewhere, within any election precinct of the same, there is any depot or collection of fire arms or other weapons or

ammunition intended to be used for the purpose of intimidating or injuring voters, or interfering with the freedom or peace of any election then pending or approaching, it shall be the duty of said board to apply to the Criminal Court, or some justice of the peace of said city, for a warrant, on proper oath, to search the premises, and the said court or justice shall issue the same without delay, and shall cause the said arms, weapons and ammunition, if found, to be <u>seized and delivered</u> to said board, to be detained until the day after the returns of said election shall have been made, and until the same shall be disposed of by law.

John Prentiss Poe, The Maryland Code. Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Public Local Acts of the Session of 1888 Incorporated Therein Page 522-523, Image 531-532 (Vol. 1, 1888) available at The Making of Modern Law: Primary Sources. 1884 City of Baltimore, § 742. Whenever any person shall be arrested in the city of Baltimore, charged with any crime or misdemeanor, or for being drunk or disorderly, or for any breach of the peace, and shall be taken before any of the police justices of the peace of the said city, and any such person shall be found to have concealed about his person any pistol, dirk knife, bowie-knife, sling-shot, billy, brass, iron or any other metal knuckles, razor, or any other deadly weapon whatsoever, such person shall be subject to a fine of not less than five dollars nor more than twenty-five dollars in the discretion of the police justice of the peace before whom such person may be taken, and <u>the confiscation of the weapon</u> so found, which said fine shall be collected as other fines are now collected; provided, however, that the provisions of this section shall not apply to those persons who, as conservators of the peace are entitled or required to carry a pistol or other weapon as a part of their official equipment.

## **MASSACHUSETTS**

1 Records of the Governor and Company of the Massachusetts Bay in New England 211-12 (Nathanial B. Shurtleff ed., 1853). 1637.
Whereas the opinions & revelations of Mr. Wheeleright & Mrs. Hutchinson have seduced & led into dangerous errors many of the people heare in Newe England, insomuch as there is just cause of suspition that they, as others in Germany, in former times, may, upon some revelation, make some suddaine irruption vpon those that differ from them in judgment, for prevention whereof it is ordered, that all those whose names are vnderwritten shall (vpon warning given or left at their dwelling houses) before the 30th day of this month of November, deliver in at Mr. Canes house, at Boston, all such guns, pistols, swords, powder, shot, & match as they shalbee owners of, or have in their custody, vpon paine of ten pound for ev'y

default to bee made therof ; which armes are to bee kept by Mr. Cane till this Court shall take further order therein. Also, it is ordered, vpon like penulty of x', that no man who is to render his armes by this order shall buy or borrow any guns, swords, pistols, powder, shot, or match, vntill this Court shall take further order therein. . . . The like order is taken for other townes, changing the names of those who shall deliver their armes, & keepe them. . . . It was ordered, that if any that are to bee disarmed acknowledg their siun in subscribing the seditions libell, or do not justify it, but acknowledg it evill to two magistrates, they shalbee thereby freed from delivering in their armes according to the former order./ file:///C:/Users/Bob/Downloads/ocm3522063_vol1.pdf

1719 Mass. Acts 348, An Act In Further Addition To An Act For Erecting A Powder House In Boston, ch. III, § 1
… That, from and after the publication of this Act, no gunpowder shall be kept on board any ship, or other vessel, lying to or grounded at any wharf within the port of Boston. And if any gunpowder shall be found on board such ship or vessel lying aground, as aforesaid, such powder shall be <u>liable to confiscation</u>, and under the same penalty, as if it were found lying in any house or warehouse. And be it further enacted by the authority aforesaid, that no powder be carried through any town upon trucks, under the penalty of ten shillings per barrel for every barrel of powder so conveyed, and so proportionally for smaller cask.

1746 Mass. Acts 208, An Act to Prevent the Firing of Guns Charged with Shot or Ball in the Town of Boston, chap. 11, §§ 1 to 3
§ 1. That no person or persons, from and after the publication of this act, shall presume to discharge or fire off any cannon laden with shot, from any wharf or vessel . . . (within certain areas) § 2. That no person shall . . . discharge any gun or pistol, charged with shot or ball, in the town of Boston, or in any part of the Harbor . . . And for the more effectual conviction of any person or persons so offending, it shall be lawful for any person to <u>seize and take</u> into custody any gun so fired off, and deliver the same . . . § 3 this law shall not be construed or understood as to prevent soldiers in their common training days from discharging arms. (reenacted frequently)

Act of Mar. 14, 1776, ch. VII, 1775-1776 Mass. Act at 31–32, 35.
Chap. VII An Act for the executing in the Colony of the Massachusetts Bay, in New England, one Resolve of the American Congress, dated March 14, 1776, recommending the <u>disarming</u> of such persons as are notoriously disaffected to the cause of America, or who refuse to associate to defend by arms the United American Colonies, against the hostile attemps of the British fleets and armies, and

for the restraining and punishing persons who are inimical to the rights and liberties of the said United Colonies, and for directing the Proceedings therein. Whereas on the fourteenth of March One Thousand Seven Hundred and Seventy-five, a certain resolve was made and passed by the American Congress, of the following tenor, viz. "Resolved, That it be recommended to the several Assemblies, Conventions and Councils, or Committees of Safety of the United Colonies, immediately to cause all persons to be disarmed within their respective Colonies, who are notoriously disaffected to the cause of America, or who have not associated and refuse to associate to defend by arms these United Colonies, against the hostile attempts of the British Fleets and Armies; and to apply the arms taken from such persons in each respective Colony, in the first place, to the arming of the Continental Troops raised in said Colony; in the next, to the arming such troops as are raised by the Colony for its own defense, and the residue to be applied to the arming [sic] the associators; that their arms when taken, be appraised by indifferent persons, and such as are applied to the arming Continental Troops, be paid for by Congress; and the residue by the respective Assemblies, Conventions or Councils, or Committees of Safety." Be it therefore enacted by the Council, and House of Representatives in General Court assembled, and by the Authority of the same, that every male person above sixteen years of age, resident in any town or place in this colony, who shall neglect or refuse to subscribe a printed or written declaration of the form and tenor herein after prescribed, upon being required thereto by the Committee of Correspondence, Inspection and Safety for the town or place in which he dwells, or any of them, shall be disarmed and have taken from him in manner hereafter directed, all such arms, ammunities and warlike implements, as by the strictest search can be found in his possession or belonging to him; which declaration shall be in the form and words following, viz . . . Provided, nevertheless, and be it further enacted, that nothing in this shall be Act shall be construed to extend to the disarming, disqualifying or any way punishing any of the denomination of christians called Quakers, for not fighting the aforesaid declaration, in case upon being required to sign the following Declaration, and having the same tendered to him, shall not refuse or neglect to subscribe it.


1783 Mass. Acts 37, An Act in Addition to the Several Acts Already Made for the Prudent Storage of Gun Powder within the Town of Boston, § 2; Thomas Wetmore, Commissioner, The Charter and Ordinances of the City of Boston: Together with the Acts of the Legislature Relating to the City Page 142-143, Image 142 (1834) available at The Making of Modern Law: Primary Sources. 1783 An Act in Addition to the Several Acts Already Made for the Prudent Storage of Gun Powder within the Town of Boston. Whereas the depositing of loaded arms in

the houses of the town of Boston, is dangerous to the lives of those who are disposed to exert themselves when a fire happens to break out in said town. § 1. Be it enacted by the Senate and House of Representatives in General Court assembled and by the authority of the same, That if any person shall take into any dwelling house, stable, barn, out house, ware house, store, shop or other building within the town of Boston, any cannon, swivel, mortar, howitzer, cohorn, or fire arm, loaded with or having gunpowder in the same, or shall receive into any dwelling house, stable, barn, out house, store, ware house, shop, or other building within said town, any bomb, grenade, or other iron shell, charged with, or having gun powder in the same, such person shall forfeit and pay the sum of ten pounds, to be recovered at the suit of the firewards [duties of Firewards transferred to Engineers,] of the said towns, in an action of debt before any court proper to try the same; one moiety thereof, to the use of said Firewards, and the other moiety to the support of the poor of said town of Boston. § 2. Be it further enacted, That all cannons, swivels, mortars, howitzers, cohorns, fire arms, bombs, grenades, and iron shells of any kind, that shall be found in any dwelling house, out house, stable, barn, store, warehouse, shop or other building, charged with or having in them any gunpowder, shall be liable to be seized by either of the Firewards of said town; and upon complaint made by the said Firewards to the Court of Common Pleas, of such cannon, swivels, mortars, or howitzers, being so found, the Court shall proceed to try the merits of such complaint by a jury; and if the jury shall find such complaint supported, such cannon, swivel, mortar or howitzer, shall be adjudged forfeit, and sold at public auction; one half of the proceeds thereof shall be disposed of to the Firewards, and the other half to the use of the poor of the town of Boston. And when any fire arms, or any bomb, grenade, or other shell, shall be found in any house, out house, barn, stable, store, ware house, shop or other building, so charged, or having gun powder in the same, the same shall be liable to be seized in manner aforesaid; and on complaint thereof, made and supported before a Justice of the Peace, shall be sold and disposed of, as is above provided for cannon.

Act of Feb. 16, 1787, ch. VI, 1787 Mass. Acts 555.
Chapt. IV. An Act, describing the disqualifications to which persons shall be subjected, who have been, or may be guilty of treason, or giving aid or support to the present rebellion, and whom a pardon may be extended. Where the General Court, at their present sessions, have "resolved that the Governour be authorized and empowered in the name of the general court, to promise a pardon, under such disqualifications as should thereafter be provided, to such private soldiers and others, who might have acted in the capacity of non-commissioned officers, as had been, or were in arms against the Commonwealth, with such exceptions as he, or the general officer, commanding the troops, might judge necessary: provided they

should deliver their arms and take and subscribe the oath of allegiance to this Commonwealth, within such time as might be limited by his Excellency, for that purpose:" And whereas it is fit and expedient, that the conditions and disqualifications upon which the pardon and indemnity to the offenders aforesaid, should be offered and given, should as soon as possible be established and made known: Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, That no pardon or indemnity, shall be promised as aforesaid by the Governour, by virtue of any act or resolve of the General Court, that has been or shall be passed, to any person or persons, who have acted in the capacity of non-commissioned officers, or privates, or persons of any other description, who, since the first day of August, seventeen hundred and eighty-six, have been, now are, or hereafter may be in arms against the authority and Government of this Commonwealth, or who have given or may hereafter give them counsel, aid, comfort or support, voluntarily, with intent to encourage the opposition to the government, unless they shall on or before such time as the Governour shall limit for that purpose, <u>deliver their arms to,</u> and take and subscribe the oath of allegiance, before some Justice of the Peace, within some county of this Commonwealth; and no pardon or indemnity shall be offered or given by the Governour to any offenders aforesaid, who are not citizens of this state. And be it further enacted by the authority aforesaid, That to whomsoever of the offenders aforesaid, the Governour shall think fit, by virtue of any act or resolve of the General Court, to promise a pardon and indemnity, for the offences aforesaid, it shall be under the following restrictions, conditions and disqualifications, that is to say, That they shall keep the peace for the terms of three years, from the time of passing this act, and that during that term of time, they shall not serve as jurors, be eligible to any town office, or any other office under the Government of this Commonwealth . . .

1801 Mass. Acts 507, An Act to Provide for the Storing and Safe Keeping of Gun Powder in the Town of Boston, and to Prevent Damage from the Same, ch. XX §1… That all Gun Powder imported and landed at the port of Boston, shall be brought to and lodged in the Powder House or Magazine in said town, and not elsewhere, on pain of <u>confiscation of all Powder</u> put or kept in any other house or place…

1919 Mass. Acts 139, An Act Relative to the Issuance of Search Warrants for the Seizure of Firearms, Weapons and Ammunition Kept for Unlawful Purposes, ch. 179, §§ 1-2
§ 1. A court or justice authorized to issue warrants in criminal cases may, upon complaint under oath that the complainant believes that an unreasonable number of

rifles, shot guns, pistols, revolvers or other dangerous weapons, or that an unnecessary quantity of ammunition, is kept or concealed for any unlawful purpose in a particular house or place, if satisfied that there is a reasonable cause for such belief, issue a warrant to search such property. § 2. If the court or justice finds that such property is kept for an unlawful purpose, it shall be forfeited and disposed of as the court or justice may by order direct.

## MINNESOTA

Concealed Weapons-License, Article 18, §§ 1-9, The Municipal Code of Saint Paul (1884). 1882
"Sec 1. It shall be unlawful for any person, within the limits of the city of St. Paul, to carry or wear under his clothes, or concealed about his person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon.
Sec. 2. Any such weapon or weapons, duly adjudged by the municipal court of said city to have been worn or carried by any person, in violation of the first section of this ordinance, shall be forfeited or confiscated to the said city of St. Paul, and shall be so adjudged.
Sec. 3. Any policeman of the city of St. Paul, may, within the limits of said city, without a warrant, arrest any person or persons, whom such policeman may find in the act of carrying or wearing under their clothes, or concealed about their person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon, and detain him, her or them in the city jail, until a warrant can be procured, or complaint made for the trial of such person or persons, as provided by the charter of the city of St. Paul, for other offenses under said charter, and for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to, as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.
Sec. 4. Upon complaint made under oath or affirmation, to the municipal court of the city of St. Paul, that any person has been guilty of violating any of the provisions of section one of this ordinance, a warrant shall issue for the arrest of the offender or offenders, returnable as other warrants are returnable; upon the return of such warrant, the municipal court shall proceed to the hearing and determination of the matter, and if it shall be adjudged that such person or persons has or have incurred any of the penalties fixed by this ordnance, such court shall so adjudge, and order that the weapon or weapons concerning the carrying or wearing

of which such penalty shall have been incurred, shall be confiscated to the city of St. Paul.

And further, every such person or persons so offending, on conviction, shall be required to find sureties for keeping the peace for a term not exceeding six months.

Sec. 5. Any person or person violating any of the provisions of section one of this ordinance shall pay a fine of not less than $5 nor more than $100, or be imprisoned for a term not exceeding ninety days or both, in the discretion of the municipal judge, before whom such conviction shall be had.

Sec. 6. The prohibition of this ordinance shall not apply to the officers and members of the police force of said city, when on duty, nor to any officer of any court whose duty may be to secure warrants or to make arrests, nor to persons whose business or occupation may seem to require the carrying of weapons for protection, and who shall have obtained from the Mayor of said city a license so to do as hereinafter provided.

Sec. 7. The Mayor of the city of St. Paul may grant to so many, and to such persons as he may think proper, licenses to carry concealed weapons; and may revoke any and all of such licenses at his pleasure.

Sec. 8. Application for such licenses shall be made to the mayor of said city, in writing, and when granted, the person applying therefor, shall pay into the city treasury the sum of two dollars, and thereupon a license shall be issued by the city clerk, and signed by the mayor.

Sec. 9: Every such license shall state the name, age, occupation and residence of the person to whom it is granted, and shall expire on the thirty-first day of December of each and every year."

1884, MN, Concealed Weapons-License, Article 18, §§ 1-9, The Municipal Code of Saint Paul

W. P. Murray, The Municipal Code of Saint Paul: Comprising the Laws of the State of Minnesota Relating to the City of Saint Paul, and the Ordinances of the Common Council: Revised to December 1, 1884 (St. Paul, MN: Daily Globe, 1884), 289-290. Article 18, Concealed Weapons-License, §§ 1-9. Passed January 17, 1882.


Ordinance No. 22: An Ordinance Relating to the Promotion of the Public Peace, Feb. 7, 1888, reprinted in Charter and Ordinances of the City of New Ulm, Minnesota 110–11 (Jos. A. Eckstein ed., 1888).

Sec. 2. It shall be unlawful for any person, within the limits of this city to carry or wear under his clothes or concealed about his person, any pistol, dirk, sling-shot, or knuckle of brass or other metal, or any other dangerous or deadly weapon. Any such weapon duly adjudged by any justice court of said city to have been worn or carried by any person in violation of this section, shall be adjudged and declared

forfeited or <u>confiscated to the city</u> of New Ulm: and every such person so offending, on conviction, may in addition to the penalty hereinafter described, be required to furnish surities for keeping the peace for a term not exceeding six months.

Sec. 3. The prohibition in the preceding section shall not apply to police, peace, and other officers of courts, whose duty may be to secure warrants or make arrests, nor to persons whose business or occupation may require the carrying of weapons for protection. Nothing in the ordinances of this city shall be construed to prohibit within the city limits any firing of a gun, pistol or other firearm when done in the lawful defense of person, property or family, or in the necessary enforcement of the laws.

## MISSISSIPPI

1867 Miss. Laws 327-28, An Act To Tax Guns And Pistols in The County Of Washington, ch. 249, § 1.

[A] tax of not less than five dollars or more than fifteen dollars shall be levied and assessed annually by the board of Police of Washington county upon every gun and pistol which may be in the possession of any person in said county, which tax shall be payable at any time on demand, by the Sheriff, and if not so paid, it shall be the duty of the Sheriff to forthwith distrain and <u>seize</u> such gun or pistol, and sell the same for cash at the door of the Court House, after giving ten days notice by advertisement, posted in front of said Court House, and out of the proceeds of such sale, there shall be paid the amount of such tax and the cost of sale, and if any surplus remains, it shall be paid to the owner of such gun or pistol. The amount of the tax so assessed and collected, shall be paid to the county Treasurer, and shall constitute a part of the bridge fund of said county.

## MISSOURI

Organic Laws:-Laws of Missouri Territory, (Alphabetically Arranged):-Spanish Regulations for the Allotment of Lands:- Laws of the United States, for Adjusting Titles to Lands, &c. to Which are Added, a Variety of Forms, Useful to Magistrates Page 374, Image 386 (1818) available at The Making of Modern Law: Primary Sources. 1818.

Slaves, § 3. No slave or mulatto whatsoever, shall keep or carry a gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, <u>may be seized</u> by any person and upon due proof made before any justice of the peace of the district [county] where such seizure shall be, shall by his order

be forfeited to the seizor, for his own use, and moreover, every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her bare back well laid on for every such offence. § 4. Every free negro or mulatto, being a housekeeper may be permitted to keep one gun, powder and shot; and all negroes or mulattoes bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder shot and weapons, offensive and defensive, by license from a justice of the peace of the district [county] wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes or of the owners of such as are slaves.

## MONTANA

Chapter 22—Concealed Weapons, §§ 526-534 in Codified Ordinances of the City of Anaconda (1905).
"Sec. 526. Carrying Concealed Weapons an Offense.—It shall be unlawful for any person within the limits of the City of Anaconda to carry or wear under his clothes or concealed about his person, any pistol, revolver, slung-shot, cross-knuckles, knuckles of lead, brass or other metal, bowie knife, dirk knife or dirk, razor or dagger, or any other dangerous or deadly weapon.
Sec. 527. Such Weapons Confiscate to City.—Any such weapon or weapons, duly adjudged by the Police Magistrate or Justice of the Peace acting as Police Magistrate to have been worn or carried by any person, in violation of the foregoing section of this chapter, shall be forfeited or confiscated to the said City of Anaconda and shall be so adjudged.
Sec. 528. Police to Arrest Person Carrying Concealed Weapon.—It shall be the duty of the policemen of the City of Anaconda to arrest without a warrant any person or persons whom any policeman may find in the act of carrying or wearing under their clothes or concealed about their persons any pistol, revolver, slung-shot, cross- knuckles, knuckles of lead, brass or other metal, bowie knife, dirk knife, dirk or dagger, razor, or other dangerous or deadly weapon, and detain him in the city jail until a complaint can be made against him and a warrant secured, and bring him before the Police Magistrate for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.
Sec. 529. Trial.—The Police Magistrate, or Justice of the Peace acting as Police Magistrate, before whom the complaint is made, as provided in the foregoing section, shall proceed to the hearing and determination of the matter, and if it shall be adjudged that such person or persons has or have incurred any of the penalties fixed by this chapter, such magistrate or justice of the peace shall so adjudge, and

order that the weapon or weapons, concerning the carrying or wearing of which said penalty shall have been incurred, <u>shall be confiscated</u> to the City of Anaconda.

Sec. 530. Penalty.—Any person or persons violating any of the provisions of Section 526 of this Chapter shall pay a fine of not less than ten dollars nor more than three hundred dollars.

Sec. 531. Exceptions; License to Carry.—The prohibitions of this Chapter shall not apply to the police force of the City of Anaconda when on duty, sheriffs and sheriffs' officers and officers of the State and of the United States, whose several duties may be of a character requiring them to have arms in the performance of their duty, nor to persons whose business or occupation may seem to require the carrying of weapons for their protection, and who shall have obtained from the Mayor a license so to do as hereinafter provided.

Sec. 532. Mayor May Grant License.—The Mayor may grant to so many and such persons as he may think proper licenses to carry concealed weapons, and may revoke any and all such licenses at his pleasure.

Sec. 533. Application for License.—Applications for such licenses shall be made to the Mayor, and when granted, the person applying therefor shall pay to the City Treasurer the sum of two dollars, and thereupon a license shall be issued by the City Clerk and signed by the Mayor. Every such license shall state the name, age, occupation and residence of the person to whom it is granted, and shall expire on the thirtieth day of April next following.

Sec. 534. Penalty for Violation.—Any person who shall violate any of the provisions of this Chapter, where no other penalty is prescribed, shall upon conviction be fined in a sum not less than one hundred dollars for each and every offense."

1905, Anaconda, MT, Ch. 22, §§ 526-534, Codified Ordinances of the City of Anaconda

T. O'Leary, ed., Codified Ordinances of the City of Anaconda: With the Declaration of Independence, Constitution of the United States, Constitution of the State of Montana, Laws Relating to Municipal Corporations, Laws for the Government of Cities (Anaconda, MT: City Council, 1906), 390-392. Chapter 22—Concealed Weapons, §§ 526-534. Passed October 2, 1905.

## **NEBRASKA**

Compiled Ordinances of the City of Fairfield, Clay County, Nebraska Page 34, Image 34 (1899) available at The Making of Modern Law: Primary Sources. Carrying Weapons | Nebraska | 1899

Ordinance No. 20, An Ordinance to Prohibit the Carrying of Concealed Weapons and Fixing a Penalty for the violations of the same. Be it ordained by the Mayor and Council of the City of Fairfield, Nebraska: § 1.

It shall be unlawful for any person to carry upon his person any concealed pistol, revolver, dirk, bowie knife, billy, sling shot, metal knuckles, or other dangerous or deadly weapons of any kind, excepting only officers of the law in the discharge or their duties; and any person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be subject to the penalty hereinafter provided. § 2. Any such weapon or weapons, duly adjudged by the Police Judge of said city to have been worn or carried by any person in violation of the first section of this ordinance, <u>shall be forfeited or confiscated</u> to the City of Fairfield and shall be so adjudged.

## NEW HAMPSHIRE

New Hampshire Public Carry Prohibition (1708)
And every justice of the peace within this province, may cause to be stayed and arrested, all affrayers, rioters, disturbers or breakers of the peace, or any other who shall go armed offensively, or put his Majesty's subjects in fear, by menaces or threatening speeches : And upon view of such justice, confession of the offender, or legal proof of any such offence, the justice may commit the offender to prison, until he or she find such sureties for the peace and good behaviour, as is required, according to the aggravations of the offence ; and cause the arms or weapons so used by the offender, <u>to be taken away, which shall be forfeited</u> and sold for his Majesty's use. And may also punish the breach of the peace in any person, who shall smite, or strike another, by fine to the King, not exceeding twenty shillings; and require bond with sureties for the peace, till the next court of general sessions of the peace, or may bind the offender over to answer for said offence at said court, as the nature and circumstances of the offence may require.

1786 N.H. Laws 383-84, An Act to Prevent the Keeping of Large Quantities of Gun-Powder in Private Houses in Portsmouth, and for Appointing a Keeper of the Magazine Belonging to Said Town.
That if any person or persons, shall keep in any dwelling-house, store or other buildings, on land, within the limits of said Portsmouth, except the magazine aforesaid, more than ten pounds of gun-powder at any one time, which ten pounds shall be kept in a tin canister properly secured for that purpose, such person or persons <u>shall forfeit the powder</u> so kept, to the firewards of said Portsmouth to be laid out by them in purchasing such utensils as they may judge proper for the extinguishing of the fire; and the said firewards are hereby directed and

empowered to seize, and cause the same to be condemned in any Court of Law or Record proper to hear and try the same, to be disposed of for the purchase aforesaid. And the offender shall also forfeit and pay a fine for the use of the poor of said Portsmouth, equal to the value of the powder so kept in any store, dwelling-house, or building; which fine, shall be sued for and recovered by the overseers of the poor of said Portsmouth, for the use of said poor, in any Court of Law proper to try the same.

1793 N.H. Laws 464-65, An Act to Prevent the Keeping of Large Quantities of Gun-Powder in Private Houses in Portsmouth, and for Appointing a Keeper of the Magazine Belonging to Said Town.
That if any person or persons, shall keep in any dwelling-house, store or other building on land, within the limits of said Portsmouth, except the magazine aforesaid, more than ten pounds of gun-powder at any one time, which ten pounds shall be kept in a tin canister, properly secured for the purpose, such person or persons shall forfeit the powder so kept to the firewards of said Portsmouth to be laid out by them in purchasing such utensils as they may judge proper for the extinguishing of the fire; and the said firewards are hereby directed and <u>empowered to seize</u>, and cause the same to be condemned in any court of record proper to hear and try the same, to be disposed of for the purchase aforesaid. And the offender shall also forfeit and pay a fine for the use of the poor of said Portsmouth, equal to the value of the powder so kept in any store, dwelling-house, or building; which fine, shall be sued for and recovered by the overseers of the poor of said Portsmouth, for the use of said poor, in any court of law proper to try the same.

Asa Fowler, The General Statutes of the State of New-Hampshire; to Which are Prefixed the Constitutions of the United States and of the State. With a Glossary and Digested Index Page 206, Image 227 (1867) available at The Making of Modern Law: Primary Sources. 1854
Safe-Keeping of Gunpowder, § 1. The board of firewards, if any, or the selectmen of any town, may establish rules and regulations from time to time relative to the times and places at which gunpowder may be brought to or carried from such town, by land or water, and the time when and the manner in which the same may be transported through the same. § 2. Any two firewards, police officers, or selectmen may search any building in the compact part of any town, and any vessel lying in any port, in which they have cause to suspect that gunpowder in a greater quantity than twenty-five pounds is kept or stored; and in case a greater quantity shall be found, <u>shall seize the same as forfeited</u>. § 3. Any person who shall keep or knowingly suffer any quantity of gunpowder greater than twenty-five pounds to be

kept or stored in any such building or vessel, or aid or assist in keeping or storing the same, or shall know that the same is so stored or kept, and shall not forthwith inform one of the firewards, police officers, or selectmen thereof, shall forfeit a sum not more than five dollars nor less than one dollar, for every day the same shall be so stored or kept.

1923 N.H. Laws 138
SECTION 1. Pistol or revolver, as used in this act shall be construed as meaning any firearm with a barrel less than twelve inches in length.
SECT. 2. If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall in addition to the punishment provided for the crime, be punished by imprisonment for not more than five years.
SECT. 3. No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another shall own or have in his possession or under his control a pistol or revolver, except as hereinafter provided. Violations of this section shall be punished by imprisonment for not more than two years and upon conviction the pistol or revolver <u>shall be confiscated</u> and destroyed.
SECT. 4. No person shall carry a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding one year or by both fine and imprisonment.
SECT. 5. The provisions of the preceding sections shall not apply to marshals, sheriffs, policemen, or other duly appointed peace and other law enforcement officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps of the United States, nor to the national guard when on duty, nor to organizations by law authorized to purchase or receive such weapons, nor to duly authorized military or civil organizations when parading, or the members thereof when at or going to or from their customary places of assembly.

## <u>NEW YORK</u>

1656 N.Y. Laws 235, Ordinance Of The Director And Council Of New Netherland Renewing The Ordinances For The Formation Of Villages, And Against Admitting Armed Indians Into Cities, Villages And Houses
. . . further, in order to prevent such dangers of isolated murders and assassinations, the Director General and Council, with the advice of the Burgomasters of this city,

cannot for the present devise any better or other expedient than already stated, and besides that, to interdict and forbid the admission of any Indians with a gun or other weapon, either in this city or in the Flatland, into the Villages and Hamlets, or into any Houses or any places, on pain of forfeiting such arms, which may and also shall be taken from them . . .

## NORTH CAROLINA

Francois Xavier Martin, A Collection of Statutes of the Parliament of England in Force in the State of North Carolina, 60-61 (Newbern 1792)
Item, it is enacted, that no man great nor small, of what condition soever he be, except the King's servants in his presence, and his Ministers in executing of the King's precepts, of of their office, and such as be in their company assisting them, and also upon a cry made for arms to keep the peace, and the same in such places where such acts happen, be so hardy to come before the King's justices, or other of the King's Ministers doing their office with force and arms, nor bring no force in affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets nor in the presence of the King's Justices, or other ministers, nor it [sic, likely "in"] no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs and other ministers in their bailiwicks, Lords of Franchises, and their bailiffs in the same, and Mayors and Bailiffs of cities and boroughs, within the same cities and boroughs, and boroughholders, constables and wardens of the peace within their wards shall have power to execute this etc. [in original] And that the Justices assigned, at thier coming down into the country , shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertain to their office.

## NORTH DAKOTA

1923 N.D. Laws 380, Pistols and Revolvers, ch. 266, § 6.
Sec. 6. Carrying Pistol Concealed. No person shall carry a pistol or revolver concealed in any vehicle or in any package, satchel, grip, suit case or carry in any way or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by imprisonment for not less than one year, and upon conviction the pistol or revolver shall be confiscated or destroyed.

## OHIO

1788-1801 Ohio Laws 20, A Law Respecting Crimes and Punishments . . . , ch. 6. 1788

Burglary . . . If the person or persons so breaking and entering any dwelling house, shop, store or vessel as aforesaid, shall commit, or attempt to commit any personal abuse, force, or violence, or shall be so armed with any dangerous weapon or weapons as clearly to indicate a violent intention, he, she or they so offending, upon conviction thereof, shall moreover, forfeit all his, her or their estate, real and personal, to this territory, out of which the party injured shall be recompensed as aforesaid, and the offender shall also be committed to any gaol [jail] in the territory for a term not exceeding forty years.

## OREGON

1925 Or. Laws 468, 469-471

Section 5. Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm, as hereinafter provided in section 8 hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section 2 hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section.

Section 6. Nothing in the preceding section shall be construed to apply to or affect sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed peace officers, nor to any person summoned by any such officers to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to members of the army, navy or marine corps of the United States, or the national guard, when on duty, nor to organizations which are by law authorized to purchase or receive such weapons from the United States, or from this state; nor to duly authorized military or civil organizations while parading, nor to the members

thereof when going to and from the places of meeting of their respective organizations; nor to members of any club or organization now existing, or hereafter organized, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon such target ranges, or while going to and from such ranges; nor to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from such hunting or fishing expedition.

Section 7. The unlawful concealed carrying upon the person or within the vehicle of the carrier of any pistol, revolver or other firearm capable of being concealed upon the person, is a nuisance. Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are hereby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, county, town or other municipal corporation the same shall be surrendered to the head of the police force or police department thereof. The officers to whom the same may be so surrendered, except upon the certificate of a judge or a court of record, or of the district attorney of the county, that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the first and tenth days of July, in each year, destroy or cause to be destroyed such weapons to such extent that the same shall become and be wholly and entirely ineffective and useless for the purpose for which it was [they were] manufactured; provided, however, that in the event any such weapon has been stolen and is thereafter recovered from the thief or his transferee the same shall not be destroyed but shall be restored to the lawful owner thereof, so [as] soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership thereof; provided, that upon the certificate of a judge or of the district attorney that the ends of justice will be subserved thereby such weapon shall be preserved until the necessity for its use ceases.

Section 8. It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other firearm for a period of one year from the date of such license. All applications for such licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon

authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general.

1933 Or. Laws 489, An Act to Amend Sections 72-201, 72-202, 72-207, Oregon Code 1930, ch. 315, §§ 3-4.
§ 3. Except as otherwise provided in this act, it shall be unlawful for any person within this state to possess or have in his possession any machine gun . . . § 4. The unlawful concealed carrying upon the person or within the vehicle of the carrier of any machine gun, pistol, revolver or other firearm capable of being concealed upon the person is a nuisance. Any such <u>weapons taken</u> from the person or vehicle of any person unlawfully carrying the same are herby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken . . .

## **PENNSYLVANIA**

1776 Pa. Laws 11, An Ordinance Respecting The Arms Of Non-Associators, § 1
The colonel or next officer in command of every battalion of militia in this state is hereby authorized, empowered and required to collect, receive and take all the arms in his district or township nearest to such officer which are in the hands of non-associators in the most expeditious and effectual manner in his power, and shall give to the owners receipts for such arms, . . .

1778 Pa. Laws 123, An act for the further security of the government, ch. LXI, §§ 1–3, 5, 10
Section I. Whereas the welfare and happiness of the good people of this commonwealth, do, next under God, entirely depend upon the maintaining and supporting the independence and sovereignty of the state, as declared by congress Sect. 2. Be it therefore enacted . . . That all male white inhabitants of this state above the age of eighteen years, who have not hiterhto taken the oath or affirmation mentioned and appointed to be taken in the act of assembly . . . shall, on or before the first day of June next, take and subscribe the same in manner and form as by the said act is directed; and that every such person neglecting to take the said oath or affirmation, shall, during the time of such neglect, be liable to all the disabilities, incapacities and penalties to which to which they are subjected by the said act; and also shall be disabled, from and after the said day, to sue or use any action, bill, plaint or information, in course of law, or to prosecute any suit in

equity or otherwise howsoever, or to be gaurdian of the person or estate of any child, or executor or administrator of any person, or capabale of any legacy or deed of gift, or to make any will or testament, and moreover shall be liable and compelled to pay double the taxes, which another person of equal estate, who has taken such oath or affirmation, shall be rated or assessed at . . . Sect. 3. And be it further enacted, that all trustees, provosts, rectors, professors, masters and tutors of any college or academy, and all schoolmasters and ushers; merchants and traders; and every person who shall act as serjeant at law, counsellor at law, barrister, advocate, attorney, solicitor, proctor, clerk or notary, by practicing in any manner as such in any court or courts whatsoever; apothecary or druggist, and very person practicing physic or surgery in any manner for fee or reward; who shall at any time after the first day of June next, be admitted into or enter upon any of the beforementioned preferments, offices or places, or shall come into any such capacity, or shall take upon him or them any such practice, employment, or business as aforesaid, without having first taken and subscribed the beforementioned oath or affirmation, he or they shall be ipso facto adjudged incapable an disabled in law, to all intents and purposes whatsoever, to have, occupy or enjoy the said preferment or preferments, office or offices, employment or employments, or any part of them, or any matter or thing aforesaid, or any profit or advantage appertaining to them, or any of them; and every such office or place of trust shall be void, and is hereby adjudged void . . . Sect. 5. And be it further enacted, That every such person who shall refuse or neglect to take the oath or affirmation before mentioned on or before the said first day of June next, and shall refuse or neglect to deliver up his arms to the lieutenant, or one of the sublieutenants, of the city or county where he inhabits, on or before the tenth day of June next, or who shall, from and after the same day last mentioned, carry any arms about his person or keep any arms or ammunition in his house or elsewhere, shall forfeit the said arms and ammunition to the state . . . Sect. 10 And be it further enacted, That the act, intitled "an Act obliging the male white inhabitants of this state to give assurances of allegiance to the same, and for other purposes therein mentioned," enacted the thirteenth day of June last, and the supplement thereto, enacted the twelfth day of Octobor last, and every clause, matter and thing therein contained, except for such parts thereof as are by this act altered, amended or supplied, shall be and remain in full force and effect; any thing herein contained to the contrary nothwithstanding.

1779 Pa. Laws 193, An Act. . . for Disarming Persons Who Shall not Have Given Attestations of Allegiance and Fidelity to this State, §§ 4-5.
§ 4. And whereas it is very improper and dangerous that persons disaffected to the liberty and independence of this state shall possess or have in their own keeping, or

elsewhere, any firearms, or other weapons used in war, or any gun powder. § 5. …
That from and after the passing of this act, the lieutenant or any sub lieutenant of
the militia of any county or place within this state, shall be, and is hereby
empowered to disarm any person or persons who shall not have taken any oath or
affirmation of allegiance to this or any other state and against whom information
on oath shall be given before any justice of the peace, that such person is suspected
to be disaffected to the independence of this state, and shall take from every such
person any cannon, mortar, or other piece of ordinance, or any blunderbuss, wall
piece, musket, fusee, carbine or pistols, or other fire arms, or any hand gun; and
any sword, cutlass, bayonet, pike or other warlike weapon, out of any building,
house or place belonging to such person.

Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October,
One Thousand Seven Hundred, to the Twentieth Day of March, One Thousand
Eight Hundred and Ten Page 240-244, Image 284-288 (1810) available at The
Making of Modern Law: Primary Sources. 1795
An Act providing for the inspection of Gun-powder. Whereas gun-powder
imported from abroad and manufactured within this state, hath frequently been
found to vary much in its strength, and sometimes of inferior qualities, and its
defects not discovered until brought into actual use: and whereas the modes
heretofore used to prove the force thereof have been found uncertain and variable:
and whereas Joseph Leacock, of the city of Philadelphia, hath invented an engine,
called a pendulum powder proof, with a graduated arch and catch-pall, by which it
is conceived that the force of gun-powder may be proved by experiment and the
article reduced to certain and uniform standards of strength, whereby the
manufacture may be advanced towards ultimate perfection , and the purchaser and
consumer protected against fraud and imposition: § 1. Be it enacted by the Senate
and House of Representatives of the commonwealth of Pennsylvania, in General
Assembly met, and it is hereby enacted by the authority of the same, That from and
after the first day of October next, all gun-powder manufactured within this state,
with intent to sell the same within the city or county of Philadelphia, shall be put in
good and tight kegs or casks of twenty-five, fifty, or one hundred pounds neat
weight , each made of well seasoned timber, bound together with at least twelve
loops, and having a hole bored in each head with the diameter of one fourth part of
an inch, well stopped with corks and having the tare weight (weight of the actual
keg or cask) of each cask marked thereon, and that all such gun-powder, and all
other gun-powder, wheresoever manufactured imported into the port of
Philadelphia, or brought into the city or county of Philadelphia for sale, shall be
deposited, forthwith on such importation or bringing by land or by water, in the
public magazine in in the said city, and delivered to the care of the keeper the

same, who shall give his receipt for the same, deliverable to the order of him or them who shall deposit the same. § 2. And be it further enacted by the authority aforesaid, That David Rittenhouse, Francis Gurney, and Thomas Procter be, and they are hereby, appointed commissioners, to procure at least two pendulum powder proofs, upon the construction invented by the said Joseph Leacock, as nearly uniform in length and radius and weight of pendulum, and in length of caliber and weight of the pistol, as they can procure the same, and therewith make experiments of the respective strength or force of the several species of gunpowder imported from abroad and manufactured within this state, sufficient in number to ascertain the quality and force of three different degrees of strength in explosion, and marking the number of degrees on the graduated arch of the said engine, to which equal quantities of weight of the said three species of gunpowder, rammed with equal force into the pistol, shall elevate the said pendulum; and the power which shall be barely capable of raising the said pendulum to the lowest rate of elevation, shall be the standard for the state of Pennsylvania for gun-powder of the first or lowest proof; and the powder which shall be capable of raising the said pendulum to the highest rate of elevation, shall be the standard of gunpowder for the state of Pennsylvania of the third or highest proof; and the middle or second proof standard of gun-powder shall be ascertained by the number of degrees on the said graduated arch, to which the same quantity by weight in equal moieties of the first and third proof powder shall be capable of raising the said pendulum; and the said standard being so fixed and ascertained, the said commissioners shall make report thereof in writing, by indentures under their hands and seals, one part thereof, together with one of the said two pendulum powder proofs, as accurate a draft and description thereof as can be made shall be returned to the Governor, to be file and remain the office of the Secretary of the commonwealth; and one other part shall be returned to the Master of Rolls, to be recorded in his office, and filed among the laws of the state; and the other part, together with the other pendulum powder proofs, shall be delivered to the first Inspector of gun-powder to be appointed in pursuance of this act, and by him, and his successors in office, to his and their successors, as often as another officer shall be appointed. . . § 6. And by it further enacted by the authority aforesaid, That it shall be the duty of the inspector of gunpowder so to be appointed, for the time being, to attend at the aid public magazine, and his office so to be built, as often as shall be necessary, to inspect and examine all gunpowder there to be deposited, to draw samples from each cask of powder which shall be so as aforesaid bored, and to open or otherwise get samples of casks of powder not bored as aforesaid, and removing such samples to his office, there to prove the same b the pendulum proof aforesaid, and note the standard quality of each cask, to provide himself with cedar plugs stamped on the outer end with the letters S.P. and the figures number one, number two, and

number three, so designate the first, second and third proofs of standard gunpowder of the state of Pennsylvania, and another stamped with letters S.P. to designate condemned gun-powder, and therewith carefully to plug up the holes opened or made for the purpose with such marked plugs, as the proof quality of the powder in each cask respectively contained, and occasionally to weight the said casks; and if upon weighing the same suspicion shall arise that he casks are false tared, or do not contain the quantity herein above mentioned for each cask, to empty the same, and weigh the cask and powder separately, to ascertain the deficiency, if any, in the neath weight, and to fill the same to its due weight out of the other cask belonging to the same person, marking the weight taken on the ullage casks , and keeping an exact account in the books thereof, and of the names of the owners and persons bringing and depositing the same. . . §10. And be it further enacted by the authority aforesaid That if any person, from and after the first day of October next, importing or bringing into the port or city, or county of Philadelphia, any quantity of gun-powder exceeding twenty-five pounds, with intent to sell the same, shall neglect to deposit the same for inspection in the magazine aforesaid, or shall sell the same before it be inspected and marked as aforesaid, or shall sell any gun-powder that shall be condemned as aforesaid as and for merchantable gun-powder every person so offending shall forfeit all such gunpowder as aforesaid. § 11. And be it further enacted by the authority aforesaid, That the inspector shall be entitled to demand and receive of and from the owner and possessor of all gun-powder deposited in the said magazine, and by him or his Deputy examine, proved and plugged, as aforesaid, the following sums or rates, whether the same be approved or condemned, paid or secured before the same shall be removed from the magazine; if the Inspector shall so require; for every cask of powder, manufactured in this state, or any of the United States, bored, and stopped with corks by the manufacturer, containing twenty-five pounds neat weight, seven cents; for every like cask containing fifty pounds, eight cents; for every like cask containing one hundred pounds, nine cents; and fore very cask of foreign powder, or powder manufactured in the United States, not bored and stopped with corks as aforesaid, double the said price or rates; and for every cask which shall find deficient one per cent. In weight and shall fill up, fifty cents. § 12. And be it further enacted by the authority aforesaid, that if any dispute should arise between the owner, possessor or consignee of any such powder and the Inspector, touching the proof or condemnation thereof, or the goodness of the materials and manner in which the casks are made, upon application by the owner, possessor or consignee of such powder to one of the Magistrates of the city or county of Philadelphia, where the dispute shall arise, the said Magistrate shall issue this warrant to three indifferent judicious persons to be triers thereof, one of them to be named by the said owner, possessor or consignee, of by the said Inspector, and the

third of the said Magistrate shall thereupon give his judgment agreeably to the report of the said triers, or any two of them; ad in case the said Magistrate shall on such reports adjudge the powder not to be merchantable, he shall award the owner, possessor or consignee thereof, to pay all costs; but in the case the said powder shall be found merchantable, the Inspector shall be adjudged to pay all costs, which may have accrued, and shall thereupon cause the powder to be marked as the standard to be directed by the said triers.

## **RHODE ISLAND**

The Charter and Ordinances of the City of Providence, Together with the Acts of the General Assembly Relating to the City Page 89-96, Image 89-96 (1854) Available at The Making of Modern Law: Primary Sources. 1821
An Act Regulating the Storage, Safe Keeping and Transportation of Gunpowder in the Town of Providence, (1821) § 2. And be it further enacted, That is shall not be lawful for any person or persons to sell any gunpowder which may at the time be within the town of Providence in any quantity, by wholesale or retail, without first having obtained from the town council of said town a license to sell gunpowder; and every such license shall be written or printed, and signed by the president of said council or their clerk, on a paper upon which shall be written or printed a copy of this act; and every such license shall be in force for one year from the date thereof, unless annulled by said council, and no longer; but such license may, prior to the expiration of that time, be renewed, by endorsement thereon, for a further term of one year, and so from year to year: provided, always, that the said town council may annul any such license, if in their opinion the person or persons licensed have forfeited the right of using the same by any violation of the law relative thereto; and every person who shall receive a license as aforesaid shall pay therefor the sum of five dollars, and on having the same renewed shall pay therefor the sum of one dollar, which shall be paid to the clerk of said council, for their use, for the purpose of defraying the expense of carrying this act into execution. § 3. And be it further enacted, That any person or persons who shall keep, have, possess or transport any gunpowder within the town of Providence, contrary to the provisions of this act, or who shall sell any gunpowder therein, without having a license therefor, then in force, shall forfeit and pay a fine of not less than twenty dollars, and not exceeding five hundred dollars, for each and every offence; and if any gunpowder kept contrary to the provisions of this act shall explode in any shop, store, dwelling-house, ware-house or other building, or in any place in said town, the occupant, tenant or owner of which has not a license in force to keep and sell gunpowder therein, or which gunpowder shall have been kept in a manner contrary to the terms and conditions of such license, such occupant tenant or owner

shall forfeit and pay a fine of not less than twenty dollars nor more than five hundred dollars. . . § 6. And be it further enacted, That the said firewards, or any of them, may enter the store or place of any person or persons licensed to sell gunpowder, to examine and ascertain whether the laws relating thereto are strictly observed; and also whenever there may be an alarm or fire; and in such last case may <u>cause the powder there deposited to be removed</u> to a place of safety, or to be destroyed by wetting or otherwise, as the exigency of the case may require; and it shall be lawful for any one or more of the firewards aforesaid to enter any dwelling house, store, building or other place in said town to search for gunpowder which they may have reason to suspect to be concealed or unlawfully kept therein; first having obtained from some justice of the peace of said town a search warrant therefor; which warrant any one of the justices of said town is hereby respectively authorized to issue, upon the complaint of such fireward or firewards, supported by his or their oath or affirmation. . . And be it further enacted, That all persons who wish have a license to keep and sell gunpowder within the town shall make application to the town council in writing, stating the place of business and whether they wish to sell by wholesale or retail, or both; and to each person or firm who may be approbated, a certificate of license shall be granted, on payment of the fee established by law. § 14. And be it further enacted, That every person or firm who may be licensed to sell gunpowder by retail, shall be allowed to keep in the place or building designated in the license, twenty-five pounds of gunpowder, and no more, at one time, which shall always be kept in tin or copper canisters, capable of containing no more than twelve and a half pounds each with a small aperture at the top, and a tin or copper cover thereto. § 15. And be it further enacted, That every person or firm who may be licensed to sell gunpowder by wholesale, shall provide and keep a tine or copper chest, with two handles and a tight cover, furnished with a hinge, and secured with a padlock, all of tin or copper chest, with two handles and a tight cover furnished with a hinge and secured padlock, all of tin or copper; such chest shall always be kept on the lower floor, on the right side of and close to the principal door or entrance from the street into the building so licensed, except when otherwise designated by the council and shall always be kept locked, except when powder is put in or taken out; and such person or firm, so licensed shall be allowed to deposit and keep, in such tin or copper chest, a quantity of gunpowder not exceeding four casks of twenty-five pounds each; the heads of each cask not to be opened, and each cask to be kept in a strong leather bag, closely tied and marked as aforesaid. § 16. And be it further enacted, that every person or firm licensed to keep and sell gunpowder as aforesaid, by wholesale or retail, shall have and keep a signboard placed over the door or building in which such powder is kept, on which shall be painted in Roman capitals the words "Licensed to sell Gunpowder"

1893 R.I. Pub. Laws 231, An Act Prohibiting The Carrying Of Concealed Weapons, chap. 1180, § 1.

§ 1. No person shall wear or carry in this state any dirk, bowie knife, butcher knife, dagger, razor, sword in cane, air gun, billy, brass or metal knuckles, slung shot, pistol or fire arms of any description, or other weapons of like kind and description concealed upon his person: Provided, that officers or watchmen whose duties require them to make arrests or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act. § 2. Any person convicted of a violation of the provisions of section 1 shall be fined not less than twenty dollars nor more than two hundred dollars, or be imprisoned not less than six months nor more than one year. § 3. Whenever any person shall be arrested charged with any crime or misdemeanor, or for being drunk or disorderly, or for any breach of the peace, and shall have concealed upon his person any of the weapons mentioned in section 1, such person, upon complaint and conviction , in addition to the penalties provided in section 2, shall be subject to a fine of not less than five dollars nor more than twenty five dollars, and the confiscation of the weapon so found.

General Laws of the State of Rhode Island and Providence Plantations to Which are Prefixed the Constitutions of the United States and of the State Page 1010-1011, Image 1026-1027 (1896) available at The Making of Modern Law: Primary Sources.

Offences Against Public Policy, § 23. No person shall wear or carry in this state any dirk, bowie-knife, butcher knife, dagger, razor, sword-in-cane, air-gun, billy, brass or metal knuckles, slung-shot, pistol or fire-arms of any description, or other weapons of like kind and description concealed upon his person: provided, that officers or watchmen whose duties require them to make arrests or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this and the two following sections. § 24. Any person convicted of a violation of the provisions of the preceding section shall be fined not less than ten nor more than twenty dollars, or be imprisoned not exceeding three months, and the weapon so found concealed shall be confiscated. . . § 26. No negative allegations of any kind need be averred or proved in any complaint under the preceding three sections, and the wearing or carrying of such concealed weapons or weapons shall be evidence that the wearing or carrying of the same is unlawful; but the respondent in any such case my show any fact that would render the carrying of the same lawful under said sections.

## SOUTH CAROLINA

1731-43 S.C. Acts 168, § 23. 1740

It shall not be lawful for any slave, unless in the presence of some white person, to carry or make use of firearms or any offensive weapon whatsoever, unless such negro or slave shall have a ticket or license in writing from his master, mistress or overseer, to hunt and kill game, cattle, or mischievous birds or beasts of prey, and that such license be renewed once every month, or unless there be some white person of the age of 16 or upwards, in the company of such slave when he is hunting or shooting; or that such slave be actually carrying his masters arms to or from his masters plantation, by a special ticket, for that purpose, or unless such slave be found in the day time actually keeping off rice birds, or other birds within the plantation to which such slave belongs, lodging the same gun at night within the dwelling house of his master, mistress or white overseer. And provided also that no negro or other slave shall have liberty to carry any guns, cutlass, pistol or other weapon abroad form at any time between Saturday evening after sunset and Monday morning before sunrise notwithstanding a license or ticket for so doing. And in case any person shall find any slave using or carrying fire-arms, or other offensive weapons, contrary to the true intention of this act; every such person may lawfully seize and take away such fire-arms or offensive weapons; but before the property of such goods shall be vested in the person who shall seize the same, such person shall, within 48 hours next after such seizure, go before the next justice of the peace, and shall make oath of the manner of the taking; and if such justice of the peace after such oath shall be made, or upon any other examination, he shall be satisfied, that the said fire-arms or other offensive weapons, shall have been seized according to the directions and agreeable to the true intent and meaning of this act, the said justice shall, by certificate under his hand and seal, declare them forfeited, and that the property is lawfully vested in the person who seized the same. Provided that no such certificate shall be granted by any justice of the peace until the owner or owners of such fire-arms or other offenisve weapons so to be seized as aforesaid, or the overseer or overseers who shall or may have the charge of such slave or slaves from, whom such fire-arms or other offensive weapons shall be taken or seized shall be duly summoned, to show cause (if any such they have) why the same should not be condemned as forfeited; or until 48 hours after the service of such summons and oath made of the service thereof before the said justice.

Ordinances, of the Town of Columbia, (S. C.) Passed Since the Incorporation of Said Town: To Which are Prefixed, the Acts of the General Assembly, for

Incorporating the Said Town, and Others in Relation Thereto Page 61-61, Image 61-62 (1823) available at The Making of Modern Law: Primary Sources. 1817 [Ordinances of the Town of Columbia, An Ordinance for Prohibiting the Firing of Guns in the Town of Columbia (1817). Whereas the practice of firing small arms within the town of Columbia is extremely dangerous to the lives; as well as the property of the inhabitants thereof, and ought to be strictly prohibited: Be it ordained by the Intendent and Municipal Wardens of the towns aforesaid, in council assembled, and it is hereby ordained by the authority of the same, That hereafter it shall not be lawful for any person to fire or discharge any gun, pistol or other small arms within the limits bounded by Henderson, Blossom, Lincoln and Upper streets; and if any person shall wantonly, knowingly, and willfully fire or discharge any gun, pistol, or other small arms within the said limits, such person shall forfeit and pay to the use of the town aforesaid, a sum not exceeding five dollars, for each and every such offence, to be sued for and recovered according to law. And whereas, offences of this kind may be committed by minors or other disorderly persons, who have no ostensible property whereof the said penalty can be levied. Be it therefore ordained by the authority aforesaid, That any gun, pistol or other small arms, fired or discharged by any such person in breach of this ordinance, shall be liable for the payment of the penalty or penalties aforesaid; and it shall be lawful for the intendant, either of the Wardens or constables, who shall see such person offending against this ordinance, to seize and take into possession the gun or pistol, or other small arms so fired or discharged, and despite the same with the Intendant or either of the Wardens; and if the person charged with the said offense, and convicted thereof, shall not within ten days after conviction pay the penalty incurred and the costs of prosecution, the same shall be sold to discharge the said penalty and costs: Provided nevertheless, That nothing in this ordinance contained shall extend to prohibit or restrain the usual exercises or duties of the military on muster or parade days, or in performance of patrol or other duties enjoined by law, or to prohibit or restrain any of the inhabitants of said town from shooting any mad dog, or any other dangerous animal found within the same, or from firing guns on the fourth of July, Christmas and New-Years days, or on any other day of general rejoicing of said town.]

1880 S.C. Acts 448, § 1, as codified in S.C. Rev. Stat. (1894). § 129 (2472.) § 1. Be it enacted by the Senate and House of Representatives of the State of South Carolina, not met and sitting in General Assembly, and by the authority of the same, That any person carrying a pistol , dirk, dagger, slung shot, metal knuckles, razor, or other deadly weapon usually used for the infliction of personal injury, concealed about his person shall be guilty of a misdemeanor and upon conviction thereof, before a Court of competent jurisdiction shall forfeit to the County the

<u>weapon so carried concealed</u> and be fined in a sum not more than two hundred dollars, or imprisoned for not more than twelve months, or both, in the discretion of the Court. § 2. It shall be the duty of every Trial Justice, Sheriff, Constable, or other peace officer, to cause all persons violating this Act to be prosecuted therefor whenever they shall discover a violation hereof.

## <u>TENNESSEE</u>

Offenses Affecting Public Safety, Ordinances of the City Council of Memphis, Ch.14, Art. 3, §1 (1867).
"Section 1. It shall be deemed a misdemeanor to do, or cause to be done, any of the following acts; and any person convicted thereof shall be fined not less than five nor more than fifty dollars:"
"7th. To discharge any firearm within the city, unless in self-defense or while executing some law.
8th. To carry concealed on or about the person any pistol, bowie-knife, dirk or other deadly weapon."
"12th. To violate any of the following provisions in relation to gunpowder and powder magazines:
        That no powder magazine shall be erected or kept within the corporate limits of the city without a special license from the Board of Aldermen, and then only upon such condition and in such place as the Board may direct.
        No merchant or other person shall keep on hand, or in store, or on his premises, within this city, more than twenty pounds of gunpowder at any one time, and this quantity shall be kept in a safe and secure box or canister completely closed.
        No vehicle employed to carry powder about the city for sale or distribution shall carry more than ten kegs at a time; and said vehicle shall be so arranged as effectually to cover up the kegs and to guard and protect the same from public view and from accidental fire.
        No boat shall deliver at this port more than ten kegs of gunpowder at one time without the permission of the Wharfmaster, and all gunpowder delivered from boats shall be delivered under the special superintendence of the said officer and according to his direction. And no person shall sell, or be allowed to sell, any gunpowder on board of or from any flatboat at this landing.
        No person shall send to or deliver in the city any powder concealed in any box or barrel, or in any other manner, purporting to be any other article, <u>under penalty of confiscation</u> of the whole package, in addition to the fines imposed for violations of this ordinance.

Upon information given and sworn to before the Recorder, it is hereby made the duty of the Chief of Police to obtain a search warrant from the Recorder, and make examination of the premises named in the information, for powder, and if more gunpowder be found therein than is allowed by the ordinance to be kept, the said gunpowder <u>shall be confiscated</u> to the use of the city, and the offender shall be fined as herein directed.

No powder manufactory shall be allowed to be erected or carried on within this city, or within one mile of the same, all such establishments and manufactories being hereby declared nuisances. And if any such establishment shall be begun or carried on, or if any powder-house or magazine shall be erected and used without the special license aforesaid, on report and proof made to him, the Recorder shall order said nuisances to be abated immediately by the Chief of Police."
1867, TN, Offenses Affecting Public Safety, Ordinances of the City Council of Memphis, Ch.14, Art. 3, §1
WM. H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, together with the Acts of the Legislature Relating to the City, with an Appendix (Memphis, TN: Bulletin Publishing Company, 1867), 337-339. Ch. 14 An Ordinance in Relation to Offenses Affecting Good Morals and Decency, Public Peace, Quiet, Safety and Property, and in Relation to Misdemeanors and Nuisances Generally, Art. 3 Offenses Affecting Public Safety, §1. Approved 11 July, 1867.


Claude Waller, Digest of the Ordinances of the City of Nashville, to Which are Prefixed the State Laws Incorporating, and Relating to, the City, with an Appendix Containing Various Grants and Franchises Page 364-365, Image 372-373 (1893) available at The Making of Modern Law: Primary Sources.
Ordinances of the City of Nashville, § 738. Every person found carrying a pistol, bowie-knife, dirk-knife, slung-shot, brass knucks, or other deadly weapon, shall be deemed guilty of a misdemeanor, and, upon conviction of such first offense, shall be fined from ten to fifty dollars, at the discretion of the court; but, upon conviction of every subsequent offense, shall be fined fifty dollars; Provided, however, That no ordinary pocket-knife and common walking canes shall be construed to be deadly weapons. . . § 740. It is expressly understood that the provisions of the above sections, relating to carrying such deadly weapons, do not extend to police of other officers, or persons that are entitled by law to carry such deadly weapons; nor does it extend to the act of handling or moving such deadly weapons in any ordinary business way. § 741. All pistols, knives, and other weapons, the carrying of which upon the person is unlawful, which may be found upon the persons of individuals arrested by the metropolitan police, <u>shall be seized</u> by the captain of the metropolitan police, and shall be retained by him and forfeited to the Mayor and

City Council, and shall, in no case, be returned to the individual from whom the same was taken or to any one claiming the same.

## TEXAS

1839 Tex. Gen. Laws 172, An Act Concerning Slaves, § 6
That no slave in this republic shall carry a gun or other deadly weapon without the written consent of his master, mistress or overseer; such arms or other weapons shall be liable to be taken by any person from any such negro, and all such property forfeited, if it does not exceed ten dollars in value; but any such property may be reclaimed by the owner on paying ten dollars to the person who may have so taken the same.

The Laws of Texas 1822-1897 Austin's Colonization Law and Contract; Mexican Constitution of 1824; Federal Colonization Law; Colonization Laws of Coahuila and Texas; Colonization Law of State of Tamaulipas; Fredonian Declaration of Independence; Laws and Decrees, with Constitution of Coahuila and Texas; San Felipe Convention; Journals of the Consultation; Proceedings of the General Council; Goliad Declaration of Independence; Journals of the Convention at Washington; Ordinances and Decrees of the Consultation; Declaration of Independence; Constitution of the Republic; Laws, General and Special, of the Republic; Annexation Resolution of the United States; Ratification of the same by Texas; Constitution of the United States; Constitutions of the State of Texas, with All the Laws, General and Special, Passed Thereunder, including Ordinances, Decrees, and Resolutions, with the Constitution of the Confederate States and the Reconstruction Acts of Congress Page 172, Image 349 (Vol. 2, 1898) available at The Making of Modern Law: Primary Sources. 1840
Laws of the Republic of Texas, [An Act Concerning Slaves (1840),] § 6. Be it further enacted, That no slave in this Republic shall carry a gun or other deadly weapon without the written consent of his master, mistress or overseer; such arms or other weapons shall be liable to be taken by any person from any such negro, and all such property forfeited, if it does not exceed ten dollars in value; but any such property may be reclaimed by the owner on paying ten dollars to the person who may have so taken the same.

1871 Tex. Laws 25, An Act to Regulate the Keeping and Bearing of Deadly Weapons.
§ 1. Be it enacted by the Legislature of the State of Texas, That any person carrying on or about his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife

manufactured or sold for the purposes of offense or defense, unless he had reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense of the State, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and on conviction thereof shall, for the first offense, be punished by fine of not less then than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fined imposed and collected shall go into the treasury of the county in which they may have been imposed; provided, that this section shall not be so contrued as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the State from keeping or carrying arms with their baggage; provided further, that members of the Legislature shall not be included under the term "civil officers" as used in this act. § 2. Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

George Washington Paschal, A Digest of the Laws of Texas: Containing Laws in Force, and the Repealed Laws on Which Rights Rest [Carefully Annotated] Page 1322-1324, Image 292-294 (Vol. 2, 1873) available at The Making of Modern Law: Primary Sources. 1871
An Act to Regulate the Keeping and Bearing of Deadly Weapons, Art. 6512. Any person carrying on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purpose of offense or defense, unless be has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense the state, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished

by fine of not less than twenty-five nor more than one hundred dollars, and <u>shall forfeit to the county</u> the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed: Provided, That this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the state from keeping or carrying arms with their baggage: Provided further, that members of the legislature shall not be included under the term "civil officers" as used in this act. Art. 6513. Any person charged under the first section of this act, who may offer or prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense. . . Art. 6515. This act shall not apply to nor be enforced in any county of the state which may be designated in a proclamation of the governor as a frontier county, and be liable to incursions of hostile Indians.

1879 Tex. Crim. Stat. tit. IX, Ch. 4 (Penal Code)
Art. 318. If any person in this state shall carry on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, he shall be punished by fine of not less than twenty-five nor more than one hundred dollars; and, in addition thereto, shall <u>forfeit to the county in which he is convicted, the weapon or weapons so carried</u>.
Art. 319. The preceding article shall not apply to a person in actual service as a militiaman, nor to a peace officer or policeman, or person summoned to his aid, not to a revenue or other civil officer engaged in the discharge of official duty, not to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process.
Art. 320. If any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of

any kind, or into a ball-room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other fire-arm, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of a knife manufactured and sold for the purposes of offense and defense, he shall be punished by fine not less than fifty nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person.

Art. 321. The preceding article shall not apply to peace officers, or other persons authorized or permitted by law to carry arms at the places therein designated.

Art. 322. Any person violating any of the provisions of articles 318 and 320, may be arrested without warrant by any peace officer, and carried before the nearest justice of the peace for trial; and any peace officer who shall fail to refuse to arrest such person on his own knowledge, or upon information from some credible person, shall be punished by fine not exceeding five hundred dollars.

Art. 323. The provisions of this chapter shall not apply to or be enforced in any county which the governor may designate, by proclamation, as a frontier county and liable to incursions by hostile Indians.

## **VIRGINIA**

1633 Va. Acts 219, Acts Made by the Grand Assembly, Holden At James City, August 21st, 1633, An Act That No Arms or Ammunition Be Sold To The Indians, Act X
It is ordered and appointed, That if any person or persons shall sell or barter any guns, powder, shot, or any arms or ammunition unto any Indian or Indians within this territory, the said person or persons <u>shall forfeit to public uses all the goods and chattels</u> that he or they then have to their own use, and shall also suffer imprisonment during life, the one half of which forfeiture shall be to him or them that shall inform and the other half to public uses.

1642 Va. Acts 255, Acts of March 2nd, 1642, Act XXIII
Be it also enacted and confirmed, that what person or persons soever shall sell or barter with any Indian or Indians for piece, powder and shot and being thereof lawfully convicted, shall forfeit his whole estate . . . and if any person shall barter or trade with the Indians for any other commodities such person shall suffer imprisonment at the discretion of the Governor and Counsel. . . What person or persons soever within the colony, shall lend any Indian either piece, powder and shot, it shall be lawful for any person meeting with any such Indian so furnished, to

take away either piece, powder or shot, so as such person taking away . . . the party delinquent for his just offence shall forfeit two thousand pounds of tobacco . . . Available at https://archive.org/details/statutesatlargeb01virg

1651 Va. Acts 365, Articles At The Surrender Of The Country, art. 13 Articles Agreed On And Concluded At James City In Virginia For The Surrendering And Settling Of That Plantation Under The Obedience And Government Of The Commonwealth Of England . . . Art. 13: That all ammunition, powder and arms, other than for private use <u>shall be delivered up</u>, security being given to make satisfaction for it.

Act of May 5, 1777, ch. 3, in 9 HENING'S STATUTES AT LARGE 281, 281-82 (1821)
An act to oblige the free male inhabitants of this state above a certain age to give assurance of Allegiance to the same, and for other purposes. WHEREAS allegiance and protection are reciprocal, and those who will not bear the former are not entitled to the benefits of the later, Therefore Be it enacted by the General Assembly, that all free born male inhabitants of this state, above the age of sixteen years, except imported servants during the time of their service, shall, on or before the tenth day of October next, take and subscribe the following oath or affirmation before some one of the justices of the peace of the county, city, or borough, where they shall respectively inhabit; and the said justice shall give a certificate thereof to every such person, and the said oath or affirmation shall be as followeth, viz . . . And the justices tendering such oath or affirmation are hereby directed to deliver a list of the names of such recusants to the county lieutenant, or chief commanding officer of the militia, who is hereby authorised and directed forthwith to cause such recusants to <u>be disarmed</u> . . . And be it farther enacted, That every person above the age before mentioned, except as before excepted, refusing or neglected to take and subscribe the oath or affirmation aforesaid, shall, during the time of such neglect or refusal, be incapable to holding any office in this state, serving on juries, suing for any debts, electing or being elected, or buying lands, tenements, or hereditaments.

1786 Va. Acts 35. (Ch. 49, An Act Forbidding and Punishing Affrays).
"Be it enacted by the General Assembly, that no man, great nor small, of what condition soever he be, except the Ministers of Justice in executing the precepts of the Courts of Justice, or in executing of their office, and such as be in their company assisting them, be so hardy to come before the justices of any court, or either of their Ministers of Justice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prison, at the pleasure of a Court; nor go nor ride armed by night nor by day, in fair or markets,

or in other places, in terror of the county, upon pain of being arrested and committed to prison by any Justice on his own view, or proof by others, there to abide for so long a time as a jury, to be sworn for that purpose by the said Justice, shall direct, and in like manner to <u>forfeit his armour</u> to the Commonwealth; but no person shall be imprisoned for such offence by a longer space of time than one month."

1786, VA, Ch. 49, An Act Forbidding and Punishing Affrays

Acts Passed at a General Assembly of the Commonwealth of Virginia Begun and Held at the Public Buildings in the City of Richmond, on Monday the Sixteenth Day of October in the Year of Our Lord, One Thousand Seven Hundred and Eighty-Six (Richmond, VA: Dixon, Holt, Nicolson, and Davies, 1786), 35. Chapter 49, An Act Forbidding and Punishing Affrays. Exact date of act's passage not mentioned in text.

Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force; with a New and Complete Index. To Which are Prefixed the Declaration of Rights, and Constitution, or Form of Government Page 187, Image 195 (1803) available at The Making of Modern Law: Primary Sources.

Race and Slavery Based | Virginia | 1792

[An Act to Reduce into one, the Several Acts Concerning Slaves, Free Negroes, and Mulattoes (1792),] §§ 8-9.

§8. No negro or mulatto whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, but all and every gun, weapon, and ammunition found in the possession or custody of any negro or mulatto, <u>may be seized</u> by any person, and upon due proof thereof made before any Justice of the Peace of the County or Corporation where such seizure shall be, shall by his order be forfeited to the seizor for his own use ; and moreover, every such offender shall have and receive by order of such Justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offense.

§ 9. Provided, nevertheless, That every free negro or mulatto, being a house-keeper, may be permitted to keep one gun, powder and shot; and all negroes and mulattoes, bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder, shot, and weapons offensive or defensive, by license from a Justice of Peace of the County wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes, or of the owners of such as are slaves.

Staunton, The Charter and General Ordinances of the Town of Lexington, Virginia Page 87, Image 107 (1892) available at The Making of Modern Law: Primary Sources, 1867.

Ordinances of The Town of Lexington, VA, Of Concealed Weapons and Cigarettes, § 1. If any person carrying about his person, hid from common observation, any pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, he shall be fined not less than twenty dollars nor more than one hundred dollars; and any of such weapons mentioned shall be forfeited to the town. Nothing in this section shall apply to any officer of the town, county or state while in the discharge of his duty.

Charter and Ordinances of the Town of Front Royal, Va. Page 18, Image 18 (1899) available at The Making of Modern Law: Primary Sources. 1884
Ordered, that any person in the Corporation carrying about his person, concealed from public view, any pistol, dirk, razor, or any like weapon or other weapons, shall be fined not exceeding $20.00 for each offense, and the said pistol, dirk, razor, or such like weapon so found, shall be confiscated by the Mayor and sold at public auction to the highest bidder for cash and the proceeds turned over to the School Fund of the Corporation.

The Code of Virginia: With the Declaration of Independence and the Constitution of the United States; and the Constitution of Virginia Page 897, Image 913 (1887). Offences Against the Peace, § 3780. Carrying Concealed Weapons, How Punished. Forfeiture and Sale of Weapons. If any person carry about his person, hid from common observation, any pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, he shall be fined not less than twenty nor more than one hundred dollars, and such pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, shall be forfeited to the commonwealth and may be seized by an officer as forfeited; and upon the conviction of the offender the same shall be sold and the proceeds accounted for and paid over as provided in section twenty-one hundred and ninety: Provided, that this section shall not apply to any police officer, town or city sergeant, constable, sheriff, conservator of the peace, or collecting officer, while in the discharge of his official duty.

## WASHINGTON STATE

Wall Walla City Ordinance No. 2. An Ordinance Defining Offenses and Fixing the Punishment Thereof, §27 (16 Aug., 1878).
"Sec. 27. No person shall carry any concealed weapons within the corporate limits of the City of Walla Walla, and any person convicted thereof shall be fined in any sum not less than five or more than twenty-five dollars; and such weapons shall be confiscated and forfeited, and it shall be the duty of the Marshal, his Deputies and the Policemen of the City, upon being satisfied, by verbal complaint or other

information, that any person is carrying any weapon concealed upon his person, to arrest and search such person, and if any such weapon is found, to <u>take the same</u> and convey such person before a Justice of the Peace and make complaint against him, and upon his conviction, to <u>sell such weapon at auction</u> to the highest bidder, and pay the proceeds into such Justice's court. All sheath or bowie knives, pistols, and pocket knives with blades more than four inches long, also all sling-shots, metal knuckles, clubs, sticks or other instruments, capable of inflicting great bodily injury, shall be deemed weapons within the meaning of this section when carried either wholly or partially concealed; provided, that this section shall not apply to the City Marshal, his Deputies, or Policemen, or City Watchmen, or private watchmen employed as such by private citizens, nor the Sheriff, Deputy Sheriff, or any Constable of Walla Walla County, or to any person temporarily sojourning in the City for a period of not exceeding five days' prior to the filing of the complaint, but in no case shall it be necessary to specify in the complaint that the accused does not belong to the excepted classes herein specified."

1878, WA, Wall Walla City Ordinance No. 2. An Ordinance Defining Offenses and Fixing the Punishment Thereof, §27

Alex Mackay and W.T. Dovell eds., Amended Charter and Ordinances of the City of Walla Walla Together with General Laws of the State of Washington Applicable Thereto (Walla Walla, Wa: Press of the Walla Walla Union, 1896), 170. City Ordinance No. 2. An Ordinance Defining Offenses and Fixing the Punishment Thereof, §27.

1933 Wash. Sess. Laws 335-36, An Act Relating to Machine Guns, Regulating the Manufacture, Possession, Sale of Machine Guns and Parts, and Providing Penalty for the Violation Thereof, and Declaring an Emergency, ch. 64, §§ 1-5.

§ 1. That it shall be unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun, or any part thereof capable of use or assembling or repairing any machine gun: provided, however, that such limitation shall not apply to any peace officer in the discharge of official duty, or to any officer or member of the armed forces of the United States or the State of Washington. § 2. For the purpose of this act a machine gun is defined as any firearm or weapon known as a machine gun, mechanical rifle, submachine gun, and/or any other weapon, mechanism, or instrument not requiring that the trigger be pressed for each shot and having a reservoir clip, disc, drum belt, or other separable mechanical device for storing, carrying, or supplying ammunition which can be loaded into such weapon, mechanism, or instrument, and fired therefrom at the rate of five or more shots per second. § 3. Any person violating any of the provisions of this act shall be guilty of a felony. § 4. All machine guns, or parts thereof, illegally held or possessed are hereby declared to

be contraband, and it shall be the duty of all peace officers, and/or any officer or member of the armed forces of the United States or the State of Washington to seize said machine gun, or parts thereof, wherever and whenever found. § 5. This act is necessary for the immediate preservation of public health and safety, and shall take effect immediately.

## WEST VIRGINIA

1925 W.Va. Acts 30-31, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms . . . , ch. 3, § 7, pt. b. (b) It shall be unlawful for any person to carry, transport, or have in his possession any machine gun, sub-machine gun, and what is commonly known as a high powered rifle, or any gun of a similar kind or character, or any ammunition therefor, except on his own premises or premises leased to him for a fixed term, until such person shall have first obtained a permit from the superintendent of the department of public safety of this state, and approved by the governor, or until a license therefore shall have been obtained from the circuit court as in the case of pistols and all such licenses together with the numbers identifying such rifle shall be certified to the superintendent of the department of public safety. Provided, further, that nothing herein shall prevent the use of rifles by bona fide rifle club members who are freeholders or tenants for a fixed term in this state at their usual or customary place of practice, or licensed hunters in the actual hunting of game animals. No such permit shall be granted by such superintendent except in cases of riot, public danger, and emergency, until such applicant shall have filed his written application with said superintendent of the department of public safety, in accordance with such rules and regulations as may from time to time be prescribed by such department of public safety relative thereto, which application shall be accompanied by a fee of two dollars to be used in defraying the expense of issuing such permit and said application shall contain the same provisions as are required to be shown under the provisions of this act by applicants for pistol licenses, and shall be duly verified by such applicant, and at least one other reputable citizen of this state. Any such permit as granted under the provisions of this act may be revoked by the governor at his pleasure upon the revocation of any such permit the department of public safety shall immediately seize and take possession of any such machine gun, sub-machine gun, high powered rifle, or gun of similar kind and character, held by reason of said permit, and any and all ammunition therefor, and the said department of public safety shall also confiscate any such machine gun, sub-machine gun and what is commonly known as a high powered rifle, or any gun

of similar kind and character and any and all ammunition therefor so owned, carried, transported or possessed contrary to the provisions of this act, and shall safely store and keep the same, subject to the order of the governor.

## WISCONSIN

1883 Wis. Sess. Law 1034, An Act to Incorporate the City of Nicolet, ch. 351, § 32, pt. 45.
To regulate and prohibit the carrying or wearing by any person, under his clothes, or concealed about his person, of any pistol, sling-shot, or knuckles, bowie-knife, dirk knife, or dirk or dagger, or any other dangerous or deadly weapon, and to provide for the confiscation or sale of such weapon.

1883 Wis. Sess. Laws 713, vol. 2, An Act to Revise, Consolidate and Amend the Charter of the City of Oshkosh, the Act Incorporating the City, and the Several Acts Amendatory Thereof, ch. 6, § 3, pt. 56.
To regulate or prohibit the carrying or wearing by any person under his clothes, or concealed about his person, any pistol or colt, or slung shot, or cross knuckles or knuckles of lead, brass, or other metal or bowie knife, dirk knife, or dirk or dagger, or any other dangerous or deadly weapon; and to provide for the confiscation or sale of such weapon.

Charter and Ordinances of the City of La Crosse, with the Rules of the Common Council Page 176, Image 179 (1888) available at The Making of Modern Law: Primary Sources.
An Ordinance to Provide for the Government and Good Order of the City of La Crosse, for the suppression of vice and immorality, and the prevention of Crime,] § 15. It shall be unlawful for any person other than a policeman or other officer authorized to maintain the peace and to serve process to carry or wear any pistol, slungshot, knuckles, bowie knife, dirk or any other dangerous weapon, and any person convicted of a violation of this section shall be punished by a fine not exceeding one hundred dollars. In all cases of conviction hereunder, any and all dangerous weapons found on the person of the accused shall be confiscated and become the property of the city of La Crosse, and may be sold for the benefit thereof at such times and in such manner as the common council may from time to time direct.

## HUNTING

## ARIZONA

1936 Ariz. Sess. Laws 204, Game and Fish Preservation, § 1543.
It shall be unlawful for any person to take into the field or forest, or to have in his possession, while hunting wild animals or birds, any device designed to silence, muffle or minimize the report of any firearm, whether separated from or attached to such firearm. It shall be unlawful to kill or attempt to kill any deer, bear . . . except through the use of a gun propelling one ball or bullet at a single charge. Provided, however, that no ball or bullet weighing less than 87 grains may be used in taking deer, elk . . . The gun or implement used by any person in illegally killing any song or insectivorous bird is a nuisance and <u>may be seized</u> by any peace officer and confiscated by the warden for not more than one year.

## DELAWARE

1863 Del. Laws 365, An Act to Amend Chapter 55 of the Revised Code of the State of Delaware, Entitled "For The Protection Of Fish, Oysters and Game," chap. 328, § 10.
It shall be unlawful for any person not being a citizen of this State, to catch, take or kill, by himself or by his agent, or as the agent for or in the employment of any other person, whether such person be or be not a citizen of this State, any fish, wild goose . . . upon any of the waters of this state . . . or to enter upon such waters, land or marsh for such unlawful purpose, and any person offending against the provisions of this Section, shall be deemed guilty of a misdemeanor, and shall pay a fine of not less than fifty dollars and not more than one hundred dollars, and any boat or vessel, with her tackle, apparel and furniture, and <u>any gun</u> . . . used with the consent or knowledge of the owner thereof, shall be <u>forfeited</u> and may be seized, condemned and sold as hereinafter provided.

1893 Del. Laws 410, For the Protection Of Fish, Oysters, and Game, chap. 422, § 16.
If any person or persons shall enter upon any lands, not owned by himself, with gun and dog, or with gun alone, for the purpose of shooting any kind of birds or game without first obtaining permission to do so by the owner or occupant, he shall forfeit and pay a fine of five dollars; and if he shall not pay the said fine he shall <u>forfeit his gun</u> until redeemed, as hereinafter provided . . .

## KENTUCKY

A Digest of the Statute Laws of Kentucky, of a Public and Permanent Nature, from the Commencement of the Government to the Session of the Legislature, Ending on the 24th February, 1834. With References to Judicial Decisions Page 788, Image 794 (Vol. 1, 1834) available at The Making of Modern Law: Primary Sources. 1834

An Act for the Better Preservation of the Breed of Deer, and Preventing unlawful Hunting, § 8. And be it further enacted by the authority aforesaid, That whosoever shall hereafter use any fire-hunting or the killing of any deer by such means on any patented land, every person present at such fire hunting shall forfeit and pay twenty shillings for every such offense; and if any Indian be found fire-hunting as aforesaid, it shall and may be lawful for the owner of such land, or his or her overseer, to take away the gun of such Indian, and the same to keep to his own use.

1904 Ky. Acts 150-51, An Act Creating the Offices of Fish and Game Wardens and Defining the Powers and Duties and Fixing the Compensation of such Officers, and for the Further Protection and Preservation of Fish, Game and Birds in the State of Kentucky, ch. 68, § 3.

Game wardens . . . may arrest on sight and without warrant any person detected by them in the act of violating any such law; they shall have the same right as sheriffs to require aid in executing any process or in arresting without process any person found by them in the act of violating any of said laws; and they shall have authority to seize without process; and birds, fish or game then found in the possession of any such person, together with the guns, nets, seines, traps or other devices, with which the same were taken or killed, and destroy or confiscate such guns, nets, seines, traps or other devices, and forthwith convey such offender before a court or magistrate . . . .

## MARYLAND

1882 Md. Laws 257, An Act to . . . Exempt All That Portion of the Waters of the Chesapeake Bay Lying Northward of a Certain Line Therein Described from the Operation and Effect of Sections One and Three . . ., ch. 180, § 8

. . . the special police appointed by this act are authorized to arrest any person or persons who may be discovered in the act of hunting or shooting crippled ducks, or in purloining ducks that have been killed by other persons having a proper license to shoot, as well as other persons violating the provisions of this section, and upon conviction thereof before any justice of the peace of Cecil or Harford Counties, the license of such persons or persons shall be revoked, and such persons or persons, whether licensed or not, shall be fined not less than twenty dollars for each offense, and shall forfeit the boat and gun or guns, and material so employed in violation of

the provisions of this section, which boat and gun or guns, and material shall be sold, and the proceeds of such fine and sale, after the costs of prosecution have been paid, shall go to the officer or officers making the arrest. . .

1890 Md. Laws 297, Sabbath Breaking, ch. 290, § 1
No person whatsoever shall hunt with dog or gun on the Lord's day, commonly called "Sunday," nor shall profane the Lord's day by gunning, hunting, fowling, or by shooting or exploding any gun, pistol or firearm of any kind, or by any other unlawful recreation or pastime, and any person violating the provisions of this section shall, for every such offense, upon conviction before any justice of the peace for the county, forfeit the gun, pistol or other firearm used in such violation, and be fined not less than five dollars, nor more than thirty dollars. . .

## MASSACHUSETTS

1717 Mass. Acts 336, An Act For The Better Regulation Of Fowling
…That if any person or persons shall, at any time after two months from the publication of this act, make use of any boat, canoe, float, raft or other vessel, wherewith to approach to, and shoot at any waterfowl, in any part of this province, he or they so offending, shall each of them forfeit and pay, for every such offence, the sum of forty shillings to the informer. And every such offender shall be, and hereby is prohibited and restrained from using a gun to shoot at waterfowl for the space of three years next after his offence, upon the like penalty of forty shillings for each time he shall presume so to offend, to be disposed of in manner as the forfeiture aforementioned.

## NEW HAMPSHIRE

1905 N.H. Laws 515, An Act to Prohibit the Use of Swivel and Punt Guns, ch. 98, § 1.
IF any person shall, at any time, within this state, hunt, pursue, shoot at, or kill any game bird, as defined by section 34 of chapter 79 of the laws of 1901, with any punt gun swivel gun, or other gun not fired from the shoulder, or of larger bore than ten gauge, he shall be fined not more than ten dollars for each offense and shall forfeit all guns and implements with which the offense was committed. And all guns and implements so used shall be seized by any detective, constable or police officer and shall be destroyed by the person seizing them.

## NEW JERSEY

Charles Nettleton, Laws of the State of New-Jersey Page 26, Image 53 (1821) available at The Making of Modern Law: Primary Sources. 1771

An Act for the Preservation of Deer, and other game, and to prevent trespassing with guns (1771), § 1. Be it Enacted by the Governor, Council and General Assembly of this colony of New Jersey, and it is hereby enacted by the authority of the same, That if any person or persons shall presume, at any time after the publication hereof, to carry any gun on any lands not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing from the owner or owners, or legal possessor, every such person so offending, and convicted thereof, either upon the view of any justice of the peace within this colony, or by the oath or affirmation of one or more witnesses, before any justice of the peace of either of the counties, cities, or towns corporate of this colony, in which the offender or offenders may be taken or reside, he or she, or they, shall for every offence, forfeit and pay to the owner of the soil, or his tenant in possession, the sum of forty shillings, with costs of sit; which forfeiture shall and may be sued for and recovered by the owner of the soil, or tenant in possession before any justice of the peace in this colony, for the use of such owner or tenant in possession. . . § 3. And be it further enacted by the authority aforesaid, That if the person or persons offending against this act be non-residents of this colony, he or they shall forfeit and pay for every such offence, five pounds, and <u>shall forfeit his or their gun or guns</u> to any person or persons, who shall inform and prosecute the same to effect, before any justice of the peace in any county of this colony, wherein the offender or offenders may be taken or apprehended.

## NORTH CAROLINA

1756-1776 N.C. Sess. Laws 168, An Act To Amend An Act Entitled, "An Additional Act To An Act, Entitled, An Act To Prevent Killing Deer At Unseasonable Times, And For Putting A Stop To Many Abuses Committed By White Persons Under Pretense Of Hunting, ch. 13. 1768

Whereas by the before recited act, persons who have no settled habitation, or not tending five thousand corn hills, are prohibited from hunting, under the penalty of five pounds, and <u>forfeiture of his gun</u>[.]

John. A Haywood, Manual of the Laws of North-Carolina, Arranged under Distinct Heads in Alphabetical Order. With References from One Head to Another, When a Subject is Mentioned in Any Other Part of the Book Than under the Distinct Where It is Placed Page 178, Image 186 (1801) available at The Making of Modern Law: Primary Sources. 1768

Hunting. 1768. § 2. From and after the First day of January next, no person whatever (masters excepted) not having a freehold of one hundred acres of land within this province, or tending ten thousand corn hills, at least five feet distance each, shall hunt or kill deer, under the penalty of ten pounds proclamation money for every offence; and moreover shall <u>forfeit his gun</u>, or have the value thereof; to be recovered by action of debt, bill, plaint or information, by any person who will prosecute for the same, wherein, upon conviction, over and above the said penalty and forfeiture as aforesaid, the defendant shall be committed to jail by order of the court, there to remain, without bail or mainprize for one month. § 5. Nothing herein shall bar or hinder an overseer of a slave or slaves from hunting and killing deer with a gun, on his employer's lands, or the wastelands of the public, within five miles of the residence of such overseer.

## VIRGINIA

Virginia State Laws 1839 CHAP. 80. – An ACT to prevent the destruction of wild fowl in the counties of Accomack and Fairfax.  (Passed April 9, 1839.)
   1. *Be it enacted by the general assembly,* That no person whatsoever shall at any time shoot or kill wild fowl in the waters of, or within the jurisdiction of the counties of Accomack and Fairfax, by or with the aid of skiffs, and any person being convicted of a violation of this act before any justice of the peace of said county of Accomack, shall forthwith <u>surrender his gun</u> and skiff to the said justice, who shall cause the same to be sold; one half of the proceeds thereof shall go to the commonwealth for the use of the literary fund, and the other half to the informer.

1852 Va. Acts 133, An Act Amending The Twentieth Section Of Chapter . . . Concerning Wild Fowl, § 20
If any person, except from the land, shall shoot at or kill wild fowl during the night within this state, … he may be convicted thereof before a justice; and on conviction, shall <u>surrender his gun…</u>

Third Edition of the Code of Virginia: Including Legislation to January 1, 1874
Page 802-803, Image 821-822 (1873) available at The Making of Modern Law: Primary Sources. 1865
Unlawful Hunting: Hunting on another's land, or in the streets of a city or town, or along a public road, prohibited; penalty; how recoverable, § 5. If any person shall hunt, shoot, fowl or range with or without dogs, on the lands of another, without the consent of the owner or tenant of such lands, or shoot along any public road, or in the streets of any town or village, in any of the counties of this commonwealth, on the lands comprehended in the survey of any proprietor, he shall be deemed

guilty of a trespass, and shall be fined for each offense five dollars – the fine to be double in every instance if the offense be committed in the night or on Sunday – For the use of the owner or tenant of the lands, and for the commonwealth when the offense is committed in the public roads or in the streets of any town or village, to be recovered by warrant before any justice of the peace, together with all costs and charges attending the collection for the same, and shall moreover, forfeit as aforesaid, his gun and shooting apparatus, and his dog or dogs shall be killed if the justice shall, in his discretion, so order; and when any person shall be convicted a third time of said offense, the justice rendering judgment therefor shall require him to enter into a recognizance, with sufficient security, for his good behavior for twelve months; or, if he fail to give such security, to commit to jail for one month, unless it be sooner given, such recognizance to be forfeited if such person offend as aforesaid within the time limited in the recognizance.

1875 Va. Acts 109, An Act To Amend And Re-enact Section Twelve, Chapter Ninety-nine, Code of Eighteen Hundred And Seventy-Three, for the Protection Of Wild Fowl in the Counties Bordering on the Potomac And Rappahannock, ch. 100, § 12
If any person shall, at any time, either in the night or day-time, shoot at wild fowl in any county bordering . . . with any gun which cannot be conveniently discharged from the shoulder at arm's length without a rest, or have such gun in his possession on a boat, a justice of any such county shall require such gun to be surrendered, and shall order it to be destroyed, and shall fine the offender ten dollars. . .


## CATHOLICS

## MARYLAND

An Act to Prevent Popery within this Province, Votes and Proceedings of the Lower House of Assembly of the Province of Maryland (22 May, 1756).
"And be it further Enacted, That all such Armour, Gunpowder, and Ammunition, of whatsoever Kinds, as any Papist whatever, within this Province, hath or shall have in his House or Houses, or elsewhere, or in the Hands and Possession of any other Person at his or their Disposition, shall be taken from such Papist, or Others, which have or shall have the same to the Use of such Papist, by Warrant of any Four Justices of the Peace of the County where such Papist shall be Resident (other than such necessary Weapons as shall be thought fit by the same Justices to remain and be allowed for the Defence of the Person or Persons of such Papists, or for the

Defence of his, her or their Houses), and that such Armour and Ammunition, so taken, shall be kept and maintained in such Places as the Justices of the Peace, for the said County, shall, at their next County Court, direct and appoint.

And be it further Enacted by the Authority aforesaid, That if any such Papist, having, or which shall have, any such Armour, Gunpowder, and Ammunition, or any of them, or if any other Person or Persons, who shall have any such Armour, Gunpowder, and Ammunition, or any of them, to the Use of any such Papist, shall refuse to declare or manifest to the said Four Justices, or either of them, what Armour, he, she or they have, or shall have, or shall let, hinder, or disturb, the Delivery thereof to the said Justices, or to any other Person or Persons authorized by their Warrant to take and seize the same, then every such Person, so offending, contrary to this Act in this Behalf, shall forfeit and lose, to the Right Honourable the Lord Proprietary, his Heirs and Successors, his and their said Armour, Gunpowder, and Ammunition ; and shall also be imprisoned by Warrant of or from any Four Justices of the Peace of such County, by the Space of Three Months, without Bail or Mainprize."

1756, MD, An Act to Prevent Popery within this Province
Votes and Proceedings of the Lower House of Assembly of the Province of Maryland, February Session, 1756 (Annapolis, MD: Jonas Green, 1757), 95.
See also: Maryland Historical Society, Proceedings and Acts of the General Assembly of Maryland ; 24, 1755-1756, Ed. William H. Browne, vol. 52 (Baltimore, MD: The Lord Baltimore Press, 1935), 454.

"And be it further Enacted, That all Arms Gunpowder and Ammunition of what kind soever any Papist or reputed Papist within this Province hath or shall have in his House or Houses or elsewhere shall be taken from Such Papist or reputed Papist by Warrant under the hand of one Justice of the Peace for the County wherein such Papist or reputed Papist shall be Resident and that the said Arms and Ammunition so taken Shall be kept in Such Place as the Said Justice shall appoint. And be it further Enacted that if any Such Papist or reputed Papist having or which Shall have any Armes Gunpowder and Ammunition or any of them shall refuse to declare or manifest the Same to the Said Justice of the Peace or to any other Person Authorized by the Warrant of the Said Justice to take and Seize the same then every Such Person so Offending shall forfeit and lose the Said Armour Gunpowder and Ammunition and Shall also be imprisoned by Warrant of or from the Said Justice for the Space of three Months without Bail or Mainprize."

1756, MD, Proceedings and Acts of the General Assembly of Maryland, Ed. William H. Browne

**DUELING**

## PENNSYLVANIA

Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred, to the Twentieth Day of March, One Thousand Eight Hundred and Ten Page 182, image 226 (Vol. 3, 1810) available at The Making of Modern Law: Primary Sources.

An Act for the prevention of vice and immorality, and of unlawful gaming, and to restrain disorderly sports and dissipation, § 10. And be it further enacted by the authority aforesaid, That if any person within this commonwealth shall challenge, by word or writing, the person of another to fight at sword, rapier, pistol, or other deadly weapon, such person so challenging, shall forfeit and pay for every such offense, being thereof lawfully convicted in any court of record within this commonwealth, by the testimony of one or more witnesses, or by the confession of the party offending, the sum of two hundred and eighty dollars, or shall suffer twelve months imprisonment, without bail or mainprize; and the person who shall accept any such challenge shall, in like manner, upon conviction, forfeit and pay the sum of one hundred and forty dollars, or suffer such imprisonment for and during six months; and if any person shall willingly and knowingly carry and deliver any written challenge, or shall verbally deliver any message, purporting to be a challenge, or shall consent to be a second in any such intended duel, and shall be thereof legally convicted as aforesaid, he or they, so offending shall , for every such offense, forfeit and pay the sum of one hundred and forty dollars, or suffer six months imprisonment as aforesaid; and moreover the person challenging, and the person accepting the challenge, the person delivering the same, and the person accepting the challenge, the person delivering the same, and the person consenting to become a second to either of the parties, shall, for every offence, forfeit and be deprived of all the rights of citizenship within this commonwealth, for the space of seven years after conviction.

Source: https://firearmslaw.duke.edu/repository/search-the-repository/