ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
CHRISTINA R.B. LÓPEZ
Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3479
 Fax: (415) 703-1234
 E-mail: John.Echeverria@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **KIM RHODE et al.,**<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>　　　　　　　Defendant. | 3:18-cv-00802-BEN-JLB<br><br>**DECLARATION OF SIDNEY JONES**<br><br>Courtroom:　5A<br>Judge:　　　Hon. Roger T. Benitez<br>Action Filed: May 17, 2017 |

**DECLARATION OF SIDNEY JONES**

I, SIDNEY JONES, declare:

1. I am a Special Agent in Charge for the California Department of Justice, Bureau of Firearms (hereafter generally referred to together as the "Department"). I make this declaration of my own personal knowledge and experience and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I have been the Special Agent in Charge for the Southern California region since 2019. In this capacity, I supervise teams of Department Special Agents who are assigned to handle various tasks, including: recovering firearms and ammunition from prohibited individuals; monitoring gun shows for illegal activities; conducting surveillance on gun dealers suspected of illegal activity; and investigating illegal trafficking of firearms, manufacturing of assault weapons and machine guns, and illegal possession of various magazines and ammunition. Before becoming a Special Agent in Charge, I was a Special Agent Supervisor from 2014 to 2019, in which I also handled the tasks just described. I have served in various other law enforcement positions since 1990.

3. In accordance with this Court's order, issued on July 18, 2023, ECF No. 90, this declaration seeks to provide information on the investigations of persons who underwent background checks for ammunition purchases and were identified as prohibited persons, and on the seizure of firearms and ammunition from, arrests of, and case dispositions for such persons.

**I. DENIED AMMUNITION PURCHASE INVESTIGATIONS**

4. I understand that the purpose of including ammunition background checks in Proposition 63 was to stop ammunition from getting into the hands of individuals prohibited by law from possessing firearms and ammunition by preventing them from actually buying any ammunition. That was and is the

primary purpose of requiring ammunition background checks at the point of sale, and it has successfully denied prohibited persons from making such ammunition purchases.

5. I also understand that the Court has requested information about an ancillary benefit of ammunition purchase denials, apart from this primary purpose, relating to investigations into prohibited persons, gun seizures, and prosecutions. In accordance with that request, this section of my declaration provides information as to how denied ammunition purchases can provide investigative leads to locate and prioritize specific armed and prohibited individuals, which are the primary focus of the Department's enforcement efforts.

6. In 2006, California became the first state in the nation to monitor individuals who legally purchased or acquired firearms and later became prohibited from owning or possessing them. The Armed and Prohibited Persons System (APPS) database cross-references firearms purchasers against other records for individuals who are prohibited from owning or possessing firearms. The Department utilizes Crime Analysts, Special Agents, and Special Agent Supervisors to locate and seize firearms from prohibited persons identified through the APPS database, thereby preventing and reducing incidents of violent crime.

7. Individuals are entered into the APPS database when they legally purchase or acquire a firearm. They are moved to the Armed and Prohibited Persons System within the database if they become prohibited. Prohibited persons are identified by running daily manual queries of the databases that cross-reference the population of known firearm owners against individuals who may have had a prohibiting triggering event (PTE) within the past 24 hours. New individuals are added daily, creating a constantly changing and growing dataset.

8. Each of the Department's Bureau of Firearms offices has its own team of Crime Analysts and Special Agents for enforcement efforts. The Crime Analysts access the APPS database daily and develop investigative packages of armed and

1  prohibited people for each team of Special Agents to contact.  The Crime Analysts
2  are required to crosscheck several databases to confirm addresses, photos, arrest
3  records, and the status of armed and prohibited individuals, among other relevant
4  information.  Using these investigative packages, Special Agents attempt to locate
5  the firearm(s) associated with each armed and prohibited individual via a consent
6  search, probation or parole search, or a search warrant.  Often, the armed and
7  prohibited individual will be in possession of numerous firearms, many of which
8  were not associated with that individual in the APPS database.
9       9.    Special Agents and Crime Analysts are continuously working to research
10 and develop viable APPS investigations to determine which leads will potentially
11 provide the greatest possible number of positive results.  But one way that an
12 investigation can hit a dead end is if the armed and prohibited individual cannot be
13 located because the individual no longer resides at the address that is in the APPS
14 database.
15      10.   Monitoring denied ammunition purchases helps to address this problem
16 because the denied purchases often provide more current addresses than those
17 previously available in the APPS database.  A more current address can help
18 Special Agents locate an armed and prohibited individual, when they could not do
19 so before, so that they can attempt to locate the firearm(s) associated with that
20 individual via a consent search, probation or parole search, or a search warrant.
21      11.   Another reason that monitoring denied ammunition purchases is an
22 effective strategy is that attempted ammunition purchases signal to Special Agents
23 that a prohibited person still possesses and may be actively using a firearm.  While
24 the use of ammunition denial data is ancillary to regular APPS investigations,
25 nearly every investigation based on an ammunition denial results in a seizure of
26 firearms and/or ammunition from a prohibited person.
27      12.   In July 2020, Special Agents served a search warrant on an individual
28 who had tried to purchase ammunition while having a mental health prohibition.

During the search, Special Agents located three handguns, two shotguns, five rifles (three of which were assault weapons), twelve standard capacity magazines, ten large capacity magazines, and approximately 7,655 ammunition rounds.

13. In July 2020, Special Agents served a search warrant on an individual who had tried to purchase ammunition while being prohibited by a probation condition. During the search, Special Agents located five handguns (three of which were unserialized ghost guns), one rifle, one shotgun, one assault weapon, eight standard capacity magazines, three large capacity magazines, and about 218 ammunition rounds.

14. An additional example is from February 2021, during which Special Agents served a search warrant on an individual who had tried to purchase ammunition while being prohibited by a felony conviction. Special Agents located in the individual's residence two unserialized ghost guns (one semiautomatic handgun and one assault weapon), ten magazines, and about 500 ammunition rounds. The individual was arrested.

15. In May 2021, Special Agents served a search warrant on an individual who had tried to purchase ammunition even while prohibited by a felony conviction. Special Agents located in the individual's residence 24 rifles, 15 handguns, 11 shotguns, 28 large capacity magazines, and about 16,000 ammunition rounds. The individual was arrested.

16. A final example is from November 2022, when an individual with a prohibiting misdemeanor conviction tried to purchase ammunition. Special Agents served a search warrant on the individual, and during the search located seven rifles (including an unregistered assault weapon and a short barrel rifle), two shotguns, two handguns, eleven magazines, and approximately 1,200 ammunition rounds. The individual was arrested, with criminal cases pending in court.

17. As noted above, stopping prohibited persons from purchasing ammunition was the primary purpose of the point-of-sale background checks.

However, these are some of the more recent examples and representative outcomes of denied ammunition purchases that help Special Agents to identify and locate armed and prohibited individuals.

18. The Department also releases annual APPS reports to the California legislature that contain additional data and information regarding the use of the APPS database, including denied ammunition purchases. As detailed below, the three most recent reports are attached to this declaration as exhibits.

19. A true and correct copy of Cal. Dep't of Justice, Armed and Prohibited Persons System (APPS) 2020 (available at https://oag.ca.gov/system/files/attachments/press-docs/2020-apps-report.pdf) is attached to this declaration as **Exhibit 1**.

20. A true and correct copy of Cal. Dep't of Justice, Armed and Prohibited Persons System 2021 (available at https://oag.ca.gov/system/files/media/2021-apps-report.pdf) is attached to this declaration as **Exhibit 2**.

21. A true and correct copy of Cal. Dep't of Justice, Armed and Prohibited Persons System Report 2022 (available at https://oag.ca.gov/system/files/media/2022-apps-report.pdf) is attached to this declaration as **Exhibit 3**.

II. **SEIZURE FROM, ARREST OF, AND CASE DISPOSITION FOR PROHIBITED PERSONS IDENTIFIED THROUGH DENIED AMMUNITION PURCHASES**

22. I understand that Mayra Morales, Assistant Director of the Bureau of Firearms of the California Department of Justice, has presented data regarding prohibited persons who were denied ammunition when they attempted to purchase it—the overarching purpose of the ammunition background checks. In addition to that data, and in accordance with the Court's request, this section of my declaration seeks to provide reasonably-ascertainable information regarding the seizure of firearms and ammunition from, arrests of, and case dispositions for prohibited

persons denied the purchase of ammunition between July 1, 2019, and January 31, 2020.

23. As described in the previous section, Special Agents and Crime Analysts are continuously working to research and develop viable APPS investigations, including by using ammunition purchase denials as leads that could potentially provide positive results. Developing those investigative packages, and then conducting a search (whether via consent, probation or parole search, or a search warrant), takes time and differs by investigation.

24. Based on my experience, I believe that data for seizures that occurred through the end of the year 2020, though imperfect, should encompass the specified data (to the extent known) for the majority of the prohibited persons who were denied ammunition purchases between July 1, 2019, and January 31, 2020, as requested by the Court.

25. To that end, the Department has collected data for APPS cases in which seizures from individuals who were denied ammunition purchases occurred between July 1, 2019, and December 31, 2020. I have reviewed that data and describe it below.

26. Seizures occurred in approximately 51 investigations between July 1, 2019, and January 31, 2020, that were the result of ammunition purchase denial investigative leads.

27. In those 51 seizures, the Department seized approximately:
- 152 firearms, including assault weapons and ghost guns;
- 12 firearm receivers/frames, including for ghost guns;
- 237 magazines, including large capacity magazines; and
- 78,742 rounds of ammunition.

28. From the 51 investigations that resulted in seizures, approximately 15 individuals were arrested. Although the disposition of the majority of charges is currently unknown, and some cases may well be ongoing, these 51 investigations

have resulted in four known felony convictions and two known misdemeanor convictions, to-date.

29.  As described earlier in this declaration, investigative leads generated by ammunition purchase denials are an ancillary benefit of ammunition background checks.  The seizures, arrests, and convictions outlined above demonstrate how ammunition purchase background checks can lead to additional positive APPS investigation outcomes.  Of course, the prohibited persons identified by the ammunition background checks and subject to the 51 seizures noted above were also prevented from purchasing additional ammunition, as were the remaining prohibited persons denied purchases at the point of sale.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 15, 2023.

_____
SIDNEY JONES