C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KIM RHODE, et al.,

                              Plaintiffs,

                    v.

ROB BONTA, in his official capacity as Attorney General of the State of California,

                              Defendant.

Case No.: 3:18-cv-00802-BEN-JLB

**PLAINTIFFS' OMNIBUS BRIEF**

1
2

# **TABLE OF CONTENTS**

**Page**

3
4
Table of Contents ...................................................................................................ii

5
Table of Authorities ..............................................................................................iii

6
Introduction ...........................................................................................................1

7
Background ............................................................................................................1

8
9
I.  The Challenged Laws ....................................................................................1

10
II. Procedural Background ..................................................................................5

11
12
A. District Court Proceedings ........................................................................5

13
B. Ninth Circuit Court of Appeals Proceedings............................................6

14
C. Post-remand Proceedings in District Court ..............................................6

15
16
Argument................................................................................................................9

17
I.  California's Ammunition Scheme Violates the Second Amendment......................9

18
A. Plaintiffs Plainly Have Standing to Bring Their Second Amendment
19
   Challenges to the State's Ammunition Scheme ........................................9

20
B. Plaintiffs' Second Amendment facial challenge is valid ......................11

21
C. The State Cannot Meet Its Burden to Defend Its Ammunition Scheme Under
22
   *Bruen* ....................................................................................................14

23
II. California's Ammunition Scheme Violates the Dormant Commerce Clause.........17

24
III.Federal Law Preempts California's Restriction on Residents Transporting
25
   Ammunition into California on their person (Penal Code § § 30314(a))................21

26
Conclusion ...........................................................................................................21
27

28

TABLE OF CONTENTS

18cv802

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. Chiumento,*
No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023)................................11

*Antonyuk v. Hochul,*
639 F. Supp. 3d 232 (N.D.N.Y. 2022)........................................................11

*ASARCO, Inc. v. Kadish,*
490 U.S. 605 (1989)......................................................................................9

*Biodiversity Legal Found. v. Badgley,*
309 F.3d 1166 (9th Cir. 2002) ....................................................................11

*Bd. of Natural Resources v. Brown,*
992 F.2d 937 (9th Cir.1993) .........................................................................9

*Calvary Chapel Bible Fellowship v. City of Riverside,*
948 F.3d 1172 (9th Cir. 2020) .............................................................13, 14

*Dean Milk Co. v. Madison,*
340 U.S. 349 (1951).................................................................................19, 20

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022)....................................................................................12

*E. Bay Sanctuary Covenant v. Trump,*
950 F.3d 1242 (9th Cir. 2020) ....................................................................11

*Gonzales v. Carhart,*
550 U.S. 124 (2007)....................................................................................12

*Granholm v. Heald,*
544 U.S. 460 (2005).....................................................................................20

*H. P. Hood & Sons, Inc. v. Du Mond,*
336 U.S. 525 (1949).....................................................................................18

TABLE OF AUTHORITIES

*Healy v. Beer Institute*,
    491 U.S. 324 (1989)..................................................................................20

*In re Rudnick*,
    62 F.3d 1425 (9th Cir. 1995) ...................................................................9

*Jackson v. City & Cnty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ....................................................11, 12, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................10

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)..........................................................................17, 18

*New York State Rifle & Pistol Assoc., Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ...................................................................... Passim

*Philadelphia v. New Jersey*,
    437 U.S. 617 (1978)..................................................................................20

*Planned Parenthood of Southeastern Pa. v. Casey*,
    505 U.S. 833 (1992)..................................................................................12

*Preminger v. Peake*,
    552 F.3d 757 (9th Cir. 2008) .................................................................10

*Rhode v. Becerra*,
    445 F. Supp. 3d 902 (S.D. Cal. 2020).................................................16

*United States v. Salerno*,
    481 U.S. 739 (1987)..................................................................................11

*Valley Bank of Nev. v. Plus Sys., Inc.*,
    914 F. 2d 1186 (9th Cir. 1990) .............................................................18

**Statutes**

18 USC § 926A ...............................................................................................21

Cal. Code Regs. tit. 11, § 4045.1 ..............................................................2

Cal. Code Regs. tit. 11, § 4260 ................................................................................. 2

Cal. Code Regs. tit. 11, § 4261 ................................................................................. 2

Cal. Code Regs. tit. 11, § 4262 ................................................................................. 2

Cal. Code Regs. tit. 11, § 4263 ........................................................................... 2, 20

Cal. Code Regs. tit. 11, § 4301 ........................................................................... 3, 4

Cal. Code Regs. tit. 11, § 4302 ................................................................................. 3

Cal. Code Regs. tit. 11, § 4303 ........................................................................... 3, 4

Cal. Code Regs. tit. 11, § 4304 ................................................................................. 4

Cal. Code Regs. tit. 11, § 4305 ................................................................................. 3

Cal. Pen. Code § 16151 ............................................................................................. 2

Cal. Pen. Code § 30000 ............................................................................................. 3

Cal. Pen. Code § 30312 ....................................................................................... 2, 20

Cal. Pen. Code § 30314 ..................................................................................... 20, 21

Cal. Pen. Code § 30342 ............................................................................................. 2

Cal. Pen. Code § 30350 ............................................................................................. 2

Cal. Pen. Code § 30352 ............................................................................... 5, 17, 20

Cal. Pen. Code § 30370 ....................................................................................... 3, 20

Cal. Pen. Code § 30385 ....................................................................................... 2, 20

**Rules**

Fed. R. Civ. Proc. 65 ................................................................................................. 7

## INTRODUCTION

California has adopted an ill-conceived, alone-in-the-nation ammunition background check scheme that does not accept California's default, state-issued identification and, by the State's own telling, has rejected law-abiding citizens entitled to exercise their Second Amendment rights from obtaining ammunition due to trivialities like address changes well over 10% of the time. That amounts to tens of thousands of law-abiding Californians whom this regime has unreasonably stymied in their efforts to purchase lawful ammunition, around half of whom the State's own records show never went on to acquire ammunition. Throughout this case, Plaintiffs have demonstrated how, even assuming the Second Amendment tolerates ammunition background checks at all, a dubious proposition, it certainly does not tolerate a system with those results. On top of that, Plaintiffs have demonstrated how California's scheme purposefully and intentionally discriminates against out-of-state ammunition vendors in violation of the Dormant Commerce Clause by denying them direct access to California consumers without California businesses' consent and price fixing. Finally, Plaintiffs have demonstrated that the scheme's restriction on California residents importing ammunition into the State on their person is also preempted by the federal Firearm Owners Protection Act, as a matter of law. This Court should thus enter judgment in Plaintiffs' favor on each of their remaining claims.[1]

## BACKGROUND

### I.    The Challenged Laws

California's ammunition restrictions are the product of Senate Bill No. 1235, enacted July 1, 2016, and Proposition 63, approved by voters during the November 2016 General Election. As a result, with few exceptions, "the sale of ammunition by any party

---

[1] Plaintiffs hereby incorporate all their prior briefing herein, including from the prior motion for preliminary injunction, as well as all briefing following the Ninth Circuit's remand to this Court. ECF Nos. 12, 32-1, 37, 46, 83, 85, and 95.

PLAINTIFFS' OMNIBUS BRIEF

must be conducted by or processed through a licensed ammunition vendor." Cal. Penal Code § 30312(a)(1). All persons wishing to sell ammunition must either have an "ammunition vendor license" from the California Department of Justice ("DOJ"), or already be California licensed firearm dealers ("Vendors"). *Id*. §§ 16151, 30342, 30385(d). Vendors cannot display ammunition in a manner that allows it to be accessible to a prospective purchaser. *Id*. § 30350; *see also* Cal. Code Regs. tit. 11, §§ 4260-4262.

When neither party to an ammunition sale is a Vendor, the seller must first "deliver the ammunition to a [V]endor to process the transaction," who will then "promptly and properly deliver the ammunition to the purchaser, if the sale is not prohibited, as if the ammunition were the [V]endor's own merchandise." *Id.* § 30312(a)(2). Any person who wishes to sell more than 500 rounds of ammunition in a 30-day period, however, cannot process the transfer through a Vendor, but rather must become one. *Id*. § 30342(a). Vendors may charge purchasers a fee to process private party transactions. *Id*. § 30312(c). "If the purchaser will be present for immediate delivery of the ammunition, the fee shall not exceed five dollars ($5)." Cal. Code Regs. tit. 11 § 4263(a). "If the purchaser will not be present for immediate delivery of the ammunition, the vendor may charge an additional storage fee as agreed upon with the purchaser prior to the vendor receiving the ammunition." *Id*. § 4263(b). In other words, there is no cap on what a Vendor can charge a private party purchaser who is not present for immediate delivery, which, as a practical matter, includes all transactions originating from out-of-state. What's more, DOJ has taken the position that Vendors are not required to process private-party transactions, including from out-of-state vendors selling to California consumers. Decl. Sean A. Brady Supp. Mot. Prelim. Inj. ¶ 9 (ECF No. 32-2). Thus, ammunition vendors that do not have a physical presence in California operate at the whim of Vendors that do.

The scheme requires a face-to-face transaction with the buyer and seller physically present, which precludes direct sales from out-of-state. Cal. Penal Code § 30312 (b). Ammunition purchasers must present identification but the scheme deems California's own state-issued identification insufficient. Cal. Code Regs. tit. 11, § 4045.1.

Purchasers cannot take possession of ammunition they purchase unless DOJ electronically approves the sale. Cal. Pen. Code § 30370(a). Only a California Vendor may process a request for that approval. Cal. Code Regs. tit. 11, §§ 4302(c), 4303(c), 4305(c); Cal. Pen. Code § 30370. There are four types of requests a Vendor may submit. Cal. Code Regs. tit. 11, §§ 4302-4305.

The Standard Ammunition Eligibility Check is the quickest and cheapest way to secure DOJ approval. It costs $1 and averages several minutes to process. Cal. Code Regs. tit. 11, § 4302(b). Likely for that reason, the overwhelming majority of people choose this option, albeit often to no avail. To run a Standard Check, DOJ first determines whether the purchaser's information matches an entry in its Automated Firearm System ("AFS") database. AFS contains firearm sales, transfers, and ownership records maintained by DOJ. If it does not match, then the transaction is rejected.

If DOJ finds a match in AFS, then it will check if there is also a match in its Armed Prohibited Persons File ("APPS"), which is the database DOJ uses to track persons who are prohibited from possessing firearms, such as felons. Cal. Code Regs. tit. 11, § 4302(d); Cal. Pen. Code § 30000(a); *see also* Cal. Code Regs. tit. 11, § 4301(m). If the purchaser's information both does match an entry in AFS and does not match an entry in APPS, DOJ will approve the transaction. Cal. Code Regs. tit. 11, § 4302(a). That approval is valid for only 18 hours. If DOJ finds a match in APPS, the person will be denied.

As was the case years ago and continues to be the case, almost all of the denials on the Standard check are due to record mismatches, and not due to the person attempting to buy ammunition being a prohibited person. *See* ECF No. 92-11, Table 1.1 (58,087 rejections for record mismatches compared to 141 denials for being a prohibited person). As this Court has previously discussed, fixing AFS record mismatches is a surprisingly monumental task. ECF No. 60, pp. 20-26. These issues continue today. Of the 7,342 people who had an AFS check rejected in January 2023, only 62.9% had successfully purchased ammunition by June. *See* ECF No. 92-11, ¶ 31.

Given the difficulties with the Standard Check, California residents lacking an AFS record may use what DOJ calls the Basic Ammunition Eligibility Check option, which costs $19. *See* Cal. Code Regs. tit. 11, § 4303(a)(2). To process a Basic Check, DOJ runs the purchaser's acceptable form of identification against DMV records to confirm the information matches a valid ID, and then consults four state databases to determine if the purchaser is prohibited from owning or possessing ammunition. Cal. Code Regs. tit. 11, § 4301(e). If that database search comes back clean, the person is approved. Unlike the Standard Check, which (if not rejected at the threshold owing to immaterial "discrepancies") typically takes only a matter of minutes, Basic Checks take an average of one to three days to complete and thus often require two trips to the vendor. Vendors must provide purchasers with an ATN "to monitor the status." Cal. Code Regs. tit. 11, § 4303(c)-(d). Once complete, DOJ will inform the Vendor whether the transaction is approved. *Id*. § 4303(e).

Individuals purchasing a firearm from a California FFL may also purchase ammunition in connection with the firearm purchase. *Id*., § 4304. For this option, a purchaser "shall only pay the fee for the firearms eligibility check." *Id*. § 4304(b). But if the purchaser wants to take possession of ammunition before completion of the 10-day firearms eligibility check, she must use one of the other options. *Id*. § 4304(c).

Individuals may also use a DOJ-issued Certificate of Eligibility ("COE"), which allows Vendors to verify their eligibility to purchase ammunition with DOJ at a cost of $1. *Id*. § 4305. To obtain a COE, one must apply via CFARS. The application process "includes a firearms eligibility criminal background check" following the submission of the applicant's fingerprints through a Live Scan. *Id*. Applicants must pay a whopping $71 fee to DOJ to submit an application, and must also pay any fee charged by the Live Scan Operator for the fingerprint submission. *Id*. Once issued, a COE is valid for only one year, but can be renewed annually for a $22 fee. *Id*. Like a Standard Check, a COE verification is only valid for 18 hours and a single purchase.

All ammunition sales are electronically recorded with DOJ. Cal. Penal Code § 30352 (a)(1)-(7).

## II. Procedural Background

### A. District Court Proceedings

As this Court is well aware, this case has a long and dense procedural history. The State initially filed a motion to dismiss Plaintiffs' claims under the Dormant Commerce Clause, Equal Protection Clause, and federal preemption doctrine. ECF No. 11. The State did not seek to dismiss Plaintiffs' Second Amendment claims. Nor did it file a motion under FRCP 12(b)(1) to challenge Plaintiffs' standing. This Court denied the State's motion as to their Dormant Commerce Clause and federal preemption claims but granted dismissal of their Equal Protection claim. ECF No. 16.

Plaintiffs then brought a motion for preliminary injunction on their Second Amendment and Dormant Commerce Clause claims.[2] At the August 19, 2019 hearing on that motion, this Court ordered the State to provide Plaintiffs with additional information, including about individuals who had been either "rejected or "denied" ammunition purchases during July and August 2019. In response the State provided a declaration from Mayra G. Morales, confirming that exceedingly few purchase rejections were because the individual trying to buy ammunition was a prohibited person. ECF No. 42.

While Plaintiffs' preliminary injunction motion was under consideration by this Court, the parties also exchanged information via discovery and this Court held two telephonic status conferences with the parties, one on October 1, 2019, and the other on April 1, 2020. Ultimately, this Court granted Plaintiffs' motion for preliminary injunction in its entirety, on April 23, 2020. ECF No. 60.

/ /

/ / /

---

[2] Plaintiffs' federal preemption claim was not included in their preliminary injunction but is included here for final disposition.

**B. Ninth Circuit Court of Appeals Proceedings**

The State appealed this Court's granting of Plaintiffs' preliminary injunction motion. ECF No. 63. On August 31, 2020, the parties completed standard briefing of the appeal. On September 23, 2020, the Ninth Circuit ordered the parties "to file simultaneous supplemental briefs addressing in further detail whether there exists 'persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment.'" Ninth Circuit Case No. 20-55437, Dkt. No. 64. On November 9, 2020, oral argument was held before a Ninth Circuit panel. One week later, on November 16, 2020, the Ninth Circuit ordered the parties to file additional "supplemental briefs addressing the constitutionality of the Basic Check in its own right." *Id.*, Dkt. No. 75.  Two months after that briefing had been provided, on March 19, 2021, the Ninth Circuit stayed the appeal pending the en banc proceedings in *Duncan v Becerra*. *Id.*, Dkt. No. 82. On June 24, 2022, the Ninth Circuit vacated that order and replaced it with an order for the parties to file supplemental briefing in light of the Supreme Court's then-recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*. *Id.*, Dkt. No. 87. The parties finished that briefing on October 13, 2022. On November 17, 2022, the Ninth Circuit issued an order that vacated this Court's order granting Plaintiffs' preliminary injunction and remanded the case to this Court "for further proceedings consistent with [*Bruen*]." *Id.*, Dkt. No. 110.

**C. Post-remand Proceedings in District Court**

Per this Court's order, the parties appeared for a status conference on December 12, 2022. ECF No. 77. At that hearing, in response to the State's request to proffer additional evidence of historical laws that it claimed would support its defense of the Ammunition Laws under *Bruen*, this Court ordered: (1) the State to prepare a compendium of laws that the State contends are relevant; (2) that the parties meet and confer about the compendium's contents; and (3) that any "disagreement [] be indicated and described on a separate list." *Id.* That order also allowed the parties to file a brief "30

1    days thereafter focusing on relevant analogs" and a reply brief 10 days after any such
2    brief. *Id*.

3         In response, on January 11, 2023, the State filed two charts, listing a total of 148
4    supposed[3] laws spanning from the year 1403 in England to the year 1938 in the United
5    States. ECF Nos. 79-1; 79-2, and Plaintiffs filed objections to the inclusion of each of the
6    State's proposed analogues in both charts, ECF No. 79-3. On February 10, 2023, both
7    parties submitted briefs explaining their respective views on the relevance of the laws
8    that the State provided in its surveys under the *Bruen* analysis. Plaintiffs filed one brief.
9    ECF No. 83. Because this Court ordered the State on February 7, 2023, to file a brief
10   identifying "the best historical regulation that is a proper analogue and relevantly similar
11   to a statewide background check for buying ammunition" with its other brief, ECF No.
12   80, on February 10, 2023, the State filed two briefs. ECF Nos. 81-82. Ten days later, the
13   parties each filed briefs replying to the other's brief. ECF Nos. 85-86.

14        On June 30, 2023, this Court issued an order instructing the parties to be prepared
15   to discuss various, specific topics at a hearing on July 17, 2023, and explaining that it
16   "intends to consolidate the hearing on the motion for preliminary injunction with a trial
17   on the merits" pursuant to F.R.C.P. 65(a)(2). ECF No. 88. At that hearing, neither party
18   objected to this Court consolidating the hearing with a trial on the merits, but the State
19   requested that the Court allow the State time to submit additional information from
20   purported historians that the State claimed would support its defense of California's
21   background check system under *Bruen*. ECF No. 90.

22        On July 18, 2023, in response to the State's request, this Court ordered **the State** to
23   "name and file an expert report(s) or declaration(s) regarding the American history and
24   tradition of background checks" within 30 days. *Id*. That order further required **the State**

25
26   ─────────────────────
27   [3] "Supposed" because Plaintiffs do not concede that the State accurately summarized
     the laws it listed in each survey or that such laws even existed because the State did not
28   provide Plaintiffs with either the full text of most of these laws or a primary or secondary
     source from where the State obtained them.

PLAINTIFFS' OMNIBUS BRIEF

to (1) "file an updated declaration regarding ammunition purchaser background check acceptance/rejection rates and processing times, as performed previously"; and (2) file a report, "to the extent ascertainable, on persons described in previous declarations as persons who underwent background checks and were identified as prohibited persons and indicate whether such persons were prosecuted and whether firearms were located and seized from such persons." *Id*. That order also required ***Plaintiffs*** to: (1) file at the same time as Defendants' filings any declaration(s) supporting their Article III standing; and (2) within 45 days thereafter, "file a brief or expert declaration(s) in response" to the State's filings. *Id*.

On August 16, 2023, the State submitted declarations from three purported historians, ECF No. 92; a declaration from Mayra G. Morales providing updated statistics on acceptance/rejection rates and processing times for ammunition purchaser background checks, ECF No. 92-11.; and a declaration from Sidney Jones, explaining, among other things, what DOJ did with individuals who attempted to purchase ammunition who were determined to be ineligible, ECF No. 92-12. That same day, Plaintiffs filed fourteen declarations in support of their standing in this matter from: (1) individual Plaintiffs; (2) representatives of commercial Plaintiffs; (3) representatives of organizational plaintiff CRPA; and members of organizational plaintiff CRPA. ECF No. 93.

On October 2, 2023, Plaintiffs submitted a brief responding to the State's declarations, along with a supporting declaration from a historian rebutting the contents of the State's declarations. ECF No. 95-1. In response, the State objected to Plaintiffs filing both a brief and a declaration from an expert, arguing that the Court's order allowed them to file only one or the other, and requesting that the Court allow it to file "a response to Plaintiffs' brief and the declaration of Clayton Cramer, including supplemental declarations from Defendant's experts." ECF No. 96. In response, Plaintiffs filed with this Court a notice that Plaintiffs disputed the State's interpretation of its order, but they would not object to the State filing a responsive brief (although, Plaintiffs did object to the State filing any additional "expert" declarations). ECF No. 97. On October

1  19, 2023, the Court granted the State's request to file a responsive brief. ECF No. 98. On
2  November 2, 2023, the State filed that brief. ECF No. 100.

3        This Court then ordered that the parties appear at a status conference on November
4  13, 2023. At that hearing, the Court ordered the parties to file their respective omnibus
5  briefs by December 13, 2023. ECF No. 101. This is that brief.

**ARGUMENT**

6

7  **I.     California's Ammunition Scheme Violates the Second Amendment**

8     **A. Plaintiffs Plainly Have Standing to Bring Their Second Amendment**
         **Challenges to the State's Ammunition Scheme**
9

10       This Court previously rejected the State's challenge to Plaintiffs' standing to bring
11  their Second Amendment claims. ECF No. 60, at 42-43. Nothing has changed legally or
12  factually since then that would alter the Court's analysis. Indeed, the Ninth Circuit heard
13  the State's challenges to Plaintiffs' standing and did not even acknowledge them, despite
14  ordering *three rounds* of supplemental briefing on the merits, Ninth Circuit Case No. 20-
15  55437, Dkt. Nos. 64, 75, and 87, and then remanding the case to this Court with
16  instructions to apply the *Bruen* decision. Had the Ninth Circuit believed Plaintiffs lacked
17  standing, it could have easily said so rather than ordering multiple rounds of additional
18  merits briefing. Or, at least, it could have remanded to this Court to evaluate Plaintiffs'
19  standing. Indeed, under its precedent, the Ninth Circuit "need not address the merits of" a
20  case where it finds the plaintiff lacks standing. *In re Rudnick*, 62 F.3d 1425 (9th Cir.
21  1995). Abstaining from the merits in that situation makes sense seeing as the
22  "jurisdictional element of standing must be met in every case, and we must satisfy
23  ourselves that this element exists even if no party to the action raises a doubt regarding its
24  presence." *Board of Natural Resources v. Brown*, 992 F.2d 937, 945 (9th Cir.1993)
25  (citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 611 (1989)). That the Ninth Circuit did
26  not is effectively an implicit rejection of the State's standing challenge.

27       Undeterred, the State again raised its same challenge to Plaintiffs' standing on
28  remand. Defendant's Brief in Response to the Court's Order Entered on December 15,

9
PLAINTIFFS' OMNIBUS BRIEF

2022 ("Def.Br."), at 10:13-11:1-10. It is unclear whether the State intends to continue pursuing that challenge in light of the various declarations Plaintiffs filed bolstering both their individual and organizational standing. *See* ECF Nos. 93-1, 93-2, 93-3, 93-4, 93-5, 93-6, 93-7, 93-8, 93-9, 93-10, 93-11, 93-12, 93-13, and 93-14. To the extent the State does, this Court should, again, reject it.

To have standing, Article III requires only an injury that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, individual plaintiffs and CRPA members attested that the Challenged Laws injure them in various ways, including precluding access to ammunition via direct shipment from other states, and by rejecting them for trivial issues with their records, causing them expense and delay in resolving their records with no help from DOJ. *See* ECF Nos. 93-1, 93-2, 93-3, 93-4, 93-5, 93-10, 93-11, and 93-12. And CRPA attested that it has members who have been prevented or deterred from obtaining ammunition at all by the Ammunition Laws. ECF Nos. 93-9, 93-14. This includes a CRPA member who is not a California resident but sometimes visits the state. He is completely forbidden from purchasing ammunition when he is here, and no amount of record-correcting can help him. No other constitutional right ends at state lines, and the Second Amendment should not either. *See* Declaration of Stephen Hoover, ECF No. 93-13. The State admits to this: "the Ammunition Laws allow *residents* to purchase ammunition…" Def.Br., at 12:14-15 (italics added).

All of that is more than sufficient to establish the "minimal" injury this Court requires. *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008). The State complains that Plaintiffs cannot invoke the reality that tens of thousands of Californians have been denied the right to purchase ammunition because Plaintiffs have not themselves been precluded from obtaining ammunition. That is wrong as a matter of both fact and law. CRPA has alleged its members were precluded from obtaining ammunition. ECF Nos. 93-9. And, it is well settled that "[o]rganizations can assert standing on behalf of their own members." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1264 (9th Cir.

2020). Individual members need only participate when the claims are individualized, such as a claim for money damages, which is not the case here. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002). Plaintiffs thus have both individual and organizational standing for their Second Amendment challenges.

## B. Plaintiffs' Second Amendment facial challenge is valid.

On remand, the State argues that "Plaintiffs have failed to properly assert a facial attack on the Ammunition Laws." Defendant's Brief in Response to the Court's Order Entered on December 15, 2022 ("Def.Br."), at 11:12-13:6. To be sure, a facial challenge fails if a law has a "plainly legitimate sweep." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014).[4] But a law that fails narrow tailoring is not somehow immune from facial challenge just because it sweeps in some conduct that could permissibly be prohibited by a more finely tuned law. And In all events, the State's claim that its ammunition regime has such a sweep "reflects a misunderstanding of the Supreme Court's jurisprudence." *Id*. at 962.

The State first claims that its scheme is legitimate as applied to "felons, those without lawful status, and the dangerously mentally ill from procuring ammunition." Def.Br., at 12:8-9. That may be so in the sense that burdening ammunition purchases by those who have no right to purchase ammunition in the first place is not unconstitutional.

_____

[4] The State also invokes the no-set-of-circumstances test from *United States v. Salerno*, 481 U.S. 739, 745 (1987)). But that test does not save an untailored or overbroad law just because it reaches conduct that could be prohibited by a properly tailored law. Put differently, an improperly tailored law or one that imposes undue burdens on constitutional rights is unconstitutional in all its applications. Moreover, at least one court has questioned *Salerno*'s continuing application in the Second Amendment context considering *Bruen*. "Under the standard set forth in *NYSRPA*, if the Second Amendment covers the plaintiff's conduct, and the government cannot 'demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation,' then the regulation is invalid. Period. It would appear to defy this standard for this Court to find that such a law is inconsistent with history and tradition, just to watch it be saved by the *one* possible application that makes it constitutional." *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 304–05 (N.D.N.Y. 2022), *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. Chiumento*, No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023).

But that does not establish that the law has a "legitimate sweep." If it did, then no facial challenge to any firearms restriction would ever succeed, as virtually every law could be said to be constitutional "as applied" to those who lack Second Amendment rights. Indeed, by that logic, *Heller* itself was wrongly decided since D.C.'s handgun ban was "legitimate" as applied to felons.

In fact, that is just another variant of the argument the Ninth Circuit rejected in *Jackson*. There, the city argued that a facial challenge to a firearm storage ordinance must fail because the plaintiff had "conceded that locked storage is appropriate in some circumstances, such as when it is foreseeable that a child would otherwise gain possession of a firearm." " *Jackson*, 746 F.3d at 962. The Ninth Circuit emphatically disagreed, explaining that the law "[e]ither … is a permissible burden on the Second Amendment right to 'keep and bear arms' or it is not." *Id*. The extent to which the burdens it imposed sometimes accomplished legitimate ends was certainly relevant to making that determination. But the bare fact that the law sometimes accomplished permissible ends did not mean that it had a "legitimate sweep." This also squares with other Supreme Court precedent allowing facial challenges when a law "would be unconstitutional in a large fraction of relevant cases." *Id*. (quoting *Gonzales v. Carhart,* 550 U.S. 124, 167–68 (2007)).[5] The State quotes this same precedent, Def.Br., at 13:4-6, which is surprising considering it still wrongly rejects over 10% of those attempting to purchase ammunition. *See* Fifth Supplemental Declaration of Mayra G. Morales, ¶ 14. Its system denied 58,087 individuals for record mismatches, while stopping just 141 prohibited persons. *Id*., at Table 1.1. Too large a fraction of individuals

---

[5] *See also Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 895 (1992) ("…in a large fraction of the cases in which § 3209 is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion. It is an undue burden, and therefore invalid."), *abrogated on other grounds, Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022).

1 are wrongly denied, and only a tiny fraction of total denials are people who actually
2 should be denied.

3      The State next claims that its regime has a "legitimate sweep" because, "the
4 Ammunition Laws allow residents to purchase ammunition unless they are prohibited
5 from purchasing or possessing firearms and ammunition." Def.Br., at 12:7-13. That is an
6 argument (albeit a flawed one) that its regime satisfies Second Amendment scrutiny, not
7 that it is immune to facial challenge. Even assuming some people are able to "qualify" to
8 purchase ammunition with relative ease, a facial challenge does not require proof that the
9 burdens the State has imposed impact everyone uniformly, let alone deprive everyone of
10 Second Amendment rights entirely. Voter ID laws are not facially constitutional just
11 because most people have identification. Burdens on abortion are not facially
12 constitutional just because some women live near the state's sole remaining clinic. When
13 the basic question is whether a law is sufficiently tailored to further the government's
14 interest without imposing greater burdens on a constitutional right than necessary, a court
15 must consider the aggregate impact of those burdens, not just how the law impacts the
16 least burdened individuals. If the bare fact that a hardy few succeed in exercising their
17 constitutional rights notwithstanding material burdens were sufficient to defeat a facial
18 challenge, then few facial constitutional challenges would ever succeed.

19      The State alternatively contends that a facial challenge may "consider only the text
20 of the [laws], not [their] application." Def.Br., at 12:10-14 (quoting *Calvary Chapel Bible*
21 *Fellowship v. City of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020)). The State is
22 confused again. *Calvary* was simply making the point that a facial challenge to a facially
23 neutral law based on differential enforcement will rarely succeed. *Jackson*, 746 F.3d at
24 962. For example, if (as in *Calvary*) "secular and religious places of assembly are treated
25 the same" "on the face of" the law, the plaintiff cannot mount a facial challenge by
26 claiming that the law may not be *applied* in the neutral manner its text contemplates. 948
27 F.3d at 1176.

28

Here, Plaintiffs challenge California's scheme facially. Their concerns are merely exacerbated by the State's slipshod implementation. On its face, the regime imposes the same burdens on *all* Californians who seek to obtain ammunition, and Plaintiffs claim that those burdens are *categorically* greater than the Second Amendment tolerates. To the extent the State's implementation of the regime exacerbates the constitutional problems and underscores that the State is not proceeding as if a fundamental constitutional right hangs in the balance, nothing in *Calvary, Jackson*, or any other case allows slipshod enforcement to immunize problems that are obvious on the statute's face.

In the end, the State identifies no problem with Plaintiffs' facial challenge. Instead, it is the State's suggestion that its regime may be challenged only by seriatim as-applied challenges that presents profound constitutional and practical concerns. It is not the courts' job to make a statute narrowly tailored by adjudicating hundreds of as-applied challenges. The burden is on the state to draft and implement a narrowly tailored regime from the outset.

### C. The State Cannot Meet Its Burden to Defend Its Ammunition Scheme Under *Bruen*

To drastically understate, this Court has already received extensive briefing from both sides on *Bruen*'s application to this challenge. *See* ECF Nos. 79-1, 79-2, 79-3, 81, 82, 83, 85, 86, and 95-1,. Plaintiffs do not believe it would be helpful to this Court to regurgitate that briefing here. Instead, Plaintiffs provide a summation of the legal standard, points made, materials relevant to those points, and why those translate into Plaintiffs prevailing on each of their Second Amendment claims.

While not their burden to do so, Plaintiffs have demonstrated that their desired conduct—purchasing ammunition—is undeniably covered by the Second Amendment's plain text, *Bruen*, 597 U.S. at 17. *See* ECF Nos. 32-1, 37, 46, 83, 85, and 95. Plaintiffs have explained why any argument to the contrary is simply unserious. *See* ECF Nos. 83, 85, and 95. Indeed, a scheme standing as a gatekeeper to the exercise of the right to acquire ammunition, which is *capable* of indefinitely preventing *any* law-abiding person,

1 let alone thousands, from doing so—particularly when it provides no meaningful
2 guidance to those wrongfully prevented on how to overcome their respective barrier—is
3 undoubtedly included.

4       Because California's Ammunition Laws restrict conduct that "the Constitution
5 presumptively protects," the State must "justify its regulation by demonstrating that it is
6 consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct.
7 at 2126, 2130. Despite its significant efforts, Plaintiffs have demonstrated how the State
8 has failed to carry that burden, even under *Bruen*'s "more nuanced approach" to
9 conducting the historical analysis. Of course, Plaintiffs have demonstrated why
10 application of that more liberal standard is not appropriate here in the first place because
11 there are neither "unprecedented societal concerns" nor "dramatic technological changes"
12 that make the search for historical schemes similar to California's futile, *Bruen*, 142 S.Ct.
13 at 2132; ECF No. 85, pp. 5-7. That alone dooms the State's defense because it has not
14 even attempted to argue that it can meet *Bruen*'s normal historical standard here. For,
15 even assuming the "more nuanced approach" of reasoning by analogy applies (it does
16 not), Plaintiffs have definitively demonstrated that the State has failed to identify
17 sufficient "relevantly similar" historical laws to satisfy even that standard. *Id*., at pp. 7-9.

18       Indeed, as far as Plaintiffs can tell, (setting aside the irrelevant racially and
19 religiously discriminatory enactments) only three of the 148 laws which the State has
20 identified as potential comparators even mention ammunition, and only *one* of them
21 concerns the *same subject matter* as the regime challenged here—the acquisition of
22 ammunition—much less burden Second Amendment rights to the same degree. ECF No.
23 79-2, p. 11. Tellingly, despite being invited by this Court to identify the specific historical
24 laws that most resemble California's Ammunition Laws, ECF No. 80, the State did not
25 even attempt to note *any* particular one(s). ECF No. 85, at p. 8. Nor did any of the State's
26 declarations from historians identify a single "distinctly similar" historical law to any of
27 California's Ammunition Laws, let alone a tradition. Like the laws that the State itself
28 provided, the laws contained in those declarations are almost universally from an

irrelevant time period or share neither the "how" nor the "why" with California's Ammunition Laws, *Bruen*, 597 U.S. at 29; ECF No. 95. What's more, Plaintiffs provided testimony from a historian showing that the descriptions of many of the laws in those declarations are not accurate and thus cannot be relied on. ECF No. 95-1. In sum, the State has failed to show any historical support for its ammunition scheme.

In any event, and perhaps most critical to resolution of Plaintiffs' Second Amendment claims, even assuming ammunition background checks generally fall within the nation's regulatory tradition (they do not), that does not mean that *this* particular background check is automatically constitutional. As *Bruen* notes, the Second Amendment does not tolerate "abusive" aspects of screening schemes, such as "lengthy wait times" or "exorbitant fees" that act to "deny ordinary citizens their right . . .." *Bruen*, 142 S. Ct. at 1238 n.9. Plaintiffs have demonstrated that the numerous issues plaguing California's scheme easily qualify it as such an abusive measure; particularly that the State's own data shows that from January to June of 2023, the AFS Check rejected 58,087 people who have a right to acquire ammunition from doing so over trivialities, such as the State having a former address in its system. *See* Fifth Supp. Decl. of Mayra G. Morales ¶¶ 15 (Dkt. No. 92-11). That is far from an acceptable ratio, especially when close to 40% of people denied by the AFS Check do not successfully purchase ammunition even after six months following the denial. *Id.* at ¶ 31. And that ratio has essentially continued since California's ammunition scheme first took effect. *Rhode v. Becerra*, 445 F. Supp. 3d 902, 917 (S.D. Cal. 2020). The State cannot point to the Basic Check "option" as a cure for the deficiencies with the Standard AFS Check. It is hardly a meaningful option in practice. Assuming anyone who fails the Standard AFS Check is even made aware of it—due to the lack of direction from DOJ when purchasers are rejected—the requirement that people pay $19 just to be able to purchase ammunition is not supported by any historical law and is thus unconstitutional in its own right. What's more, people who are rejected under the AFS Check may understandably be reluctant to attempt another check, especially for $19. There is a reason that, according to the State's

own data, less than 1% of purchasers use the Basic Check. Morales Decl., Table 2.1. Nor has the State justified its rejection of its own default-issued identification to qualify for ammunition purchases; no law in history justifies such a requirement nor can it be justified. For these reasons, the State cannot meet its burden to show that the ammunition background check scheme survives *Bruen*.

Nor can the State meet its burden to justify California's collection of customer purchase information at time of sale, which is effectively a registration scheme. Cal. Penal Code § 30352(a)(1)-(7). Indeed, there is no historical evidence in the record that the Second Amendment tolerates registration of any sort, let alone of ammunition. Tellingly, the State has not even attempted to provide such laws on remand. That is because there is none. Indeed, there is no historical tradition in this country of firearm, let alone, ammunition registration; at least none that the State has identified. Cal. Penal Code § 30352(a)(1)-(7) thus violates the Second Amendment.

At bottom, the State has failed to show a "well established and representative" analogue to any aspect of California's ammunition scheme because none exists. *Bruen*, 142 S. Ct. at 2135.  It thus has not—and cannot—"demonstrate that [California's ammunition scheme] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Plaintiffs are thus entitled to judgment that each of those laws violates the Second Amendment.

## II.    California's Ammunition Scheme Violates the Dormant Commerce Clause

This Court correctly concluded previously that various provisions of California's ammunition scheme violate the Dormant Commerce Clause because they unjustifiably discriminate against out-of-state businesses by precluding them from selling ammunition directly to Californians. ECF No. 60, p. 104. That conclusion remains correct. The State has indicated that it intends to argue that this Court should revisit and change its previous decision in light of *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, (2023), an opinion that the Supreme Court issued after this Court ruled on Plaintiffs' preliminary injunction motion.  This Court should refuse.

1    Unlike the plaintiffs in *Nat'l Pork Producers*, Plaintiffs here do not ask this Court

2    "to strike down duly enacted state laws regulating the in-state sale of ordinary consumer

3    goods [] based on nothing more than their own assessment of the relevant law's 'costs'

4    and 'benefits.'" *Id*. at 380. Rather, they ask that this Court strike down laws that wholly

5    preclude out-of-state vendors, like Plaintiffs Able's Sporting, Inc., Ammunition Depot,

6    and, R&S Firearms, Inc., from accessing California's ammunition market *at all*, unless

7    they (1) obtain the consent of their California-based competitors; and (2) are willing to

8    pay the price their in-state competitors have complete discretion to set to do so. ECF No.

9    93-6, 93-7. That is unacceptable discrimination under the Dormant Commerce Clause

10   notwithstanding *Nat'l Pork Producers*. Indeed, "[o]ur system, fostered by the Commerce

11   Clause, is that every farmer and every craftsman shall be encouraged to produce by the

12   certainty that he will have free access to every market in the Nation, that no home

13   embargoes will withhold his exports, and *no foreign state will by customs duties or*

14   *regulations exclude them*." *Nat'l Pork Producers Council*, 598 U.S. at 395, (Roberts, C.J.,

15   concurring in part) (quoting *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539,

16   (1949)) (emphasis added).

17   To be sure, *Nat'l Pork Producers* rejects one of Plaintiffs' arguments—that

18   California's restrictions are "per se invalid" because they regulate conduct outside of

19   California. ECF No 32-1 (citing *Valley Bank of Nev. v. Plus Sys., Inc*., 914 F. 2d 1186,

20   1189-90 (9th Cir. 1990)). But that hardly dooms Plaintiffs' Dormant Commerce Clause

21   claims. Unlike the petitioners in *Nat'l Pork Producers* who "*disavow*[*ed*] any

22   discrimination-based claim, conceding that [the law at issue there] imposes the same

23   burdens on in-state pork producers that it imposes on out-of-state ones," *id*. at 370,

24   Plaintiffs' claims also concern California's *purposeful* discrimination against out-of-state

25   companies by wholly barring them from accessing California's markets at all without the

26   consent of their in-state competition. That Supreme Court precedent prohibits; despite the

27   State's claim that doing so furthers public safety.

28

Take, for instance, the Supreme Court's seminal decision in *Dean Milk Co. v. Madison*, 340 U.S. 349 (1951). That case involved an ordinance that made it unlawful to sell pasteurized milk within city limits unless it was processed at a plant located within five miles of the city center. *Id*. at 350. The Supreme Court struck the law down because, like the State's ammunition scheme, it conditioned access to the Madison market on physical presence within (or adjacent to) the jurisdiction. *Id*. at 356. The Court acknowledged that Madison enacted the ordinance out of concern for "the health and safety of its people," and it did not question the legitimacy of Madison's interest in imposing more stringent processing standards than neighboring jurisdictions. *Id*. at 354. The Court nonetheless held the ordinance unconstitutional, finding those concededly valid interests insufficient to justify "erecting an economic barrier protecting a major local industry against competition from without the State." *Id*. It explained that Madison cannot do so "even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available." *Id*. "A different view, that the ordinance is valid simply because it professes to be a health measure, would mean that the Commerce Clause of itself imposes no limitations on state action other than those laid down by the Due Process Clause, save for the rare instance where a state artlessly discloses an avowed purpose to discriminate against interstate goods." *Id*.

As Madison did in *Dean Milk*, California improperly precludes any company not physically present in California from directly accessing its ammunition market. While, like Madison, the State professes to do for the protection of public safety, that is insufficient where, as here, reasonable alternatives are available. Indeed, California could simply allow out-of-state vendors access to its background check system. What's more, as this Court has recognized, while California has a valid interest in keeping ammunition out of the hands of dangerous individuals, it "has not offered any evidence . . . that out-of-state ammunition businesses have been selling ammunition to prohibited persons in California." " 'Without concrete evidence that direct shipping'" poses a genuine safety

1  risk, this Court remains "left with the State['s] unsupported assertions,'" which the

2  Supreme Court has emphatically instructed are not enough to justify discrimination

3  against interstate commerce. ECF No. 60, p. 108, quoting *Granholm v. Heald*, 544 U.S.

4  460, 492 (2005), (observing "that improvements in technology have eased the burden of

5  monitoring out-of-state wineries" and that "[b]ackground checks can be done

6  electronically.").

7      To the extent that *Nat'l Pork Producers* holds that economic protection, as opposed

8  to mere intentional discrimination against economic interest, is an element of a valid

9  Dormant Commerce Clause claim, that still does not doom Plaintiffs' claims. To be sure,

10  such reading of that opinion is unlikely in light of its description of the law at issue in

11  *Healy v. Beer Institute*, 491 U.S. 324 (1989) as having a "discriminatory purpose" merely

12  because "'[b]y its plain terms, the Connecticut affirmation statute applie[d] solely to

13  interstate' firms, and in that way 'clearly discriminate[d] against interstate commerce.'"

14  *Id*. at 373. Here too California's law applies solely to out-of-state companies by its plain

15  terms. Such a reading would also seem to be at odds with *Dean Milk*. Regardless,

16  California's ammunition scheme does depend on economic protectionism. Indeed,

17  California has delegated to members of its in-state ammunition industry not only price-

18  fixing powers for out-of-state entities but veto power over whether those entities can even

19  participate in California's market at all. That makes California's use of economic

20  protectionism even worse than that in *Healy*, etc. Allowing such a scheme also defeats

21  the Commerce Clause's goal of avoiding economic balkanization and retaliation among

22  the various states. *See Philadelphia v. New Jersey*, 437 U.S. 617, 629 (1978).

23      In sum, this Court should hold that California Penal Code §§ 30312, 30314, 30352,

24  30370, and 30385, and California Code of Regulations, tit. 11 § 4263, violate the

25  Dormant Commerce Clause and permanently enjoin their enforcement.

26  ///

27  ///

28  ///

**III.    Federal Law Preempts California's Restriction on Residents Transporting Ammunition into California on their person (Penal Code § § 30314(a))**

This Court previously denied the State's motion to dismiss their claim that the federal statute 18 USC § 926A preempts California Penal Code § 30314(a). ECF No. 16. In doing so, because it is a pure question of law, this Court effectively held that Plaintiffs prevail on this claim. At bottom, Penal Code § 30314(a) prohibits that which 18 USC § 926A expressly authorized them to do: transport ammunition across state lines. Plaintiffs have nothing to add to that analysis beyond what is in their Opposition to Defendant's Motion to Dismiss the First Amended Complaint, ECF No. 12, at pp. 16-22, and this Court's order. ECF No. 16, which are incorporated herein by reference.

## CONCLUSION

For the foregoing reasons, and those provided in briefing throughout this litigation, this Court should enter judgment in favor of Plaintiffs on all of their claims.

Dated: December 13, 2023                 **MICHEL & ASSOCIATES, P.C.**

                                         *s/ Sean A. Brady*
                                         Sean A. Brady
                                         Email: sbrady@michellawyers.com
                                         Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE
### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Rhode, et al. v. Bonta*
Case No.: 3:18-cv-00802-BEN-JLB

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

      I have caused service of the following documents, described as:

### PLAINTIFFS' OMNIBUS BRIEF

on the following parties by electronically filing the foregoing on December 13, 2023, with the Clerk of the District Court using its ECF System, which electronically notifies them.

John D. Echeverria
Deputy Attorney General
john.echeverria@doj.ca.gov
Meghan H. Strong
Deputy Attorney General
meghan.strong@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
    *Attorneys for Defendant Attorney*
    *General Rob Bonta*

      I declare under penalty of perjury that the foregoing is true and correct. Executed on December 13, 2023, at Long Beach, CA.

*Laura Palmerin*
Laura Palmerin

CERTIFICATE OF SERVICE

18cv802